1  Charles Nichols
   PO Box 1302
2  Redondo Beach, CA  90278
   Voice: (424) 634-7381
3  E-Mail: CharlesNichols@Pykrete.info
   In Pro Per
4

FILED
CLERK, U.S. DISTRICT COURT

NOV 30 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

5

6

7

8              United States District Court

9              Central District of California

10

11  Charles Nichols,                    )  Case No.:
12          Plaintiff,                   )  **CV11 09916** SJO  (SS)
13      vs.                              )
14  EDMUND G. BROWN, Jr., in his         )
15  official capacity as Governor of     )
16  California, KAMALA D. HARRIS,        )  COMPLAINT FOR DECLARATORY
17  Attorney General, in her official    )  JUDGMENT AND
18  capacity as Attorney General of      )  INJUNCTIVE RELIEF
19  California, CITY OF REDONDO          )  42 U.S.C. §§ 1983
20  BEACH, CITY OF REDONDO              )  SECOND AMENDMENT
                                          )  FOURTH AMENDMENT
21  BEACH POLICE DEPARTMENT,            )  FOURTEENTH AMENDMENT
22  CITY OF REDONDO BEACH               )  DEMAND FOR JURY TRIAL
23  POLICE CHIEF JOSEPH LEONARDI        )
24  and DOES 1 to 10,                    )
25          Defendants.                  )

26

27                      **JURISDICTION**

28  1.    This Court has subject matter jurisdiction over this action pursuant to 28

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF - 1



U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983. This Court has personal jurisdiction over Defendants because, inter alia, they acted under the color of laws, policies, customs, and/or practices of the State of California and/or within the geographic confines of the State of California. This Court has supplemental jurisdiction over any state law causes of action arising from the same operative facts under 28 U.S.C. § 1367. This action arises under the Constitution of the laws of the United States.

## VENUE

2.  Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and/or the Civil Local Rules for bringing an action in this district.

## PARTIES

3.  Plaintiff, Charles E. Nichols is a US Citizen and resident of California residing in the City of Lawndale, Los Angeles County, California. Mr. Nichols is a partially disabled engineer who holds a Bachelor of Science Degree, an M.B.A. and who has completed sufficient graduate level work in Business Administration and Computer Science & Engineering to teach graduate and undergraduate level courses in both subjects. He is a writer of books on Egyptian Hieroglyphs. Mr. Nichols is the lawful owner of a machine-gun* registered pursuant to the National Firearms Act of 1934 which requires an extensive background check by both state and Federal authorities before one can take possession of said firearm. Accordingly, Mr. Nichols is not a convicted felon or otherwise disqualified from possessing a firearm under either the laws of the State of California or the laws of the United States. *Plaintiff does not seek to openly carry, or even posses a machine-gun in the state of California. The fact that Plaintiff lawfully owns this class of firearm is indicative that Plaintiff is not a prohibited person nor otherwise disqualified from possessing and openly carrying an ordinary revolver or pistol.

4.     Plaintiff Mr. Nichols would openly carry a loaded and fully functional handgun in public for self-defense, but he refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he understands it is unlawful to openly carry a handgun in California for the purpose of self-defense.

5.     Defendant, Edmund G. Brown Jr. (BROWN), is being sued in his official capacity as Governor of the State of California. The Governor has the supreme executive power in the State and is responsible for the faithful execution of the laws of the State of California. See Article 5, Section 1 of the California Constitution.

6.     Defendant, Kamala Harris (HARRIS), is being sued in her official capacity as the chief legal officer of the State of California who is charged with enforcing the statutes of the State of California. California Attorney General KAMALA HARRIS has concurrent prosecutorial jurisdiction with the state's fifty-eight District Attorneys, and she is bound by a duty to seek substantial justice and avoid the filing of criminal charges in which she knows (or reasonably should know) are not supported by probable cause and/or are unconstitutional. HARRIS also has an independent duty to disclose information beneficial to the accused and, by extension, she has a duty to prevent wrongful arrests in the first place when she has the power to do so.  The Attorney General has direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices.  See Article 5, Section 13 of the California Constitution.

7.     Defendant CITY OF REDONDO BEACH is a municipal subdivision of the State of California located in Los Angeles County. Defendant CITY OF REDONDO BEACH maintains a Police Department and is responsible for setting

the policies and procedures of that Department, including but not limited to the
training and discipline of peace officers employed by Defendant.

8.    Defendant CITY OF REDONDO BEACH POLICE DEPARTMENT is a
police department within the City of Redondo Beach.

9.    Defendant CITY OF REDONDO BEACH POLICE CHIEF Joseph Leonardi
(LEONARDI) is the Chief of Police for the CITY OF REDONDO BEACH.  He is
employed by the CITY OF REDONDO BEACH for all relevant time periods for
this complaint. The Chief of Police is the chief executive officer of the department
and the final departmental authority in all matters of policy, operation and
discipline. Through LEONARDI, the department is responsible for the
enforcement of all laws and ordinances coming within its legal jurisdiction. The
Chief of Police is responsible for the entire department's operations.

## STATEMENT OF FACTS

10.    Defendants prohibit individuals like Mr. Nichols and other law-abiding
citizens from the possession and carrying of a fully functional loaded handgun
pursuant to various California statutes. Specifically, California statute Penal Code
section 12031 (See EXHIBIT 1) provides in part:

(a) (1) A person is guilty of carrying a loaded firearm when he or she carries a
loaded firearm on his or her person or in a vehicle while in any public place or on
any public street in an incorporated city or in any public place or on any public
street in a prohibited area of unincorporated territory.

11.    This statute, hereinafter referred to as PC12031, has an unconstitutionally
restrictive self-defense exception which states as follows:

PC12031 (j) (1) Nothing in this section is intended to preclude the carrying of any loaded firearm, under circumstances where it would otherwise be lawful, by a person who reasonably believes that the person or property of himself or herself or of another is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property. As used in this subdivision, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance.

12.     Effective January 1, 2012, PC12031 becomes PC25850. PC12031(a)(1) becomes PC25850(a). PC12031(e) becomes PC25850(b). PC12031(j)(1) becomes PC26045(a).

13.     The State of California has no licensing scheme in which to provide for a loaded handgun to be openly carried in counties with a population of 200,000 or more persons. Even then, these permits are issued at the discretion of the issuing authority (County Sheriff or Chief of Police) in one's city or county of residence. Applications are available only to residents of that county and, if granted, are valid ONLY IN that county. See California Penal Code section 12050 (PC12050). 94% of the residents of the State of California reside in counties with a population of 200,000 or more persons. Plaintiff resides in a county with a population of more than 200,000 persons. Plaintiff is therefore prohibited from even applying for a license to openly carry a loaded handgun. This alone is sufficient to make a procedural due process claim had the US Supreme Court ruled that a license were required. It did not, therefore Plaintiff does not assert such a claim.

14.     California Penal Code Section 12031(e) states:

In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

15.   On September 1st, 2011 Plaintiff received a written, not so thinly veiled death threat. Plaintiff filed a criminal report with the Los Angeles County Sheriff's department. The person who made the threat has not been arrested. Plaintiff is prohibited under California law from carrying a loaded firearm in public for the purpose of self-defense. Plaintiff does not have the financial resources to hire armed body guards. Plaintiff does own a handgun. Plaintiff would openly carry a loaded and functional handgun in public for the purpose of self-defense, but he refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he understands it is unlawful to openly carry a handgun in California for the purpose of self-defense.

16. California Penal Code section 12031(i) states:
(i) Nothing in this section shall prevent any person from carrying a loaded firearm in an area within an incorporated city while engaged in hunting, provided that the hunting at that place and time is not prohibited by the city council.

17.   Openly carrying a loaded firearm for the purpose of self-defense is at a minimum a misdemeanor. If one is openly carrying a loaded handgun that was purchased before the registry requirement went into effect then openly carrying a loaded handgun for the purpose of self-defense is punishable as a felony. See PC12031(F).

18.    Plaintiff's, as well as millions of other California residents and tens of millions of persons who are not prohibited from possessing firearms legally in the United States, handguns were purchased before the registry requirement went into effect.

## HISTORY AND BACKGROUND

19.    The legislative intent, history and background of PC12031 were succinctly described in an October 3, 1968 opinion by then California Attorney General Thomas C. Lynch which read in part:

"In April 1967 Assembly Bill 1591 was introduced and included the addition of section 12031 to the Penal Code. At this time it prohibited the carrying of a loaded firearm on a public street or in a public place in an incorporated city. On May 2, 1967, members of the Black Panther organization entered the Assembly Chambers armed with "pistols, rifles and at least one sawed-off shotgun," all to the great alarm of the members of the Assembly. The Sacramento Bee, May 2, 1967, at 1, A.B. 1591 was then made an urgency measure. The provisions of the proposed section 12031 were expanded to extend the application of the section to certain parts of unincorporated areas. The revised bill also proposed the addition of sections 171c, 171d, and 171e to the Penal Code. These sections prohibited the carrying of loaded firearms at the State Capitol, at public schools, including state colleges and the University of California, and at the Governor's Mansion or residence of any elected state officials.

