1  KAMALA D. HARRIS
   Attorney General of California
2  PETER SOUTHWORTH
   Supervising Deputy Attorney General
3  JONATHAN M. EISENBERG
   Deputy Attorney General
4  State Bar No. 184162
    300 South Spring Street, Suite 1702
5    Los Angeles, CA 90013
    Telephone: (213) 897-6505
6    Fax: (213) 897-1071
    E-mail: Jonathan.Eisenberg@doj.ca.gov
7
   *Attorneys for Defendant California Attorney*
8  *General Kamala D. Harris*

9
                  IN THE UNITED STATES DISTRICT COURT
10
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
11
                          WESTERN DIVISION
12

13

14  **CHARLES NICHOLS,**                | CV-11-09916 SJO (SS)

15                          Plaintiff,  | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
16                      **v.**          | **MOTION TO DISMISS ACTION UNDER FED. R. CIV. P. 12(B)(1)**
17  **EDMUND G. BROWN, Jr., in his**
    **official capacity as Governor of**    | Date:        March 6, 2012
18  **California, KAMALA D. HARRIS,**       | Time:        10:00 a.m.
    **Attorney General, in her official**   | Crtrm.:      23 – 3rd Flr.
19  **capacity as Attorney General of**     | Judge:       Hon. Suzanne H. Segal
    **California, CITY OF REDONDO**
20  **BEACH, CITY OF REDONDO**              | Trial Date:  Not Yet Set
    **BEACH POLICE DEPARTMENT,**            | Action Filed: Nov. 30, 2011
21  **CITY OF REDONDO BEACH**
    **POLICE CHIEF JOSEPH**
22  **LEONARDI and DOES 1 to 10,**

23                          Defendants.

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.   Introduction and Summary ...................................................................1

4    II.  Background Facts....................................................................................2

     III. Pertinent Law ..........................................................................................5

5         A.   Fed. R. Civ. P. 12(b)(1) ...............................................................5

6         B.   Applications of Fed. R. Civ. P. 12(b)(1) ....................................5

7              1.   Article III Standing...............................................................5

               2.   The Ripeness Doctrine .........................................................6

8              3.   Eleventh Amendment Immunity ........................................6

9    IV.  Argument..................................................................................................7

10        A.   The Court Should Dismiss this Case for Lack of Article
               III Standing .......................................................................................7

11        B.   The Court Should Dismiss this Case as Unripe.........................8

          C.   The Eleventh Amendment Bars all of Nichols's Claims
12             Against the Attorney General ..................................................... 10

13        D.   The Eleventh Amendment Bars Nichols's Claim Based on
               the California Constitution ........................................................ 11

14   V.   Conclusion ............................................................................................. 12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

**Page**

3    **CASES**

4    *Abbott Labs. v. Gardner*
5          387 U.S. 136 (1967) ............................................................................................ 8

6    *Alaska Right to Life Political Action Comm. v. Feldman*
          504 F.3d 840 (9th Cir. 2007) ........................................................................... 5, 7
7
     *Artichoke Joe's v. Norton*
8          216 F. Supp. 2d 1084 (E.D. Cal. 2002) ............................................................. 6

9    *Cal. Pro-Life Council, Inc. v. Getman*
          328 F.3d 1088 (9th Cir. 2003) ............................................................................ 8
10
     *Califano v. Sanders*
11         430 U.S. 99 (1977) .............................................................................................. 8

12   *Cardenas v. Anzai*
13         311 F.3d 929 (9th Cir. 1999) .............................................................................. 6

14   *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*
          528 U.S. 167 (2000) ............................................................................................ 7
15
     *Indus. Tectonics, Inc. v. Aero Alloy*
16         912 F.2d 1090 (9th Cir. 1990) ............................................................................ 5

17   *Kokkoen v. Guardian Life Ins. Co. of Amer.*
18         511 U.S. 375 (1994) ............................................................................................ 5

19   *Long v. Van de Kamp*
          961 F.2d 151 (9th Cir. 1992) ............................................................................ 10
20
     *Lujan v. Defenders of Wildlife*
21         504 U.S. 555 (1992) ............................................................................................ 7

22   *Pac. Legal Found. v. State Energy Resources Conservation & Dev. Comm'n*
23         659 F.2d 903 (9th Cir. 1982) .............................................................................. 6

