FILED

2012 FEB -8 PM 2: 11

CLERK U S DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

Charles Nichols
PO Box 1302
Redondo Beach, CA  90278
Voice: (424) 634-7381
E-Mail: CharlesNichols@Pykrete.info
In Pro Per

United States District Court

Central District of California

| | |
|---|---|
| Charles Nichols,<br><br>          Plaintiff,<br><br>     vs.<br><br>EDMUND G. BROWN, Jr., in his official capacity as Governor of California, KAMALA D. HARRIS, Attorney General, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,<br><br>          Defendants. | Case No.:<br><br>CV-11-9916 SJO (SS)<br><br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KAMALA HARRIS' MOTION TO DISMISS**<br><br><br>Date: March 6, 2012<br>Time: 10:00 A.M.<br>Ctrm: 23-3rd Flr.<br>Trial Date:  Not Yet Set<br>Action Filed:  Nov. 30, 2011 |

# TABLE OF CONTENTS

INTRODUCTION...................................................................................1

ARTICLE III, RIPENESS, ELEVENTH AMENDMENT IMMUNITY, F.R.Civ.P. 12(b)(1)........................................................................................6

THE RIGHT TO SELF DEFENSE EXISTS OUTSIDE OF THE HOME...........12

FOURTH AND FOURTEENTH AMENDMENTS.....................................19

CONCLUSION..................................................................................20

Case No. CV-11-9916 SJO (SS)

# TABLE OF AUTHORITIES

**FEDERAL CONSTITUTION**

ARTICLE III..................................................................6

SECOND AMENDMENT.............................................passim

FOURTH AMENDMENT.........................................19, 20

ELEVENTH AMENDMENT.....................................6, 9, 10

FOURTEENTH AMENDMENT...............................16, 19, 20

**FEDERAL CASES**                                        PAGE(S)

Hebbe v. Pliler (9th Cir. 2010) 611 F3d 1202.............................1

AE v. County of Tulare, Court of Appeals, 9th Circuit 2012, 798....................2

District of Columbia v. Heller, 554 U.S. 570, 592 (2008), 128 S. Ct. 2783; 171 L. Ed. 2d 637, 2008 U.S. LEXIS 5268..................................passim

Dearth v. Holder, 641 F. 3d 499 - Court of Appeals, Dist. of Columbia Circuit 2011 ..................................................6, 7

Holder v. Humanitarian Law Project, 130 S. Ct. 2705 - Supreme Court 2010.......8

Wolfson v. Brammer, 616 F. 3d 1045 - Court of Appeals, 9th Circuit 2010.........9

Porter v. Jones, 319 F. 3d 483 - Court of Appeals, 9th Circuit 2003.................9

Badger Catholic, Inc. v. Walsh (7th Cir. 2010) 620 F3d 775.........................11

Payne v. Peninsula School Dist., 653 F. 3d 863 - Court of Appeals, 9th Circuit 2011.........................................................11

Albingia Versicherungs AG v. SCHENKER INTL., 344 F. 3d 931 - Court of Appeals, 9th Circuit 2003.................................12

McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 177 L. Ed. 2d 894, 2010 U.S. LEXIS 5523 (2010)....................................13, 15, 17

United States v. Chester, 628 F.3d 673, 683 (4th Cir. 2010).........................18

US v. Masciandaro, 638 F. 3d 458 - Court of Appeals, 4th Circuit 2011...........19

**CALIFORNIA CASES**

Ex Parte Cheney 90 Cal. 617; 27 P. 436; 1891 Cal. LEXIS 977..............2, 12, 17

In Re Ramirez 193 Cal. 633; 226 P. 914; 1924 Cal. LEXIS 351................passim

People v. Rappard , 28 Cal.App.3d 302 (1972)..........................................3, 14

People v. Strider, 177 Cal. App. 4th 1393 - Cal: Court of Appeal, 2nd Appellate

Dist., 3rd Div. 2009........................................................................7, 8


**CASES FROM OTHER STATES**

Nunn v. Georgia/State, 1 Ga. 243......................................4, 5, 15, 16, 19

State v. Chandler, 5 La. Ann. 489, 490 (1850)................................4, 14, 18

In re Brickey, 8 Idaho 597, 70 P. 609 (1902)..........................................18

Kellogg v. City of Gary, 562 N.E.2d 685 (Ind. 1990)..................................18

State ex rel. City of Princeton v. Buckner, 180 W. Va. 457, 377 S.E.2d 139

(1988)..........................................................................18

City of Las Vegas v. Moberg, 82 N.M. 626, 485 P.2d 737 (N.M. Ct. App.

