FILED

Charles Nichols
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail: CharlesNichols@Pykrete.info
In Pro Per

2012 FEB -8  PM 2: 30

CLERK U S DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

United States District Court

Central District of California

| | |
|---|---|
| Charles Nichols, | Case No.: |
| Plaintiff, | CV-11-9916 SJO (SS) |
| vs. | |
| EDMUND G. BROWN, Jr., in his | |
| official capacity as Governor of | **PLAINTIFF'S MEMORANDUM OF** |
| California, KAMALA D. HARRIS, | **POINTS AND AUTHORITIES IN** |
| Attorney General, in her official | **OPPOSITION TO MOTION TO** |
| capacity as Attorney General of | **DISMISS BY REDONDO BEACH** |
| California, CITY OF REDONDO | **DEFENDANTS** |
| BEACH, CITY OF REDONDO | |
| BEACH POLICE DEPARTMENT, | Date: March 6, 2012 |
| CITY OF REDONDO BEACH | Time: 10:00 A.M. |
| POLICE CHIEF JOSEPH LEONARDI | Ctrm: 23-3rd Flr. |
| and DOES 1 to 10, | Trial Date: Not Yet Set |
| Defendants. | Action Filed: Nov. 30, 2011 |

# TABLE OF CONTENTS

INTRODUCTION...................................................................................1

BACKGROUND.................................................................................3

F.R.Civ.P. 12(b)(1), F.R.Civ.P. 12(b)(6), Article III, Eleventh Amendment..........5

SECOND AMENDMENT................................................................14

FOURTH AMENDMENT................................................................16

FEDERAL RULES OF CIVIL PROCEDURE RULE 1 - SCOPE AND

PURPOSE.......................................................................................18

CONCLUSION................................................................................20

Case No. CV-11-9916 SJO (SS)

# TABLE OF AUTHORITIES

**FEDERAL CONSTITUTION**

ARTICLE III...................................................................2, 11, 13-14

ARTICLE VI, Clause 2.........................................................................2

SECOND AMENDMENT................................................................passim

FOURTH AMENDMENT.................................................................passim

ELEVENTH AMENDMENT...................................................................5

FOURTEENTH AMENDMENT............................................................12

**FEDERAL CASES**                                                           **PAGE(S)**

McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 177 L. Ed. 2d 894, 2010 U.S. LEXIS 5523 (2010)..............................................................3, 14, 19

District of Columbia v. Heller, 554 U.S. 570, 592 (2008), 128 S. Ct. 2783; 171 L. Ed. 2d 637, 2008 U.S. LEXIS 5268..................................................passim

Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 84 (1978)...................................................................................................8

Hebbe v. Pliler (9th Cir. 2010) 611 F3d 1202..............................................9

AE v. County of Tulare, Court of Appeals, 9th Circuit 2012, 798...............10-11

Dearth v. Holder, 641 F. 3d 499 - Court of Appeals, Dist. of Columbia Circuit 2011 ...........................................................................................11-12

Holder v. Humanitarian Law Project, 130 S. Ct. 2705 - Supreme Court 2010......13

US v. Masciandaro, 638 F. 3d 458 - Court of Appeals, 4th Circuit 2011...........15

Florida v. Jimeno, 500 U.S. 248, 251 (1991).............................................16

US v. Russell, Court of Appeals, 9th Circuit 2012 No. 11-30030...............16-17

Terry v. Ohio, 392 US 1 (1968); 1968 U.S. LEXIS 1345; 20 L. Ed. 2d 889.........17

Michigan v. Summers, 452 U.S. 692, 700 (1981)........................................18

Beck v. Ohio, 379 U.S. 89, 91 (1964)......................................................18

United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986)..........................18

McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984)..........................18

Henry v. United States, 361 U.S. 98, 101 (1959)......................................18

**CALIFORNIA CASES**

People v. Hartshorn, Cal: Court of Appeal, 4th Appellate Dist., 1st Div. 2012......8

Kasler v. Lockyer, 2 P. 3d 581 - Cal: Supreme Court 2000........................9-10

In Re Ramirez 193 Cal. 633; 226 P. 914; 1924 Cal. LEXIS 351...................9-10

People v. Strider, 177 Cal. App. 4th 1393 - Cal: Court of Appeal, 2nd Appellate Dist., 3rd Div. 2009...............................................................13

Garber v. Superior Court, 184 Cal. App. 4th 724 - Cal: Court of Appeal, 2nd Appellate Dist., 3rd Div. 2010...............................................15

