ORIGINAL

1   Charles Nichols
    PO Box 1302
2   Redondo Beach, CA 90278
    Voice: (424) 634-7381
3   E-Mail: CharlesNichols@Pykrete.info
    In Pro Per
4

FILED

2012 MAR 12  AM 11: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

5

6

7

8                  United States District Court

9                  Central District of California

10

11   Charles Nichols,                          )   Case No.:
12              Plaintiff,                      )   CV-11-9916 SJO (SS)
13          vs.                                 )
14   EDMUND G. BROWN, Jr., in his               )
15   official capacity as Governor of          )   **PLAINTIFF'S MEMORANDUM OF**
16   California, KAMALA D. HARRIS,              )   **POINTS AND AUTHORITIES IN**
17   Attorney General, in her official         )   **OPPOSITION TO MOTION TO**
18   capacity as Attorney General of           )   **DISMISS BY DEFENDANT**
19   California, CITY OF REDONDO                )   **EDMUND G. BROWN, Jr., IN HIS**
20   BEACH, CITY OF REDONDO                     )   **OFFICIAL CAPACITY AS**
21   BEACH POLICE DEPARTMENT,                   )   **GOVERNOR OF CALIFORNIA**
22   CITY OF REDONDO BEACH                      )
23   POLICE CHIEF JOSEPH LEONARDI               )   Date: April 10, 2012
24   and DOES 1 to 10,                          )   Time: 10:00 a.m.
25              Defendants.                     )   Ctrm: 23 – 3rd Flr.
26                                              )   Judge: Hon. Suzanne H. Segal
27                                                  Trial Date: Not Yet Set
28                                                  Action Filed: Nov. 30, 2011

Charles Nichols v. Edmund G Brown Jr et al – Memorandum of P&A in opposition to MTD by Brown

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………1

ARGUMENT………...…………………………………………….3

I.    OVERVIEW…………………………………………....…..3

        A. Facts…………………………………………………3

II.    CAUSATION………………………………………………5

        A. Direct Link…………………………………………5

        B. General versus Specific – Enforced versus unenforced…………..6

        C. Imminent Enforcement………………………………8

III.   ARTICLE III STANDING………………………………8

        A. Deprivation of Constitutional Right……………………...…9

IV.   STATE CLAIMS……………………………………10

        A. Arising Under Jurisdiction……………………………11

        B. Due Process Liberty and Property Interest…………………12

V.    ELEVENTH AMENDMENT…………………………..…13

VI.   STANDING AT PLEADING STAGE…………………………15

VII.  THREAT OF ARREST, PROSECUTION AND IMPRISONMENT……..16

VIII. STANDING - PREENFORCEMENT REVIEW…………………..17

IX.   RIPENESS……………………………………….....19

        A. Chilling Effect………………………………...19

        B. Second Amendment Like First and Fourth Amendments……….20

        C. Ripeness – Three Considerations……………………21

        D. Prudential Ripeness………………………………22

X.    FACIALLY UNCONSTITUTIONAL…………………………22

XI.   SUSPECT OR QUASI-SUSPECT CLASS…………………23

XII.  SCRUTINY……………………………………24

CONCLUSION……………………………………...…24

Case No. CV-11-9916 SJO (SS)

# TABLE OF AUTHORITIES

**CASES**                                                    PAGE(S)

Maya v. Centex Corp., 658 F. 3d 1060 …………………………….…..5, 6, 16

National Audubon Society, Inc. v. Davis, 307 F. 3d 835…………………….passim

Farrakhan v. Gregoire, 590 F. 3d 989………………………………………………8

Hydrick v. Hunter, 449 F. 3d 978………………………………………………………9

Smith v. Kansas City Title & Trust Co., 255 US 180……………………………11

Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 US 308...12

Paul v. Davis, 424 US 693, 711…………………………………………………...13

Porter v. Jones, 319 F. 3d 483…………………………………………………13

Los Angeles County Bar Ass'n v EU, 979 F.2d 697…………………………….....14

Holder v. Humanitarian Law Project, 130 S. Ct. 2705……………………....…17

Wolfson v. Brammer, 616 F. 3d 1045…………………………………………20-22

District of Columbia v. Heller, 554 U.S. 570, 592…………………….…...passim

GeorgiaCarry.Org, Inc. et al v. Toomer U.S. App. LEXIS 2616…………………25

**CONSTITUTION**

Second Amendment to the US Constitution………………………………………………1

Article 1, Section 1 of the California Constitution…………………..…………….....11

Article 5, Section 7 of the California Constitution………………….…………………7

Article 5, Section 13 of the California Constitution……………………………7, 11

**STATUTES**

California Penal Code section 12031(a)(1) [PC25850(a)]……………..……..2, 17, 18

California Penal Code section 12031(e) [PC25850(b)]……………………....2, 17, 18

42 U.S.C. § 1983……………………………………………………………...2, 9

California Government Code section 12010……………………………………………7

California Government Code section 12011................................................7

California Government Code section 8571.5............................................19

F.R.Civ.P. 12(b)(1)....................................................................25

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANT EDMUND G. BROWN, Jr., IN HIS OFFICIAL CAPACITY AS GOVERNOR OF CALIFORNIA**

COME NOW Plaintiff Charles Nichols, Pro Se, and submit his Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss.

## INTRODUCTION

Defendant EDMUND G. BROWN, Jr., in his official capacity as Governor of California is hereinafter referred to as Defendant Brown.

