KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 897-6505
  Fax:  (213) 897-1071
  E-mail:  Jonathan.Eisenberg@doj.ca.gov
*Attorneys for Defendant California Governor Edmund G. Brown Jr.*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHARLES NICHOLS,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>EDMUND G. BROWN, JR., in his official capacity as Governor of California, KAMALA D. HARRIS, Attorney General, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,<br><br>　　　　　　　　　　Defendants. | CV-11-09916-SJO-SS<br><br>**REPLY OF CALIFORNIA GOV. EDMUND G. BROWN JR. IN SUPPORT OF MOTION TO DISMISS ACTION UNDER FED. R. CIV. P. 12(b)(1)**<br><br>Date:　　　　N/A<br>Time:　　　　N/A<br>Crtrm.:　　　23 – 3rd Flr.<br>Judge:　　　Hon. Suzanne H. Segal<br>Trial Date:　Not Set Yet<br>Action Filed:　Nov. 30, 2011 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 2

I. THE GOVERNOR LACKS SUFFICIENT CONNECTION TO ENFORCEMENT OF SECTION 25850 AND THEREFORE SHOULD BE DISMISSED FROM THIS CASE ........ 2

A. THE GOVERNOR'S ALLEGED ACTS AND OMISSIONS ARE AN INSUFFICIENT CONNECTION AS A MATTER OF LAW ........ 2

B. PRECEDENTIAL NINTH CIRCUIT CASES SUPPORT DISMISSAL OF THE GOVERNOR FOR LACK OF THE REQUISITE CONNECTION ........ 4

II. NICHOLS LACKS ARTICLE III STANDING IN THIS UNRIPE CASE ........ 6

A. OTHER SECOND AMENDMENT CASES FINDING STANDING CONTRAST WITH NICHOLS'S CASE AND ITS LACK OF STANDING AND RIPENESS ........ 6

B. NICHOLS RELIES ON CASES THAT DO NOT SUBSTANTIVELY SUPPORT THE CLAIMS OF STANDING AND RIPENESS ........ 8

(I) MAYA ........ 8

(II) HOLDER ........ 9

(III) WOLFSON ........ 10

C. NICHOLS CITES SOME CASES THAT ARE SIMPLY BAD LAW ........ 11

III. THIS COURT LACKS JURISDICTION TO CONSIDER NICHOLS'S STATE-LAW-BASED ATTACK ON SECTION 25850 ........ 11

IV. THE REMAINDER OF NICHOLS'S BRIEF DISCUSSES IRRELEVANT SUBJECTS ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Actmedia, Inc. v. Stroh*
  830 F.2d 957 (9th Cir. 1986) .................................................................................. 12

*Babbitt v. United Farm Workers Nat'l Union*
  442 U.S. 289 (1979) ............................................................................................... 10

*Farrakhan v. Gregoire*
  590 F.3d 989 (9th Cir. 2010) .................................................................................. 11

*Farrakhan v. Gregoire*
  603 F.3d 1072 (9th Cir. 2010) ................................................................................ 11

*Farrakhan v. Gregoire*
  623 F.3d 990 (9th Cir. 2010) .................................................................................. 11

*GeorgiaCarry.Org, Inc. v. Metro. Atlanta Rapid Transit Auth.*
  1:09-CV-594-TWT, 2009 WL 5033444 (N.D. Ga. Dec. 14, 2009) ......................... 7

*Gonzalez v. Village of West Milwaukee*
  ___ F.3d ___, 2012 WL 313572 (7th Cir. Feb. 2, 2012) ......................................... 6

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*
  545 U.S. 308 (2005) ......................................................................................... 11, 12

*Holder v. Humanitarian Law Project*
  130 S. Ct. 2705 (2010) ............................................................................................. 9

*Hydrick v. Hunter*
  449 F.3d 978 (9th Cir. 2006) .................................................................................. 11

