**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES NICHOLS,                         ) | No. CV 11-09916 SJO (SS) |
|                          ) | |
|             Plaintiff,       ) | |
|                          ) | |
|       v.                      ) | **REPORT AND RECOMMENDATION OF** |
|                          ) | |
| EDMUND G. BROWN, in his          ) | **UNITED STATES MAGISTRATE JUDGE** |
| official capacity as Governor   ) | |
| of California, et al.,           ) | |
|                          ) | |
|             Defendants.     ) | |
| _____ ) | |

     This Report and Recommendation is submitted to the Honorable S.
James Otero, United States District Judge, pursuant to 28 U.S.C. § 636
and General Order 05-07 of the United States District Court for the
Central District of California.

**I.**

**INTRODUCTION**

     On November 30, 2011, plaintiff Charles Nichols ("Plaintiff"), a
California resident proceeding <u>pro se</u>, filed a civil rights complaint

pursuant to 42 U.S.C. § 1983.  On January 30, 2012, Defendants California Attorney General Kamala D. Harris ("Harris"), and the City of Redondo Beach, City of Redondo Beach Police Department, and City of Redondo Beach Police Chief Joseph Leonardi (collectively, the "Redondo Beach Defendants" or "RBD"), separately filed Motions to Dismiss.  Plaintiff filed Oppositions to the Motions on February 8, 2012.  Harris and the Redondo Beach Defendants filed Replies on February 14, 2012.  On March 8, 2012, Governor Edmund G. Brown, Jr. ("Brown"), the only other individually-named defendant, filed a Motion to Dismiss.  Plaintiff filed an Opposition on March 12, 2012.  On March 19, 2012, Brown filed a Reply.

     For the reasons discussed below, it is recommended that the Motions to Dismiss be GRANTED.  It is recommended that the claims against the Attorney General, the City of Redondo Beach, and City of Redondo Beach Police Chief Leonardi be DISMISSED with leave to amend.  It is further recommended that the claims against the Governor and the City of Redondo Beach Police Department be DISMISSED without leave to amend.  Finally, it is recommended that Plaintiff's Seventh Claim for Relief be DISMISSED without leave to amend.

## II.

### ALLEGATIONS OF THE COMPLAINT

     The Complaint names five Defendants: Attorney General Harris, Governor Brown, the City of Redondo Beach, the City of Redondo Beach Police Department and City of Redondo Beach Police Chief Leonardi.  (7AC 3-4).  All Defendants are sued in their official capacity.  (Id.).

Plaintiff raises seven related claims challenging the constitutionality of California Penal Code 25850, which provides in relevant part:

> (a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

> (b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

Cal. Penal Code §25850(a)(b).[1]

---

[1] The Complaint generally cites to Penal Code section 12031, the prior statute codifying California's ban on carrying a loaded weapon in public. However, "[e]ffective January 1, 2012, section 12031 was repealed and section 25850, which similarly prohibits carrying a loaded firearm in public, became operative." People v. Elliott, 53 Cal. 4th 535, 587 n.7, 137 Cal. Rptr. 3d 59 (2012). Plaintiff acknowledges that former subsection 12031(a)(1), the prohibition on carrying a loaded firearm in public, is now codified in section 25850(a), and that former subsection 12031(e), the authorization for officers to conduct a warrantless search of a loaded weapon, is now codified in section 25850(b). (Complaint at 24). For ease of reference, the Court will cite to section 25850.

In Claim One, Plaintiff raises a facial challenge to section 25850(a) under the Second Amendment because it prohibits him from openly carrying in public a "fully functional loaded handgun[] for the purpose of self-defense and for other lawful purposes." (Complaint at 18). In Claim Two, Plaintiff raises a facial challenge to section 25850(b) under the Fourth Amendment because the "mere possession of a loaded firearm . . . cannot support a finding of probable cause . . . such that the Fourth Amendment's warrant requirement can be legislatively disregarded." (Id. at 19-20). In Claim Three, Plaintiff alleges that section 25850(a), as applied, violates his "right to openly carry a loaded handgun in public" as guaranteed by the Second Amendment. In Claim Four, Plaintiff alleges that section 25850(b), as applied, violates his right to be "free from unreasonable search and/or seizure under the Fourth Amendment" in the exercise of his Second Amendment rights. (Id. at 21).

In his Fifth and Sixth Claims, Plaintiff raises facial challenges under the Equal Protection and Due Process clauses of the Fourteenth Amendment on the grounds that section 25850 inhibits "the fundamental right of self-defense" (Claim Five) and "is arbitrary or irrational" (Claim Six). (Id. at 22). In Claim Seven, Plaintiff alleges that section 25850 is unconstitutional under Article I, Section I of the California Constitution because the prohibition on "openly carrying a loaded handgun in non-sensitive public places for the purpose of self-defense" denies Plaintiff and other legal residents of the state "the

instrument by which he and they may defend their life, liberty, property

and safeguard their liberty."[2]   (Id. at 23).

Plaintiff seeks a declaration that section 28580 is "null and void" under the United States and California Constitutions.   (Id. at 24). Plaintiff further seeks preliminary and permanent injunctions enjoining Defendants from enforcing the provisions of section 28580 against "Plaintiff and private citizens who are otherwise qualified to possess handguns." (Id. at 25).

## III.

## DEFENDANTS' MOTIONS TO DISMISS

---

[2] Plaintiff filed two Requests for Judicial Notice with his Oppositions to the Harris and RBD Motions. (See Dkt. Nos. 17, 24). Plaintiff also filed a "Notice of Lodging of Computer Disc Containing Videos" in support of his Opposition to the RBD Motion. (Dkt. No. 20). The RBD filed Objections to the Requests for Judicial Notice, in which Harris joined, and to the Notice of Lodging. (See Dkt. Nos. 25-26; Harris Reply at 6 n.1). "When ruling on a motion to dismiss, [a court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Colony Cove Properties, LLC v. City Of Carson, 640 F.3d 948, 955 (9th Cir. 2011) (internal quotation marks omitted). "[N]otice may be taken where the fact is 'not subject to reasonable dispute,' either because it is 'generally known within the territorial jurisdiction,' or is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Castillo-Villagra v. I.N.S., 972 F.2d 1017, 1026 (9th Cir. 1992) (quoting Fed. R. Evid. 201(b)). The Court GRANTS Plaintiff's First Request for Judicial Notice with respect to attached Exhibits A and B and Plaintiff's Second Request for Judicial Notice, all of which involve court opinions and dockets, to the extent that they are compatible with Federal Rule of Evidence 201 and do not require the acceptance of facts "subject to reasonable dispute." The Court DENIES Plaintiff's First Request for Judicial Notice with respect to the news articles attached as Exhibits C, D and E and similarly declines to take notice of the video clips submitted in the Notice of Lodging. The Court notes, however, that even if it were to take notice of these materials, the analysis of Plaintiff's claims and the Court's recommendations would remain the same.

