ORIGINAL

FILED

2012 APR 17 PM 1: 53

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

Charles Nichols
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail: CharlesNichols@Pykrete.info
In Pro Per

## United States District Court

## Central District of California

| | |
|---|---|
| Charles Nichols, | Case No.: |
| Plaintiff, | CV-11-9916 SJO (SS) |
| vs. | |
| EDMUND G. BROWN, Jr., in his | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO REVIEW REPORT AND RECOMMENDATION FILED BY HONORABLE SUZANNE H. SEGAL, U.S. MAGISTRATE JUDGE** |
| official capacity as Governor of | |
| California, KAMALA D. HARRIS, | |
| Attorney General, in her official | |
| capacity as Attorney General of | |
| California, CITY OF REDONDO | |
| BEACH, CITY OF REDONDO | Date: May 24, 2012 |
| BEACH POLICE DEPARTMENT, | Time: 10:00 a.m. |
| CITY OF REDONDO BEACH | Ctrm: 1 – 2nd Flr. |
| POLICE CHIEF JOSEPH LEONARDI | Judge: Hon. S. James Otero |
| and DOES 1 to 10, | Trial Date: Not Yet Set |
| Defendants. | Action Filed: Nov. 30, 2011 |

# TABLE OF CONTENTS

I. INTRODUCTION...................................................................1

II. RIPENESS......................................................................4

    A. Prudential Ripeness and Standing...................................5

    B. Redondo Beach Defendants........................................10

    C. Defendants Brown and Harris.....................................12

    D. Plaintiff's Seventh Claim for Relief.............................15

        1. Arising Under Jurisdiction...................................17

        2. Due Process Liberty and Property Interest...............18

CONCLUSION....................................................................19

Case No. CV-11-9916 SJO (SS)

# TABLE OF AUTHORITIES

**CASES**                                                                    PAGE(S)

Corrie v. Caterpillar, Inc., 503 F.3d 974, 980 (9th Cir.2007)...........................2

Oklevueha Native American Church of Hawai'i, Inc. v. Holder, 719 F. Supp. 2d 1217, 1222 (D. Hawaii 2010)..................................................................2

Oklevueha Native American Church of Hawai'i, Inc. v. Holder (2012) No. 10-17687...............................................................................................3

Wolfson v. Brammer, 616 F. 3d 1045 - Court of Appeals, 9th Circuit 2010 at 1056; 2010 U.S. App. LEXIS 16766 ...........................................................3

District of Columbia v. Heller, 554 U.S. 570, 592 (2008) ; 128 S. Ct. 2783; 171 L. Ed. 2d 637; 2008 U.S. LEXIS 5268 ...................................................7-8

Lujan v. Defenders of Wildlife, 504 US 555 - Supreme Court 1992, 561...............8

Bateman v. Perdue, Dist. Court, North Carolina (2012) 5:10-cv-00265 .............11

Smith v. Kansas City Title & Trust Co., 255 US 180 - Supreme Court 1921; 1921 U.S. LEXIS 1811; 41 S. Ct. 243; 65 L. Ed.  577.......................................17

Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 US 308 - Supreme Court 2005; 2005 U.S. LEXIS 4659; 125 S. Ct. 2363; 162 L. Ed. 2d 257....................................................................................................17-18

Paul v. Davis, 424 US 693, 711 - Supreme Court 1976; 96 S. Ct. 1155; 47 L. Ed. 2d 405; 1976 U.S. LEXIS 112; 1 I.E.R. Cas. (BNA) 1827 ...........................18

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION TO REVIEW REPORT AND
RECOMMENDATION FILED BY HONORABLE SUZANNE H. SEGAL,
U.S. MAGISTRATE JUDGE**

COME NOW Plaintiff Charles Nichols, Pro Se, and submit his
Memorandum of Points and Authorities in support of his motion objecting to the
Report and Recommendation Filed by Honorable Suzanne H. Segal, U.S.
Magistrate Judge.

## I. INTRODUCTION

On a motion to dismiss for lack of subject matter jurisdiction under
Fed.R.Civ.P. 12(b)(1), proof of jurisdictional facts may be supplied by affidavit,
declaration, or any other evidence properly before the court, in addition to the
pleadings challenged by the motion. Corrie v. Caterpillar, Inc., 503 F.3d 974, 980
(9th Cir.2007).

