1   KAMALA D. HARRIS
    Attorney General of California
2   PETER K. SOUTHWORTH
    Supervising Deputy Attorney General
3   JONATHAN M. EISENBERG
    Deputy Attorney General
4   State Bar No. 184162
      300 South Spring Street, Suite 1702
5     Los Angeles, CA  90013
      Telephone:  (213) 897-6505
6     Fax:  (213) 897-1071
      E-mail:  Jonathan.Eisenberg@doj.ca.gov
7   *Attorneys for Defendants California Governor*
    *Edmund G. Brown Jr. and California Attorney*
8   *General Kamala D. Harris*

9

10

11

12

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| 13  **CHARLES NICHOLS,** | CV-11-09916-SJO-SS |
| 14  Plaintiff, | **RESPONSE OF DEFENDANTS** |
| | **GOV. EDMUND G. BROWN JR.** |
| 15  **v.** | **AND ATTY. GEN. KAMALA D.** |
| | **HARRIS TO PLAINTIFF** |
| 16  **EDMUND G. BROWN, JR., in his** | **CHARLES NICHOLS'S** |
| **official capacity as Governor of** | **OBJECTIONS TO CHIEF MAG.** |
| 17  **California, KAMALA D. HARRIS,** | **JUDGE SUZANNE H. SEGAL'S** |
| **Attorney General, in her official** | **REPORT AND** |
| 18  **capacity as Attorney General of** | **RECOMMENDATION** |
| **California, CITY OF REDONDO** | **(FED. R. CIV. P. 72(B)(2))** |
| 19  **BEACH, CITY OF REDONDO** | |
| **BEACH POLICE DEPARTMENT,** | Date:        May 24, 2012 |
| 20  **CITY OF REDONDO BEACH** | Time:        10:00 a.m. |
| **POLICE CHIEF JOSEPH** | Crtrm.:      1; 2nd Flr. |
| 21  **LEONARDI and DOES 1 to 10,** | Judge:       Hon. S. James Otero |
| | Trial Date:  Not Set Yet |
| 22  Defendants. | Action Filed: Nov. 30, 2011 |

23

24                 **PRELIMINARY STATEMENT**

25        *Pro Se* Plaintiff Charles Nichols ("Nichols") is attempting to challenge the

26   constitutionality of California Penal Code section 25850 ("Section 25850"),

27   California's ban (with certain exceptions) on the open carrying of loaded firearms

28

                                    1

1   in public places.  Chief U.S. Magistrate Judge Suzanne H. Segal recommends

2   dismissal of Nichols's case for lack of subject-matter jurisdiction.  Nichols has filed

3   objections to Judge Segal's recommendation.

4        Under Federal Rule of Civil Procedure 72(b)(2), Defendants California

5   Governor Edmund G. Brown Jr. ("Gov. Brown") and California Attorney General

6   Kamala D. Harris ("AG Harris") jointly submit the following response to Nichols's

7   objections, advocating dismissal of the case.

8              **JUDGE SEGAL'S RECOMMENDATION OF DISMISSAL**

9        Judge Segal has correctly determined that this Court should dismiss Nichols's

10  case for lack of subject-matter jurisdiction.  There is no case or controversy under

11  the U.S. Constitution, article III, section 2 ("Article III"); the case is unripe; and the

12  Eleventh Amendment bars Nichols's case against Gov. Brown and AG Harris and,

13  separately, Nichols's seventh claim for relief, pleaded under the California

14  Constitution.

15       As Judge Segal discerned, a fundamental problem with Nichols's complaint is

16  that Nichols lacks Article III standing.  He has a mere hypothetical, some-day

17  desire openly to carry a loaded handgun in some heavily populated part of Los

18  Angeles County — which conduct might *or might not* run afoul of Section 25850

19  — but Nichols has never actually engaged in such an act or made any concrete

20  plans to do so.  Underscoring the vague nature of this case, Nichols admits that

21  "[m]uch of the language in Plaintiff's Complaint was boilerplate from other Second

22  Amendment lawsuits…"  (Nichols's Mem. of P's and A's in Support of Mtn. to

23  Review Report and Recommendation ("Nichols Brief") at 10:25-10:27.)  It follows

24  that neither Gov. Brown nor AG Harris has threatened or made any attempt to

25  enforce Section 25850 against Nichols, making Gov. Brown and AG improper

26  defendants even if the case did not have other flaws.

