KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 897-6505
  Fax:  (213) 897-1071
  E-mail:  Jonathan.Eisenberg@doj.ca.gov

*Attorneys for Defendant California Attorney
General Kamala D. Harris*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| **CHARLES NICHOLS,** | CV-11-09916-SJO-SS |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS ACTION UNDER FED. R. CIV. P. 12(B)(1)** |
| **v.** | |
| **EDMUND G. BROWN, Jr., in his official capacity as Governor of California, KAMALA D. HARRIS, Attorney General, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,** | Date:           July 31, 2012<br>Time:           10:00 a.m.<br>Crtrm.:        23 – 3rd Flr.<br>Judge:         Hon. Suzanne H. Segal |
| Defendants. | Trial Date:    Not Yet Set<br>Action Filed:  Nov. 30, 2011 |

1

## TABLE OF CONTENTS

2

**Page**

I.    Introduction and summary of brief ........................................................ 1

II.   Alleged facts relevant to Attorney General as defendant ..................... 4

III.  Pertinent law .................................................................................... 6

      A.    Fed. R. Civ. P. 12(b)(1) .......................................................... 6

      B.    Applications of Fed. R. Civ. P. 12(b)(1) ................................. 7

            1.    Article III standing ........................................................ 7

            2.    The ripeness doctrine .................................................... 7

            3.    Eleventh Amendment immunity .................................... 8

IV.   Argument ........................................................................................... 8

      A.    The court should dismiss this case as against the Attorney
            General for lack of Article III standing ................................. 8

            1.    Penal Code section 25850 ............................................ 9

                  a.    Sub-section (a) ..................................................... 9

                  b.    Sub-section (b) .................................................. 10

            2.    Penal Code section 26155 .......................................... 11

      B.    The court should dismiss Nichols's section 25850(a)
            claim as unripe ................................................................ 13

      C.    The Eleventh Amendment bars all of Nichols's claims
            against the Attorney General ........................................... 14

V.    Conclusion ...................................................................................... 16

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Abbott Labs. v. Gardner*
    387 U.S. 136 (1967)...............................................................................12, 13

*Alaska Right to Life Political Action Comm. v. Feldman*
    504 F.3d 840 (9th Cir. 2007).....................................................................7, 8

*Artichoke Joe's v. Norton*
    216 F. Supp. 2d 1084 (E.D. Cal. 2002)........................................................8

*Cal. Pro-Life Council, Inc. v. Getman*
    328 F.3d 1088 (9th Cir. 2003)....................................................................13

*Califano v. Sanders*
    430 U.S. 99 (1977)......................................................................................12

*Cardenas v. Anzai*
    311 F.3d 929 (9th Cir. 1999)........................................................................8

*Daly v. Super. Ct.*
    19 Cal. 3d 132, 149 [137 Cal. Rptr. 14] (1977) ......................................3, 11

*Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004)......................................................................6

*Friends of the Earth, Inc. v. Laidlaw Env'tl Servs.*
    (TOC), Inc., 528 U.S. 167 (2000) ...............................................................8

*Garcia v. Bryant*
    No. CV–F–11–1566–LJO, 2012 WL 5241177 (E.D. Cal. Oct. 31, 2011).............9

*Ibrahim v. Dep't of Homeland Sec.*
    669 F.3d 983 (9th Cir. 2012).....................................................................10

*Indus. Tectonics, Inc. v. Aero Alloy*
    912 F.2d 1090 (9th Cir. 1990).....................................................................6

*Kokkoen v. Guardian Life Ins. Co. of Amer.*
    511 U.S. 375 (1994).....................................................................................6

*Long v. Van de Kamp*
    961 F.2d 151 (9th Cir. 1992)......................................................................14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# TABLE OF AUTHORITIES
## (continued)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page**

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) .................................................................................. 8, 10

*Pac. Legal Found. v. State Energy Resources Conservation & Dev. Comm'n*
  659 F.2d 903 (9th Cir. 1982) ........................................................................ 7

*People v. Delong*
  11 Cal. App. 3d 786 [90 Cal. Rptr. 193] (1970) .................................... 10

*Poe v. Ullman*
  367 U.S. 497 (1961) ........................................................................................ 7

*Potman v. Cty. of Santa Clara*
  995 F.2d 898 (9th Cir. 1993) ........................................................................ 7

*Rhoades v. Avon Prods., Inc.*
  504 F.3d 1151 (9th Cir. 2007) ...................................................................... 7

*Snoeck v. Brussa*
  153 F.3d 984 (9th Cir. 1998) ................................................................ 14, 16

*Sofamor Danek Group, Inc. v. Brown*
  124 F.3d 1179 (9th Cir. 1997) ...................................................................... 8

*St. Clair v. City of Chico*
  880 F.2d 199 (9th Cir. 1989) ........................................................................ 7

*Summer H. v. Fukino*
  Civ. No. 09-00047 SOM/BMK, 2009 WL 1249306 (D. Haw. May 6, 2009) ......................... 7

