Michael F. Sisson, State Bar #108855
Law Office of Michael F. Sisson
3655 Torrance Blvd., 3rd Floor
Torrance, California 90503
(310) 318-0970
Fax (310) 318-0948

Attorney for plaintiff, Charles Nichols

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES NICHOLS,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>COUNTY OF LOS ANGELES; et al.,<br><br>　　　　Defendants. | CASE NO. CV-11-9916 SJO (SS)<br><br>(Honorable S. James Otero)<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE FILED IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**<br><br>DATE:　　July 31, 2011<br>TIME:　　10:00 a.m.<br>CTRM:　　23<br><br>Action Filed: November 30, 2011<br><br>Magistrate: Hon. Suzanne H. Segal |

　　　　Pursuant to Fed. R. Evid. 201, plaintiff, Charles Nichols, hereby respectfully requests the Court to take Judicial Notice of the following exhibits attached hereto and submitted in opposition to the defendants' Motions to Dismiss Action/First Amended Complaint.

EXHIBIT 1　Notice Regarding Arraignment Date dated June 27, 2012, in People v. Nichols, DR #12-3245.

EXHIBIT 2　California Attorney General Opinion, Opinion No. 68-175 (51 Ops. Cal. Atty. Gen. 197).

EXHIBIT 3    Opinion in *Jackson v. City and County of San Francisco*, WL 7338342, __F.Supp.2d__ (2011).

Dated: July 16, 2012

_____
Michael F. Sisson, Attorney for plaintiff,
Charles Nichols

**EXHIBIT 1**

SUPERIOR COURT – SOUTHWEST DISTRICT

# NOTICE REGARDING ARRAIGNMENT DATE

| NAME, ADDRESS, AND TELEPHONE NUMBER OF AGENCY OR PROSECUTOR | FOR ADDITIONAL INFORMATION, CONTACT (Name and telephone number): |
|---|---|
| REDONDO BEACH POLICE DEPARTMENT<br>CITY PROSECUTOR MELANIE CHAVIRA<br>401 DIAMOND STREET<br>REDONDO BEACH, CA 90277 | DEBRA KOCHHEIM<br>REDONDO BEACH POLICE DEPARTMENT<br>COURT LIAISON OFFICER<br>(310) 379-2477 X2338 |

TO:

| CHARLES NICHOLS | TODAYS DATE<br>JUNE 27, 2012 | CITATION/BOOKING NUMBER |
|---|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | D.R. NUMBER<br>12-3245 | COURT CASE NUMBER |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | DATE CITATION ISSUED | ORIGINAL COURT DATE |
| | CHARGE(S)<br>4-35.20(a)RBMC | |

☐ On the date shown above, you were issued a citation to appear in court for arraignment.

☐ The date you were previously given to appear in court fell on a court holiday, a Saturday, a Sunday, or a nonarraignment day; therefore your appearance date has been rescheduled as indicated below.

☐ You were cited to appear in the wrong division (courtroom) or at the wrong address. The correct division and address are indicated below.

☒ You have been named as a defendant in a criminal complaint charging you with the violation(s) shown above. You must appear in court for arraignment as indicated below. By appearing in court promptly at the time and place indicated, you can avoid the inconvenience resulting from the issuance of a warrant for your arrest. **IF YOU FAIL TO APPEAR IN COURT AS DIRECTED, A WARRANT FOR YOUR ARREST WILL BE ISSUED.**

☐ Due to investigative delay, a criminal complaint has not yet been filed by the prosecutor with the court. Do not appear in court on the date you were previously given. ☐ Instead appear as indicated below. ☐ You will be notified by mail of your new arraignment date. If you were released on bail, your bail will be continued to your new appearance date (when assigned).

☐ Your case has been dismissed, and you do not have to appear in court.

