**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHARLES NICHOLS,                     )     NO. CV 11-9916 SJO (SS)
                                     )
                   Plaintiff,        )
                                     )
         v.                          )     **REPORT AND RECOMMENDATION OF**
                                     )
KAMALA D. HARRIS, et al.,            )     **UNITED STATES MAGISTRATE JUDGE**
                                     )
                                     )     [DKT NOS. 54 AND 58]
                   Defendants.       )
_____)

     This Report and Recommendation is submitted to the Honorable S. James Otero, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

     On May 30, 2011, plaintiff Charles Nichols ("Plaintiff"), a California resident then proceeding pro se, filed a First Amended Complaint pursuant to 42 U.S.C. § 1983.  Defendant California Attorney General Kamala D. Harris ("Harris") subsequently filed a Motion to Dismiss the First Amended Complaint, (Dkt. No. 58, "Harris MTD"), and a Request for Judicial Notice.  (Id., "Harris RJN").  Defendants City of

1   Redondo Beach, City of Redondo Beach Police Chief Joseph Leonardi, and
2   City of Redondo Beach Police Officer Todd Heywood (collectively, the
3   "Redondo Beach Defendants" or "RBD") also filed a Motion to Dismiss
4   (Dkt. Nos. 54-55, "RBD MTD"), including the Declaration of Lisa Bond
5   (Dkt. No. 56, "Bond Decl."). Plaintiff, now represented by attorney
6   Michael F. Sisson[1], filed Oppositions to the Motions (Dkt. No. 65, "Pl.
7   Harris Opp."; Dkt. No. 64, "Pl. RBD Opp."), including the Declaration of
8   Charles Nichols, (id., "Nichols Decl."), and a Request for Judicial
9   Notice. (Dkt. No. 66, "Pl. RJN"). Harris filed a Reply, (Dkt. No. 69,
10  "Harris Reply"), as did the Redondo Beach Defendants, (Dkt. No. 67, "RBD
11  Reply"), along with Evidentiary Objections to and Motion to Strike
12  Portions of the Declaration of Charles Nichols. (Dkt. No. 68, "RBD
13  Obj.").

14

15      For the reasons discussed below, it is recommended that the Redondo
16  Beach Defendants' Motion to Dismiss be GRANTED. Specifically, it is
17  recommended that Claim One be dismissed without leave to amend, but also
18  without prejudice. It is further recommended that Claim Two be
19  dismissed with prejudice as to the individually-named Redondo Beach
20  Defendants, who are entitled to qualified immunity, and that the
21  surviving claim against City of Redondo Beach be dismissed with leave to
22  amend. It is further recommended that Harris's Motion to Dismiss be
23  DENIED. However, because portions of the FAC, as currently pled, fail
24  to comply with Rule 8, it is further recommended that Plaintiff be
25  ORDERED to file a Second Amended Complaint limited to the facts and

26

27      [1] On July 13, 2012, this Court granted Plaintiff's request for
28  approval of substitution of attorney. Attorney Michael F. Sisson
    entered his appearance on that date on behalf of Plaintiff.

claims relevant to Plaintiff's challenges to California Penal Code sections 25850 and 26155 in Claims Three and Four against the Attorney General, and, if he is able, to a claim for damages against City of Redondo Beach relating to the enforcement of City of Redondo Beach Municipal Code section 4-35.20.  Plaintiff may not include any claims dismissed without leave to amend in a Second Amended Complaint.

## II.

## ALLEGATIONS OF THE COMPLAINT

The First Amended Complaint names four Defendants:  Attorney General Harris, City of Redondo Beach, City of Redondo Beach Police Chief Leonardi, and City of Redondo Beach Police Officer Heywood.[2]  (FAC at 2-3).  Harris is sued in her official capacity only.  (Id. at 2).  The FAC does not indicate whether Plaintiff is suing the Redondo Beach Defendants in their official or individual capacities.  (Id. at 2-3).

The First Amended Complaint challenges the constitutionality of two City of Redondo Beach ordinances and two California statutes that Plaintiff contends violate his Second Amendment right to openly carry a loaded firearm.  (FAC at 35-39).  The FAC alleges that on May 21, 2012, after notifying Chief Leonardi of his plans, (id. at 27-28), Plaintiff

---

[2]  In addition, the FAC includes Doe allegations involving an unnamed City of Redondo Beach police officer, and lists "DOES 1-10" as Defendants in the caption.  (See, e.g., FAC at 1, 19).  However, the specific claims against the Redondo Beach Defendants do not include Officer Doe.  (See id. at 35-37).

openly carried a firearm in an open space within City of Redondo Beach.[3] (Id. at 10).  Officer Heywood took the firearm from Plaintiff without Plaintiff's permission and inspected it, thereby "enforc[ing] on Plaintiff" California Penal Code section 25850, which prohibits carrying loaded firearms in public and authorizes warrantless inspections in the enforcement of the statute.  (Id. at 4-5, 10).  Officer Heywood and Officer Doe informed Plaintiff that he was in violation of "city ordinances prohibiting the carrying of firearms in open spaces" and seized his firearm and carrying case. (Id. at 10).  Shortly thereafter, the City of Redondo Beach City Prosecutor filed a misdemeanor criminal charge against Plaintiff for carrying a firearm in a city park in violation of Municipal Code section 4-35.20 ("section 4-35.20").  (Id.; Pl. RJN, Exh. 1 at 1).

Also on May 21, 2012, Chief Leonardi, through his attorney, informed Plaintiff via email that his earlier request for an application and license to openly carry a loaded handgun could not be fulfilled. (FAC at 30).  The email explained that (1) City of Redondo Beach, which is located in Los Angeles County, cannot issue open carry licenses because state law prohibits municipalities in counties with populations exceeding 200,000 persons from issuing open carry licenses, and (2) pursuant to state law, a municipality may issue state handgun licenses only to its residents, and Plaintiff is not a resident of City of Redondo Beach.  (Id.).

---

[3]  The FAC does not identify the type of firearm Plaintiff was carrying or specify whether it was loaded or unloaded.  However, Plaintiff states in his Opposition to the Redondo Beach Defendants' Motion that he "is facing criminal charges and his long gun was seized as a result of plaintiff carrying an unloaded long gun in public . . . ." (Pl. RDB Opp. at 7 (emphasis in original); see also RBD MTD at 1).

1    Plaintiff generally alleges that in addition to the incident on May
2    21, 2012, he "has frequently and countless times violated California
3    Penal Code Section 25850, the Redondo Beach City Ordinances and other
4    California statutes prohibiting firearms from being carried in non-
5    sensitive public places." (Id. at 11). Plaintiff states that he will
6    continue to "openly carry a loaded holstered handgun, loaded rifle and
7    loaded shotgun" in public places in City of Redondo Beach and the state
8    of California. (Id. at 12).
9
10   In Claim One, Plaintiff raises a facial and "as applied" challenge
11   against the Redondo Beach Defendants to City of Redondo Beach Municipal
12   Code section 4-35.01, which defines the term "park," and section 4-
13   35.20, which provides that it is "unlawful for any person to use, carry,
14   fire or discharge any firearm . . . or any other form of weapon across,
15   in or into a park." (FAC at 36); see also Redondo Beach Municipal Code
16   §§ 4-35.01 & 4-35.20, available at http://www.qcode.us/codes/
17   redondobeach/. Plaintiff contends that section 4-35.20 violates his
18   Second Amendment rights and is preempted by state law governing firearm
19   possession because "[m]ere possession or carrying a firearm (i.e.,
20   exercising a fundamental right) when otherwise lawful cannot support the
21   unlawful detention, search, arrest, prosecution and seizure of a firearm
22   and other property which is lawfully possessed and carried under both
23   state and Federal law." (FAC at 36).
24
25   In Claim Two, Plaintiff seeks monetary damages against the Redondo
26   Beach Defendants "for losses incurred as a result of the warrantless
27   search of PLAINTIFF'S FIREARM, his detention, search and the subsequent
28   illegal seizure of his valuable property (firearm, firearm's case,

5

padlock and key); and for expenditures (fees/costs) associated with the defense of criminal charges . . . ."  (FAC at 37).

In Claim Three, Plaintiff raises a facial and "as applied" challenge against Harris to California Penal Code 25850, which provides in relevant part:

> (a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

> (b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory.  Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

Cal. Penal Code § 25850(a)-(b).  According to Plaintiff, "[o]penly carrying a loaded firearm in non-sensitive public places of a type in common use for the purpose of self-defense" is a right guaranteed by the Second Amendment, and the exercise of that right "cannot support a finding of probable cause . . . such that the Fourth Amendment's warrant requirement can be legislatively disregarded."  (FAC at 37-38).

6

In Claim Four, Plaintiff raises a facial and "as applied" challenge against Harris to California Penal Code section 26155, which in part authorizes municipal police chiefs to issue state licenses to residents of their cities to carry a "pistol, revolver, or other firearm capable of being concealed upon the person," but which restricts the availability of licenses to openly carry a loaded firearm to cities located in counties with populations of fewer than 200,000 persons, and the validity of such open carry licenses only to the county in which the issuing city is located.  Cal. Penal Code § 26155(a)-(c).  Plaintiff appears to contend that because he lives in Los Angeles County, which has more than 200,000 residents, section 26155 improperly prohibits him "from obtaining a license to openly carry a loaded handgun for the purpose of self-defense afforded to similarly situated persons [in more rural counties]."[4]  (FAC at 11, 39).

