KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 897-6505
  Fax:  (213) 897-1071
  E-mail:  jonathan.eisenberg@doj.ca.gov
*Attorneys for Defendants California Attorney General Kamala D. Harris*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION (SPRING STREET)

| | |
|---|---|
| **CHARLES NICHOLS,**<br><br>                        Plaintiff,<br><br>v.<br><br>**EDMUND G. BROWN, Jr., in his official capacity as Governor of California, KAMALA D. HARRIS, Attorney General, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,**<br><br>                        Defendants. | CV-11-09916 SJO (SS)<br><br>**DEFENDANT KAMALA D. HARRIS'S OBJECTIONS TO NOVEMBER 20, 2012 REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**<br><br>Date:        N/A<br>Time:       N/A<br>Courtroom: 23 – 3rd Flr.<br>Judge:      Hon. Suzanne H. Segal<br>Trial Date: Not Set<br>Action Filed: Nov. 30, 2011 |

# TABLE OF CONTENTS

**Page**

Background ........................................................................................................... 1
Point Of Agreement With The R & R ................................................................. 2
Points Of *Dis*agreement With The R & R ........................................................... 2
    I.    Nichols Has Not Established Article III Standing For His Putative Section 25850 Challenge As Against The Attorney General ................................................................................................. 3
        A.    Nichols Has Not Established The Requisite Injury-In-Fact Via A Concrete Plan To Violate Section 25850 ........................ 3
            1.    The "Past-Acts" Allegation ................................................. 4
                a.    Does Not Support Standing For Nichols ................ 4
                b.    Should Not Be Presumed True ............................... 4
            2.    The Future "Traveling" Plan ............................................... 5
            3.    The "7th-of-the-Month" Plan .............................................. 6
                a.    Does Not Necessarily Implicate Section 25850 ..................................................................... 6
                b.    Has Too Speculative A Link To Enforcement Of Section 25850 ....................................................... 7
        B.    Nichols Has Not Demonstrated the Requisite Genuine Threat of Imminent Attorney General Prosecution Under Section 25850 ......................................................................... 8
            1.    Nichols Does Not Meet Two Of The Three Case-Law Requirements .............................................................. 8
            2.    Enforcement Is Only, At Best, A Theoretical Possibility ............................................................................. 9
    II.    Nichols Has Not Established Standing For His Putative Section 26155 Challenge As Against The Attorney General ........................... 11
    III.    The Eleventh Amendment Immunizes The Attorney General From Nichols's Lawsuit ................................................................. 13
Conclusion ......................................................................................................... 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Am.-Arab Antidiscrimination Comm. v. Thornburgh*
   970 F.2d 501 (9th Cir. 1991) ................................................................... 10, 12

*Coalition for a Sustainable Delta v. McCamman*
   725 F. Supp. 2d 1162 (E.D. Cal. 2010) ............................................................ 6

*Culinary Workers Union, Local 226 v. Del Papa*
   200 F.3d 614 (9th Cir. 1999) ........................................................................... 13

*Data Disc, Inc. v. Sys. Tech. Assocs.*
   557 F.2d 1280 (9th Cir. 1977) ....................................................................... 4, 5

*Ex Parte Young*
   209 U.S. 123 (1908) ...................................................................................... 11, 12

*Humanitarian Law Project v. U.S. Treasury Dep't*
   578 F.3d 1133 (9th Cir. 2009) ............................................................................ 10

*Ibrahim v. Dep't of Homeland Sec.*
   669 F.3d 983 (9th Cir. 2012) ................................................................................ 5

*Leverett v. City of Pinellas Park*
   775 F.2d 1536 (11th Cir. 1985) ..................................................................... 9, 10

*Maya v. Centex Corp.*
   658 F.3d 1060 (9th Cir. 2011) ............................................................................ 11

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*
   676 F.3d 829 (9th Cir. 2012) .................................................................. 4, 6, 7, 9

*Okpalobi v. Foster*
   244 F.3d 405 (5th Cir. 2001) .............................................................................. 11

*PAE Gov't Serv., Inc. v. MPRI, Inc.*
   514 F.3d 856 (9th Cir. 2007) ........................................................................... 4, 5

