ORIGINAL

FILED

2013 FEB 28  PM 2:12

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1   Charles Nichols
    PO Box 1302
2   Redondo Beach, CA  90278
    Voice: (424) 634-7381
3   E-Mail: CharlesNichols@Pykrete.info
    In Pro Per
4

5

6

7

8                   United States District Court

9                   Central District of California

10

11  Charles Nichols,                    )   Case No.:
                                        )
12              PLAINTIFF,              )   CV-11-9916 SJO (SS)
                                        )
13         vs.                          )
                                        )   **NOTICE OF SUPPLEMENTAL**
14  KAMALA D. HARRIS, Attorney          )   **AUTHORITY**
                                        )
15  General, in her official capacity as )
                                        )
16  Attorney General of California, CITY )
                                        )
17  OF REDONDO BEACH, CITY OF           )
                                        )
18  REDONDO BEACH POLICE CHIEF          )   Date: N/A
                                        )   Time: N/A
19  JOSEPH LEONARDI, OFFICER            )   Courtroom: 23 – 3rd Flr.
                                        )   Judge: Hon. Suzanne H. Segal
20  TODD HEYWOOD and DOES 1 to 10,      )   Trial Date: Not Set
                                        )   Action Filed: Nov. 30, 2011
21          Defendants.                 )
                                        )
22                                      )

23

24

25

26

27

28

Nichols v. Edmund G Brown Jr et al          1          CV-11-9916 SJO (SS)

## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff hereby submits the attached supplemental authority of a California Supreme Court decision published after his Amended Complaint was filed.

On June 21, 2012 in the case of THE PEOPLE, Plaintiff and Respondent, v. JARVONNE FEREDELL JONES, Defendant and Appellant. S179552. SUPREME COURT OF CALIFORNIA. 54 Cal. 4th 350; 278 P.3d 821; 142 Cal. Rptr. 3d 561; 2012 Cal. LEXIS 5797 (hereinafter People v. Jones) the California Supreme court held that California Penal Code section 654 prohibits multiple punishments for the same act.

"Defendant Jarvonne Feredell Jones, a convicted felon, carried a loaded and concealed firearm. We must decide to what extent, if any, he may be punished separately for the crimes of possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public. The question requires us to interpret Penal Code section 654...which prohibits multiple punishment for "[a]n act...that is punishable in different ways by different provisions of law...Because different provisions of law punish in different ways defendant's single act, we conclude that section 654's plain language prohibits punishment for more than one of those crimes." People v. Jones at 1, footnote omitted.

Whatever utility former penal code section PC 12031(a)(1) had, since renumbered as Penal Code section 25850(a) (at issue in Plaintiff's suit), a person may no longer be punished for multiple violations of the Penal Code for the same act or even for infractions and penal code violations for the same act.

Overturning California Penal Code Section 25850 would not preclude California from prosecuting prohibited persons, such as convicted felons, from possessing a firearm as that is a crime under California Penal Code section 29800(a)(1) or for unlawfully carrying a concealed and unregistered firearm under California Penal Code section 25400(c)(6); the latter two are not at issue in this case. Although, according to People v. Jones, the prosecutor would have to choose to prosecute for a violation of one of the two statutes, not both, for the same act.

Overturning California Penal Code Section 25850 would partially restore the right of Plaintiff to openly carry a loaded firearm for the purpose of self-defense (and for other lawful purposes) on Plaintiff's person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

A true and correct copy of People v. Jones from the California Supreme Court website (http://www.courts.ca.gov/opinions/archive/S179552.PDF) is attached.

Dated: February 27, 2013                    Respectfully submitted,


                                            By: Charles Nichols
                                            PLAINTIFF in Pro Per
                                            PO Box 1302
                                            Redondo Beach, CA  90278
                                            Voice: (424) 634-7381
                                            E-Mail:
                                            CharlesNichols@Pykrete.info

///

Nichols v. Edmund G Brown Jr et al          3          CV-11-9916 SJO (SS)

Filed 6/21/12 (S163273 & S179552, both filed 6/21/12, are companion cases;  S163273 is the lead case)

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

      Plaintiff and Respondent,

      v.

JARVONNE FEREDELL JONES,

      Defendant and Appellant.

S179552

Ct.App. 3 C060376

Sacramento County
Super. Ct. No. 08F04254

      Defendant Jarvonne Feredell Jones, a convicted felon, carried a loaded and concealed firearm.  We must decide to what extent, if any, he may be punished separately for the crimes of possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public.  The question requires us to interpret Penal Code section 654,[1] which prohibits multiple punishment for "[a]n act . . . that is punishable in different ways by different provisions of law."  Because different provisions of law punish in different ways defendant's single act, we conclude that section 654's plain language prohibits punishment for more than one of those crimes.

---

[1]    All further statutory citations are to the Penal Code unless otherwise indicated.

## I. FACTUAL AND PROCEDURAL HISTORY

On May 26, 2008, police searched the car defendant, a convicted felon, was driving and found in a door panel a loaded .38-caliber revolver that was not registered to him. Defendant said he had bought the gun already loaded three days earlier "for protection." He explained that he had kept the gun at his grandmother's house and had "just picked the gun up from there and that's why the gun was in the car."

A jury convicted defendant of three crimes: possession of a firearm by a felon (former § 12021, subd. (a)(1) [now § 29800, subd. (a)(1) (Stats. 2010, ch. 711, § 6)]; count one), carrying a readily accessible concealed and unregistered firearm (former § 12025, subd. (b)(6) [now § 25400, subd. (c)(6) (as amended by Stats. 2011, ch. 15, § 543)]; count two), and carrying an unregistered loaded firearm in public (former § 12031, subd. (a)(2)(F) [now § 25850, subd. (c)(6) (as amended by Stats. 2011, ch. 15, § 544)]; count three). The superior court sentenced him to state prison for the upper term of three years on each count, to be served concurrently, plus a one-year enhancement for a prior prison term, for a total sentence of four years.

Defendant appealed. He argued that execution of the sentences for counts two and three had to be stayed under section 654. The Court of Appeal agreed that the sentence for either count two or three had to be stayed, but it held that multiple punishment is appropriate as between the first count and either of the other two counts. It modified the judgment to stay execution of the sentence on count three and affirmed the judgment as modified.

We granted defendant's petition for review to decide whether section 654 prohibits multiple punishment for his convictions.

2

## II. DISCUSSION

As relevant, section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." We must decide how this provision applies to defendant's three convictions.

The trial court imposed concurrent sentences. But doing so is not correct if section 654 prohibits multiple punishment. "It has long been established that the imposition of concurrent sentences is precluded by section 654 [citations] because the defendant is deemed to be subjected to the term of *both* sentences although they are served simultaneously." (*People v. Miller* (1977) 18 Cal.3d 873, 887.) Instead, the accepted "procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable." (*Id.* at p. 886; see also *People v. Sloan* (2007) 42 Cal.4th 110, 116.) Accordingly, although there appears to be little practical difference between imposing concurrent sentences, as the trial court did, and staying sentence on two of the convictions, as defendant urges, the law is settled that the sentences must be stayed to the extent that section 654 prohibits multiple punishment. So the issue is squarely presented. Does section 654 prohibit multiple punishment in this case?

When arrested, defendant was carrying, and thus possessing, a single firearm, which seems to be a single physical act. Because defendant is a felon and the gun was both loaded and concealed, that act is made punishable by three different provisions of law, specifically, former sections 12021, subdivision (a)(1), 12025, subdivision (b)(6), and 12031, subdivision (a)(2)(F). Thus, by its terms, section 654 seems to preclude punishment for more than one of those provisions.