The urgency clause first appended to A.B. 1591 referred to organized bands of men "armed with loaded firearms" entering the Assembly Chambers. This was a clear reference to the appearance of members of the Black Panther organization referred to above. A.B. 1591 was subsequently enacted into laws (Stats. 1967, ch. 960, p.

2459) as an urgency measure. The urgency clause of the bill as enacted reads as follows: "The State of California has witnessed, in recent years, the increasing incidence of organized groups and individuals publicly arming themselves for purposes inimical to the peace and safety of the people of California.

"Although this final version of the clause is broader than its earlier versions, it remains clear that the Legislature did not direct the provisions of section 12031 against all uses of firearms but only at uses of firearms which are inimical to the peace and safety of the people of California." See EXHIBIT 2

20.    In a letter to then Governor Ronald Reagan from then Contra Costa County District Attorney John A. Nejedly dated April 20, 1967, Nejedly states in part:

"Last Friday, a request was made to me, through the Council of Community Services in Richmond, to meet with the family of a young man killed by a deputy sheriff in the course of a burglary. I met with the family in good faith only to be confronted with an armed group, the Black Panthers. This group was armed with pistols and shotguns and threatened to obtain "justice" if their demands were not met.

Today, this same group is appearing before the County Administration Building similarly armed, apparently as an incident to a meeting arranged with Sheriff Young on the same matter.

As the acts of carrying a firearm of these types are not per se a violation of the law, I respectfully bring these conditions to your attention. I am concerned as to the possibilities, particularly when one realizes that in the last instance, we are dealing with a group not sensitive to reasonable decisions." See EXHIBIT 3

21.    The following day, Assemblyman Don Mulford sent a letter to Governor Reagan informing him that he had introduced Assembly Bill 1591 in which he specifically references the letter of the previous day from District Attorney Nejedly.  In this letter, Assemblyman Mulford states "The Black Panther movement is creating a serious problem."  See EXHIBIT 4

## CONSTITUTIONAL PROVISIONS

22.    The Second Amendment states:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

United States Constitution. Amendment II.

23.    The Second Amendment guarantees individuals a fundamental right to carry fully functional loaded handguns in non-sensitive public places for the purpose of self-defense.

24.    The Second Amendment "is fully applicable against the States." McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 177 L. Ed. 2d 894, 2010 U.S. LEXIS 5523 (2010).  Hereinafter referred to as "McDonald."

25.    The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," District of Columbia v. Heller, 554 U.S. 570, 592 (2008), 128 S. Ct. 2783;171 L. Ed. 2d 637, 2008 U.S. LEXIS 5268

26.    "c. Meaning of the Operative Clause. Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 19 (2008)

27.     "This may be considered as the true palladium of liberty . . . . The right to self-defence is the first law of nature: in most governments it has been the study of rulers to confine the right within the narrowest limits possible. Wherever standing armies are kept up, and the right of the people to keep and bear arms is, under any colour or pretext whatsoever, prohibited, liberty, if not already annihilated, is on the brink of destruction." District of Columbia v. Heller, 554 U.S. 570, 33 (2008)

28.     "In Nunn v. State, 1 Ga. 243, 251 (1846), the Georgia Supreme Court construed the Second Amendment as protecting the "natural right of self-defence" and therefore struck down a ban on carrying pistols openly. Its opinion perfectly captured the way in which the operative clause of the Second Amendment furthers the purpose announced in the prefatory clause, in continuity with the English right: "The right of the whole people, old and young, men, women and boys, and not militia only, to keep and bear arms of every description, and not such merely as are used by the militia, shall not be infringed, curtailed, or broken in upon, in the smallest degree; and all this for the important end to be attained: the rearing up and qualifying a well-regulated militia, so vitally necessary to the security of a free State. Our opinion is, that any law, State or Federal, is repugnant to the Constitution, and void, which contravenes this right, originally belonging to our forefathers, trampled under foot by Charles I. and his two wicked sons and successors, re-established by the revolution of 1688, conveyed to this land of liberty by the colonists, and finally incorporated conspicuously in our own Magna Charta!"" District of Columbia v. Heller, 554 U.S. 570, 39, 40 (2008) Hereinafter referred to as Nunn.

29.     "Likewise, in State v. Chandler, 5 La. Ann. 489, 490 (1850), the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to

incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations.""" District of Columbia v. Heller, 554 U.S. 570, 40 (2008) Hereinafter referred to as Chandler.

30. "The right to bear arms has always been the distinctive privilege of freemen. Aside from any necessity of self-protection to the person, it represents among all nations power coupled with the exercise of a certain jurisdiction. . . . [I]t was not necessary that the right to bear arms should be granted in the Constitution, for it had always existed." J. Ordronaux, Constitutional Legislation in the United States 241–242(1891)." District of Columbia v. Heller, 554 U.S. 570, 47 (2008)

31. "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." District of Columbia v. Heller, 554 U.S. 570, 54, 55 (2008)

32. The relief requested by Plaintiff will not prohibit Defendants from enforcing California's restrictions on carrying firearms in sensitive places such as schools and government buildings. See California Penal Code sections; 171b, 171c, 171d, 171e, 12021 and California Senate Bill 1080 (2010).

33. The relief requested by Plaintiff will not prohibit Defendants from enforcing California's current laws prohibiting possession of firearms by felons. See United States v. Vongxay, 594 F.3d 1111, 2010 U.S. App. LEXIS 2682 (9th Cir. Cal.,

2010) Cert Petition to US Supreme Court was unanimously denied. 131 S. Ct. 294; 178 L. Ed. 2d 193; 79 U.S.L.W. 3203, 2010 U.S. LEXIS 7235 Hereinafter referred to as Vongxay.

34.     Neither will it prohibit Defendants from enforcing California's current laws prohibiting possession of firearms by the mentally ill. See Welfare and Institutions code sections 5150, 5151, 5152, 5250, 5260, 5270.15, 707(b), 1203.073(b), 12021(c)(1) et al.

35.     PC12031 is not a regulatory measure concerned with the commercial sale of arms.

36.     "Few laws in the history of our Nation have come close to the severe restriction of the District's handgun ban. And some of those few have been struck down. In Nunn v. State, the Georgia Supreme Court struck down a prohibition on carrying pistols openly (even though it upheld a prohibition on carrying concealed weapons). See 1 Ga., at 251. In Andrews v. State, the Tennessee Supreme Court likewise held that a statute that forbade openly carrying a pistol "publicly or privately, without regard to time or place, or circumstances," 50 Tenn., at 187, violated the state constitutional provision (which the court equated with the Second Amendment). That was so even though the statute did not restrict the carrying of long guns." District of Columbia v. Heller, 554 U.S. 570, 57 (2008) Hereinafter referred to as Nunn.

37.     The relief requested by Plaintiff will not prohibit Defendants from enforcing California's current restrictions on carrying handguns concealed in public. See California Penal Code sections 12025 and 12050.

38.    By banning fully functional, loaded handguns from being openly carried for the purpose of self-defense, PC12031 is a more restrictive ban than the law struck down in Heller as unconstitutional.  In Heller, the District of Columbia law exempted persons who possessed a handgun prior to the law going into effect. Heller was licensed to carry a fully functional loaded firearm in public. "Respondent Dick Heller is a D. C. special police officer authorized to carry a handgun while on duty at the Federal Judicial Center. He applied for a registration certificate for a handgun that he wished to keep at home, but the District refused." District of Columbia v. Heller, 554 U.S. 570, 2 (2008)

39.    "As the quotations earlier in this opinion demonstrate, the inherent right of self-defense has been central to the Second Amendment right. The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for that lawful purpose." District of Columbia v. Heller, 554 U.S. 570, 56 (2008)

40.    "In Andrews v. State, the Tennessee Supreme Court likewise held that a statute that forbade openly carrying a pistol "publicly or privately, without regard to time or place, or circumstances," 50 Tenn., at 187, violated the state constitutional provision (which the court equated with the Second Amendment). That was so even though the statute did not restrict the carrying of long guns."" District of Columbia v. Heller, 554 U.S. 570, 57 (2008) Hereinafter referred to as Andrews.

41.    Vongxay argued that the dicta in Heller was "orbiter dicta." "Vongxay nevertheless contends that the Court's language about certain long-standing restrictions on gun possession is dicta, and therefore not binding. We disagree. Courts often limit the scope of their holdings, and such limitations are integral to

those holdings. Indeed, "[l]egal rulings in a prior opinion are applicable to future cases only to the degree one can ascertain from the opinion itself the reach of the ruling." Penuliar v. Mukasey, 528 F.3d 603, 614 (9th Cir. 2008); see also Black's Law Dictionary 1100 (7th ed. 1999) (defining dictum as a statement in an opinion that is "unnecessary to the decision in the case and therefore not precedential"). Vongxay 2353

42.    Like Andrews, the internal citations of Chandler and Nunn clearly reference the right to openly carry a fully functional loaded handgun in public.

43.    The 7th Circuit Court of Appeals likewise held that the scope of the Second Amendment was broader than one's front door in Ezell v City of Chicago 651 F.3d 684, 2011 U.S. App. LEXIS 14108.