24   *Pennhurst State Schs. & Hosp. v. Halderman*
          465 U.S. 89 (1984) ............................................................................................ 11
25
     *Poe v. Ullman*
26         367 U.S. 497 (1961) ............................................................................................ 6

27   *Potman v. Cty. of Santa Clara*
28         995 F.2d 898 (9th Cir. 1993) .............................................................................. 6

1

## TABLE OF AUTHORITIES
## (continued)

2

**Page**

3

*Renne v. Geary*
    501 U.S. 312 (1991)..................................................................................... 7, 8

4

5

*Rhoades v. Avon Prods., Inc.*
    504 F.3d 1151 (9th Cir. 2007)............................................................................ 6

6

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004)............................................................................ 5

7

8

*Snoeck v. Brussa*
    153 F.3d 984 (9th Cir. 1998)....................................................................... 10, 11

9

*Sofamor Danek Group, Inc. v. Brown*
    124 F.3d 1179 (9th Cir. 1997)............................................................................ 6

10

11

*St. Clair v. City of Chico*
    880 F.2d 199 (9th Cir. 1989)............................................................................. 6

12

13

*Summer H. v. Fukino*
    Civ. No. 09-00047 SOM/BMK, 2009 WL 1249306 (D. Haw. May 6, 2009) ......... 6

14

*Thomas v. Anchorage Equal Rights Comm'n*
    220 F.3d 1134 (9th Cir. 2000) (en banc).................................................5, 7, 9, 11

15

16

**CONSTITUTIONAL PROVISIONS**

17

U. S. Const. Amend. I .................................................................................... 8, 9

18

U.S. Const. Amend. II....................................................................................... 3

19

U.S. Const. Amend. IV .................................................................................... 3

20

U.S Const. Amend. XI .............................................................................. passim

21

**STATUTES**

22

Cal. Code Civ. Proc., § 416.50........................................................................... 2

23

Cal. Pen. Code, § 26150..................................................................................... 4

24

25

Cal. Penal Code, § 26045............................................................................... 3, 9

26

Cal. Penal Code, § 25850........................................................................... passim

27

**COURT RULES**

28

Fed. R. Civ. P. 4(j)(2)....................................................................................... 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Fed. R. Civ. P. 12(b)(1).................................................................................. 5, 6

iv

## I.   INTRODUCTION AND SUMMARY

*Pro Se* Plaintiff Charles Nichols ("Nichols") filed the complaint in this case to challenge the constitutionality of California Penal Code section 25850 ("Section 25850") ,which bans people from openly carrying loaded firearms in public places (but is subject to certain exceptions). Notably, Nichols does not allege that he has violated or made any plans to violate Section 25850, or that any defendant herein has threatened or taken any action to enforce this law against Nichols. Instead, Nichols claims that he has been thwarted from exercising his purported U.S. and California constitutional right openly to carry a loaded handgun in a public place simply by the mere existence of the statute.

While Nichols's pre-enforcement challenge to Section 25850 would not be ripe as to any public-authority defendant, the challenge is particularly defective as to moving Defendant Kamala D. Harris, Attorney General of the State of California (the "Attorney General"), who is sued based solely on her California state constitutional supervisory powers over law enforcement, not on any action or threatened action of Harris. Nichols's claims should be dismissed based on both the constitutional and jurisprudential doctrines requiring that federal courts hear only actual, live controversies. Similarly, the case warrants dismissal in that Nichols cannot legitimately invoke the *"Ex Parte Young"* exception to the Attorney General's immunity from suit under the U.S. Constitution's Eleventh Amendment (the "Eleventh Amendment"), because Nichols has not alleged any threat of enforcement against him of Section 25850 by the Attorney General. Finally, Nichols's state-law claim against the Attorney General is also squarely barred by the Eleventh Amendment.

Moreover, various circumstances could render Section 25850 inapplicable to Nichols, if and when he ever carries a loaded firearm in a public place. For instance, the statute has an express self-defense exception that might apply to

1    Nichols. Until Nichols so acts, and there is a concrete fact pattern to evaluate, it is

2    prudent for the Court to defer considering this case.

3         In sum, the Court should dismiss this hypothetical case at this time, before the

4    case wastes the time and resources of Nichols, the Attorney General, the other

5    defendants, the attorneys, and the Court itself.