1971).........................................................................18

State v. Rosenthal, 75 Vt. 295, 55 A. 610 (1903)....................................18

Andrews v. State, 50 Tenn. 165 (1871)..............................................18

State v. Delgado, 298 Or. 395, 692 P.2d 610 (Or. 1984)............................18

State v. Reid, 1 Ala. 612 (1840)....................................................18


**CALIFORNIA CONSTITUTION**

Article I, Section 1 of the California Constitution......................................3


**CALIFORNIA STATUTES**

California Penal Code section 12031(j)(1) [PC26045(a)]...........................7, 8

California Penal Code section 12031(e) [PC25850(b)]..............................19

California Penal Code section 12031(a)(1) [PC25850(a)]...........................19

**THE 2012 CALIFORNIA RULES OF COURT**

Rule 8.29(c)(1)...............................................................................9, 10


**OTHER AUTHORITIES**

"HELLER'S CATCH-22" by UCLA Law Professor Adam Winkler UCLA School

of Law Public Law & Legal  Theory Research Paper Series Research Paper No.

09-10 (Electronic copy available at: http://ssrn.com/abstract=1359225)................13


**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rule of Civil Procedures 12(b)(1).................................................6, 10

Federal Rule of Civil Procedures 5.1...........................................................10

Federal Rule of Civil Procedures 12(b)..........................................................10

Puerto Rico Court of Appeals in In re Nido Lanausse, No. G PA2010-0002, 2011

WL 1563927 (P.R. Cir. Jan. 31, 2011)..........................................................19

Bureau of Justice Statistics, U.S. Dep't of Justice, Criminal Victimization in the

United States, 2008 Statistical Tables, tbl. 61...............................................19

CV-11-9916 SJO (SS)

# PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
# DEFENDANT KAMALA HARRIS' MOTION TO DISMISS

COME NOW Plaintiff Charles Nichols, Pro Se, and submit his Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss.

## INTRODUCTION
### (The Motion to Dismiss is Frivolous and Seeks to Delay)

In the L.R. 7-3 Conference of Counsel held on 1/24/2012 Plaintiff strongly opposed Defendant's Motion to Dismiss on a number of grounds, including Hebbe v. Pliler (9th Cir. 2010) 611 F3d 1202, 1205] hereinafter referred to as Hebbe. A pro se "...complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," as the Supreme Court has reaffirmed since Twombly. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under Iqbal.[7] While the standard is higher, our "obligation" remains, "where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." Bretz v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)." Hebbe at 342  Plaintiff is represented Pro Se and this is a civil rights case.

Even if Hebbe did not apply, in Twombly a conspiracy was alleged with no supporting facts.  Plaintiff is not "An anti-trust conspiracy plaintiff with evidence showing nothing…"  Under the strict Iqbal threshold, Plaintiff "…plaintiff must be

1

given the opportunity to try to meet those [pleading] requirements." AE v. County of Tulare, Court of Appeals, 9th Circuit 2012, 798.  The statue at issue in this case has been actively enforced by Defendants since its enactment of July of 1967 which Movant is well aware of as she is the counsel of record in some 40 California Appellate cases involving prosecution of the statute at issue as is her predecessor in hundreds more.

It is not surprising that Movant, having neither the law nor facts to defend the statute at issue in this case, has resorted to throwing procedural smoke grenades in order to delay this Court from deciding on the merits of this case.

Furthermore, Movant deliberately misstates the nature of this case.  On page 4, line 20 of the Memorandum of Points and Authorities in Support of the Motion to Dismiss, hereinafter referred to as Memorandum; Movant states that Plaintiff "...alleges that he is unable to apply for a permit to carry a concealed firearm in a public place..."  Plaintiff has never alleged that he is unable to apply for a permit to carry a firearm concealed.  Instead, Plaintiff alleges that a statute, not at issue in this case, precludes him from even applying for a license to **Openly Carry** a loaded handgun in this state.

Since at least 1891 in Ex Parte Cheney 90 Cal. 617; 27 P. 436; 1891 Cal. LEXIS 977, hereinafter referred to as Cheney, the California Supreme Court has held that permits to carry a handgun concealed are lawful.  Open Carry is the lawful manner of carrying a loaded firearm in public in this state under both the California Constitution and the Constitution of the United States.  California does not provide for the issuance of licenses to openly carry a loaded firearm in public in this venue and that statute is not at issue.