**CASES FROM OTHER STATES**

Nunn v. Georgia/State, 1 Ga. 243...................................................16

State v. Chandler, 5 La. Ann. 489, 490 (1850).....................................16

**CALIFORNIA CONSTITUTION**

ARTICLE III, Section 3..............................................................2

ARTICLE I, Section 1..........................................................5, 9, 14

ARTICLE I, Section 13.............................................................5

**CALIFORNIA STATUTES**

California Penal Code section 12031(e) [PC25850(b)]..........................passim

California Penal Code section 12031(a)(1) [PC25850(a)].......................5, 11

California Penal Code section 12031(i) [PC26040]...............................7

PC12031(5)(A) [PC25850(2)(g)(1)] and [PC25850 (2)(g)(2)]...................17-18

## FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedures 12(b)(1)...............................................5

Federal Rule of Civil Procedures 12(b)(6)...............................................5

Federal Rule of Civil Procedures 1........................................................18

## OTHER

Puerto Rico Court of Appeals in In re Nido Lanausse, No. G PA2010-0002, 2011 WL 1563927 (P.R. Cir. Jan. 31, 2011)...............................................15

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO**
**MOTION TO DISMISS BY REDONDO BEACH DEFENDANTS**

COME NOW Plaintiff Charles Nichols, Pro Se, and submit his Memorandum of Points and Authorities in Opposition to Redondo Beach Defendants' Motion to Dismiss.

**INTRODUCTION**

Movant's motion is perplexing to Plaintiff. In the L.R. 7-3 Conference of Counsel held on 1/25/2012 Plaintiff tried to resolve this issue and offered Defendants terms for a settlement which, in light of the fact Plaintiff is not seeking monetary damages for violating his Constitutional Rights, seemed quite reasonable. The fact that opposing counsel rejected the terms only highlights the need for more than Declaratory Relief against defendants.

Plaintiff asked in the Conference that all Defendants agree to: (1) Obey both the letter and spirit of this Court's Relief, should it be granted. (2) If the Court grants the relief sought by the Plaintiff in this lawsuit that Defendants not arrest and/or prosecute Plaintiff for openly carrying a loaded handgun in non-sensitive public places in violation of the statute at issue in this case. (3) That Defendants agree not to "trump up" charges such as Disturbing the Peace or Trespassing simply for Plaintiff exercising his Second Amendment Rights. (4) That Defendants agree that their city, despite its status as a "Charter City" must abide by the California Court's decision in Fiscal v. City and County of San Francisco, Cal: Court of Appeal, 1st Appellate Dist., 4th Div. 2008; 158 Cal.App.4th 895 (The City of San Francisco like Redondo Beach is also a home rule, charter city) that the

state of California has fully preempted the Regulation of firearms and therefore Defendants most end their ban on openly carried, unloaded firearms in non-sensitive public places.  And most importantly (5) That Redondo Beach Police Officers drop their contention that they are not bound by either state or Federal law and agree to obey both state and Federal law.  When the two are in conflict over a Federal issue, the US Constitution triumphs.  See Article III, Section 3 of the California Constitution and Article VI, Clause 2 of the United States Constitution. As opposing counsel is well aware, I have videos of Redondo Beach Police Officers enforcing California Penal Code section 12031(e) (renumbered as PC 25850(b)) hereinafter referred to as PC12031(e).  As well as video of opposing counsel in a political campaign speech announcing that Defendants ban on openly carried firearms applies to all public places.

In hindsight, Plaintiff should have asked Counsel for Redondo Beach Defendants to review the denial of the Motion to Dismiss in Christopher Hacopian and Scott Gibb v. Upland Police Dept., et al., Case No. CV 11-6155 PA (SPx) Dated November 17, 2011 by United States District Judge Percy Anderson. Hereinafter referred to as Hacopian.

Unlike the Plaintiff in this case, the Plaintiffs in that case **are** seeking monetary damages as a result of the entirely optional stop and inspection of their firearms to see if they were loaded.  Perhaps once Movant's frivolous Motion to Dismiss is denied, Movant might view Plaintiff's terms in a more favorable light rather than forcing Plaintiff to amend his Complaint to include unspecified monetary damages.  Relief which is apparently more cognizable to Movant as a "…claim upon which relief can be granted."   F.R.Civ.P. 12(b)(6).

To properly view Movant's Motion to Dismiss, some background information is in order.