The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

The Second Amendment guarantees individuals a fundamental right to carry fully functional (i.e., loaded) handguns in non-sensitive public places for the purpose of self-defense.

The Second Amendment right to keep and bear arms applies as against the states by operation of the Fourteenth Amendment.

California prohibits handguns from being openly carried in non-sensitive public places without a license in all incorporated cities and in all areas of unincorporated counties where the discharge of a firearm is prohibited.

In counties with fewer than 200.000 people, California law provides for licenses to openly carry a loaded handgun (albeit at the discretion of the issuing authority) but such licenses are available only to residents of said counties and are valid only in the county in which they are issued.

Without a license, openly carrying a handgun (loaded or unloaded) in non-sensitive public places is at a minimum a misdemeanor and potentially a felony for a person who is not otherwise prohibited from possessing a handgun (California Penal Code section 25850).

California Penal Code section 25850 violates the Second Amendment to the United States Constitution, damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to declaratory and/or permanent injunctive relief against the enforcement of this provision.

These provisions create two classifications of individuals which are inherently arbitrary, irrational, and deprive individuals of their fundamental right to bear arms based on criteria that cannot be justified under any means-ends level of scrutiny for the security of a fundamental constitutional right. The provision thus violates Plaintiffs' Fourteenth Amendment right to equal protection of the law, damaging them in violation of 42 U.S.C. § 1983.

Plaintiff has been threatened. He filed a police report and requested of the Attorney General that she exercise her constitutional authority to prosecute the case. The Attorney General declined. The person who made the threat is still at large.

# ARGUMENT

## I. OVERVIEW

This suit is not based on an asserted general duty of Defendant Brown to enforce state law.  Defendant Brown has committed a specific act or omission resulting in an ongoing deprivation of Plaintiff's rights under the United States Constitution causing an injury-in-fact to Plaintiff.

The instant Motion to Dismiss by Defendant Brown repeats many of same false statements made in a separate Motion to Dismiss by the same attorney, on behalf of the Attorney General.

### A. Facts

Plaintiff's intent is to openly carry a loaded handgun throughout non-sensitive public places in California.  The reasons the Redondo Beach defendants have been named in the Complaint have already been filed.  Plaintiff does not, nor does the Complaint state, that Defendant Brown is sued "based solely on his role as the supreme executive authority in California."  Plaintiff has been threatened with arrest for openly carrying a firearm in a non-sensitive public place.  The so-called "self-defense exception" is only an affirmative defense.  An affirmative defense does not prevent arrest, prosecution or conviction.  Nor must Plaintiff be arrested, prosecuted or convicted of the statute at issue to challenge its constitutionality.  On page 4 of the instant motion to dismiss, Defendant Brown lists several bullet points which he claims to be "unclear" as to relevance.  The US Supreme Court made the points abundantly clear in their Heller and McDonald decisions.  As to the final bullet point on page 4, Defendant Brown should reread Assembly Bill 144 he signed into law last year; it bans handguns but not long guns.

1   Defendant Brown in the instant motion to dismiss (and in the motion to
2   dismiss by the attorney general) claims that Plaintiff's injury is "hypothetical" or
3   "speculative" despite the thousands of arrests and convictions for violations of the
4   statute at issue since it was enacted in 1967.  Nowhere in the instant motion to
5   dismiss (or in any of the motions to dismiss) does Defendant Brown (or any of the
6   Defendants) explain why Plaintiff would not be arrested, prosecuted and convicted
7   if he were to openly carry a handgun (loaded or unloaded) in any city or
8   unincorporated county area where the discharge of a firearm is prohibited.
9   Defendant Brown (and the Attorney General) has been made aware (through their
10  attorney) that an acquaintance of the Plaintiff is currently being prosecuted for
11  openly carrying a handgun in violation of the statute at issue.  Neither Defendant
12  Brown nor any of the Defendants deny that Plaintiff would be arrested, prosecuted
13  and convicted were he to openly carry a handgun for the purpose of self-defense in
14  non-sensitive public places.

15

16  Defendant Brown signed into law a bill which prohibits Plaintiff from
17  openly carrying a handgun for the purpose of self-defense in non-sensitive public
18  places causing an injury-in-fact to Plaintiff.  Defendant Brown has the duty to
19  appoint officers to the California State Highway Patrol and California State Militia
20  (among others) and Defendant Brown, as the Chief Executive Officer of the State,
21  is responsible for faithful execution of the laws of the state (see ¶ 5 of Complaint).
22  The ongoing deprivation of Plaintiff's rights under the United States Constitution
23  is currently being given effect by state officials including Defendant Brown, the
24  Attorney General, the Redondo Beach Defendants and those under their direct
25  supervision.