*Hydrick v. Hunter*
  500 F.3d 978 (9th Cir. 2007) .................................................................................. 11

*Hydrick v. Hunter*
  129 S.Ct. 243 (2009) ............................................................................................... 11

*Ibrhahim v. Dep't of Homeland Sec.*
  __ F.3d __, 2012 WL 390126 (9th Cir. Feb. 8, 2012) ............................................. 8

*Los Angeles Cty. Bar Ass'n v. Eu*
  979 F.2d 697 (9th Cir. 1992) ............................................................................... 5, 6

*Maya v. Centex Corp.*
  658 F.3d 1060 (9th Cir. 2011) .............................................................................. 8, 9

# TABLE OF AUTHORITIES
## (continued)

Page

*Babbitt v. United Farm Workers Nat'l Union*
    442 U.S. 289 (1979) ................................................................................................ 10

*MedImmune, Inc. v. Genentech, Inc.*
    549 U.S. 129 (2007) ................................................................................................ 10

*Penn. Family Inst., Inc. v. Celucci*
    489 F. Supp. 2d 460 (E.D. Pa. 2007) ...................................................................... 11

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89 (1984) .................................................................................................. 11

*Smith v. Kansas City Title & Trust Co.*
    255 U.S. 180 (1921) .......................................................................................... 11, 12

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*
    425 U.S. 748 (1976) ........................................................................................... 10-11

*Waste Mgmt. Holdings, Inc. v. Gilmore*
    252 F.3d 316 (4th Cir. 2001) .................................................................................... 2

*Wisconsin Carry, Inc. v. City of Madison*
    No. 10-cv-547-bbc, 2011 WL 2884091 (W.D. Wisc. Jul. 15, 2011) ......................... 7

*Wolfson v. Brammer*
    616 F.3d 1045 (9th Cir. 2010) ................................................................................ 10

**STATUTES**

Cal. Mil. & Vet. Code § 120 ........................................................................................... 3

Cal. Mil. & Vet. Code § 140 ........................................................................................... 4

Cal. Pen. Code § 830.2 .................................................................................................... 3

Cal. Pen. Code § 25850 ........................................................................................... passim

Cal. Pen. Code § 26350 ........................................................................................... 1, 2, 3

Cal. Veh. Code § 625 ...................................................................................................... 3

Cal. Veh. Code § 2107 .................................................................................................... 3

Cal. Veh. Code § 12517 .................................................................................................. 3

Cal. Veh. Code § 23251 .................................................................................................. 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend I ................................................................................................. 10

U.S. Const. Amend II ................................................................................................ 10

U.S. Const. Amend. XI ....................................................................................... passim

U.S. Const. Art. III, Sec. 2 .................................................................................. passim

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Charles Nichols ("Nichols") offers strained assertions and arguments in an unpersuasive attempt to show that Defendant Edmund G. Brown Jr., Governor of California ("Governor"), is a proper defendant in the present civil action, a constitutional challenge to California Penal Code section 25850 ("Section 25850"). Section 25850 generally bans the open carrying of loaded firearms in public places in California. The Governor has an insufficient connection to the enforcement of Section 25850, and therefore is immune from Nichols's suit under the U.S. Constitution's Eleventh Amendment. Nichols cannot successfully make a meaningful connection out of the Governor's mere act of signing into law a *different* piece of legislation (Cal. Penal Code § 26350), or the Governor's oversight roles with the California Highway Patrol or California's "militia." The cases that Nichols cites for support similarly are unavailing. This Court should dismiss the Governor from this case on immunity grounds alone.

Even assuming *arguendo* that the Governor is potentially a proper defendant here, Nichols still lacks standing to pursue the case because of the case-or-controversy requirement of the U.S. Constitution's Article III, Section 2 ("Article III"). Nichols's lack of standing becomes extremely clear by comparing his lack of action in attempting to exercise his alleged Second Amendment rights with the actions of other plaintiffs in other Second Amendment cases, who established standing and had cases deemed actually ripe for review. The authorities in Nichols's opposition brief only reinforce Nichols's problem. In a flawed attempt to overcome this dispositive problem, Nichols misinterprets some relevant cases that do not help him and tries to rely on other cases that are expressly not valid precedent.