All Defendants seek dismissal of the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.  In addition, the RBD seek dismissal under Rule 12(b)(6) for failure to state a claim.

Harris contends that Plaintiff lacks Article III standing because he has not suffered an injury-in-fact. (Harris MTD at 7).  She notes that Plaintiff has not been arrested for violating section 25850 and argues that arrest is not imminent because "the Attorney General has not threatened to enforce Section 25850" against Plaintiff. (Id. at 7-8). For the same reasons, Harris contends that Plaintiff's suit is not ripe. (Id. at 9).  Harris further contends that Plaintiff's claims are barred by the Eleventh Amendment and do not meet the narrow circumstances in which federal suits against state officials for their oversight of state law are permitted, as articulated in Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  Specifically, Harris argues that even though Plaintiff seeks only prospective declaratory and injunctive relief, the Complaint does not show a "credible" threat of enforcement, and even if it did, the Attorney General's general law enforcement powers are insufficient to draw more than a "tenuous connection" between the Attorney General and Plaintiff's alleged injury. (Harris MTD at 10-11; Harris Reply at 5).  Finally, Harris contends that the Eleventh Amendment bars Plaintiff's seventh claim, which alleges that section 25850 violates the California Constitution.  (Harris MTD at 12).

Governor Brown also argues that Plaintiff lacks standing and that the case is not ripe for the same reasons presented by the Attorney General. (Brown MTD at 1, 6, 10-11).  Brown further argues that suit against him is barred by the Eleventh Amendment and that the Ex Parte

1  <u>Young</u> exception does not apply because Plaintiff cannot establish that
2  the Governor has a direct connection with the enforcement of section
3  25850.  (<u>Id.</u> at 7-10).  Brown also argues that Plaintiff's state
4  constitutional claim is barred by the Eleventh Amendment.  (<u>Id.</u> at 14).

5

6      The RBD contend that Plaintiff does not have standing to bring suit
7  against them because he "cannot show that any of his alleged injuries are
8  traceable to the actions of Redondo Beach Defendants."  (RBD MTD at 5).
9  They note that all but two of Plaintiff's claims are facial challenges
10 to a state law and that the Third and Fourth Claims for Relief, which
11 challenge section 25850 as applied, "do not even make an allegation that
12 the Redondo Beach Defendants are applying the challenged provisions at
13 all . . . ."  (<u>Id.</u>).  Furthermore, the RBD cannot grant the relief
14 Plaintiff seeks because even if "the City's assumed policies or customs
15 [were] enjoined by this Court, the general state law provisions that
16 [Plaintiff] alleges cause his supposed injuries would remain in effect."
17 (<u>Id.</u> at 6).  The RBD also seek dismissal of the Complaint under Rule
18 12(b)(6) for failure to state a claim because Plaintiff "does not allege
19 that the Redondo Beach Defendants even have a policy or custom concerning
20 <u>any</u> of the general law provisions he challenges as unconstitutional."
21 (<u>Id.</u> at 7).  They also seek dismissal of Plaintiff's state constitutional
22 claim pursuant to the Eleventh Amendment and because California's
23 Constitution does not guarantee a right to bear arms.  (<u>Id.</u> at 9).

24

25                              **IV.**

26              **STANDARDS GOVERNING MOTIONS TO DISMISS**

27

28    Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of

an action for lack of subject matter jurisdiction.  It is well established that the party seeking to invoke the jurisdiction of the federal courts has the burden of establishing that jurisdiction exists. Assoc. of Medical Colleges v. United States, 217 F.3d 770, 778-779 (9th Cir. 2000).  A motion under Rule 12(b)(1) can either be "facial," attacking a pleading on its face and accepting all allegations as true, or "factual," contesting the truth of some or all of the pleading's allegations as they relate to jurisdiction.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  The standards that must be applied vary according to the nature of the jurisdictional challenge.

Here, the challenge to jurisdiction is a facial attack.  Defendants contend that the allegations of jurisdiction contained in the Complaint are insufficient on their face to demonstrate the existence of jurisdiction.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made.  See Sea Vessel Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994).  The material factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003); see also Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011) ("'For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.'") (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

Under Rule 12(b)(6), a defendant may also seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept all factual allegations as true even if doubtful in fact. Twombly, 550 U.S. at 555-56. However, the court does not have to accept as true mere legal conclusions. See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

A court considering a motion to dismiss must also decide, if it grants the motion, whether to grant the plaintiff leave to amend. Even when a request to amend is not made, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs." Lira v. Herrera, 427 F.3d 1164, 1176 (9th Cir. 2005) (internal quotation marks omitted). However, if amendment of the pleading would be futile,

1  leave to amend may be denied.  See Ventress v. Japan Airlines, 603 F.3d
2  676, 680 (9th Cir. 2010).

3

4

5

6                                    V.

7                               DISCUSSION

8

9       Plaintiff lacks standing to bring his claims as currently alleged
10 against all named Defendants.  Even liberally construed, the Complaint
11 fails  to  establish  that  Plaintiff  has  suffered  an  injury-in-fact
12 sufficiently  particularized  to  bring  this  preenforcement  challenge.
13 Additionally, even if Plaintiff were able to show an injury-in-fact, he
14 cannot show a direct connection between the Governor or the Redondo Beach
15 Defendants  and  his  alleged  injuries,  or  that  his  injuries  would  be
16 redressed by a favorable decision against those Defendants.  For the same
17 reasons,  Plaintiff's  claims  are  not  ripe  for  adjudication.   Even  if
18 Plaintiff could establish jurisdiction, he has failed to state a claim
19 against  the  RBD.   Finally,  the  Eleventh  Amendment  bars  Plaintiff's
20 claims against the Governor and Plaintiff's state constitutional claim.