Respectfully, it is clear from the Report and Recommendation that her
Honor failed to do so, relying instead on her misinterpretation of the facts stated in
the complaint by liberally construing the defendants characterizations of Plaintiff's
Complaint in their motions to dismiss and accompanying memorandi as true.

Moreover, her Honor relied in substantial part on a non-binding District
Court decision from 2010 Oklevueha Native American Church of Hawai'i, Inc. v.
Holder, 719 F. Supp. 2d 1217, 1222 (D. Hawaii 2010) which was reversed four
days after the date of her Report and Recommendation by the 9th Circuit Court of

Appeals (No. 10-17687 Filed April 9, 2012 Opinion by Judge Murguia) hereinafter referred to as Oklevueha.

For her Honor to disregard the extensive US Supreme Court and Appellate Court citations from Plaintiff's three memorandi in opposition to the motions to dismiss by the defendants is bewildering to Plaintiff.

In his Memorandum of Points in Authorities in Opposition to the Motion to Dismiss by Defendant Harris "Plaintiff avers that he will violate this statute to defend himself and will not wait until he is in "...immediate, grave danger.."..." Her Honor is of the opinion that Plaintiff must state in elaborate detail when, where and under what circumstances Plaintiff intends to violate this section when no other Federal Court requires this.  The one case Plaintiff is aware of was overturned on appeal.  A cases which Plaintiff cited is his memorandum of opposition to an MTD.

Plaintiff is willing to submit another Declaration stating his intent to violate the statute at issue in order to satisfy her concerns but his Honor should address why the "Chilling Effect" plaintiff cited Wolfson v. Brammer, 616 F. 3d 1045 - Court of Appeals, 9th Circuit 2010 at 1056; 2010 U.S. App. LEXIS 16766 (hereinafter refereed to as Wolfson) in his Memorandum of Points and Authorities in Opposition to the Motion to Dismiss by Defendant Brown is not applicable to Plaintiff's case.  An Amended Complaint should not be required when any defects, perceived or real, can be corrected by "...by affidavit, declaration, or any other evidence properly before the court, in addition to the pleadings challenged by the motion."  Defendants Brown & Harris filed 12(b)(1) motions not 12(b)(6) and yet curiously her Honor recommends dismissal with prejudice on an initial complaint which is neither frivolous nor incapable of amendment to cure any defects!?

Her Honor may not be able to conceive of anyway her perceived defects in the Complaint can be cured but Plaintiff most certainly can.

Plaintiff respectively requests that his Honor review her Report and Recommendation in light of the reversal and remand of Oklevueha and to take into consideration and to address the extensive US Supreme Court and Appellate Court decisions Plaintiff cited in his memorandi in opposition to the motions to dismiss by the defendants as well as all of the evidence submitted by Plaintiff which was rejected by her Honor.

As a non-attorney, pro se, plaintiff in a civil rights case; Plaintiff appreciates her Honor's guidance to the parties but guidance which fails to address why the cases cited by Plaintiff is inapplicable to Plaintiff's case and why a subsequently reversed, non-binding District Court opinion is applicable to Plaintiff's case is not quite as useful to Plaintiff.

## II. Ripeness

"The "Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (quoting Ry Mail Ass'n v. Corsi, 326 U.S. 88, 93 (1945)). However, arrest is not necessarily a prerequisite for an individual to challenge the applicability of a criminal statute.  When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." Oklevueha, 3804, 3805.

"The district court concluded that Plaintiffs failed to sufficiently allege a "concrete plan" to violate the CSA because the complaint does not state exactly how, where, and in what quantities Plaintiffs intend to consume marijuana, and does not specify how they intend to cultivate or acquire, store, and distribute marijuana. We disagree that the complaint must contain these factual allegations and conclude that Plaintiffs have sufficiently alleged a concrete plan." Oklevueha, 3806

Plaintiff has stated his intent to violate the statute at issue in his memorandum.  Plaintiff is willing to submit an additional declaration to resolve any question of whether or not Plaintiff has a concrete plan to violate the statute but respectively requests that his Honor explain why Plaintiff's Second Amendment case is unique among many which have been brought since 2008 where an intent to violate the law has not been a required element; let alone the specificity of the details in which Plaintiff intends to violate the statute-at-issue.