27

28

Additionally, because of the Eleventh Amendment, Nichols has not properly joined as defendants Gov. Brown or AG Harris, high-ranking California officials who have only tenuous connections to any possible enforcement of Section 25850.

Last but not least, the federalism principles in *Pennhurst State Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 106, 119 (1984), squarely bar federal-court adjudication of Nichols's seventh count, which alleges that Section 25850 violates the *California* Constitution. Nichols improperly demands that this (federal) Court instruct California state officials in how to comply with California law.

## RESPONSE TO NICHOLS'S OBJECTIONS THERETO

Nichols's variegated objections to Judge Segal's recommendations, some of which objections merely repeat arguments that Judge Segal considered and rejected, and new citations to cases, do not solve these problems with the complaint.

### I.   THE NEW *OKLEVUEHA* DECISION DOES NOT UNDERMINE, BUT RATHER SUPPORTS, JUDGE SEGAL'S RECOMMENDATION

Nichols is correct that Judge Segal, in analyzing the standing issue at page 15 of her report and recommendation, cited a U.S. District Court opinion, *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 719 F. Supp. 2d 1217 (D. Haw. 2010), which was shortly thereafter reversed by the U.S. Court of Appeals, Ninth Circuit. This subsequent reversal is insignificant, however, because the lower-court opinion was not critical to Judge Segal's analysis, and the appellate-court decision does *not* undermine, but rather supports, Judge Segal's recommendation.

*For one*, Judge Segal's citation to the lower-court *Okleuha* opinion was just in addition to citations to still-binding U.S. Supreme Court authority, *Babbitt v. United Farm Workers*, 442 U.S. 289 (1979), and Ninth Circuit authority, *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (2000), setting forth the standing analysis in "pre-enforcement" cases and teaching that Nichols's case should be dismissed for lack of standing. Notably, the appellate-court *Okleveuha* decision, at

1   __ F.3d __, __, 2012 WL 1150259 at *3-*4 (Apr. 9, 2012), cites and quotes those

2   exact same cases and does not deviate from their holdings.

3        Second, *Oklevueha* is easily distinguishable from the instant case.  In

4   *Oklevueha*, a Native American church, whose members frequently consume

5   marijuana allegedly for religious reasons, challenged, on U.S. Constitution, First

6   Amendment, grounds, enforcement of the federal controlled-substances law against

7   the church's members.  2012 WL 1150259 at *1.  The church members alleged

8   "countless" instances of marijuana consumption in violation of the challenged law.

9   *Id.* at *4 ("Plaintiffs allege that Mooney violates the CSA daily by consuming

10  marijuana, and that other members of Oklevueha violate the law at semi-monthly

11  sweats, in addition to any other usages.  They further allege that Mooney and

12  Oklevueha members have no plan to stop their consumption.")  This averment

13  constitutes a key point of distinction from Nichols's utter lack of any actions

14  regarding openly carrying a loaded handgun around heavily populated parts of Los

15  Angeles County.

16       There are several other points of distinction:

17  • In *Oklevueha* the Court stated, "We have explained that the 'concrete plan'

18       element of the genuine threat inquiry is satisfied where plaintiffs had more

19       than a 'concrete plan' to violate the laws at issue because *they actually did*

20       *violate them on a number of occasions*."  *Id.*  (Emphasis added; citations and

21       internal punctuation omitted.)  Nichols, in contrast, does not satisfy this

22       element of the inquiry because he has no record whatsoever of violating

23       Section 25850.

24  • In *Oklevueha*, federal law-enforcement officials seized some of the church

25       members' marijuana shortly before the church filed the lawsuit (*id.* at *1),

26       whereas Nichols admits that nobody has even threatened or attempted to

27       enforce Section 25850 against him.  *Oklevueha* held, "Plaintiffs need not

28       allege a threat of future prosecution because *the statute has already been*

4

1    *enforced against them*." *Id.* at *4 (emphasis added).  Unlike the church

2    members, Nichols must, but cannot truthfully, allege a threat of future

3    prosecution under the law that he is challenging.

4    *Oklevueha* concludes, "This is not the kind of abstract disagreement that the

5    ripeness doctrine prevents courts from adjudicating.  Plaintiffs' stake in the legal

6    issues is concrete rather than abstract." *Id.* at *5 (citation and internal punctuation

7    omitted).  Nichols's case *is* precisely the kind of abstract disagreement that the

8    ripeness doctrine prevents courts from adjudicating.