*Thomas v. Anchorage Equal Rights Comm'n*
  220 F.3d 1134 (9th Cir. 2000) (en banc) .............................. 7, 8, 13, 15

**STATUTES**

Cal. Gov't Code
  § 11105 ....................................................................................................... 12
  § 12510 ....................................................................................................... 12
  § 12550 ....................................................................................................... 11
  § 12560 ................................................................................................. 10, 11

Cal. Penal Code
  § 25850 ................................................................................................. *passim*
  § 26045 ....................................................................................................... 13

# TABLE OF AUTHORITIES
### (continued)

Page

§ 26155 ...................................................................................................... 2, 12
§ 26175 ...................................................................................................... 12
§ 26185 ...................................................................................................... 12
§ 26190 ...................................................................................................... 12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. I ................................................................................. 13

U.S. Const. Amend. XI .......................................................................... passim

U.S. Const., Article III, § 2 ........................................................................ 7

**COURT RULES**

Fed. R. Civ. P. 12(b)(1) ......................................................................... passim

Fed. R. Evid. 201 ....................................................................................... 11

**I.    INTRODUCTION AND SUMMARY OF BRIEF**

Plaintiff Charles Nichols averred in his original complaint, in essence, that California Penal Code section 25850 ("Section 25850") – which bars the open carrying of loaded firearms in most public places in California[1] – infringed Nichols's alleged right and desire openly to carry a loaded handgun in public in the City of Redondo Beach, for purposes of self-defense against an unnamed person who allegedly had made a death threat against Nichols.  (Nov. 30, 2011 Orig. Complaint, ¶¶4, 7-10, 15, 48, 51, 55, 56, 61, 65.)  This Court dismissed the original complaint without prejudice, for lack of subject-matter jurisdiction, because, in essence, Nichols did not present facts sufficient to show that Nichols had actually openly carried a loaded handgun in a public part of Redondo Beach or made concrete plans to do so, or that any defendant had attempted or threatened to enforce Section 25850 against Nichols.

In Nichols's First Amended Complaint ("FAC"), Nichols details three new firearms-related fact scenarios never mentioned before (May 30, 2012 FAC, ¶¶32-37, 39, 51-81, 84-86), in attacking not just Section 25850 but also California Penal Code section 26155 ("Section 26155"), California's statute permitting cities to issue permits to their residents to carry loaded firearms.[2]  (FAC, ¶¶10, 27-28, 41,

_____

[1] Section 25850 states in pertinent part:

(a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

[2] Section 26155 states in full:

(a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the chief or other head of a municipal police department of any city or city and county may issue a license to that person upon proof of all of the following:

(continued…)

1

99, pp. 39:22-39:23, 39:24-39:25), as well as a couple of Redondo Beach city

ordinances.  (FAC, ¶42, 91-92.)  Nichols has sued the Attorney General in

connection with just the two California statutes, Section 25850 and 26155.  (FAC,

pp. 37:14-37:17, 38:23-38:26.)  Nichols accurately acknowledges that the Attorney

General plays no role in the enforcement of the Redondo Beach ordinances, by

failing to name the Attorney General as a defendant with respect to the FAC's

causes of action (the first and the second) that concern those municipal laws.

(FAC, pp. 35:21-35:25, 36:22-36:25.)

Most significantly, despite alleging many detailed facts in the FAC, Nichols

makes no substantive allegations of ever having openly carried a *loaded* firearm in

Redondo Beach (or anywhere else relevant).  (See, e.g., FAC, ¶32 (alleging that a

Redondo Beach police officer searched Nichols's firearm to see if it was loaded –

but not alleging that the firearm was loaded); Exh. 1-1 at 2:38-2:48 (showing a

person, apparently Nichols, displaying his firearm and explaining that it has *scotch-*

*taped* on its outside a shell for a *different* kind of firearm); see also, e.g., FAC, ¶36

(fantasizing about someday carrying openly a loaded firearm in Redondo Beach).)

So Nichols cannot be – and, accordingly, has never been charged for being – in

_____

(…continued)
     (1) The applicant is of good moral character.
     (2) Good cause exists for issuance of the license.
     (3) The applicant is a resident of that city.
     (4) The applicant has completed a course of training as described
in Section 26165.
    (b) The chief or other head of a municipal police department may issue a
license under subdivision (a) in either of the following formats:
     (1) A license to carry concealed a pistol, revolver, or other firearm
capable of being concealed upon the person.
     (2) Where the population of the county in which the city is located is less
than 200,000 persons according to the most recent federal decennial census, a
license to carry loaded and exposed in only that county a pistol, revolver, or other
firearm capable of being concealed upon the person.
    (c) Nothing in this chapter shall preclude the chief or other head of a
municipal police department of any city from entering an agreement with the sheriff
of the county in which the city is located for the sheriff to process all applications
for licenses, renewals of licenses, and amendments to licenses, pursuant to this
chapter.