**APPEAR AS INDICATED BELOW:**

| DATE | TIME | DIVISION | ROOM NUMBER |
|---|---|---|---|
| JULY 25, 2012 | 8:30 A.M. | CRIMINAL | 170-CLERK'S OFFICE |
| TORRANCE SUPERIOR COURT<br>825 MAPLE AVENUE, TORRANCE, CA 90503-5058 ||||

**DECLARATION OF MAILING**

I declare under penalty of perjury, under the laws of the State of California, that the following is true and correct: I am over the age of 18 years, not a party to this action, and readily familiar with my office's or agency's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence would be deposited with the United States Postal Service on the same day it was placed for collection. I served this *Notice Regarding Arraignment Date* by placing a true copy in an envelope addressed as shown above, and then by sealing and placing it for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following ordinary business practices.

| I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. |||
|---|---|---|
| DATE<br>JUNE 27, 2012 | TYPE OR PRINT NAME<br>RDILLON | SIGNATURE<br>*RDillon* |

76A719D – SBD045 (10-96)      **NOTICE REGARDING ARRAIGNMENT DATE**
**DISTRIBUTION**     1 -Court Case File, 1 –Defendant, 1 -Agency

**EXHIBIT 2**



OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF CALIFORNIA

Opinion No. 68-175

1968 Cal. AG LEXIS 59; 51 Ops. Cal. Atty. Gen. 197

October 3, 1968

**SYLLABUS:**
 [*1]

   FIREARMS -- The term "firearm" includes rifles and shotguns; firearms may be carried in areas where no regulations exist; "every public road or highway" is a "prohibited area"; "public street" is not synonymous with "public road or highway"; and "safety zone" is a "prohibited area" only when it coincides with a "public place."

**REQUESTBY:**

DIRECTOR, DEPARTMENT OF FISH AND GAME

**QUESTION:**

   The Honorable Walter T. Shannon, Director, Department of Fish and Game, has requested an opinion on the following questions:

   1. Does the term "firearm" as used in Penal Code section 12031$= > include rifles and shotguns?

   2. Does Penal Code section 12031 prohibit the carrying of a rifle or shotgun with unexpended shells or cartridges in the magazine on a public road in an unincorporated area where there are no local ordinances or other laws or regulations prohibiting the discharge of firearms?

   3. Does Penal Code section 374c make every "public road or highway" a "prohibited area," as defined in section 12031?

   4. Is the term "public street" as used in section 12031 synonymous with "public road or highway" as used  [*2]  in Penal Code section 374c?

   5. Would the "safety zone" described in Fish and Game Code section 3004 be considered a "prohibited area" as defined in section 12031(d)?

   The conclusions are:

   1. The term "firearm" as used in Penal Code section 12031 includes rifles and shotguns.

Case 2:11-cv-09916-SJO-SS Document 66 Filed 07/16/12 Page 7 of 17 Page ID #:620

Page 2

1968 Cal. AG LEXIS 59, *2; 51 Ops. Cal. Atty. Gen. 197, **

2. Penal Code section 12031 does not prohibit the carrying of a rifle or shotgun with unexpended shells or cartridges in the magazine on a public road in an unincorporated area where there are no local ordinances or other laws or regulations prohibiting the discharge of firearms.

3. Penal Code section 374c does make every "public road or highway" a "prohibited area" as defined in section 12031.

4. The term "public street" as used in section 12031 is not synonymous with "public road or highway" as used in Penal Code section 374c.

5. The "safety zone" described in Fish and Game Code section 3004 is a "prohibited area" as defined in section 12031, but carrying [*3] of loaded weapons is proscribed therein only when it coincides with a "public place."

**OPINIONBY:**

THOMAS C. LYNCH, Attorney General; Edward W. Bergtholdt, Deputy

**OPINION:**

[**198] ANALYSIS

Penal Code section 12031 was enacted by the 1967 Legislature as an urgency measure and provides in part as follows:

> "(a) . . . every person who carries a loaded firearm on his person or in a vehicle while in any public place or on any public street in an incorporated city or *in any public place or on any public street in a prohibited area of unincorporated territory* is guilty of a misdemeanor.
>
> . . .
>
> "(d) As used in this section *prohibited area*' means any place where it is unlawful to discharge a weapon.
>
> "(e) A firearm shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell, consisting of a case which holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and [*4] ball or shot in the barrel or cylinder." (Emphasis added.)