---

[4]   In opposition to and support of the Motions to Dismiss, Plaintiff and Harris both filed Requests for Judicial Notice asking the Court to take notice of certain municipal ordinances, Attorney General opinions, court decisions and other government documents not included in the FAC.  "When ruling on a motion to dismiss, [a court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Colony Cove Properties, LLC v. City Of Carson, 640 F.3d 948, 955 (9th Cir. 2011) (internal quotation marks omitted).  "[N]otice may be taken where the fact is 'not subject to reasonable dispute,' either because it is 'generally known within the territorial jurisdiction,' or is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"  Castillo-Villagra v. I.N.S., 972 F.2d 1017, 1026 (9th Cir. 1992) (quoting Fed. R. Evid. 201(b)).  The Court GRANTS Plaintiff's and Harris's Requests to the extent that they are compatible with Federal Rule of Evidence 201 and do not require the acceptance of facts "subject to reasonable dispute."  The Evidentiary Objections filed by the Redondo Beach Defendants to the Declaration of Charles Nichols, in which the Redondo Beach Defendants contend that Plaintiff's reference to "death threats" he has received should be stricken as hearsay and irrelevant, are DENIED because the statements are completely immaterial to the Court's decision.  See Lake v. First Nat. Ins. Co. of America, 2010 WL 4807059 at *7 n.4 (N.D. Cal. 2010)

1    Plaintiff seeks declaratory relief finding that City of Redondo
2    Beach Municipal Code sections 4-35.01 and 4-35.20 and California Penal
3    Code sections 25850 and 26155 are unconstitutional, and an injunction
4    prohibiting all Defendants from committing "future violations of the
5    Second, Fourth and Fourteenth Amendments." (Id. at 39). Plaintiff also
6    seeks damages against the Redondo Beach Defendants in an amount
7    according to proof and an injunction requiring the immediate return of
8    property seized from Plaintiff by Officer Heywood. (Id. at 40).

9

10                                    III.

11                    DEFENDANTS' MOTIONS TO DISMISS

12

13    The Redondo Beach Defendants contend that Claims One and Two, which
14   challenge the constitutionality and specific enforcement of Municipal
15   Code section 4-35.20, respectively, should be dismissed pursuant to the
16   doctrine of Younger abstention. (RBD MTD at 2) (citing Younger v.
17   Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). The City
18   of Redondo Beach is currently prosecuting Plaintiff for a criminal
19   violation of section 4-35.20 based on the May 21, 2012 incident in which
20   Plaintiff carried an unloaded rifle in a City park. (Id.). The Redondo
21   Beach Defendants argue that because there are ongoing state judicial
22   proceedings which implicate important state interests and which will
23   provide Plaintiff an opportunity to assert his federal constitutional
24   challenges to the Ordinance, Younger requires this Court to refrain from
25   exercising subject matter jurisdiction over the claims against the
26

27   ────────────────
28   (overruling evidentiary objections as moot where it was not necessary
     for the court to consider the exhibits that were the subject of the
     objections).

Redondo Beach Defendants.  (Id. at 4-5).  The Redondo Beach Defendants also contend that Officer Heywood, Chief Leonardi, and Officer Doe are entitled to qualified immunity because "there is no existing precedent placing 'beyond debate' the question of whether the Ordinance the officers were enforcing violates the Second Amendment . . . ." (Id. at 9-10).  The Redondo Beach Defendants also contend that Plaintiff lacks Article III standing to challenge the Ordinance because even if the Ordinance were enjoined, Plaintiff would still be prohibited from openly carrying a loaded firearm under state law.  (Id. at 10).  The Redondo Beach Defendants also contend that the claims against them fail to state a claim under Rule 12(b)(6) because the Supreme Court has found that Second Amendment protects only the possession of handguns for self-defense within the home, but has not extended that right to possession of guns outside the home.  (Id. at 10-11).

Harris contends that Claims Three and Four, which challenge the constitutionality of Penal Code Sections 25850 and 26155, respectively, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Plaintiff lacks standing to assert his claims against the Attorney General.  According to Harris, Plaintiff fails to allege an injury-in-fact with respect to section 25850(a)'s prohibition on carrying a loaded firearm in public because he makes no "substantive allegations of ever having openly carried a loaded firearm in Redondo Beach (or anywhere else)."  (Harris MTD at 2-3; see also id. at 9-10).  For the same reasons, Harris claims that Plaintiff's challenge to section 25850(a) is unripe.  (Id. at 12-14).  Furthermore, Harris argues that Plaintiff fails to establish a causal nexus between the Attorney General and any alleged injuries arising from section

25850(b)'s warrantless search authorization because the search complained of in the FAC was conducted by City of Redondo Beach police officers, not the Attorney General or state actors under her control, and "any subsequent prosecution" for a misdemeanor violation of section 25850(b) would be undertaken by a prosecutor for the City of Redondo Beach. (Id. at 3, 10-11). Harris also argues that Plaintiff has failed to establish a causal nexus between the Attorney General and Plaintiff's alleged injuries under section 26155 because the Attorney General has "no role" in licensing decisions made pursuant to that statute. (Id. at 3, 11-12). Finally, Harris contends that all of Plaintiff's claims against the Attorney General are barred by the Eleventh Amendment. (Id. at 14-16).

## IV.

### STANDARDS GOVERNING MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. A motion under Rule 12(b)(1) can either be "facial," attacking a pleading on its face and accepting all allegations as true, or "factual," contesting the truth of some or all of the pleading's allegations as they relate to jurisdiction. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). The standards that must be applied vary according to the nature of the jurisdictional challenge.

Here, the challenge to jurisdiction is a facial attack. Defendants contend that the allegations of jurisdiction contained in the Complaint are insufficient on their face to demonstrate the existence of

jurisdiction. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. <u>See</u> <u>Sea Vessel Inc. v. Reyes</u>, 23 F.3d 345, 347 (11th Cir. 1994). The material factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1068 (9th Cir. 2011) ("'For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.'") (citations omitted).

Under Rule 12(b)(6), a defendant may also seek dismissal of a complaint for failure to state a claim. <u>See</u> <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept all factual allegations as true even if doubtful in fact. <u>Twombly</u>, 550 U.S. at 555-56.

A court considering a motion to dismiss must also decide, if it grants the motion, whether to grant leave to amend. Even when a request

11

to amend is not made, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to <u>pro se</u> plaintiffs." <u>Lira v. Herrera</u>, 427 F.3d 1164, 1176 (9th Cir. 2005) (internal quotation marks omitted).  If amendment of the pleading would be futile, leave to amend may be denied.  <u>See</u> <u>Ventress v. Japan Airlines</u>, 603 F.3d 676, 680 (9th Cir. 2010).

**V.**

**DISCUSSION**

In light of the pending criminal proceedings against Plaintiff for violation of City of Redondo Beach Municipal Code section 4-35.20, Plaintiff's claims against the Redondo Beach Defendants should be dismissed pursuant to the <u>Younger</u> abstention doctrine.  Claim One, which challenges the constitutionality of section 4-35.20, should be dismissed without prejudice.  Claim Two, which seeks damages for the Redondo Beach Defendants' enforcement of section 4-35.20, should be dismissed with prejudice as to the individually-named Redondo Beach Defendants on the ground of qualified immunity.  The remaining allegations against City of Redondo Beach in Claim Two should be dismissed with leave to amend to permit Plaintiff, if he is able, to identify an injury under section 4-35.20 that could be redressed even if Penal Code section 25850 is valid, and a specific City policy or practice that resulted in his alleged injuries.[5]  The Court finds that Plaintiff has standing to challenge

---

[5]  The Court notes that even if Plaintiff is able to allege facts stating a claim for damages against City of Redondo Beach arising from the enforcement of section 4-35.20, any such amended claim would still be subject to <u>Younger</u> abstention.  As it is unclear at this time whether

sections 25850 and 26155 against Attorney General Harris in Claims Three and Four and that suit against her is not barred by the Eleventh Amendment. However, because portions of the FAC fail to comply with Rule 8, the FAC should be dismissed with leave to amend.

**A.   The Claims Against The Redondo Beach Defendants**

     1.   **The <u>Younger</u> Abstention Doctrine Applies To Plaintiff's Claims Against The Redondo Beach Defendants**

The Redondo Beach Defendants contend that Claims One and Two, the only claims brought against them, should be dismissed pursuant to the doctrine of <u>Younger</u> abstention. (RBD MTD at 2). Claim One challenges the constitutionality of Municipal Code section 4-35.20, which prohibits, <u>inter alia</u>, carrying a firearm in a City park. (FAC at 35-36). Claim Two seeks damages against the Redondo Beach Defendants for actions taken in their enforcement of the Ordinance on May 21, 2012. (FAC at 35-36). According to the Redondo Beach Defendants, after Plaintiff filed the FAC on May 30, 2012, City of Redondo Beach filed misdemeanor charges against Plaintiff for violation of the Ordinance. (RBD MTD at 4). The Redondo Beach Defendants contend that because there are ongoing state judicial proceedings which implicate important state interests and which will provide Plaintiff an opportunity to challenge the constitutionality of the Ordinance under federal law, the Court should refrain from exercising subject matter jurisdiction over the

Plaintiff will be able to allege such facts, however, it is premature for the Court to take any action under <u>Younger</u> with respect to a claim for damages against City of Redondo Beach in Claim Two.