*Planned Parenthood of Idaho v. Wasden*
   376 F.3d 908 (9th Cir. 2004) ................................................................................ 9

*San Diego Cnty. Gun Rights Comm. v. Reno*
   98 F.3d 1121 (9th Cir. 1996) ................................................................................ 9

# TABLE OF AUTHORITIES
# (continued)

Page

*Societe de Conditionnement en Aluminium v. Hunter Eng'g, Inc.*
   655 F.2d 938 (9th Cir. 1981) ............................................................... 4, 5

*Stormans, Inc. v. Selecky*
   586 F.3d 1109 (9th Cir. 2009) ............................................................. 1, 5

*Summers v. Earth Island Inst.*
   555 U.S. 488 (2009) ............................................................................. 4, 6

*Sweat v. Hull*
   200 F. Supp. 2d 1162 (D. Ariz. 2001) ................................................... 12

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000) ................................................. 3, 4, 5, 8, 9

*Wilderness Soc., Inc. v. Rey*
   622 F.3d 1251 (9th Cir. 2010) ................................................................. 6

*Wolfson v. Brammer*
   616 F.3d 1045 (9th Cir. 2010) ............................................................... 10

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. I ................................................................................. 10

U.S. Const. Amend II ................................................................................. 10

U.S. Const. Amend. XI ................................................................... 1-2, 3, 13

**STATUTES AND ORDINANCES**

Cal. Penal Code § 25850 ..................................................................... Passim

Cal. Penal Code § 26155 ..................................................................... Passim

Redondo Beach Municipal Code § 4-35.20 ............................................ 7, 9

**COURT RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 1

**BACKGROUND**

In the present case, Plaintiff Charles Nichols ("Nichols") attempts to challenge the constitutionality of two Redondo Beach ordinances and two longstanding California statutes. The municipal ordinances purportedly outlaw Nichols from openly carrying or using any firearm in any park in Redondo Beach. Apparently, Nichols is presently being prosecuted for openly carrying an unloaded shotgun in a Redondo Beach park in May 2012, contrary to these ordinances.

The California statutes in question may apply to situations that Nichols alleges could happen in the future. The first pertinent state law, California Penal Code section 25850 ("Section 25850"), generally bans the open carrying of *loaded* firearms in public places or in motor vehicles, and empowers peace officers to examine such firearms to determine whether they are loaded. The second pertinent state law, California Penal Code section 26155 ("Section 26155"), sets forth the procedures and rules for local law-enforcement officials to follow in granting other people licenses to carry concealed firearms or, in certain circumstances, to carry firearms openly. Nichols apparently claims that these two statutes unconstitutionally hinder his alluded-to future plans to carry loaded firearms openly within Los Angeles County.

Defendant California Attorney General Kamala D. Harris (the "Attorney General"), a named defendant in the challenge to the California statutes only, and indisputably a non-participant in any events or incidents cited in Nichols's original complaint or first amended complaint (the "FAC"), moved pursuant to Federal Rule of Civil Procedure 12(b)(1) to have the claims for relief against the Attorney General dismissed. The Attorney General asserted that Nichols' allegations about possible *future* application of the challenged state statutes did not constitute a "case-or-controversy" under Article III of the U.S. Constitution (*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009)), and that the Eleventh Amendment to

the U.S. Constitution immunizes the Attorney General from this lawsuit. Nichols opposed the dismissal motion, and the Attorney General submitted a reply.

On November 20, 2012, Chief U.S. Magistrate Judge Suzanne H. Segal issued a report and recommendation (the "R & R") to deny the Attorney General's dismissal motion. In a separate minute order issued that same day, Judge Segal provided that, by December 4, 2012, any party may file with Judge Segal and serve on the other litigants written objections to the R & R for consideration by the Court.

The Attorney General now submits objections to certain parts of the R & R, and reiterates the request that the Court grant the dismissal motion.