3

But the question is not so simple. Two four-decades-old decisions — one from the Court of Appeal that is almost directly on point, and an earlier four-to-three decision from this court — strongly support the Court of Appeal's conclusion that punishment for at least two of these provisions of law is permissible. (*In re Hayes* (1969) 70 Cal.2d 604 (*Hayes*); *People v. Harrison* (1969) 1 Cal.App.3d 115 (*Harrison*).) *Harrison*'s holding, and the Court of Appeal's in this case, were reasonable in light of *Hayes*, although, as we will explain, the *Hayes* rationale would actually permit punishment for all three crimes, a conclusion that would run afoul of more recent Court of Appeal decisions.

We first examine exactly what the Court of Appeal did and why. It concluded that a felon who possessed or carried a single gun may not be punished separately if the gun is an *inherently unlawful* firearm, such as a sawed-off rifle. But a felon may be punished separately for possessing a gun *in an unlawful way*, such as having it loaded or concealed. Even then, such a felon may be punished only once even if, as here, the possession is unlawful in more than one way. The Court of Appeal based this conclusion on precedent. The court was reasonable to do so, as precedent supports all parts of its conclusion.

As the Court of Appeal explained, cases have held that section 654 precludes multiple punishment when a felon possesses an inherently unlawful firearm. (*People v. Scheidt* (1991) 231 Cal.App.3d 162, 170 [sawed-off shotgun]; *People v. Perry* (1974) 42 Cal.App.3d 451, 456 [sawed-off rifle].) Additionally, cases not involving felons have precluded multiple punishment for possessing a single firearm in *two* unlawful ways. (*People v. Hurtado* (1996) 47 Cal.App.4th 805, 808, 816 [carrying a concealed and loaded firearm]; *In re Joseph G.* (1995) 32 Cal.App.4th 1735, 1743-1744 [carrying a loaded firearm in a public place and carrying a concealed weapon].) The Court of Appeal followed these cases.

4

But the Court of Appeal also followed an earlier decision that permitted separate punishment for (1) possession of a concealable firearm by a felon and (2) possessing a loaded firearm, even though both crimes involved the same firearm. (*Harrison, supra*, 1 Cal.App.3d 115.) The *Harrison* court explained that the "two statutes strike at different things. One is the hazard of permitting ex-felons to have concealable firearms, loaded or unloaded; the risk to public safety derives from the type of person involved. The other strikes at the hazard arising when any person carries a loaded firearm in public. Here, the mere fact the weapon is loaded is hazardous, irrespective of the person . . . carrying it. [¶] The 'intent or objective' underlying the criminal conduct is not single, but several, and thus does not meet another of the tests employed to determine if Penal Code section 654 is violated. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19-20 . . . .) For an ex-convict to carry a concealable firearm is one act. But loading involves separate activity, and while no evidence shows that appellant personally loaded the pistol, there seem[s] little distinction between loading and permitting another to do so. Thus, two acts, not a single one, are necessarily involved and bring our case outside the prohibition against double punishment for a single act or omission." (*Harrison, supra*, at p. 122.)

As did the Court of Appeal, we could follow all of these cases and announce that when the defendant is convicted of multiple crimes for possessing or carrying a single firearm, including possession by a felon, the rule is that (1) he may be punished for possession by a felon, (2) he may not be punished separately for possessing an inherently unlawful firearm, (3) he may be punished separately for possessing a firearm in an unlawful way but only once, even if he possesses it in more than one unlawful way. Authority supports all components of this rule. But such a rule would make little, if any, sense. Why should separate punishment be prohibited for possessing an inherently unlawful firearm but permitted

5

(although only once) for possessing a firearm in an unlawful manner? The
Legislature has outlawed these various types of unlawful possession for separate
reasons that "strike at different things," to use *Harrison*'s phrase. (*Harrison*,
*supra*, 1 Cal.App.3d at p. 122.) *Harrison*'s logic would seem to permit separate
punishment for possessing an inherently dangerous weapon as well as possessing a
firearm in an unlawful way, and also for each different way in which the
possession was unlawful. Moreover, this rule would bear little relationship to
section 654's actual language.

    *Harrison, supra*, 1 Cal.App.3d 115, relied heavily on *Hayes, supra*, 70
Cal.2d 604. In *Hayes*, the defendant drove while intoxicated and while possessing
an invalid license. In so doing, he violated two different penal statues: (1) driving
while intoxicated and (2) driving with an invalid license. This court, by a four-to-
three vote, held that section 654 does not prohibit multiple punishment for the two
crimes even though they were committed simultaneously. It divided the single
physical act of driving into each component of that act that is made punishable in
different ways by different provisions of law. It summarized its reasoning: "In
summation, then, section 654 of the Penal Code proscribes multiple punishment
for a single 'act or omission which is made punishable'[2] by different statutes,
i.e., a single *criminal* act or omission. Since the mere act of driving is made
punishable by no statute, it is not the type of act or omission referred to in section
654. The acts 'made punishable' which this petitioner committed were (1) driving

---

2      Section 654 had slightly different language at the time of *Hayes, supra*, 70
Cal.2d 604, than today. As enacted in 1872 and as still in effect in 1969 at the
time of *Hayes*, section (a) of the statute provided: "An act or omission which is
made punishable in different ways by different provisions of this Code may be
punished under either of such provisions, but in no case can it be punished under
more than one . . . ." The language difference is irrelevant to this issue.

with a suspended license and (2) driving while intoxicated, two separate and distinct criminal acts; that they were committed simultaneously and that they share in common the neutral noncriminal act of driving does not render petitioner's punishment for both crimes in conflict with Penal Code section 654." (*Hayes*, at p. 611.)

Chief Justice Traynor dissented. He relied heavily on section 654's plain language in concluding that the statute permitted only one punishment for the single act of driving, even though that act violated two criminal statutes. "The Attorney General contends, however, that Vehicle Code sections 14601 and 23102 [the criminal provisions at issue] have different public purposes directed at distinct evils, and that the driver who violates both statutes simultaneously should be doubly punished because he is invading two social interests that the Legislature had designated for distinct protection by the enactment of two different statutes. In a jurisdiction without a multiple punishment rule like that of Penal Code section 654, this 'distinct evil' test might aid the courts in ascertaining whether the Legislature intended cumulative punishments for simultaneous violation of statutes like Vehicle Code sections 14601 and 23102. [Citations.] In California, however, when the rule of section 654 precluding multiple punishment applies, the courts cannot invoke the 'distinct evil' test to evade that statutory rule." (*Hayes*, *supra*, 70 Cal.2d at p. 613 (dis. opn. of Traynor, C. J.).)

The rationale of *Hayes*, *supra*, 70 Cal.2d 604, would permit multiple punishment in many cases when a single physical act is made punishable by different provisions of law. Different provisions of law punishing the same physical act — for example, driving while intoxicated and on an expired license, or a felon's carrying a loaded and concealed firearm — are generally directed at distinct societal evils. It might make sense to punish these distinct evils separately, and a criminal justice system could logically and reasonably do so.

7

But doing so would be contrary to section 654's plain language, which prohibits multiple punishment for "[a]n act or omission that is punishable in different ways by different provisions of law."

In this case, for example, *Hayes*'s rationale would seem to permit punishment for all three of defendant's crimes. The act of firearm possession, by itself, is innocent. Thus, under *Hayes*, we would have to consider the unlawful components of that act, i.e., defendant was a felon, the firearm was loaded, and the firearm was concealed. To adapt *Hayes*'s rationale to this case, the fact that these acts "were committed simultaneously and that they share in common the neutral noncriminal act of [gun possession] does not render [defendant's] punishment for [all three] crimes in conflict with Penal Code section 654." (*Hayes, supra,* 70 Cal.2d at p. 611.)