44.    "On the present record, the plaintiffs are entitled to a preliminary injunction against the firing-range ban. The harm to their Second Amendment rights cannot be remedied by damages, their challenge has a strong likelihood of success on the merits, and the City's claimed harm to the public interest is based entirely on speculation." Ezell v City of Chicago 651 F.3d 684, 2011 at page 3.

45.    If the US Supreme Court had intended to limit the Heller decision to possession of a fully functional loaded firearm only in the home then it will have to say so more plainly in a subsequent decision. No post-Heller decision by the 9th Circuit Court of Appeals has limited the scope of the decision only to the home. Nor have the two cases now seeking an appeal in which the limited self-defense exception in PC12031(j)(1) was referenced in the two separate District Court decisions.

46. "It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed. It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon." District of Columbia v. Heller, 554 U.S. 570, 58 (2008)

47. "A broader point about the laws that JUSTICE BREYER cites: All of them punished the discharge (or loading) of guns with a small fine and forfeiture of the weapon (or in a few cases a very brief stay in the local jail), not with significant criminal penalties. They are akin to modern penalties for minor public-safety infractions like speeding or jaywalking. And although such public-safety laws may not contain exceptions for self-defense, it is inconceivable that the threat of a jaywalking ticket would deter someone from disregarding a "Do Not Walk" sign in order to flee an attacker, or that the Government would enforce those laws under such circumstances. Likewise, we do not think that a law imposing a 5-shilling fine and forfeiture of the gun would have prevented a person in the founding era from using a gun to protect himself or his family from violence, or that if he did so the law would be enforced against him. The District law, by contrast, far from imposing a minor fine, threatens citizens with a year in prison (five years for a second violation) for even obtaining a gun in the first place. See D. C. Code §7–2507.06." District of Columbia v. Heller, 554 U.S. 570, 61-62 (2008)

48. Defendant CITY OF REDONDO BEACH imposes a minor fine for illegally hunting or discharging a bullet "...in, over, across, along, or upon any public street, sidewalk, lane, alley, or public place in the City." See Redondo Beach Municipal Code 4-25.01 and 1-2.03.

49. The Fourth Amendment states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

United States Constitution. Amendment IV.

50.    Article I, Section I of the California Constitution states:

ARTICLE 1  DECLARATION OF RIGHTS

SECTION 1.  All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

California Constitution, Article I, Section I.

51.    By denying Plaintiff the means by which he may defend his life, liberty and property in public by enforcing PC12031; Defendants are violating Plaintiff's rights under Article I, Section I of the California Constitution.

52.    The Plaintiff in this action, and all other law abiding citizens and residents in the State of California, is suffering serious and irreparable violations of his Constitutional rights and civil liberties as a result of Defendants actions. Defendants will continue to seriously and irreparably violate Plaintiff's Constitutional rights and civil liberties unless this Court grants the relief requested by Plaintiff.  An actual and substantial controversy exists between Plaintiff and Defendants.  In violating Plaintiff's rights under the United States and California Constitutions, Defendants have acted, are acting and will be acting under color of law.

53. Plaintiff has no plain, speedy and adequate remedy at law against Defendants and PC12031 other than the relief requested in this complaint.

54. 12. On October 9, 2011 California Governor BROWN signed into law Assembly Bill 144 (A.B. 144) which makes it a crime, effective January 1, 2012 to openly carry an unloaded handgun in public. A.B. 144 is newly enacted and therefore has no Penal Code section number in 2011. Effective January 1, 2012, it becomes California Penal Code Section 26350. See EXHIBIT 5.

55. Plaintiff is entitled to a declaration that California Penal Code section 12031 is unconstitutional on its face and to an order preliminarily and permanently enjoining its enforcement.

56. California Penal Code section 12031 in conjunction with Assembly Bill 144 provides for a complete prohibition on handguns openly carried for the purpose of self-defense throughout the urban areas of the state of California and, in certain circumstances, even in otherwise remote rural areas were openly carried loaded handguns are not otherwise prohibited.

57. It may have been "clear" to the Attorney General in1967 that PC12031 was directed only towards the activities of the Black Panthers but in the subsequent 44 years it has been directed at peaceful private citizens. Even at hunters which the legislature and then governor intended to exempt from the provisions of the statute.

58. The California Courts have failed to recognize the Second Amendment, post-Heller. In THE PEOPLE, Plaintiff and Respondent, v. CARL WAYNE ELLISON, Defendant and Appellant 196 Cal. App. 4th 1342; 128 Cal. Rptr. 3d 245; 2011 Cal. App. LEXIS 842 the decision cited Peruta v. County of San Diego

(2010) 678 F.Supp.2d 1046, 2010 WL 5137137 stating that the United States District Court concluded that Penal Code sections 12031 and 12050 did pass constitutional muster. She did not. The Plaintiffs in that case did not challenge PC12031. She did say at page 9 "Here, to the extent that Penal Code sections 12025 and 12050 and Defendant's policy burden conduct falling within the scope of the Second Amendment, if at all, the burden is mitigated by the provisions of section 12031 that expressly permit loaded open carry for immediate self-defense." Apparently relying, in part, on People v. Flores, 169 Cal. App. 4th 568, 576-77 (Cal. Ct. App. 2008); both cased cited the self-defense exception in PC12031(j)(1).

59.    Even post-McDonald, the California courts do not even recognize the right of have a loaded firearm in one's place of residence, even though PC12031(2)(l) states that the statute does not apply to a place of residence. See Garber v. Superior Court, 184 Cal. App. 4th 724; 109 Cal. Rptr. 3d 278; 2010 Cal. App. LEXIS 680 and Garber v. Superior Court, 2010 Cal. LEXIS 7893 (Cal., Aug. 11, 2010).

**FIRST CLAIM FOR RELIEF:**
**SECOND AMENDMENT, FOURTEENTH AMENDMENT**
**UNITED STATES CONSTITUTION**
**42 USC § 1983, 1988 – INJUNCTIVE/DECLARATORY RELIEF**
**AGAINST ALL DEFENDANTS**

60.    Paragraphs 1 through 59 are incorporated by reference as though fully set forth.

61.    Plaintiff and other law-abiding citizens of the State of California lawfully own handguns. But for California Penal Code section 12031 they would forthwith openly carry their fully functional loaded handguns for the purpose of self-defense and for other lawful purposes.

62.    As a result of California Penal Code section 12031 and the enforcement thereof by Defendants and their agents and employees, Mr. Nichols, and other law-abiding citizens of the State of California, are subjected to irreparable harm in that he and they are unable to openly carry fully functional loaded handguns to protect himself and themselves outside of their homes, subjecting them to endangerment and vicious attacks at the hands of criminals and other predators. The aforementioned California statute violates Plaintiffs' Constitutional rights as set forth herein.  The aforementioned statute is unconstitutional on its face (more so in conjunction with California Penal Code section 26350).  "Individuals enjoy a right to carry handguns "for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." Heller, 10. PC12031(j)(1) is available only after one has been confronted and only then when he is in grave, immediate danger.  Even then, it is only an affirmative defense.

63.    Plaintiff requests declaratory and/or prospective injunctive relief under 42 U.S.C. § 1983 against the Defendants to prevent future violations of his constitutional right to openly carry a loaded handgun in public for the purpose of self-defense and other lawful purposes.

## SECOND CLAIM FOR RELIEF:
## FOURTH AMENDMENT, UNITED STATES CONSTITUTION
## 42 USC § 1983, 1988 – INJUNCTIVE/DECLARATORY RELIEF
## AGAINST ALL DEFENDANTS

64.    Paragraphs 1 through 63 are incorporated by reference as though fully set forth.

65.    California Penal Code § 12031(e) is unconstitutional on its face (more so in conjunction with California Penal Code section 26350).  Mere possession of a

loaded firearm, (i.e., exercising a fundamental right) when otherwise lawful, cannot support a finding of probable cause to believe a crime has been committed, such that the Fourth Amendment's warrant requirement can be legislatively disregarded.

66.     California Penal Code section 12031(e) is Facially unconstitutional.

67.     Plaintiff requests declaratory and/or prospective injunctive relief under 42 U.S.C. § 1983 against the Defendants to prevent future violations of his constitutional right to be free from unreasonable search and/or seizure under the Fourth Amendment to the United States Constitution, while he is exercising his Second Amendment rights.

## THIRD CLAIM FOR RELIEF:
## SECOND AMENDMENT, FOURTEENTH AMENDMENT
## UNITED STATES CONSTITUTION
## 42 USC § 1983, 1988 - INJUNCTIVE/DECLARATORY RELIEF
## AGAINST ALL DEFENDANTS

68.     Paragraphs 1 through 67 are incorporated by reference as though fully set forth.

69.     As Applied in this case, California Penal Code section 12031 is unconstitutional (more so in conjunction with California Penal Code section 26350).

70.     Plaintiff requests declaratory and/or prospective injunctive relief under 42 U.S.C. § 1983 against the Defendants to prevent future violations of his

constitutional right to openly carry a loaded handgun in public for the purpose of self-defense and other lawful purposes.