6    **II.   BACKGROUND FACTS**

7         Nichols asserts that he resides in the City of Lawndale (Compl. ¶3) and

8    "would openly carry a loaded and fully functional handgun in public for self-

9    defense, but he refrains from doing so because he fears arrest, prosecution, fine, and

10   imprisonment, as he understands it is unlawful to openly carry a handgun in

11   California for the purpose of self-defense." (Compl. ¶¶4, 15.) Nichols apparently

12   wants to carry openly a loaded gun not in Lawndale but in another location, the

13   City of Redondo Beach, and has sued that city, its police department, and its chief

14   of police, to be able to do so. (Compl., ¶¶ 7-9.)

15        Nichols also names as a defendant the Attorney General, in her official

16   capacity. (Compl. ¶ 6.) Nichols sues the Attorney General based solely on her role

17   as the chief state law officer in California, her supervision over California district

18   attorneys, sheriffs, and other law enforcement offices, and her other general state

19   constitutional authority, and not for any action or threatened action. (Compl. ¶ 6.)[1]

20        Nichols claims the need to carry openly a loaded firearm both [1] because an

21   unnamed person allegedly sent him a single "veiled" death threat a few months ago

22   (Compl. ¶15), and [2] to prevent generic "vicious attacks at the hands of criminals

23

24        [1] Nichols delivered to the Attorney General's Los Angeles office a summons
     also naming as a defendant herein Edmund G. Brown Jr., in his official capacity as
25   Governor of the State of California (the "Governor"). The Attorney General
     typically represents the Governor in such litigation. Yet the Attorney General was
26   not authorized to accept service of a summons and complaint for the Governor in
     this action. Thus, service on the Governor was not effective. See Fed. R. Civ. P.
27   4(j)(2); Cal. Code Civ. Proc., § 416.50. In any event, like the Attorney General, the
     Governor is being sued solely because of his general California constitutional role
28   as supreme executive of the state. (Compl. ¶ 5.)

1    and other predators." (Compl. ¶¶51, 61-62, 70, 85.) Based on these alleged

2    concerns and the purported authority of the U.S. and California Constitutions,

3    Nichols requests that this Court invalidate and enjoin enforcement of Section 25850

4    under the Second Amendment and on other grounds. (Compl., ¶¶ 60-89.)

5           Pertinent sub-section (a) of Section 25850 states:

6           A person is guilty of carrying a loaded firearm when the person carries a

7           loaded firearm on the person or in a vehicle while in any public place or on

8           any public street in an incorporated city or in any public place or on any public

9           street in a prohibited area of unincorporated territory.

10   The statute has various exceptions, including self-defense (*see* Cal. Penal Code, §

11   26045); also, people may apply for concealed weapons permits (*see id.*, §§ 25655,

12   26150) -- but Nichols apparently has not done so.

13          Nichols challenges the Fourth Amendment constitutionality of Section

14   25850's sub-section (b), which states:

15          In order to determine whether or not a firearm is loaded for the purpose of

16          enforcing this section, peace officers are authorized to examine any firearm

17          carried by anyone on the person or in a vehicle while in any public place or on

18          any public street in an incorporated city or prohibited area of an

19          unincorporated territory. Refusal to allow a peace officer to inspect a firearm

20          pursuant to this section constitutes probable cause for arrest for violation of

21          this section.

22   (See the second and fourth claims in the complaint.)

23          Importantly, Nichols has not alleged that he is currently violating any portion

24   of Section 25850 or that any public official, including the Attorney General, has

25   threatened to enforce this statute against Nichols. Rather, as Nichols expressly

26   alleges, Nichols's purported harm is that he cannot legally openly carry a loaded

27   handgun in public places, because of the existence of Section 25850.

28

3

1   Nichols's complaint also contains a lengthy discussion of the Second

2   Amendment and recent court decisions on the "right to bear arms." (Compl., ¶¶ 22-

3   47.) Nichols complains that California state courts are supposedly failing to

4   recognize the U.S. Supreme Court's recent decisions on this federal constitutional

5   issue. (Compl., ¶¶ 58-59.) The Attorney General can only surmise that Nichols

6   includes these allegations because, if he ever actually carries a loaded gun in a

7   public place, and if he ever suffers any actual prosecution for that offense, Nichols

8   believes that California state courts cannot be trusted to recognize his asserted

9   federal constitutional defenses.