2

The privilege of a Concealed Carry permit is not an alternative to the Constitutional right to Openly Carry a loaded firearm in non-sensitive public places for the purpose of self-defense.  Since 1924, the California Supreme Court has relied upon In Re Ramirez 193 Cal. 633; 226 P. 914; 1924 Cal. LEXIS 351; 34 A.L.R. 51 hereinafter referred to as Ramirez, in upholding convictions for carrying handguns concealed in public without a permit.  Ramirez was convicted of carrying a pistol concealed in violation of the 1923 Act which made it a crime for persons who were not natural born citizens to carry a handgun in public (or to even possess one privately) although such persons were not prohibited from openly carrying loaded rifles and shotguns in public.  That prohibition on unnaturalized foreign-born persons was struck down as unconstitutional in People v. Rappard , 28 Cal.App.3d 302 (1972).  Ramirez had also raised a Second Amendment claim of self-defense as well as a Fourteenth Amendment claim.

The court in Ramirez incorrectly concluded that the Second Amendment dealt only with militias and applied only to the Federal Government. The court not finding a militia corollary in the California Constitution rejected the Second Amendment claim to self-defense.  Had the court the benefit of the Heller decision in 1923 it would not have had to look very far to find a self-defense right in the California Constitution.  Article I, Section I of the California Constitution enumerates a right to self-defense and has done so ever since California became a Republic in 1848.

California Supreme Court Justice William P. Lawlor had this to say in Ramirez at 9: "It may be remarked that an absolute prohibition of such right might be held to infringe a fundamental right. In Nunn v. Georgia, 1 Ga. 243, the court said: "We are of the opinion then, that so far as the act of 1837 seeks to suppress the practice of carrying certain weapons secretly, that it is valid, inasmuch as it

3

does not deprive the citizen of his natural right of self-defense, or of his constitutional right to keep and bear arms. But that so much of it, as contains a prohibition against bearing arms openly, is in conflict with the constitution, and void; and that, as the defendant has been indicted and convicted for carrying a pistol, without charging that it was done in a concealed manner, under that portion of the statute which entirely forbids its use, the judgment of the court below must be reversed, and the proceeding quashed." See also ¶ 28 of Complaint.

The US Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 592 (2008), 128 S. Ct. 2783;171 L. Ed. 2d 637, 2008 U.S. LEXIS 5268 hereinafter referred to as Heller ""...held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, e.g., State v. Chandler, 5 La. Ann., at 489–490; Nunn v. State, 1 Ga., at 251;..." Both State v. Chandler and Nunn v. State addressed the manner of carrying a handgun in public

"Likewise, in State v. Chandler, 5 La. Ann. 489, 490 (1850), the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" Heller at 40.  As well as a ban on openly carrying handguns in public "In Nunn v. State, 1 Ga. 243, 251 (1846), the Georgia Supreme Court construed the Second Amendment as protecting the "natural right of self-defence" and therefore struck down a ban on carrying pistols openly." Heller at 57.

Movant's Memorandum of Points and Authorities in Support of the Motion to Dismiss, hereinafter referred to as Memorandum, is rife with misstatements.  For

4

example, on page 2, line 12 of the Memorandum Movant suggests that Plaintiff seeks only to openly carry a loaded firearm solely in the City of Redondo Beach. Nowhere in the complaint does Plaintiff even remotely imply that the scope of the relief he seeks is limited to that city.  Nor does the statute at issue affect just the Plaintiff.  It affects a broad class of people.  The statute at issue, in conjunction with Penal Code section 26350 (ban on unloaded Open Carry of handguns) leaves only the carrying of unloaded rifles and shotguns as a means of self-defense.  As applied to Plaintiff, this presents a substantial burden due to his physical disability. Disabled persons who lack the upper body strength to wield a long gun are completely disarmed.   On page 4 lines 8-9 Movant states that Plaintiff "...believes state courts cannot be trusted to recognize his asserted Federal constitutional defenses."

State courts often err in their interpretation of the Federal Constitution.  If they did not, we would have no need of the Federal Courts to correct their misinterpretations.

Counsel for Defendants Harris and Brown promised Plaintiff "A shiny new nickel" if the Motion to Dismiss were denied.  As it is in the Plaintiff's interest to quickly proceed to a Motion for Preliminary Injunction and avoid having to file even a 1st Amended Complaint, Plaintiff will attempt to "clear the air."  Counsel for defendants Brown and Harris can keep his nickel.

Given that Movant does not explicitly claim that DEFENDANT BROWN is not a proper party to the complaint, Plaintiff need not reply to defenses that were not raised for that party.