## BACKGROUND

Counsel for Redondo Beach Defendants and Defendants are intimately aware of the circumstances which gave rise to this lawsuit as they and Plaintiff have been at loggerheads over the Redondo Beach Defendants enforcement of California Penal Code section 12031(e) (renumbered as PC 25850(b)) and threats of arrest and citation for lawfully openly carrying unloaded firearms since they first began enforcing their ban on openly carried firearms against Plaintiff beginning on August 7, 2010.

Plaintiff became active in the Open Carry movement shortly before the McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 177 L. Ed. 2d 894, 2010 U.S. LEXIS 5523 (2010) decision was issued. Plaintiff promoted an Open Carry "Beach Cleanup" in the adjacent City of Hermosa Beach California. Everything went smoothly. The then Chief of Police, Greg Savelli and his police officers were professional and courteous. PC12031(e) was not enforced against any of the participants in that Open Carry event. Nor was it enforced against Plaintiff in other Open Carry events he promoted and/or attended in the cities of; Torrance, Manhattan Beach, El Segundo, San Diego, unincorporated Los Angeles County and the Palos Verdes Peninsula. With one exception to Redondo Beach, Plaintiff merely had to contact the Police Departments in these cities and give them a heads-up as to the time and location of the event.

Plaintiff then sought out a venue for the next Open Carry event and settled on the Redondo Beach Pier Shopping Center. Plaintiff contacted the city and was referred to National Rifle Association (NRA) attorney Carl "Chuck" Michel

(California Bar # 144258).  On Tuesday July 20, 2010 beginning at 4:19PM Chuck Michel and Plaintiff engaged in a telephone conversation lasting for 24:16 in which an Open Carry event was negotiated between he and the Plaintiff which would take place on August 7, 2011 at the Redondo Beach Pier Shopping Center. Plaintiff was unaware that the leadership of the NRA was, and is, opposed to Open Carry.

Unknown to the Plaintiff until it was too late, the spokesperson for the South Bay Open Carry Movement had entered into a needless squabble with the Redondo Beach Police over scheduling.  A Police Captain wanted to attend the scheduled event but was on vacation and wanted to postpone the event until his return, which happened to coincide with the scheduled vacation for the event spokesperson. Given that the spokesperson was working and going to graduate school and the Redondo Beach Police Department has many police officers who could have stood in for the police Captain, there should not have been an issue over scheduling.

Instead, two days before the scheduled event, opposing counsel declared the Pier Shopping Center to be a park and therefore off-limits to firearms.  Of course the California courts have held that the state has fully occupied the area of firearms regulation and his park ban, even in real parks, is illegal.  In any event, the Redondo Beach defendants have since expanded their ban to include the Galleria Mall and subsequently, according to the City Attorney for Redondo Beach (opposing counsel), Defendants "park" ban on firearms extends to all public places in the city.

Therefore, Plaintiff risks arrest and prosecution should he openly carry an unloaded long gun for the purpose of self-defense, something which is legal under state law and, of course, Plaintiff alleges in his complaint, that he has the

Constitutional Right under both the Second Amendment and Article I, Section 1 of the California Constitutions to openly carry a loaded firearm and that the statute at issue is unconstitutional under both Constitutions (PC12031(e) being a violation of both the Fourth Amendment and its corollary in the California Constitution, Article I, Section 13). The ban on openly carrying a loaded firearm being unconstitutional under the Second Amendment and its corollary in the California Constitution, Article I, Section 1 (not forgetting the Fourteenth Amendment).

Video of the Redondo Beach Police Officers enforcing PC12031(e) adjacent to the Redondo Beach Pier Shopping Center Open on the day of the aborted Open Carry event (August 7, 2010) recorded by Plaintiff is attached as EXHIBIT 1-1. Video of a Redondo Beach Police officer ejecting Open Carry advocates at the Redondo Beach Galleria Mall and threatening them with arrest if they do not leave the Mall is attached as EXHIBIT 1-2. Video of the City Attorney for Redondo Beach (opposing counsel) enunciating that Defendants Open Carry ban extends to all public places in the City of Redondo Beach is attached as EXHIBIT 1-3. Video of the same Redondo Beach Police Officer stopping and enforcing PC12031(e) on the former spokesperson for the South Bay Open Carry movement is attached as EXHIBIT 1-4.