26

27

28

Charles Nichols v. Edmund G Brown Jr et al – Memorandum of P&A in opposition to MTD by Brown        4

# II. CAUSATION

"Causation. Defendants would have us require plaintiffs to demonstrate that defendants' actions are the "proximate cause" of plaintiffs' injuries. Plaintiffs do not bear so heavy a burden. To survive a motion to dismiss for lack of constitutional standing,[6] plaintiffs must establish a "line of causation" between defendants' action and their alleged harm that is more than "attenuated." Allen v. Wright, 468 U.S. 737, 757, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). A causal chain does not fail simply because it has several "links," provided those links are "not hypothetical or tenuous" and remain "plausibi[le]." Nat'l Audubon Soc., Inc. v. Davis, 307 F.3d 835, 849 (9th Cir.2002) (citing with approval Autolog Corp. v. Regan, 731 F.2d 25, 31 (D.C.Cir.1984) ("What matters is not the `length of the chain of causation,' but rather the `plausibility of the links that comprise the chain.'")). In cases where a chain of causation "involves numerous third parties" whose "independent decisions" collectively have a "significant effect" on plaintiffs' injuries, the Supreme Court and this court have found the causal chain too weak to support standing at the pleading stage. See Allen, 468 U.S. at 759, 104 S.Ct. 3315; San Diego Gun Rights, 98 F.3d at 1126." Maya v. Centex Corp., 658 F. 3d 1060 - Court of Appeals, 9th Circuit 2011 at 1070, 2011 U.S. App. LEXIS 19344 hereinafter referred to as Maya.

## A. Direct Link

The Complaint at ¶ 54 alleges not a chain but a single direct link between Defendant Brown's personal act or omission which is neither hypothetical nor tenuous and which resulted in the denial of Plaintiff's right to openly carry a handgun in non-sensitive public places for the purpose of self-defense; thereby denying Plaintiff his rights under the United States Constitution. By doing so, Defendant Brown played an affirmative, personal part in Plaintiff's deprivation of

Constitutional rights. Defendant Brown could have vetoed the bill which criminalizes Plaintiff's right to openly carry a handgun under the United States Constitution or Defendant Brown could have allowed the bill to go into law without his signature. Defendant Brown chose neither course of action. Instead, Defendant Brown personally, and in his official capacity, caused an injury in fact to Plaintiff by signing Assembly Bill 144 which denies Plaintiff his right to openly carry a handgun in non-sensitive public places for the purpose of self-defense which is Plaintiff's right guaranteed by the United States Constitution.

### B. General versus Specific – Enforced versus unenforced

In Nat'l Audubon Soc., Inc. v. Davis cited in Maya, the action was a challenge to Proposition 4, adopted by California voters in November 1998 to protect wildlife and domestic pets by restricting use of certain kinds of traps. There was but one arrest and prosecution for violation of the Proposition and the District Court found that there was not a present threat of enforcement.

Unlike Proposition 4 which was enacted by the voters of this state, it was Defendant Brown who signed Assembly Bill 144, which bans the Open Carry of handguns, into law. Unlike in the cases cited in Maya, there have been thousands of arrest and prosecutions for violating the statute at issue. Plaintiff's Complaint also alleges that Defendant Brown is currently, actively enforcing the statute at issue under color of authority. The Complaint asks for Declaratory and/or Prospective injunctive relief from Defendant Brown and his "officers, agents, servants and employees" which includes, but is not limited to, the California Highway Patrol and the California State Militia (California Constitution – Article V, Section 7) whose officers are appointed by Defendant Brown and for whom he directly supervises. In this respect, Defendant Brown is no further removed from enforcement of the statute at issue than is a police chief from ranking officers

1  under his command.  Indeed, Defendant Brown's relationship to his officers is
2  more tightly coupled inasmuch as his officers serve at the pleasure of Defendant
3  Brown and can be dismissed by him at will, whereas a ranking police officer, or
4  even the lowest level patrolman; have many protections against dismissal and
5  discipline.

6

7       California Government Code section 12010.  "The Governor shall supervise
8  the official conduct of all executive and ministerial officers." and 12011.  "The
9  Governor shall see that all offices are filled and their duties performed.  If default
10 occurs, he shall apply such remedy as the law allows. If the remedy is imperfect,
11 he shall so advise the Legislature at its next session."

12

13      Under Article 5, Section 13 of the California Constitution even the Attorney
14 General is "Subject to the powers and duties of the Governor."

15

16      Although the Attorney General has all of the powers of a district attorney,
17 has direct supervision of every district attorney in the state and can take over the
18 prosecution of ANY case; the Attorney General has no supervisory role over any
19 of Defendant Brown's officers who enforce the statute at issue in this case.  There
20 may be a point in this litigation (e.g., Summary Judgment) where this Court may
21 conclude that a Declaratory Judgment and/or prospective injunctive relief against
22 the Attorney General would redress Plaintiff's alleged injuries caused by
23 Defendant Brown but none of the defendants in this case has made that argument.
24 Defendant Brown certainly has not in his instant motion.

25

26      Plaintiff's Complaint alleges that Defendant Brown's role in the ongoing
27 deprivation of Plaintiff's Federal Rights is more than merely that of supervisory
28 authority over departments.  Defendant Brown has direct responsibility for

implementing the law being challenged and there is an injury-in-fact to Plaintiff as a result of his acts or omissions.

## C. Imminent Enforcement

The answer to "the question of whether enforcement is imminent" in National Audubon Society, Inc. v. Davis, 307 F. 3d 835 - Court of Appeals, 9th Circuit 2002 at 847; 2002 U.S. App. LEXIS 24712; 55 ERC (BNA) 1065; 2002 Cal. Daily Op. Service 9815 was "No." The answer to that same question for the statute at issue is "Yes!" and is so alleged against ALL Defendants in Plaintiff's Complaint including against Defendant Brown.