Finally, Nichols does not have any effective counter-argument to the Governor's request that Nichols's attack on Section 25850 based on the *California*

1

constitution be dismissed immediately. The remainder of Nichols's brief is a wide-ranging discourse on issues unrelated to the instant motion.

## ARGUMENT

### I. THE GOVERNOR LACKS SUFFICIENT CONNECTION TO ENFORCEMENT OF SECTION 25850 AND THEREFORE SHOULD BE DISMISSED FROM THIS CASE

#### A. The Governor's Alleged Acts And Omissions Are An Insufficient Connection As A Matter Of Law

Trying to get around the Eleventh Amendment immunity that the Governor has invoked to be dismissed from this case, Nichols highlights several alleged acts or omissions of the Governor supposedly sufficient to constitute a waiver of this immunity. (Plf.'s Memo of P's and A's in Opp. to Mtn. to Dismiss by Def't Brown ("Nichols Brief") at 3, 4, 6-7.) Individually or collectively, however, these acts or omissions are legally meaningless.

The first proffered act is that the Governor signed into law not the challenged Section 25850, but a recent bill (AB 144) that become California Penal Code section 26350 ("Section 26350"). Section 25850, at issue in the present case, is California's decades-old ban on carrying loaded firearms in public places, while Section 26350 is a new prohibition, first effective in 2012, on openly carrying an *un*loaded handgun. Notably, neither Nichols nor the Governor has been able to locate any case in which a U.S. state governor was found to be a proper defendant in a case challenging the constitutionality of a statute because the governor had signed the challenged statute, let alone another statute, into law. Indeed, in *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316 (2001), the U.S. Court of Appeals, Fourth Circuit, dismissed from a case Virginia's governor, who not only signed into law the waste-disposal statutes being challenged, but also "actively and publicly defended the statutory provisions at issue." *Id.* at 323, 327, 330-31. What was critical was that Virginia's governor "lacked a specific duty to enforce the challenged statutes." *Id.* at 331. Nichols has alleged far *less* involvement by the

Governor with Section 25850 than the Virginia governor had with the waste-disposal laws. The absence of legal authority finding a governor a proper defendant in a constitutional challenge to a law that the governor merely signed into law (much less that the governor did *not* sign into law, as is the case here), plus *Waste Management*, makes evident that the Governor's act of signing into law the recently-enacted Section 26350 does not constitute a relevant connection that makes the Governor a proper defendant in the present case.

The other alleged acts or omissions regarding the Governor's supposed enforcement of Section 25850 are also insufficient to overcome his Eleventh Amendment immunity. Asserting the truism that if Nichols someday violates Section 25850, then likely he will be arrested, prosecuted, and convicted for breaking the law (Decl. of Nichols in Opp. to Mtn. to Dismiss by Def't Brown ("Nichols Decl."), ¶12), Nichols makes the bald assertion that "Defendant Brown and/or his subordinates" would arrest Nichols or participate in his arrest or prosecution. (*Id.*, ¶14.) The subordinates are said to be California Highway Patrol ("CHP") and California's militia.[1] ( Nichols Brief at 6.) Nichols apparently admits (not surprisingly) that the Governor is not likely to personally track him down, arrest him, transport him to jail, and/or later prosecute him, given the Governor's preoccupation with his other obligations and responsibilities. Nor can Nichols establish the requisite connection by claiming that the Governor will have his subordinates in the CHP or California's militia do so. Regarding CHP: first, although the Governor appoints the CHP's commissioner (*see* Cal. Vehicle Code § 2107), the Governor does not have operational control of CHP. Second, CHP focuses primarily on enforcement of motor vehicle and highway laws and ensuring

---

[1] "The militia of the State shall consist of the National Guard, State Military Reserve and the Naval Militia -- which constitute the active militia -- and the unorganized militia." Cal. Mil. & Vet. Code § 120. It is unclear if Nichols means the militia so defined, or some subset of the militia (e.g, just the National Guard or just the State Military Reserve).