21

22 A.   **Plaintiff Lacks Standing To Bring This Preenforcement Challenge**

23

24      "Article  III,  §  2,  of  the  Constitution  restricts  the  federal
25 'judicial Power' to the resolution of 'Cases' and 'Controversies.'  That
26 case-or-controversy requirement is satisfied only where a plaintiff has
27 standing."  Sprint Communications Co., L.P. v. APCC Servs., Inc., 554
28 U.S. 269, 273, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008).  To establish

                                    11

Article III standing, a plaintiff must show that (1) he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Maya, 658 F.3d at 1067 (internal quotation marks omitted).  A failure to meet any one of these three criteria constitutes a "lack of Article III standing [and] requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Id.

### 1.   Injury-in-Fact

The first factor a court will consider in addressing a plaintiff's standing is whether he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent." Maya, 658 F.3d at 1067.  Plaintiff does not allege that he has ever violated section 25850 or been charged with a violation.  Rather, Plaintiff states that after receiving a "not so thinly veiled death threat" on September 1, 2011, he "would openly carry a loaded and functional handgun in public for the purpose of self-defense, but he refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he understands it is unlawful to openly carry a handgun in California for the purpose of self-defense." (Complaint at 6, ¶ 15).

Because Plaintiff has not been arrested, prosecuted, or incarcerated for violating section 25850, he must satisfy the criteria for an injury-in-fact that apply to preenforcement challenges to statutes regulating

conduct.[3]   Plaintiff "must show a <u>genuine</u> threat of <u>imminent</u> prosecution," not the "mere possibility of criminal sanctions." <u>San Diego Cnty. Gun Rights Comm. v. Reno</u>, 98 F.3d 1121, 1126 (9th Cir. 1996) (internal quotation marks omitted; emphasis in original). "In evaluating the genuineness of a claimed threat of prosecution, [the court] look[s] to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." <u>Thomas v. Anchorage Equal Rights Comm'n</u>, 220 F.3d 1134, 1139 (9th Cir. 2000) (<u>en banc</u>; <u>see also</u> <u>Babbitt v. United Farm Workers</u>, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979) (a plaintiff challenging the constitutionality of a criminal statute need not "first expose himself to actual arrest or prosecution" but must establish Article III standing by "alleg[ing] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and demonstrating that "there exists a credible threat of prosecution thereunder."). "A general intent to violate a

---

[3]   Article III standing jurisprudence distinguishes between preenforcement challenges to statutes regulating speech and statutes regulating conduct.  The Supreme Court has recognized that chilling protected speech may by itself constitute a cognizable Article III injury because "self-censorship" of speech is "a harm that can be realized even without an actual prosecution." <u>Virginia v. Am. Booksellers Ass'n</u>, 484 U.S. 383, 393, 108 S. Ct. 636, 98 L. Ed. 2d 782 (1988).  The Ninth Circuit has found, however, that where the constitutional challenge involves a statute regulating conduct, not speech, mere allegations of self-censorship are insufficient to establish an injury and "the standing requirements for preenforcement challenges set out in <u>Thomas v. Anchorage Equal Rights Comm'n</u>, 220 F.3d 1134 (9th Cir. 2000), apply." <u>Humanitarian Law Project v. U.S. Treas. Dep't.</u>, 578 F.3d 1133, 1138 (9th Cir. 2009); <u>see also</u> <u>id.</u> at 1143 ("[N]either self-censorship nor subjective chill is the functional equivalent of a well-founded fear of enforcement when the statute on its face does not regulate expressive activity.").

statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." <u>Thomas</u>, 220 F.3d at 1139.  Additionally, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." <u>Id.</u>; <u>see also</u> <u>Stoianoff v. State of Montana</u>, 695 F.2d 1214, 1223 (9th Cir. 1983) ("The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III.").

      a.    **Plaintiff Fails To Allege A Concrete Plan To Violate Section 25850**

The first element of the injury-in-fact analysis for preenforcement challenges is whether the plaintiff has articulated a "concrete plan" to violate the contested statute.  <u>Thomas</u>, 220 F.3d at 1139.  Even liberally construed, the Complaint fails to allege that Plaintiff has a concrete plan to violate section 25850.  The Complaint merely alleges that Plaintiff "would openly carry a loaded and functional handgun in public for the purpose of self-defense" but for his fear of arrest and prosecution.  (Complaint at 6, ¶ 15).[4]  The mere assertion of a desire to engage in a prohibited activity, particularly when the "acts necessary to make plaintiffs' injury -- prosecution under the challenged statute -- materialize are almost entirely within plaintiffs' own control" is too indefinite to constitute a "concrete plan."  <u>San Diego Cnty. Gun Rights</u>

---

[4] In a Declaration submitted with his Oppositions to the Harris and RBD Motions to Dismiss, Plaintiff similarly asserts that he "do[es] not openly carry a loaded handgun or long gun in non-sensitive public places because [he] would in all certainty be arrested, prosecuted, fined and imprisoned for doing so."  (Decl. of Charles Nichols, Dkt. No. 21, at 4).

Comm., 98 F.3d at 1127.

Plaintiff is not required to violate section 25850 and subject himself to prosecution to establish an injury-in-fact, but must articulate a concrete plan in sufficient detail to convey the timing and circumstances of the anticipated action.  See Babbitt, 442 U.S. at 298; Thomas, 220 F.3d at 1139.   In Thomas, landlords claimed that their pro-marriage religious beliefs prevented them from renting housing to unmarried couples and would therefore compel them to violate a law banning housing discrimination on the basis of marital status.  The Ninth Circuit found that the landlords' general "intent" to violate the law "on some uncertain day in the future," coupled with their inability even to specify "when, to whom, where, or under what circumstances" they had refused to rent to unmarried couples in the past, "does not rise to the level of an articulated, concrete plan."  Id. at 1139-40.  Similarly, a complaint challenging federal drug laws on the ground that they infringed on a Native American church's use of cannabis, but that failed to "allege exactly how, where, in what quantities, and under what circumstances Plaintiffs intend[ed] to consume cannabis" and to articulate how the church planned to acquire, cultivate and distribute the drug, did not "describe a concrete plan to violate a federal drug law."  Oklevueha Native American Church of Hawai'i, Inc. v. Holder, 719 F. Supp. 2d 1217, 1222 (D. Hawaii 2010).  Plaintiff's vague assertion that he "would" openly carry a firearm does not provide any of the specificity required to identify a concrete plan to violate section 25850.