## A. Prudential Ripeness and Standing

"Courts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule." Oklevueha, 3809.

Unlike the CSA in Oklevueha, the statue-at-issue has been actively enforced since its enactment in July of 1967.  There have literally been tens of thousands of prosecutions since then, up to and including the present day.  A fact which is evident by the California Appellate Court decisions cited by Plaintiff in his memorandi and which Discovery would have proven beyond doubt.  Plaintiff is acquainted with a person who is currently on trial for openly carrying a holstered,

loaded handgun in violation of the statute at issue.  Defendants do not deny that Plaintiff would be arrested, prosecuted and imprisoned for violating the statute. This Court need not hypothesize about how the law might be applied as there is nearly forty-five years worth of prosecutions clearly establishing how the statute is applied.

Nor have Defendant's, or her Honor, cited any case where a post-Heller Second Amendment challenge required a plaintiff to be arrested or threatened with prosecution to challenge the constitutionality of a statute.  Indeed, Plaintiff cited the one instance he is aware of which was reversed and remanded on Appeal.

"Although the mere existence of a statute is insufficient to create a ripe controversy, we have applied the requirements of ripeness and standing less stringently in the context of First Amendment claims. Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 (9th Cir. 2003) ("in the First Amendment-protected speech context, the Supreme Court has dispensed with rigid standing requirements"). In particular, we apply the principle that one need not await "consummation of threatened injury" before challenging a statute restricting speech, to guard the risk that protected conduct will be deterred. Ariz. Right to Life PAC v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003) (internal quotation marks omitted); see also LSO, Ltd. v. Stroh, 205 F.3d 1146, 1154-55 (9th Cir.2000). To avoid the chilling effect of restrictions on speech, the Court has endorsed "a `hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." Bayless, 320 F.3d at 1006 (citations omitted); see also Bland v. Fessler, 88 F.3d 729, 736-37 (9th Cir.1996); accord Navegar, Inc. v. United States, 103 F.3d 994, 999 (D.C.Cir.1997)." Wolfson at 1059

"Turning to the second consideration guiding the ripeness inquiry, the
existence of an enforcement action or threat of the same, we start with the
undisputed fact that Wolfson has never been threatened with enforcement
proceedings. Wolfson asserts that his claims are nevertheless ripe because he has
self-censored to comply with the Code. Self-censorship is a constitutionally
recognized injury. See Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 393, 108
S.Ct. 636, 98 L.Ed.2d 782 (1988) (self-censorship is "a harm that can be realized
even without an actual prosecution"). In the context of First Amendment speech, a
threat of enforcement may be inherent in the challenged statute, sufficient to meet
the constitutional component of the ripeness inquiry. Bayless, 320 F.3d at 1006-07;
see also Getman, 328 F.3d at 1095; Majors v. Abell, 317 F.3d 719, 721 (7th
Cir.2003) ("[T]he threat [of prosecution] is latent in the existence of the statute").
Especially where protected speech may be at stake, a plaintiff need not risk
prosecution in order to challenge a statute. See, e.g., Bayless, 320 F.3d at 1006;
Bland, 88 F.3d at 736-37. The Supreme Court has repeatedly pointed out the
necessity of allowing pre-enforcement challenges to avoid the chilling of speech.
See, e.g., Am. Booksellers Ass'n, 484 U.S. at 393, 108 S.Ct. 636; Dombrowski v.
Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (recognizing the
"sensitive nature of constitutionally protected expression," in permitting a pre-
enforcement action involving the First Amendment)." Wolfson at 1060.

"Putting all of these textual elements together, we find that they guarantee
the individual right to possess and carry weapons in case of confrontation. This
meaning is strongly confirmed by the historical background of the Second
Amendment. We look to this because it has always been widely understood that
the Second Amendment, like the First and Fourth Amendments, codified a pre-
existing right." District of Columbia v. Heller, 554 U.S. 570, 592 (2008) at page

19; 128 S. Ct. 2783; 171 L. Ed. 2d 637; 2008 U.S. LEXIS 5268 hereinafter referred
to as Heller.

If his Honor construes this citation from Heller to be meaningless dicta and
Wolfson to be inapplicable to Second and Fourth Amendment Challenges he
should clearly state as such, explaining his reasoning.  Plaintiff has a right to know
what makes his Second Amendment case so unique that binding US Supreme
Court and Appellate decisions apply to every other Second Amendment civil rights
lawsuit but not his.