9    **II.    THE *WOLFSON* DECISION ALSO SUPPORTS JUDGE SEGAL'S**
10   **RECOMMENDATION**

11   Nichols erroneously asserts that a First Amendment case, *Wolfson v.*

12   *Brammer*, 616 F.3d 1045 (9th Cir. 2010), establishes that Nichols has standing to

13   challenge Section 25850 on Second Amendment grounds.  (Nichols Brief at 3:17-

14   3:23; 6:12-7:20.)

15   Like *Oklevueha*, *Wolfson* is plainly distinguishable from the present case.  For

16   one thing, *Wolfson* is primarily about *mootness*, 616 F.3d at 1053-56, which is not

17   an issue in Nichols's case.

18   Second, *Wolfson*'s plaintiff, Randolph Wolfson, had standing to and a ripe

19   case for challenging enforcement of Arizona's judicial conduct code, because of

20   Wolfson's affirmative activities:

21   • Wolfson twice ran for office in judicial elections, deliberately making himself

22   subject to the code, *id.* at 1052;

23   • Wolfson specified the conduct in which he wanted to engage, *id.* at 1052-53,

24   1057; and

25   • Wolfson even obtained a relevant legal opinion from Arizona's Judicial Ethics

26   Advisory Committee about the judicial conduct code, *id.* at 1502.

27   In contrast, Nichols has always refrained from taking *any* action that might

28   implicate Section 25850.

Third, it is relevant that *Wolfson* noted that in *First* Amendment cases "the Supreme Court has dispensed with rigid standing requirements." 616 F.3d at 1058 (citation omitted). Counsel for Gov. Brown and AG Harris has looked for but not found a case holding that in *Second* Amendment cases courts should dispense with rigid, constitution-based standing requirements, as well. Yet, on this issue, Nichols makes another false — indeed, somewhat paranoid — accusation that Judge Segal purposefully "disregard[ed]" *Wolfson* (Nichols Brief at 3:4), to the effect that Judge Segal has treated Nichols differently and worse than other judges have treated other Second Amendment plaintiffs. Nichols boldly proclaims his supposed "right to know what makes his Second Amendment case so unique that binding…decisions apply to every other Second Amendment civil rights lawsuit but not his." (*Id.* at 8:6-8:9; *accord, id.* at 5:12-5:13.) In fact, two other federal judges, in *Mont. Shooting Sports Ass'n v. Holder*, No. CV-09-147-DWM-JCL, 2010 WL 3926029 (D. Mont. Aug. 31, 2010) (recommendation of Mag. Judge Lynch) and 2010 WL 3909431 (Sept. 29, 2010) (opinion of Dist. Judge Molloy, adopting in full Judge Lynch's recommendation), applied *Wolfson* in finding other plaintiffs lacked standing to litigate a Second Amendment challenge to enforcement of a different firearms law. In *Mont. Shooting*, a group of plaintiffs sought a declaratory judgment of their alleged right to manufacture and sell firearms under a new state law, without complying with pertinent federal laws regulating such activities. 2010 WL 3926029 at *1. Notably citing *Wolfson*, 2010 WL 3926029 at *9, the *Mont. Shooting* Court found that these plaintiffs lacked a concrete plan of action that would run afoul of federal law, even though one of the plaintiffs "claims he has the means to manufacture a .22 caliber rifle he proposes to call the Montana Buckaroo, and has presented some evidence in an attempt to establish that this is so." *Id.* at *10-*11. It bears emphasis that these activities and plans seem *more* concrete than what Nichols has alleged, but still are insufficient for standing purposes. The *Mont. Shooting* Court also found that there was no specific threat of enforcement of the

federal law against the plaintiffs, even though one of the plaintiffs had received a personal letter from the Bureau of Alcohol, Tobacco, Firearms, and Explosives warning against manufacturing or selling firearms without federal regulatory approval. *Id.* at *11-*12. Again, the threat of enforcement in *Mont. Shooting* is more palpable than anything Nichols has experienced, yet still is insufficient for standing purposes. It follows that dismissal of Nichols's case, under *Wolfson*, would be appropriate and would *not* be unique.