1   violation of Section 25850's sub-section (a), which concerns the open carrying of

2   *loaded* firearms.  The Court should dismiss Nichols's empty challenge to Section

3   25850(a) as against the Attorney General, this time with prejudice.

4       Nichols is left to complain of the supposed unconstitutionality of Section

5   25850's sub-section (b), under which, it is alleged, Redondo Beach police officers,

6   without Nichols's consent, checked Nichols's firearm to see if it was loaded.

7   (FAC, ¶¶ 11, 16, 41, 70-79, 84-86.)  Again, according to Nichols, only Redondo

8   Beach police officers did the checking.  (FAC, ¶¶ 14, 33, 35, 41, 58, 70-73, 84-86.)

9   Neither the Attorney General nor any of her subordinates did the checking – or

10  engaged in or made any threat of any subsequent prosecution of Nichols for

11  violating Section 25850(b).  Indeed, any such law enforcement of a possible

12  misdemeanor (§ 25850(d)) would be done by the Redondo Beach City Prosecutor

13  (as Nichols apparently acknowledges; see FAC, ¶63).  It follows that the Court

14  should dismiss with prejudice Nichols's challenge to Section 25850(b) as against

15  the Attorney General.

16      Finally, Nichols retells his unsuccessful attempt to obtain from Redondo

17  Beach's chief of police a permit to carry openly a loaded firearm in Redondo

18  Beach.  (FAC, ¶¶10, 80-81.)  The applicable state law, Section 26155, provides that

19  a local police chief receives and rules on all applications to carry firearms legally in

20  the same city.  The police chief may designate the local sheriff to fulfill this role

21  (but apparently did not do so in this case).  *Id.*  The statute provides no role in these

22  decisions for the Attorney General or the Attorney General's Office.  Once again,

23  these facts underscore that the Court lacks subject-matter jurisdiction over the

24  Attorney General for Nichols's challenge to Section 26155.

25      In sum, after Nichols failed to establish subject-matter jurisdiction over the

26  Attorney General in the original complaint in this case, Nichols has had and taken

27  an opportunity to amend his complaint, but his new allegations are even farther

28

removed from the Attorney General.  Therefore, the Court should dismiss this whole case with prejudice as against the Attorney General.

## II.    ALLEGED FACTS RELEVANT TO ATTORNEY GENERAL AS DEFENDANT

Nichols asserts that he is a citizen of California, resident in Los Angeles County.  (First Amended Complaint ["FAC"], ¶4.)  Although Nichols is *not* a resident of Redondo Beach (FAC, ¶35), that city is where he claims he has openly carried firearms and wants to carry loaded firearms in the future.  (FAC, ¶ 36.)

Many of the new allegations in Nichols's amended complaint are about a particular incident from August 2010.  Apparently, around that time, Nichols communicated with Redondo Beach City Attorney Michael Webb about the plans of Nichols and other "open-carry activists" to have an open-carry event of *unloaded* firearms at the Redondo Beach Pier Shopping Center.  (FAC, ¶¶ 51-54.)  Webb responded that, to his understanding, no law would prevent that unloaded open-carry event from taking place.  (FAC, ¶ 56.)  Thereafter, Nichols became embroiled in a dispute with another expected event participant, Harley Green, about the event.  (FAC, ¶ 59.)  And Nichols engaged in an extended dialogue with Webb and some Redondo Beach Police Department officials about the potential scope of any city ordinances that would potentially ban the open carrying of firearms.  (FAC, ¶¶60-64.)  Ultimately, Nichols came to the event, but left his handgun in his car.  (FAC, ¶ 65.)  Nichols, other open-carry activists, and city police officers then walked around and discussed the locations where a city ordinance banning the carrying of firearms might apply.  (FAC, ¶ 68.)  Nichols had a side conversation with one police officer.  (FAC, ¶ 71.)  That police officer expressed his opinion, that, if confronted with a person openly carrying a firearm, the officer would physically restrain the subject on the ground until the person's identity, firearm registration status and warrant status could be verified.  (FAC, ¶ 71.)  Based on this conversation, Nichols kept his gun in his car.  (FAC, ¶ 72.)

Notably, Nichols does not allege that he (or any of the open-carry advocates at the August 2010 event) was subject to any kind of law enforcement related to the August 2010 incident.  Specifically, Nichols does not allege that the Attorney General, or her predecessor, or any other state prosecuting attorney ever participated in or threatened any law-enforcement action against Nichols or anyone else stemming from this two-year-old incident.

On May 11, 2012 – after Nichols's original complaint in this case was dismissed for lack of standing and other reasons – Nichols sent an e-mail message to Webb indicating that Nichols would openly carry a "long gun through the Redondo Beach Pier Shopping Center between May 21st and May 24th.  Assuming I make it through the shopping center without being arrested, I will then proceed to openly carry a long gun through a…park."  (FAC, ¶75.)