In order to respond properly to the questions raised, it is necessary to look at the circumstances surrounding the enactment of section 12031 and the attitude of the Legislature to these circumstances.

In April 1967 Assembly Bill 1591 was introduced and included the addition of 1 section 12031 to the Penal Code. At this time it prohibited the carrying of a loaded firearm on a public street or in a public place in an incorporated city. On May 2, 1967, members of the Black Panther organization entered the Assembly Chambers armed with "pistols, rifles and at least one sawed-off shotgun," all to the great alarm of the members of the Assembly. The Sacramento Bee, May 2, 1967, at 1. A.B. 1591 was then made an urgency measure. The provisions of the proposed section 12031 were expanded to extend the application of the section to certain parts of unincorporated areas. The revised bill also proposed the addition of sections 171c, 171d, and 171e to the Penal Code. These sections prohibited the carrying of loaded firearms at the State Capitol, at public schools, [*5] including state colleges and the University of California, and at the Governor's Mansion or residence of any elected state officials.

Case 2:11-cv-09916-SJO-SS   Document 66   Filed 07/16/12   Page 8 of 17   Page ID #:621

Page 3

1968 Cal. AG LEXIS 59, *5; 51 Ops. Cal. Atty. Gen. 197, **198

The urgency clause first appended to A.B. 1591 referred to organized bands of men "armed with loaded firearms" entering the Assembly Chambers. This was a clear reference to the appearance of members of the Black Panther organization referred to above. A.B. 1591 was subsequently enacted into law (Stats. 1967, ch. 960, p. 2459) as an urgency measure. The urgency clause of the bill as enacted reads as follows:

> "The State of California has witnessed, in recent years, the increasing [**199] incidence of organized groups and individuals publicly arming themselves for purposes inimical to the peace and safety of the people of California.
>
> "Existing laws are not adequate to protect the people of this state from either the use of such weapons or from violent incidents arising from the mere presence of such armed individuals in public places. Therefore, in order to prevent the potentially tragic consequences of such activities, it is imperative that this statute take effect immediately."

Although this final version of the clause is broader than its earlier [*6] versions, it remains clear that the Legislature did not direct the provisions of section 12031 against all uses of firearms but only at uses of firearms which are "inimical to the peace and safety of the people of California."

Question No. 1 represents an opinion whether the word "firearm" in section 12031 includes rifles and shotguns. *The word "firearm" includes rifles and shotguns.*

The fact that this section is a part of this state's Dangerous Weapons Control Law (Penal Code Part IV, Title 2, Chapter 1, commencing with section 12000), dealing with *concealed* weapons, might suggest its limitation to such weapons. Reading Penal Code section 12031 in its entirety suggests, however, that "firearm" includes rifles and shotguns. Subdivision (b), subparagraph (4) talks of "hunting," an activity which more often involves rifles or shotguns than pistols or revolvers, and subparagraph (8) uses the word "weapon" without any restriction such as "concealed." In subdivisions (d) and (j) the word "weapon" appears again without any restriction.

The inclusion of rifles and shotguns within the definition of "firearm" is also suggested by the circumstances [*7] surrounding its enactment and the wording of the urgency clause. There can, therefore, be little doubt that the word "firearm," as it appears in section 12031, is not limited in meaning to "concealed weapons," as defined in Penal Code section 12001 . We must conclude that the word "firearm" as used in section 12031 embraces, among other weapons, rifles and shotguns. n1

> n1 For a comprehensive discussion of all the laws of this state relating to firearms see Assem. Int. Comm. on Crim. Proc., *Regulation and Control of Firearms*, 22 Assembly Reports 1963-1965, No. 6 (1965).