13

claims against them.   (Id. at 4-5).   Plaintiff argues that Younger abstention is not appropriate because his federal action had proceeded beyond the "embryonic" stage by the time state criminal charges were filed.  (Pl. RBD Opp. at 1-2).  Plaintiff further argues that "[t]here is absolutely no way the criminal court is going to allow plaintiff to present" a constitutional challenge to sections 25850 and 26155 in a misdemeanor trial for violation of a municipal code.  (Pl. RBD Opp. at 1-3).

Younger and its progeny "espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982).  Under the Younger abstention doctrine, federal courts are precluded from enjoining a state statute that is the basis for a pending criminal prosecution against the federal plaintiff.[6] Younger, 401 U.S. at 54; Steffel v. Thompson, 415 U.S. 452, 454, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974).  The duty to abstain under Younger is not jurisdictional but is premised on principles of equity and comity.  See Younger, 401 U.S. at 43-44.

Younger abstention is appropriate "when there is a pending state proceeding that implicates important state interests and provides the plaintiff with an opportunity to raise federal claims." Baffert v.

---

[6] Younger abstention originally applied only to federal cases in which criminal proceedings were pending in state court.  However, the Supreme Court has since held that the Younger doctrine is fully applicable when there are non-criminal judicial proceedings in state court.  See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-718, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996).

California Horse Racing Bd., 332 F.3d 613, 617 (9th Cir. 2003).   A
federal court considering whether to invoke Younger must therefore
examine whether: "(1) a state-initiated proceeding is ongoing; (2) the
proceeding implicates important state interests; (3) the federal
plaintiff is not barred from litigating federal constitutional issues in
the state proceeding; and (4) the federal court action would enjoin the
proceeding or have the practical effect of doing so, i.e., would
interfere with the state proceeding in a way that Younger disapproves."
San Jose Silicon Valley Chamber of Commerce Political Action Comm. v.
City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008).   When all four of
these requirements are met, federal courts must abstain because "'there
is no discretion vested in the district courts to do otherwise.'"   Id.
(quoting Green v. City of Tucson, 255 F.3d 1086, 1093 (9th Cir. 2001),
overruled in part by Gilbertson v. Albright, 381 F.3d 965 (9th Cir.
2004) (en banc)).   The only exception is when there is a showing of
prosecutorial bad faith, harassment, or some other extraordinary
circumstance that would make abstention inappropriate.   Middlesex County
Ethics Comm., 457 U.S. at 435; Steffel, 415 U.S. at 454.

    While the Younger abstention doctrine requires dismissal where
declaratory or injunctive relief is sought, and a federal court should
abstain from a damages claim where a necessary predicate of the claim
for damages undermines a necessary element in the pending state
proceeding, the court should stay, not dismiss, damages claims only
"until the state proceedings are completed."   Gilbertson, 381 F.3d at
968.   Additionally, where a plaintiff is seeking wholly prospective
relief from enforcement that would not interfere with an ongoing state
proceeding, Younger abstention is not appropriate.   See Wooley v.

1  *Maynard*, 430 U.S. 705, 711, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977)

2  (abstention inappropriate where plaintiff sought to enjoin only future

3  bad faith prosecutions under a statute, even though plaintiff had

4  previously been convicted of violating the statute).

6      The Court finds that the four factors requiring *Younger* abstention

7  are present with respect to Plaintiff's claims against the Redondo Beach

8  Defendants.    First, there exists an ongoing state proceeding.    Even

9  though City of Redondo Beach did not file charges against Plaintiff

10  until after this action, and indeed, the First Amended Complaint, were

11  filed, the first prong of the *Younger* abstention test is satisfied so

12  long as the state court proceedings are initiated "before any

13  proceedings of substance on the merits have taken place in federal

14  court." *Fresh Int'l Corp. v. Agric. Labor Relations Bd.*, 805 F.2d 1353,

15  1358 (9th Cir. 1986) (internal quotation marks omitted).    The instant

16  action has not progressed beyond the pleading stage.    Defendants have

17  not yet answered the FAC, no hearings have been held, and no contested

18  substantive matter has been decided.    Therefore, the first *Younger*

19  requirement is satisfied.

21      Furthermore, even if Plaintiff's criminal trial has by now been

22  completed, a fact not presently before the Court, a state proceeding is

23  deemed "pending" for the purposes of *Younger* abstention until state

24  appellate remedies are exhausted. *Dubinka v. Judges of Superior Court*

25  *of State of Cal. for County of Los Angeles*, 23 F.3d 218, 223 (9th Cir.

26  1994); *see also* New Orleans Pub. Serv., Inc. v. Council of City of New

27  *Orleans*, 491 U.S. 350, 369, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989)

28  ("'[A] necessary concomitant of *Younger* is that a party . . . must

exhaust his state appellate remedies before seeking relief in the District Court.'") (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 608, 95 S. Ct. 1200, 1208, 43 L. Ed. 2d 482 (1975)). Additionally, "[f]or Younger purposes . . . a party may not seek federal review by terminating the state judicial process prematurely -- forgoing the state appeal to attack a trial court's judgment in federal court." United States v. Morros, 268 F.3d 695, 710 (9th Cir. 2001). Therefore, Plaintiff's criminal case remains "pending" in state court for purposes of Younger abstention because Plaintiff has not yet exhausted his state appellate remedies. New Orleans Pub. Serv., Inc., 491 U.S. at 369.

Second, the pending state proceeding clearly implicates important state interests in enforcing criminal laws. "The key to determining whether comity concerns are implicated in an ongoing state proceeding —— and thus whether the second Younger requirement is met —— is to ask whether federal court adjudication would interfere with the state's ability to carry out its basic executive, judicial, or legislative functions." Potrero Hills Landfill, Inc. v. County of Solano, 657 F.3d 876, 883 (9th Cir. 2011). "Where the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake." Id. at 883-84. Indeed, Younger, which involved abstention due to a pending criminal proceeding, explicitly recognized that a state must be permitted to "enforce . . . laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution." Younger, 401 U.S. at 51-52.

The presumption of a state's vital interest in enforcing its laws is overcome "only under extraordinary circumstances," such as when the "'state proceeding is motivated by a desire to harass or is conducted in bad faith,' [or] the challenged provision is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it . . . .'" Potrero Hills Landfill, Inc., 657 F.3d at 884 n.9 (quoting Huffman, 420 U.S. at 611, and Younger, 401 U.S. at 53-54) (internal citations omitted)). Plaintiff does not argue that the City's charges were brought in bad faith. Indeed, Plaintiff alleges that he contacted the City to coordinate when and where he would openly carry a firearm within the City, including "through a place which is actually covered by the plain text of your city ordinance, a park," and that he anticipated being arrested for his actions. (FAC at 27-28). Furthermore, Plaintiff also impliedly concedes that section 4-35.20 would not violate "express constitutional provisions" when applied, for example, to a person who carries a machine gun in a city park. (See FAC at 33-34) ("Relief is not sought against any Federal law regulating the carrying or possession of firearms . . . and leaves over 30,000 lines of state statutes regulating the carrying, types of, or possession of firearms also unaffected."); see also United States v. Henry, 688 F.3d 637, 640 (9th Cir. 2012) ("[T]he Second Amendment does not apply to machine guns."). Therefore, Plaintiff has not established the existence of any "extraordinary circumstances" that would undermine the state's vital interest in enforcing its criminal laws, and the second Younger requirement is met.

1    Third, Plaintiff has not established that he is or will be barred
2    from raising federal constitutional challenges in the state proceedings.
3    The Supreme Court has noted that "where vital state interests are
4    involved, a federal court should abstain 'unless state law clearly bars
5    the interposition of the constitutional claims.'" Middlesex County
6    Ethics Commission, 457 U.S. at 432; see also Hirsh v. Justices of
7    Supreme Court of State of Cal., 67 F.3d 708, 713 (9th Cir. 1995)
8    ("Judicial review is inadequate [for Younger abstention purposes] only
9    when state procedural law bars presentation of the federal claims.")
10   (emphasis in original). California courts routinely hold that federal
11   constitutional protections apply to state misdemeanor trials. See,
12   e.g., Serna v. Superior Court, 40 Cal. 3d 239, 256, 219 Cal. Rptr. 420
13   (1985) (federal Sixth Amendment right to speedy trial is triggered by
14   filing of state misdemeanor complaint); In re Olsen, 176 Cal. App. 3d
15   386, 390-91, 221 Cal. Rptr. 772 (1986) ("The guarantees of the federal
16   Constitution do not apply exclusively to felony proceedings; one accused
17   of a misdemeanor [in state court] is accorded the due process right to
18   counsel . . . .") (internal citations omitted). Therefore, there is no
19   bar to Plaintiff's ability to raise a federal constitutional defense
20   during the underlying misdemeanor proceedings.