## POINT OF AGREEMENT WITH THE R & R

The Attorney General does *not* object to, and indeed supports, Judge Segal's recommendation that the Court order Nichols to file a second amended complaint in this case. (R & R at 2:33-3:5.) The Attorney General further agrees with Judge Segal's finding that it is unclear whether many of Nichols's allegations relate to the claims against the Attorney General, such that the allegations fail to provide "fair notice" of those claims. (R & R at 46:19-46:26.)

The Attorney General respectfully submits, however, that the confusion stemming from Nichols's poorly-pleaded claims led to errors in the R & R's analysis of the Attorney General's substantive dismissal arguments. The Attorney General also contends that it is unfair to deny the Attorney General's motion to dismiss the FAC, given that Judge Segal recognizes that the FAC is so unclear as to fail to give the Attorney General fair notice of Nichols's claims.

## POINTS OF *DIS*AGREEMENT WITH THE R & R

The Attorney General objects to several other parts of the R & R, specifically the parts advocating that Nichols has "Article III" standing for his putative Section 25850 and Section 26155 challenges as against the Attorney General (R & R at 33-

41 (Section 25850) and 41-44 (Section 26155)), and that the Eleventh Amendment does not immunize the Attorney General from this lawsuit. (R & R at 44-46.)

I. **NICHOLS HAS NOT ESTABLISHED ARTICLE III STANDING FOR HIS PUTATIVE SECTION 25850 CHALLENGE AS AGAINST THE ATTORNEY GENERAL**

The R & R errs in recommending that Nichols has established Article III standing for his putative Section 25850 challenge as against the Attorney General. (R & R 41:13-41:19.)

A. **Nichols Has Not Established The Requisite Injury-In-Fact Via A Concrete Plan To Violate Section 25850**

The R & R errs in recommending that Nichols has, per *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000), "articulated a concrete plan to violate" Section 25850 sufficient to establish injury-in-fact for Article III purposes. Nichols's supposed plan has (or had) three pieces:

- Nichols's vague allegation of having violated Section 25850 "often" in the past (despite Nichols's sworn testimony to the contrary) – although, tellingly, Nichols never has been arrested or prosecuted for doing so;
- Nichols's equally vague assertion of plans to "openly carry a loaded holstered handgun, loaded rifle and loaded shotgun of a type in common use by the public while traveling within the [S]tate of California"; and
- Nichols's (vague and apparently unfulfilled) vow to openly carry a firearm – possibly loaded, possibly unloaded – on the 7th day of every month in Redondo Beach, in apparent repetition of the May 21, 2012 incident that Nichols staged specifically to gain standing in this case, but which did *not* lead to Nichols's arrest or prosecution for violating Section 25850 (and could not have so led, given that Nichols's shotgun was unloaded).

Individually or collectively, these averments fall far short of reflecting the requisite concrete plan.

3

### 1. The "Past-Acts" Allegation

#### a. Does Not Support Standing For Nichols

Fundamentally, Nichols's "past-acts" allegation, in and of itself, lacks relevance to the concrete-plan analysis, because (1) none of the acts were tied to application or enforcement of Section 25850, (2) Nichols did not specify *where* or *when* the acts occurred, and (3) the acts related, at most, to past injury, not imminent future injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009). Also, the vagueness of Nichols's past-act allegation contrasts with the specificity of past-act allegations found (in conjunction with other factors) sufficient for standing purposes in *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 833-34, 836 (9th Cir. 2012) (giving details about the plaintiffs' past marijuana use).

#### b. Should Not Be Presumed True

Furthermore, the R & R (at 34-35 n.9) improperly relies on the case of *PAE Gov't Serv., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007), in accepting the truth of Nichols's past-acts allegation, notwithstanding that Nichols previously filed in a sworn declaration in this action avowing that he has *never* violated Section 25850 (out of fear of being arrested and prosecuted for violating the law). In seeking dismissal of the FAC based, in part, on Nichols's problematic contradictions, the Attorney General provided citations to the pertinent case law holding that, notwithstanding a plaintiff's general right to make inconsistent allegations in a complaint or a series of complaints, on a motion to dismiss a complaint for lack of jurisdiction, a court "*may not*" accept the truth of unsworn allegations in the complaint if they contradict sworn testimony of the same plaintiff. *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (deciding a motion to dismiss based on lack of personal jurisdiction) (emphasis added); *Societe de Conditionnement en Aluminium v. Hunter Eng'g, Inc.*, 655 F.2d 938, 942 (9th Cir. 1981) (holding that *Data Disc* principles apply equally for subject-matter-

1  jurisdiction determinations). It follows that this Court *must not* accept, for present
2  purposes, Nichols's newfound and contradictory allegation of having frequently
3  violated Section 25850 in the past.