Indeed, *Hayes* itself comes very close to saying that punishment for these precise crimes is permissible. It gives an example of how its analysis would work in a different situation: "Similarly, for example, if an individual went for a walk in possession of a loaded gun while he was intoxicated and unclothed, he would by the single neutral act of walking — or, more accurately, being in a 'public place' — simultaneously violate three separate and unrelated statutes. (Pen. Code, §§ 12031, subd. (a); 647, subd. (f); 314.) Those three statutes, however, would be violated not by the one noncriminal act of being in a public place but necessarily by three simultaneous though separate criminal acts. Once again, we must distinguish *identical noncriminal* acts from *simultaneous criminal* acts 'made punishable' by law." (*Hayes, supra,* 70 Cal.2d at p. 608, fn. omitted.) It is hard to imagine how each crime in this example could be punished, but not each crime in this case.

The more recent Court of Appeal cases have generally ignored *Hayes, supra,* 70 Cal.2d 604, and many of their results limiting multiple punishment seem

8

inconsistent with its reasoning. The four cases discussed above that the Court of Appeal cited and distinguished make no effort to reconcile their holdings with *Hayes*. (*People v. Hurtado, supra*, 47 Cal.App.4th 805; *In re Joseph G., supra*, 32 Cal.App.4th 1735; *People v. Scheidt, supra*, 231 Cal.App.3d 162; and *People v. Perry, supra*, 42 Cal.App.3d 451.) None of these cases cites *Hayes*. None explains why multiple punishment should be prohibited for possessing an inherently unlawful firearm but not for possessing a firearm in an unlawful way, or why the latter may only be punished once even if the possession was unlawful in more than one way.

We believe the current state of the law is untenable. The more recent Court of Appeal cases discussed above are mutually consistent and have reached results that we believe are more consistent with section 654's plain language than that of *Harrison, supra*, 1 Cal.App.3d 115. *Harrison* is the anomaly, not the more recent cases. We need a rule that is consistent with the current cases, that can lead to predictable results, and that more closely tracks section 654's plain language. Accordingly, we disapprove *People v. Harrison, supra*, 1 Cal.App.3d 115, and hold that a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654.

We must also decide what to do with *Hayes, supra*, 70 Cal.2d 604. Its rationale is dubious and overbroad. Over the years, it has led to inconsistent and unpredictable results. Numerous cases, generally more recent ones, have found a section 654 violation in a way that seems inconsistent with *Hayes*'s rationale. (In addition to the cases discussed above, see, e.g., *People v. Williams* (2009) 170 Cal.App.4th 587, 645-646 [654 prohibits multiple punishment for possession of a firearm by a felon and possession of a controlled substance while armed]; *People v. Lopez* (2004) 119 Cal.App.4th 132, 137-139 [654 prohibits multiple punishment

for unlawful possession of a firearm and unlawful possession of ammunition].)
These cases simply do not cite *Hayes*.

*Hayes*, *supra*, 70 Cal.2d 604, has been followed on occasion, including at
least once by this court. In *In re Michael B.* (1980) 28 Cal.3d 548, 556-557, this
court invoked *Hayes* to permit multiple punishment for vehicle theft and driving
without a license. (See also *People v. Martinez* (2007) 156 Cal.App.4th 851, 857
[multiple punishment permitted for driving on a suspended license and driving
under the influence of alcohol]; *People v. Butler* (1986) 184 Cal.App.3d 469, 471-
474 [multiple punishment permitted for felony hit and run and vehicular
manslaughter]; *People v. Rowland* (1971) 21 Cal.App.3d 371, 374-377 [multiple
punishment permitted for receiving stolen property and petty theft through
acquiring a credit card (i.e., some of the same stolen property) without the owner's
consent with intent to use or sell it].) *Martinez* is essentially the *Hayes* situation.
*Butler* (vehicular manslaughter followed by fleeing the scene) and *Michael B.*
(stealing the car and driving it) seem to have been two-act cases. *Rowland* was
analyzed as a two-act case — one act of acquiring the stolen property and a later
act of keeping the credit cards for the purpose of using or selling them. Thus, it
appears that *Michael B.*, *Butler*, and *Rowland* may have been correct even apart
from *Hayes*.

In *People v. Correa* (June 21, 2012, S163273) __ Cal.4th __, also decided
today, we are disapproving language in one of our cases to bring our section 654
jurisprudence closer to the statutory language. We should do the same here.
Accordingly, we conclude that *In re Hayes*, *supra*, 70 Cal.2d 604, has no
continuing vitality, and we overrule it. Section 654 prohibits multiple punishment
for a single physical act that violates different provisions of law. This rule is
generally consistent with the holdings of more recent Court of Appeal decisions
that would otherwise be hard to reconcile with *Hayes*, and, especially important,
with section 654's plain language.

10

We recognize that what is a single physical act might not always be easy to ascertain. In some situations, physical acts might be simultaneous yet separate for purposes of section 654. For example, in *Hayes*, both the majority and the dissenters agreed that, to use Chief Justice Traynor's words, "simultaneous possession of different items of contraband" are separate acts for these purposes. (*Hayes, supra*, 70 Cal.2d at p. 612 (dis. opn. of Traynor, C. J.); see *id.* at pp. 606-607 (maj. opn.).) As Chief Justice Traynor explained, "the possession of one item is not essential to the possession of another separate item. One does not possess in the abstract; possession is meaningless unless something is possessed. The possession of each separate item is therefore a separate act of possession." (*Id.* at p. 613.) We do not intend to cast doubt on the cases so holding.[1]

The Attorney General argues that separate acts did occur here. She notes that defendant told the police that he had obtained the gun three days before it was found in his car, and he had kept it at his grandmother's house. She argues that keeping the gun at the house and carrying it in the car were separate acts. The Court of Appeal acknowledged this argument but refused to rely on it. It explained that "the People did not argue defendant was guilty of possession three days before his arrest: The prosecutor mentioned defendant's admission that he bought the gun three days before to bolster the theory that defendant knowingly possessed the gun, not to base liability on possession before the date of arrest." The Court of Appeal was correct.

The record establishes that the jury convicted defendant of each crime due to his being caught with the gun in the car on May 26, 2008, not due to any

---

[1]    The Court of Appeal in this case also discussed cases concerning how section 654 applies to a defendant who is convicted of possession of a firearm by a felon and of committing a separate crime with that firearm. (See *People v. Jones* (2002) 103 Cal.App.4th 1139, 1144-1146 [collecting and discussing the cases].) These cases concern a very different situation, and we do not intend to cast doubt on them.

antecedent possession. The amended information alleged that defendant committed all three crimes on or about May 26, 2008, the day he was arrested, and the verdicts all found defendant guilty as charged. The prosecutor's entire jury argument based defendant's guilt on his possessing the gun when arrested and not earlier. He began his argument by stating that the evidence showed "that on the date in question Mr. Jones possessed the firearm in question. And that's why we've got him charged with being a felon in possession of a firearm, possessing a concealed firearm, possessing a loaded firearm." Later, he explained to the jury that there were "three different counts for the same exact conduct." Thus, defendant's guilt on all three charges was premised solely on his having the gun in his car when arrested on May 26, 2008, not on any different acts. We express no opinion on what the outcome might be under other facts.

Additionally, section 12021 criminalizes *possessing* the firearm, while sections 12025 and 12031 criminalize *carrying* it. But under the facts of this case, the possession and the carrying were the same act, not two separate acts. Defendant had the gun in his car when arrested, which meant he both carried it and possessed it. Again, we express no opinion on what the outcome might be under other facts.