## FOURTH CLAIM FOR RELIEF:
## FOURTH AMENDMENT, UNITED STATES CONSTITUTION
## 42 USC § 1983, 1988 - INJUNCTIVE/DECLARATORY RELIEF
## AGAINST ALL DEFENDANTS

71.    Paragraphs 1 through 70 are incorporated by reference as though fully set forth.

72.    As Applied in this case, California Penal Code section 12031(e) is unconstitutional (more so in conjunction with California Penal Code section 26350).

73.    Authorizing peace officers to detain and search individuals and seize their property without a warrant, probable cause or even reasonable suspicion that a crime has been committed is a violation of the Fourth Amendment to the United States Constitution.

74.    Plaintiff requests declaratory and/or prospective injunctive relief under 42 U.S.C. § 1983 against the Defendants to prevent future violations of his constitutional right to be free from unreasonable search and/or seizure under the Fourth Amendment to the United States Constitution, while he is exercising his Second Amendment rights.

## FIFTH CLAIM FOR RELIEF:
## FOURTEENTH AMENDMENT, UNITED STATES CONSTITUTION
## 42 USC § 1983, 1988 - INJUNCTIVE/DECLARATORY RELIEF
## AGAINST ALL DEFENDANTS

75.    Paragraphs 1 through 74 are incorporated by reference as though fully set forth.

76.    California Penal Code section 12031 violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment for the fundamental right of self-defense (more so in conjunction with California Penal Code section 26350).  This statute cannot stand consistently with the Fourteenth Amendment.

77.    Plaintiff requests declaratory and/or prospective injunctive relief under 42 U.S.C. § 1983 against the Defendants to prevent future violations of his fundamental right to self-defense and for other lawful purposes.

## SIXTH CLAIM FOR RELIEF:
## FOURTEENTH AMENDMENT, UNITED STATES CONSTITUTION
## 42 USC § 1983, 1988 - INJUNCTIVE/DECLARATORY RELIEF
## AGAINST ALL DEFENDANTS

78.    Paragraphs 1 through 77 are incorporated by reference as though fully set forth.

79.    California Penal Code section 12031 violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment for even a non-fundamental right (more so in conjunction with California Penal Code section 26350).  The evidence will show that the statute is arbitrary or irrational.

80.    Plaintiff hopes that the Court will not require him to present the extensive evidence in support of this claim for relief but Plaintiff is willing to do so should the Court somehow fail to grant the relief asked for in all of the preceding claims for relief.

81.   PC12031 is not an economic regulation, however, under any standard of review, under any level of scrutiny, under any balancing scheme or means testing; PC12031 is unconstitutional.

82.   Plaintiff requests declaratory and/or prospective injunctive relief under 42 U.S.C. § 1983 against the Defendants to prevent future violations of his fundamental or non-fundamental right to self-defense and for other lawful purposes.

**SEVENTH CLAIM FOR RELIEF:**

**VIOLATION OF THE CALIFORNIA CONSTITUTION**

**AGAINST ALL DEFENDANTS**

83.   Paragraphs 1 through 82 are incorporated by reference as though fully set forth.

84.   Article I, Section I of the California Constitution provides that "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

85.   California Penal Code section 12031 (more so in conjunction with California Penal Code section 26350) unconstitutionally prohibits Defendant and other law-abiding citizens and legal residents of the State of California and the United States from openly carrying a loaded handgun in non-sensitive public places for the purpose of self-defense and for other lawful purposes.

86.   As a result, Plaintiff and said persons are denied the instrument by which he and they may defend their life, liberty, property and safeguard their safety.

87.    Article I, Section 13 of the California Constitution provides that "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized.

88.    Authorizing peace officers to detain and search individuals and seize their property without a warrant, probable cause or even reasonable suspicion that a crime has been committed is a violation of Article I, Section 13 of the California Constitution.

89.    Plaintiff requests declaratory and/or prospective injunctive relief under 42 U.S.C. § 1983 against the Defendants to prevent future violations of his constitutional right to be free from unreasonable search and/or seizure under Article I, Sections 1 and 13, while he is exercising his Second Amendment rights and for other lawful purposes.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.    Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, that California statute Penal Code Section 12031 (PC25850) set forth above, and certain other of its sub-parts including, but not limited to, subsections (a)(1)  (PC25850(a)) and (e) (PC25850(b)), are null and void because they are in violation of the United States Constitution and laws of the United States, specifically the Second, Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 and/or Article 1, Sections 1 and 13 of the California Constitution;

1    B.    Enter a preliminary and permanent injunction enjoining the Defendants and
2    their officers, agents, servants, employees and all other persons in concert or
3    participation with them from enforcing California Penal Code Section 12031
4    (*PC25850 effective 1/1/2012*) set forth above, and certain other of its sub-parts as
5    set forth herein including but not limited to, PC12031(a)(1) (becomes *PC25850(a)*
6    *on 1/1/2012*) and PC12031(e) (becomes *PC25850(b) on 1/1/2012*) against
7    Plaintiff and private citizens who are otherwise qualified to possess handguns;

8

9    C.    Such other and further relief, including further injunctive relief, against all
10   Defendants, as may be necessary to effectuate the Court's judgment or otherwise
11   grant relief, or as the Court otherwise deems just and equitable;

12

13                        **DEMAND FOR JURY TRIAL**
14   Plaintiff hereby requests a jury trial on all issues raised in this complaint.

15

16

17

18

19

20

21

22   Dated: November 30, 2011

23                                                    By: Charles Nichols
                                                      Plaintiff in Pro Per
24                                                    PO Box 1302
                                                      Redondo Beach, CA
25                                                    90278
                                                      Voice: (424) 634-7381
26                                                    E-Mail:
                                                      CharlesNichols@Pykrete
27                                                    .info

28

# EXHIBIT 1

12031. (a) (1) A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(2) Carrying a loaded firearm in violation of this section is punishable, as follows:

(A) Where the person previously has been convicted of any felony, or of any crime made punishable by this chapter, as a felony.

(B) Where the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

(C) Where the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22, under the Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1), as a felony.

(D) Where the person is not in lawful possession of the firearm, as defined in this section, or is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Section 12021 or 12021.1 of this code or Section 8100 or 8103 of the Welfare and Institutions Code, as a felony.

(E) Where the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(F) Where the person is not listed with the Department of Justice pursuant to Section 11106, as the registered owner of the handgun, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or both that fine and imprisonment.

(G) In all cases other than those specified in subparagraphs (A) to (F), inclusive, as a misdemeanor, punishable by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(3) For purposes of this section, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(4) Nothing in this section shall preclude prosecution under Sections 12021 and 12021.1 of this code, Section 8100 or 8103 of the

**EXHIBIT 1**

27

Welfare and Institutions Code, or any other law with a greater penalty than this section.

(5) (A) Notwithstanding paragraphs (2) and (3) of subdivision (a) of Section 836, a peace officer may make an arrest without a warrant:

(i) When the person arrested has violated this section, although not in the officer's presence.

(ii) Whenever the officer has reasonable cause to believe that the person to be arrested has violated this section, whether or not this section has, in fact, been violated.

(B) A peace officer may arrest a person for a violation of subparagraph (F) of paragraph (2), if the peace officer has probable cause to believe that the person is carrying a loaded handgun in violation of this section and that person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of that handgun.

(6) (A) Every person convicted under this section who has previously been convicted of an offense enumerated in Section 12001.6, or of any crime made punishable under this chapter, shall serve a term of at least three months in a county jail, or, if granted probation or if the execution or imposition of sentence is suspended, it shall be a condition thereof that he or she be imprisoned for a period of at least three months.

(B) The court shall apply the three-month minimum sentence except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in this subdivision or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in this subdivision, in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

(7) A violation of this section which is punished by imprisonment in a county jail not exceeding one year shall not constitute a conviction of a crime punishable by imprisonment for a term exceeding one year for the purposes of determining federal firearms eligibility under Section 922(g)(1) of Title 18 of the United States Code.

(b) Subdivision (a) shall not apply to any of the following:

(1) Peace officers listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, whether active or honorably retired, other duly appointed peace officers, honorably retired peace officers listed in subdivision (c) of Section 830.5, other honorably retired peace officers who during the course and scope of their

**EXHIBIT 1**

28

employment as peace officers were authorized to, and did, carry firearms, full-time paid peace officers of other states and the federal government who are carrying out official duties while in California, or any person summoned by any of those officers to assist in making arrests or preserving the peace while the person is actually engaged in assisting that officer. Any peace officer described in this paragraph who has been honorably retired shall be issued an identification certificate by the law enforcement agency from which the officer has retired. The issuing agency may charge a fee necessary to cover any reasonable expenses incurred by the agency in issuing certificates pursuant to this paragraph and paragraph (3).

Any officer, except an officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall have an endorsement on the identification certificate stating that the issuing agency approves the officer's carrying of a loaded firearm.

No endorsement or renewal endorsement issued pursuant to paragraph (2) shall be effective unless it is in the format set forth in subparagraph (D) of paragraph (1) of subdivision (a) of Section 12027, except that any peace officer listed in subdivision (f) of Section 830.2 or in subdivision (c) of Section 830.5, who is retired between January 2, 1981, and on or before December 31, 1988, and who is authorized to carry a loaded firearm pursuant to this section, shall not be required to have an endorsement in the format set forth in subparagraph (D) of paragraph (1) of subdivision (a) of Section 12027 until the time of the issuance, on or after January 1, 1989, of a renewal endorsement pursuant to paragraph (2).