10   Nichols also makes extensive allegations on other subjects, the relevance of

11   which allegations are not clear.

12   •   According to Nichols, California's ban on people carrying loaded

13   firearms in public places originated in the 1960s because of certain alleged

14   activities of the Black Panthers, but that ban is being applied today more

15   broadly than the California Legislature ever intended. (Compl., ¶¶ 19-21.)

16   •   Nichols also mentions a statutory exception to Section 25850 for people

17   carrying loaded guns while hunting, and further mentions that the City of

18   Redondo Beach imposes "a minor fine" for illegally hunting. (Compl., ¶¶ 16,

19   48.)

20   •   Nichols also alleges that he is unable to apply for a permit to carry a

21   *concealed* firearm in a public place, because such permits supposedly are

22   available (and can be lawfully used) in only those counties with

23   populations of under 200,000 people. (Compl., ¶ 13; Cal. Pen. Code, §

24   26150(b)(2).) Nichols provides no explanation why he has not applied for

25   such a permit, an option that is available in all California counties. (Cal.

26   Pen. Code, § 26150(a), (b)(1).) Nichols disavows any attack on the

27   restrictions on the carrying of concealed firearms. (Compl., ¶ 37.)

28

4

1    •      Finally, Nichols alleges that his injury has been compounded because, as

2    of 2012, California has also restricted the open carrying of *unloaded*

3    firearms in public places. (Compl., ¶¶ 54-56.)

4    Despite mentioning other California Penal Code sections in the complaint, Nichols

5    clearly attacks the constitutionality of Section 25850 only.

6    **III.  PERTINENT LAW**

7         **A.  Fed. R. Civ. P. 12(b)(1)**

8         Federal Rule of Civil Procedure 12(b)(1) (hereinafter, "Rule 12(b)(1)")

9    permits dismissal of a complaint for lack of subject-matter jurisdiction. *See Safe Air*

10   *for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A Rule 12(b)(1)

11   motion may be a facial attack asserting "that the allegations in the complaint are

12   insufficient on their face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.

13   Even though a Rule 12(b)(1) motion is brought by a litigant seeking dismissal of an

14   adverse complaint for lack of subject-matter jurisdiction, "[t]he [opposing] party

15   asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus.*

16   *Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir. 1990) (*citing McNutt v.*

17   *Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the court

18   presumes lack of jurisdiction until the party invoking the court's jurisdiction proves

19   otherwise. *Kokkoen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994).

20        **B.  Applications of Fed. R. Civ. P. 12(b)(1)**

21        A 12(b)(1) motion is appropriately used to resolve at least three kinds of

22   subject-matter jurisdiction issues, based on (1) "Article III standing," (2) the related

23   issue of "ripeness," and/or (3) immunity under the Eleventh Amendment to the U.S.

24   Constitution.

25        **1.  Article III Standing**

26        The U.S. Constitution grants federal courts power to adjudicate only live

27   "cases" and "controversies." U.S. Const., art. III, sec. 2 (hereinafter, "Article III");

28   *Alaska Right to Life Political Action Comm. v. Feldman,* 504 F.3d 840, 848 (9th

1  Cir. 2007). Federal courts should not issue advisory opinions or declare rights in

2  hypothetical cases. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134,

3  1138 (9th Cir. 2000) (*en banc*). A Rule 12(b)(1) motion is a proper means to obtain

4  the dismissal of a lawsuit that is not a case or controversy under Article III.

5  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 n.3 (9th Cir. 2007).

6                    **2.    The Ripeness Doctrine**

7         "The doctrines of standing and ripeness are closely related." *Pac. Legal*

8  *Found. v. State Energy Resources Conservation & Dev. Comm'n*, 659 F.2d 903,

9  915 (9th Cir. 1982). A claim not only must present a live case or controversy but

10  also must be ripe for adjudication in federal court. See *Potman v. Cty. of Santa*

11  *Clara,* 995 F.2d 898, 902 (9th Cir. 1993). The ripeness doctrine precludes a federal

12  court from exercising jurisdiction over an action that is filed before a concrete

13  dispute exists between the adverse parties. *Poe v. Ullman,* 367 U.S. 497, 507

14  (1961). "Ripeness is properly addressed in a Rule 12(b)(1) motion to dismiss

15  because it concerns subject matter jurisdiction." *Summer H. v. Fukino*, Civ. No. 09-

16  00047 SOM/BMK, 2009 WL 1249306, at *4 n.1 (D. Haw. May 6, 2009) (*citing*

17  *Gemtel Corp. v. Cmty. Redevelopment Agency*, 23 F.3d 1542, 1544 (9th Cir.