5

**Article III, Ripeness, Eleventh Amendment Immunity, F.R.Civ.P. 12(b)(1)**

Movant argues that this case must be dismissed, characterizing it as a "pre-enforcement challenge" because Plaintiff has not been arrested and DEFENDANT HARRIS has not "...alleged any threat of enforcement..." see Page 1, lines 21-22 of Movant's Memorandum.  Plaintiff is only aware of one Second Amendment case where a Motion to Dismiss was granted on such spurious grounds.  That motion was reversed and remanded back to the lower court.  Dearth v. Holder, 641 F. 3d 499 - Court of Appeals, Dist. of Columbia Circuit 2011 hereinafter referred to as Dearth. "Dearth is an American citizen who resides in Canada and no longer maintains a residence in the United States." Dearth at 501.  Unlike in Dearth, PLAINTIFF NICHOLS is a resident of this state and country and "...would openly carry a loaded and fully functional handgun in public for self-defense, but he refrains from doing so because he fears arrest, prosecution, fine and imprisonment..." (Compl. ¶ 4).

"In a case of this sort, where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing. Rather, Dearth must show he is suffering an ongoing injury or faces an immediate threat of injury." Dearth at 502.

The "ongoing injury" is the deprivation of Plaintiff's Constitutional right to openly carry a loaded firearm, particularly a handgun, for the purpose of self-defense, in non-sensitive public places.  Movant does not deny that Plaintiff would be arrested and prosecuted for violating the statute at issue nor must Plaintiff be arrested and convicted for violating the statute at issue to have standing.

6

"...plaintiffs had standing because, rather than alleging merely an intent to violate the District's gun laws, he had "invoked his rights under the Second Amendment to challenge the statutory classifications used to bar his ownership of a handgun." Dearth at 502.

Plaintiff has invoked his right to openly carry a loaded firearm under the Second Amendment, his rights to be free from unconstitutional searches and seizures under the Fourth Amendment, his rights to Due Process and Equal Protection under the Fourteenth Amendment and others.

Movant argues that Plaintiff "...does not allege that he has violated or made any plans to violate Section 25850." on Page 1, lines 5-6 of the Memorandum. Plaintiff avers that he will violate this statute to defend himself and will not wait until he is in "...immediate, grave danger..." Immediate, grave danger is a point at which it would most likely be to late to prevent Plaintiff from becoming yet another of the countless victims who were denied the ability to defend themselves in public places because of the statute at issue. See Penal Code Section 12031(j)(1) (renumbered as Penal Code section 26045(a) effective January 1, 2012)

Plaintiff challenges the bar to openly carrying a loaded firearm in non-sensitive public places which includes the curtilage of his home as the California courts have concluded that such places are "public places."

People v. Strider, 177 Cal. App. 4th 1393 - Cal: Court of Appeal, 2nd Appellate Dist., 3rd Div. 2009 hereinafter referred to as Strider, "...the "key consideration is whether a member of the public can access the place `without challenge.' [Citation.]" (People v. Krohn, supra, 149 Cal.App.4th at p. 1298.) Here,

7

there was a considerable challenge: a high metal fence." Strider at 1405. Unlike the "high metal fence" in Strider, Plaintiff's front gate can easily be stepped over by a person of average height. Given that Redondo Beach, Torrance and LASD Police patrol cars routinely pass in front of Plaintiff's home, he is at risk of arrest and prosecution under the statute at issue for carrying a firearm on his own private residential property. Simply leaning out of his front door with a loaded firearm in response to a suspicious noise or intruder puts Plaintiff at risk of arrest, prosecution and imprisonment.

The United States Supreme Court precludes prior or current prosecution for a case to have Article III standing. "Plaintiffs seek preenforcement review of a criminal statute. Before addressing the merits, we must be sure that this is a justiciable case or controversy under Article III. We conclude that it is: Plaintiffs face "a credible threat of prosecution" and "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." Babbitt v. Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (internal quotation marks omitted). See also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128-129, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) Holder v. Humanitarian Law Project, 130 S. Ct. 2705 - Supreme Court 2010 at 2717

On Page 1, lines 25-27 and ending on Page 2, line 1, Movant alleges that there is a self-defense exception that "might apply" to Plaintiff. Movant does not state what that self-defense exception "might" be. Presumably, it is section PC12031 (j)(1) (renumbered as Penal Code section 26045(a) effective January 1, 2012). That subsection of the statute at issue provides for only an affirmative defense at trial. An affirmative defense does not prevent, arrest, prosecution conviction or even imprisonment.

8

"Certain defendants contend that this action is barred by Eleventh Amendment immunity, which "erects a general bar against federal lawsuits brought against a state." Porter, 319 F.3d at 491, citing Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The Eleventh Amendment does not bar suits against a state official for prospective relief. Id., citing Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Eleventh Amendment poses no bar..." Wolfson v. Brammer, 616 F. 3d 1045 - Court of Appeals, 9th Circuit 2010 at 1066.