**F.R.Civ.P. 12(b)(1), F.R.Civ.P. 12(b)(6), Article III, Eleventh Amendment**

As Redondo Beach Defendants are well aware, it has been the "official policy or custom" of the Defendants to enforce PC12031(e) since at least August 7, 2010. The only logical purpose of which is to determine whether or not a firearm is loaded and, if it is, to make an arrest for violation of California Penal Code section 12031(a)(1) (renumbered as PC 25850(a)) hereinafter referred to as PC12031(a)(1).

On Page 3, lines 14-16 in Defendants MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, hereinafter referred to as Movant's Memorandum; Movant seeks to divert this Courts attention from the fact that the plural word "Defendants" includes ALL of the defendants and that the singular "Defendant" is used properly in all paragraphs of the Complaint with the lone exception of Paragraph 85, which should have read "Plaintiff". In the context of Paragraph 85, it is clear that Plaintiff was the correct reading.

On Page 6, lines 9-16 of Movant's Memorandum, Movant claims that enjoining Redondo Beach Defendants would not provide the relief Plaintiff seeks in the complaint.

For the reasons given above, an injunction against Redondo Beach defendants is essential as Declaratory Relief alone has no teeth to prevent Defendants, all of whom believe that California law does not apply to them and more importantly, to the Defendants who physically enforce the laws and don't believe that either state or Federal law applies to them; Police Chief Leonardi and the Police Department. Declaratory and Injunctive Relief solely against the Redondo Beach Defendants and solely against PC12031(e) should stop the harassment of Plaintiff for exercising his Second Amendment right to Openly Carry a long gun, albeit unloaded and would prevent violations of his Fourth Amendment rights.

Defendants may believe that the law does not apply to them. This Court has the authority and the power to adequately demonstrate that Federal law, at least, does apply to Defendants by granting the Relief requested in the Complaint.

For some reason, Movant seems fixated on Paragraph 48 of Defendant's Complaint. Had defendant thoroughly read the Complaint and/or the District of Columbia v. Heller, 554 U.S. 570, 592 (2008), 128 S. Ct. 2783;171 L. Ed. 2d 637, 2008 U.S. LEXIS 5268 hereinafter referred to as Heller; Paragraph 48 of the Complaint is clear.  In enacting the statute at issue, the California Legislature cared more for the right of a hunter to stop the heart of some fur bearing four legged mammal than it did for the right of people in this state to defend themselves from two legged predators.

California Penal Code section 12031(i) (renumbered as section 26040) reads "Nothing in this section shall prevent any person from carrying a loaded firearm in an area within an incorporated city while engaged in hunting, provided that the hunting at that place and time is not prohibited by the city council."

Paragraph 47 of the Complaint perfectly explains Paragraph 48. Discharging a firearm in a "public place" while illegally hunting incurs a small fine.  There are many scenarios where one may legally discharge a firearm in the City of Redondo Beach and not be in violation of this statute or the City's discharge ordinance.  There is no doubt that there are some noise and/or Fish & Game ordinance(s) that would be violated.  Regardless, openly carrying a loaded firearm for the purpose of self-defense is at a minimum a misdemeanor and potentially a felony.  The contrast was clear to the majority of the justices in Heller and Plaintiff thought he had explained it to the satisfaction of opposing counsel in the L.R. 7-3 Conference.

It is a mystery to Plaintiff why Movant cites a 9th Circuit opinion from 1984 on page 8, lines 9-16 when Plaintiff made it aware to opposing counsel in the L.R.

7-3 Conference that the standards for dismissing a lawsuit have changed significantly since then.

On Page 8, footnote 5 Movant seems not to understand the difference between Facial, As-Applied and Substantive Due Process Claims.

As to the Fifth Claim for Relief Movant references in footnote 5 - The substantive component of the Due Process Clause bars such arbitrary action "'regardless of the fairness of the procedures used to implement them.'" (Foucha, at p. 80; see also In re Marilyn H. (1993) 5 Cal.4th 295, 306 ["Substantive due process prohibits governmental interference with a person's fundamental right to life, liberty or property by unreasonable or arbitrary legislation"]; Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward (2011) 200 Cal.App.4th 81, 93 ["Substantive due process protects against `arbitrary legislative action, even though the person whom it is sought to deprive of his right to life, liberty or property is afforded the fairest of procedural safeguards'"].)  People v. Hartshorn, Cal: Court of Appeal, 4th Appellate Dist., 1st Div. 2012

As to the Sixth Claim for Relief Movant references in footnote 5, see Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 84 (1978). Even in the unfathomably unlikely event that this Court concludes that self-defense is not a fundamental right, in 1967 approximately 30 Black men and women marched into the California State Capitol openly carrying loaded firearms.  From that impromptu publicity stunt, the statute at issue in this case was spawned.