## III. ARTICLE III STANDING

"To establish Article III standing, Plaintiffs must demonstrate: (1) that they have suffered an injury in fact that is both "concrete and particularized" and "actual and imminent," (2) that the injury is fairly traceable to the challenged action, and (3) that a decision in Plaintiffs' favor would likely redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 1001*1001 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). That test is easily satisfied here. Plaintiffs have suffered an injury in fact that is concrete, particularized, and actual: they have been denied the right to vote." Farrakhan v. Gregoire, 590 F. 3d 989 - Court of Appeals, 9th Circuit 2010 at 1001; 2010 U.S. App. LEXIS 141

The Complaint alleges that Plaintiff has suffered an injury in fact by Defendant Brown (and all Defendants) that is concrete, particularized, and actual; Plaintiff has been, is being, and will continue to be denied his right to openly carry a handgun in non-sensitive public places for the purpose of self-defense. A decision in Plaintiff's favor would redress that ongoing injury caused by Defendant Brown's acts or omissions.

1    Washington Governor Gregoire was not able to so easily escape in the above
2    cited case, nor should Defendant Brown.

3

4    The Complaint alleges that the statute at issue has been enforced, is currently
5    being enforced and will continue to be enforced thereby subjecting Plaintiff to an
6    actual and genuine threat of imminent prosecution should he exercise his right,
7    under the United States Constitution, to openly carry a handgun in non-sensitive
8    public places for the purpose of self-defense.

9

10              **A. Deprivation of Constitutional Right**

11    ""A person `subjects' another to the deprivation of a constitutional right,
12    within the meaning of [§] 1983, if [that person] does an affirmative act, participates
13    in another's affirmative acts, or omits to perform an act which [that person] is
14    legally required to do that causes the deprivation of which complaint is made."
15    Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978). Indeed, the "requisite causal
16    connection can be established not only by some kind of direct personal
17    participation in the deprivation, but also by setting in motion a series of acts by
18    others which the actor knows or reasonably should know would cause others to
19    inflict the constitutional injury."" Hydrick v. Hunter, 449 F. 978 - Court of
20    Appeals, 9th Circuit 2006 at 991, 2006 U.S. App. LEXIS 13497; 64 Fed. R. Serv.
21    3d (Callaghan) 928

22

23    Defendant Brown took an oath of office in which he swore to defend both
24    the United States Constitution and the Constitution of the State of California.
25    Instead, he signed into law a bill into law which violates both constitutions.
26    Defendant Brown by signing Assembly Bill 144 into law, and enforcement of the
27    statute at issue, set into motion a series of acts by others which he knew, or
28    reasonably should have known, would cause others to inflict the constitutional

Charles Nichols v. Edmund G Brown Jr et al – Memorandum of P&A in opposition to MTD by Brown          9

1  injuries on Plaintiff. By continuing to enforce the statute at issue in this case as
2  well, Defendant Brown compounds his culpability. The causal connection is clear
3  as are his acts or omissions.

4

5                          **IV. STATE CLAIMS**

6      In his Complaint, Plaintiff refers to provisions in the California Constitution
7  that parallel the applicable provisions in the United States Constitutions where it is
8  legitimate to do so, e.g., where there is a state-created liberty or property interest at
9  stake. Indeed, the Complaint alleges at ¶ 79 that the statute at issue violates the
10 Equal Protection and Due Process Clauses of the Fourteenth Amendment. This
11 Seventh Claim for Relief in the Complaint fully incorporated all of the previously
12 stated Equal Protection and Due Process allegations under the United States
13 Constitution. See ¶ 83 of the Complaint.

14

15     None of Plaintiff's claims are retrospective in nature. Every state law claim
16 (and Federal, for that matter) in the complaint seeks purely declaratory, and/or
17 prospective injunctive relief. The Complaint makes no demands on the State
18 Treasury, nor is money sought from any of the Defendants; directly or indirectly.
19 Nor does the Complaint seek compulsory relief from any of the Defendants. The
20 relief sought in the Complaint does not ask of any defendant to do anything. There
21 is no Eleventh Amendment bar.

22

23     Nor is the Complaint even close to being a purely (or even predominantly)
24 state law complaint. The lone claim for relief for violation of the California
25 Constitution arises out of the fully incorporated Federal claims which included the
26 Second, Fourth and Fourteenth Amendments to the United States Constitution.
27 See ¶ 83 of the Complaint. Nor would a denial of the Seventh Claim for Relief
28 under the California Constitution affect the Request for Relief which Plaintiff

Charles Nichols v. Edmund G Brown Jr et al – Memorandum of P&A in opposition to MTD by Brown          10

seeks as the relief is sought under the Constitution and Laws of the United States **"and/or"** Article 1, Sections 1 and 13 of the California Constitution. See page 24, lines 19-26 of the Complaint. (Emphasis added). These state law claims arise out of the same causes of action as the Federal claims and are inextricably intertwined with the Federal claims. The state law claims are neither novel nor complex. The state law claims are not more important, more complex or more time-consuming to resolve as their Federal counterparts. Given the nature of the state law claims, they would clearly succeed on the merits in state court; albeit many years from now given the backlog of cases in Los Angeles County. Even if this Court were to reject all of the Federal claims, the state law claims would still stand on their own and this court could still exercise jurisdiction, or not, at its discretion. California's previous ban on handguns was struck down by the state courts as unconstitutional. Article 1, Sections 1 and 13 of the California Constitution still remain. Subsequent state court decisions have not given the slightest hint that a ban on openly carried handguns would now be constitutional. Regardless, the statute at issue is clearly preempted under Federal law.