3

the protection of state officials and state property. *See* Cal. Penal Code § 830.2(a); Cal. Veh. Code § 625, 12517(c), 23251. It is, at best, merely remotely conceivable that a CHP officer would arrest a person for violating Section 25850, and even then not because of (non-existent) commands or orders from the Governor. <u>Regarding California's militia</u>: the Governor *is* commander in chief of the California militia, Cal. Mil. & Vet. Code § 140, and appoints the militia's leaders. *Id.*, §§ 141, 162. But, of significance for the present case, the militia performs primarily "military duty," *id.*, § 142, and the Governor may call the militia into service in catastrophic circumstances such as "war, insurrection, rebellion, invasion," etc. *Id.*, § 146. The militia may perform ordinary law-enforcement duty only if county or municipal officials "are unable to or have failed for any reason to enforce the laws." *Id.*, § 143. The militia does not perform the routine law-enforcement activities that Nichols claims that he will trigger if he ever carries a loaded firearm in public in California.

     In summary, the Governor is not a proper defendant in any case involving a U.S. constitutional challenge to a California criminal statute just because he signs bills into law and/or has supervisory power over the CHP and the militia; such an outcome would eviscerate the Eleventh Amendment and should not be countenanced.

     B.    Precedential Ninth Circuit Cases Support Dismissal Of The Governor For Lack Of The Requisite Connection

     Nichols mostly ignores the multiple cases that the Governor cited in the opening brief that counsel dismissal of the Governor here under the Eleventh Amendment, because of the Governor's lack of a connection to enforcement of Section 25850. Nichols does address yet badly misinterprets two Ninth Circuit cases that the Governor cited in the opening brief.

     *First*, Nichols overcomplicates and misstates the relevant holding of *National Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002). In that case, the Ninth

4

Circuit dismissed prior California Governor "Gray" Davis from a challenge to enforcement of a recently-enacted California ballot initiative that, in effect, banned certain methods of trapping animals. *Id.* at 843, 847. The grounds were the Eleventh Amendment, applied in a straight-forward manner: "[W]e hold that suit is barred against the Governor…as there is no showing that [he has] the requisite enforcement connection to Proposition 4." *Id.* at 847. Here, like under *National Audubon*, the Governor lacks the requisite enforcement connection to the challenged law, in this case Section 25850, and has Eleventh Amendment immunity from suit. It would not make a difference if, as Nichols argues, Section 25850 is enforced (by other people) often or infrequently,[2] or that the Governor signed into law AB 144 (the above-referenced ban on carrying *un*loaded handguns in public places). (Nichols Brief at 6.) It certainly makes no difference that Nichols makes the unsupported and conclusory assertion "that Defendant Brown is currently, actively enforcing the statute at issue under color of authority." (*Id.*)

*Second*, Nichols again goes astray in summarizing *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992). That case, helpfully for the Governor (and the other defendants in this case), restates the difficult test for any plaintiff seeking to hold a state official liable in a lawsuit, in the face of the Eleventh Amendment:

> Under *Ex Parte Young*, the state officer sued must have some connection with the enforcement of the allegedly unconstitutional act. This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.