> **b.**   **Plaintiff Fails To Allege That Prosecuting Authorities Have Communicated An Intent To Prosecute Him**

The second element of the injury-in-fact analysis for preenforcement challenges is whether prosecuting authorities "have communicated a specific warning or threat to initiate proceedings" against the plaintiff should he violate the contested statute. <u>Thomas</u>, 220 F.3d at 1139. The mere allegation of a fear of prosecution that "amounts to no more than a 'generalized grievance shared in substantially equal measure by . . . a large class of citizens'" who may also desire to violate the challenged statute "does not warrant the exercise of jurisdiction." <u>National Rifle Assoc. of America v. Magaw</u>, 132 F.3d 272, 294 (6th Cir. 1997) (quoting <u>Warth</u>, 422 U.S. at 499); <u>see also</u> <u>Seegars v. Gonzales</u>, 396 F.3d 1248, 1255 (D.C. Cir. 2005) (challenge to firearm regulatory statutes failed to show "a threat of prosecution reaching the level of imminence" required to establish a preenforcement injury where plaintiffs did not allege any specific prior threats by authorities and "nothing . . . indicates any special priority placed upon preventing <u>these parties</u> from engaging in specified conduct") (internal quotation marks omitted; emphasis in original). However, a plaintiff may establish a "real and immediate" threat of an injury where, for example, the plaintiff has been previously charged with violating the challenged statute, <u>see</u> <u>American-Arab Anti-Discrimination Committee v. Thornburgh</u>, 970 F.2d 501, 508 (9th Cir. 1992), or has received a specific warning of intent to prosecute. <u>See</u> <u>Ripplinger v. Collins</u>, 868 F.2d 1043, 1047 (9th Cir. 1989).

Plaintiff does not allege that he has been previously charged with violating section 25850 or has received any specific warning, directed to him, that he will be prosecuted if he openly carries a loaded firearm in public. His fear of prosecution, based on his "understanding" of California law, is no different than the "generalized grievance" of any

gun owner who wishes to openly carry a handgun and is insufficient to establish a particularized, imminent preenforcement threat of prosecution. (See Complaint at 6, ¶ 15); Warth, 422 U.S. at 499; see also San Diego Cnty. Gun Rights Comm., 98 F.3d at 1128 ("[A] possibility of . . . eventual prosecution . . . is clearly insufficient to establish a 'case' or 'controversy.'").

> **c.  The Attorney General's Concession That Violations of Section 25850 Are Prosecuted Is Not Dispositive**

The third element of the injury-in-fact analysis for preenforcement challenges examines the "history of past prosecution or enforcement under the challenged statute." Thomas, 220 F.3d at 1139. An absence of past prosecutions "undercuts [plaintiffs'] argument that they face a genuine threat of prosecution." San Diego Cnty. Gun Rights Comm., 98 F.3d at 1128. Here, the Attorney General concedes that "statewide, law enforcement authorities have appropriately enforced Section 25850 . . . ." (Harris MTD at 11). While this factor weighs in favor of finding a preenforcement injury-in-fact, it is not dispositive. See, e.g., Seegars, 396 F.3d at 1255 (government's prior admission that it prosecutes all gun law violators "under normal prosecutorial standards" is insufficient to establish an imminent preenforcement threat of prosecution where plaintiffs alleged no prior threats of prosecution "against them"). Consequently, because Plaintiff has failed to allege a concrete plan to violate section 25850 or any specific communication directed to him threatening to enforce the statute, he has stated only a "generalized grievance" that does not constitute a preenforcement injury-in-fact. Consequently, Plaintiff's jurisdictional allegations

fail to establish standing to bring these preenforcement claims.

2.   **Causation**

Even though Plaintiff has failed to allege an injury-in-fact, and therefore lacks standing on that ground alone, the Court will address the other factors of the standing analysis raised by Defendants to provide guidance to the parties.   The second factor a court will consider is whether "the injury is fairly traceable to the challenged action of the defendant." <u>Maya</u>, 658 F.3d at 1067.   "To survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'   A causal chain does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausible.'" <u>Id.</u> at 1070 (internal citations and alterations omitted).   However, "if it appears that plaintiff's alleged injuries are the result of conduct of a third person not a party-defendant, or the result of other circumstances not within the control of the defendant, there can be no finding that a sufficient causal nexus exists between the plaintiff's alleged injuries and the defendant's challenged conduct." <u>NAACP v. State of California</u>, 511 F. Supp. 1244, 1261 (E.D. Cal. 1981).

a.   **Attorney General Harris**

Harris argues that Plaintiff "draws only a tenuous connection between himself and the Attorney General" based on her general law

enforcement powers, a connection which she claims is insufficient to "satisfy the requirement that enforcement be threatened, so as to establish standing and an Ex Parte Young exception to the Eleventh Amendment."[5] (Harris Reply at 5). The California Attorney General is the "head of the Department of Justice" and "has charge, as attorney, of all legal matters in which the state is interested." Cal. Gov't Code §§ 12510 & 12511. The Attorney General has particularly broad responsibility and expansive powers in the enforcement of criminal law:

> The Attorney General has direct supervision over the district attorneys of the several counties of the State . . . . ¶ When he deems it advisable or necessary in the public interest, or when directed to do so by the Governor, he shall assist any district attorney in the discharge of his duties, and may, where he deems it necessary, take full charge of any investigation or prosecution of violations of law of which the superior court has jurisdiction. In this respect he has all the powers of a district attorney, including the power to issue or cause to be issued subpenas or other process.