"Over the years, our cases have established that the irreducible constitutional
minimum of standing contains three elements. First, the plaintiff must have
suffered an "injury in fact"—an invasion of a legally protected interest which is (a)
concrete and particularized, see id., at 756; Warth v. Seldin, 422 U. S. 490, 508
(1975); Sierra Club v. Morton, 405 U. S. 727, 740-741, n. 16 (1972);[1] and (b)
"actual or imminent, not `conjectural' or `hypothetical,' " Whitmore, supra, at 155
(quoting Los Angeles v. Lyons, 461 U. S. 95, 102 (1983)). Second, there must be a
causal connection between the injury and the conduct complained of—the injury
has to be "fairly. . . trace[able] to the challenged action of the defendant, and not . .
. th[e] result [of] the independent action of some third party not before the court."
Simon v. Eastern Ky. Welfare Rights Organization, 426 U. S. 26, 41-42 (1976).
Third, it must be "likely," as opposed to merely "speculative," that the injury will
be "redressed by a favorable decision." Id., at 38, 43." Lujan v. Defenders of
Wildlife, 504 US 555 - Supreme Court 1992, 561.

Plaintiff has suffered an injury in fact, the ongoing deprivation of his
Constitutional right to openly carry a loaded firearm in non-sensitive public places
for the purpose of self-defense as guaranteed by the Second Amendment of the

Constitution of the United States and his right to be secure from searches and seizures absent a warrant or even probable cause. Plaintiff has been denied equal protection under the Fourteenth Amendment. Similarly situated individuals residing in counties with a population of fewer than 200,000 people can apply for a permit to openly carry a loaded handgun in incorporated cities. Plaintiff lives in a County of approximately ten million people and cannot even apply for a permit as no application exists for his county of residence. The unconstitutionality of a permit requirement to exercise a fundamental, enumerated right notwithstanding.

Plaintiff is prohibited from openly carrying a loaded firearm in all unincorporated county territory where the discharge of a firearm is prohibited. Persons in unincorporated San Bernardino County (in this venue) may openly carry loaded firearms without a permit because, unlike Los Angeles County which prohibits the discharge of a firearm even for self-defense; San Bernardino County has no ordinance prohibiting the discharge of a firearm in unincorporated county territory.

Plaintiff is partially disabled. California law prohibits him from openly carrying a handgun be it loaded or unloaded. Plaintiff and other disabled persons are currently left with the only option of carrying an unloaded rifle or shotgun. Those who are physically incapable of wielding a long-gun are left defenseless.

Plaintiff has alleged causal connections and at this early stage of litigation, allegations are all that is necessary.

It is more than "likely" that Plaintiff's injury would be redressed by a favorable decision.

## B. Redondo Beach Defendants

If given the opportunity, Plaintiff can provide email from Defendant Redondo Beach Police Chief Leonardi to Plaintiff that states it is his mission "...to promote the public's safety by working diligently with law enforcement to aggressively prosecute all criminal activity within the City's jurisdiction." This was in reply to an inquiry Plaintiff made to Defendant Leonardi regarding the press reports her Honor declined to take notice of as well as in response to an email from a reporter who interviewed Defendant Leonardi regarding his intention to arrest and assist in the prosecution of anyone who (lawfully) openly carried a firearm at the Redondo Beach Pier Shopping Center on the day of the Open Carry event arranged by Plaintiff. A venue which had been cleared by an attorney retained by the Redondo Beach City Attorney to handle the issue.

Plaintiff also has a video of Redondo Beach police officers preventing him from openly carrying a firearm at the City of Redondo Beach Pier Shopping Center he would submit into evidence. Plaintiff submitted a video of Redondo Beach police officers enforcing subsection (b) of the statute-at-issue.

Additional evidence will conclusively prove that the Redondo Beach Defendants have an ongoing policy and custom to deprive Plaintiff of his Constitutional Rights. As Complaints are supposed to contain just a brief statement of the facts, and all parties are intimately acquainted with the facts cited in the Complaint; if his honor concludes that a 1st Amended Complaint is required Plaintiff requests that his Honor do so with a high degree of specificity. Much of the language in Plaintiff's Complaint was boilerplate from other Second Amendment lawsuits which somehow is transformed when it appears in a lawsuit brought by a non-attorney, pro se.