## III. THE *BATEMAN* DECISION DOES NOT UNDERMINE JUDGE SEGAL'S RECOMMENDATION

Nichols misrepresents *Bateman v. Perdue*, No. 5:10-CV-265-H, 2011 WL 1261575 (E.D.N.C. Mar. 31, 2011), as a decision which "denied the motion to dismiss by the state defendants including the Governor of North Carolina, Beverly Perdue," which motion supposedly "ma[de] many of the same arguments made by the Defendants in this case that plaintiffs' claims in that case were hypothetical." (Nichols Brief at 12:11-12:15.) The 2011 *Bateman* decision available on Westlaw expressly deferred ruling on the ripeness question (and there were, apparently, no standing or Eleventh Amendment questions presented). 2011 WL 1261575 at *3. Inexplicably, there is no *Bateman* ruling discussing the ripeness question or the standing question on the merits. The precedential or even persuasive value of *Bateman* is nil on this point.

## IV. NICHOLS'S OTHER OBJECTIONS IMPROPERLY REPEAT ARGUMENTS IN THE MOTION PAPERS

Nichols expressly repeats many of the arguments in his dismissal motion papers, based on the disrespectful speculation "that her Honor never read them." (Nichols Brief at 14:25.) Yet Federal Rule of Civil Procedure 72 "objections presented […] are not to be construed as a second opportunity to present the arguments already considered by the Magistrate Judge." *Betancourt v. Ace Ins. Co. of P.R.*, 313 F. Supp. 2d 32, 34 (D.P.R. 2004).

**CONCLUSION**

As noted above, Judge Segal has correctly determined that this Court should dismiss Nichols's case for lack of subject-matter jurisdiction.  Nichols lacks standing; the case is unripe; and the Eleventh Amendment bars the case against Gov. Brown and AG Harris and, in addition, Nichols's seventh cause of action based in the California Constitution.  Therefore, Gov. Brown and AG Harris respectfully request that this Court dismiss Nichols's case with prejudice for lack of subject-matter jurisdiction.

Dated:  May 1, 2012                          Respectfully submitted,

                                             KAMALA D. HARRIS
                                             Attorney General of California
                                             PETER K. SOUTHWORTH
                                             Supervising Deputy Attorney General


                                             */s/ Jonathan M. Eisenberg*
                                             JONATHAN M. EISENBERG
                                             Deputy Attorney General
                                             *Attorneys for Defendant California*
                                             *Governor Edmund G. Brown Jr. and*
                                             *California Attorney General Kamala*
                                             *D. Harris*

# CERTIFICATE OF E-FILING AND SERVICE

Case Name:   __Nichols v. Brown__   No.   __U.S.D.C., C.D. Cal., Case CV 11-09916 SJO (SS)__

I hereby certify that, on May 1, 2012, I caused to be electronically filed with the U.S. District Court, Central District of California, Clerk of the Court, through the CM/ECF system, the document(s) with the following title(s):

**RESPONSE OF DEFENDANTS GOV. EDMUND G. BROWN JR. AND ATTY. GEN. KAMALA D. HARRIS TO PLAINTIFF CHARLES NICHOLS'S OBJECTIONS TO CHIEF MAG. JUDGE SUZANNE H. SEGAL'S REPORT AND RECOMMENDATION (FED. R. CIV. P. 72(B)(2))**

I certify that at least some of the participants in the above-entitled case are registered CM/ECF users.

I am employed in Los Angeles, California, in the Office of the Attorney General, Department of Justice, State of California ("OACG"), which is the office of a member of the California State Bar, at which member's direction the following service is made.

I am 18 years of age or older and not a party to this matter. I am familiar with the business practices at the OACG for collection and processing of correspondence for mailing with the U.S. Postal Service. In accordance with those practices, correspondence placed in the internal mail collection system at the OACG is deposited with the U.S. Postal Service, with postage thereon fully prepaid, that same day, in the ordinary course of business.

I further certify that at least some of the participants in the case are not registered CM/ECF users.

On May 1, 2012, I caused to be mailed, in the OACG's internal mail system, by First-Class Mail, postage prepaid, the foregoing document(s) to the following person(s) at the following address(es):

Charles Nichols
P.O. Box 1302
Redondo Beach, CA  90278

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on May 1, 2012, at Los Angeles, California.

| R. Velasco | /s/ R. Velasco |
|---|---|
| Declarant | Signature |

60719744.docx