On May 17, 2012, Nichols applied to Redondo Beach Chief of Police Joseph Leonardi, a defendant herein, for a permit to carry openly a loaded handgun in Redondo Beach.  (FAC, ¶¶34, 80.)  Before learning of the response to this application, on May 21, 2012, Nichols staged an open-carry incident:  he carried an *unloaded* shotgun, with a rifle cartridge taped to the butt of the shotgun, around parts of Redondo Beach.  (FAC, ¶32; Exh. 1-1.)  A couple of Redondo Beach police officers took Nichols's shotgun without his consent and searched the shotgun to see if it was loaded.  (FAC, ¶¶32, 58, 78, 79, 84, 86.)  These police officers, Nichols alleges, were "under the direct control and supervision of [Leonardi]." (FAC, ¶78.)  Nichols does *not* claim that the police offers were in any way controlled, directed or supervised by the Attorney General.

Later on May 21, 2012, Webb conveyed to Nichols that his permit request was denied.  (FAC, ¶¶35, 39, 81.)  There is (and truthfully could be) no allegation that the Attorney General played any role in this denial.

In the FAC, Nichols claims – not under oath – that he "has frequently and countless times violated California Penal Code Section 25850…and other…statutes

1    prohibiting firearms from being carried in non-sensitive public places." (FAC, ¶36;

2    accord *id.*, ¶44.)  Yet, curiously, Nichols does not claim ever to have been arrested

3    for, prosecuted for or convicted of these supposed countless crimes.  Furthermore,

4    Nichols's claims contradict his prior sworn statement in this case; in a declaration

5    opposing a motion to dismiss the original complaint, Nichols testified, "I do not

6    openly carry a loaded handgun or long gun in non-sensitive public places…" (Feb.

7    6, 2012 Decl. of Charles Nichols, ¶12, on file herein.)

8         Nichols further claims, vaguely, that "[h]e plans on carrying a firearm in

9    violation of California Penal Code section 25850…every month in the incorporated

10   city of Redondo Beach and other places in California well into the future." (FAC,

11   ¶44.)  Nichols "will carry a firearm…wherever he happens to be in the state of

12   California at the time…" (FAC, ¶45.)  Nichols claims that he will do so "for the

13   purpose of self-defense and other lawful purposes." (FAC, ¶46.)  Noticeably *un*like

14   the original complaint, the FAC contains no allegations of any death threat against

15   Nichols or similar circumstance causing Nichols to feel a special need to carry a

16   loaded firearm in public.

17   **III.  PERTINENT LAW**

18       **A.    Fed. R. Civ. P. 12(b)(1)**

19         Federal Rule of Civil Procedure ("FRCP") 12(b)(1) permits dismissal of a

20   complaint for lack of subject-matter jurisdiction.  *See Safe Air for Everyone v.*

21   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A FRCP 12(b)(1) motion may be a

22   facial attack asserting "that the allegations in the complaint are insufficient on their

23   face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.  Even though a

24   FRCP 12(b)(1) motion is brought by a litigant seeking dismissal of an adverse

25   complaint for lack of subject-matter jurisdiction, "[t]he [opposing] party asserting

26   jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics,*

27   *Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir. 1990) (*citing McNutt v. Gen.*

28   *Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).  In effect, the court presumes

1    lack of jurisdiction until the party invoking the court's jurisdiction proves

2    otherwise. *Kokkoen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994).

3    **B.    Applications of Fed. R. Civ. P. 12(b)(1)**

4    A 12(b)(1) motion is appropriately used to resolve at least three kinds of

5    subject-matter jurisdiction issues, based on (1) "Article III standing," (2) the related

6    issue of "ripeness," and/or (3) immunity under the Eleventh Amendment to the U.S.

7    Constitution.

8    **1.    Article III Standing**

9    The U.S. Constitution grants federal courts power to adjudicate only live

10    "cases" and "controversies." U.S. Const., art. III, sec. 2 (hereinafter, "Article III");

11    *Alaska Right to Life Political Action Comm. v. Feldman,* 504 F.3d 840, 848 (9th

12    Cir. 2007). Federal courts should not issue advisory opinions or declare rights in

13    hypothetical cases. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134,

14    1138 (9th Cir. 2000) (*en banc*). A FRCP 12(b)(1) motion is a proper means to

15    obtain the dismissal of a lawsuit that is not a case or controversy under Article III.

16    *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 n.3 (9th Cir. 2007).

17    **2.    The Ripeness Doctrine**

18    "The doctrines of standing and ripeness are closely related." *Pac. Legal*

19    *Found. v. State Energy Resources Conservation & Dev. Comm'n*, 659 F.2d 903,

20    915 (9th Cir. 1982). A claim must not only present a live case or controversy but

21    also be ripe for adjudication in federal court. See *Potman v. Cty. of Santa Clara,*

22    995 F.2d 898, 902 (9th Cir. 1993). The ripeness doctrine precludes a federal court

23    from exercising jurisdiction over an action that is filed before a concrete dispute

24    exists between the adverse parties. *Poe v. Ullman,* 367 U.S. 497, 507 (1961).