Question No. 2 requests an opinion whether section 12031 prohibits the carrying of a loaded firearm on a public road in an unincorporated area. We conclude that section 12031 does not prohibit the carrying of loaded firearms on such public ways. For the reasons set forth in our answer to question No. 4, the term "public streets" in section 12031 (a) must be given a narrow construction. There is a distinction between [*8] "public roads" and "public streets" which is discussed more fully below. The proscriptions of section 12031 are therefore not applicable to "public roads" because they are not "public streets" as that term is used in section 12031. n2

> n2 The carrying of a rifle or shotgun in a vehicle with an unexpended round in the chamber is prohibited on "public highways" by Fish and Game Code section 2006, which provides in part:
>
> "It is unlawful to possess a loaded rifle or shotgun in any vehicle . . . which is standing on or along or is being driven on or along any public highway or other way open to the public.

Case 2:11-cv-09916-SJO-SS   Document 66   Filed 07/16/12   Page 9 of 17   Page ID #:622

Page 4

1968 Cal. AG LEXIS 59, *8; 51 Ops. Cal. Atty. Gen. 197, **199

"A rifle or shotgun shall be deemed loaded . . . when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine."

[**200] Question No. 3 requests an opinion whether Penal Code section 374c n3 makes every "public road" a "prohibited area" as defined by section 12031. Because [*9] the discharge of firearms is prohibited on "public roads and highways," these public ways are by definition "prohibited areas" (section 12031 (d)). This does not, however, alter our conclusion that the proscriptions of section 12031 are not applicable to such public ways because, as set forth in our response to your question No. 4, the term "public road or highway" is not synonymous with the term "public street."

n3 Penal Code section 374c provides: "Every person who shoots any firearm from or upon a *public road or highway* is guilty of a misdemeanor." (Emphasis added.)

Question No. 4 requests an opinion whether the term "public street" in section 12031 is synonymous with the term "public road or highway" used in Penal Code section 374c. Our response is that the terms "public road or highway" are not synonymous with the term "public street."

The discussion above regarding the Legislature's purpose in enacting section 12031 suggests that the [*10] term "public street" is to be given a narrow meaning. The thrust of the section is not against the use of all firearms but only against use "inimical to th e peace and safety of the people of California." Further, the application of the section's prohibition to unincorporated areas is modified by the injection of the concept, "prohibited area." It is clear, therefore, that the Legislature intended that there be a recognizable distinction in applying the prohibition of section 12031 as between incorporated areas and unincorporated areas. To make "public streets" synonymous with "public roads and highways" would leave little meaningful difference between incorporated and unincorporated areas.

Additionally, earlier versions of A.B. 1591 would have amended Fish and Game Code section 2006. Such amendment was designed to conform the definition of a loaded rifle or shotgun in Fish and Game Code section 2006 to the definition of a loaded firearm in Penal Code section 12031. Section 2006 applies on all "public highway [s] or other way[s] open to the public." The failure of the [*11] Legislature to enact such an amendment to section 2006 suggests that it did not intend that section 2006 be superseded by section 12031. Had it desired section 2006 to be superseded, it would have either amended its definition of a loaded weapon to conform to section 12031 or repealed it entirely.

For these reasons we must conclude that the Legislature intended the term "public streets" be given a narrow meaning. It is not synonymous, then, with "public roads and highways," but includes only the public ways of towns and villages and not the "open roads" in rural sections of unincorporated areas.

Attention should also be called to the effect of Penal Code section 415 which provides: "Every person who . . . fire[s] any gun or pistol in . . . [an] unincorporated [**201] town . . . is guilty of a misdemeanor . . . ." Section 12031 (d) defines a "prohibited area" as "any place where it is unlawful to discharge a weapon." An unincorporated town thereby becomes a "prohibited area." The proscription of section 12031 is applicable to the "public streets" of such towns and to all "public places" therein. We have therefore "public places" and "public streets" [*12] in the narrow sense where the discharge of firearms is prohibited and thus the concurrence of the necessary factors to bring the proscriptions into play.

Question No. 5 requests an opinion whether the term "safety zone" in Fish and Game Code section 3004 n4 is a "prohibited area." The answer is in the affirmative, subject to the qualifications given below.