21

22   Furthermore, even if such a bar somehow existed in Plaintiff's
23   state misdemeanor trial, to satisfy Younger's third requirement, it is
24   sufficient that federal constitutional claims may be raised during state
25   court judicial review of the underlying proceeding. See Ohio Civil
26   Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 629, 106
27   S. Ct. 2718, 91 L. Ed. 2d 512 (1986); Fresh Int'l Corp. v. ALRB, 805
28   F.2d 1353, 1362 (9th Cir. 1986) (abstention applicable because plaintiff

1   "could have presented [its federal claim] to the court of appeal in its

2   petition for review").   In addition, a plaintiff's failure "to avail

3   itself of the opportunity to litigate its constitutional claim in the

4   state forum[] does not demonstrate that the state forum did not provide

5   an opportunity to litigate that claim." World Famous Drinking Emporium,

6   Inc. v. City of Tempe, 820 F.2d 1079, 1083 (9th Cir. 1987).   Therefore,

7   the third Younger requirement is met.

8

9        Fourth, granting the relief requested by Plaintiff would have the

10  practical effect of enjoining or interfering with ongoing state

11  proceedings.   See Amerisourcebergen Corp. v. Roden, 495 F.3d 1143, 1149

12  (9th Cir. 2007) (even if the first three elements for Younger abstention

13  "are satisfied, the court does not automatically abstain, but abstains

14  only if there is a Younger-based reason to abstain -- i.e., if the

15  court's action would enjoin, or have the practical effect of enjoining,

16  ongoing state court proceedings.").   A declaration by this Court that

17  section 4-35.20 violates the Second Amendment would "interfere" with the

18  state proceeding because it would effectively "enjoin . . . or otherwise

19  involve the federal courts in terminating or truncating" the state court

20  action.   San Jose Silicon Valley, 546 F.3d at 1096 (internal quotation

21  marks omitted).   Therefore, the fourth, and final, Younger requirement

22  is met.

23

24       Claim One seeks injunctive and declaratory relief against Defendant

25  City of Redondo Beach, including a declaration that the challenged City

26  Ordinances are unconstitutional.   (FAC at 35-36).   Because all of the

27  Younger requirements apply, dismissal of Claim One is mandatory.   San

28  Jose Silicon Valley, 546 F.3d at 1092.   It is therefore recommended that

20

Claim One be dismissed without leave to amend, but without prejudice. Claim Two seeks damages against Officer Heywood, Chief Leonardi, and City of Redondo Beach "for losses incurred as a result of the warrantless search . . . and for expenditures (fees/costs) associated with the defense of criminal charges . . . ." (FAC at 37). As further discussed below, dismissal of the claims against the individually-named Redondo Beach Defendants in Claim Two is appropriate on the ground of qualified immunity. (See Part V.A.2.). Furthermore, Plaintiff's claim for damages against City of Redondo Beach, as currently alleged, fails to state a claim and should be dismissed with leave to amend. (See Parts V.A.3-4.)  Should Plaintiff be able to allege facts stating a claim against City of Redondo Beach arising from its enforcement of section 4-35.20, however, a "necessary predicate" of any such amended claim for damages would "undermine[] a necessary element in the pending state proceeding," i.e., the validity of the City's prohibition on the carrying of firearms in certain public areas, and abstention would also be appropriate.  See Gilbertson, 381 F.3d at 968 (claims for damages are subject to Younger abstention).  However, because it is unclear whether Plaintiff will be able to state such a claim, the Court need not take any action at this time under Younger with respect to Plaintiff's claim for damages against City of Redondo Beach.

Finally, although the heading to Claim One indicates that Plaintiff's challenge is based on the Second, Fourth, and Fourteenth Amendments of the United States Constitution, (FAC at 35), it is unclear whether Plaintiff is also attempting to assert a state law claim with respect to section 4-35.20.  To the extent that Plaintiff is attempting to assert such a claim, pendent jurisdiction is not appropriate once the

21

court abstains from exercising jurisdiction over Plaintiff's federal claims.  <u>Les Shockley Racing, Inc. v. National Hot Rod Ass'n</u>, 884 F.2d 504, 509 (9th Cir. 1989); 28 U.S.C. § 1367(c)(3).  Therefore, it is recommended that the Court also dismiss any purported pendent state law claim in Claim One without prejudice.

**2.  Qualified Immunity Applies To Plaintiff's Damages Claims Against Chief Leonardi, Officer Heywood, And Officer Doe**

The Redondo Beach Defendants also contend that Chief Leonardi, Officer Heywood, and Officer Doe have qualified immunity protecting them from suit for damages because "there is no existing precedent placing 'beyond debate' the question of whether the Ordinance the officers were enforcing violates the Second Amendment . . . ."  (<u>Id.</u> at 9-10).  Plaintiff summarily argues that the "right to bear arms" has been enshrined in the Second Amendment for "well over two hundred years" and thus is "clearly established."  (Pl. RBD Opp. at 5).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  <u>Hopkins v. Bonvicino</u>, 573 F.3d 752, 762 (9th Cir. 2009) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)).  Indeed, "the 'driving

22

1   force' behind creation of the qualified immunity doctrine was a desire
2   to ensure that 'insubstantial claims' against government officials
3   [will] be resolved prior to discovery.'"   Pearson, 555 U.S. at 231
4   (quoting Anderson v. Creighton, 483 U.S. 635, 640, n.2, 107 S. Ct. 3034,
5   97 L. Ed. 2d 523 (1987)).

6

7       In analyzing whether qualified immunity applies, a court must
8   determine "whether, taken in the light most favorable to [Plaintiffs],
9   Defendants' conduct amounted to a constitutional violation, and . . .
10  whether or not the right was clearly established at the time of the
11  violation."   Bull v. City and County of San Francisco, 595 F.3d 964, 971
12  (9th Cir. 2010) (internal quotation marks omitted; brackets in
13  original).   "For a constitutional right to be clearly established, its
14  contours must be sufficiently clear that a reasonable official would
15  understand that what he is doing violates that right."   Hope v. Pelzer,
16  536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (internal
17  quotation marks omitted).   The Supreme Court has recently emphasized
18  that a finding that a government official's conduct violates clearly
19  established law requires that "existing precedent must have placed the
20  statutory or constitutional question beyond debate."   Aschroft v. al-
21  Kidd, __ U.S. __ , 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011).   A
22  court is not required to address these two inquiries in a particular
23  order, but may instead "exercise [its] sound discretion in deciding
24  which of the two prongs of the qualified immunity analysis should be
25  addressed first in light of the circumstances in the particular case at
26  hand."   Pearson, 555 U.S. at 226; see also Bull, 595 F.3d at 971.

27

28

23

1   The Court exercises its discretion to address the second prong of
2   the qualified immunity analysis, namely, whether the right Plaintiff
3   asserts to openly carry a firearm, whether loaded or unloaded, in a
4   public park was "clearly established" under the Second Amendment as of
5   May 21, 2012, when Plaintiff was stopped by Officer Heywood and Officer
6   Doe.  Even assuming, without deciding, for the limited purpose of the
7   qualified immunity analysis only, that a constitutional violation
8   occurred in the warrantless inspection and confiscation of Plaintiff's
9   long gun, the Court concludes that the right to openly carry a firearm
10  in a public park was not "clearly established" at the time of the
11  alleged violation and that the individually-named Redondo Beach
12  defendants are therefore entitled to qualified immunity from Plaintiff's
13  claim for money damages.

14

15  The Supreme Court has "recognized an individual right under the
16  Second Amendment . . . [and has] held that this right is fundamental and
17  is incorporated against states and municipalities under the Fourteenth
18  Amendment." Nordyke v. King, 681 F.3d 1041, 1043-44 (9th Cir. 2012)
19  (citing Dist. of Columbia v. Heller, 554 U.S. 570, 128 S. Ct. 2783, 171
20  L. Ed. 2d 637 (2008); McDonald v. City of Chicago, __ U.S. __, 130 S.
21  Ct. 3020, 177 L. Ed. 2d 894 (2010)). Heller explicitly recognized "the
22  right of law-abiding, responsible citizens to use arms in defense of
23  hearth and home." Heller, 554 U.S. at 635; see also McDonald, 130 S.
24  Ct. at 3050 ("In Heller, we held that the Second Amendment protects the
25  right to possess a handgun in the home for the purpose of
26  self-defense.") (plurality opinion). The Heller Court noted, however,
27  that "the right secured by the Second Amendment is not unlimited" and is
28  "not a right to keep and carry any weapon whatsoever in any manner

24

whatsoever and for whatever purpose." Heller, 554 U.S. at 626.  The
Heller Court specifically cautioned that "nothing in our opinion should
be taken to cast doubt on longstanding prohibitions on the possession of
firearms by felons and the mentally ill, or laws forbidding the carrying
of firearms in sensitive places such as schools and government
buildings, or laws imposing conditions and qualifications on the
commercial sale of arms," which it described as a list of "presumptively
lawful regulatory measures" that "does not purport to be exhaustive."
Id. at 626-27 & 627 n.26.