4      Unfortunately, the R & R does not discuss *Data Disc* (or *Hunter*) and instead
5  purports to follow the inapposite *PAE* decision in accepting, for present purposes,
6  the truth of Nichols's new allegations. However, *PAE* did not consider allegations
7  in a complaint versus sworn testimony, as in *Data Disc* and the present case;
8  instead, *PAE* compared two sets of complaint allegations. 514 F.3d at 857-58.
9  Furthermore, *PAE* did not adjudicate a motion to dismiss, as in *Data Disc* and the
10 present case; instead, *PAE* dealt with a motion to strike. 514 F.3d at 858. In sum,
11 *PAE* is factually distinguishable from the present case and does not obligate this
12 Court to assume the truth of Nichols's new, unsworn FAC allegations that
13 contradict Nichols's own declaration in this case.

### 2. The Future "Traveling" Plan

15     Nichols's assertion of his future "traveling" plan (to travel throughout the
16 State of California openly carrying a loaded gun), even if coupled with the past-acts
17 allegation, remains of the insufficiently vague, hypothetical, "some day" variety.
18 *Summers*, 555 U.S. at 496; *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 994
19 (9th Cir. 2012). *Thomas* considered a similar fact pattern and found that there was
20 no concrete plan:

> Thomas and Baker claim that they have refused to rent to unmarried couples in the past, yet they cannot say when, to whom, where, or under what circumstances. They pledge their intent to do so in the future, yet again they cannot specify when, to whom, where, or under what circumstances. A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan.

26 220 F.3d at 1139. Likewise, Nichols has not identified particular places where or
27 specified the dates on which either the past Section 25850 violations occurred or the

1  traveling Section 25850 violations will occur.  What Nichols has alleged simply
2  does not rise to the level of an articulated, concrete plan.
3      Moreover, given that Nichols has admittedly never before been arrested or
4  prosecuted under Section 25850,[1] despite purportedly carrying loaded firearms
5  openly or traveling with them throughout California, Nichols cannot logically
6  demonstrate that repeating similar traveling acts will lead to arrest or prosecution
7  under Section 25850.  *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1256 (9th Cir.
8  2010); *Coalition for a Sustainable Delta v. McCamman*, 725 F. Supp. 2d 1162,
9  1186 (E.D. Cal. 2010).  In this respect, again, the present case contrasts with
10 *Oklevueha*, where the Ninth Circuit found standing for plaintiffs who claimed to
11 have violated a narcotics law "countless" times to challenge enforcement of the
12 narcotics law, in part because the plaintiffs had (unlike Nichols) already
13 experienced enforcement of that same challenged law against them.  676 F.3d at
14 833-35.  In short, Nichols's traveling plan's vagueness and logical inconsistencies,
15 even if coupled with the past-acts claim, doom the plan for purposes of satisfying
16 the concrete-plan requirement.

### 3. The "7th-of-the-Month" Plan

#### a. Does Not Necessarily Implicate Section 25850

19 Even Nichols's "7th-of-the-month" plan – although superficially more
20 concrete than the traveling plan for stating a place, Redondo Beach, and a date of
21 the month, the 7th, in which Nichols will carry a firearm openly – does not satisfy
22 the concrete-plan requirement in relation to the challenge to Section 25850.  In the
23 May 21, 2012 incident mentioned above and specifically intended by Nichols to
24 create standing to conduct this action, Nichols admittedly carried an *un*loaded

---

[1] Nichols cites a single alleged instance in which Redondo Beach police officers "enforced" Section 25850, subdivision (b), against Nichols by searching his firearm without his consent.  Nichols has not been charged with any Section 25850 violation in this respect.