The separate opinions in this case agree with the outcome here and with our overruling of *Hayes, supra,* 70 Cal.2d 604, and disapproving of *Harrison, supra,* 1 Cal.App.3d 115, both of which had found multiple acts in what were actually single-act cases. But, instead of finding a single act, they would instead rely on a test generally applied when there has been a course of conduct rather than a single criminal act, namely, the "intent and objective" test created in *Neal v. State of California, supra,* 55 Cal.2d 11. (See generally *People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1212.) They argue that because defendant told the police he possessed the gun for protection, and the evidence showed no other intent or objective, we should find a single objective that may be punished but once.

12

Finding a single objective here might resolve this particular case. But what if the evidence also showed that the defendant wanted to intimidate rival gang members, or go hunting, or harbored any other of the myriad possible objectives for illegally possessing a firearm? Would multiple punishment be allowed in that case? Or what if the evidence does not show what the defendant's objective was? A defendant does not have to talk to the police. What is the court to do then? Rather than force the court to divine what objective or objectives the defendant might have had in possessing the firearm, we find it better to rely on section 654's actual language in resolving this single-act case. Moreover, it would be harder to overrule or disapprove past cases for diverging from the statutory language if we were to decide the case on a basis that bears no relation at all to that language. Accordingly, we conclude this case should be decided on the basis that it involves a single act or omission that can be punished but once.

It might make sense to punish more severely a firearm possession that violates multiple penal provisions than a firearm possession that violates only one penal provision. Any time it wishes, the Legislature can change the law and permit multiple punishment in a situation like this. But we must interpret the statutes as they exist. Because defendant's convictions were based on a single act, section 654 prohibits multiple punishment. As previously noted, we overrule *In re Hayes, supra,* 70 Cal.2d 604, and disapprove *People v. Harrison, supra,* 1 Cal.App.3d 115.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

CHIN, J.

WE CONCUR:

KENNARD, ACTING C. J.
BAXTER, J.
CORRIGAN, J.
SEPULVEDA, J.*

---

\* Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

## CONCURRING OPINION BY WERDEGAR, J.

Although I agree with the majority's result, I write separately to explain my view of the correct approach to applying Penal Code section 654 in this case and cases generally.[1]

The majority concludes that pursuant to section 654, defendant, a felon found with a loaded pistol in his car, can be punished only once notwithstanding his behavior violated three different criminal statutes. Although I agree with this result, I join Justice Liu's separate opinion because the majority does not persuasively explain how it has determined defendant committed only one punishable act. As Justice Liu states, we should apply the test set forth in *Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*), which held that "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 *depends on the intent and objective of the actor*. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (Italics added; see conc. opn. of Liu, J., *post*, at p. 1.) Because the evidence demonstrates defendant acted with but a single objective, *Neal* compels the conclusion that defendant may be punished only once for his crimes.

---

[1]    All subsequent statutory references are to the Penal Code unless otherwise stated.

1

The majority's failure to rely on *Neal*, *supra*, 55 Cal.2d 11, is as puzzling as it is mischievous. The *Neal* intent-and-objective test has been the law for over 50 years and, as Justice Liu explains, was questioned but ultimately endorsed by this court in *People v. Latimer* (1993) 5 Cal.4th 1203. (See *id.* at p. 1216 ["[A]t this late date, any changes must be made by the Legislature, which obviously has the authority to modify the rule any time it chooses."]; see also *People v. Britt* (2004) 32 Cal.4th 944, 952 [noting our criticism in *Latimer*].) Despite this court's invitation to the Legislature to reexamine the statute, the Legislature has neither abrogated nor amended it. Under the circumstances, we should find the Legislature has acquiesced in the *Neal* test and simply apply it here. By failing to do so, the majority creates uncertainty where none previously existed.

## I.

More than a century old and deceptively simple in its terms,[2] section 654 has nonetheless confounded courts through the years. Just recently, this court faced how, or whether, section 654 applied to criminal sentence enhancement provisions. We concluded that for the particular enhancements involved in that case, the Legislature had specifically addressed the issue in section 1170.1, permitting the sentencing court to impose both a firearm use enhancement (§ 12022.5, subd. (a)) and a great bodily injury enhancement (§ 12022.7, subd. (e)) for essentially the same act: shooting the victim. (*People v. Ahmed* (2011) 53 Cal.4th 156.) I agreed with this reasoning but joined the concurring opinion of my colleague Justice Liu to disavow the majority's unnecessary discussion of how

---

[2]    Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

section 654 might apply to enhancement provisions *in general.* (*Ahmed*, at pp. 168-169 (conc. opn. of Liu, J.).)

In *People v. Correa* (June 21, 2012, S163273) __ Cal.4th ___, filed the same day as the instant case, the question of application of section 654 arises with respect to a felon apprehended in simultaneous possession of seven illegal firearms. Did he commit one punishable act of being a felon in possession of a firearm (former § 12021, subd. (a)(1), now § 29800, subd. (a)(1)) or seven punishable acts? The *Correa* majority holds the defendant may be punished seven separate times. As I explain in my separate opinion in *Correa*, I agree with that result because the Legislature amended former section 12001 to add subdivision (k), which provides that each illegal weapon is a separate crime, and the Legislature must have intended by this amendment that each conviction could be separately punished. (*Correa*, at p. ___ [pp. 1, 4] (conc. opn. of Werdegar, J.).)

Finally, this court in a divided opinion recently decided *People v. Mesa* (June 4, 2012, S185688) __ Cal.4th ___, in which we held that section 654 prohibits punishing a defendant for both an assault with a firearm (§ 245, subd. (a)(2)) and participation in a criminal street gang (§ 186.22, subd. (a)), when both crimes are based on the same act: shooting the victim. Together with the instant case, that makes four cases in this court involving the application of section 654 in just six months (*Ahmed, Jones, Correa, Mesa*). The confusion concerning the scope and meaning of the statute thus continues unabated.

Over the years, we have attempted to bring certainty to the application of section 654 by glossing the statutory language in two principal ways. First, we found the "act or omission" referenced in the section could be *a course of conduct* that includes several acts indivisible in time if pursued according to a single objective or intent. (*People v. Beamon* (1973) 8 Cal.3d 625, 639; *Neal, supra,* 55 Cal.2d at p. 19.) If those acts have separate and independent objectives or intents, however, multiple punishment is permissible, even if the acts are very close in

3

time. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) Second, despite no explicit reference to victims in section 654, we held that a single act can be punished more than once if it impacts *multiple victims.* (*People v. Oates* (2004) 32 Cal.4th 1048, 1063; *People v. King* (1993) 5 Cal.4th 59, 78; *People v. McFarland* (1989) 47 Cal.3d 798, 803; *Neal*, at pp. 20-21.) In addition, we have opined that section 654 applies to limit the punishment for multiple violations of *the same criminal statute* (*Neal*, at p. 18, fn. 1), although the section speaks only of acts or omissions "punishable in different ways by *different* provisions of law" (§ 654, italics added).

These interpretations of section 654 are admittedly strangers to the statute's actual wording. Nevertheless, they have until recently stood the test of time, have not been altered by the Legislature, and are now part of the fabric of the law. But despite our best efforts, no coherent approach to applying the statute has emerged.