(2) A retired peace officer, except an officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall petition the issuing agency for renewal of his or her privilege to carry a loaded firearm every five years. An honorably retired peace officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall not be required to obtain an endorsement from the issuing agency to carry a loaded firearm. The agency from which a peace officer is honorably retired may, upon initial retirement of the peace officer, or at any time subsequent thereto, deny or revoke for good cause the retired officer's privilege to carry a loaded firearm. A peace officer who is listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who is retired prior to January 1, 1981, shall have his or her privilege to carry a loaded firearm denied or revoked by having the

**EXHIBIT 1**

agency from which the officer retired stamp on the officer's
identification certificate "No CCW privilege."

   (3) An honorably retired peace officer who is listed in
subdivision (c) of Section 830.5 and authorized to carry loaded
firearms by this subdivision shall meet the training requirements of
Section 832 and shall qualify with the firearm at least annually. The
individual retired peace officer shall be responsible for
maintaining his or her eligibility to carry a loaded firearm. The
Department of Justice shall provide subsequent arrest notification
pursuant to Section 11105.2 regarding honorably retired peace
officers listed in subdivision (c) of Section 830.5 to the agency
from which the officer has retired.

   (4) Members of the military forces of this state or of the United
States engaged in the performance of their duties.

   (5) Persons who are using target ranges for the purpose of
practice shooting with a firearm or who are members of shooting clubs
while hunting on the premises of those clubs.

   (6) The carrying of handguns by persons as authorized pursuant to
Article 3 (commencing with Section 12050) of Chapter 1 of Title 2 of
Part 4.

   (7) Armored vehicle guards, as defined in Section 7521 of the
Business and Professions Code, (A) if hired prior to January 1, 1977,
or (B) if hired on or after that date, if they have received a
firearms qualification card from the Department of Consumer Affairs,
in each case while acting within the course and scope of their
employment.

   (8) Upon approval of the sheriff of the county in which they
reside, honorably retired federal officers or agents of federal law
enforcement agencies, including, but not limited to, the Federal
Bureau of Investigation, the Secret Service, the United States
Customs Service, the Federal Bureau of Alcohol, Tobacco, and
Firearms, the Federal Bureau of Narcotics, the Drug Enforcement
Administration, the United States Border Patrol, and officers or
agents of the Internal Revenue Service who were authorized to carry
weapons while on duty, who were assigned to duty within the state for
a period of not less than one year, or who retired from active
service in the state.

   Retired federal officers or agents shall provide the sheriff with
certification from the agency from which they retired certifying
their service in the state, the nature of their retirement, and
indicating the agency's concurrence that the retired federal officer
or agent should be accorded the privilege of carrying a loaded
firearm.

   Upon approval, the sheriff shall issue a permit to the retired

**EXHIBIT 1**

30

federal officer or agent indicating that he or she may carry a loaded firearm in accordance with this paragraph. The permit shall be valid for a period not exceeding five years, shall be carried by the retiree while carrying a loaded firearm, and may be revoked for good cause.

The sheriff of the county in which the retired federal officer or agent resides may require recertification prior to a permit renewal, and may suspend the privilege for cause. The sheriff may charge a fee necessary to cover any reasonable expenses incurred by the county.

(c) Subdivision (a) shall not apply to any of the following who have completed a regular course in firearms training approved by the Commission on Peace Officer Standards and Training:

(1) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also, under the express terms of the charter, (A) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (B) are not less than 18 years of age or more than 40 years of age, (C) possess physical qualifications prescribed by the commission, and (D) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(2) The carrying of weapons by animal control officers or zookeepers, regularly compensated as such by a governmental agency when acting in the course and scope of their employment and when designated by a local ordinance or, if the governmental agency is not authorized to act by ordinance, by a resolution, either individually or by class, to carry the weapons, or by persons who are authorized to carry the weapons pursuant to Section 14502 of the Corporations Code, while actually engaged in the performance of their duties pursuant to that section.

(3) Harbor police officers designated pursuant to Section 663.5 of the Harbors and Navigation Code.

(d) Subdivision (a) shall not apply to any of the following who have been issued a certificate pursuant to Section 12033. The certificate shall not be required of any person who is a peace officer, who has completed all training required by law for the exercise of his or her power as a peace officer, and who is employed while not on duty as a peace officer.

(1) Guards or messengers of common carriers, banks, and other financial institutions while actually employed in and about the shipment, transportation, or delivery of any money, treasure, bullion, bonds, or other thing of value within this state.

(2) Guards of contract carriers operating armored vehicles

**EXHIBIT 1**

31

pursuant to California Highway Patrol and Public Utilities Commission authority (A) if hired prior to January 1, 1977, or (B) if hired on or after January 1, 1977, if they have completed a course in the carrying and use of firearms which meets the standards prescribed by the Department of Consumer Affairs.

(3) Private investigators and private patrol operators who are licensed pursuant to Chapter 11.5 (commencing with Section 7512) of, and alarm company operators who are licensed pursuant to Chapter 11.6 (commencing with Section 7590) of, Division 3 of the Business and Professions Code, while acting within the course and scope of their employment.

(4) Uniformed security guards or night watch persons employed by any public agency, while acting within the scope and course of their employment.

(5) Uniformed security guards, regularly employed and compensated in that capacity by persons engaged in any lawful business, and uniformed alarm agents employed by an alarm company operator, while actually engaged in protecting and preserving the property of their employers or on duty or en route to or from their residences or their places of employment, and security guards and alarm agents en route to or from their residences or employer-required range training. Nothing in this paragraph shall be construed to prohibit cities and counties from enacting ordinances requiring alarm agents to register their names.

(6) Uniformed employees of private patrol operators and private investigators licensed pursuant to Chapter 11.5 (commencing with Section 7512) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment.

(e) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

(f) As used in this section, "prohibited area" means any place where it is unlawful to discharge a weapon.

(g) A firearm shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be

**EXHIBIT 1**

32

deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder.

(h) Nothing in this section shall prevent any person engaged in any lawful business, including a nonprofit organization, or any officer, employee, or agent authorized by that person for lawful purposes connected with that business, from having a loaded firearm within the person's place of business, or any person in lawful possession of private property from having a loaded firearm on that property.

(i) Nothing in this section shall prevent any person from carrying a loaded firearm in an area within an incorporated city while engaged in hunting, provided that the hunting at that place and time is not prohibited by the city council.

(j) (1) Nothing in this section is intended to preclude the carrying of any loaded firearm, under circumstances where it would otherwise be lawful, by a person who reasonably believes that the person or property of himself or herself or of another is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property. As used in this subdivision, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance.

(2) A violation of this section is justifiable when a person who possesses a firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety. This paragraph may not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with Section 6200) of the Family Code absent a factual finding of a specific threat to the person's life or safety. It is not the intent of the Legislature to limit, restrict, or narrow the application of current statutory or judicial authority to apply this or other justifications to defendants charged with violating Section 12025 or of committing other similar offenses.

Upon trial for violating this section, the trier of fact shall determine whether the defendant was acting out of a reasonable belief that he or she was in grave danger.

(k) Nothing in this section is intended to preclude the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest.

(l) Nothing in this section shall prevent any person from having a loaded weapon, if it is otherwise lawful, at his or her place of residence, including any temporary residence or campsite.

**EXHIBIT 1**

33

# EXHIBIT 2

## ANALYSIS

Penal Code section 12031 was enacted by the 1967 Legislature as an urgency measure and provides in part as follows:

"(a) . . . every person who carries a loaded firearm on his person or in a vehicle while in any public place or on any public street in an incorporated city or *in any public place or on any public street in a prohibited area of unincorporated territory* is guilty of a misdemeanor.

. . .

"(d) As used in this section '*prohibited area*' means any place where it is unlawful to discharge a weapon.

"(e) A firearm shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell, consisting of a case which holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder." (Emphasis added.)

In order to respond properly to the questions raised, it is necessary to look at the circumstances surrounding the enactment of section 12031 and the attitude of the Legislature to these circumstances.

In April 1967 Assembly Bill 1591 was introduced and included the addition of section 12031 to the Penal Code. At this time it prohibited the carrying of a loaded firearm on a public street or in a public place in an incorporated city. On May 2, 1967, members of the Black Panther organization entered the Assembly Chambers armed with "pistols, rifles and at least one sawed-off shotgun," all to the great alarm of the Assembly. The Sacramento Bee, May 2, 1967, at 1. A.B. 1591 was then made an urgency measure. The provisions of the proposed section 12031 were expanded to extend the application of the section to certain parts of unincorporated areas. The revised bill also proposed the addition of sections 171c, 171d, and 171e to the Penal Code. These sections prohibited the carrying of loaded firearms at the State Capitol, at public schools, including state colleges and the University of California, and at the Governor's Mansion or residence of any elected state officials.