18  1994)); *accord, St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989).

19                    **3.    Eleventh Amendment Immunity**

20        The Eleventh Amendment generally bars lawsuits in federal courts against

21  officials of U.S. states, without the officials' consent. See *Cardenas v. Anzai*, 311

22  F.3d 929, 934 (9th Cir. 1999); *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084,

23  1110-11 (E.D. Cal. 2002). Eleventh Amendment immunity is properly determined

24  on a 12(b)(1) motion. *See Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179,

25  1183 n.2 (9th Cir. 1997).

26        //

27        //

28        //

6

IV.  **ARGUMENT**

   A.   **The Court Should Dismiss this Case for Lack of Article III Standing**

   To establish Article III case-or-controversy standing, a plaintiff must satisfy three elements: (1) the plaintiff must have suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) said injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely, not just speculative, that said injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Alaska Right to Life*, 504 F.3d at 848. A plaintiff has not suffered an injury in fact merely by speculating that he, she, or it will be the subject of a law-enforcement action to which there will be a constitutional defense. *Anchorage Equal Rights*, 220 F.3d at 1139. Furthermore, a court must consider whether the alleged injury is "more than a generalized grievance" among other factors. *Alaska Right to Life*, 504 F.3d at 849; *accord*, *Thomas*, 220 F.3d at 1139.

   In the present case, Nichols has only an imaginary injury to claim, and thus fails to satisfy the above-identified first element for Article III standing. As noted above, Nichols asserts that he merely wants to be able openly to carry a loaded, fully-functional handgun in public, to deter a feared physical attack by an unnamed person who allegedly made to Nichols one veiled death threat, a full two months before Nichols filed the present lawsuit. (Compl., ¶15.) Nichols has not alleged that he has taken other self-protective actions, but allegedly did report the death-threat incident to the local sheriff's office. (Compl., ¶15.) As noted above, Nichols could apply for a permit to carry a loaded, concealed firearm (although it is uncertain whether Nichols would qualify for such a permit), and, obviously, there are many other actions that Nichols could take to protect himself from any real threat. In any event, the Attorney General has not threatened to enforce Section 25850 against

7

1  Nichols, and her conduct has not injured Nichols in any concrete, particularized,

2  actual, or imminent way.

3       Nichols is like the plaintiff Democratic Committee in *Renne v. Geary*, 501

4  U.S. 312 (1991), which committee challenged an election law under the First

5  Amendment. *Id.* at 314. That committee averred (in an affidavit) that it declined to

6  endorse candidates for non-partisan elective offices "solely out of concern that

7  committee members may be criminally or civilly prosecuted for violation of" a

8  pertinent California election statute. *Id*. at 317-18. The U.S. Supreme Court held

9  that the committee's inactivity meant that the committee lacked standing to

10  challenge the election law in court; there was just no case or controversy for a court

11  to adjudicate. Likewise, Nichols's inaction with respect to his handgun, and the

12  related inaction of the Attorney General on this point, cannot constitute an injury to

13  Nichols for Article III purposes.

14       Without an injury, Nichols cannot satisfy the second or third prongs of the

15  Article III standing test, either, because those prongs assume the injury. A non-

16  existent injury can be neither traced anywhere nor redressed by a favorable court

17  decision.[2]

18       **B.   The Court Should Dismiss this Case as Unripe**

19       The ripeness doctrine is designed to "prevent the courts, through avoidance of

20  premature adjudication, from entangling themselves in abstract disagreements."

21  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Ripeness has "both a

22  constitutional and a prudential component." Id. The "constitutional component of

23  ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal.*

24  *Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003). For the

25  prudential component of ripeness, courts evaluate "the fitness of the issues for

26       [2] Should Nichols, in responding to the present motion, identify in the
complaint a viable injury that the Attorney General presently cannot discern, the

27  Attorney General reserves the right to carry out the second and third parts of Article
III standing analysis, based on that injury, in the reply brief for this motion.