"The Eleventh Amendment erects a general bar against federal lawsuits brought against a state. Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). However, suits against a state official are an exception to this bar. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under the doctrine of Ex parte Young, suits against an official for prospective relief are generally cognizable, whereas claims for retrospective relief (such as damages) are not." Porter v. Jones, 319 F. 3d 483 - Court of Appeals, 9th Circuit 2003 at 491.

This suit does not seek monetary damages from any defendant. All seven Claims for Relief in the complaint clearly state declaratory **and/or** prospective relief. Neither is this suit compulsory.

The 2012 California Rules of Court Rule 8.29(c)(1) requires service on the Attorney General when the constitutionality of a state statute is questioned. The state of California has concluded that the Attorney General is an appropriate party to defend the statute at issue, so should this Court.

Even if this Court should conclude that the Rule 8.29(c)(1) requirement does not constitute consent by the state, Defendant Harris cannot be removed as a

defendant for the Claims for Relief alleging violations of the US Constitution for the reasons given above.  Nor has Defendant Brown alleged an Eleventh Amendment (or any) bar against any Claim for Relief set forth in the Complaint. The Motion to Dismiss is brought solely by DEFENDANT HARRIS.

F.R.Civ.P. 5.1 Merely requires that a party serve notice on the Attorney General at which point the Attorney General must intervene within 60 days, unless the Court sets a later time. Plaintiff complied with state law and properly served the Attorney General.

Movant does not claim that the state has not consented to a challenge of the statute at issue based on the California Constitution.  Neither does Movant assert that the Attorney General does not consent.  Nor is consent left to the discretion of the Attorney General even if she had stated that she does not consent, which she did not.  Movant instead makes a blanket characterization that Plaintiff's challenge under state law is barred under Pennhurst which it clearly is not.  Plaintiff can only speculate that had he simply noticed the Attorney General under F.R.Civ.P. 5.1, would she now be moving to dismiss for not serving her pursuant to the 2012 California Rules of Court Rule 8.29(c)(1)?  Nor does Movant ask that Defendant Harris, or any defendant, be removed as a defendant for the Claims for Relief under either state or Federal law.  Nor does Movant ask that any of the Claims for Relief be stricken.  Staking everything on one roll of the dice, Movant asks that the entire case be dismissed.  Furthermore, if Defendant Harris is not a proper party in this case and, not having asked to intervene in this case; she would not have standing to move that this case be dismissed.  Under F.R.Civ.P. 12(b) only parties to a suit may assert a F.R.Civ.P. 12(b)(1) defense.

10

Between them, Defendants Brown, Harris and their counsel have around 85 years since their admittance before the California Bar.  This Court need not correct the defects in their Motion to Dismiss and Memorandum or argue their case for them.

Assuming, arguendo, that there is an unreachable bar to a prospective injunction against the Attorney General; this does not preclude the Court from granting Plaintiff Declaratory Relief against the Attorney General or any state actor.  See Badger Catholic, Inc. v. Walsh (7th Cir. 2010) 620 F3d 775, 782  " If Badger Catholic's fears come to pass, then more relief lies in store. For now, however, a declaratory judgment suffices."  Unlike Badger Catholic, which did not give notices required by Wisconsin law, Plaintiff has properly served the Attorney General as required by California law.

"Federal courts may only decide cases over which they have both constitutional and statutory jurisdiction. See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701-02, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). The Constitution grants federal courts jurisdiction over "all Cases, in Law and Equity, arising under this Constitution [and] the Laws of the United States." U.S. CONST. art. III, § 2, cl. 1. Here,...raised federal claims under 42 U.S.C. § 1983 in addition to a number of state-law claims. In cases such as this one, district courts have statutory jurisdiction over federal claims, 28 U.S.C. § 1331, and supplemental jurisdiction over related state-law claims, 28 U.S.C. § 1367." Payne v. Peninsula School Dist., 653 F. 3d 863 - Court of Appeals, 9th Circuit 2011 at 868.

"The supplemental jurisdiction statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have

11

supplemental jurisdiction over all other claims that are so related to claims in the
action within such original jurisdiction that they form part of the same case or
controversy."" Albingia Versicherungs AG v. SCHENKER INTL., 344 F. 3d 931 -
Court of Appeals, 9th Circuit 2003 at 936.

This dispute is neither potential nor abstract. If Plaintiff is wrongly he killed
cannot be compensated by amending his Complaint to ask for resurrection. That is
something which this Court cannot grant. However, it is within the power of this
court to grant Declaratory and/or prospective injunctive relief.