Plaintiff has obtained the entire California State archival file of this statute at issue, over 700 pages.  The contents of that file alone are enough to prove that the state acted arbitrarily or irrationally in response to that event.

It would seem that L.R. 7-3 Conferences are an exercise in futility as Plaintiff sees that Movant cites Kasler v. Lockyer, 2 P. 3d 581 - Cal: Supreme Court 2000, hereinafter referred to as Lockyer, on Page 10, line 12 (which was discussed in Conference) and yet somehow fails to cite the case Lockyer relied upon in coming to its decision that there is no Article I, Section 1 right to own an Assault Weapon, which was the statute at issue in that case.

As discussed in the L.R. 7-3 Conference. Lockyer, relied upon In Re Ramirez 193 Cal. 633; 226 P. 914; 1924 Cal. LEXIS 351; 34 A.L.R. 51 hereinafter referred to as Ramirez for Movant's out of context snippet. Movant also fails to cite that the Facial Challenge was denied at 355 because the plaintiffs in that case failed to show that "...the temporary suspension provision of the AWCA (Assault Weapons Control Act) would present due process notice issues in the "*vast majority of its applications*" (American Academy, supra, 16 Cal.4th at p. 343, 66 Cal.Rptr.2d 210, 940 P.2d 797), or that it would present such problems "`*in the generality of cases*`" (California Teachers, supra, 20 Cal.4th at p. 347, 84 Cal.Rptr.2d 425, 975 P.2d 622)." Italics added.

Unlike the "temporary suspension provision" of the Assault Weapons Control Act, PC12031 remains **permanently** in force and applies to far more than a generality of cases and will continue to do so until and unless the relief asked for in the Complaint is granted.

Perhaps the intent of the Court in Lockyer was to say that there was no Article I, Section 1 right to even own any firearm, let alone to openly carry one in public but, presumably, when a court cites a precedent with the intention of overturning the precedent, it clearly says so; which the court in Lockyer did not.

Both Lockyer and Ramirez incorrectly interpreted the Second Amendment as applying to just militias and restricting only the Federal government. Under that interpretation, it is true. California does not have a Militia Clause. It does have an enumerated right to self-defense which is the central component of the Second Amendment.

It seems to Plaintiff, in researching 9th Circuit Appellate Court cases that Motions to Dismiss are affirmed only after there is no chance of correcting the defects in the Complaint by amendment. Perhaps Plaintiff's pro se case is the exception.

Hebbe v. Pliler (9th Cir. 2010) 611 F3d 1202, 1205] hereinafter referred to as Hebbe. A pro se "...complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," as the Supreme Court has reaffirmed since Twombly. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under Iqbal.[7] While the standard is higher, our "obligation" remains, "where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." Bretz v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)." Hebbe at 342. Plaintiff is represented Pro Se and this is a civil rights case.

Even if Hebbe did not apply, in Twombly a conspiracy was alleged with no supporting facts. Plaintiff is not "An anti-trust conspiracy plaintiff with evidence showing nothing..." Under the strict Iqbal threshold, "...plaintiff must be given

the opportunity to try to meet those [pleading] requirements." AE v. County of Tulare, Court of Appeals, 9th Circuit 2012, 798.

Movant argues that Plaintiff does not have Article III standing for the ongoing deprivation of his Second Amendment Rights (PC12031(a)(1)) and violations of his Fourth Amendment Rights (PC12031(e)).

The statue at issue in this case has been actively enforced by Defendants against Plaintiff since August 7th, 2010 and is continuing to be enforced to this day, which opposing counsel acknowledged in the L.R. 7-3 Conference. A Complaint does not need to be accompanied by 1,000 pages of evidence and videos particularly when the facts of the case leading up to the filing of the complaint are well known to Defendants. Plaintiff can do so should this Court conclude that is necessary but given that this suit is solely seeking equitable relief, at this point at least; a jury trial can be avoided and the case can proceed on the Facial Claims for relief which, as Plaintiff understands it, are pure questions of law which can be (quickly) decided by this Court.

Nor does Plaintiff have to wait until he is arrested for violating the statute at issue in this case.