"The general rule is that where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision." Smith v. Kansas City Title & Trust Co., 255 US 180 - Supreme Court 1921 at 199; 1921 U.S. LEXIS 1811; 41 S. Ct. 243; 65 L. Ed. 577

## A. Arising Under Jurisdiction

"There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for

1  nearly 100 years that in certain cases federal-question jurisdiction will lie over
2  state-law claims that implicate significant federal issues. E. g., Hopkins v. Walker,
3  244 U. S. 486, 490-491 (1917). The doctrine captures the commonsense notion that
4  a federal court ought to be able to hear claims recognized under state law that
5  nonetheless turn on substantial questions of federal law, and thus justify resort to
6  the experience, solicitude, and hope of uniformity that a federal forum offers on
7  federal issues, see ALI, Study of the Division of Jurisdiction Between State and
8  Federal Courts 164-166 (1968)." Grable & Sons Metal Products, Inc. v. Darue
9  Engineering & Mfg., 545 US 308 - Supreme Court 2005 at 312; 2005 U.S. LEXIS
10  4659; 125 S. Ct. 2363; 162 L. Ed. 2d 257

11

12                    **B. Due Process Liberty and Property Interest**
13       "It is apparent from our decisions that there exists a variety of interests
14  which are difficult of definition but are nevertheless comprehended within the
15  meaning of either "liberty" or "property" as meant in the Due Process Clause.
16  These interests attain this constitutional status by virtue of the fact that they have
17  been initially recognized and protected by state law,[5] and we have repeatedly
18  ruled that the procedural guarantees of the Fourteenth Amendment apply whenever
19  the State seeks to remove or significantly alter that protected status. In Bell v.
20  Burson, 402 U. S. 535 (1971), for example, the State by issuing drivers' licenses
21  recognized in its citizens a right to operate a vehicle on the highways of the State.
22  The Court held that the State could not withdraw this right without giving
23  petitioner due process. In Morrissey v. Brewer, 408 U. S. 471 (1972), the State
24  afforded parolees the right to remain at liberty as long as the conditions of their
25  parole were not violated. Before the State could alter the status of a parolee
26  because of alleged violations of these conditions, we held that the Fourteenth
27  Amendment's guarantee of due process of law required certain procedural

28

safeguards." Paul v. Davis, 424 US 693, 711 - Supreme Court 1976; 96 S. Ct.
1155; 47 L. Ed. 2d 405; 1976 U.S. LEXIS 112; 1 I.E.R. Cas. (BNA) 1827

All of the state law claims in the Complaint turn on substantial questions of
Federal Law. None of Plaintiff's claims arise solely under state law. Plaintiff is
denied his right to openly carry a handgun in non-sensitive public places for the
purpose of self-defense and his Complaint alleges both a violation of enumerated
Constitutional Rights and a violation of due process.

## V. ELEVENTH AMENDMENT

"The Eleventh Amendment erects a general bar against federal lawsuits
brought against a state. Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92
L.Ed.2d 209 (1986). However, suits against a state official are an exception to this
bar. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under the
doctrine of Ex parte Young, suits against an official for prospective relief are
generally cognizable, whereas claims for retrospective relief (such as damages) are
not. Papasan, 478 U.S. at 277-78, 106 S.Ct. 2932; Edelman v. Jordan, 415 U.S.
651, 664-68, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Jones claims that Plaintiffs
may not, consistent with the Eleventh Amendment, adjudicate the legality of past
conduct. This argument confuses liability with remedy. Although Plaintiffs'
allegations are rooted in events that occurred in the past, the injunctive and
declaratory relief that they seek would prevent future and ongoing illegality.[7]
The Eleventh Amendment poses no bar to Plaintiffs' claims for prospective relief."
Porter v. Jones, 319 F. 3d 483 - Court of Appeals, 9th Circuit 2003 at 491; 2003
U.S. App. LEXIS 2058; 2003 Cal. Daily Op. Service 1154; 2003 Daily Journal
DAR 1456

1    Defendant Brown's signing of Assembly Bill 144 alleged in ¶ 54 of the
2    Complaint and some, but not all, other acts or omissions may have occurred in the
3    past but the injunctive and declaratory relief Plaintiff seeks would prevent the
4    "future and ongoing illegality" the Complaint alleges.
5
6    In addition to his overt acts and omissions, Defendant Brown's role is also
7    analogous to the roles of the defendant, California Governor Wilson, in Los
8    Angeles County Bar Ass'n v EU, 979 F.2d 697 (9th Cir. 1992). There, the Ninth
9    Circuit found a sufficient nexus where the Governor, in his official capacity, has a
10   duty to appoint judges. Civil trials were being delayed due to a state statute which
11   limited the number of judges in Los Angeles County. Because the Governor was
12   obliged to "appoint judges to any newly-created judicial positions," the Ninth
13   Circuit specifically found that this was sufficient to include the Governor as a party
14   to the suit. Unlike judges, who having been appointed are no longer under the
15   control or supervision of the governor, the governor's appointed officers who
16   enforce the statute at issue in the Executive branch, are under the direct control and
17   supervision of Defendant Brown both by statute and in fact.
18
19   Moreover, there is no other remedy available to Plaintiff against Defendant
20   Brown other than the relief sought in the Complaint.  Monetary damages against
21   Defendant Brown personally are not an adequate (or acceptable to Plaintiff)
22   remedy for the ongoing deprivation of Plaintiffs rights guaranteed by the United
23   States Constitution.
24
25   In any event, it is not necessary for the Court to decide whether or not there
26   is a causal connection between Defendant Brown's actions or omissions and
27   Plaintiff's harms at this early stage of litigation.  That is to be determined by the
28   evidence, which is not required to be submitted with a Complaint.