*Id.* at 704 (citations and internal punctuation omitted). *Eu* concerned a challenge to a California statute prescribing and limiting the number of superior court judges

---

[2] Nichols gives no citation for his claim of "thousands of arrests and prosecutions for violating" Section 25850 (Nichols Brief at 6), nor is that allegation found in his complaint.

that could be appointed in Los Angeles County; the plaintiff wanted more judges to handle a backlog of cases. *Id.* at 700. California's governor, it was contended, had both the power and the obligation to appoint judges to any additional slots created. *Id.* at 701, 704. The governor's direct, non-delegable role in enforcing the law was direct and plain, so an Eleventh Amendment immunity claim did not make sense. *Id.* at 704. In the instant case, in contrast, as noted above, the Governor has virtually no role, direct or otherwise, in enforcing Section 25850, the law in question. So *Eu* does not support Nichols's position, either.

## II. NICHOLS LACKS ARTICLE III STANDING IN THIS UNRIPE CASE[3]

The Court need not go further than Eleventh Amendment analysis in deciding this motion. Should the Court proceed to the Article III standing and related ripeness question, the Court should decide, again, that it is appropriate to dismiss the instant case.

### A. Other Second Amendment Cases Finding Standing Contrast With Nichols's Case And Its Lack Of Standing and Ripeness

A review of other cases in which federal courts found that "open-carry" plaintiffs had Article III standing to pursue their ripe cases underscores why Nichols lacks standing in the present case, and it is unripe.

- In *Gonzalez v. Village of West Milwaukee*, ___ F.3d ___, 2012 WL 313572 (7th Cir. Feb. 2, 2012), Jesus Gonzalez, a vocal "open-carry" advocate very much like Nichols, twice openly carried loaded firearms into retail stores causing disarray and panic. *Id.* at *1-*3. Both times, local police officers arrested Gonzalez for disorderly conduct, but Gonzalez was never prosecuted on these charges. *Id.* at *2, *3. Gonzalez, while still pressing his alleged constitutional right to carry a loaded firearm openly, was convicted of

---

[3] The Governor addressed standing and ripeness separately in the opening brief for the instant motion. Because standing and ripeness are related, and for the sake of brevity, the Governor addresses the two topics simultaneously in this reply brief.

6

homicide (arising from another episode), and lost all claim to legal possession of any firearm. *Id.* at *1. Thus, while Gonzalez had no trouble with Article III standing, his homicide conviction mooted his substantive challenge regarding lawfully openly carry firearms. Nichols, of course, having conspicuously avoided openly carrying a loaded firearm in a public place, lacks standing.

- In *GeorgiaCarry.Org, Inc. v. Metro. Atlanta Rapid Transit Auth.*, 1:09-CV-594-TWT, 2009 WL 5033444 (N.D. Ga. Dec. 14, 2009), the individual-person plaintiff, Christopher Raissi, desired openly to carry a firearm on a public transit system and *actually attempted to do so*. *Id.* at *1-*2. Plus, evidence suggested that the public transit system had a policy for the system's police officers to stop anybody carrying a firearm. *Id.* at *7. On this fact pattern, the *GeorgiaCarry.Org* Court, considering related civil rights claims, found that a group of allied plaintiffs had standing. *Id.* at *7. In contrast, Nichols has not attempted openly to carry a firearm in a public place in California. And there is no specific policy of the Governor (or the Attorney General) to which Nichols can point as a threat of law enforcement action against him.[4]

- The instant case's lack of a threat of law enforcement – particularly from the Governor (or other state-level official) – is made clear by contrasting the facts of the instant case with the facts of *Wisconsin Carry, Inc. v. City of Madison*, No. 10-cv-547-bbc, 2011 WL 2884091 (W.D. Wisc. Jul. 15, 2011). In *Wisconsin,* a city police chief sent a memo to all police officers containing orders to approach and to thoroughly investigate, and possibly to arrest, anybody openly carrying a firearm in the locality. *Id.* at *2. There is no such

---

[4] Nichols purports to rely on *GeorgiaCarry.Org*, at page 25 of Nichols's brief. It should be noted that, by discussing *Gonzalez* and *GeorgiaCarry.org*, the Governor is *not* encouraging Nichols openly to carry a firearm in a prohibited public place in California, to try to gain standing in this case.