---

[5] A state official's enforcement connection with a plaintiff's alleged injuries is a factor in both Article III standing and Eleventh Amendment sovereign immunity analyses. However, "[w]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power . . . it is not coextensive with the limitations on judicial power in Article III." Calderon v. Ashmus, 523 U.S. 740, 745 n.2, 118 S. Ct. 1694, 140 L. Ed. 2d 970 (1998) (before reaching Eleventh Amendment issues, the court "must first address whether this action" satisfies the Article III "case or controversy" requirement); see also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267, 117 S. Ct. 2028, 2033, 138 L. Ed. 2d 438 (1997) (state may waive Eleventh Amendment immunity but not Article III case or controversy requirement).

1  Cal. Gov't Code § 12550; see also Pitts v. County of Kern, 17 Cal. 4th

2  340, 357, 70 Cal. Rptr. 2d 823 (1998) (California Constitution, Art. V,

3  sec. 13, "confers broad discretion upon the Attorney General to determine

4  when to step in and prosecute a criminal case") (internal quotation marks

5  omitted).

6

7      The Ninth Circuit has found that where a state Attorney General may

8  assume the role of County Prosecutor, the Attorney General has a

9  sufficient connection to the enforcement of the state's criminal laws to

10 be a proper defendant in suits challenging their constitutionality:

11

12      State attorneys general are not invariably proper defendants

13      in challenges to state criminal laws.  Where an attorney

14      general cannot direct, in a binding fashion, the prosecutorial

15      activities of the officers who actually enforce the law or

16      bring his own prosecution, he may not be a proper defendant.

17      . . . However, and determinatively here . . . the [Idaho]

18      attorney general may in effect deputize himself (or be

19      deputized by the governor) to stand in the role of a county

20      prosecutor, and in that role exercise the same power to

21      enforce the statute the prosecutor would have.  That power

22      demonstrates the requisite causal connection for standing

23      purposes.  An injunction against the attorney general could

24      redress plaintiffs' alleged injuries . . . .

25

26 Planned Parenthood of Idaho v. Wasden, 376 F.3d 908, 919-20 (9th Cir.

27 2004).  Consequently, because the California Attorney General may stand

28 in for a county prosecutor and "take full charge" of any prosecution, the

connection between the Attorney General and Plaintiff's alleged injuries is sufficient to satisfy the second prong of the standing analysis.

        **b.   Governor Brown**

    Brown claims that he "does not have a role in enforcing section 25850" and that the Governor's general duty to enforce state law is an insufficient connection to Plaintiff's alleged injuries to confer standing. (Brown MTD at 8); <u>see also</u> Cal. Const., Art. V, sec. 1 ("The Governor shall see that the law is faithfully executed."). It is well established that "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." <u>Snoeck v. Brussa</u>, 153 F.3d 984, 986 (9th Cir. 1998); <u>see also</u> <u>Los Angeles Branch NAACP v. Los Angeles Unified School Dist.</u>, 714 F.2d 946, 953 (9th Cir. 1983) (governor's "general duty to enforce California law . . . does not establish the requisite connection between him and the unconstitutional acts" alleged in suit claiming de jure segregation of city school system); <u>Shell Oil Co. v. Noel</u>, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."). Additionally, "[w]here the enforcement of a statute is the responsibility of parties other than the governor . . . the governor's general executive power [to enforce laws] is insufficient to confer jurisdiction."). <u>Women's Emergency Network v. Bush</u>, 323 F.3d 937, 949-50 (11th Cir. 2003).

    However, "no . . . special charge need be found directly in the

challenged statute to meet the requisite 'some connection' so long as
there is sufficient indicia of the defendant's enforcement powers found
elsewhere in the laws of the state." Okpalobi v. Foster, 244 F.3d 405,
419 (5th Cir. 2001).  The Governor's connection to a plaintiff's injury
may be sufficiently direct based on other duties the law places on him
related to the challenged statute.  See, e.g., Los Angeles Cnty. Bar
Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992) (governor proper party in
suit challenging statute limiting the number of judges the governor could
appoint to any county due to his "specific connection to the challenged
statute"); Artichoke Joe's v. Norton, 216 F. Supp. 2d 1084, 1110-11 (E.D.
Cal. 2002) (governor proper party in suit challenging statute prohibiting
certain gaming machines because the governor had a specific duty under
state law, "not based on any general duty to enforce state law," to
negotiate and approve gaming compacts with tribes), aff'd, 353 F.3d 712
(2003).

Here, Plaintiff is suing Brown in his official capacity because
"[t]he Governor has the supreme executive power in the State and is
responsible for the faithful execution of the laws of the State of
California."  (Complaint at 3).  This generalized enforcement power,
however, is insufficient to establish the requisite connection between
Brown and Plaintiff's alleged injury.  See Young v. Hawaii, 548 F. Supp.
2d 1151, 1164 (D. Hawaii 2008) (suit challenging laws prohibiting the
carrying or use of firearms in certain circumstances failed to establish
"required nexus" between the governor and plaintiff's injury where
complaint relied solely on governor's "general oversight of State laws").
Nor does the fact that Brown signed into law a bill that prohibits openly
carrying an unloaded handgun in public, as Plaintiff contends in his

Opposition, establish the requisite connection.  (Brown Opp. at 4); <u>see also</u> Cal. Penal Code § 26350 (former Assembly Bill 144).  A governor is entitled to absolute immunity for the act of signing a bill into law. <u>See</u> <u>Torres-Rivera v. Calderon-Serra</u>, 412 F.3d 205, 213 (1st Cir. 2005) ("[A] governor who signs into law or vetoes legislation passed by the legislature is also entitled to absolute immunity for that act."); <u>Women's Emergency Network</u>, 323 F.3d at 950 ("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law.") (citing <u>Supreme Ct. of Va. v. Consumers Union of United States, Inc.</u>, 446 U.S. 719, 731-34, 100 S. Ct. 1967, 1974-76, 64 L. Ed. 2d 641 (1980)).