Her Honor in her Report and Recommendation mistakes injury with remedy. The injury in fact is the ongoing deprivation of Plaintiff's Constitutional Rights. That injury would be redressed by a favorable decision.

Her Honor makes a troubling statement in her Recommendation regarding the Redondo Beach Defendants - "It is possible, however, that Plaintiff may be able to amend his claims against the RBD to identify a municipal policy that exceeds or unconstitutionally applies the provisions of section 25850."

Has her Honor concluded that the statute-at-issue is constitutional?  The Complaint alleges that the statute is unconstitutional, including facially so.  There is no application of the statute-at-issue which is constitutional.  Any policy, whether or not it exceeds the provisions of the statute, is alleged by the Plaintiff to be unconstitutional.

As for the Redondo Beach Defendants 12(b)(6) defense, her Honor again misconstrues the complaint and Plaintiff's subsequent pleadings.  Not only have the Redondo Beach Defendants conducted searches without a warrant or even probable cause, they have gone far beyond the statutory constraints of the statute-at-issue by enforcing a complete ban on openly carrying firearms in all pubic places.  This is the City Attorney's interpretation of his city's ban on weapons in city parks.  A ban which the City does not have authority to enact either under state law or the United States Constitution.  As Plaintiff clearly stated in his Memorandum of P&A in opposition to the MTD by the Redondo Beach Defendants, the Redondo Beach Defendants are well aware of the facts in the Complaint which the videos Plaintiff submitted as evidence along with the press reports clearly indicate.  Dismissal of the Redondo Beach Police Department can easily be avoided with an amended complaint.

## C. Defendants Brown and Harris

Plaintiff was preparing to write a notice of supplemental authority when he was notified of her Honor's Report and Recommendation.  Plaintiff wishes to bring to the Court's attention the March 29, 2012 decision by the Federal District Court for the Eastern District of North Carolina in Bateman v. Perdue, Dist. Court, North Carolina (2012) hereinafter referred to as Bateman and the subsequent judgment entered and filed on March 29, 2012 against North Carolina Governor Beverly Perdue.

The Court in Perdue denied the motion to dismiss by the state defendants including the Governor of North Carolina, Beverly Perdue.  Governor Purdue filed a motion to dismiss on 12(b)(1) and 12(b)(6) grounds making many of the same arguments made by the Defendants in this case that plaintiffs' claims in that case were hypothetical.

Governor Perdue is mentioned only twice in the Complaint.

"6. Defendant Beverly Perdue is the Governor of the State of North Carolina, and is responsible for executing and administering North Carolina's laws, customs, practices, and policies at issue in this lawsuit. Defendant Perdue is sued in her official and individual capacities."

"19. On or about January 30, 2010, Defendant Perdue issued Executive Order 47, declaring a state of emergency throughout the entire state of North Carolina for up to thirty days. Defendant Perdue delegated her emergency powers to Defendant Young."

Moreover, Plaintiffs made the following allegation in their complaint. "23. Plaintiffs Bateman, Green, and Minges have repeatedly been impacted by declared states of emergency curtailing their ability to possess, buy, and sell firearms and ammunition. During declared states of emergency, plaintiffs otherwise would carry functional handguns in public for self-defense, and would buy and sell guns and ammunition, but refrain from doing so where possible for fear of arrest, prosecution, fine, and imprisonment." And, "24. Plaintiffs may also be subject to criminal penalties whenever a state of emergency may be declared if at the time of such declaration plaintiffs possess firearms outside their homes."

The plaintiffs in Perdue had not been arrested or threatened with prosecution should they carry arms in public during a declared state of emergency in violation of the state statues.  Threatened prosecution has not been a requirement of any Second Amendment challenge that Plaintiff is aware.

Other than declaring states of emergency, there was no allegation that Governor Perdue had direct enforcement of the statues at issue or that he had any kind of supervisory authority over Defendant Young.

Indeed, according to the complaint in Perdue, Defendant Young is the one who under North Carolina law has the powers which California law vests in Defendant Brown.