25    "Ripeness is properly addressed in a FRCP 12(b)(1) motion to dismiss because it

26    concerns subject matter jurisdiction." *Summer H. v. Fukino*, Civ. No. 09-00047

27    SOM/BMK, 2009 WL 1249306, at *4 n.1 (D. Haw. May 6, 2009) (*citing Gemtel*

28

1    *Corp. v. Cmty. Redevelopment Agency*, 23 F.3d 1542, 1544 (9th Cir. 1994));

2    accord, *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989).

3    ### 3.    Eleventh Amendment Immunity

4        The Eleventh Amendment generally bars lawsuits in federal courts against

5    officials of U.S. states, without the officials' consent.  See *Cardenas v. Anzai*, 311

6    F.3d 929, 934 (9th Cir. 1999); *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084,

7    1110-11 (E.D. Cal. 2002).  Eleventh Amendment immunity is properly determined

8    on a FRCP 12(b)(1) motion.  See *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d

9    1179, 1183 n.2 (9th Cir. 1997).

10   **IV.  ARGUMENT**

11   ### A.    The Court Should Dismiss this Case as Against the Attorney
         General for Lack of Article III Standing

12

13       To establish Article III case-or-controversy standing, a plaintiff must satisfy

14   three elements: (1) the plaintiff must have suffered an injury in fact that is concrete

15   and particularized and actual or imminent, not conjectural or hypothetical; (2) said

16   injury must be fairly traceable to the challenged action of the defendant; and (3) it

17   must be likely, not just speculative, that said injury will be redressed by a favorable

18   decision.  *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc*., 528 U.S.

19   167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992);

20   *Alaska Right to Life*, 504 F.3d at 848.  A plaintiff has not suffered an injury in fact

21   merely by speculating about being the subject of a law-enforcement action to which

22   there will be a constitutional defense.  *Anchorage Equal Rights*, 220 F.3d at 1139.

23       As noted above, in the instant case, Nichols challenges Attorney General

24   enforcement of two California laws, Section 25850 and Section 26155 – but

25   Nichols alleges no injury at all, or no injury fairly traceable to the action of the

26   Attorney General, capable of redress by a favorable court decision, dooming

27   Nichols's challenges to these laws as against the Attorney General.

28

1   **1.   Penal Code Section 25850**

2       **a.   Subdivision (a)**

3       Nichols could not possibly have violated Section 25850's subdivision (a),

4   barring open carrying of loaded firearms in public places, because Nichols admits

5   that he never carried a firearm at all in the August 2010 incident in Redondo Beach

6   and carried only an *unloaded* shotgun in the May 2012 incident in Redondo Beach.

7   No law-enforcement official, including the Attorney General, has tried or

8   threatened, or even could possibly try, to enforce Section 25850(a) against Nichols

9   based on the facts alleged in the FAC.  Therefore, Nichols was not and could not

10  have been injured in relation to Section 25850(a), and has no court standing with

11  respect to this claim.  Without an injury, Nichols cannot satisfy the second or third

12  prongs of the Article III standing test, either, because those prongs assume the

13  injury.  A non-existent injury can be neither traced anywhere nor redressed by a

14  favorable court decision.

15      As noted above, in the FAC, Nichols suddenly claims to have violated Section

16  25850 "countless" times by carrying loaded firearms around in public in California.

17  The Court should ignore these claims, as they contradict Nichols's prior sworn

18  statement in this case *denying* having openly carried firearms in public in California

19  when and where unlawful to do so.  *Garcia v. Bryant*, No. CV–F–11–1566–LJO,

20  2012 WL 5241177 at *6 (E.D. Cal. Oct. 31, 2011), citing *Data Disc, Inc. v. Sys.

21  Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).  Should the Court

22  nonetheless accept the truth of these claims for purposes of the present motion, the

23  claims only *undermine* Nichols's alleged fear of prosecution for violating Section

24  25850.  Given that carrying a loaded firearm in public has been unlawful in most

25  parts of California and in most circumstances since the late 1960s (*People v.

26  Delong*, 11 Cal. App. 3d 786, 789 [90 Cal. Rptr. 193] (1970)), Nichols's ability to

27  get away with doing so countless times means that, practically, Nichols has no

28

legitimate reason to fear being arrested or prosecuted for or convicted of doing so again.

Also as noted above, Nichols (again) makes vague statements about his future plans to carry *loaded* firearms in Redondo Beach and other unspecified places. These allegations are just like the allegations in the original complaint that did not suffice to establish standing. For reasons already presented to and accepted by this Court in the prior Attorney General FRCP 12(b)(1) motion from January 2012, these allegations are the proverbial assertions of "hypothetical, some day intentions" that do not create standing. *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 994 (9th Cir. 2012), citing *Lujan*, 504 U.S. at 564.