Page 5
1968 Cal. AG LEXIS 59, *12; 51 Ops. Cal. Atty. Gen. 197, **201

> n4 Fish and Game Code section 3004 states:
>
> "It is unlawful for any person, other than the owner, person in possession of the premises, or a person having the express permission of the owner or person in possession of the premises, to hunt or to discharge while hunting, any firearm . . . within 150 yards of any occupied dwelling house, residence, or other building or any barn or other outbuilding used in connection therewith. The 150-yard area is a safety zone.'"

The "safety zone" described in Fish and Game Code section 3004 which lies in uninco rporated [*13] areas is a "prohibited area" as that term is defined by section 12031 (d). Again, however, for the proscriptions of section 12031 to be applicable, there must be a concurrence of a "prohibited area" and a "public place." Further, "public places" which do not have a building located thereon (*e.g.*, a park) would not be "prohibited areas" and, thus, the proscription of section 12031 would not be applicable. The same would be true for those areas of "public places" more than 150 yards from any building.

It should also be noted that certain persons are excepted from the operation of Fish and Game Code section 3004. Because this exception is not in conflict with the intent of the Legislature these persons would be exempt in any case from the proscriptions of 12031.

**Legal Topics:**

For related research and practice materials, see the following legal topics:
Criminal Law & ProcedureCriminal OffensesWeaponsPossessionElementsCriminal Law & ProcedureCriminal OffensesWeaponsUseSimple UseElementsTransportation LawCommercial VehiclesMaintenance & Safety

**EXHIBIT 3**

2011 WL 7338242
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Francisco Division.

Espanola JACKSON, et al., Plaintiffs,
v.
CITY AND COUNTY OF SAN FRANCISCO, et al., Defendants.

No. C 09–2143 RS.   |   Sept. 27, 2011.

**Synopsis**

**Background:** Gun owners brought action against city and county, asserting that their Second Amendment individual right to keep and bear arms was violated by ordinances relating to storage and discharges of firearms, and sales of particular types of ammunition. City and county moved to dismiss on ground that gun owners lacked standing and that their claims were unripe.

**[Holding:]** The District Court, Richard Seeborg, J., held that gun owners adequately alleged injury-in-fact, as required for standing to challenge ordinances.

Motion denied.

West Headnotes (9)

[1]   **Federal Civil Procedure**
      ⮞ In General; Injury or Interest
      **Federal Courts**
      ⮞ Case or Controversy Requirement
      The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring that plaintiffs have standing and that claims be ripe for adjudication. U.S.C.A. Const. Art. 3, § 2, cl. 1.

[2]   **Federal Courts**
      ⮞ Presumptions and Burden of Proof
      The party asserting federal subject matter jurisdiction bears the burden of proving its existence.

[3]   **Federal Civil Procedure**
      ⮞ In General; Injury or Interest
      Standing jurisdictional requirement addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication.

[4]   **Federal Courts**
      ⮞ Case or Controversy Requirement
      Doctrine of ripeness is a means by which federal courts may dispose of matters that are premature for review because the purported injuries are too speculative and may never occur.

[5]   **Federal Civil Procedure**
      ⮞ In General; Injury or Interest
      **Federal Courts**
      ⮞ Case or Controversy Requirement
      **Federal Courts**
      ⮞ Objections to Jurisdiction, Determination and Waiver
      Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a motion to dismiss for lack of subject-matter jurisdiction. Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

[6]   **Federal Civil Procedure**
      ⮞ In General; Injury or Interest
      **Federal Civil Procedure**
      ⮞ Causation; Redressability
      Irreducible constitutional minimum of standing contains three elements, all of which the party invoking federal jurisdiction bears the burden of establishing: (1) plaintiff must prove that he or she suffered injury in fact, i.e., an

invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) plaintiff must establish a causal connection by proving that the injury is fairly traceable to the challenged conduct of defendant; and (3) plaintiff must show that the injury will likely be redressed by a favorable decision. U.S.C.A. Const. Art. 3, § 2, cl. 1.

[7] **Federal Courts**
⌦ Case or Controversy Requirement

Jurisdictional question of ripeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

[8] **Federal Courts**
⌦ Case or Controversy Requirement

The central concern of the ripeness jurisdictional inquiry is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.