    Lower courts attempting to address the scope and application of
Second Amendment rights following Heller and McDonald have typically
emphasized that Heller "warns readers not to treat [the decision] as
containing broader holdings than the Court set out to establish:  that
the Second Amendment creates individual rights, one of which is keeping
operable handguns at home for self-defense." United States v. Skoien,
614 F.3d 638, 640 (7th Cir. 2010) (en banc).  As the Fourth Circuit
recently explained regarding "the dilemma faced by lower courts in the
post-Heller world:  how far to push Heller beyond its undisputed core
holding,"

        There may or may not be a Second Amendment right in some
        places beyond the home, but we have no idea what those places
        are, what the criteria for selecting them should be, what
        sliding scales of scrutiny might apply to them, or any one of
        a number of other questions.  It is not clear in what places
        public authorities may ban firearms altogether without
        shouldering the burdens of litigation.  The notion that

1    'self-defense has to take place wherever [a] person happens to

2    be,' Eugene Volokh, <u>Implementing the Right to Keep and Bear</u>

3    <u>Arms for Self-Defense: An Analytical Framework and a Research</u>

4    <u>Agenda</u>, 56 UCLA L. Rev. 1443, 1515 (2009), appears to us to

5    portend all sorts of litigation over schools, airports, parks,

6    public thoroughfares, and various additional government

7    facilities. And even that may not address the place of any

8    right in a private facility where a public officer effects an

9    arrest. The whole matter strikes us as a vast <u>terra incognita</u>

10   that courts should enter only upon necessity and only then by

11   small degree.

12

13   <u>United States v. Masciandaro</u>, 638 F.3d 458, 475 (4th Cir. 2011).

14

15   Due to this uncertainty, courts have proceeded cautiously when

16   addressing Second Amendment rights beyond the core right of possession

17   of a handgun in the home.  <u>See, e.g.</u>, <u>Kachalsky v. Cacace</u>, 817 F. Supp.

18   2d 235, 258 (S.D. N.Y. 2011) ("[<u>Heller</u>'s] emphasis on the Second

19   Amendment's protection of the right to keep and bear arms for the

20   purpose of 'self-defense in the home' permeates the Court's decision and

21   forms the basis for its holding -- which, despite the Court's broad

22   analysis of the Second Amendment's text and historical underpinnings, is

23   actually quite narrow."); <u>United States v. Tooley</u>, 717 F. Supp. 2d 580,

24   596 (S.D. W.Va. 2010) ("[P]ossession of a firearm outside of the home or

25   for purposes other than self-defense in the home are not within the

26   'core' of the Second Amendment right as defined by <u>Heller</u>."), <u>aff'd</u>, 468

27   Fed. Appx. 357 (4th Cir. 2012), <u>cert. denied</u>, __ S. Ct. __, 2012 WL

28   2132468 (Oct. 1, 2012); <u>United States v. Hart</u>, 726 F. Supp. 2d 56, 60

(D. Mass. 2010) ("<u>Heller</u> does not hold, nor even suggest, that concealed weapons laws are unconstitutional. . . . Therefore, it was not a violation of [defendant's] Second Amendment rights to stop him on the basis of the suspicion of a concealed weapon."), <u>aff'd</u> 674 F.3d 33 (1st Cir. 2012), <u>cert. denied</u> __ S. Ct. __, 2012 WL 2194023 (Oct. 1, 2012); <u>Sutterfield v. City of Milwaukee</u>, __ F. Supp. 2d __, 2012 WL 1534009 at *8 (E.D. Wis. Apr. 30, 2012) ("Neither <u>Heller</u> nor <u>McDonald</u> prohibit[s] the government from seizing firearms for certain purposes.") (internal citations omitted); <u>Osterweil v. Bartlett</u>, 819 F. Supp. 2d 72, 85 (N.D. N.Y. 2011) (state's firearm licensing scheme, which limits licenses to carry or possess firearms to state residents and non-residents employed in the state, does not offend Second Amendment).

In particular, courts have found that <u>Heller</u> did not reach, much less settle "beyond debate," the issue of whether and when open carry regulations are unconstitutional. <u>See, e.g.</u>, <u>Gonzalez v. Village of West Milwaukee</u>, 671 F.3d 649, 659 (7th Cir. 2012) ("Whatever the Supreme Court's decisions in <u>Heller</u> and <u>McDonald</u> might mean for future questions about open-carry rights, for now this is unsettled territory."); <u>United States v. Masciandaro</u>, 648 F. Supp. 2d 779, 788 (E.D. Va. 2009) ("[A]lthough <u>Heller</u> does not <u>preclude</u> Second Amendment challenges to laws regulating firearm possession outside the home, <u>Heller</u>'s dicta makes pellucidly clear that the Supreme Court's holding should not be read by lower courts as an invitation to invalidate the existing universe of public weapons regulations.") (emphasis in original) (footnotes omitted), <u>aff'd</u>, 638 F.3d 458, 470 (4th Cir. 2011) ("[W]e assume that any law that would burden the 'fundamental,' core right of self-defense in the home by a law-abiding citizen would be subject to

27

strict scrutiny.  But, as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense."), cert. denied, 132 S. Ct. 756, 181 L. Ed. 2d 482 (2011); Peruta v. County of San Diego, 758 F. Supp. 2d 1106, 1117 (S.D. Cal. 2010) (regulations restricting the carrying of firearms in public are constitutional so long as there is a reasonable fit between the regulation and a significant, substantial, or important governmental interest, such as interests "in public safety and in reducing the rate of gun use in crime").

In light of the continued uncertainty as to the scope of the rights accorded by the Second Amendment following the Supreme Court's recent decisions in Heller and McDonald, the Court concludes that the right to openly carry a firearm in a public park was not "beyond debate" at the time of the alleged violation such that a reasonable official would understand that enforcing a city ordinance that prohibits carrying a firearm in specified public areas was unconstitutional. Hope, 536 U.S. at 739.  As such, the individually-named Redondo Beach defendants are entitled to qualified immunity on Plaintiff's claims for damages in Claim Two.  See, e.g., Embody v. Ward, 695 F.3d 577, 581-2 (6th Cir. 2012) (ranger entitled to qualified immunity for stopping and temporarily disarming plaintiff for openly carrying a loaded pistol in a state park, even though such carrying was lawful under state law, because "[n]o court has held that the Second Amendment encompasses a right to bear arms within state parks"); Fisher v. Kealoha, __ F. Supp. 2d __, 2012 WL 1379320 at *18 (D. Hawaii Apr. 19, 2012) (police chief entitled to qualified immunity where the alleged right to a firearm ownership permit following a harassment conviction was not clearly

28

1   established); <u>Dorr v. Weber</u>, 741 F. Supp. 2d 993, 1005-06 (N.D. Iowa

2   2010) (sheriff entitled to qualified immunity for denying concealed

3   weapons permit because "a right to carry a concealed weapon under the

4   Second Amendment has not been recognized to date").[7]   Therefore, because

5   amendment of Claim Two would be futile as to the individually-named

6   Redondo Beach Defendants, <u>i.e.</u>, Chief Leonardi, Officer Heywood, and, to

7   the extent that Plaintiff is attempting to assert a claim against him,

8   Officer Doe, it is recommended that Claim Two be dismissed with

9   prejudice as to these Defendants.   See <u>Dougherty</u>, 654 F.3d at 901.

10   \\

11   \\

12   \\

13   \\

14   \\

15   \\

16   \\

17

18

19   _____

20        [7]  The FAC is not entirely clear as to whether Plaintiff is seeking
     damages in Claim Two for the RBD's allegedly unconstitutional acts in
21   the enforcement of Penal Code section 25850(b) as well as Municipal Code
     section 4-35.20.   Because Plaintiff is not charged with violating
22   section 25850 in the state criminal proceeding, <u>Younger</u> abstention does
     not apply to Plaintiff's challenges to that statute.   However, the
23   qualified immunity analysis remains the same whether Plaintiff's claims
     in Claim Two are predicated on the allegedly unconstitutional
24   authorization in section 25850(b) to conduct a warrantless firearm
     search or the allegedly unconstitutional prohibition on carrying a
25   firearm in a public park in section 4-35.20.   If, as the Court has
     found, it was not "beyond debate" in May 2012 that an ordinance
26   prohibiting the carrying of a firearm (whether loaded or unloaded) in a
     public park was constitutional, it necessarily follows that the
27   constitutionality of a statute prohibiting the open carry of a loaded
     firearm in public was also not "beyond debate."
28

**3.    Plaintiff Lacks Standing To Bring His Claims As Currently Alleged Against The Redondo Beach Defendants**

The Redondo Beach Defendants also contend that Plaintiff lacks standing to challenge section 4-35.20 because even if the Ordinance were enjoined, Plaintiff would still be prohibited from openly carrying a loaded firearm under state law. (Id. at 10). Therefore, it is not likely that Plaintiff's injury will be redressed by a favorable decision invalidating the Ordinance, as required under Article III standing jurisprudence. See Maya, 658 F.3d at 1067. Plaintiff argues that the Redondo Beach Defendants' "premise is faulty" because Plaintiff is "facing criminal charges and his long gun was seized as a result of plaintiff carrying an underloaded long gun in public -- not a loaded firearm." (Pl. RBD Opp. at 7). Furthermore, Plaintiff contends that enjoining the Ordinance "would simply require the Defendants to comply with the Second Amendment to the United States Constitution and the laws of the State of California . . . ." (Id.).