6

firearm and thus did *not* implicate the possession ban of Section 25850, subdivision (a), which concerns loaded firearms only. Presently, Nichols vows to carry a firearm – not necessarily loaded – on the 7th day of each coming month, and thus, again, will *not* necessarily implicate Section 25850. (And the present case contrasts with *Okleheuva* in this respect, as well, for the *Okleheuva* case's plaintiffs indisputably did violate the law in question. 676 F.3d at 838.) There is just no concrete factual scenario, as opposed to hypothetical scenarios, upon which to judge how Section 25850 operates and is enforced (*cf. Okleheuva*, 676 F.3d at 838), so the Court should decline to exercise jurisdiction over this unripe cause of action.

### b. Has Too Speculative A Link To Enforcement Of Section 25850

Nonetheless, the R & R asserts (at 36:14-36:18) that *if* Nichols openly carries a loaded firearm in Redondo Beach, it is likely that Nichols will be charged with a more serious offense than just violating Redondo Beach Municipal Code section 4-35.20. The Attorney General respectfully submits that this prediction is unsupported. First, there is only speculation that Nichols will openly carry a loaded, as opposed to unloaded firearm, in Redondo Beach, especially given that Nichols's only other open-carry incident in Redondo Beach was with an unloaded gun. Second, there is no legitimate reason to believe that even if Nichols openly carries a loaded firearm in Redondo Beach law-enforcement officials will charge Nichols with violating not just Redondo Beach Municipal Code section 4-35.20 – which, as the R & R points out, bans the carrying of both loaded or unloaded firearms in Redondo Beach parks (R & R at 30:22-30:28) – but also Section 25850. Consequently, the R & R's assertions in this regard should be reconsidered and withdrawn.

It should also be noted that there is no evidence (of which the Attorney General is aware) that Nichols, on the 7th day of any month since May 2012, has openly carried a firearm in Redondo Beach.

7

In sum, the "7th-of-the-month" plan, just like the other parts of Nichols's purported scheme to violate section 25850, and even in conjunction with them, fails to articulate a concrete plan that could support Nichols's injury-in-fact and standing for his desired challenge to that statute.

### B. Nichols Has Not Demonstrated The Requisite Genuine Threat of Imminent Attorney General Prosecution Under Section 25850

The R & R further errs in recommending a finding that Nichols, per *Thomas*, 220 F.3d at 1139, faces the requisite genuine threat of imminent Attorney General prosecution under Section 25850, sufficient for Article III standing purposes. (R & R at 41:13-41:19.)

#### 1. Nichols Does Not Meet Two Of The Three Case-Law Requirements

"In evaluating the genuineness of a claimed threat of prosecution," Ninth Circuit courts consider three factors: "[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement *under the challenged statute*." *Thomas*, 229 F.3d at 1139 (emphasis added). As shown above, Nichols has not articulated a concrete plan to violate Section 25850, meaning that Nichols cannot face a genuine threat of prosecution under Section 25850. Even assuming *arguendo* that Nichols has articulated a concrete plan to violate Section 25850, it remains undisputed that the Attorney General has not communicated a specific warning or threat to initiate proceedings – much less actually initiated proceedings – against Nichols under Section 25850. For that separate reason, the Court should find that Nichols does not face a credible threat of Attorney General prosecution under Section 25850, and consequently lacks Article III standing to pursue the Section 25850 challenge as against the Attorney General.

8

### 2. Enforcement Is Only, At Best, A Theoretical Possibility

On this question, the R & R articulates that it is *theoretically possible* that the Attorney General, who possesses broad powers to enforce California's criminal laws, could prosecute Nichols under Section 25850. (R & R at 39:10-41:9.) However, such a turn of events is not probable or even plausible, such that Nichols still cannot establish a genuine threat of imminent Attorney General prosecution under Section 25850. *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).[2] Foremost, and as noted above, the Attorney General has never prosecuted or even threatened to prosecute Nichols under Section 25850 – despite Nichols's public boasts that he has violated that law many times. The R & R (at 36:14-36:27) attempts to neutralize this crucial fact by citing *Leverett v. City of Pinellas Park*, 775 F.2d 1536, a 1985 decision of the *Eleventh* Circuit (never before cited in any Ninth Circuit decision locatable on Westlaw), for the proposition that a plaintiff's past arrests or prosecutions under statutes or ordinances "similar" to the law being challenged in the litigation at bar support the plaintiff's standing to make the challenge. But applying this odd reasoning means accepting that the *Redondo Beach City Attorney*'s (apparently) ongoing prosecution of Nichols for violating *Redondo Beach Municipal Code section 4-35.20* in May 2012 provides the basis to conclude that the *Attorney General* will prosecute Nichols if he ever violates *Section 25850*.