Indeed, in seeking to bring clarity to the statute, we have come full circle. In this case, for example, we overrule one of our earlier decisions on the subject, *In re Hayes* (1969) 70 Cal.2d 604, which held a defendant who drove while intoxicated and with a suspended license committed two, separately punishable acts. (Maj. opn., *ante*, at p. 10.) And in *People v. Correa, supra*, ___ Cal.4th ___, ___, the majority disapproves the venerable and long-followed interpretation of section 654 that made it applicable to multiple violations of the same statute.[3]

---

[3]    See, e.g., *People v. Davey* (2005) 133 Cal.App.4th 384, 389 (§ 654 has been "interpreted also to preclude multiple punishment for more than one violation of a single Penal Code section, if the violations all arise out of a single criminal act"); *People v. Hall* (2000) 83 Cal.App.4th 1084, 1088 (same); *People v. Gbadebo-Soda* (1989) 215 Cal.App.3d 1371, 1375 (same); *People v. Anderson* (1987) 191 Cal.App.3d 207, 214 (same).

4

Although, as noted, this court has on a number of occasions urged the Legislature to intervene and clarify the law,[4] with but one exception not applicable here[5] the Legislature has not enacted any substantive modification of section 654. Thus, the terms of the section remain largely the same as they were 50 years ago when we decided *Neal, supra,* 55 Cal.2d 11.

## II.

That the Legislature has not acted to clarify the applicability of section 654 does not mean it has been inactive in addressing the question of multiple punishment for a single act or omission. Rather, as I will discuss, the Legislature

---

[4]    *People v. Latimer, supra,* 5 Cal.4th at page 1216; see also *People v. Benson* (1998) 18 Cal.4th 24, 29 ("the Legislature is free to authorize the designation of such prior felony convictions as separate priors" to permit multiple punishment despite § 654); *People v. Ahmed, supra,* 53 Cal.4th at page 169 (conc. opn. of Liu, J.) ("[T]he Legislature may wish to clarify the scope of Penal Code section 654 in general, and how that statute applies to criminal sentence enhancements in particular.").

[5]    Members of this court had previously urged the Legislature to amend section 654 to specify that where a defendant stands convicted of multiple crimes stemming from the same act, the trial court should choose the crime carrying the longest single sentence as the base term. (*People v. Norrell* (1996) 13 Cal.4th 1, 12 (conc. opn. of Baxter J.) ["Just as the Legislature could presumably repeal the statute altogether, so too may it amend the statute to ensure that a defendant convicted of multiple crimes does not receive more lenient treatment by virtue of section 654 than he could have received if the statute did not apply."]; *id.* at p. 23 (conc. & dis. opn. of Arabian, J., joined by Kennard and George, JJ.) ["I hope the Legislature will heed my call, and amend that statute . . . ."].)

"The provision of section 654 requiring the longest available term of imprisonment was added by the Legislature in response to a judicial decision permitting trial courts to choose a lesser sentence. (See *People v. Kramer* (2002) 29 Cal.4th 720, 722-723 . . . ; Stats. 1997, ch. 410, § 1, p. 2753.) The amendment was intended to require punishment commensurate with culpability, and avoid the anomaly of a lesser sentence being imposed because the defendant had been convicted of two crimes instead of one." (*People v. Ceja* (2010) 49 Cal.4th 1, 7-8.)

has indicated in many substantive criminal statutes themselves, either expressly or impliedly, whether or not section 654 applies to limit multiple punishment.

The restriction on multiple punishment for the same act or omission is statutory only, and the Legislature—short of constitutional limits imposed by the Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution—can freely modify or alter the scope of section 654. Although we previously have opined that, "[h]ad the Legislature intended to override the century-old ban of section 654 on multiple punishment of violations based on the 'same act or omission,' it would have made that purpose explicit" (*People v. Siko* (1988) 45 Cal.3d 820, 824), the Legislature has not always been so "explicit" in its wishes with regard to the section's applicability.

Yet the Legislature has on some occasions made its intent clear. For example, section 1170.1, the default criminal sentencing statute, begins: "Except as otherwise provided by law, *and subject to Section 654*," the offender shall be sentenced in a certain manner. (§ 1170.1, subd. (a), italics added.) Similarly, section 32000, subdivision (c), concerning the manufacture, importation or sale of unsafe handguns, provides: "Violations . . . are cumulative with respect to each handgun and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by this section and other provisions of law shall not be punished under more than one provision, but the penalty to be imposed *shall be determined as set forth in Section 654*." (Italics added.) Other examples of penal statutes that explicitly note the applicability of section 654 include section 422.6, subdivision (d), concerning the crime of interfering with a person's exercise of his or her civil rights ("the penalty to be imposed shall be determined as set forth in Section 654"), and section 627.10, concerning crimes committed on school grounds ("no punishment shall be imposed contrary to Section 654"). In these instances the Legislature has made

6

clear that section 654 applies to limit imposition of multiple punishment for the same act or omission.

The Legislature has also fashioned penal laws that expressly exempt their operation from section 654's limits on multiple punishment. For example, section 30615, concerning commission of a crime with an assault weapon, provides: "*Notwithstanding Section 654* or any other provision of law, any person who commits another crime while violating this article may receive an additional, consecutive punishment of one year for violating this article, in addition and consecutive to the punishment, including enhancements, which is prescribed for the other crime." (Italics added.)

In addition to these instances of an express mention of the applicability *vel non* of section 654, courts in a number of situations have been able to discern the Legislature's implied intent regarding the section. For example, in *People v. Benson, supra*, 18 Cal.4th at page 31, we held the phrase "[n]otwithstanding any other provision of law" in the "Three Strikes" law meant a prior conviction for which the sentence was stayed pursuant to section 654 could still count as a strike even though the statutory language made no express reference to section 654.

Nor was *People v. Benson* the only case to find an implied exception to section 654's general application. As we observed in *People v. Palacios* (2007) 41 Cal.4th 720, 730: "[C]ourts have repeatedly upheld the Legislature's power to override section 654 by enactments that do not expressly mention the statute. In *People v. Hicks* (1993) 6 Cal.4th 784, 791-792 . . . , we held that the Legislature, in enacting section 667.6, subdivision (c),[6] was not required to cite section 654 to demonstrate its intent to create an exception to its provisions. In *People v.*

---

6    Section 667.6, subdivision (c), in 1993 as now, provided in pertinent part: "In lieu of the term provided in Section 1170.1, *a full, separate, and consecutive term may be imposed for each violation of*" enumerated offenses. (Italics added.)

*Ramirez* (1995) 33 Cal.App.4th 559, 573 . . . , the court held that, with regard to section 667, subdivision (e),[7] 'A statute which provides that a defendant shall receive a sentence enhancement in addition to any other authorized punishment constitutes an express exception to section 654.' In *People v. Powell* (1991) 230 Cal.App.3d 438, 441 . . . , a case predating the enactment of the Three Strikes law, the court concluded that Health and Safety Code section 11370.2[8] authorized double punishment in addition to any other authorized penalty, thus prevailing over section 654 even though section 654 was not mentioned in the statute."

*People v. Palacios* itself is a good example of a case in which we found section 654 inapplicable despite the absence of an express exemption. *Palacios*

---

7      Section 667, subdivision (e), the Three Strikes provision, provided in 1995, as now, that a Three Strikes offender should be sentenced to a Three Strikes sentence "*in addition to any other enhancement or punishment provisions which may apply* . . . ." (Italics added.)