The urgency clause first appended to A.B. 1591 referred to organized bands of men "armed with loaded firearms" entering the Assembly Chambers. This was a clear reference to the appearance of members of the Black Panther organization referred to above. A.B. 1591 was subsequently enacted into law (Stats. 1967, ch. 960, p. 2459) as an urgency measure. The urgency clause of the bill as enacted reads as follows:

"The State of California has witnessed, in recent years, the increasing

**EXHIBIT 2**

incidence of organized groups and individuals publicly arming themselves for purposes inimical to the peace and safety of the people of California.

"Existing laws are not adequate to protect the people of this state from either the use of such weapons or from violent incidents arising from the mere presence of such armed individuals in public places. Therefore, in order to prevent the potentially tragic consequences of such activities, it is imperative that this statute take effect immediately."

Although this final version of the clause is broader than its earlier versions, it remains clear that the Legislature did not direct the provisions of section 12031 against all uses of firearms but only at uses of firearms which are "inimical to the peace and safety of the people of California."

Question No. 1 represents an opinion whether the word "firearm" in section 12031 includes rifles and shotguns. *The word "firearm" includes rifles and shotguns.*

The fact that this section is a part of this state's Dangerous Weapons Control Law (Penal Code Part IV, Title 2, Chapter 1, commencing with section 12000), dealing with *concealed* weapons, might suggest its limitation to such weapons. Reading Penal Code section 12031 in its entirety suggests, however, that "firearm" includes rifles and shotguns. Subdivision (b), subparagraph (4) talks of "hunting," an activity which more often involves rifles or shotguns than pistols or revolvers, and subparagraph (8) uses the word "weapon" without any restriction such as "concealed." In subdivisions (d) and (j) the word "weapon" appears again without any restriction.

The inclusion of rifles and shotguns within the definition of "firearm" is also suggested by the circumstances surrounding its enactment and the wording of the urgency clause. There can, therefore, be little doubt that the word "firearm," as it appears in section 12031, is not limited in meaning to "concealed weapons," as defined in Penal Code section 12001. We must conclude that the word "firearm" as used in section 12031 embraces, among other weapons, rifles and shotguns.[1]

Question No. 2 requests an opinion whether section 12031 prohibits the carrying of a loaded firearm on a public road in an unincorporated area. We conclude that section 12031 does not prohibit the carrying of loaded firearms on such public ways. For the reasons set forth in our answer to question No. 4, the term "public streets" in section 12031(a) must be given a narrow construction. There is a distinction between "public roads" and "public streets" which is discussed more fully below. The proscriptions of section 12031 are therefore not applicable to "public roads" because they are not "public streets" as that term is used in section 12031.[2]

---

[1] For a comprehensive discussion of all the laws of this state relating to firearms see Assem. Int. Comm. on Crim. Proc., *Regulation and Control of Firearms*, 22 Assembly Reports 1963-1965, No. 6 (1965).

[2] The carrying of a rifle or shotgun in a vehicle with an unexpended round in the chamber is prohibited on "public highways" by Fish and Game Code section 2006, which provides in part:

"It is unlawful to possess a loaded rifle or shotgun in any vehicle . . . which

**EXHIBIT 2**

200

ATTORNEY GENERAL'S OPINIONS

[VOLUME 51

Question No. 3 requests an opinion whether Penal Code section 374c* makes every "public road" a "prohibited area" as defined by section 12031. Because the discharge of firearms is prohibited on "public roads and highways," these public ways are by definition "prohibited areas" (section 12031(d)). This does not, however, alter our conclusion that the proscriptions of section 12031 are not applicable to such public ways because, as set forth in our response to your question No. 4, the term "public road or highway" is not synonymous with the term "public street."

Question No. 4 requests an opinion whether the term "public street" in section 12031 is synonymous with the term "public road or highway" used in Penal Code section 374c. Our response is that the terms "public road or highway" are not synonymous with the term "public street."

The discussion above regarding the Legislature's purpose in enacting section 12031 suggests that the term "public street" is to be given a narrow meaning. The thrust of the section is not against the use of all firearms but only against use "inimical to the peace and safety of the people of California." Further, the application of the section's prohibition to unincorporated areas is modified by the injection of the concept, "prohibited area." It is clear, therefore, that the Legislature intended that there be a recognizable distinction in applying the prohibition of section 12031 as between incorporated areas and unincorporated areas. To make "public streets" synonymous with "public roads and highways" would leave little meaningful difference between incorporated and unincorporated areas.

Additionally, earlier versions of A.B. 1591 would have amended Fish and Game Code section 2006. Such amendment was designed to conform the definition of a loaded rifle or shotgun in Fish and Game Code section 2006 to the definition of a loaded firearm in Penal Code section 12031. Section 2006 applies on all "public highway[s] or other way[s] open to the public." The failure of the Legislature to enact such an amendment to section 2006 suggests that it did not intend that section 2006 be superseded by section 12031. Had it desired section 2006 to be superseded, it would have either amended its definition of a loaded weapon to conform to section 12031 or repealed it entirely.

For these reasons we must conclude that the Legislature intended the term "public streets" be given a narrow meaning. It is not synonymous, then, with "public roads and highways," but includes only the public ways of towns and villages and not the "open roads" in rural sections of unincorporated areas.

Attention should also be called to the effect of Penal Code section 415 which provides: "Every person who . . . fire[s] any gun or pistol in . . . [an] unincorporated

is standing on or along or is being driven on or along any public highway or other way open to the public.

"A rifle or shotgun shall be deemed loaded . . . when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine."

* Penal Code section 374c provides: "Every person who shoots any firearm from or upon a *public road or highway* is guilty of a misdemeanor." (Emphasis added.)

**EXHIBIT 2**

town ... is guilty of a misdemeanor ...." Section 12031(d) defines a "prohibited area" as "any place where it is unlawful to discharge a weapon." An unincorporated town thereby becomes a "prohibited area." The proscription of section 12031 is applicable to the "public streets" of such towns and to all "public places" therein. We have therefore "public places" and "public streets" in the narrow sense where the discharge of firearms is prohibited and thus the concurrence of the necessary factors to bring the proscriptions into play.

Question No. 5 requests an opinion whether the term "safety zone" in Fish and Game Code section 3004[4] is a "prohibited area." The answer is in the affirmative, subject to the qualifications given below.

The "safety zone" described in Fish and Game Code section 3004 which lies in unincorporated areas is a "prohibited area" as that term is defined by section 12031(d). Again, however, for the proscriptions of section 12031 to be applicable, there must be a concurrence of a "prohibited area" and a "public place." Further, "public places" which do not have a building located thereon (e.g., a park) would not be "prohibited areas" and, thus, the proscription of section 12031 would not be applicable. The same would be true for those areas of "public places" more than 150 yards from any building.

It should also be noted that certain persons are excepted from the operation of Fish and Game Code section 3004. Because this exception is not in conflict with the intent of the Legislature these persons would be exempt in any case from the proscriptions of 12031.

——————

Opinion No. 68-77—October 8, 1968

SUBJECT: MEETINGS—Public bodies may negotiate and discuss in private without amending the Ralph M. Brown Act if a quorum of the board is present and a state conciliator has intervened in the proceedings.

Requested by: DIRECTOR, DEPARTMENT OF INDUSTRIAL RELATIONS

Opinion by: THOMAS C. LYNCH, Attorney General
            Clayton P. Roche, Deputy

The Honorable Albert C. Beeson, Director of the Department of Industrial Relations, has requested an opinion on the following question:

"Is there any way without amending the [Ralph M. Brown] Act that our Conciliators can advise public bodies that they may ... discuss or negotiate in private rather than in ... a public hearing."

—————

[4] Fish and Game Code section 3004 states:

"It is unlawful for any person, other than the owner, person in possession of the premises, or a person having the express permission of the owner or person in possession of the premises, to hunt or to discharge while hunting, any firearm ... within 150 yards of any occupied dwelling house, residence, or other building or any barn or other outbuilding used in connection therewith. The 150-yard area is a 'safety zone.'"

**EXHIBIT 2**

# EXHIBIT 3

JOHN A. NEJEDLY
    DISTRICT ATTORNEY
JOHN B. CLAUSEN
    ASSISTANT DISTRICT ATTORNEY
GEORGE W. McCLURE
    CHIEF CIVIL DEPUTY
DONALD B. WALKER
    CHIEF CRIMINAL DEPUTY

INVESTIGATORS
    DAVID COOK JR., CHIEF
    JACK W. FRANCIS
    JOSEPH J. MELASI
    CHARLES A. NYHRE
    WILLIAM R. PRICE

OFFICE OF DISTRICT ATTORNEY

# CONTRA COSTA COUNTY

COURT HOUSE, 4TH FLOOR
P.O. BOX 670
MARTINEZ, CALIFORNIA, 94553
PHONE: 415/228-3000

DEPUTIES
CIVIL DIVISION
    J. M. DISNEY
    K. D. EWART
    E. TENNGAN
    W. W. McCOMBS
    J. R. BISRARARY
    T. M. PENN
    Q. F. SMITH
    P. C. RANK
    B. M. MALISTA, JR.
    V. J. WEEKMAN

CRIMINAL DIVISION
    W. H. BARTLETT
    D. L. BOAZ

    R. J. BRANCH
    N. C. PEYER
    G. L. GINDER
    U. T. SOKOLIVES
    R. D. KLEIN
    R. L. LANGFEAR
    J. D. WATTERWALLER
    L. E. HOLDRICH
    R. K. MASACCK
    J. S. MOX
    D. M. QUINLAN
    T. C. SMITH
    L. L. SNYDER
    E. W. SWANN

April 20, 1967

APR 21 1967

Honorable Ronald Reagan
State Capitol
Sacramento, California

Dear Sir:

May I respectfully call to your attention recent incidents
in this area that may suggest consideration of legislation
to provide more effective controls in the area of
possession of firearms.