28

8

1  judicial decision and the hardship to the parties of withholding court consideration."

2  *Abbot Labs. v. Gardner*, 387 U.S. 136 (1967) (abrogated on other grounds by

3  *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

4        It already has been shown that Nichols has no injury for Article III standing

5  purposes. The same analysis and reasoning undermine any notion that the case at

6  bar is ripe in a constitutional sense.

7        Meanwhile, the prudential concerns in this case echo the prudential concerns

8  in *Anchorage Equal Rights* that led to a finding of unripeness. In *Anchorage Equal*

9  *Rights,* some Alaska landlords*,* out of religious beliefs, vowed never to rent housing

10  to unmarried couples, despite state and local laws banning marital-status

11  discrimination in rental housing; so the landlords challenged the laws in court on

12  First Amendment grounds. 220 F.3d at 1137-38. The *en banc* U.S. Court of

13  Appeals, Ninth Circuit, was dismayed that:

14        the landlords ask us to declare Alaska laws unconstitutional, in the absence of
        any identifiable tenants and with no concrete factual scenario that
15        demonstrates how the laws, as applied, infringe their constitutional rights. This
        case is a classic one for invoking the maxim that we do not decide
16        constitutional questions in a vacuum.
17

18  *Id*. at 1141 (citations and internal punctuation omitted). Nichols's case, so far, is

19  just as skeletal factually as *Anchorage Equal Rights*. Indeed, it might turn out that

20  Nichol's actual conduct, if ever taken, comes under the above-described self-

21  defense exception to Section 25850, such that Nichols is not prosecuted, or

22  prosecuted but not convicted, under Section 25850.[3] For these reasons, it is prudent

---

23        [3] California Penal Code section 26045 provides, in part, as follows:

24        (a) Nothing in Section 25850 is intended to preclude the carrying of any
    loaded firearm, under circumstances where it would otherwise be lawful, by a
25    person who reasonably believes that any person or the property of any person is in
    immediate, grave danger and that the carrying of the weapon is necessary for the
26    preservation of that person or property.
        (b) A violation of Section 25850 is justifiable when a person who possesses a
27    firearm reasonably believes that person is in grave danger because of circumstances
    forming the basis of a current restraining order issued by a court against another
28                                                              (continued…)

1    for this Court to await the development of a concrete factual record before

2    considering making substantive constitutional rulings about Section 25850. In the

3    meantime, given Nichols's inability to identify any concrete harm that he is

4    suffering presently, there is no hardship in deferring an improper, premature

5    adjudication of Nichols's desire openly to carry a loaded firearm generally.

6         **C.**      **The Eleventh Amendment Bars All of Nichols's Claims Against**

7                  **The Attorney General**

8         For a state official to be legitimately subject to a lawsuit in federal court

9    challenging the official's oversight of a state law (in the "*Ex Parte Young*"

10   exception to the Eleventh Amendment), not only must the official have a "fairly

11   direct" connection with the enforcement of the law, but also "there must be a real

12   threat of enforcement… Absent a real likelihood that the state official will employ

13   his [or her] powers against plaintiffs' interests, the Eleventh Amendment bars

14   federal court jurisdiction." *Long v. Van de Kamp,* 961 F.2d 151, 152 (9th Cir.

15   1992); *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th Cir. 1998) ("[T]he officers of the

16   state must…threaten or be about to commence civil or criminal proceedings to

17   enforce an unconstitutional act").

18        As noted above, Nichols has not made any allegations that the Attorney

19   General has threatened Nichols with a law-enforcement action, or made any move

20   to commence civil or criminal proceedings, in connection with Nichols's alleged

21   desire openly to carry a loaded and fully functional handgun in public for self-

22   defense. For that simple reason, under the Eleventh Amendment jurisprudence cited

23

---

24   (…continued)
     person who has been found to pose a threat to the life or safety of the person who

25   possesses the firearm. …Upon trial for violating Section 25850, the trier of fact
     shall determine whether the defendant was acting out of a reasonable belief that the

26   defendant was in grave danger.
         (c) As used in this section, "immediate" means the brief interval before and

27   after the local law enforcement agency, when reasonably possible, has been notified
     of the danger and before the arrival of its assistance.