**THE RIGHT TO SELF DEFENSE EXISTS OUTSIDE OF THE HOME**

The right to openly carry a firearm for the purpose of self-defense is neither
a novel nor complex issue under the California or US Constitutions. The
California Supreme Court has decided since Cheney (1891) that Open Carry is the
lawful manner of carrying a firearm in public.

Likewise in Heller, the US Supreme Court has decided that Open Carry is
the lawful manner of carrying a firearm in public.

In 1972, the California Courts struck down a handgun ban which applied to
persons not born in the United States. In 2008, the US Supreme Court in Heller
struck down a handgun ban that applied to persons who had not registered a
handgun prior to the ordinance going into effect in 1976. The US Supreme Court
also held that a law which bans handguns, even if long guns were still not banned
is unconstitutional.

12

In 2010, the US Supreme Court in McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 177 L. Ed. 2d 894, 2010 U.S. LEXIS 5523 (2010), hereinafter referred to as "McDonald." applied the Heller decision to all states and local governments. In 2008, the District of Columbia rewrote its local law in light of Heller. In 2011, the California Legislature banned handguns from being Openly Carried in Public and is now in the process of passing legislation which will also ban unloaded long guns from being carried in public (Assembly Bill 1527) resulting in a complete ban on all Openly Carried firearms in public places.

The central component of the Second Amendment right is self-defense. "JUSTICE BREYER's assertion that individual self-defense is merely a "subsidiary interest" of the right to keep and bear arms, see post, at 36, is profoundly mistaken. He bases that assertion solely upon the prologue—but that can only show that self-defense had little to do with the right's codification; *it was the central component of the right itself.*" Heller at 26. (Emphasis added).

California's handgun ban amounts to a prohibition of an entire class of arms that is overwhelmingly chosen by Californians for that lawful purpose. The Second Amendment does not guarantee the "...right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller at 54. Indeed, had the court in Heller not said that there are limitations on the right then anyone, including convicted felons and the mentally ill, might have the right to carry any type of weapon, anywhere, in any manner and for any kind of confrontation. See "HELLER'S CATCH-22" by UCLA Law Professor Adam Winkler UCLA School of Law Public Law & Legal  Theory Research Paper Series Research Paper No. 09-10 (Electronic copy available at: http://ssrn.com/abstract=1359225)

The court in Heller at 54 ""...held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, e.g., State v. Chandler, 5 La. Ann., at 489–490; Nunn v. State, 1 Ga., at 251;..." Both State v. Chandler and Nunn v. State addressed the manner of carrying a handgun in public "Likewise, in State v. Chandler, 5 La. Ann. 489, 490 (1850), the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" Heller at 40, and a ban on openly carrying handguns in public "In Nunn v. State, 1 Ga. 243, 251 (1846), the Georgia Supreme Court construed the Second Amendment as protecting the "natural right of self-defence" and therefore struck down a ban on carrying pistols openly." Heller at 57.

Since 1924, California Courts have relied on In Re Ramirez 193 Cal. 633; 226 P. 914; 1924 Cal. LEXIS 351; 34 A.L.R. 51 in upholding convictions for carrying handguns concealed in public without a permit.  Ramirez was convicted of carrying a pistol concealed in violation of the 1923 Act which made it a crime for persons who were not natural born citizens to carry a handgun in public (or to even own one) although such persons were not prohibited from openly carrying loaded rifles and shotguns in public. The prohibition on unnaturalized foreign-born persons was struck down as unconstitutional in People v. Rappard , 28 Cal.App.3d 302 (1972).  Ramirez had raised a Second Amendment claim of self-defense as well as a Fourteenth Amendment claim.

The court in Ramirez incorrectly concluded that the Second Amendment dealt only with militias and applied only to the Federal Government. The court not finding a militia corollary in the California Constitution rejected the Second

14

Amendment claim to self-defense.  Had the court the benefit of the Heller decision in 1923 it would not have had to look very far to find a self-defense right in the California Constitution.  Article I, Section I of the California Constitution enumerates a right to self-defense and has done so ever since California became a Republic in 1848.

US Supreme Court Justice Clarence Thomas had this to say in McDonald at 39 "Chief Justice Henry Lumpkin's decision for the Georgia Supreme Court in Nunn v. State, 1 Ga. 243 (1846), illustrates this view. In assessing state power to regulate firearm possession, Lumpkin wrote that he was "aware that it has been decided, that [the Second Amendment], like other amendments adopted at the same time, is a restriction upon the government of the United States, and does not extend to the individual States." Id., at 250. But he still considered the right to keep and bear arms as "an unalienable right, which lies at the bottom of every free government," and thus found the States bound to honor it."