Dearth v. Holder, 641 F. 3d 499 - Court of Appeals, Dist. of Columbia Circuit 2011 hereinafter referred to as Dearth. "Dearth is an American citizen who resides in Canada and no longer maintains a residence in the United States." Dearth at 501. Unlike in Dearth, PLAINTIFF NICHOLS is a resident of this state and country and "...would openly carry a loaded and fully functional handgun in public for self-defense, but he refrains from doing so because he fears arrest, prosecution, fine and imprisonment..." (Compl. ¶ 4).

"In a case of this sort, where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing. Rather, Dearth must show he is suffering an ongoing injury or faces an immediate threat of injury." Dearth at 502.

The "ongoing injury" is the deprivation of Plaintiff's Constitutional right to openly carry a loaded firearm, particularly a handgun, for the purpose of self-defense, in non-sensitive public places.  Movant does not deny that Plaintiff would be arrested and prosecuted for violating the statute at issue nor must Plaintiff be arrested and convicted for violating the statute at issue to have standing.

During the L.R. 7-3 Conference, opposing council agreed that Plaintiff was not seeking monetary damages for "past injuries."  The Complaint clearly alleges an ongoing violation of Plaintiff's Constitutional Rights.

"...plaintiffs had standing because, rather than alleging merely an intent to violate the District's gun laws, he had "invoked his rights under the Second Amendment to challenge the statutory classifications used to bar his ownership of a handgun."  Dearth at 502.

Plaintiff has invoked his right to openly carry a loaded firearm under the Second Amendment, his rights to be free from unconstitutional searches and seizures under the Fourth Amendment, his rights to Due Process and Equal Protection under the Fourteenth Amendment and others.

Plaintiff challenges the bar to openly carrying a loaded firearm in non-sensitive public places which includes the curtilage of his home as the California courts have concluded that such places are "public places."

1    People v. Strider, 177 Cal. App. 4th 1393 - Cal: Court of Appeal, 2nd

2    Appellate Dist., 3rd Div. 2009 hereinafter referred to as Strider, "...the "key

3    consideration is whether a member of the public can access the place `without

4    challenge.' [Citation.]" (People v. Krohn, supra, 149 Cal.App.4th at p. 1298.) Here,

5    there was a considerable challenge: a high metal fence." Strider at 1405.

6

7    Unlike the "high metal fence" in Strider, Plaintiff's front gate can easily be

8    stepped over by a person of average height.  Given that Redondo Beach, Torrance

9    and LASD Police patrol cars routinely pass in front of Plaintiff's home, he is at risk

10   of arrest and prosecution under the statute at issue for simply carrying a firearm on

11   his own private residential property.  Simply leaning out of his front door with a

12   loaded firearm in response to a suspicious noise or intruder puts Plaintiff at risk of

13   arrest, prosecution and imprisonment.

14

15   The United States Supreme Court precludes prior or current prosecution for

16   a case to have Article III standing. "Plaintiffs seek preenforcement review of a

17   criminal statute. Before addressing the merits, we must be sure that this is a

18   justiciable case or controversy under Article III. We conclude that it is: Plaintiffs

19   face "a credible threat of prosecution" and "should not be required to await and

20   undergo a criminal prosecution as the sole means of seeking relief." Babbitt v.

21   Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (internal

22   quotation marks omitted). See also MedImmune, Inc. v. Genentech, Inc., 549 U.S.

23   118, 128-129, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) Holder v. Humanitarian Law

24   Project, 130 S. Ct. 2705 - Supreme Court 2010 at 2717

25

26   PC12031(e) does not require that police officers stop, detain, run serial

27   numbers on the firearm or to do anything for that matter.  Enforcement of that

28   subsection of the statute at issue is entirely optional.  For Movant to allege

PLAINTIFF'S MEMORANDUM OF P&A IN OPPOSITION TO MTD BY REDONDO BEACH DEFENDANTS    13

insufficient Article III standing for a statute REDONDO BEACH DEFENDANTS are currently enforcing and, admit will continue to enforce; speaks for itself.

## SECOND AMENDMENT

The central component of the Second Amendment right is self-defense. "JUSTICE BREYER's assertion that individual self-defense is merely a "subsidiary interest" of the right to keep and bear arms, see post, at 36, is profoundly mistaken. He bases that assertion solely upon the prologue—but that can only show that self-defense had little to do with the right's codification; it was the central component of the right itself." Heller at 26.  (Emphasis added).

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." Heller at 2821.  When Article I, Section 1 of the California Constitution was adopted by the people, there were no restrictions on the type of weapon or the manner of carry.  Local restrictions on concealed carry were decades away and there would not be any statewide regulation of firearms until the 20th Century.  Even machine-guns did not require a permit from this state to possess until the mid 1970's.