Charles Nichols v. Edmund G Brown Jr et al – Memorandum of P&A in opposition to MTD by Brown    14

# VI.  STANDING AT PLEADING STAGE

"Each element of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." Defenders of Wildlife, 504 U.S. at 561, 112 S.Ct. 2130. "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." Seldin, 422 U.S. at 501, 95 S.Ct. 2197. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we `presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Defenders of Wildlife, 504 U.S. at 561, 112 S.Ct. 2130 (alteration in original) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)); see also Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1014 n. 3, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (cautioning that while at the summary judgment stage, the court "require[s] specific facts to be adduced by sworn testimony," a "challenge to a generalized allegation of injury in fact made at the pleading state . . . would have been unsuccessful"). "`[A] plaintiff must demonstrate standing for each claim he seeks to press' and `for each form of relief that is sought.'" Davis v. Fed. Elec. Comm'n, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) (quoting Daimler-Chrysler Corp. v. Cuno, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)).

The parties concede, and we agree, that a favorable court decision would redress plaintiffs' injuries. Accordingly we address only the first two elements of constitutional standing. We conclude that plaintiffs have established injury-in-fact and causation with respect to their overpayment and rescission claims. We hold that decreased value and desirability are concrete injuries-in-fact, but agree with the district court that the current record does not establish a sufficient causal

connection between defendants' actions and plaintiffs' harms. Nevertheless, we hold that plaintiffs should be permitted to amend their complaint because plaintiffs may be able to establish by amendment that they have standing to pursue their claims." Maya at 1069.

None of the allegations in Plaintiff's Complaint are "generalized." Nor is any evidence required at this early stage. Another important factor is the nature of the Complaint. The Complaint alleges the ongoing denial of fundamental, enumerated rights under the US Constitution made even more acute by ¶ 15 of the Complaint. Governors do not personally execute condemned men. There are many bureaucratic layers between a governor and the executioner. This does not allow a governor to escape being a defendant in a Federal lawsuit. The birdwatchers in Nat'l Audubon Soc., Inc. v. Davis and their injury is far removed from the injuries alleged in Plaintiff's Complaint.

## VII. THREAT OF ARREST, PROSECUTION AND IMPRISONMENT

Furthermore, Plaintiff has already been threatened with arrest should he openly carry a handgun (or long gun) for the purpose of self-defense and Defendant Brown (or any Defendant for that matter) has not explained why Plaintiff would not be arrested and prosecuted for violating the statute at issue, a statute which has been enforced against thousands of other persons since its enactment and is being actively enforced to this present day. Nor has Defendant Brown (or any Defendant) explained why Plaintiff would not be arrested, prosecuted and imprisoned in the future for violating the statute at issue. Moreover, Plaintiff has averred that he will violate the statute at issue, specifically the subsection of the statute requiring that Plaintiff wait until he is in immediate, grave danger before loading a firearm. There is an old adage, "It is better to be tried by twelve than be carried by six."

Had Defendant Brown signed a bill allowing slavery in the State of California, would this Court (or any Federal Court) seriously entertain the notion that one must first be enslaved before he could challenge the constitutionality of the statute?  Must a person who is wrongly imprisoned have already averred that he plans an escape attempt before he can challenge the constitutionality of his ongoing imprisonment?

## VIII.  STANDING - PREENFORCEMENT REVIEW

The United States Supreme Court precludes prior or current prosecution for a case to have Article III standing. "Plaintiffs seek preenforcement review of a criminal statute. Before addressing the merits, we must be sure that this is a justiciable case or controversy under Article III. We conclude that it is: Plaintiffs face "a credible threat of prosecution" and "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." Babbitt v. Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (internal quotation marks omitted). See also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128-129, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) Holder v. Humanitarian Law Project, 130 S. Ct. 2705 - Supreme Court 2010 at 2717

If one were to substitute speech or worship for "loaded firearm" in the statute at issue, is there really any question that a law which prohibits one from exercising those constitutionally protected rights in public (except when one is in grave, immediate danger) is not facially unconstitutional?  The plain text of the two subsections of the statute specifically challenged [25850(a) & (b)] do not penalize ANY criminal activity, they penalize ONLY constitutionally protected conduct.

25850(a) [formally PC12031(a)(1)] "A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a *prohibited area* of unincorporated territory." (Italics added)  Prohibited area is defined in Penal Code section17030 as follows: "As used in this part, "prohibited area" means any place where it is unlawful to discharge a weapon."  Some counties, like Orange County, have self-defense exceptions for the discharge of a firearm.  Los Angeles County does not but even if it did, Plaintiff is prohibited from openly carrying even an unloaded handgun under Penal Code section 26350 which has no self-defense exception.  Even in those counties with a self-defense exception, like Orange County which also have general prohibitions on the discharge of firearms; it is illegal to openly carry a handgun, be it loaded or unloaded.

25850(b) [formally PC12031(e)] "In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section."

Moreover, Defendant Brown (and all Defendants) fails to recognize that arrest and imprisonment would constitute additional, separate injuries.  The ongoing injury is the deprivation of Plaintiff's Federal Constitutional rights under the Second, Fourth and Fourteenth Amendments as alleged in the Complaint.