7

memo, from the Governor (or the Attorney General), alleged in the present case, meaning that the threat of enforcement by the Governor (or the Attorney General) remains hypothetical or speculative.

B.  Nichols Relies On Case Precedent That Do Not Substantively Support The Claims Of Standing And Ripeness

Undeterred by such on-point cases on standing and ripeness, Nichols continues to try to get around his Article III standing and ripeness problems with mistaken assertions of law and misinterpretations of other cases. As will be seen, Nichols's efforts fail and should not forestall dismissal of the Governor from the instant case.

**(i) Maya**

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011), which Nichols cites repeatedly in his brief (at 5, 6, and 16), applies the well-known three-factor Article III standing analysis (restated in the prior briefs for the various pending dismissal motions in this case) in a manner that reveals key differences between *Maya* and the instant case.

For factor one ("concrete injury"), it was important that the *Maya* plaintiffs had commercial transactions with the defendants, because the plaintiffs' common-law claims of injury were therefore necessarily more concrete with respect to the defendants. *Id.* at 1069, 1070-71. In contrast, in the instant case, as was previously noted, Nichols has not had any relevant interaction at all with the Governor (or the Attorney General), meaning that Nichols's alleged injuries remain "hypothetical some day" injuries. *See Ibrhahim v. Dep't of Homeland Sec.*, __ F.3d __, __, 2012 WL 390126 at *8 (9th Cir. Feb. 8, 2012).

For factor two ("traceability"), the same concrete interaction between the *Maya* plaintiffs and the defendants made the plaintiffs' injuries fairly – if *only partly* – traceable to the defendants. *Id.* at 1070 (finding plausible traceability for

8

one theory of injury), 1072 (rejecting traceability for other theory of injury). But Nichols's imaginary injuries by definition cannot legitimately be traced to the Governor.

For the third factor ("redressability"), the *Maya* plaintiffs' demand for monetary damages reflects the ready redressability of the injuries. *Id.* at 1065. Meanwhile, Nichols seeks injunctive relief that would be meaningless as applied against the Governor, who has no direct role in enforcing the law, Section 25850, that Nichols challenges.

Indeed, *Maya* works strongly *against* Nichols by holding that, on a motion to dismiss for lack of subject-matter jurisdiction, like the instant motion, "this is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury." *Id.* at 1068. The Governor already has pointed out how Nichols's injury presently exists in his mind only, and is asserted in a conclusory fashion. And Nichols's attempt to link this alleged injury to the Governor's oversight of CHP and California's militia, and the Governor's act of signing into law a recent bill (AB 144) that is not at issue in the present case, strongly resembles an "academic exercise in the conceivable" – albeit an exercise that does not even yield a conceivable result.

**(ii) Holder**

In *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705 (2010), a case on which Nichols relies (in his brief at 17), the U.S. Supreme Court found standing for plaintiffs challenging a federal law that, in essence, prohibited the provision of material support or resources to certain foreign entities engaged in terrorist activity. *Id.* at 2712-13, 2717. The reasons were two-fold: first, the plaintiffs previously had engaged in the precise activities that the law banned, and planned to do so again if the law was struck down; and, second, the defendants admitted prosecuting

9

1   150 people for violating the law, including the particular provisions that the
2   plaintiffs challenged. *Id.* at 2717. The High Court also noted that the plaintiffs had
3   been litigating the case for 12 years. *Id. Holder* also presents a contrast to the
4   present case in each of these respects. First, Nichols, while making various claims
5   about using firearms in the past (Decl. of Nichols, ¶¶5, 9, 10), conspicuously does
6   *not* claim that he ever has openly carried a loaded handgun in Redondo Beach or
7   another densely populated urban area in California – i.e., Nichols has never done
8   the precise conduct that Nichols wishes to do now. Second, there is little in the
9   record showing that the Governor (or any other California official) has prosecuted
10  anybody under Section 25850 (or when the law was previously numbered Section
11  12031).[5] And, third, the instant litigation has been ongoing for only a few months.