     Consequently, because Plaintiff's sole basis for suing Brown is based on the Governor's general enforcement powers, Plaintiff has failed to show that his injury is "fairly traceable" to the Governor.  <u>See, e.g.</u>, <u>Nat'l Audubon Soc'y, Inc. v. Davis</u>, 307 F.3d 835, 847 (9th Cir. 2002) (California governor dismissed from challenge to law banning use of certain traps and poisons due to lack of enforcement ability); <u>Confederated Tribes & Bands of Yakama Indian Nation v. Locke</u>, 176 F.3d 476, 469-70 (9th Cir. 1999) (Washington governor improper defendant in challenge to state lottery because governor had no involvement with operation of lottery).  Plaintiff's claims against Governor Brown therefore fail to satisfy the second prong of the standing analysis.

          c.   **Redondo Beach Defendants**

     Plaintiff has failed to allege facts establishing that the RBD have a sufficient connection to his alleged injury to establish jurisdiction.

The Complaint makes four specific allegations concerning the RBD.   In Paragraph Seven, Plaintiff identifies the City of Redondo Beach as a "municipal division of the State of California" that is responsible for setting the policies and procedures of its Police Department.  (Complaint at 3-4).   In Paragraphs Eight and Nine, Plaintiff identifies the City of Redondo Beach Police Department as a police department and Police Chief Joseph Leonardi as the person with "final departmental authority in all matters of policy, operation and discipline."  (Id. at 4).   The only other specific reference to the RBD is in Paragraph Forty-Eight, in which Plaintiff claims that the Redondo Beach Municipal Code "imposes a fine for illegally hunting or discharging a bullet ' . . . in, over, across, along, or upon any public street, sidewalk, lane, alley, or public place in the City.'"  (Id. at 15) (citing Redondo Beach Municipal Code §§ 4-25.01, 1-2.03).[6]  Nowhere in the Complaint does Plaintiff allege that the RBD actually enforce section 25850 or that the City has a policy that improperly applies or exceeds the state statute's provisions.

    Plaintiff's injury, as currently alleged, is not traceable to the RBD.   Section 25850 is a state law, not a municipal ordinance.  Indeed, the California Legislature has "chosen to preempt 'discrete areas of gun regulation,'" including "public handgun possession."  Fiscal v. City and

---

    [6] Section 4-25.01 of the Redondo Beach Municipal Code reads: "Places to play ball and hunt restricted.   It shall be unlawful for any person to play ball or any game of sport with a ball or football or to throw, cast, shoot, or discharge any stone, pellet, bullet, arrow, or other missile in, over, across, along, or upon any public street, sidewalk, lane, alley, or public place in the City.  Persons may play ball or any game of sport with a ball or football in any area in any public park or playground designated or set apart for such purpose by the Council by resolution."   See http://www.qcode.us/codes/redondobeach/.   Section 1-2.03 provides that a violation of section 4-25.01 "shall constitute an infraction and not a misdemeanor."  Id.

County of San Francisco, 158 Cal. App. 4th 895, 905, 909, 70 Cal. Rptr. 3d 324 (2008).   Under California law, "where the Legislature has manifested an intention, expressly or by implication, wholly to occupy the field . . . municipal power to regulate in that area is lost."   Id. at 904 (alterations and internal quotation marks omitted).   Section 4-25.01, which Plaintiff erroneously cites as a gun control ordinance, is in fact in the chapter of the Municipal Code entitled "Ball Games and Hunting" and does not encroach on the field occupied by section 25850. See http://www.qcode.us/codes/redondobeach/.   The ordinance regulates where certain games may be played in the City and prohibits hunting in public places.   Id. at § 4.25-01.   It says nothing about openly carrying a loaded firearm in public for self-defense and could not because that area of gun regulation has been pre-empted by the state.

     At most, Plaintiff's claim against the RBD appears to be based on the fact that these defendants enforce state law, including section 25850.   (See, e.g., RBD Opp. at 5) ("As Redondo Beach Defendants are well aware, it has been the 'official policy or custom' of the Defendants to enforce PC 12031(e) since at least August 7, 2010.").   However, "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability."   Wong v. City & County of Honolulu, 333 F. Supp. 2d 942, 951 (D. Hawaii 2004); see also Surplus Store and Exchange, Inc. v. City of Delphi, 928 F.2d 788, 791 n.4 (7th Cir. 1991) (refusing to construe state law as a municipal policy in section 1983 claim on the ground that doing so "would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors -- here, the [state] legislature").   Consequently, Plaintiff's claims do not establish that the RBD have any connection to

his alleged injury and fail to satisfy the second prong of the standing analysis.

**3.   Likelihood That The Injury Will Be Redressed By A Favorable Decision**

The third factor of the standing analysis is whether "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Maya, 658 F.3d at 1067.  If Plaintiff is able to amend his Complaint to allege an injury-in-fact, it is likely that a favorable decision against the Attorney General would redress Plaintiff's injury due to her direct enforcement powers over California criminal law. Planned Parenthood of Idaho, 376 F.3d at 919-20.  However, as discussed above, because the Governor is not directly responsible for enforcing section 25850, a favorable decision against the Governor is not likely to redress Plaintiff's injury.  Furthermore, Plaintiff's injury, as currently alleged, would not be redressed by a favorable decision against the RBD.  Even if the Court could construe enforcement of state law by the RBD as a municipal "policy," enjoining the RBD from implementing that "policy" would not provide any real relief if the provisions of section 25850 remain intact.  It is possible, however, that Plaintiff may be able to amend his claims against the RBD to identify a municipal policy that exceeds or unconstitutionally applies the provisions of section 25850. If Plaintiff is able to articulate facts establishing that the RBD do not simply enforce state law, but do so in a particular manner that violates the Constitution, Plaintiff may state a claim.