"7. Defendant Reuben F. Young is the Secretary of North Carolina's Department of Crime Control and Public Safety, and is responsible for executing and administering North Carolina's laws, customs, practices, and policies at issue in this lawsuit. Defendant Young is responsible for overseeing the Department's Emergency Management Division, the North Carolina National Guard, and the

North Carolina State Highway Patrol, among other agencies primarily tasked with restoring and maintaining public order during states of emergency. Young is sued in his official and individual capacities."

Plaintiff Nichols, on the other hand, alleges that Defendant Brown has statutory, and factual, direct supervisory control over his appointees who are actively enforcing the statute at issue, which includes the California Highway Patrol (the California State Police was subsumed into the CHP in 1995). In Plaintiff's memorandum in opposition to Defendant Brown's motion to dismiss he makes it quite clear that Plaintiff's allegations are not based simply on a "...generalized duty to enforce state law or general supervisory power..."

Her Honor misconstrues the injury caused by Defendant Brown when he signed into law Assembly Bill 144 (AB 144) on October 9, 2011 which bans the Open Carry of unloaded handguns. The "...absolute immunity for the act of signing a bill into law." might be applicable were Plaintiff challenging the constitutionality of AB 144. That statute is not at issue in this case. Plaintiff challenges the constitutionality of a law enacted in July of 1967 which was not signed into law by Defendant Brown.

Defendant Brown by signing Assembly Bill 144 into law, and enforcement of the statute at issue, set into motion a series of acts by others which he knew, or reasonably should have known, would cause others to inflict the constitutional injuries on Plaintiff. This was explained in one of Plaintiff's three memorandi which leads Plaintiff to believe that her Honor never read them.

Unloaded Open Carry of Handguns is not at issue in this case. Plaintiff seeks to openly carry a LOADED firearm, particularly a loaded handgun, in non-sensitive public places for the purpose of self-defense.

Respectfully, her Honor erred in prematurely recommending a dismissal against Defendant Brown and grievously erred in recommending a dismissal with prejudice against Defendants Brown and the Redondo Beach Police Department. Neither are immune from a 1983 lawsuit, especially not one which doesn't seek any money from any defendant.

The "requisite enforcement connection" to Brown exists under California law and Plaintiff has had no opportunity to engage in discovery to augment the factual evidence.

Also, her Honor does not explain how favorable relief against Defendant Harris would prevent Defendant Brown from enforcing the statute against Plaintiff. Under California law, the Office of the Attorney General is subordinate to the Office of the Governor. The law enforcement officers under the direct control and supervision of the Governor are not answerable to the Attorney General. Favorable relief against Defendant Harris would certainly be substantial but it would not be complete.

### D. Plaintiff's Seventh Claim for Relief

In his Complaint, Plaintiff refers to provisions in the California Constitution that parallel the applicable provisions in the United States Constitutions where it is legitimate to do so, e.g., where there is a state-created liberty or property interest at stake. Indeed, the Complaint alleges at ¶ 79 that the statute at issue violates the

Equal Protection and Due Process Clauses of the Fourteenth Amendment. This Seventh Claim for Relief in the Complaint fully incorporated all of the previously stated Equal Protection and Due Process allegations under the United States Constitution. See ¶ 83 of the Complaint.

None of Plaintiff's claims are retrospective in nature. Every state law claim (and Federal, for that matter) in the complaint seeks purely declaratory, and/or prospective injunctive relief. The Complaint makes no demands on the State Treasury, neither is money sought from any of the Defendants; directly or indirectly. Neither does the Complaint seek compulsory relief from any of the Defendants. The relief sought in the Complaint does not ask of any defendant to do anything. There is no Eleventh Amendment bar.

Neither is the Complaint even close to being a purely (or even predominantly) state law complaint. The lone claim for relief for violation of the California Constitution arises out of the fully incorporated Federal claims which included the Second, Fourth and Fourteenth Amendments to the United States Constitution. See ¶ 83 of the Complaint. Neither would a denial of the Seventh Claim for Relief under the California Constitution affect the Request for Relief which Plaintiff seeks as the relief is sought under the Constitution and Laws of the United States "and/or" Article 1, Sections 1 and 13 of the California Constitution. See page 24, lines 19-26 of the Complaint. (Emphasis added).