### b.    Subdivision (b)

Nichols does allege that, in the May 2012 incident, he had a firearm that Redondo Beach police officers examined, over Nichols's protest, to determine if it was loaded. Based on this check, Nichols repeatedly announces, Section 25850, subdivision (b), "was enforced on" Nichols. (See, e.g., FAC, ¶ 14, 32, 35, 37, 41.) Even assuming *arguendo* the truth of these allegations and a cognizable injury to Nichols, there is no connection to *the Attorney General*, making the Attorney General an improper defendant in this respect. Any prosecution of Nichols for violating Section 25850(b) would be a misdemeanor prosecution (per *id.*, § 25850(d)), and therefore would be handled by the Redondo Beach City Prosecutor. The Redondo City Attorney is required to prosecute state-law misdemeanors occurring in Redondo Beach. (Redondo Beach Mun. Code Charter, art. XI, §11.2(c); see also http://da.lacounty.gov/lacountycities.htm (Los Angeles District Attorney's Internet page indicating that Redondo Beach has its own city attorney to prosecute misdemeanor crimes) (last visited June 29, 2012) and FAC, ¶63.)[3]

---

[3] Under Federal Rule of Evidence 201, the Attorney General respectfully requests that the Court take judicial notice (a) of the city ordinance and (b) that the Redondo Beach City Prosecutor (not the Los Angeles County District Attorney) prosecutes misdemeanors occurring in Redondo Beach. The Attorney General has

(continued…)

1    Therefore, a court injunction against the Attorney General in this regard would not

2    redress any alleged injury to Nichols.[4]

3        In conclusion, the Court should dismiss with prejudice as against the Attorney

4    General Nichols's challenge to Section 25850, both sub-section (a) and sub-section

5    (b).

6                        **2.    Penal Code Section 26155**

7        Section 26155 vests the Redondo Beach chief of police with the power to

8    issue or to deny permits to carry firearms in Redondo Beach.  As noted above, that

9    power is limited to issuing permits to residents of that city, and Nichols alleges that

10   his application was denied, in part, because Nichols resides in another city.

11       Under Section 26155, a city police department's chief may issue a license to

12   an applicant who has established that he or she is of good moral character, that

13   good cause exists for issuance, that the applicant resides in the jurisdiction, and that

14   the applicant has completed a course in firearm safety.  (§ 26155(a).)  Each

15   applicant must submit his or her fingerprints and may, at the discretion of the

16   licensing authority, be required to undergo psychological testing.  (Cal. Penal Code

17   §§ 26185, 26190.)  Because Nichols has never applied to the proper licensing

18   authority where Nichols lives for a permit to carry a firearm, Nichols has not

19   attempted to show that he would qualify for consideration for a permit, based on the

20   above-described factors.  Nichols therefore lacks standing to pursue his claim

21   regarding Section 26155.

22       Meanwhile, it is important to note that the Attorney General has only two

23   narrow responsibilities in connection with the firearm permit application process,

24   and the Attorney General's roles are inapposite in this case.  First, the Attorney

25   General, after consultation with local law-enforcement representatives, is charged

26   _____
     (…continued)
     simultaneously filed a separate request for judicial notice on this subject matter.

27       [4]  The Attorney General does not concede that Nichols suffered any
     cognizable injury.

28

                                        11

1    with preparing a uniform application form to be used throughout the state. (Cal.

2    Penal Code § 26175.) Second, upon receipt of an applicant's fingerprints from a

3    licensing authority, the California Department of Justice, which is under the

4    supervision of the Attorney General (Cal. Gov't Code § 12510), provides to the

5    licensing authority a report as to whether the applicant is prohibited by state or

6    federal law from possessing a firearm. (Cal. Penal Code §§ 11105, 26185.) The

7    Attorney General does not issue or deny firearms permits within the localities in

8    California.

9        To the extent that Nichols has been cognizably injured by being refused a

10   permit to carry a firearm in public in Redondo Beach,[5] the injury cannot be fairly

11   traced to the Attorney General. Any court injunction ordering the Attorney General

12   to grant the permit would be ineffective as against the Redondo Beach police chief,

13   who has the sole power to issue or to deny such licenses in Redondo Beach.

14   Therefore, the Court should dismiss with prejudice as against the Attorney General

15   Nichols's challenge to Section 26155.

16       **B.    The Court Should Dismiss Nichols's Section 25850(a) Claim as
             Unripe**
17

18       The ripeness doctrine is designed to "prevent the courts, through avoidance of

19   premature adjudication, from entangling themselves in abstract disagreements."

20   *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) (abrogated on other grounds by

21   *Califano v. Sanders*, 430 U.S. 99, 105 (1977)). Ripeness has "both a constitutional

22   and a prudential component." *Id.* The "constitutional component of ripeness is

23   synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life*

24   *Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003). For the

25   prudential component of ripeness, courts evaluate "the fitness of the issues for

26

27       _____

         [5] Again, the Attorney General does not concede that there was any such

28   injury.