[9] **Weapons**
⌦ Constitutional, Statutory, and Regulatory Provisions

Gun owners adequately alleged injury-in-fact, as required for standing to bring action against city and county asserting that their Second Amendment individual right to keep and bear arms was violated by ordinances that required handguns to be kept in locked containers when not under direct control, banned sale of bullets designed to expand or fragment, and prohibited discharge of firearms, although gun owners had not been arrested or prosecuted under ordinances; gun owners wanted to immediately keep guns unlocked and acquire prohibited ammunition for potential use in self defense, and although they did not intend to violate discharge prohibition unless in self-defense, it would be unreasonable to require incident to occur before judicial review was available. U.S.C.A. Const.Amend. 2.

**Attorneys and Law Firms**

Carl Dawson Michel, Don Bernard Kates, Glenn S. McRoberts, Hillary Jane Green, Michel & Associates, P.C., Long Beach, CA, for Plaintiffs.

Sherri Sokeland Kaiser, Office of the City Attorney, San Francisco, CA, for Defendants.

**Opinion**

**ORDER DENYING MOTION TO DISMISS FOR LACK OF STANDING, GRANTING LEAVE TO AMEND MOOT CLAIM**

RICHARD SEEBORG, District Judge.

**I. INTRODUCTION**

*1 In the wake of the Supreme Court's holding in *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), that the Second Amendment confers an individual right to keep and bear arms, plaintiffs brought this challenge to certain ordinances of the City and County of San Francisco relating to storage and discharges of firearms, and sales of particular types of ammunition. This litigation was then stayed pending further guidance as to whether the right announced in *Heller* constrains the states, a question answered in the affirmative in *McDonald v. City of Chicago,* ––– U.S. ––––, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). Defendants [1] now move to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, contending that plaintiffs lack standing to challenge the ordinances because they have not shown, and cannot show a genuine and particularized threat that the ordinances will be enforced against them. For essentially the same reasons, defendants further contend plaintiffs' claims are not ripe. Because plaintiffs have adequately alleged an intent and desire to engage in conduct

that is prohibited by the ordinances but which they contend is constitutionally protected, the motion will be denied. Plaintiffs will be given leave to amend, however, as to one claim involving an ordinance that has been repealed and replaced by somewhat different provisions, and which is therefore subject to dismissal on mootness grounds.

## II. BACKGROUND

The First Amended Complaint challenges three provisions of the San Francisco Police Code ("SFPC"):

*Section 4512,* "The Safe Storage Law," generally allows San Francisco residents to carry unsecured handguns freely in their homes at any time, but requires them to apply trigger locks or to store handguns in locked containers when the guns are not under direct, personal control.

*Section 613.10(g),* entitled "Prohibiting Sale Of Particularly Dangerous Ammunition," prohibits gun shops from selling ammunition that has been enhanced to increase the damage it inflicts on the human body, such as fragmenting bullets, expanding bullets, bullets that project shot or disperse barbs into the body, or other bullets that serve no "sporting purpose." Plaintiffs contend that while bullets designed to expand or fragment upon impact fall within this ban, they are particularly suited for self-defense because they are designed, for safety reasons, to prevent ricochet and to eliminate over-penetration of unarmored assailants. Plaintiffs assert the police often use such bullets for the same reasons, and that they are unlike so-called "cop killer" or armor-penetrating bullets that might more reasonably be characterized as "particularly dangerous."

*Section 1290,* "the discharge ban" formerly prohibited firing or discharging "firearms or fireworks of any kind or description" within city limits. Plaintiffs challenged it on grounds that it did not explicitly contain appropriate exceptions for self-defense. Section 1290 has since been *repealed,* and replaced with amendments to provisions in sections 4502 and 4506. While this motion to dismiss was pending, plaintiffs moved for leave to amend to delete their challenge to section 1290 and to allege the grounds on which they contend the revised provisions of sections 4502 and 4506 still fail to pass constitutional muster. The motion for leave to file a second amended complaint at that juncture was denied, with the understanding that unless the entire action were dismissed for lack of standing, plaintiffs would be given leave to amend this particular claim upon issuance of this order.