The Court agrees with the Redondo Beach Defendants that a favorable decision on Claims One and Two, as currently alleged, would not redress Plaintiff's purported injury if the state statutes that Plaintiff challenges in Claims Three and Four are allowed to stand. The City Ordinance at issue in Claims One and Two does not distinguish between loaded and unloaded firearms, different types of firearms, or open or concealed carrying of weapons, but simply makes it unlawful for "any person to use, carry, fire or discharge any firearm . . . or any other form of weapon across, in or into a park." Redondo Beach Municipal Code § 4-35.20, available at http://www.qcode.us/codes/redondobeach/. The

FAC plainly states that "[t]his case involves an important constitutional principle, that neither the state nor local governments may prohibit PLAINTIFF or The People from carrying a fully functional loaded firearm for the purpose of self-defense in public places." (FAC at 3). Therefore, to the extent that Plaintiff's purpose in filing suit is to vindicate his right to carry a loaded firearm in public, the invalidation of section 4-35.20 will not redress his injury if Penal Code section 25850, which prohibits carrying "a loaded firearm on the person or in a vehicle while in any public place," is permitted to stand. Consequently, as Plaintiff's claims are currently alleged, Plaintiff lacks standing to challenge section 4-35.20 because success on this claim will not ultimate redress his injury arising from the State's prohibition against carrying a loaded firearm.

### 4. The FAC Fails To State A Claim Against Defendant City Of Redondo Beach In Claim Two Pursuant To Rule 12(b)(6)

The Redondo Beach Defendants also contend that the claims against them fail to state a claim under Rule 12(b)(6) because the Supreme Court has found that the Second Amendment protects only the possession of handguns for self-defense within the home, but has not extended that right to conduct outside the home. (Id. at 10-11). Plaintiff argues that enjoining the City's Ordinance is consistent with the individual right to bear arms recognized in Heller and McDonald and with the "natural individual right to carry unloaded long guns in public" enjoyed by Californians for 162 years. (Pl. RBD Opp. at 8).

31

1    Although not specifically raised by the Redondo Beach Defendants,
2    the Court finds that Plaintiff's claim for damages against the sole
3    remaining Defendant in Claim Two, City of Redondo Beach, fails to state
4    a claim under Rule 12(b)(6).  (FAC at 36-37).  As the Court explained in
5    dismissing Plaintiff's original Complaint, a municipality is liable
6    under 42 U.S.C. § 1983 only if the plaintiff can establish that the
7    local government "had a deliberate policy, custom, or practice that was
8    the 'moving force' behind the constitutional violation he suffered."
9    Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007)
10   (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95, 98 S. Ct.
11   2018, 56 L. Ed. 2d 611 (1978)).  The FAC summarily alleges that "[i]t is
12   the policy and custom of Defendant CITY OF REDONDO BEACH to violate
13   PLAINTIFF's Second, Fourth, and Fourteenth Amendment Rights," but does
14   not identify the specific City policy or practice, as required by
15   Monell, that caused Plaintiff's alleged constitutional injuries.  (FAC
16   at 20).  Therefore, it is recommended that Plaintiff's Monell claim for
17   damages against the City of Redondo Beach be dismissed with leave to
18   amend.  However, the Court notes that if this claim is properly pled in
19   an amended complaint, it will likely be subject to Younger abstention.[8]

20
21   _____

22       [8]  The Court also finds that Plaintiff has failed to state a claim
     against Chief Leonardi in Claim Two because Plaintiff fails to show any
23   personal involvement by Chief Leonardi in the warrantless search of
     Plaintiff, the seizure of Plaintiff's property, or the criminal charges
24   brought against him, which are the only acts Plaintiff challenges in
     that Claim.  (See FAC at 37).  There is no supervisory liability under
25   section 1983.  Plaintiff must establish that the supervisor had personal
     involvement in the civil rights violation or that his specific action or
26   inaction caused the harm suffered.  Starr v. Baca, 652 F.3d 1202, 1205-
     06, (9th Cir. 2011).  This pleading defect is moot, however, because
27   Plaintiff's claims against Chief Leonardi should be dismissed on the
     ground of qualified immunity, as discussed in Part V.A.2.
28

32

1  **B.    The Claims Against The Attorney General**

2

3    **1.    Plaintiff Alleges An Injury-In-Fact In His Challenge To**
4          **Section 25850(a) And His Claim Is Ripe For Adjudication**

5

6    Harris contends that Plaintiff lacks standing to challenge section
7  25850(a)'s prohibition on carrying a loaded firearm in public because he
8  fails to allege an injury-in-fact.  According to Harris, Plaintiff makes
9  no "substantive allegations of ever having openly carried a <u>loaded</u>
10 firearm in Redondo Beach (or anywhere else)," but merely describes an
11 incident in which he was stopped by Redondo Beach police officers for
12 carrying an unloaded long gun in a park.  (Harris MTD at 2-3; <u>see also</u>
13 <u>id.</u> at 9-10).  Furthermore, Harris argues that "[n]o law-enforcement
14 official, including the Attorney General, has tried or threatened, or
15 even could possibly try, to enforce Section 25850(a) against [Plaintiff]
16 based on the facts alleged in the FAC."  (<u>Id.</u> at 9).  For the same
17 reasons, Harris claims that Plaintiff's challenge to section 25850(a) is
18 unripe. (<u>Id.</u> at 12-14).  Plaintiff argues that he is not required to
19 expose himself to the threat of prosecution to establish an injury-in-
20 fact.  (Pl. Harris Opp. at 3).

21

22    As the Court has previously explained in dismissing Plaintiff's
23 original Complaint, to establish Article III standing, a plaintiff must
24 show that (1) he "has suffered an 'injury in fact' that is (a) concrete
25 and particularized and (b) actual or imminent, not conjectural or
26 hypothetical; (2) the injury is fairly traceable to the challenged
27 action of the defendant; and (3) it is likely, as opposed to merely
28 speculative, that the injury will be redressed by a favorable decision."

_Maya_, 658 F.3d at 1067 (internal quotation marks omitted).  Because Plaintiff has not been arrested, prosecuted, or incarcerated for violating section 25850, he must satisfy the criteria for an injury-in-fact that apply to pre-enforcement challenges to statutes regulating conduct.  Plaintiff "must show a genuine threat of imminent prosecution," not the "mere possibility of criminal sanctions."  San Diego Cnty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996) (internal quotation marks omitted; emphasis in original).  "In evaluating the genuineness of a claimed threat of prosecution, [the court] look[s] to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute."  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

Unlike the original Complaint, in which Plaintiff alleged merely that he "would openly carry a loaded and functional handgun in public for the purpose of self-defense" but for his fear of arrest and prosecution, (Complaint, Dkt. No. 1 at 6), the FAC alleges that Plaintiff has "often carried a firearm within California in violation of California statutes including, but not limited to, California Penal Code Section 25850" and that he plans on continuing to do so "for as long as he is physically able to carry a loaded and/or unloaded firearm in violation of California statutes and city ordinances which prohibit the carrying of firearms."[9]  (FAC at 15).  More specifically, the FAC also

--------

[9]  Harris argues that the Court should ignore Plaintiff's "sudden" claims in the FAC that he has violated section 25850 "countless" times

alleges that Plaintiff "will continue to violate California Penal Code Section 25850, the Redondo Beach City Ordinances and other California statutes prohibiting firearms from being carried in public places on the 7th day of every month in the City of Redondo Beach, California by carrying a firearm (a holstered handgun, rifle, or shotgun of a type in common use by the public) in a public place. . . . Plaintiff will openly carry a loaded holstered handgun, loaded rifle and loaded shotgun of a type in common use by the public while traveling within the state of California." (Id. at 12).