---

[2] The R & R relies on the off-point case of *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908 (9th Cir. 2004), in holding that the Attorney General's broad duties and powers to enforce California criminal law, without other factors, suffice to make the Attorney General a proper defendant in essentially any case challenging the constitutionality of enforcement of a state law. *Planned Parenthood* considered a challenge to *newly-enacted* abortion "parental-consent" statutes (*id.* at 914), where it was unknown which law-enforcement officials actually would enforce the new laws. The present case is different because Section 25850 (and Section 26155) has been on the books for many years, with established patterns of which law-enforcement officials enforce the laws. Moreover, *Planned Parenthood* expressly disclaims deciding which law-enforcement officials are proper defendants in the case (376 F.3d at 920), making the discussion of that issue apparently dicta.

9

1    The Attorney General must respectfully point out that *Thomas*, as cited above,
2 and *Okleheuva*, 676 F.3d at 836-37, as well as, e.g., *Wolfson v. Brammer*, 616 F.3d
3 1045, 1058 (9th Cir. 2010), all binding authority on this Court, compel this Court,
4 in conducting the "threat-of-prosecution" analysis for Section 25850, to focus more
5 reasonably on enforcement of *only* Section 25850, *not* arguably similar statutes or
6 ordinances. Cf. *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133,
7 1143 n.9 (9th Cir. 2009), discussing *Am.-Arab Antidiscrimination Comm. v.
8 Thornburgh*, 970 F.2d 501, 508 (9th Cir. 1991). Under the relevant law, the
9 conclusion that Nichols presently faces no credible threat of enforcement of Section
10 25850 (by the Attorney General or otherwise) is inescapable.[3]

11    Second, the R & R (at 40:20-41:9) underscores the implausibility of an
12 Attorney General taking over of any prosecution of Nichols when it cites a 1952
13 opinion of the Attorney General to the effect that if a city prosecutor becomes
14 disqualified or otherwise unable to conduct a particular state-law prosecution, then
15 the local district attorney should take over the case. *First of all*, there is no
16 evidence or indication that the Redondo Beach City Attorney or any other city
17 attorney has charged or will charge Nichols with violating Section 25850. *Second*,
18 there is even less reason to suppose that any such city attorney will become
19 disqualified or otherwise unable to prosecute such a case. Moreover, even if such
20 an unusual chain of events occurs, and the local District Attorney takes over the
21 case (or is the first prosecutor on the case), there is no valid ground on which to
22 suspect that, *third*, the Attorney General will then take over the case from the

---

[3] Additionally, it is important to remember that *Leverett* concerned a challenge to newly-enacted local ordinances (banning nude dancing at adult-entertainment establishments). 775 F.2d at 1537. There was no history, or at least not much history, of enforcement of those ordinances. For that specific reason, the Eleventh Circuit looked to the history of enforcement of similar ordinances and statutes in resolving the standing question. *Id.* at 1539. Also, the Eleventh Circuit expressly justified this lenient-on-standing approach because the challenge was a First Amendment challenge. *Id.* The present case is, of course, a Second Amendment challenge.

District Attorney. The R & R (at 41:11-41:19) notes that "[a] causal chain does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausible,'" citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011). Here, the possible three-link chain leading to an Attorney General prosecution of Nichols under Section 25850 is the quintessence of hypothetical, tenuous, and implausible.[4]

## II. NICHOLS HAS NOT ESTABLISHED STANDING FOR HIS PUTATIVE SECTION 26155 CHALLENGE AS AGAINST THE ATTORNEY GENERAL

The R & R erroneously recommends that the Attorney General's generalized duty and power to enforce California criminal law makes the Attorney General a proper defendant in Nichol's challenge to Section 26155 (R & R at 44:13-44:16), even as the R & R concedes that the Attorney General does not have a substantial role in administering that licensing-scheme statute. (*Id.* at 43:26-43:28.)