8      Health and Safety Code section 11370.2 provides in pertinent part: "(a) Any person convicted of a violation of, or of a conspiracy to violate, [Health and Safety Code] Section 11351, 11351.5, or 11352 *shall receive, in addition to any other punishment authorized by law*, including Section 667.5 of the Penal Code, *a full, separate, and consecutive* three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate [certain enumerated drug crimes], whether or not the prior conviction resulted in a term of imprisonment. [¶] (b) Any person convicted of a violation of, or of a conspiracy to violate, [Health and Safety Code] Section 11378.5, 11379.5, 11379.6, 11380.5, or 11383 *shall receive, in addition to any other punishment authorized by law*, including Section 667.5 of the Penal Code, *a full, separate, and consecutive* three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate [certain enumerated drug crimes], whether or not the prior conviction resulted in a term of imprisonment. [¶] (c) Any person convicted of a violation of, or of a conspiracy to violate, [Health and Safety Code] Section 11378 or 11379 with respect to any substance containing a controlled substance specified in paragraph (1) or (2) of subdivision (d) of Section 11055 *shall receive, in addition to any other punishment authorized by law*, including Section 667.5 of the Penal Code, *a full, separate, and consecutive* three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate [certain enumerated drug crimes], whether or not the prior conviction resulted in a term of imprisonment." (Italics added.)

8

concerned section 12022.53, the so-called "10-20-life law" (see *People v. Jones*
(2009) 47 Cal.4th 566, 570 [§ 12022.53 is "also known as 'the 10-20-life law' "]),
which severely punishes the use of a firearm while committing certain serious or
violent felonies.  Although section 12022.53 does not mention section 654,
subdivisions (b), (c) and (d) all begin with the phrase "[n]otwithstanding any other
provision of law" and subdivision (f) provides in part:  "Only *one additional* term
of imprisonment under this section shall be imposed per person for each crime."
(Italics added.)  Considering this statutory language, we held that despite the
Legislature's failure to expressly exempt the "10-20-life law" from section 654,
enhancement sentences imposed pursuant to the statute were not limited by section
654, and "[t]o hold otherwise would contravene the plain language of section
12022.53." (*People v. Palacios*, *supra*, 41 Cal.4th at p. 723.)

     Even where a sentencing statute does not say it applies "notwithstanding
any other provision of law," or that a sentence should be imposed "in addition to
any other punishment authorized by law," or that a "full, separate, and consecutive
term may be imposed," the Legislature sometimes specifies in other ways that
more than one punishment is permissible for the same act.  For example, section
12022.53, subdivision (e) sets forth the conditions for imposing for the same act
both a "10-20-life" enhancement and a criminal street gang enhancement
(§ 186.22, subd. (b)):  the principal in an enumerated crime must have personally
used and/or intentionally discharged a firearm, and/or proximately caused great
bodily injury or death. (See *People v. Jones*, *supra*, 47 Cal.4th at pp. 580-581
(conc. opn. of Werdegar, J.).)  Similarly, as we held in *People v. Ahmed*, *supra*, 53
Cal.4th 156, section 1170.1, subdivisions (f) and (g) state specifically that the
single act of shooting someone can be the basis for two enhancements:  one for
firearm use and one for inflicting great bodily injury.

     In short, some penal statutes expressly reference section 654 or the
availability of multiple punishment, but for many that do not the courts have found

an implied exception to the ban on multiple punishment for the same act or omission, such as when the statute provides that a sentencing scheme applies "notwithstanding any other provision of law" or otherwise "include[s] language expressly authorizing multiple punishments." (*People v. Le* (2006) 136 Cal.App.4th 925, 933.)

Against this background and also relevant to the application of section 654 is the Legislature's action in greatly increasing the lengths of individual criminal sentences. As we have often recognized, "the purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Correa, supra,* __ Cal.4th at p. ___ [p. 11]; see also *People v. Ceja, supra,* 49 Cal.4th at p. 8; *People v. Britt, supra,* 32 Cal.4th at p. 953; *People v. Kramer, supra,* 29 Cal.4th at pp. 723-724; *People v. Latimer, supra,* 5 Cal.4th at p. 1211; *People v. Perez* (1979) 23 Cal.3d 545, 550-551; *Neal, supra,* 55 Cal.2d at p. 20.) Viewing the statute in this light, we can infer the greater a defendant's punishment for committing an act under one provision of law, the more congruent with legislative intent application of section 654's prohibition on multiple punishment is likely to be.

The punishments prescribed for various criminal activities have been on an upward spiral for many years. In the last 34 years (that is, since the advent of the determinate sentencing law),[9] base terms for many felonies have doubled or even

---

[9]    "California's determinate sentencing law became operative on July 1, 1977, replacing the prior system under which most offenses carried an indeterminate sentence. (Added by Stats. 1976, ch. 1135, § 273, p. 5140 and as amended by Stats. 1977, ch. 165, § 1 et seq., pp. 639-680.) In enacting the new sentencing scheme, the Legislature declared that the purpose of imprisonment is punishment, and that this purpose is 'best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances.' (§ 1170, subd. (a)(1).)" (*People v. Black* (2005) 35 Cal.4th 1238, 1246.)

tripled. In 1978, the punishment for all types of first degree robbery was two, three or four years. (Former § 213; Stats. 1977, ch. 165, § 5, p. 642.) Today, the punishment for robbery in concert in a home (what is commonly referred to as a home invasion robbery) is three, six or nine years. (§ 213, subd. (a)(1)(A).) In 1978, the punishment for any attempted murder was five, six or seven years in prison. (Former § 664; Stats. 1977, ch. 165, § 12, p. 644.) Today, an attempted premeditated and deliberate murder carries a penalty of life in prison. (§ 664, subd. (a).) In 1978, the punishment for forcible rape, including of a person under 14 years of age, was three, four or five years. (Former § 264; Stats. 1976, ch. 1139, § 154, p. 5106.) Today, forcible rape of a person under 14 carries a base term of nine, 11 or 13 years. (§ 264, subd. (c)(1).) The penalty for forcible sodomy of a child under 14 has likewise increased from two, three or four years (former § 286, subd. (c); Stats. 1977, ch. 490, § 1, pp. 1613-1614) to nine, 11 or 13 years (§ 286, subd. (c)(2)(B)), and forcible oral copulation of a minor from two, three or four years (former § 288a, subd. (c); Stats 1977, ch. 490, § 2, p. 1614) to eight, 10 or 12 years (§ 288a, subd. (c)(2)(B)). The punishments for many other sexual crimes mirror these increases.

Not only has the Legislature increased the base sentences for crimes, it has enacted enhancements such as the "10-20-life law" (§ 12022.53) and the Street Terrorism Enforcement and Prevention Act (STEP Act) (§ 186.22, subds. (b)-(j)), as well as alternative sentencing schemes such as the Three Strikes law (§ 667, subds. (b)-(i); see also § 1170.12 [enacted by initiative measure]), the one strike law (§ 667.61) and the provision of full term consecutive sentences for violent sex offenses (§ 667.6), which together have transformed the penal consequences of criminal activity such that sentences of more than 100 years—essentially life in prison without any possibility of release within the offender's lifetime—are not uncommon.

I mention these sentencing changes not to comment on their wisdom or appropriateness; short of constitutional limits, the setting of criminal penalties is for the Legislature and not the judiciary.  But the advent of such increased sentences is relevant to the concern of section 654, which was first enacted in 1872 and applied during the long period in which criminal sentencing was governed by the indeterminate sentencing law, that the sentences be commensurate with an offender's personal culpability.  Today, under the determinate sentencing law, sentences for a single "act or omission" often are so long that, absent an express or implied exception, one may reasonably infer that application of section 654's ban on multiple punishment for the same act would be most congruent with the legislative intent in enacting such increased sentence provisions.