Incident to the peace demonstrations at Port Chicago,
certain residents of Clyde, an unincorporated community
near the Naval Ammunitions Base, armed themselves with
rifles and patrolled the streets, particularly at night.
I was concerned with the obvious possibilities, met with
these people and an agreement to terminate the carrying
of arms was reached.

In December, groups in Orinda, concerned about incidents
involving women and delays in securing Sheriff response,
similarly armed themselves and instituted a patrol service.
Again in meeting with these people we were able to secure
the termination of this practice.

Last Friday, a request was made to me, through the Council
of Community Services in Richmond, to meet with the family
of a young man killed by a deputy sheriff in the course of
a burglary. I met with the family in good faith only to be
confronted with an armed group, the Black Panthers. This
group was armed with pistols and shotguns and threatened
to obtain "justice" if their demands were not met.

Today, this same group is appearing before the County
Administration Building similarly armed, apparently as
an incident to a meeting arranged with Sheriff Young on
the same matter.



**EXHIBIT 3**

40

Honorable Rona' Reagan          Page 2          April 20, 1967

As the acts of carrying a firearm of these types are not
per se a violation of the law, I respectfully bring these
conditions to your attention.  I am concerned as to the
possibilities, particularly when one realizes that in the
last instances, we are dealing with a group not sensitive
to reasonable decisions.

Very truly yours,

John A. Nejedly
District Attorney

JAN:ems

cc:  Assemblyman Don Mulford

**EXHIBIT 3**

41

# EXHIBIT 4

April 21, 1967

The Honorable Ronald Reagan
Governor of California
State Capitol

My dear Governor:

Regarding the copy of letter from John A. Nejedly, District Attorney, Contra Costa County, I have introduced AB 1591, which will be polished with the addition of amendments. The Black Panther movement is creating a serious problem. The bill was introduced at the request of the Oakland Police Department.

At the proper time, I shall discuss it with you because we may need your personal help. I cannot help feeling that the people of this State are concerned about individuals armed with loaded weapons walking the streets of our communities in numbers.

Regarding the letter from Hardia Jones, I have requested that we all meet on next Thursday and bring Jones to Sacramento. His letter underwrites the reason for this meeting.

Sincerely,

DON MULFORD

Enclosures
cc Mr. Philip M. Battaglia
   Mr. Lyn Nofziger

**EXHIBIT 4**

43

# EXHIBIT 5

**Assembly Bill No. 144**

CHAPTER 725

An act to amend Sections 7574.14 and 7582.2 of the Business and Professions Code, and to amend Sections 16520, 16750, 16850, 25595, and 25605 of, to add Sections 626.92, 16950, 17040, 17295, 17512, and 25590 to, and to add Chapter 6 (commencing with Section 26350) to Division 5 of Title 4 of Part 6 of, the Penal Code, relating to firearms.

[Approved by Governor October 9, 2011. Filed with
Secretary of State October 9, 2011.]

**legislative counsel's digest**

AB 144, Portantino. Firearms.

Existing law, subject to certain exceptions, makes it an offense to carry a concealed handgun on the person or in a vehicle, as specified. Existing law provides that firearms carried openly in belt holsters are not concealed within the meaning of those provisions.

This bill would establish an exemption to the offense for transportation of a firearm between certain areas where the firearm may be carried concealed, or loaded, or openly carried unloaded, as specified.

Existing law prohibits, with exceptions, a person from possessing a firearm in a place that the person knows or reasonably should know is a school zone, as defined.

This bill would additionally exempt a security guard authorized to openly carry an unloaded handgun and an honorably retired peace officer authorized to openly carry an unloaded handgun from that prohibition.

Existing law, subject to certain exceptions, makes it an offense to carry a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

The bill would, subject to exceptions, make it a misdemeanor to openly carry an unloaded handgun on the person or openly and exposed in a motor vehicle in specified public areas and would make it a misdemeanor with specified penalties to openly carry an exposed handgun in a public place or public street, as specified, if the person at the same time possesses ammunition capable of being discharged from the handgun, and the person is not in lawful possession of the handgun, as specified.

Existing law makes it a misdemeanor for any driver or owner of a motor vehicle to allow a person to bring a loaded firearm into the motor vehicle in a public place, as specified.

This bill would expand the scope of that crime to include allowing a person to bring an open and exposed unloaded handgun into the vehicle, as specified.

95

By creating a new offense, and expanding the scope of existing crimes, this bill would impose a state-mandated local program.

The bill would make conforming and nonsubstantive technical changes. The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

**EXHIBIT 5**

SECTION 1. Section 7574.14 of the Business and Professions Code is amended to read:

7574.14. This chapter shall not apply to the following:

(a) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in any calendar month.

(b) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(c) A charitable philanthropic society or association incorporated under the laws of this state that is organized and duly maintained for the public good and not for private profit.

(d) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(e) An attorney at law in performing his or her duties as an attorney at law.

(f) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(g) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them. 95

**Ch. 725 — 2 —**

(h) Any bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of Currency of the United States.

(i) A person engaged solely in the business of securing information about persons or property from public records.

(j) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt such a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

**EXHIBIT 5**

46

(k) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Sections 25450 to 25475, inclusive, of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(l) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(m) Any savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(n) Any secured creditor engaged in the repossession of the creditor's collateral and any lessor engaged in the repossession of leased property in which it claims an interest.

(o) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(p) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses any deadly weapon, as defined in subdivision (a), in the performance of his or

95

—3 — Ch. 725

her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(q) An armored contract carrier operating armored vehicles pursuant to the authority of the Department of the California Highway Patrol or the Public Utilities Commission, or an armored vehicle guard employed by an armored contract carrier.

SEC. 2. Section 7582.2 of the Business and Professions Code is amended to read:

7582.2. This chapter does not apply to the following:

(a) A person who does not meet the requirements to be a proprietary

**EXHIBIT 5**

47

private security officer, as defined in Section 7574.1, and is employed exclusively and regularly by any employer who does not provide contract security services for other entities or persons, in connection with the affairs of the employer only and where there exists an employer-employee relationship if that person at no time carries or uses any deadly weapon in the performance of his or her duties. For purposes of this subdivision, "deadly weapon" is defined to include any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than five inches, any razor with an unguarded blade and any metal pipe or bar used or intended to be used as a club.

(b) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in any calendar month.

(c) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(d) A charitable philanthropic society or association duly incorporated under the laws of this state that is organized and maintained for the public good and not for private profit.

(e) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the

95

**Ch. 725 — 4 —**

owners of a certain beat or territory as may be fixed from time to time by the police commission.

(f) An attorney at law in performing his or her duties as an attorney at law.

(g) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(h) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(i) Any bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of Currency of the United States.

(j) A person engaged solely in the business of securing information about persons or property from public records.

(k) A peace officer of this state or a political subdivision thereof while

**EXHIBIT 5**

the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(l) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4 of Part 6 of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(m) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

95

— 5 — **Ch. 725**

(n) Any savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(o) Any secured creditor engaged in the repossession of the creditor's collateral and any lessor engaged in the repossession of leased property in which it claims an interest.

(p) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(q) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses any deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

**EXHIBIT 5**

49

(r) The changes made to this section by the act adding this subdivision during the 2005–06 Regular Session of the Legislature shall apply as follows:

(1) On and after July 1, 2006, to a person hired as a security officer on and after January 1, 2006.

(2) On and after January 1, 2007, to a person hired as a security officer before January 1, 2006.

SEC. 3. Section 626.92 is added to the Penal Code, to read:

626.92. Section 626.9 does not apply to or affect any of the following:

(a) A security guard authorized to openly carry an unloaded handgun pursuant to Chapter 6 (commencing with Section 26350) of Division 5 of Title 4 of Part 6.

(b) An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to Section 26361.

SEC. 4. Section 16520 of the Penal Code is amended to read:

16520. (a) As used in this part, "firearm" means any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

95

**Ch. 725 — 6 —**

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26600 to 27140, inclusive.

(9) Sections 27400 to 28000, inclusive.

(10) Section 28100.

(11) Sections 28400 to 28415, inclusive.

(12) Sections 29010 to 29150, inclusive.

(13) Sections 29610 to 29750, inclusive.

(14) Sections 29800 to 29905, inclusive.

(15) Sections 30150 to 30165, inclusive.

(16) Section 31615.

(17) Sections 31705 to 31830, inclusive.

(18) Sections 34355 to 34370, inclusive.