28

10

1    above, the Attorney General is and should by this Court be deemed immune to

2    Nichols's complaint.

3       A deeper analysis just leads to the same conclusion. "In evaluating the

4    genuineness of a claimed threat of prosecution, [a court should] look to [1] whether

5    the plaintiff[] ha[s] articulated a 'concrete plan' to violate the law in question, [2]

6    whether the prosecuting authorities have communicated a specific warning or threat

7    to initiate proceedings, and [3] the history of past prosecution or enforcement under

8    the challenged statute." *Anchorage Equal Rights*, 220 F.3d at 1139.

9       [1]  By a "concrete plan…the Constitution means something more than a

10    hypothetical intent to violate the law." *Id*. Notably, Nichols admits that he does not

11    even have such a hypothetical intent to violate Section 25850. (Compl. ¶¶4, 15.)

12       [2]  "Although [courts] do not require [a] plaintiff[] to await arrest or

13    prosecution before entertaining a challenge to the constitutionality of a statute…the

14    threat of enforcement must at least be credible, not simply imaginary or

15    speculative." *Anchorage Equal Rights*, 220 F.3d at 1140 (citation and internal

16    punctuation omitted); *Snoeck v. Brussa*, 153 F.3d at 987(officers of the state must

17    threaten or be about to commence civil or criminal proceedings to enforce an

18    unconstitutional act). As noted above, in the present case, the threat of enforcement

19    is simply imaginary and speculative at this time.

20       [3]  Regarding the history of enforcement of Section 25850, the Attorney

21    general will concede for purposes of this motion only that, statewide, law-

22    enforcement authorities have appropriately enforced Section 25850 -- to the benefit

23    of the health and safety of everyone in California. (This partial concession does not

24    overcome the two other factors in the analysis, or otherwise render this case ripe for

25    adjudication.)

26       As can be seen quickly or by a longer look, Nichols cannot bypass the

27    Eleventh Amendment to reach the Attorney General in this case.

28

**D.     The Eleventh Amendment Bars Nichols's Claim Based on the California Constitution**

Nichols's seventh count, asserting a violation of parts of the California Constitution (Compl. ¶¶83-89), is squarely barred by *Pennhurst State Schs. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Applying the Eleventh Amendment, *Pennhurst* holds that a federal court may not grant relief against a state official on the basis of state law. *Id.* at 106. Indeed, *Pennhurst* states that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id*. Plainly, then, the Court should dismiss Nichols's seventh count for improperly attempting to have a federal court dictate to state officials how to enforce, or to refrain from enforcing, a California statute, Section 25850.

Furthermore, *Pennhurst*'s "constitutional bar applied to pendent claims as well."465 U.S. at 119. The Court should not maintain jurisdiction over the claim on state-law-claim pendency grounds, either.

## V.   CONCLUSION

Nichols has brought this lawsuit based only on his belief that he has a constitutional right openly to carry loaded firearms in public places. That belief does not suffice to create a cognizable case or controversy here. The case is not ripe for adjudication. The Eleventh Amendment bars the case against the Attorney General and also bars the California-constitution-based claim. The Attorney

//

//

//

//

//

//

12

1   General respectfully requests that, under 12(b)(1), the Court dismiss this action

2   because Nichols has failed to establish subject-matter jurisdiction.

3   Dated: January 30, 2012                     Respectfully submitted,

4                                                KAMALA D. HARRIS
                                                 Attorney General of California
5                                                PETER SOUTHWORTH
                                                 Supervising Deputy Attorney General
6

7

8   */s/ Jonathan M. Eisenberg*
                                                 JONATHAN M. EISENBERG
                                                 Deputy Attorney General
9                                                *Attorneys for Defendants Governor's*
                                                 *Office*
10

    SA2012104470
11  60705297.doc

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:  **Nichols, Charles v. Edmund G. Brown Jr.**          No.   **11-cv-09916-SJO-SS**

I hereby certify that on <u>January 30, 2012</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS ACTION UNDER FED. R. CIV. P. 12(B)(1)**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users.  On <u>January 30, 2012</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Michael W. Webb                          Nichols Charles
City Prosecutor                          P.O. Box 1302
Redondo Beach City Attorney's Office     Redondo Beach, CA  90278
401 Diamond Street
Redondo Beach, CA  90277

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>January 30, 2012</u>, at Los Angeles, California.

R. Velasco
Declarant                                 Signature

60705248.doc