The 1837 Georgia statute challenged in Nunn v. State did not ban rifles or shotguns from being carried in public, nor did it ban all handguns from being openly carried in public "horseman's pistols" were exempt from the statute.  A horseman's pistol is a relatively large handgun which is not easily concealable.  Under the statute at issue in this case, carrying even a handgun specifically exempted under the Georgia statute in 1837 is a crime in this state today.

The Georgia Supreme Court in 1846 and the California Supreme Court in 1924 erred in their interpretation of the Second Amendment to the United States but ultimately that was a question for the US Supreme Court to decide, which it has.  The central component of the Second Amendment right is self-defense.

There was no Fourteenth Amendment upon which to raise a a claim in 1846 Georgia but there was in 1924 California.  Justice Lawlor in Ramirez held that unnaturalized residents of this state, under the 1923 Act, could not even own a handgun, let alone carry one in public and rejected Rameriz' equal protection claim.

Plaintiff, and millions of other law-abiding residents of this state, is now prohibited from openly carrying a handgun.  Unlike Gevino Rameriz in 1923, Plaintiff and millions of other law-abiding residents of this state today are prohibited from openly carrying loaded rifles and shotguns in public as well.

This California legislature seeks to enshrine in statute what the Constitution of both California and the United States abhor – A deprivation of the fundamental, enumerated rights of the individual to self-defense and equal protection under the law.

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." Heller at 2821.  When Article I, Section 1 of the California Constitution was adopted by the people, there were no restrictions on the type of weapon or the manner of carry.  Local restrictions on concealed carry were decades away and there would not be any statewide regulation of firearms until the 20th Century.  Even machine-guns did not require a permit from this state to possess until the mid 1970's.

The concealed carry statutes are not at issue in this case but case law addressing concealed carry supports Plaintiff's claim that openly carrying a firearm is the lawful manner of carry in this state.  In 2011 there was once again before a

California court an Appellant challenging his conviction for carrying a concealed weapon without a permit.

"The United States Supreme Court expressly included long-standing prohibitions against carrying concealed weapons in its nonexhaustive list of presumptively lawful restrictions on the right to bear arms. (Heller, supra, 554 U.S. at p. 626.) Carrying a concealed or concealable firearm, without a permit, in a vehicle, presents a "`threat to public order'" that may be "`"prohibited as a means of preventing physical harm to persons other than the offender." [Citation.]'" (Yarbrough, supra, 169 Cal.App.4th at p. 314.) As the court in Yarbrough observed, "[a] person who carries a concealed firearm on his person or in a vehicle, `which permits him immediate access to the firearm but impedes others from detecting its presence, poses an "imminent threat to public safety ...."'" (Ibid., quoting People v. Hodges (1999) 70 Cal.App.4th 1348, 1357 [83 Cal.Rptr.2d 619] [holding Pen. Code, § 12025, subd. (a) does not violate substantive due process rights].) Penal Code section 12025, subdivision (a), is a valid limitation on the right to bear arms.[3]".  People v Ellison 196 Cal. App. 4th 1342; 128 Cal. Rptr. 3d 245; 2011 Cal. App. LEXIS 842,* at 1349  In the interests of Public Safety, the California courts since 1891 (Cheney) to the present day have held that Open Carry is the lawful manner of carry in this state.

A handgun openly carried does not impede others from detecting its presence.    As to public safety "Municipal respondents cite no case in which we have refrained from holding that a provision of the Bill of Rights is binding on the States on the ground that the right at issue has disputed public safety implications." McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 177 L. Ed. 2d 894, 2010 U.S. LEXIS 5523 (2010) at 3045.

17

The 7th Circuit Court of Appeals has held that the scope of the Second Amendment is broader than one's front door. See ¶ 43 of Complaint. "[T]he core right identified in Heller [is] the right of a law-abiding, responsible citizen to possess *and carry* a weapon for self-defense." United States v. Chester, 628 F.3d 673, 683 (4th Cir. 2010) (emphasis removed and added). In upholding the right to carry a handgun under the Second Amendment, Heller broke no new ground. See e.g., Nunn v. State, 1 Ga. 243, 251 (1846); In re Brickey, 8 Idaho 597, 70 P. 609 (1902) (Second Amendment right to carry handgun); Kellogg v. City of Gary, 562 N.E.2d 685 (Ind. 1990); State ex rel. City of Princeton v. Buckner, 180 W. Va. 457, 377 S.E.2d 139 (1988); City of Las Vegas v. Moberg, 82 N.M. 626, 485 P.2d 737 (N.M. Ct. App. 1971); State v. Rosenthal, 75 Vt. 295, 55 A. 610 (1903) (striking down ban on concealed carry); Andrews v. State, 50 Tenn. 165 (1871); see also State v. Delgado, 298 Or. 395, 692 P.2d 610 (Or. 1984) (right to carry a switchblade knife). State v. Reid, 1 Ala. 612, 616-17 (1840), State v. Chandler, 5 La. Ann. 489, 490 (1850). Nor is it the case that this right to carry arms is limited to homes with tall fences completely enclosing the property, or some similarly narrow category of private, real property. Heller compels the conclusion that it extends to a wide variety of public places.

A claim that the right to carry arms does not extend to public places would fly in the face of Heller's statement concerning the permissibility of laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . " 554. U.S. at 626. It beggars belief to suggest that when the Heller Court identified two types of "sensitive" public places in which the carrying of arms could presumptively be forbidden, what it really meant to say was that the right to carry arms has no application outside of one's home. The only sensible reading of this dictum from Heller is that the carrying of arms generally cannot be prohibited in non-sensitive public places. This reading was adopted by

18

the Puerto Rico Court of Appeals in In re Nido Lanausse, No. G PA2010-0002, 2011 WL 1563927 (P.R. Cir. Jan. 31, 2011) (concluding that after Heller the Second Amendment right to carry arms cabins the discretion of authorities to deny CHLs).

"Masciandaro also argues that he possessed a constitutional right to possess a loaded handgun for self-defense outside the home. I would agree that there is a plausible reading of Heller that the Second Amendment provides such a right, at least in some form." US v. Masciandaro, 638 F. 3d 458 - Court of Appeals, 4th Circuit 2011 at 467 and at 468 "Consistent with the historical understanding of the right to keep and bear arms outside the home, the Heller Court's description of its actual holding also implies that a broader right exists....If the Second Amendment right were confined to self-defense in the home, the Court would not have needed to express a reservation for "sensitive places" outside of the home." See also ¶ 41 of Complaint.

Crime statistics demonstrate the need for self-defense in public.  In light of the core self-defense component of the Second Amendment, it is noteworthy that a substantial majority of violent crimes occur outside the victim's home. According to Bureau of Justice Statistics data for 2008, only 18.4% of crimes of violence (not including homicides) occur at or in the respondent's home.  Bureau of Justice Statistics, U.S. Dep't of Justice, Criminal Victimization in the United States, 2008 Statistical Tables, tbl. 61, http://bjs.ojp.usdoj.gov/content/pub/pdf /cvus0804.pdf.

## FOURTH AND FOURTEENTH AMENDMENTS

As Penal Code section 12031(e) (renumbered as PC 25850(b)) becomes unenforceable should relief be granted against section 12031(a)(1) (renumbered as PC 25850(a))  it is unnecessary at this point to make the case that warrantless

searches absent probable cause are a violation of the Fourth Amendment.  Nor is it necessary at this stage of the case for Plaintiff to prove his Fourteenth Amendment allegations.

### CONCLUSION

Plaintiff had a Quaker upbringing.  He finds no shame in crossing the street to avoid confrontation.  Unfortunately, criminals are not so inclined.  It is regrettable that humans need to engage in armed self-defense anywhere, let alone in public places, but many do.  This court should not turn a blind eye to that reality.

The Right to self-defense does not disappear the moment an individual leaves his home and certainly exists on one's private, residential property.

For the reasons given above, Defendant Harris' Motion to Dismiss should not be granted.

Respectfully Submitted,

Dated: February 6, 2012

By: Charles Nichols
Plaintiff in Pro Per
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail:
CharlesNichols@Pykrete.info

///
///

20

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Plaintiff's **PLAINTIFF'S**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**

**DEFENDANT KAMALA HARRIS' MOTION TO DISMISS** was served via United

States Mail, postage prepaid, on this _____7_____, day of February, 2012; on the following:


Kamala D. Harris
Attorney General of California
Peter K. Southworth
Supervising Deputy Attorney General
Jonathan M. Eisenberg
Deputy Attorney General
300 South Spring Street, Ste. 1702
Los Angeles, CA  90013

Attorneys for Defendants:
EDMUND G. BROWN, Jr., in his official capacity as Governor of California,
KAMALA D. HARRIS, Attorney General, in her official capacity as Attorney General
of California

AND

Michael W. Webb
City Attorney for the City of Redondo Beach
415 Diamond Street
Redondo Beach, CA  90277-0639
Attorney for Defendants:
CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE
DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH
LEONARDI and DOES 1 to 10


Charles Nichols
Plaintiff, In Pro Per