A handgun openly carried does not impede others from detecting its presence.  As to public safety "Municipal respondents cite no case in which we have refrained from holding that a provision of the Bill of Rights is binding on the States on the ground that the right at issue has disputed public safety implications." McDonald v. Chicago, 561 U.S. ___, 130 S. Ct. 3020, 177 L. Ed. 2d 894, 2010 U.S. LEXIS 5523 (2010) at 3045.

1   If Heller entails only the right to possess a loaded firearm in one's home,
2   then every handgun in a drawer or nightstand is concealed and subject to
3   prosecution on this statute.  California has upheld convictions for violation of this
4   statute for having a loaded handgun in a drawer.  See Garber v. Superior Court,
5   184 Cal. App. 4th 724 - Cal: Court of Appeal, 2nd Appellate Dist., 3rd Div. 2010

6

7   A claim that the right to carry arms does not extend to public places would
8   fly in the face of Heller's statement concerning the permissibility of laws
9   forbidding the carrying of firearms in sensitive places such as schools and
10  government buildings . . . " 554. U.S. at 626.  It beggars belief to suggest that when
11  the Heller Court identified two types of "sensitive" public places in which the
12  carrying of arms could presumptively be forbidden, what it really meant to say was
13  that the right to carry arms has no application outside of one's home.  The only
14  sensible reading of this dictum from Heller is that the carrying of arms generally
15  cannot be prohibited in non-sensitive public places.  This reading was adopted by
16  the Puerto Rico Court of Appeals in In re Nido Lanausse, No. G PA2010-0002,
17  2011 WL 1563927 (P.R. Cir. Jan. 31, 2011) (concluding that after Heller the
18  Second Amendment right to carry arms cabins the discretion of authorities to deny
19  CHLs).

20

21  "Masciandaro also argues that he possessed a constitutional right to possess
22  a loaded handgun for self-defense outside the home. I would agree that there is a
23  plausible reading of Heller that the Second Amendment provides such a right, at
24  least in some form."  US v. Masciandaro, 638 F. 3d 458 - Court of Appeals, 4th
25  Circuit 2011 at 467 and "Consistent with the historical understanding of the right
26  to keep and bear arms outside the home, the Heller Court's description of its actual
27  holding also implies that a broader right exists....If the Second Amendment right

28

were confined to self-defense in the home, the Court would not have needed to express a reservation for "sensitive places" outside of the home." at 468.  See also ¶ 41 of Complaint.

The 9th Circuit Court of Appeals has already answered the question as to whether or not the Heller decision entails only the right to possess a loaded firearm in one's home.  It is not so limited.  See paragraphs 33 and 41 of Complaint.

"Likewise, in State v. Chandler, 5 La. Ann. 489, 490 (1850), the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" District of Columbia v. Heller, 554 U.S. 570, 40 (2008) and Paragraph 28 of the Complaint (Nunn v. State, 1 Ga. 243, 251 (1846))

## FOURTH AMENDMENT

Any search, even a consensual one, is constrained by the bounds of reasonableness. Florida v. Jimeno, 500 U.S. 248, 251 (1991).  Plaintiff does not, and will not, voluntarily consent to PC12031(e) searches.  Nor does he have to physically resist such a search.  Simply stating that he does not consent is sufficient for a search not to be voluntary.

Even a person carrying drugs illegally inside of an Airport, which is most likely a "sensitive" place under Heller, has the right to refuse to be searched absent a warrant, probable cause or even reasonable suspicion.  US v. Russell, Court of Appeals, 9th Circuit 2012, hereinafter referred to as Russell.

Arguably, Terry v. Ohio, 392 US 1 - Supreme Court 1968 precludes the stop and search of a person for even reasonable suspicion to determine if he is armed when that person is openly carrying a firearm as the sole purpose of the "Terry Stop" was to determine whether or not a person behaving suspiciously was armed.

Unlike the drug courier in Russell, who could have refused to be searched and then freely exited the airport. This subsection does not allow for one to refuse to be searched. Refusing to be searched constitutes "probable cause" for arrest under the statute.

PC12031(e) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. **Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.** Emphasis added.

Under this subsection of the statute at issue, a drug courier has greater rights under the Fourth Amendment than does a law-abiding person.

If this is not abhorrent enough to the US Constitution, PC12031(5)(A), renumbered to 25850(2)(g)(1) and (2)(g)(2) reads:

(5) (A) Notwithstanding paragraphs (2) and (3) of subdivision (a) of Section 836, a peace officer may make an arrest without a warrant:

(ii) Whenever the officer has *reasonable cause* to believe that the person to be arrested has violated this section, whether or not this section has, in fact, been violated. (Italics added).

Under the Fourth Amendment, a warrantless arrest requires probable cause. See Michigan v. Summers, 452 U.S. 692, 700 (1981). Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested. Beck v. Ohio, 379 U.S. 89, 91 (1964). Alternatively, this court has defined probable cause as follows: when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, **"[m]ere suspicion, common rumor, or even strong reason to suspect are not enough."** McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984) (citing Henry v. United States, 361 U.S. 98, 101 (1959)). Emphasis added.

## FEDERAL RULES OF CIVIL PROCEDURE
## RULE 1 - SCOPE AND PURPOSE

"These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." - F.R.Civ.P. 1

Movants unjustly seek to delay Plaintiff from an inexpensive determination of this proceeding. ALL DEFENDANTS have had two months to come up with an Answer to the Complaint they could have six more and they would still not be able to make the case why Relief should not be granted to Plaintiff.

The US Supreme Court spoke clearly in Heller and in McDonald. With the exception of a couple of District Court judges outside of the 9th Circuit, no Federal Appellate Court has limited the scope of the Second Amendment to just the right to possess a loaded firearm in one's home.

## CONCLUSION

Although not a precedent, and perhaps not even persuasive, United States District Judge Percy Anderson had this to say in his denial of a Motion to Dismiss the Hacopian lawsuit stemming from enforcement of PC12031(e).

"In District of Columbia v. Heller, the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms, a right unconnected to service in the militia. District of Columbia v. Heller, 554 U.S. 570, 593, 128 S. Ct. 2783, 2799, 171 L. Ed. 2d 637 (2008). Two years later, the Supreme Court held that "the Second Amendment right is fully applicable to the States." McDonald v. City of Chicago, __ U.S. __, 130 S. Ct. 3020, 3025, 177 L. Ed. 2d 894 (2010). The alleged incident occurred on July 13, 2011, after the McDonald case held that the Second Amendment right is fully applicable to the States.

As noted above, Plaintiffs properly allege a Fourth Amendment claim by alleging facts to support that Defendants conducted an unreasonable search and seizure. In

their FAC, Plaintiffs allege that they "were illegally searched and detained for simply exercising [their Second Amendment] Right." (FAC ¶ 26.) Plaintiffs allege that after Defendants checked to make sure that Plaintiffs' firearms were unloaded, Defendants went beyond the scope of a permissible search by running background checks on them and serial number checks on their firearms, as well as handcuffing Plaintiffs, ordering them to get on their knees, and forcibly removing Plaintiffs' wallets without their consent. Therefore, **Plaintiffs have properly alleged a Second Amendment violation.**" Emphasis added.

At this early stage of the case, this Court does not have to examine in great detail every point raised thus far. Supplemental pleadings in support of the Complaint, if necessary can come at a later date. This Court has the authority and the power to ensure "...the just, speedy, and inexpensive determination..." of these proceedings.

For the reasons given above, REDONDO BEACH DEFENDANT'S Motion to Dismiss should not be granted.

Respectfully Submitted,

Dated: February 6, 2012

By: Charles Nichols
Plaintiff in Pro Per
PO Box 1302
Redondo Beach, CA
90278
Voice: (424) 634-7381
E-Mail:
CharlesNichols@Pykrete
.info

///

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Plaintiff's **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS BY REDONDO BEACH DEFENDANTS** was served via United States Mail, postage prepaid, on this ___7___, day of February, 2012; on the following:

Kamala D. Harris
Attorney General of California
Peter K. Southworth
Supervising Deputy Attorney General
Jonathan M. Eisenberg
Deputy Attorney General
300 South Spring Street, Ste. 1702
Los Angeles, CA 90013

Attorneys for Defendants:
EDMUND G. BROWN, Jr., in his official capacity as Governor of California,
KAMALA D. HARRIS, Attorney General, in her official capacity as Attorney General
of California

AND

Michael W. Webb
City Attorney for the City of Redondo Beach
415 Diamond Street
Redondo Beach, CA 90277-0639
Attorney for Defendants:
CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE
DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH
LEONARDI and DOES 1 to 10

Charles Nichols
Plaintiff, In Pro Per