Curiously, the Governor pursuant to California Government Code 8571.5 has greater restrictions on him during a war emergency or state of emergency than he has at other times. "Nothing in this article shall authorize the seizure or confiscation of any firearm or ammunition from any individual who is lawfully carrying or possessing the firearm or ammunition, or authorize any order to that effect, provided however, that a peace officer who is acting in his or her official capacity may disarm an individual if the officer reasonably believes it is immediately necessary for the protection of the officer or another individual. The officer shall return the firearm to the individual before discharging the individual, unless the officer arrests that individual or seizes the firearm as evidence pursuant to an investigation for the commission of a crime."

The right to armed self-defense does not exist solely during war emergencies or other declared states of emergency.

At this early state of the proceedings, Plaintiff does not have to prove anything. The allegations are not frivolous. The allegations are plausible and must be accepted as true by this court when ruling on the motion(s) to dismiss the Complaint.

## IX.  RIPENESS

### A.  Chilling Effect

The "Ripeness" defense by Defendant Brown is easily countered. "Although the parties have vigorously disputed the viability, meaning, and import of Schaefer, we need not weigh in on the matter. The plaintiff in Schaefer refused to declare his future electoral intentions. Wolfson, in contrast, has affirmatively stated that he intends to become a candidate again. We have already concluded that Wolfson has met the ripeness requirement by indicating his intent to run for

judicial office in the future. See, e.g., Davis, 128 S.Ct. at 2769-70; Chandler, 520 U.S. at 313 n. 2, 117 S.Ct. 1295. We need not go further at this time." Wolfson v. Brammer, 616 F. 3d 1045 - Court of Appeals, 9th Circuit 2010 at 1056; 2010 U.S. App. LEXIS 16766  Hereinafter referred to as Wolfson.

Plaintiff has repeatedly stated, in unequivocal terms, that he has openly carried a handgun in non-sensitive public places and intends to do so again.

"Although the mere existence of a statute is insufficient to create a ripe controversy, we have applied the requirements of ripeness and standing less stringently in the context of First Amendment claims. Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 (9th Cir. 2003) ("in the First Amendment-protected speech context, the Supreme Court has dispensed with rigid standing requirements"). In particular, we apply the principle that one need not await "consummation of threatened injury" before challenging a statute restricting speech, to guard the risk that protected conduct will be deterred. Ariz. Right to Life PAC v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003) (internal quotation marks omitted); see also LSO, Ltd. v. Stroh, 205 F.3d 1146, 1154-55 (9th Cir.2000). To avoid the chilling effect of restrictions on speech, the Court has endorsed "a `hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." Bayless, 320 F.3d at 1006 (citations omitted); see also Bland v. Fessler, 88 F.3d 729, 736-37 (9th Cir.1996); accord Navegar, Inc. v. United States, 103 F.3d 994, 999 (D.C.Cir.1997)." Wolfson at 1059

## B. Second Amendment Like First and Fourth Amendments

"Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This

meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right."  District of Columbia v. Heller, 554 U.S. 570, 592 (2008) at page 19; 128 S. Ct. 2783; 171 L. Ed. 2d 637; 2008 U.S. LEXIS 5268 (Emphasis added). Hereinafter referred to as Heller.

## C. Ripeness – Three Considerations

"Looking to the first consideration, whether Wolfson has a concrete plan to violate the law, we conclude that Wolfson has established an intent to violate the law that is more than hypothetical. Cf. Thomas, 220 F.3d at 1139. Wolfson has expressed an intention to run for office in the future, and a desire to engage in two kinds of campaign-related conduct that is likely to be prohibited by the Code.

Turning to the second consideration guiding the ripeness inquiry, the existence of an enforcement action or threat of the same, we start with the undisputed fact that Wolfson has never been threatened with enforcement proceedings. Wolfson asserts that his claims are nevertheless ripe because he has self-censored to comply with the Code. Self-censorship is a constitutionally recognized injury. See Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (self-censorship is "a harm that can be realized even without an actual prosecution"). In the context of First Amendment speech, a threat of enforcement may be inherent in the challenged statute, sufficient to meet the constitutional component of the ripeness inquiry. Bayless, 320 F.3d at 1006-07; see also Getman, 328 F.3d at 1095; Majors v. Abell, 317 F.3d 719, 721 (7th Cir.2003) ("[T]he threat [of prosecution] is latent in the existence of the statute"). Especially where protected speech may be at stake, a plaintiff need not risk prosecution in order to challenge a statute. See, e.g., Bayless, 320 F.3d at 1006;

1   Bland, 88 F.3d at 736-37. The Supreme Court has repeatedly pointed out the
2   necessity of allowing pre-enforcement challenges to avoid the chilling of speech.
3   See, e.g., Am. Booksellers Ass'n, 484 U.S. at 393, 108 S.Ct. 636; Dombrowski v.
4   Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (recognizing the
5   "sensitive nature of constitutionally protected expression," in permitting a pre-
6   enforcement action involving the First Amendment)." Wolfson at 1060.

7

8       "The third inquiry, past prosecution or enforcement, has little weight in our
9   analysis. The Code is relatively new and the record contains little information as to
10  enforcement or interpretation…"" Wolfson at 1060.

11

12                       **D. Prudential Ripeness**
13      "We hold that Wolfson's claims regarding the solicitation, campaigning, and
14  endorsement clauses satisfy the concerns of prudential ripeness. Wolfson's claim is
15  fit for decision, because it is primarily legal and does not require substantial further
16  factual development. See US West Commc'ns, 193 F.3d at 1118; San Diego
17  County, 98 F.3d at 1132. We also conclude that Wolfson is subject to a sufficient
18  hardship. Wolfson has alleged a hardship through the constitutionally-recognized
19  injury of self-censorship. Because we relax the requirements of standing and
20  ripeness to avoid the chilling of protected speech, Getman, 328 F.3d at 1094,
21  Wolfson need not await prosecution to seek preventative relief. See Bayless, 320
22  F.3d at 1006; LSO, 205 F.3d at 1155." Wolfson at 1060.

23

24                   **X.  FACIALLY UNCONSTITUTIONAL**
25  The intent of the legislature may have been that the statute at issue only applies to
26  "…uses of firearms inimical to the peace and safety of California." (see ¶ 19 of
27  Complaint and Exhibit 2 of Complaint) but the legislature failed to define or codify
28  any such restrictions into the statute at issue.  Nor is its prosecution today limited

Charles Nichols v. Edmund G Brown Jr et al – Memorandum of P&A in opposition to MTD by Brown     22

to "inimical" uses. The statute was facially unconstitutional the moment it was signed into law in July of 1967. Subsequent legislatures, through their amendments and through other statutes have not lessened the facial unconstitutionality of the statute (see ¶ 11 of the Complaint where the "reasonable belief" that one was in danger was changed to grave, immediate danger in 1981, ¶ 13 of the Complaint prohibiting persons who live in counties with populations of 200,000 or greater from obtaining licenses to openly carry a loaded handgun which went into effect on January 1st, 2010 and ¶ 54 of the Complaint banning handguns from being openly carried in all incorporated cities and in areas of a county where the discharge of firearms is prohibited which went into effect on January 1st of this year).

## XI. SUSPECT OR QUASI-SUSPECT CLASS

Nor should this court overlook the fact that California's ban on openly carried handguns has created an affected suspect class or quasi-suspect class, the physically disabled (see ¶3 of Complaint) of which Plaintiff is a member. A class whose members are denied the means by which they may defend themselves. The US Supreme Court recognized this class when it struck down the District of Columbia's handgun ban.

"It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed. It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store in a location that is readily accessible in an emergency; it cannot easily be redirected or wrestled away by an attacker; **it is easier to use for those without the upperbody strength to lift and aim a long gun**..." District of Columbia v. Heller at page 57.

California does not prohibit long guns from being openly carried in incorporated cities or in unincorporated areas of a county where the discharge of firearms is prohibited. **It does prohibit handguns** from being openly carried in these same places. **The physically disabled have as much a right to self-defense as do the able bodied.** Which the US Supreme Court recognized in Heller.

## XII. SCRUTINY

Although physical disability is typically subjected to Rational Basis scrutiny, the US Supreme Court precluded rational basis in Heller. Indeed, the court concluded that no level of scrutiny was required in striking down the District of Columbia's handgun ban (see footnote 27 of Heller).

Even if the US Supreme Court had not taken rational review off the table, what hypothetical interest could defendants possibly contrive to justify denying disabled persons their only means of self-defense?

Similarly, the Court should take notice of the racially discriminatory intent and effect of the statute at issue. The expressed purpose of the statute was to disarm the members of the Black Panther Party. The population most harmed by the statute at issue is the population located in urban areas, where minorities disproportionately live and work and where one is mostly likely to become a victim of crime which could otherwise have been prevented by armed self-defense.

## CONCLUSION

Federal Courts in the 9th Circuit and across the nation have taken alleged violations of individual's rights under the Second Amendment to be a serious

1 matter. Plaintiff is aware of only one similar case which was dismissed under
2 F.R.Civ.P. 12(b)(1):

4 "We also note that at oral argument, Appellee represented that applications for
5 Georgia firearms licenses are "freely given." Therefore, were the Appellants to file
6 a new complaint alleging either that Mr. Goyke personally requested an application
7 and was refused, or that he submitted an application and was denied a license
8 based on his lack of Fulton County domicile, then the standing and ripeness issues
9 would need to be revisited. GeorgiaCarry.Org, Inc. et al v. Toomer Case Number:
10 10-11951 Filed: April 29, 2010 2011 U.S. App. LEXIS 2616,*;414 Fed. Appx. 227

12       Unlike in Georgia, not only are licenses not "freely given" in California but
13 in counties were 94% of California's population lives, there is no application in
14 existence to request, let alone be denied.

16 For any and/or all of the reasons given above, Defendant Brown's Motion to
17 Dismiss should not be granted.

19                                                  Respectfully Submitted,
20 Dated: March 12, 2012

21                                                  By: Charles Nichols
22                                                  Plaintiff in Pro Per
                                                    PO Box 1302
23                                                  Redondo Beach, CA
                                                    90278
24                                                  Voice: (424) 634-7381
                                                    E-Mail:
25                                                  CharlesNichols@Pykrete
                                                    .info

27 Pursuant to L.R. 11-6 this memorandum of points and authorities does not exceed
28 25 pages in length, excluding indices and exhibits.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANT EDMUND G. BROWN, Jr., IN HIS OFFICIAL CAPACITY AS GOVERNOR OF CALIFORNIA** was served via United States Mail, postage prepaid, on this 12 , day of <u>March</u>, 2012; on the following:

KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Attorneys for Defendant California Governor Edmund G. Brown Jr.


AND

Michael W. Webb
City Attorney for the City of Redondo Beach
415 Diamond Street
Redondo Beach, CA 90277-0639
Attorney for Defendants:
CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10


Charles Nichols
Plaintiff, In Pro Per