### (iii) Wolfson

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010), which Nichols cites in his brief at 20-22, is a First Amendment, not Second Amendment, case, and employed an Article III/ripeness analysis that was "less stringent" than usual because of the First Amendment context. *Id.* at 1062. Nichols has not cited, and the Governor has not found, a case holding that Article III/ripeness analysis is similarly made less stringent in Second Amendment cases. "Special" treatment of First Amendment claims in this context rests on free-speech protection being multifaceted, for the speaker(s), the communication(s), and its recipient(s). *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976), *cited in Penn. Family Inst., Inc v. Celucci*, 489 F. Supp. 2d 460, 471 (E.D. Pa. 2007 (determining

---

[5] The speculative supposition of enforcement of Section 25850 by the Governor (or the Attorney General) against Nichols distinguishes the present case from *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (holding that, while plaintiff challenging criminal statute need not expose self to arrest or to prosecution under statute to challenge same, plaintiff challenging criminal statute must face credible threat of having statute enforced against plaintiff to have standing for challenge) and *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) (concerning standing for patent licensee to challenge validity and enforceability of underlying patent).

10

ripeness question). Second Amendment self-defense rights seem to be for only the individual person asserting the right. In any event, *Wolfson* still required the plaintiff to show a concrete plan of political action and speech to violate the judicial conduct code in question, to have Article III standing and for the case to be ripe. *Id.* at 1059-62. Nichols has made no similar concrete plan,[6] and would not have standing or ripeness under *Wolfson*.

  C. Nichols Cites Some Cases That Are Simply Bad Law

Nichols, pressing his argument for standing at page 8 of his brief, erroneously cites an opinion, *Farrakhan v. Gregoire*, 590 F.3d 989 (9th Cir. 2010), that the Ninth Circuit has specifically ordered may *not* be cited as valid law. *Id.*, 603 F.3d 1072, 1073 (9th Circ. 2010) (granting *en banc* rehearing in case). In the subsequent *en banc* opinion in that case, the Ninth Circuit affirmed summary judgment for the defense, but explicitly did not address the standing issues. *Id.*, 623 F.3d 990, 993-94 (9th Cir. 2010).

Nichols, in his brief at page 9, improperly cites another withdrawn opinion, *Hydrick v. Hunter*, 449 F.3d 978 (9th Cir. 2006). *See* 500 F.3d 978, 982 (9th Cir. 2007) (withdrawing opinion in place of another). Later, the U.S. Supreme Court granted a certiorari petition regarding that subsequent Ninth Circuit opinion, and vacated it. *See* 129 S.Ct. 2431 (2009).

**III. THIS COURT LACKS JURISDICTION TO CONSIDER NICHOLS'S STATE-LAW-BASED ATTACK ON SECTION 25850**

Nichols's complaint's seventh count is presented unequivocally as a California state constitutional attack on Section 25850. (Compl., ¶¶84-89.) As the Governor already pointed out in the opening brief for the instant motion, this Court may not

---

[6] The Governor notes that Nichols now states under oath, "I will violate the statute at issue." (Nichols Decl., ¶12.) Nichols thereby has added something beyond the contents of the complaint or the prior declaration filed in this case. Yet Nichols is still just fantasizing about what he might do someday. Nichols has no concrete plan to exercise his alleged open-carry right.

11

1  resolve the count, because of federalism principles announced in *Pennhurst State*
2  *Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).
3        Nichols's citations to *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180
4  (1921), and *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S.
5  308 (2005), cannot salvage the seventh count in its present form. Both cases held,
6  in essence, that federal courts could properly resolve state-law claims that were
7  interwoven with questions of federal law. *Smith*, 255 U.S. at 199; *Grable*, 545 U.S.
8  at 314-16. Nichols's seventh claim is not of that sort; California's state constitution
9  is a different, independent source of law than the U.S. constitution or a federal
10 statute, *Actmedia, Inc. v. Stroh*, 830 F.2d 957, 964 (9th Cir. 1986), so resolution of
11 California state constitutional claims do not necessarily involve questions of federal
12 law. In other words, *Smith* and *Grable* are inapposite.
13       Taking another tack, Nichols tacitly admits this fatal flaw in his seventh count
14 and suddenly recharacterizes it as a *federal* constitutional attack on Section 25850.
15 (Nichols Brief at 10: "This Seventh Claim for Relief in the Complaint fully
16 incorporated all of the previously stated Equal Protection and Due Process
17 allegations under the United States Constitution"; "The lone claim for relief for
18 violation of the California Constitution arises out of the fully incorporated Federal
19 claims which included the Second, Fourth and Fourteenth Amendments to the
20 United States Constitution.") However, such a fundamental change in the count, if
21 permitted by the Court, would eliminate the independent state grounds of the count
22 and make it unnecessary and duplicative of prior counts. The effective outcome
23 would still be the dismissal of this count.

24 **IV. THE REMAINDER OF NICHOLS'S BRIEF DISCUSSES IRRELEVANT SUBJECTS**

25       The first two and last four pages of Nichols's brief discuss substantive
26 California Penal Code or constitutional-law issues that are simply irrelevant to the
27 instant dismissal motion based on lack of subject-matter jurisdiction. These parts
28

of Nichols's brief do not warrant a reply by the Governor and should not be taken into account by the Court in ruling on the instant motion.

## CONCLUSION

Nichols has no legitimate dispute with the Governor, who lacks the requisite connection to the law, Section 25850, that Nichols has challenged. The Eleventh Amendment bars this suit against the Governor. Additionally, there is no case or controversy to resolve here. The Court should decline to take up this unripe case on the merits at this time. Separately, Nichols's California-constitution-based count does not belong in federal court. For all these reasons, the Court should grant the Governor's motion to dismiss this case for lack of subject-matter jurisdiction.

Dated: March 19, 2012

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General


 */s/ Jonathan M. Eisenberg*
JONATHAN M. EISENBERG
Deputy Attorney General
*Attorneys for Defendants*

60749842.docx

# CERTIFICATE OF E-FILING AND SERVICE

Case Name:   **Nichols v. Brown**   No.   **U.S.D.C., C.D. Cal., 11-cv-09916-SJO-SS**

I hereby certify that, on March 19, 2012, I caused to be electronically filed with the U.S. District Court, Central District of California, Clerk of the Court, through the CM/ECF system, the document(s) with the following title(s):

**REPLY OF CALIFORNIA GOV. EDMUND G. BROWN JR. IN SUPPORT OF MOTION TO DISMISS ACTION UNDER FED. R. CIV. P. 12(b)(1)**

I certify that at least some of the participants in the above-entitled case are registered CM/ECF users.

I am employed in Los Angeles, California, in the Office of the Attorney General, Department of Justice, State of California ("OACG"), which is the office of a member of the California State Bar, at which member's direction the following service is made.

I am 18 years of age or older and not a party to this matter. I am familiar with the business practices at the OACG for collection and processing of correspondence for mailing with the U.S. Postal Service. In accordance with those practices, correspondence placed in the internal mail collection system at the OACG is deposited with the U.S. Postal Service, with postage thereon fully prepaid, that same day, in the ordinary course of business.

I further certify that at least some of the participants in the case are not registered CM/ECF users.

On March 19, 2012, I caused to be mailed, in the OACG's internal mail system, by First-Class Mail, postage prepaid, the foregoing document(s) to the following person(s) at the following address(es):

Charles Nichols
P.O. Box 1302
Redondo Beach, CA  90278

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 19, 2012, at Los Angeles, California.

|  R. Velasco  | /s/ R. Velasco |
|---|---|
| Declarant | Signature |

60719744.docx