In sum, Plaintiff has failed to establish a particularized preenforcement injury-in-fact and therefore lacks standing to bring his claims as currently alleged against any of the named Defendants. However, assuming that Plaintiff will be able to amend his Complaint to allege an injury-in-fact, the Attorney General would appear to be a proper defendant. Therefore, it is recommended that Plaintiff's claims against the Attorney General be DISMISSED, but with leave to amend. Even assuming that Plaintiff can allege an injury-in-fact, however, the Governor does not have a sufficiently direct connection to the enforcement of section 25850 such that a favorable decision against him would be likely to redress Plaintiff's injury. Therefore, because amendment of the Complaint would be futile as to the Governor, it is recommended that Plaintiff's claims against the Governor be DISMISSED without leave to amend. Finally, if Plaintiff is able to allege facts establishing that the RBD do not merely enforce state law but apply section 25850 in a particular manner that violates the Constitution, the RBD would appear to have a sufficient connection to Plaintiff's injury and a favorable decision against them would be likely to redress Plaintiff's injury. Therefore, it is recommended that Plaintiff's claims against the RBD be DISMISSED, but with leave to amend.[7]

**B.   <u>Plaintiff's Claims Are Not Ripe For Adjudication</u>**

---

[7] Specifically, it is recommended that Plaintiff's claims against the City of Redondo Beach and Police Chief Leonardi be dismissed with leave to amend. For the reasons stated in Part V.D. below, which do not involve standing, the City of Redondo Beach Police Department is an improper defendant in a section 1983 suit. Consequently, it is recommended that Plaintiff's claims against the City of Redondo Beach Police Department be dismissed without leave to amend.

Ripeness is question of timing intended to "prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract agreements." Thomas, 220 F.3d at 1138 (quoting Abbott Laboratories v. Gardner, 387 U.S. 13, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)). "[I]n many cases, ripeness coincides squarely with standing's injury-in-fact prong. . . . [I]n measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." Thomas, 220 F.3d at 1138-39. In a preenforcement challenge, the ripeness inquiry tracks the analysis articulated in Thomas for determining whether a "genuine threat of imminent prosecution" exists. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1122 (9th Cir. 2009). Because Plaintiff has failed to establish a preenforcement injury-in-fact, his claims, as currently alleged, are not ripe for adjudication.

Furthermore, this case is not ripe for review for prudential reasons as well. To evaluate the "prudential component of ripeness," a court considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Wolfson v. Brammer, 616 F.3d 1045, 1060 (9th Cir. 2010) (internal quotation marks omitted). A claim is "fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." Id. (internal quotation marks omitted). Although most of Plaintiff's claims are facial challenges, Claims Three and Four purport to challenge section 25850 "as applied." However, the Complaint is devoid of factual allegations describing how the law is applied or explaining what Plaintiff's specific objections are to the

manner in which the law is applied. "[A] party bringing a preenforcement challenge must nonetheless present a concrete factual situation . . . to delineate the boundaries of what conduct the government may or may not regulate without running afoul of the Constitution." Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 849 (9th Cir. 2007) (internal quotation marks omitted). Plaintiff has failed to articulate such a "concrete factual situation" and instead presents only a generalized grievance that would impermissibly require the Court to "decide constitutional questions in a vacuum." Id. Consequently, his claims, as currently alleged, are not ripe for review.

**C.    The Eleventh Amendment Bars Suit Against The Governor**

Harris and Brown contend that the Eleventh Amendment bars suit against them.[8]  (Harris MTD at 10-11; Brown MTD 6-8).  The Eleventh Amendment generally "prohibit[s] federal courts from hearing suits brought by private citizens against state governments without the state's consent." Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1183 (9th Cir. 1997).  Pursuant to Ex Parte Young, however, an exception is made for suits against state officers for prospective declaratory or injunctive relief to enjoin official actions that violate federal law. Id. (citing Ex Parte Young, 209 U.S. at 155-56).  This exception is "predicated on the notion that a state cannot authorize one of its agents to violate the Constitution and laws of the United States," so a "state officer acting in violation of federal law is considered stripped of his

_____

[8]   The Eleventh Amendment does not prohibit suit against political subdivisions of states, such as counties and municipalities, and as such, does not apply to the claims against the Redondo Beach Defendants. See Alaska v. EEOC, 564 F.3d 1062, 1085-86 (9th Cir. 2009).

official or representative character" and is "not shielded from suit by the state's sovereign immunity." _Sofamor Danek Group, Inc._, 124 F.3d at 1183 (internal quotation marks omitted).  The "obvious fiction" of _Ex Parte Young_, however, is subject to several constraints.  _Coeur d'Alene Tribe of Idaho_, 521 U.S. at 270.  Among those constraints is the requirement that "the state official sued 'must have some connection with the enforcement of the act' to avoid making that official a mere representative of the state." _Culinary Workers Union, Local 226 v. Del Papa_, 200 F.3d 614, 619 (9th Cir. 1999) (quoting _Ex Parte Young_, 209 U.S. at 157).

    While state law determines "whether and under what circumstances a particular defendant has any connection with the enforcement of the law of that state . . . it is a question of federal jurisdictional law whether the connection is sufficiently intimate to meet the requirements of _Ex Parte Young_." _Shell Oil Company_, 608 F.2d at 211.  As discussed above, the Ninth Circuit has found that where, as in California, a state attorney general may "stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have," a sufficient connection is established for the _Ex Parte Young_ exception to apply.  _Planned Parenthood of Idaho_, 376 F.3d at 919-20.  Consequently, the Eleventh Amendment does not prohibit suit against Harris.  However, where, as here, the Governor does not have "the requisite enforcement connection" to a challenged state law, the Eleventh Amendment prohibits suit against him.  _Nat'l Audubon Soc'y, Inc._, 307 F.3d at 847.  Consequently, Plaintiff's claims against Brown are barred by the Eleventh Amendment.

\\

1    \\

2    \\

3    \\

4

5    **D.**     **Plaintiff Fails To State A Claim Against The Redondo Beach**

6            **Defendants Under Rule 12(b)(6)**

7

8           In addition to failing to establish jurisdiction over the Redondo

9    Beach Defendants, Plaintiff has also failed to state a claim against the

10   RBD under Rule 12(b)(6).  When an individual sues a local government for

11   violation of his constitutional rights, the municipality is liable only

12   if the individual can establish that the local government "had a

13   deliberate policy, custom, or practice that was the 'moving force' behind

14   the constitutional violation he suffered."  <u>Galen v. County of Los</u>

15   <u>Angeles</u>, 477 F.3d 652, 667 (9th Cir. 2007) (quoting <u>Monell v. Dep't of</u>

16   <u>Soc. Servs.</u>, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611

17   (1978)).  The Complaint does not identify any specific City policy, as

18   required by <u>Monell</u>, that caused Plaintiff's alleged injuries.

19   Plaintiff's argument that the RBD have a "policy" of enforcing state law

20   is an insufficient ground for municipal liability under section 1983.

21   (<u>See</u> RBD Opp. at 5); <u>Wong</u>, 333 F. Supp. 2d at 951.  However, it is

22   possible that Plaintiff could amend his complaint to state such a claim.

23

24          In addition, even if Plaintiff could somehow establish jurisdiction

25   over the City of Redondo Beach and otherwise state a claim against the

26   City, the City of Redondo Beach Police Department would still be an

27   improper defendant.  Section 1983 provides a cause of action against any

28   "person" who, under color of law, deprives an individual of federal

constitutional or statutory rights.  42 U.S.C. §1983.  The term "person"
includes local governmental entities, Cortez v. County of Los Angeles,
294 F.3d 1186, 1188 (9th Cir. 2002), but does not encompass municipal or
county departments.  See United States v. Kama, 394 F.3d 1236, 1239 (9th
Cir. 2005) (Ferguson, J., concurring) (municipal police departments and
bureaus are generally not considered "persons" within the meaning of
section 1983); Vance v. County of Santa Clara, 928 F. Supp. 993, 995-96
(N.D. Cal. 1996) (dismissing sua sponte Santa Clara Department of
Corrections as improper defendant); Garcia v. City of Merced, 637 F.
Supp. 2d 731, 760 (E.D. Cal. 2008) (dismissing Sheriff's Department as
improper defendant).  Although Plaintiff does not specifically allege
what he believes the City of Redondo Beach Police Department, as a unit,
did to violate his constitutional rights, it is clear that as a
department of the City of Redondo Beach, the Police Department is not a
proper defendant in Plaintiff's section 1983 action.

    Finally, the Complaint is completely devoid of any allegations at
all involving actions taken by Police Chief Leonardi.  The Complaint
merely observes that Leonardi is the Chief of Police for the City of
Redondo Beach and is "the final departmental authority in all matters of
policy, operation and discipline." (Complaint at 4).  To demonstrate a
civil rights violation, a plaintiff must show that the defendant's
conduct caused a deprivation of the plaintiff's constitutional or
statutory rights.  See 42 U.S.C. § 1983; Starr v. Baca, 652 F.3d 1202,
1205-06 (9th Cir. 2011).  Where the defendant holds a supervisory
position, the plaintiff must still show the defendant's "personal
participation in the alleged rights deprivation" because there is "no
respondeat superior liability under section 1983." Jones v. Williams,

297 F.3d 930, 934 (9th Cir. 2002). A supervisor's objectionable participation may properly include his "own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1205-06 (internal quotation marks omitted).

Plaintiff alleges that Leonardi is responsible for setting and implementing the City of Redondo Beach Police Department's policies, but does not indicate how his actions or omissions caused Plaintiff harm. Furthermore, Plaintiff's claim against Leonardi appears to be based solely on the fact that Leonardi and the Police Department have a "policy" of enforcing state law. This fails to state a claim because a municipality's enforcement of a state law is not a ground for liability under section 1983. Wong, 333 F. Supp. 2d at 951.

Consequently, it is recommended that the claims against the RBD be dismissed under Rule 12(b)(6) for the additional reason that they fail to state a claim. Because it is at least theoretically possible that Plaintiff may be able to amend his claims against the City of Redondo Beach to identify an objectionable municipal policy and against Police Chief Leonardi to show his personal participation in causing Plaintiff's injury, it is recommended that the claims against these two Defendants be dismissed with leave to amend. However, because municipal departments are improper defendants in section 1983 suits, amendment of Plaintiff's claims against the City of Redondo Beach Police Department would be futile. Therefore, it is recommended that Plaintiff's claims against the

1  Police Department be dismissed without leave to amend.

2  \\

3  \\

4  \\

5

6  **E.**   **Plaintiff's Seventh Claim For Relief Fails To State A Federal Claim**

7

8      In his Seventh Claim for Relief, Plaintiff contends that section

9  25850 violates the California Constitution, which provides that "[a]ll

10  people are by nature free and independent and have inalienable rights.

11  Among these are enjoying and defending life and liberty, acquiring,

12  possessing and protecting property, and pursuing and obtaining safety,

13  happiness, and privacy." (Complaint at 23); see also Cal. Const. Art.

14  I, § I. However, it is well-settled that the "Eleventh Amendment bars

15  a suit against state officials when the state is the real, substantial

16  party in interest . . . ." Pennhurst State School & Hosp. v. Halderman,

17  465 U.S. 89, 101-02, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

18  Consequently, pursuant to the Eleventh Amendment, a federal court may not

19  grant relief "in a suit against state officials on the basis of state

20  law." Id. at 106; see also Han v. United States Dept. of Justice, 45

21  F.3d 333, 339 (9th Cir. 1995) ("We are barred by the Eleventh Amendment

22  from deciding claims against state officials based solely on state

23  law."). Nor may a federal court exercise pendent jurisdiction over such

24  a claim. Pennhurst, 465 U.S. at 89. at 120-21. Consequently, it is

25  recommended that Plaintiff's Seventh Claim for relief be dismissed

26  without leave to amend.

27

28                              **VI.**

**RECOMMENDATION**

Consistent with the foregoing, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) dismissing this action WITH LEAVE TO AMEND as to Defendant Harris for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); (3) dismissing this action WITH PREJUDICE as to Defendant Brown for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and the Eleventh Amendment; (4) dismissing this action WITH LEAVE TO AMEND as to Defendants City of Redondo Beach and Police Chief Leonardi for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6); (5) dismissing this action WITH PREJUDICE as to Defendant City of Redondo Beach Police Department for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6); and (6) dismissing Plaintiff's Seventh Claim for Relief alleging a violation of state constitutional law WITH PREJUDICE because it is barred by the Eleventh Amendment.

DATED:  April 5, 2012

                    /S/
                    _____
                    SUZANNE H. SEGAL
                    UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in Local Civil Rule 72 and review by the District Judge whose

initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.