Plaintiff's state law claims arise out of the same causes of action as the Federal claims and are inextricably intertwined with the Federal claims. The state law claims are neither novel nor complex. The state law claims are not more important, more complex or more time-consuming to resolve as their Federal counterparts. Given the nature of the state law claims, they would clearly succeed

on the merits in state court; albeit many years from now given the backlog of cases in Los Angeles County. Even if this Court were to reject all of the Federal claims, the state law claims would still stand on their own and this court could still exercise jurisdiction, or not, at its discretion. California's previous ban on handguns was struck down by the state courts as unconstitutional. Article 1, Sections 1 and 13 of the California Constitution still remain. Subsequent state court decisions have not given the slightest hint that a ban on openly carried handguns would now be constitutional. Regardless, the statute at issue is clearly preempted under Federal law.

"The general rule is that where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision." Smith v. Kansas City Title & Trust Co., 255 US 180 - Supreme Court 1921 at 199; 1921 U.S. LEXIS 1811; 41 S. Ct. 243; 65 L. Ed. 577

### 1. Arising Under Jurisdiction

"There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. E. g., Hopkins v. Walker, 244 U. S. 486, 490-491 (1917). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues, see ALI, Study of the Division of Jurisdiction Between State and

Federal Courts 164-166 (1968)."  Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 US 308 - Supreme Court 2005 at 312; 2005 U.S. LEXIS 4659; 125 S. Ct. 2363; 162 L. Ed. 2d 257

## 2. Due Process Liberty and Property Interest

"It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law,[5] and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status. In Bell v. Burson, 402 U. S. 535 (1971), for example, the State by issuing drivers' licenses recognized in its citizens a right to operate a vehicle on the highways of the State. The Court held that the State could not withdraw this right without giving petitioner due process. In Morrissey v. Brewer, 408 U. S. 471 (1972), the State afforded parolees the right to remain at liberty as long as the conditions of their parole were not violated. Before the State could alter the status of a parolee because of alleged violations of these conditions, we held that the Fourteenth Amendment's guarantee of due process of law required certain procedural safeguards." Paul v. Davis, 424 US 693, 711 - Supreme Court 1976; 96 S. Ct. 1155; 47 L. Ed. 2d 405; 1976 U.S. LEXIS 112; 1 I.E.R. Cas. (BNA) 1827

All of the state law claims in the Complaint turn on substantial questions of Federal Law.  None of Plaintiff's claims arise solely under state law.  Plaintiff is denied his right to openly carry a handgun in non-sensitive public places for the purpose of self-defense and his Complaint alleges both a violation of enumerated Constitutional Rights and a violation of due process.

1

2      As her Honor did not address any of these arguments made by Plaintiff in

3   his memorandum in opposition to dismiss or the Due Process claims which were

4   fully incorporated in the Seventh Claim for Relief but instead concluded that the

5   claim was made "...based solely on state law.;" all that Plaintiff can do is to

6   observe that her Honor misconstrued the Complaint and the applicable case law.

7

8                              **CONCLUSION**

9

10      For any and/or all of the reasons given above, Plaintiff strongly objects to

11   the Report and Recommendation filed By Honorable Suzanne H. Segal, U.S.

12   Magistrate Judge.

13

14

15                                        Respectfully Submitted,

16
     Dated: April 17, 2012
17
                                          By: Charles Nichols
18                                        Plaintiff in Pro Per
                                          PO Box 1302
19                                        Redondo Beach, CA
                                          90278
20                                        Voice: (424) 634-7381
                                          E-Mail:
21                                        CharlesNichols@Pykrete
                                          .info
22
     ///
23
     ///
24
     ///
25
     ///
26
     ///
27
     ///
28

PLAINTIFF'S MEMORANDUM OF P&A                19            CV-11-9916 SJO (SS)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REVIEW OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** was served via United States Mail, postage prepaid, on this _17_, day of <u>April</u>, 2012; on the following:

JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Lead Attorney – Attorney to be noticed for Defendants California Governor Edmund G Brown Jr and California Attorney General Kamala Harris in their Official Capacities

AND

Michael W. Webb
City Attorney for the City of Redondo Beach
415 Diamond Street
Redondo Beach, CA 90277-0639
Attorney to be noticed for Defendants:
CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10

Charles Nichols
Plaintiff, In Pro Per
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail:
CharlesNichols@Pykrete.info