12

1  judicial decision and the hardship to the parties of withholding court consideration."

2  *Abbott*, 387 U.S. at 148.

3      It already has been shown that Nichols has no injury for Article III standing

4  purposes with respect to a claim based on Section 25850(a), because Nichols has

5  not openly carried a loaded firearm potentially in violation of the statute, and has

6  only ill-defined notions of ever doing so.  The same analysis and reasoning

7  undermine any notion that this claim is ripe in a constitutional sense.

8      Furthermore, the prudential concerns in this case echo the prudential concerns

9  in *Anchorage Equal Rights* that led to a finding of unripeness.  In *Anchorage Equal*

10  *Rights,* some Alaska landlords*,* out of religious beliefs, vowed never to rent housing

11  to unmarried couples, despite state and local laws banning marital-status

12  discrimination in rental housing; so the landlords challenged the laws in court on

13  First Amendment grounds. 220 F.3d at 1137-38. The *en banc* U.S. Court of

14  Appeals, Ninth Circuit, was dismayed that:

15      the landlords ask us to declare Alaska laws unconstitutional, in the absence of
16      any identifiable tenants and with no concrete factual scenario that
        demonstrates how the laws, as applied, infringe their constitutional rights.
17      This case is a classic one for invoking the maxim that we do not decide
18      constitutional questions in a vacuum.

19  *Id*. at 1141 (citations and internal punctuation omitted).  Nichols's Section 25850*(a)*

20  claim, so far, is just as skeletal factually as *Anchorage Equal Rights*.  Indeed, it

21  might turn out that Nichol's actual conduct, if ever taken, comes under the self-

22  defense exception to Section 25850(a) found in California Penal Code section

23  26045,[6] such that Nichols is not arrested, or arrested but not prosecuted, or

24      _____

    [6] California Penal Code section 26045 provides, in part, as follows:

25      (a) Nothing in Section 25850 is intended to preclude the carrying of any
26  loaded firearm, under circumstances where it would otherwise be lawful, by a
    person who reasonably believes that any person or the property of any person is in
27  immediate, grave danger and that the carrying of the weapon is necessary for the
    preservation of that person or property.
28      (b) A violation of Section 25850 is justifiable when a person who possesses a
                                                            (continued…)

                                     13

1  prosecuted but not convicted, under Section 25850.  For these reasons, it is prudent

2  for this Court to have a concrete factual record in front of the Court before

3  considering making substantive constitutional rulings about Section 25850(a).  In

4  the meantime, given Nichols's inability to identify any concrete harm that he is

5  suffering presently, there is no hardship in deferring an improper, premature

6  adjudication of Nichols's desire openly to carry a *loaded* firearm generally.

7  **C.    The Eleventh Amendment Bars All of Nichols's Claims Against
8          The Attorney General**

9      For a state official to be legitimately subject to a lawsuit in federal court

10  challenging the official's oversight of a state law, in the Eleventh Amendment's

11  "*Ex Parte Young*" exception (209 U.S. 123, 159-60 (1890)), not only must the

12  official have a "fairly direct" connection with the enforcement of the law, but also

13  "there must be a real threat of enforcement…  Absent a real likelihood that the state

14  official will employ his [or her] powers against plaintiffs' interests, the Eleventh

15  Amendment bars federal court jurisdiction."  *Long v. Van de Kamp,* 961 F.2d 151,

16  152 (9th Cir. 1992); *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th Cir. 1998) ("[T]he

17  officers of the state must…threaten or be about to commence civil or criminal

18  proceedings to enforce an unconstitutional act").

19      As noted above, Nichols has not made any allegations that the Attorney

20  General has threatened Nichols with any law-enforcement action, or made any

21  move to commence against Nichols civil or criminal proceedings, in connection

22  with Section 25850 or Section 26155.  For that simple reason, under the Eleventh

23  ───────────────
    (…continued)
24  firearm reasonably believes that person is in grave danger because of circumstances
    forming the basis of a current restraining order issued by a court against another
25  person who has been found to pose a threat to the life or safety of the person who
    possesses the firearm. …Upon trial for violating Section 25850, the trier of fact
26  shall determine whether the defendant was acting out of a reasonable belief that the
    defendant was in grave danger.
27      (c) As used in this section, "immediate" means the brief interval before and
    after the local law enforcement agency, when reasonably possible, has been notified
28  of the danger and before the arrival of its assistance.

1    Amendment jurisprudence cited above, the Attorney General is and should by this

2    Court be deemed immune to Nichols's FAC.  For reasons given above, it is not

3    even *conceivable* that the Attorney General could be involved in the enforcement of

4    Section 25850 or Section 26155 against Nichols under the circumstances alleged in

5    the FAC.   Because Nichols has now tried and failed twice to make a valid claims,

6    the Court should Nichols's case against the Attorney General with prejudice.

7         A deeper analysis leads to only the same conclusion.  "In evaluating the

8    genuineness of a claimed threat of prosecution, [a court should] look to [1] whether

9    the plaintiff[] ha[s] articulated a 'concrete plan' to violate the law in question, [2]

10   whether the prosecuting authorities have communicated a specific warning or threat

11   to initiate proceedings, and [3] the history of past prosecution or enforcement under

12   the challenged statute."  *Anchorage Equal Rights*, 220 F.3d at 1139.

13        [1]   By a "concrete plan…the Constitution means something more than a

14   hypothetical intent to violate the law."  *Id*.  As regards violating Section 25850*(a)*,

15   Nichols has no concrete plans, just a hypothetical intent to violate Section 25850(a).

16   (See FAC, ¶¶44-46.)  To the extent that Nichols would violate Section 26155 by

17   openly carrying a loaded firearm in Redondo Beach without a permit to do so,

18   Nichols similarly lacks any concrete plans to violate Section 26155.  The Attorney

19   General will concede, for purposes of the present motion only, that Nichols took

20   acts, during the May 2012 open-carry incident in Redondo Beach, that mean at least

21   something more than a hypothetical intent to violate Section 25850*(b)*.  It is worth

22   noting that, from all appearances, Nichols took those actions solely to attempt to

23   establish standing in this case, not for any other meaningful purpose.

24        [2]   "Although [courts] do not require [a] plaintiff[] to await arrest or

25   prosecution before entertaining a challenge to the constitutionality of a statute…the

26   threat of enforcement must at least be credible, not simply imaginary or

27   speculative."  *Anchorage Equal Rights*, 220 F.3d at 1140 (citation and internal

28   punctuation omitted); *Snoeck v. Brussa*, 153 F.3d at 987 (officers of the state must

15

threaten or be about to commence civil or criminal proceedings to enforce an unconstitutional act).  As noted above, in the present case, the threat of enforcement of Section 25850 or Section 26155 *by the Attorney General* is incredible – indeed, practically impossible – and instead just imaginary and speculative.  Only Redondo Beach police officers and prosecuting attorneys have performed or might perform such law enforcement.

[3]   Regarding the history of enforcement of Section 25850 and Section 26155, the Attorney general will concede for purposes of this motion only that, statewide, law-enforcement authorities have appropriately enforced Section 25850 and Section 26155 – to the benefit of the health and safety of everyone in California.  (This partial concession does not overcome the two other factors in the analysis, or otherwise render the claims against the Attorney General ripe for adjudication.)

As can be seen quickly or by a longer look, Nichols cannot bypass the Eleventh Amendment to reach the Attorney General with either of the two causes of action leveled at the Attorney General in this case.

**V.   CONCLUSION**

Nichols has twice filed detailed complaints in this case.  Each time, Nichols's voluminous pleadings have failed to demonstrate that the Attorney General is a

//
//
//
//
//
//
//
//

16

proper defendant in this case.  Under FRCP 12(b)(1), the Court should dismiss this case as against the Attorney General, and with prejudice.

Dated:  June 29, 2012                                    Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General


*/s/ Jonathan M. Eisenberg*
JONATHAN M. EISENBERG
Deputy Attorney General
*Attorneys for Defendant California*
*Attorney General Kamala D. Harris*

# CERTIFICATE OF E-FILING AND SERVICE

Case Name:    __Nichols v. Brown__    No.    __U.S.D.C., C.D. Cal., 11-cv-09916-SJO-SS__

I hereby certify that, on June 29, 2012, I caused to be electronically filed with the U.S. District Court, Central District of California, Clerk of the Court, through the CM/ECF system, the document(s) with the following title(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS ACTION UNDER FED. R. CIV. P. 12(B)(1)**

I certify that at least some of the participants in the above-entitled case are registered CM/ECF users.

I am employed in Los Angeles, California, in the Office of the Attorney General, Department of Justice, State of California ("OACG"), which is the office of a member of the California State Bar, at which member's direction the following service is made.

I am 18 years of age or older and not a party to this matter.  I am familiar with the business practices at the OACG for collection and processing of correspondence for mailing with the U.S. Postal Service.  In accordance with those practices, correspondence placed in the internal mail collection system at the OACG is deposited with the U.S. Postal Service, with postage thereon fully prepaid, that same day, in the ordinary course of business.

I further certify that at least some of the participants in the case are not registered CM/ECF users.

On June 29, 2012, I caused to be mailed, in the OACG's internal mail system, by First-Class Mail, postage prepaid, the foregoing document(s) to the following person(s) at the following address(es):

Charles Nichols
P.O. Box 1302
Redondo Beach, CA  90278

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on June 29, 2012, at Los Angeles, California.

| R. Velasco | /s/ R. Velasco |
|---|---|
| Declarant | Signature |

60719744.docx