## III. LEGAL STANDARDS

*2 [1] [2] [3] [4] [5] As noted above, defendants move to dismiss this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that plaintiffs lack standing and that their claims are unripe. The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, among other things, that plaintiffs have standing and that claims be "ripe" for adjudication. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The party asserting federal subject matter jurisdiction bears the burden of proving its existence. *See Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication. *See Allen,* 468 U.S. at 750–51, 104 S.Ct. 3315. The related doctrine of ripeness is a means by which federal courts may dispose of matters that are premature for review because the purported injuries are too speculative and may never occur. Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss. *See St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989); *see also White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000).

[6] "[T]he irreducible constitutional minimum of standing contains three elements," all of which the party invoking federal jurisdiction bears the burden of establishing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, the plaintiff must prove that he or she suffered an "injury in fact," i.e., an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130 (citations, internal quotation marks, and footnote omitted). Second, the plaintiff must establish a causal connection by proving that the injury is fairly traceable to the challenged conduct of the defendant. *Id.* at 560–

61, 112 S.Ct. 2130. Third, the plaintiff must show that the injury will likely be redressed by a favorable decision. *Id.* at 561, 112 S.Ct. 2130.

**[7]** **[8]** "[T]he question of ripeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (quotations omitted). The central concern of the ripeness inquiry is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Richardson v. City and County of Honolulu,* 124 F.3d 1150, 1160 (9th Cir.1997) (quotations omitted).

## IV. DISCUSSION

**[9]** Defendants insist that under "well established and well elucidated" law in this circuit, persons who have not yet been arrested or prosecuted under a challenged law have standing only if they can show imminent injury-in-fact by means of a "genuine and particularized threat" that the challenged law will be enforced against them. Relying primarily on *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121 (9th Cir.1996) ("*Gun Rights Committee*"), defendants argue that it simply is not enough for plaintiffs to allege that they "wish and intend" to engage in conduct prohibited by the law in dispute; rather, they must also allege facts showing when and how they will violate the law, and a specific threat that they will be prosecuted if they do. Defendants contend plaintiffs have not shown that any law enforcement official has specifically threatened any of them, much less all of them, with arrest and prosecution under any of the challenged ordinances. Defendants place particular emphasis on the observation in *Gun Rights Committee* that, "[w]e have repeatedly admonished ... that the mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." 98 F.3d at 1126 (quotations omitted).

**\*3** *Gun Rights Committee* involved a challenge to the federal "assault weapons" ban enacted by Congress in 1994, which prohibited the manufacture, transfer or possession of semiautomatic assault weapons and the transfer or possession of "large capacity ammunition feeding device[s]." The plaintiffs alleged "that they 'wish and intend' to engage in unspecified conduct prohibited by the Act," but had not "articulated concrete plans" to do so. 98 F.3d at 1124, 1127.

Because *Gun Rights Committee* long preceded *Heller,* the court quickly dispensed with the notion that the plaintiffs might have standing under the Second Amendment—the lack of any then-recognized individual constitutional right to keep and bear arms foreclosed plaintiffs from asserting standing. 98 F.3d at 1124–25. Plaintiffs' challenge under the Ninth Amendment was rejected for the same basic reason. *Id.* at 1125. Accordingly, the court's standing analysis proceeded only under the claim that Congress had exceeded its power under the Commerce Clause in enacting the assault weapons ban. Here, in contrast, plaintiffs are pursuing what the Supreme Court has now pronounced to be an individual right guaranteed by the Second Amendment, not simply challenging the scope of the Commerce Clause. While defendants may be correct that *Heller* cannot be seen as overruling *Gun Rights Committee, per se,* the applicability of the standing analysis in *Gun Rights Committee* to a case involving assertion of individual constitutional guarantees is uncertain.

The continued vitality of *Gun Rights Committee* is also questionable in light of *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). The *Gun Rights Committee* court had pointed out that, "The acts necessary to make plaintiffs' injury—prosecution under the challenged statute—materialize are almost entirely within plaintiffs' own control." 98 F.3d at 1127. As a result, the court concluded, "[p]laintiffs have failed to show the high degree of immediacy that is necessary for standing under these circumstances." *Id.* In *MedImmune,* however, the Supreme Court rejected this argument.

> Our analysis must begin with the recognition that, where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's

> own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.

549 U.S. at 128–129, 127 S.Ct. 764.[2]

Ultimately, though, even to the extent that at least some aspects of *Gun Rights Committee* remain good law, it simply is distinguishable. Plaintiffs have not merely alleged that they "wish and intend" to violate the ordinances in some vague and unspecified way, at some unknown point in the future. Plaintiffs allege they own guns now, and that based on their personal views of how it would enhance their personal safety, they want to keep their guns unlocked *now* for potential use in self defense, and that they wish to acquire prohibited ammunition *now* for the same purpose. While the time that they will actually *use* the guns in self defense is unknown and may never come, that does not undermine the immediacy and concreteness of the injury they have alleged. Even as to the discharge rules, which plaintiffs do not contend they intend to violate unless and until a self-defense situation arises, it would be unreasonable to require an incident to occur before judicial review of the validity of the rules is available.[3]

**\*4** Defendants also rely on *Rincon Band of Mission Indians v. County of San Diego,* 495 F.2d 1 (9th Cir.1974), which found no justiciable controversy where the governing body of an Indian tribe sought declaratory relief as to the applicability of a county anti-gambling ordinance to "traditional tribal games of chance," and to the possible development of a tribally-run card room on reservation lands. Although the "case or controversy" issues discussed in *Rincon* underlie part of the standing doctrine, the decision was not framed in terms of standing, and it did not involve an assertion of individual constitutional rights. Nothing in the facts or discussion in *Rincon* otherwise compels a conclusion that plaintiffs lack standing here.

Defendants' contention that the plaintiffs' claims are not ripe are based on the same basic arguments as their position on standing, and do not provide a separate basis for dismissal. *See MedImmune,* 549 U.S. at 128 n. 8, 127 S.Ct. 764 ("standing and ripeness boil down to the same question in this case.") Similarly, their arguments that the case should be dismissed on *prudential* standing grounds rest on the same assumptions as to the concreteness and immediacy of plaintiffs' alleged injury. Accordingly, the motion to dismiss must be denied.

IV. CONCLUSION

The motion to dismiss for lack of standing is denied. In light of plaintiffs' concession that the claim directed at Section 1290 is now moot, however, it will be dismissed, with leave to amend to allege plaintiffs' challenges to the amendments of sections 4502 and 4506. Any amended complaint shall be filed with 15 days of the date of this order. The parties shall appear for a Case Management Conference on November 3, 2011, at 10:00 a.m., with a joint Case Management Conference statement to be filed one week in advance.

IT IS SO ORDERED.

1   The operative first amended complaint names as defendants the City and County of San Francisco, its Mayor, and its Chief of Police. As defendants point out, the particular individuals holding those offices have changed since the complaint was filed, and may change again before this action is resolved. Defendants offer to stipulate that the individual defendants at any given time should be deemed to be the Mayor and Chief of Police then in office.

2   Indeed, the Court went on to hold that even where the threatened action was by a *private* party—a patent holder threatening an infringement action—the same principle applies.

3   Defendants' motion also challenges plaintiffs' standing to make a derivative claim on behalf of gun shop owners with respect to the ban on sales of certain types of ammunition. Plaintiffs, however, have made it clear that they are asserting that the ban unduly burdens their *own* alleged right to acquire and possess such ammunition. While it may be that plaintiffs will be unable, as a factual matter, to establish that a ban on sales within the City and County of San Francisco actually presents a significant burden on their ability to obtain such ammunition, that would only undermine the merits of the claim, not plaintiffs' standing to bring it.

**End of Document**  © 2012 Thomson Reuters. No claim to original U.S. Government Works.