    The Court finds that although Plaintiff has not been arrested or charged with a violation of section 25850, he has sufficiently alleged an injury-in-fact.  The Supreme Court has instructed that a plaintiff challenging the constitutionality of a criminal statute need not "first expose himself to actual arrest or prosecution" but must establish Article III standing by "alleg[ing] an intention to engage in a course

---

because "they contradict [Plaintiff's] prior sworn statement in this case denying having openly carried firearms in public in California when and where unlawful to do so." (Harris MTD at 9).  In a Declaration submitted in connection with his oppositions to the motions to dismiss the original Complaint, Plaintiff asserted that he has openly carried a loaded handgun when and where it was lawful to do so but "do[es] not openly carry a loaded handgun or long gun in non-sensitive public places because [he] would in all certainty be arrested, prosecuted, fined and imprisoned for doing so." (Decl. of Charles Nichols, Dkt. No. 21, at 4).  Plaintiff's current allegations concerning his past violations of section 25850 may arguably, but not necessarily, be at odds with his previous allegations and assertions under oath.  However, the Ninth Circuit has instructed that "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations.  Unless there is a showing that the party acted in bad faith —- a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11 -— inconsistent allegations are simply not a basis for striking the pleading." PAE Gov't Serv., Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007).

of conduct arguably affected with a constitutional interest, but proscribed by a statute," and demonstrating that "there exists a credible threat of prosecution thereunder." <u>Babbitt v. United Farm Workers</u>, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979). The FAC clearly describes Plaintiff's plan to openly carry a loaded firearm in public in violation of California law, not a mere "general intent to violate a statute at some unknown date in the future." <u>Thomas</u>, 220 F.3d at 1139. Furthermore, Plaintiff's fear of prosecution is "more than a 'generalized grievance shared in substantially equal measure by . . . a large class of citizens'" who may also desire to violate the challenged statute. <u>National Rifle Assoc. of America v. Magaw</u>, 132 F.3d 272, 294 (6th Cir. 1997) (citations omitted). Plaintiff is facing charges for carrying a firearm in public and his long gun was searched and seized by authorities. While the firearm in the incident alleged was not loaded, it is simply not reasonable to conclude that Plaintiff somehow would not have been charged had he carried a loaded weapon, and indeed, it is likely that the charges would have been more serious than the violation of a City Ordinance. <u>See</u> <u>Leverett v. City of Pinellas Park</u>, 775 F.2d 1536, 1539 (11th Cir. 1985) (plaintiffs' past arrests under statutes and ordinances "similar" to challenged ordinances, combined with their "direct, authentic and continuing interest in engaging in the conduct prohibited" by the challenged ordinances were sufficient to establish standing because plaintiffs "had reason other than the mere existence of the challenged ordinances to fear prosecution," even though plaintiffs had neither violated nor received a "specific threat of prosecution under" those ordinances). Plaintiff's injury is sufficiently particularized.

36

For the same reason, Plaintiff's challenge to section 25850(a) is ripe. Ripeness is a question of timing intended to "prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract agreements." Thomas, 220 F.3d at 1138 (quoting Abbott Laboratories v. Gardner, 387 U.S. 13, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)). "[I]n many cases, ripeness coincides squarely with standing's injury-in-fact prong. . . . [I]n measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." Thomas, 220 F.3d at 1138-39. Because Plaintiff has sufficiently established a pre-enforcement injury-in-fact, his challenge to section 25850(a) is ripe for adjudication.

### 2. Plaintiff Alleges A Causal Nexus Between His Alleged Injuries Under Section 25850(b) And The Attorney General

Harris also argues that Plaintiff also lacks standing because he has failed to establish a causal nexus between the Attorney General and any alleged injuries arising from section 25850(b)'s authorization of warrantless firearm searches. According to Harris, the search complained of in the FAC was conducted by City of Redondo Beach police officers, not the Attorney General or her subordinates, and "any subsequent prosecution" for a misdemeanor violation of subsection (b) would be undertaken by City of Redondo Beach City Prosecutor. (Id. at 3, 10-11). Plaintiff generally asserts that he has standing, without directly addressing Harris's specific argument. (See Pl. Harris Opp. at 1-3).

37

1    "To survive a motion to dismiss for lack of constitutional
2    standing, plaintiffs must establish a 'line of causation' between
3    defendants' action and their alleged harm that is more than
4    'attenuated.'  A causal chain does not fail simply because it has
5    several 'links,' provided those links are 'not hypothetical or tenuous'
6    and remain 'plausible.'"  <u>Maya</u>, 658 F.3d at 1070 (internal citations and
7    alterations omitted).  However, "if it appears that plaintiff's alleged
8    injuries are the result of conduct of a third person not a
9    party-defendant, or the result of other circumstances not within the
10   control of the defendant, there can be no finding that a sufficient
11   causal nexus exists between the plaintiff's alleged injuries and the
12   defendant's challenged conduct."  <u>NAACP v. State of California</u>, 511 F.
13   Supp. 1244, 1261 (E.D. Cal. 1981).

14

15   According to Harris, the City of Redondo Beach City Attorney is
16   required to prosecute state-law misdemeanors occurring in Redondo Beach.
17   (Harris MTD at 10).  Therefore, because violation of section 25850 is,
18   with certain exceptions not relevant here, a misdemeanor, Harris
19   contends that there is "no connection" to the Attorney General and that
20   an "injunction against the Attorney General in this regard would not
21   redress any alleged injury" to Plaintiff.  (<u>Id.</u> at 10-11); <u>see also</u> Cal.
22   Penal Code § 25850(c).  Harris's arguments are based on two errors.  The
23   first is that "any prosecution" of Plaintiff for violation section
24   25850(b) "would be handled by the Redondo Beach City Prosecutor."  (<u>Id.</u>
25   at 10).  The FAC describes Plaintiff's intent to violate section
26   25850(b) by refusing to consent to warrantless searches not only in City
27   of Redondo Beach, but also throughout the State of California while
28   traveling.  (FAC at 12).  Therefore, not every prosecution of Plaintiff

for the violations of state law he alleges would necessarily be handled by the City of Redondo Beach City Attorney, or even another city attorney.  Even in Los Angeles County, for example, in most cities it is the district attorney, not the city attorney, who is responsible for prosecuting misdemeanor violations of state law.  (See Harris MTD at 10 (citing http://da.lacounty.gov/lacountycities.htm)).

Harris's second error is the contention that the Attorney General has "no connection" to prosecutions of state law misdemeanors undertaken by a city prosecutor.  As a preliminary matter, and as the Court previously noted in connection with Harris's first motion to dismiss, the California Attorney General is the "head of the Department of Justice" and "has charge, as attorney, of all legal matters in which the state is interested."  Cal. Gov't Code §§ 12510 & 12511.  The Attorney General has particularly broad responsibility and expansive powers in the enforcement of criminal law, and may "take full charge of any investigation or prosecution of violations of the law," with "all the powers of a district attorney."  Cal. Gov't Code § 12550; see also Pitts v. County of Kern, 17 Cal. 4th 340, 357, 70 Cal. Rptr. 2d 823 (1998) (California Constitution, Art. V, sec. 13, "confers broad discretion upon the Attorney General to determine when to step in and prosecute a criminal case") (internal quotation marks omitted).  The Ninth Circuit has found that where a state Attorney General may assume the role of district attorney, the Attorney General has a sufficient connection to the enforcement of the state's criminal laws to be a proper defendant in suits challenging their constitutionality.  Planned Parenthood of Idaho v. Wasden, 376 F.3d 908, 919-20 (9th Cir. 2004).

California law authorizes charter cities to charge their city attorney with the duty to prosecute misdemeanor offenses arising out of violations of state laws.  Cal. Gov't Code § 72193; see also 79 Ops. Cal. Atty. Gen 46, 1996 WL 272279 at *1 (May 20, 1996) ("[T]he prosecution of all state laws, including state misdemeanor offenses, is a matter of statewide concern, wherever committed.  Accordingly, it is only through legislative authorization that a city prosecutor, whether in a general law or charter city, may prosecute state misdemeanors.").  City of Redondo Beach is a charter city.  See http://www.redondo.org/ in_the_city/default.asp.  Pursuant to the City's Charter, the City Attorney is required to "[p]rosecute on behalf of the People any and all criminal cases arising from violations of this Charter or city ordinances" and "violations of State misdemeanors, unless otherwise directed by the City Council."  Redondo Beach City Charter, sec. 11.2(c), available at http://www.qcode.us/codes/redondobeach/.

The delegation of authority to the City of Redondo Beach City Attorney to prosecute state law misdemeanors does not mean, however, that the state abdicates all responsibility for misdemeanor prosecutions to city attorneys, even in City of Redondo Beach.  As the California Attorney General explained, when and if:

> a city prosecuting attorney may be disqualified or for some reason be unable to conduct the prosecution of a particular criminal action involving the commission of a state penal law, then it would be the duty of the district attorney to conduct such prosecution.  Likewise, it would be [the district attorney's] duty to prosecute in the municipal and justice

40

courts when the laws of this state are not being uniformly and adequately enforced.

79 Ops. Cal. Atty. Gen 46 at *2 (quoting 20 Ops. Cal. Atty. Gen 234 (1952) (internal quotation marks omitted)). Therefore, as the Attorney General explained, "when the provisions of [California Government Code] section 72193 are implemented by a charter city, the city attorney has the primary duty of prosecuting state misdemeanors within the city, with the district attorney acting in a subsidiary or 'backup' role." Id.

"A causal chain does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausible.'" Maya, 658 F.3d at 1070. Consequently, because the California Attorney General may stand in for a county district attorney and "take full charge" of any prosecution, and because a district attorney may in some circumstances prosecute state misdemeanors even in charter cities like City of Redondo Beach, there is a sufficient causal nexus between the Attorney General and Plaintiff's alleged injuries under section 25850(b) to confer standing.

**3.   Plaintiff Has Standing To Challenge Section 26155**

Harris argues that because Plaintiff does not allege that he has applied for a permit to carry a firearm with the "proper licensing authority where [Plaintiff] lives," he has "not attempted to show that he would qualify for consideration for a permit" and therefore lacks standing. (Harris MTD at 11). In addition, Harris argues that the Attorney General's limited responsibilities in connection with section

41

26155's firearm permit application process, which consist only of preparing the statewide uniform application form and reporting upon receipt of an applicant's fingerprints as to whether or not the applicant is prohibited from possessing a firearm, "are inapposite in this case." (Id. at 11-12). Plaintiff argues that the Attorney General does have a causal nexus with his injuries under section 26155 because when Chief Leonardi informed Plaintiff that he could not issue Plaintiff a permit, "[t]he obvious inference . . . is that the Attorney General's office reported to the Redondo Beach chief of police that plaintiff 'is prohibited by state or federal law from possessing a firearm.'" (Pl. Harris Opp. at 3).

Section 26155 authorizes local police chiefs to issue licenses to residents of their city to carry firearms within the state of California.  Cal. Penal Code § 26155(a).  The license may be either to carry a concealed weapon, or, if the city is located in a county of fewer than 200,000 persons, to openly carry a loaded pistol, revolver, or other firearm capable of being concealed, in which case the open carry permit is valid only in the issuing county.  Cal. Penal Code § 26155(b).  If Plaintiff's claim were that section 26155's residency requirement improperly prevented him from obtaining a concealed weapon permit, the Court agrees with Harris that Plaintiff's failure to apply for a license within his city of residence would be fatal to his standing to challenge the statute.  A concealed weapon permit under section 26155 is a state license, and Plaintiff would have indeed failed to establish that he did not qualify for such a permit if he had applied only in City of Redondo Beach.

42

1    However, Plaintiff's challenge to section 26155 in Claim Four is

2 that the statute is unconstitutional "to the extent that it restricts

3 licenses to openly carry a loaded handgun only to persons within

4 counties of a population of fewer than 200,000 persons which is valid

5 only in those counties, to only those residents who reside within those

6 counties . . . [and] thereby prohibit[s] Plaintiff from obtaining a

7 license to openly carry a loaded handgun for the purpose of self-defense

8 afforded to similarly situated persons [in rural counties] . . . ."

9 (FAC at 39).  Because Plaintiff lives in the city of Lawndale in Los

10 Angeles County, http://www.lawndalecity.org/home.asp, even if he had

11 applied to the Lawndale Police Chief, he would not have been able to

12 obtain a permit to openly carry a loaded gun under existing law.  Any

13 such "attempt[] to show that he would qualify for consideration for [an

14 open carry] permit" would have been denied for the same reason Chief

15 Leonardi gave to Plaintiff:  cities in Los Angeles County may not issue

16 open carry permits.  (Harris MTD at 11; FAC at 30-31).  That Plaintiff

17 applied for an open carry permit, and was denied at least in part on the

18 ground that cities in Los Angeles County, unlike cities in more rural

19 counties, are prohibited from issuing open carry permits, is sufficient

20 to establish standing.  See, e.g., Breiner v. Nevada Dept. of

21 Corrections, 610 F.3d 1202, 1206-07 (9th Cir. 2010) (male correctional

22 officer challenging employment policy of state department of corrections

23 of hiring only female correctional lieutenants at women's prison not

24 required to submit application to women's prison to establish standing).

25

26    Furthermore, while the Attorney General may not have a substantial

27 role in issuing an individual applicant a license to carry a firearm

28 under section 26155, the statute's restriction of open carry licenses to

43

residents of counties with fewer than 200,000 persons does not entail individualized decision-making.    It is well established that "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." <u>Snoeck v. Brussa</u>, 153 F.3d 984, 986 (9th Cir. 1998).  However, "no . . . special charge need be found directly in the challenged statute to meet the requisite 'some connection' so long as there is sufficient indicia of the defendant's enforcement powers found elsewhere in the laws of the state." <u>Okpalobi v. Foster</u>, 244 F.3d 405, 419 (5th Cir. 2001) (en banc).  If a municipal employee or police chief in Los Angeles County unlawfully issued an open carry permit to a local resident, the Attorney General or county district attorney would undoubtedly have the power to take appropriate action.  It is sufficient for standing purposes that the Attorney General is charged with the enforcement of the state's criminal laws, including section 26155, and has broad powers to do so.

### 4.    Eleventh Amendment

Finally, Harris contends, as she did in moving to dismiss Plaintiff's original complaint, that all of Plaintiff's claims against the Attorney General are barred by the Eleventh Amendment.  (Harris MTD at 14-16).

The Eleventh Amendment generally "prohibit[s] federal courts from hearing suits brought by private citizens against state governments without the state's consent." <u>Sofamor Danek Group, Inc. v. Brown</u>, 124 F.3d 1179, 1183 (9th Cir. 1997).  Pursuant to <u>Ex Parte Young</u>, however,

44

an exception is made for suits against state officers for prospective declaratory or injunctive relief to enjoin official actions that violate federal law.  Id. (citing Ex Parte Young, 209 U.S. 123, 155-56, 28 S. Ct. 441, 52 L. Ed. 714 (1908)).  This exception is "predicated on the notion that a state cannot authorize one of its agents to violate the Constitution and laws of the United States," so a "state officer acting in violation of federal law is considered stripped of his official or representative character" and is "not shielded from suit by the state's sovereign immunity."  Sofamor Danek Group, Inc., 124 F.3d at 1183 (internal quotation marks omitted).  The "obvious fiction" of Ex Parte Young, however, is subject to several constraints.  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997).  Among those constraints is the requirement that "the state official sued 'must have some connection with the enforcement of the act' to avoid making that official a mere representative of the state."  Culinary Workers Union, Local 226 v. Del Papa, 200 F.3d 614, 619 (9th Cir. 1999) (quoting Ex Parte Young, 209 U.S. at 157).

    While state law determines "whether and under what circumstances a particular defendant has any connection with the enforcement of the law of that state . . . it is a question of federal jurisdictional law whether the connection is sufficiently intimate to meet the requirements of Ex Parte Young."  NAACP, 511 F. Supp. at 1261 (quoting Shell Oil Company v. Noel, 608 F.2d 208, 211 (1st Cir. 1979)).  As discussed above, the Ninth Circuit has found that where, as in California, a state attorney general may "stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have," a sufficient connection is established for the Ex Parte

45

1  *Young* exception to apply.  <u>Planned Parenthood of Idaho</u>, 376 F.3d at 919-
2  20.  Consequently, the Eleventh Amendment does not prohibit Plaintiff's
3  claims for declaratory or injunctive relief against Harris.

4

5  **C.   Portions Of The FAC Violate Federal Rule Of Civil Procedure 8**

6

7       Federal Rule of Civil Procedure 8(a)(2) requires that a complaint
8  contain "'a short and plain statement of the claim showing that the
9  pleader is entitled to relief,' in order to 'give the defendant fair
10  notice of what the . . . claim is and the grounds upon which it rests.'"
11  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167
12  L. Ed. 2d 929 (2007).  Rule 8(e)(1) instructs that "[e]ach averment of
13  a pleading shall be simple, concise, and direct."  A complaint violates
14  Rule 8 if a defendant would have difficulty responding to the complaint.
15  <u>Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.</u>, 637 F.3d
16  1047, 1059 (9th Cir. 2011).

17

18       Although the Court has found that Plaintiff has standing to
19  challenge sections 25850 and 26155, portions of the FAC do not comply
20  with the standards of Rule 8.  Plaintiff's rambling allegations, many of
21  which may or may not have been intended to relate to Claims Three and
22  Four, often include irrelevant and unclear facts and argument.  As the
23  Court has noted, it is even sometimes difficult to determine the precise
24  right that Plaintiff is seeking to vindicate.  The FAC therefore fails
25  to provide fair notice of some of the claims in a short, clear and
26  concise statement.  <u>See</u> <u>Twombly</u>, 550 U.S. at 555.  Accordingly, it is
27  recommended that the FAC be dismissed with leave to amend and that in

28

any amended complaint, Plaintiff must comply with the standards of Rule 8.

## VI.

### RECOMMENDATION

Consistent with the foregoing, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) GRANTING the City of Redondo Beach Defendants' Motion to dismiss by (a) dismissing Claim One without prejudice pursuant to the Younger abstention doctrine, as well as any purported pendent state law preemption claims; (b) dismissing the claims against the individual Redondo Beach Defendants in Claim Two with prejudice on the ground of qualified immunity; and (c) dismissing the damages claim against City of Redondo Beach in Claim Two with leave to amend; (3) DENYING Attorney General Harris's Motion to Dismiss; and (4) ORDERING Plaintiff to file a Second Amended Complaint within thirty (30) days of the District Judge's Order accepting the Report should Plaintiff wish to pursue this action.

DATED:  November 20, 2012

                                        /S/
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE

47

**<u>NOTICE</u>**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.