To reach that recommendation, the R & R misinterprets *Okpalobi v. Foster*, 244 F.3d 405, a 2001 decision of the *Fifth* Circuit, as providing for a plaintiff's standing in a challenge to a state law as against a law-enforcement defendant, basically wherever the defendant has either express or implicit powers to enforce the law in question. R & R omits that *Okpalobi* imposes *another*, separate requirement of "demonstrated willingness of the official to enforce the statute" in question:

> As we have pointed out, the [*Ex Parte*] *Young* [209 U.S. 123 (1908)] principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required 'connection,' but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. …Thus, any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce

---

[4] In this respect, the present case contrasts with *Planned Parenthood*, in which direct Attorney General enforcement of the new law in question, prodded by legislative modifications to relevant law, seemed a probability. 376 F.3d at 914, 919 n.7.

11

the statute.

244 F.3d at 416. Assuming *arguendo* that this Court should follow *Okpalobi* in this case, this Court should certainly take into account the "demonstrated willingness" requirement in the standing analysis[5] -- and, indeed, the Ninth Circuit case of *Am.-Arab Antidiscrimination Comm.* instructs this Court to take into account government willingness in this circumstance. 970 F.2d at 508. It is therefore highly significant that there is *no* evidence before the Court of the Attorney General's demonstrated willingness to "enforce" Section 26155 (which sets up a firearm-licensing scheme operated by local officials only). The R & R does surmise that if a local law-enforcement official improperly granted a license to a person to carry openly a loaded firearm in a disallowed place, then the Attorney General "would undoubtedly have the power to take appropriate action." (*Id.* at 44:10-44:13.) But there is no discussion of demonstrated willingness, as is inevitable given that there is no basis or material for such a discussion of demonstrated willingness.

Moreover, the R & R incorrectly dismisses the Attorney General's argument that Nichols has no standing since his "open-carry" permit application was rejected, at least in part, merely for being submitted to the wrong law-enforcement issuing authority, in the City of Redondo Beach, whereas Nichols could and should have applied properly for such a permit in only his city of residence, Lawndale. According to the R & R, Nichols need not apply for a firearm carrying permit in his home city, as Section 26155 plainly requires, yet still has standing to challenge Section 26155, because Nichols cannot obtain an open-carry permit for use anywhere in highly populated counties such as Los Angeles County. (*Id.* at 43:1-

---

[5] Other courts within the Ninth Circuit have approvingly cited the *Okpalobi* "demonstrated willingness" passage. *See, e.g., Sweat v. Hull*, 200 F. Supp. 2d 1162, 1167 (D. Ariz. 2001).

43:24.) Nichols should not be found to have done enough for standing, based on these allegations.

In conclusion, neither Nichols nor the R & R can show that Nichols has established that the Attorney General is a proper defendant for Nichols's Section 26155 challenge.

### III. THE ELEVENTH AMENDMENT IMMUNIZES THE ATTORNEY GENERAL FROM NICHOLS'S LAWSUIT

Article III case-or-controversy analysis and Eleventh Amendment analysis overlap regarding an accused government official's activity or threats in enforcing a law being challenged. *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999). Therefore, for the same reasons that Nichols lacks standing for his Section 25850 and Section 26155 challenges, the Eleventh Amendment immunizes the Attorney General from this lawsuit presenting those challenges.

### CONCLUSION

For the foregoing reasons, the Attorney General objects to the several errors in the R & R that prevented the correct outcome of the motion seeking the Attorney General's dismissal from this case. The Attorney General urges the Court to reconsider and then to recommend dismissing the Attorney General from the case.

Dated: December 4, 2012

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General


*/s/ Jonathan M. Eisenberg*
JONATHAN M. EISENBERG
Deputy Attorney General
*Attorneys for Defendant California
Attorney General Kamala D. Harris*

13