### III.

Considering the many times the Legislature has expressly or impliedly provided that section 654 does or does not apply to limit multiple punishment, and in light of the length of criminal sentences today, we should find section 654 generally applicable in all situations to prohibit multiple punishment, unless an offender engaged in a course of conduct and acted with multiple intents (*People v. Harrison, supra,* 48 Cal.3d at p. 335), or impacted multiple victims (*People v. Oates, supra,* 32 Cal.4th at p. 1063), or some express or implied statutory exception to the section's applicability exists.  Because the Legislature often specifically addresses the multiple punishment possibility when enacting criminal statutes, and frequently establishes by implication exceptions to the rule against multiple punishment for the same act or omission, we should simply assume that in the absence of an exception, section 654 will apply.  Close cases, such as the present one, in which it may be difficult to discern whether the defendant committed one act or several and hence the extent of his or her culpability, should be resolved in favor of finding one act, for the Legislature will clarify when an act

is multiple or singular.[10]  In short, we should assume the longest base term (plus any applicable enhancements) as provided by the Legislature for a defendant's act is sufficient to meet the Legislature's penological, retributive and rehabilitative goals.

With these caveats in mind, I concur with the majority's result here that defendant Jarvonne Feredell Jones may be punished only once for his possession of a loaded firearm.

WERDEGAR, J.

I CONCUR:

LIU, J.

---

[10]    For example, for possession of heroin or cocaine, it might be difficult in the abstract to determine whether the offender has committed one act or several. Suppose he is arrested in possession of 12 separately packaged kilos of cocaine; is that one act or 12?  The Legislature has impliedly settled the matter:  it is one act subject to an additional enhancement term based on the overall weight of the contraband.  (Health & Saf. Code, § 11370.4, subd. (b)(3).)

13

## CONCURRING OPINION BY LIU, J.

I agree with the court that Penal Code section 654 (section 654) permits only one punishment in this case. I also agree with our decision to overrule *In re Hayes* (1969) 70 Cal.2d 604 and to disapprove *People v. Harrison* (1969) 1 Cal.App.3d 115. Unlike the court, however, I would not rest the judgment in this case on the ground that Jones's three crimes involved "a single physical act." (Maj. opn., *ante*, at p. 10.) In applying section 654, reasonable minds can and often do differ on how to define the "act" that constitutes a crime; as explained below, the present facts provide a case in point. Today's opinion provides little guidance for making that determination, as revealed by the court's repeated assertion that "[w]e express no opinion on what the outcome might be under other facts." (Maj. opn., *ante*, at p. 12.) The lack of guidance all but invites future litigation, and California courts will continue to struggle to achieve consistent and predictable application of section 654.

I prefer that we decide today's case on the basis of precedent — imperfect precedent, but precedent nonetheless. In situations where it is debatable whether separate crimes arise from a single physical act, we have determined the applicability of section 654 by examining the "intent and objective of the actor" and prohibiting multiple punishment "[i]f all of the offenses were incident to one objective." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*).) The *Neal* test has been criticized. But this court unanimously reaffirmed the test — warts and all — in *People v. Latimer* (1993) 5 Cal.4th 1203, 1205-1206 (*Latimer*) after lengthy and thoughtful consideration of whether it should be overruled. Despite

1

its shortcomings, the *Neal* test is our precedent, and it is squarely applicable to this case.

I.

Some section 654 cases indisputably involve a physically indivisible single act that is punishable in different ways by different provisions of law. In such cases, multiple punishment is prohibited by the plain language of section 654: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Thus, for a single act of driving, a defendant may be punished only once for driving under the influence (Veh. Code, § 23152, subd. (a)) and driving with a blood-alcohol level of .08 percent or greater (*id.*, subd. (b)). (*People v. Duarte* (1984) 161 Cal.App.3d 438, 447.) A defendant may be punished only once for attempted murder, assault with intent to murder, and malicious use of explosives for the single act of planting a bomb in the victim's car. (*People v. Kynette* (1940) 15 Cal.2d 731, 762, overruled on another ground in *People v. Bonelli* (1958) 50 Cal.2d 190, 197.) A defendant may be punished only once for possession of a sawed-off shotgun and possession of a concealable firearm by a felon based upon the same act of possessing a single firearm. (*People v. Scheidt* (1991) 231 Cal.App.3d 162, 170 [" 'it was the single possession of a sawed-off rifle that was made punishable by two different penal statutes' "]; *People v. Perry* (1974) 42 Cal.App.3d 451, 456 ["Here the single act made punishable by two different statutes was the illegal possession of a firearm capable of concealment upon the person"].) In all of these cases, there was no question as to the physical indivisibility of the act.

As the court acknowledges, however, "what is a single physical act might not always be easy to ascertain." (Maj. opn., *ante*, at p. 10.) This is such a case.

2

Police found a concealed and loaded firearm in the car that defendant, a convicted felon, was driving. He was convicted under three separate statutes for possession of a firearm by a felon, carrying a concealed firearm, and carrying a loaded firearm, respectively. The court concludes that this case involves a single act and on that basis holds that "a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654." (Maj. opn., *ante*, at p. 9.) Although this is a reasonable conclusion, it is not apparent how the court defines this single act. It would be equally reasonable to conclude that there were two criminal acts in this case: the act of possessing the firearm, which was complete and ongoing from the time defendant took possession of the firearm, and a separate criminal act when defendant placed the firearm in his car and transported it. It might even be reasonable to conclude that there were three criminal acts if one were to separately count the act of loading the firearm with ammunition. To ask how many physical acts were committed in a case like this is to plunge ourselves into insoluble metaphysical difficulties.

It is instructive to compare the reasoning in *People v. Coltrin* (1936) 5 Cal.2d 649 with the reasoning of *People v. Brown* (1958) 49 Cal.2d 577 (*Brown*), which overruled *Coltrin*. This court held that the defendant in *Coltrin* could be punished both for performing an unlawful abortion and for murder when the defendant performed an abortion on a 16-year-old girl that resulted in her death. The court reasoned that " '[t]he act of committing an abortion and the act of killing a person while attempting to do this are not merely the same act made punishable in different ways.' . . . [A]s a practical matter it cannot be said that the two charges involve but one act. The act of committing an abortion may be done without causing the death of the party operated upon. The act which causes the death of the same person is usually another act, careless or otherwise, which, while it may be committed in connection with the first and about the same time, involves a further and additional element." (*Coltrin*, 5 Cal.2d at p. 661.)

3

Over two decades later, we reached the opposite conclusion in *Brown*, *supra*, 49 Cal.2d 577, on similar facts. Overruling *Coltrin*, we reasoned that when the defendant performed an abortion that resulted in the death of the victim, "[i]t is artificial to say that the act which caused death in the Coltrin case, and the act which caused death in the present case, was another act than that which constituted the abortion." (*Brown*, at p. 593.) The *Coltrin* court reasonably concluded that the act of committing an abortion and the act of murdering the victim in the process are separate acts. The *Brown* court reached the equally reasonable conclusion that the defendant committed only a single act. These cases illustrate that asking whether separate crimes involve "a single physical act" (maj. opn., *ante*, at p. 10) is not a very illuminating inquiry where it is reasonably arguable that the crimes involved more than one act.

Another complication of the court's approach is that it seems to suggest different results depending on how a prosecutor chooses to draft the accusatory pleading. In this case, the Attorney General argues that separate acts occurred because defendant told the police he had obtained the gun three days before it was discovered in the car and had kept it at his grandmother's house. The court rejects this argument on the ground that the accusatory pleading did not charge defendant with possessing the gun before the date he was arrested. But if the accusatory pleading had charged defendant with possessing the gun before the date of the two unlawful carrying charges, would that have changed the outcome? Does the distinction make a difference? The court does not say, leaving prosecutors to wonder whether the lesson here is simply that they should draft the accusatory pleading differently in cases such as this.

To be sure, section 654 is a sufficiently beguiling statute that it makes sense to proceed cautiously and avoid broad pronouncements. In *People v. Ahmed* (2011) 53 Cal.4th 156, I saw no need for the court to invent a new rule that " 'when applied to multiple enhancements for a single crime, section 654 bars

4

multiple punishment for the same *aspect* of a criminal act' " because the case involved no "actual dispute on that question." (*Id.* at p. 169 (conc. opn. of Liu, J.).) Here, there is an actual dispute concerning the applicability of section 654, and there is a decent argument that defendant's possession of the gun was a separate act from his carrying offenses. Because it cannot be said that defendant's crimes *indisputably* involved a single act, we cannot resolve this case on the plain language of section 654. (Cf. *ante*, at pp. 2-3 [discussing indisputably single-act cases].) At the same time, we do not need to invent a new rule to decide this case. We need only apply our settled precedent.

II.

Where reasonable minds can differ on whether multiple crimes involve a single act, we have applied the "intent and objective" test set forth in *Neal*, *supra*, 55 Cal.2d at page 19: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."

We have applied the *Neal* test to bar multiple punishment in cases involving multiple acts united by a single common objective. (See, e.g., *People v. Britt* (2004) 32 Cal.4th 944, 953 (*Britt*) [sex offender's failure to inform former county of new address and separate failure to register in new county "achiev[ed] the common end of avoiding police surveillance"]; *Latimer*, *supra*, 5 Cal.4th at p. 1216 ["Although the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes."]; *People v. Beamon* (1973) 8 Cal.3d 625, 639 [kidnapping and robbery united by a "single intent and objective" to rob the victim]; *People v. McFarland* (1962) 58 Cal.2d 748, 762 [burglary and grand theft "were motivated by one objective, theft"].)

5

Because a well-developed body of precedent has applied *Neal* to cases that *unquestionably* involve multiple acts, it follows that the *Neal* test is the approach best supported by our case law for resolving cases that *arguably* involve multiple acts. The *Neal* test readily resolves the instant case: Defendant possessed and carried a loaded and concealed weapon " 'for protection' " (maj. opn., *ante*, at p. 2), and no evidence suggests any other purpose. Because his three crimes shared a common intent and objective, section 654 prohibits multiple punishment. Under the *Neal* test, the outcome would be the same on these facts whether or not the prosecutor charged defendant with antecedent possession of the gun, and whether or not the prosecutor chose to argue defendant's antecedent possession to the jury.

The *Neal* test has not been without controversy, and in 1993, the court in *Latimer* expressly considered whether to overrule it. The court opined that *Neal* does not always ensure commensurability between punishment and culpability: "A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective." (*Latimer*, *supra*, 5 Cal.4th at p. 1211.) The defendant in *Latimer* kidnapped the victim, drove her to the desert, and raped her. The court said "[t]he kidnapping was a completely separate crime; it should be separately punishable." (*Ibid.*) But despite this concern, the court undertook an extended discussion of stare decisis and declined to overrule *Neal*. Instead, the court unanimously reaffirmed *Neal* on the ground that "[t]he Legislature has enacted substantial legislation reflecting its acceptance of the *Neal* rule." (*Id.* at p. 1214; see *id.* at p. 1216 ["The *Neal* rule . . . has influenced so much subsequent legislation that stare decisis mandates adherence to it."]; see also *id.* at p. 1217 (conc. opn. of Mosk, J.) ["I do not join in the criticism of *Neal*."].) Given the court's unanimity in reaffirming the *Neal* test as well as our application of *Neal* to prohibit multiple punishment in *Latimer* (*id.* at p. 1216) and again as

6

recently as 2004 (see *Britt, supra*, 32 Cal.4th at p. 953), the "intent and objective" test is well-settled in our jurisprudence.

The *Neal* test requires courts to apply the appropriate level of specificity or generality in identifying the defendant's intent and objective. In *Britt*, where a convicted sex offender moved from one county to another without informing either county and thereby committed two crimes, we said that "finding separate objectives here — to mislead or conceal information the law enforcement agency in each county — parses the objectives too finely. . . . Here the objective — avoiding police surveillance — was achieved just once, but only by the combination of both reporting violations." (*Britt, supra*, 32 Cal.4th at p. 953.) The court in *Britt* distinguished *People v. Perez* (1979) 23 Cal.3d 545, 550-554, which held that section 654 did not bar multiple punishment for multiple sexual offenses that occurred during an attack lasting 45 minutes to an hour. Rejecting the defendant's contention that "his sole intent and objective was to obtain sexual gratification," we said that "[s]uch an intent and objective is much too broad and amorphous to determine the applicability of section 654. Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts." (*Perez, supra*, 23 Cal.3d at p. 552.)

As these cases show, the application of *Neal*'s "intent and objective" test is not algorithmic. But this court has acknowledged that "[b]ecause of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an 'act or omission,' there can be no universal construction which directs the proper application of section 654 in every instance." (*People v. Beamon, supra*, 8 Cal.3d at p. 636.) The court suggests it will be difficult to apply *Neal* where a defendant may have multiple objectives or where the evidence does not show what the defendant's objective was. (Maj. opn., *ante*, at pp. 12-13.) Notwithstanding such difficulties, we have not hesitated to "focus

7

on the question whether defendant should be deemed to have entertained single or multiple criminal objectives" in a wide range of scenarios. (*People v. Perez, supra*, 23 Cal.3d at p. 552; see *Latimer, supra*, 5 Cal.4th at p. 1216 [finding single objectives for kidnapping and rape even though "[i]t could be argued that defendant had two intents"]; *People* v. *Harrison* (1989) 48 Cal.3d 321, 326, 334-338 [rejecting defendant's claim of single objective for multiple sexual offenses during an attack on a single victim lasting seven to ten minutes].) The *Neal* test is not perfect, but we recognized its imperfections in *Latimer* and reaffirmed it anyway. (*Latimer, supra*, 5 Cal.4th at p. 1210-1211.)

In this case, the *Neal* test avoids the conceptual difficulty of determining whether one or more physical acts were involved and provides more guidance to courts and prosecutors than the court's approach. Under *Neal*, it does not matter whether Jones picked up the gun three days earlier or possessed the firearm earlier that day. It does not matter whether he loaded or concealed the gun before his car was stopped. And it does not matter — in future cases with identical facts — whether the prosecutor charges the defendant with antecedent possession or argues that point to the jury. What matters is that Jones's triply unlawful conduct was united by a single common objective. Accordingly, our precedent dictates that Jones may not be punished more than once under section 654.

LIU, J.

I CONCUR:

WERDEGAR, J.

8

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Jones

---

**Unpublished Opinion** XXX NP opn. filed 12/10/09 – 3d Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

---

**Opinion No.** S179552
**Date Filed:** June 21, 2012

---

**Court:** Superior
**County:** Sacramento
**Judge:** Jaime R. Roman

---

**Counsel:**

Sandra Uribe and Deanna Lamb, under appointments by the Supreme Court, and Morgan H. Daly, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jennevee H. De Guzman, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Deanna Lamb
Central California Appellate Program
2407 J Street, Suite 301
Sacramento, CA 95816
(916) 441-3792

Jennevee H. De Guzman
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
9916) 327-1145

10

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **NOTICE OF SUPPLEMENTAL AUTHORITY** was served via United States Mail, postage prepaid, on this _28_ , day of FEBRUARY, 2013; on the following:

KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Attorneys for Defendant California Attorney General Kamala Harris

AND

T. PETER PIERCE
LISA BOND
AARON C. O'DELL
RICHARDS WATSON & GERSHON
A Professional Corporation
355 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3101
Attorney for Defendants:
CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE CHIEF
JOSEPH LEONARDI,  OFFICER TODD HEYWOOD and DOES 1 to 10

Charles Nichols
Plaintiff, In Pro Per