(19) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes any rocket, rocket propelled projectile launcher, or similar device containing any explosive or incendiary material whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an

**EXHIBIT 5**

unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(6) Sections 26500 to 26588, inclusive.

(7) Sections 26700 to 26915, inclusive.

(8) Section 27510.

(9) Section 27530.

(10) Section 27540.

(11) Section 27545.

(12) Sections 27555 to 27570, inclusive.

(13) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

SEC. 5. Section 16750 of the Penal Code is amended to read:
95

— 7 — Ch. 725

16750. (a) As used in Section 25400, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(b) As used in Article 2 (commencing with Section 25850), Article 3 (commencing with Section 25900), and Article 4 (commencing with Section 26000) of Chapter 3 of Division 5 of Title 4, and Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

SEC. 6. Section 16850 of the Penal Code is amended to read:

16850. As used in Sections 17740, 23925, 25105, 25205, and 25610, in Article 3 (commencing with Section 25505) of Chapter 2 of Division 5 of Title 4, and in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, "locked container" means a secure container that is fully enclosed and locked by a padlock, keylock, combination lock, or similar locking device. The term "locked container" does not include the utility or glove compartment of a motor vehicle.

**EXHIBIT 5**

SEC. 7. Section 16950 is added to the Penal Code, to read:

16950. As used in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed to be carried openly or exposed if the handgun is not carried concealed within the meaning of Section 25400.

SEC. 8. Section 17040 is added to the Penal Code, to read:

17040. As used in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, "public place" has the same meaning as in Section 25850.

SEC. 9. Section 17295 is added to the Penal Code, to read:

17295. For purposes of Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

SEC. 10. Section 17512 is added to the Penal Code, to read:

17512. It is a misdemeanor for a driver of any motor vehicle or the owner of any motor vehicle, whether or not the owner of the vehicle is occupying the vehicle, to knowingly permit any other person to carry into or bring into the vehicle a firearm in violation of Section 26350.

SEC. 11. Section 25590 is added to the Penal Code, to read:

95

**Ch. 725 — 8 —**

25590. Section 25400 does not apply to, or affect, the transportation of a firearm by a person if done directly between any of the places set forth below:

(a) A place where the person may carry that firearm pursuant to an exemption from the prohibition set forth in subdivision (a) of Section 25400.

(b) A place where that person may carry that firearm pursuant to an exemption from the prohibition set forth in subdivision (a) of Section 25850, or a place where the prohibition set forth in subdivision (a) of Section 25850 does not apply.

(c) A place where that person may carry a firearm pursuant to an exemption from the prohibition set forth in subdivision (a) of Section 26350, or a place where the prohibition set forth in subdivision (a) of Section 26350 does not apply.

SEC. 12. Section 25595 of the Penal Code is amended to read:

25595. This article does not prohibit or limit the otherwise lawful carrying or transportation of any handgun in accordance with the provisions listed in Section 16580.

SEC. 13. Section 25605 of the Penal Code is amended to read:

25605. (a) Section 25400 and Chapter 6 (commencing with Section 26350) of Division 5 shall not apply to or affect any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, who carries, either openly or concealed, anywhere within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident, any handgun.

(b) No permit or license to purchase, own, possess, keep, or carry, either openly or concealed, shall be required of any citizen of the United States

**EXHIBIT 5**

or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, to purchase, own, possess, keep, or carry, either openly or concealed, a handgun within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident.

(c) Nothing in this section shall be construed as affecting the application of Sections 25850 to 26055, inclusive.

SEC. 14. Chapter 6 (commencing with Section 26350) is added to Division 5 of Title 4 of Part 6 of the Penal Code, to read:

95

— 9 — Ch. 725

Chapter 6. Openly Carrying an Unloaded Handgun

Article 1. Crime of Openly Carrying an Unloaded Handgun

26350. (a) (1) A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following:

(A) A public place or public street in an incorporated city or city and county.

(B) A public street in a prohibited area of an unincorporated area of a county or city and county.

(C) A public place in a prohibited area of a county or city and county.

(2) A person is guilty of openly carrying an unloaded handgun when that person carries an exposed and unloaded handgun inside or on a vehicle, whether or not on his or her person, while in or on any of the following:

(A) A public place or public street in an incorporated city or city and county.

(B) A public street in a prohibited area of an unincorporated area of a county or city and county.

(C) A public place in a prohibited area of a county or city and county.

(b) (1) Except as specified in paragraph (2), a violation of this section is a misdemeanor.

(2) A violation of subparagraph (A) of paragraph (1) of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if both of the following conditions exist:

(A) The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.

(B) The person is not in lawful possession of that handgun.

(c) (1) Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d) Notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a distinct and separate offense

**EXHIBIT 5**

under this section.

Article 2. Exemptions

26361. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any peace officer or any honorably retired peace officer if that officer may carry a concealed firearm pursuant to Article 2

95

**Ch. 725 — 10 —**

(commencing with Section 25450) of Chapter 2, or a loaded firearm pursuant to Article 3 (commencing with Section 25900) of Chapter 3.

26362. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person to the extent that person may openly carry a loaded handgun pursuant to Article 4 (commencing with Section 26000) of Chapter 3.

26363. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.

26364. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization.

26365. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

26366. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while engaged in hunting or while transporting that handgun when going to or returning from that hunting expedition.

26367. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law.

26368. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions.

26369. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6.

26370. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a school zone, as defined in Section 626.9, with the written permission of the school district superintendent, the

**EXHIBIT 5**

54

superintendent's designee, or equivalent school authority.
95
— 11 — Ch. 725

26371. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun when in accordance with the provisions of Section 171b.

26372. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest.

26373. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to loaning, selling, or transferring that handgun in accordance with Article 1 (commencing with Section 27500) of Chapter 4 of Division 6, or in accordance with any of the exemptions from Section 27545, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property.

26374. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business that is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

26375. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event.

26376. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice pursuant to Section 23910.

26377. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun at any established target range, whether public or private, while the person is using the handgun upon the target range.

26378. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace, while the person is actually engaged in assisting that officer.

26379. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to any of the following:

(a) Complying with Section 27560 or 27565, as it pertains to that handgun.

(b) Section 28000, as it pertains to that handgun.

(c) Section 27850 or 31725, as it pertains to that handgun.
95
Ch. 725 — 12 —
(d) Complying with Section 27870 or 27875, as it pertains to that

**EXHIBIT 5**

55

handgun.

(e) Complying with Section 27915, 27920, or 27925, as it pertains to that handgun.

26380. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approved by the Commission on Peace Officer Standards and Training.

26381. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become licensed pursuant to Chapter 4 (commencing with Section 26150) as part of a course of study necessary or authorized by the person authorized to issue the license pursuant to that chapter.

26382. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to and at the request of a sheriff or chief of other head of a municipal police department.

26383. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when done within a place of business, a place of residence, or on private property, if done with the permission of a person who, by virtue of subdivision (a) of Section 25605, may carry openly an unloaded handgun within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

26384. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun if all of the following conditions are satisfied:

(a) The open carrying occurs at an auction or similar event of a nonprofit public benefit or mutual benefit corporation, at which firearms are auctioned or otherwise sold to fund the activities of that corporation or the local chapters of that corporation.

(b) The unloaded handgun is to be auctioned or otherwise sold for that nonprofit public benefit or mutual benefit corporation.

(c) The unloaded handgun is to be delivered by a person licensed pursuant to, and operating in accordance with, Sections 26700 to 26925, inclusive.

26385. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to paragraph (3) of subdivision (b) of Section 171c.

26386. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to Section 171d.

26387. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to subparagraph (F) of paragraph (1) subdivision (c) of Section 171.7.

26388. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun on publicly owned land, if the possession and use of 95

— 13 — Ch. 725

a handgun is specifically permitted by the managing agency of the land and the person carrying that handgun is in lawful possession of that handgun.

26389. Section 26350 does not apply to, or affect, the carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a

**EXHIBIT 5**

56

6 of Article XIII B of the California Constitution because no costs that may be incurred by this act pursuant to Section
may be incurred by a local agency or school district will be incurred because
this act creates a new crime or infraction, eliminates a crime or infraction,
or changes the penalty for a crime or infraction, within the meaning of
Section 17556 of the Government Code, or changes the definition of a crime
within the meaning of Section 6 of Article XIII B of the California
Constitution.

O

**EXHIBIT 5**

57

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)
Nichols, Charles E.

**DEFENDANTS**
Gov. Edmund G. Brown Jr.; Atty Gen Kamala D.Harris; City of Redondo Beach;
City of Redondo Beach Police Department; City of Redondo Beach Police Chief
Joseph Leonardi

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)

Charles Nichols
PO Box 1302
Redondo Beach, CA 90278 - (424) 634-7381 - CharlesNichols@Pykrete.info

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes    ☑ No    ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 USC. 1983 - SECOND AMENDMENT, FOURTH AMENDMENT, FOURTEENTH AMENDMENT, CALIFORNIA CONSTITUTION ARTICLE 1 SECTIONS 1,13

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | IMMIGRATION | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | ☐ 245 Tort Product Liability | ☑ 440 Other Civil Rights ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

# CV11 09916

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☒ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, Santa, San Francisco | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date November 30, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |