1   Charles Nichols
    PO Box 1302
2   Redondo Beach, CA  90278
    Voice: (424) 634-7381
3   E-Mail: CharlesNichols@Pykrete.info
    In Pro Per
4

5

6

7

8                  United States District Court

9                  Central District of California

10

11  Charles Nichols,                    )  Case No.: CV-11-9916 SJO (SS)
                                        )
12          PLAINTIFF,                   )  (Honorable S. James Otero)
                                        )
13      vs.                             )  **PLAINTIFF'S OPPOSITION TO
                                        )  MOTION BY DEFENDANT CITY
14  KAMALA D. HARRIS, Attorney          )  OF REDONDO BEACH TO
                                        )  DISMISS THE SECOND AND
15  General, in her official capacity as )  THIRD CLAIMS IN THE SECOND
                                        )  AMENDED COMPLAINT OR, IN
16  Attorney General of California, CITY )  THE ALTERNATIVE, MOTION
                                        )  FOR MORE DEFINITE
17  OF REDONDO BEACH, and DOES 1        )  STATEMENT, ETC.;
                                        )  MEMORANDUM OF POINTS AND
18  to 10,                              )  AUTHORITIES; DECLARATION
                                        )  OF CHARLES NICHOLS**
19          Defendants.                 )
                                        )
20                                      )  Date: Vacated
                                        )  Time: N/A
21                                      )  Courtroom: 23
                                        )  Magistrate: Hon. Suzanne H. Segal
22                                      )  Trial Date: Not Set
                                        )  Action Filed: Nov. 30, 2011
23                                      )

24

25

26

27

28

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND
AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

# **TABLE OF CONTENTS**

**PAGE(S)**

**1. INTRODUCTION**…………...…………………………..……………....1

**2. ARGUMENT**…………………...………………………..………….....2

**3. CONCLUSION**…………………...…………….……...…………….…...25

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**FEDERAL CASES**

Ashcroft v. Iqbal, 129 S. Ct. 1937 - Supreme Court (2009)...........................21

Bateman v. Perdue, 881 F. Supp. 2d 709, 714 (E.D.N.C. 2012)........................8

Bautista v. Los Angeles County, 216 F. 3d 837 - Court of Appeals, 9th Circuit
(2000)........................................................................................25

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 - Supreme Court (2007).........21

Chavez v. Ill. State Police, 251 F.3d 612, 635 (7th Cir. 2001).......................16

Coates v. Cincinnati, 402 US 611 - Supreme Court (1971)...........................20

District of Columbia v. Heller, 554 U.S. 570 (2008).............................*passim*

Ex Parte Young, 209 U. S. 123 (1908)...............................................22

Ezell v. City of Chicago, 651 F. 3d 684 - Court of Appeals, 7th Circuit (2011).....8

Flowers v. Fiore, 359 F.3d 24, 34 (1st Cir.2004).....................................16

Freeman v. City of Santa Ana, 68 F. 3d 1180 - Court of Appeals, 9th Circuit
(1995)........................................................................................16

Gilbertson v. Albright, 381 F.3d 965, 968 (9th Cir. 2004) (en banc)...............25

Gillette v. Delmore, 979 F. 2d 1342 - Court of Appeals, 9th Circuit (1992).........21

Kolender v. Lawson, 461 US 352 - Supreme Court (1983)..........................14

Lacey v. Maricopa County, 693 F. 3d 896 - Court of Appeals, 9th Circuit
(2012)........................................................................................16

Lefemine v. Davis, 732 F. Supp. 2d 614 - Dist. Court, D. South Carolina 2010....2

Lefemine v. Wideman, 133 S. Ct. 9 - Supreme Court 2012)...........................2

Li v. Kerry, Court of Appeals, 9th Circuit (2013)....................................21

McDonald v. City of Chicago, 561 U.S. , 130 S. Ct. 3020 (2010).........5, 9, 13, 24

Moore v. Madigan, 702 F. 3d 933 - Court of Appeals, (7th Circuit 2012)..........8

Nat'l Rifle Ass's of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms &
Explosives, 700 F.3d 185, 204 (5th Cir. 2012).......................................7

ii

# TABLE OF AUTHORITIES (CONT.)

**PAGE(S)**

**FEDERAL CASES (CONT.)**

National Socialist Party of America v. Skokie, 432 U.S. 43, 97 S.Ct. 2205
(1977)..................................................................................................................11

Nordyke v. King, 229 F. 3d 1266 - Court of Appeals, 9th Circuit (2000).......17, 18

Nordyke v. King, 319 F. 3d 1185 - Court of Appeals, 9th Circuit (2003)...........18

Nordyke v. King, 44 P. 3d 133 - Cal: Supreme Court (2002).........................18

Nordyke v. King, 563 F. 3d 439 - Court of Appeals, 9th Circuit (2009)............19

Nordyke v. King, 611 F. 3d 1015 - Court of Appeals, 9th Circuit (2010)..........19

Nordyke v. King, 644 F. 3d 776 - Court of Appeals, 9th Circuit (2011)...........19

Nordyke v. King, 681 F. 3d 1041 - Court of Appeals, 9th Circuit (2012)...........17

Oklahoma City v. Tuttle, 471 US 808 - Supreme Court (1985).......................21

Perez v. Ledesma, 401 US 82 - Supreme Court (1971)...............................21

Peruta v. County of San Diego, 758 F. Supp. 2d 1106 - Dist. Court, SD California
(2010)...............................................................................................22

Peterson v. Martinez No. 11-1149 (10th Cir. Feb. 22, 2013)....................8, 12

Rosenbaum v. City & Cnty. of S.F., 484 F.3d 1142, 1152 (9th Cir.2007)...........16

Snyder v. Phelps, 562 U.S. ___ (2011)..............................................11

Texas v. Johnson, 491 US 397 - Supreme Court (1989).............................20

US v. Armstrong, 517 US 456 - Supreme Court (1996).............................16

US v. Henry, 688 F. 3d 637 - Court of Appeals, 9th Circuit (2012)..................6

US v. Stevens, 130 S. Ct. 1577 - Supreme Court (2010)...........................14

US v. Vongxay, 594 F. 3d 1111 - Court of Appeals, 9th Circuit (2010)..5, 6, 10, 15

United States v. Avery, 137 F.3d 343, 358 (6th Cir. 1997)..........................16

United States v. Black No. 11-5084 (2013)............................................2

United States v. Frazier, 408 F.3d 1102, 1108 (8th Cir.2005).......................16

United States v. King, 990 F.2d 1552, 1559 (10th Cir. 1993)........................3

iii

# TABLE OF AUTHORITIES (CONT.)

PAGE(S)

**FEDERAL CASES (CONT.)**

United States v. Masciandaro, 638 F.3d 458, 475 (4th Cir. 2011)..............6, 7, 10

United States v. Weaver, No. 2:09-cr-00222, 2012 WL 727488 (S.D.W. Va. Mar. 6, 2012)...................................................................................8

Wayte v. United States, 470 US 598 - Supreme Court (1985)......................16

Woollard v. Gallahger, 2013 U.S. App. Lexis 5617 (4th Cir. March 21, 2013).......6

Younger v. Harris, 401 US 37 - Supreme Court (1971)........................*passim*

Zadvydas v. Davis, 533 US 678 - Supreme Court (2001)...........................14

**STATE CASES**

Nunn v. State, 1 Ga., (1846)...............................................5, 10

People v. Aiken, 4 N.Y.3d 324 (2005)..........................................12

People v. Jones, 278 P. 3d 821 - Cal: Supreme Court (2012)........................23

State v. Chandler, 5 La. Ann., (1850)......................................5, 10, 12

Williams v. State of Maryland, 10 A.3d 1167, 1177, 417 Md. 479 (Md. 2011).......7

**STATUTES, RULES & OTHER AUTHORITY**

California Assembly Bill 1527....................................................3, 4, 24

California Penal Code section 12031.............................................22

California Penal Code section 16520.............................................4

California Penal Code section 16840.............................................18

California Penal Code section 25850.........................................15, 22

California Penal Code section 26405.............................................5

F.R.C.P Rule 10(b)............................................................25

Redondo Beach Municipal Code § 5-8.01(a)(1).....................................4

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

1

## **TABLE OF AUTHORITIES (CONT.)**

2

**PAGE(S)**

3

## **STATUTES, RULES & OTHER AUTHORITY (CONT.)**

4  Redondo Beach Municipal Code § 4-35.20………………………….……*passim*

5  Redondo Beach Parks Commission Meeting Minutes, 5-12-2010, pg 17,

6  http://www.redondo.org/civica/filebank/blobdload.asp?BlobID=20993…………..19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND
AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff, Charles Nichols, in pro per, hereby submits his written opposition to the Motion To Dismiss The Second And Third Claims In The Second Amended Complaint Or, In The Alternative, Motion For More Definite Statement filed by Defendant City of Redondo Beach.

### **1. INTRODUCTION.**

Defendant City of Redondo Beach (CITY) has filed a motion to dismiss (MTD) the second amended complaint (SAC) on file herein. In the alternative, CITY is making a Motion for a More Definite Statement. Plaintiff In Pro Per, Charles Nichols, opposes those motions. The Memorandum of Points And Authorities In Support Of Defendant City Of Redondo Beach's Motion To Dismiss The Second And Third Claims In The Second Amended Complaint Or, In The Alternative, Motion For More Definite Statement is hereinafter referred to as RBMPA.

### **2. ARGUMENT**

RBMPA at 1:4-6. This court has already denied CITY'S prior motion to dismiss with prejudice and alternative motion for a more definite statement Plaintiff's First Amended Complaint.

RBMPA at 1:8-16. CITY admits that Redondo Beach Municipal Code (RBMC) § 4-35.20 is preempted by the California Constitution and as such "...is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 313 U. S., at 402." *Younger v. Harris*, 401 US 37 - Supreme Court 1971 at 53-54.

RBMPA at 1:18-26. The First and Second Amendments are fundamental rights not limited to narrow exceptions that must match the identical facts to prior precedents. RBMC § 4-35.20 bans ALL uses and ALL carrying of ALL weapons for ALL purposes throughout the City of Redondo Beach by the plain text of the

1

ordinance and in the latter by CITY prosecuting Plaintiff for violating the local ordinance in a location of the City ("beach" zone) exempted by CITY'S own municipal ordinances and on a street marked "Private Property" where Plaintiff was arrested, searched without his consent and had his valuable property taken from him. Even if Plaintiff had stepped onto parkland the burden of proof is on CITY to prove why his First, Second and Fourth Amendment Rights do not apply in a park. Parks both historically and to the present day are public forums where one has the right to express oneself and where shooting ranges are located. The CITY ordinance is not a time, place or manner restriction, neither is it content neutral, nor is it a presumptively lawful regulation under *District of Columbia v. Heller*, 554 U.S. 570. It is a complete and total ban on weapons possession in all places accessible by the public in the city. "In traditional public forums, such as streets, public sidewalks, and parks, "a State's right to limit protected expressive activity is sharply circumscribed: It may impose reasonable, content-neutral time, place, and manner restrictions . . ., but it may regulate expressive content only if such a restriction is necessary, and narrowly drawn, to serve a compelling state interest." *Lefemine v. Davis*, 732 F. Supp. 2d 614 - Dist. Court, D. South Carolina 2010 (Attorney fees awarded to Plaintiff, PER CURIAM, *Lefemine v. Wideman*, 133 S. Ct. 9 - Supreme Court 2012). In the nearly three years since RBMC § 4-35.20 was enacted CITY has not so much as posted a single sign warning the public in general, and transients in particular, that CITY has banned ALL weapons. Contrast this with the secure area of airports as well as state and Federal courthouses which give fair warning to all by posting signs at their entrances.

RBMPA at 1, 28 through 2,1-3. The Second Amendment Right is established as is State preemption both which CITY violated. CITY cites no authority for the proposition that there can be no violation of the Fourth Amendment absent a violation of the Second Amendment. In the case of *United States v. Black* No. 11-5084 slip op. at 13 (4th Cir. Feb. 25, 2013) the court ruled

2

"…where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention. Permitting such a justification would eviscerate Fourth Amendment protections for lawfully armed individuals in those states. *United States v. King*, 990 F.2d 1552, 1559 (10th Cir. 1993)." California, on May 21, 2012, permitted the Open Carry of unloaded long guns in the City of Redondo Beach. Plaintiff's complaint alleges not only an unconstitutional detention, search and seizure but an unconstitutional seizure of his firearm and other valuable property as well.

RBMPA at 2, 5-7. On August 7, 2010 members of the group South Bay Open Carry openly carried weapons in the beach zone of the city but were not cited, arrested or prosecuted. On May 21, 2012 Plaintiff and members of his group (California Right To Carry) also staged a protest in the beach zone of the city for which Plaintiff is being prosecuted. CITY defended Los Angeles County Superior Court Judge David Sotelo's denial of Plaintiff's criminal demurrer in which Judge Sotelo held that RBMC § 4-35.20 was constitutional because of CITY'S proximity to the predominantly minority communities of Compton, Carson and Los Angeles. Classifications based on race are suspect classes. Only 2.8% of the population of Redondo Beach is Black. Plaintiff can easily amend his Complaint.

RBMPA at 2, 8-11. CITY'S firearm ban is not limited to "specific types of public property." According to CITY'S own City Attorney, the ban applies to ALL public spaces in the city to which Plaintiff has already submitted a video. Even Assembly Bill 1527, of which the author openly characterized as a Long Gun Open Carry Ban, permits limited exceptions in public places (including municipal parks, government buildings and school zones) which RBMC § 4-35.20 does not.

RBMPA at 2, 12-21. CITY'S reliance on *Younger* fails. This Federal proceeding began on November 30, 2011. CITY did not file criminal charges against Plaintiff until nearly eight months later (July 13, 2012). The Supreme Court said in *Younger* "We express no view about the circumstances under which

3

federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." *Younger* at 41. CITY cites no authority that supports its contention that an illegal prosecution brought nearly eight months after an action was filed is subject to abstention under *Younger*. Furthermore, Plaintiff has no opportunity to present his constitutional challenges in state court. Plaintiff's attorney has stated in open court to the Superior Court judge Chet Taylor that he cannot provide Plaintiff with a competent defense. Judge Taylor has not replaced his public defender with a competent attorney. Judge Taylor has said he will not allow any motions to dismiss based on any grounds made in Plaintiff's demurrer to his criminal charge. CITY has objected to Plaintiff filing any motions to dismiss based on constitutional challenges. Plaintiff cannot competently represent himself pro-se in his criminal case. Plaintiff is prohibited from raising challenges, constitutional or otherwise in his criminal case.

RBMPA at 2, 22-25. Younger does not support a stay. None of the grounds for Abstention are present even if the criminal complaint had been filed prior to this Federal civil action.

RBMPA at 2, 26-28 and 3, 1-3. Plaintiff's former attorney refused to file an objection to Magistrate Judge's Report and Recommendation despite Plaintiff's instructions. Plaintiff requested and was denied the opportunity to file a pro-se objection to the Report and Recommendation.

RBMPA at 3, 6-24. The term "park" shall not include the beach as defined in Section 5-8.01(a)(1) of this Code. SAC at pg 15, lines 1-2. Plaintiff's protest occurred entirely within the beach zone delineated by RBMC 5-8.01(a)(1).

RBMPA at 3, 26-28 and 4, 1-23. Assembly Bill 1527 provides certain limited exceptions which permit Plaintiff to carry a long gun in the city of Redondo Beach including its "parks." Antique firearms are exempt from the ban (California Penal Code section 16520), Plaintiff may openly carry an unloaded antique firearm everywhere it was legal for him to openly carry an unloaded

4

1    cartridge firearm. Modern cartridge firearms are exempted in places of business
2    which the California courts have held are public, open spaces (PC 26405(a)) when
3    Plaintiff is traveling directly to his relative's home in Redondo Beach (PC
4    26405(c)). By a duly authorized military or civil organization, or the members
5    thereof, while parading or while rehearsing or practicing parading, when at the
6    meeting place of the organization (PC 26405(h). Within a gun show…(PC
7    26405(m)), within a school zone…(PC 26405(n)), as an an authorized participant
8    in an entertainment event…(PC 26405(r)). And most notably, PC 26400(a) –
9    When Plaintiff is inside of his motor vehicle. Thus, absent an injunction against
10   CITY, Plaintiff is still subject to future arrest, prosecution fine and imprisonment
11   by CITY.

12        RBMPA at 4, 25-28 and 5, 3-28 and 6, 1-5. None of Plaintiff's claims are
13   dependent upon any other claim and CITY cites no authority where a common
14   analytical predicate foreclosed one claim or the other. Possession of a fully
15   functional loaded firearm within the home is not at issue here and neither *Heller*
16   (*District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637
17   (2008)) nor *McDonald* (*McDonald v. City of Chicago*, 561 U.S. , 130 S. Ct. 3020,
18   177 L. Ed. 2d. 894 (2010)) limited the scope of its decision to the home. Nowhere
19   in the majority opinions or in the *McDonald* concurring opinions does it say "..that
20   possession in the home for self-defense is the core right protected by the Second
21   Amendment." It is Justice Breyer in his dissent which makes that allusion at 2869
22   and even then he is referring to Justice Stevens' dissent at 2846. The conclusion of
23   the majority is that "self-defense" is the "central component of the right itself."
24   *Heller* at 2801. CITY makes that same failed argument that was made in *US v.*
25   *Vongxay*, 594 F. 3d 1111 - Court of Appeals, 9th Circuit 2010 to which the court
26   cited Section III of the *Heller* decision in response. Section III of *Heller* at 2817
27   cites *State v. Chandler*, 5 La. Ann., at 489-490 and *Nunn v. State*, 1 Ga., at 251,
28   both of which held that Open Carry is the right guaranteed by the Constitution. It

1  is nonsensical to claim that the "presumptively lawful" restrictions and

2  prohibitions on carrying firearms in public are valid but not the Open Carry right

3  itself.  Neither *Vongxay* nor any subsequent 9th Circuit Appellate decision has

4  limited the scope of the *Heller* decision to one's home.  "...[T]he Second

5  Amendment "guarantee[s] the individual right to possess and carry weapons in

6  case of confrontation." 554 U.S. at 592, 635, 128 S.Ct. 2783." *US v. Henry*, 688 F.

7  3d 637 - Court of Appeals, 9th Circuit 2012.  No 9th Circuit Appellate decision,

8  published or unpublished, has limited the scope of the Second Amendment to one's

9  home.  CITY'S reliance on *Woollard* (*Woollard v. Gallahger*, 2013 U.S. App.

10  Lexis 5617 (4th Cir. March 21, 2013)) is misplaced.  *Woollard* involved a handgun

11  licensing scheme which permits a license holder to carry a loaded, concealed

12  handgun.  Maryland does not prohibit the Open Carry of loaded long guns except

13  for in a vehicle where it must generally be unloaded.  Prohibitions on concealed

14  carry are presumptively lawful and the *Woollard* Plaintiffs argued for concealed

15  carry saying that states may ban Open Carry if they wish, contrary to *Heller*.  The

16  court in *Woollard* assumed that the Second Amendment applies outside of the

17  home but declined to say either way.  The court applied intermediate scrutiny to

18  the issuance of permits which would allow for the concealed carry of a loaded

19  handgun.  Likewise, *Masciandaro* (*United States v. Masciandaro*, 638 F.3d 458,

20  475 (4th Cir. 2011)) involved a post-conviction analysis of a loaded, concealed

21  handgun to which the court applied intermediate scrutiny and ducked the Second

22  Amendment question entirely saying "even if his claim implicates the Second

23  Amendment, a question we do not resolve here…" *Masciandaro* at 460.

24  *Masciandaro* is also distinguishable from CITY'S "park" ban because the National

25  Park Service regulation [36 C.F.R. § 2.4] that existed at the time prohibited

26  possession of loaded weapons in motor vehicles and indicated that it was lawful to

27  hunt with weapons, use them for target practice, have them in residential

28  dwellings, use them for research activities, and carry them for protection in "pack

6

trains" or on trail rides, all on National Park Service land. *Masciandaro* was convicted for possessing a loaded, concealed handgun within his vehicle. It was not a crime for him to possess an unloaded firearm within his vehicle comparing the former to concealed carry – "In this respect, § 2.4(b) is analogous to the litany of state concealed carry prohibitions specifically identified as valid in Heller. See 128 S.Ct. at 2816-17." *Masciandaro* at 474.

RBMPA at 6, 6-15. Likewise, *Williams v. State of Maryland*, 10 A.3d 1167, 1177, 417 Md. 479 (Md. 2011) involved the concealed carry of a loaded handgun and the Maryland Supreme Court ducked the Second Amendment question. More relevant than the one line of dicta cited by CITY is what the *Williams* court actually held – "We shall hold that Section 4-203(a)(1)(i) of the Criminal Law Article, which prohibits wearing, carrying, or transporting a handgun, ***without a permit*** and outside of one's home, is outside of the scope of the Second Amendment. We also shall hold that, because ***Williams failed to apply for a permit*** to wear, carry, or transport a handgun, he lacks standing to challenge Section 5-301 et seq. of the Public Safety Article, Maryland Code (2003)...as well as COMAR 29.03.02.04...As a result, Williams's conviction will stand." *Williams* at 1169-1170 (internal footnotes omitted, emphasis and italics added). *Nat'l Rifle Ass's of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 204 (5th Cir. 2012) dealt with Heller's presumptively lawful regulations on the commercial sale of firearms and not the fundamental right itself – To openly carry a firearm for the purpose of self-defense and for other lawful purposes. Scrutiny is irrelevant in this case as CITY has enacted a complete ban in public.

RBMPA at 6, 16-28, and 7, 1-2. "We are disinclined to engage in another round of historical analysis to determine whether eighteenth-century America understood the Second Amendment to include a right to bear guns outside the home. The Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside." *Moore v.*

7

1  *Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit 2012 at 942. *Bateman v.*

2  *Perdue*, 881 F. Supp. 2d 709, 714 (E.D.N.C. 2012) ("Although considerable

3  uncertainty exists regarding the scope of the Second Amendment right to keep and

4  bear arms, it undoubtedly is not limited to the confines of the home."); *United*

5  *States v. Weaver*, No. 2:09-cr-00222, 2012 WL 727488, at \*4 (S.D.W. Va. Mar. 6,

6  2012) ("While it is true that the Fourth Circuit has so far stopped short of expressly

7  recognizing a Second Amendment right to keep and bear arms outside the home,

8  this Court has no such hesitation." (footnote omitted)). "Peterson seeks a ruling

9  that Colorado may not restrict CHLs to residents of the state. If he succeeds in this

10 challenge, he would be free to obtain a CHL and carry a concealed weapon

11 throughout the state. ***By contrast, had Peterson challenged the Denver ordinance,***

12 ***he may have obtained a ruling that allows him to carry a firearm openly while***

13 ***maintaining the state's restrictions on concealed carry.*** The specific

14 constitutional challenge thus delineates the proper form of relief and clarifies the

15 particular Second Amendment restriction that is before us. Because only the

16 Colorado statute has been challenged, and thus only the statute is at issue in the

17 case at bar, we must look to the effect of that statute in conducting our Second

18 Amendment assessment. *Peterson v. Martinez* No. 11-1149 slip op. at 19-20 (10th

19 Cir. Feb. 22, 2013) emphasis and italics added.

20        RBMPA at 7, 3-8. CITY now claims its "park" ban applies only to

21 "recreational space" skipping over the fact that Plaintiff is being prosecuted by

22 CITY for protesting on commercially zoned property which CITY has designated

23 as a "business district" and on a street marked as a private road. Plaintiff

24 submitted a video of the Redondo Beach City attorney stating that the ban applies

25 to all public places in the city. The scope of CITY'S ban is no less than the

26 citywide ban on shooting ranges in Chicago, Illinois which was struck down in

27 *Ezell v. City of Chicago, 651 F. 3d 684 - Court of Appeals, 7th Circuit 2011.*

28 Unlike CITY'S ban, Illinois had provisions for transporting unloaded firearms in

1    public. CITY has a textbook case of an unconstitutionally vague ordinance which
2    applies anywhere CITY, its police or judges says it applies. Plaintiff also has
3    video of CITY applying its "park" ban to the South Bay Shopping Center and an
4    adjacent restaurant but not arresting members of the South Bay Open Carry group.

5          RBMPA at 7, 9-16. Plaintiff alleges a Second Amendment right to openly
6    carry a firearm for the purpose of self-defense and for other lawful purposes.
7    Plaintiff submits that peaceful protest is a lawful purpose as are many other uses of
8    weapons in a First Amendment context such as in the making of movies,
9    performance of plays and marching in parades – All of which are banned by the
10   plain text of CITY'S ordinance.

11         RBMPA at 7, 18-27 and 8, 1-15. Both *Heller* and *McDonald* said that the
12   Second Amendment is a fundamental right. *McDonald* incorporated the Second
13   Amendment to all states and local governments because it is a fundamental right.
14   Both *Heller* and *McDonald* said that there were places the right to carry weapons
15   existed such as the home and places it characterized as sensitive places such as
16   schools and government buildings where it did not. Open Carry, which *Heller* says
17   is the right guaranteed by the Constitution, is a fundamental right. *Heller* has taken
18   rational review off of the table. The burden is upon CITY to prove why its ban on
19   even the possession of ALL weapons in ALL public places for ALL uses is
20   constitutional.

21         RBMPA at 8, 17-25. The municipal ordinance Plaintiff is being prosecuted
22   for violating is not a regulation it is a ban, a complete prohibition on even the
23   possession of a weapon in a public place. The Redondo Beach Municipal code
24   does not define a "public place." The California courts have. Private residential
25   property not fully enclosed by a fence tall enough to deter access by the public is a
26   "public place." Commercial property open to the public is a "public place" just as
27   are public streets and sidewalks. Absent a definition of "public place" in its

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND
AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

municipal code which differs from that of the State's, CITY is bound by the state definitions and judicial constructions of public places.

RBMPA at 8, 26-28 and 9, 1-19. Plaintiff has not been charged with possession of a firearm in a school or a government building, places which have long since been preempted by state law except in the case of gun shows, where the legislature has expressly authorized local control. Even then it was limited to gun shows and not the open carry by private individuals. Nor has Plaintiff been charged with being a prohibited person in possession of a firearm or with carrying a concealed weapon or, for that matter, any of the presumptively lawful prohibitions and restrictions on the Second Amendment right. CITY cites *US v. Vongxay*, 594 F. 3d 1111 - Court of Appeals, 9th Circuit 2010 which in turn cited the section of Heller which cited both *State v. Chandler*, 5 La. Ann., at 489-490 and *Nunn v. State*, 1 Ga., at 251 which held that Open Carry is the right guaranteed by the Constitution. Although the 4th Circuit in *Masciandaro* ducked the Second Amendment question it noted that, unlike CITY, the National Park Service regulation did not prohibit the possession of unloaded firearms and therefore applied intermediate scrutiny to the presumptively lawful prohibition on carrying a loaded, concealed handgun in a public place. Plaintiff reminds the court that he is being prosecuted for a violation of a municipal ordinance in a location of the city where by its own municipal code the ordinance does not apply. CITY has also declared ALL open spaces in the city to be a "park." In that light, CITY cannot now contend that its municipal ordinance now applies solely to some undefined "…government-owned property maintained for recreational use."

RBMPA at 9, 21-28 and 10, 1-28 and 11, 1-7. CITY concedes the Second Amendment right to possess a firearm for the purpose of self-defense and CITY has known since December 6, 2011 that there is a documented death threat against Plaintiff. It is indisputable that CITY took Plaintiff's firearm and left him defenseless. CITY deprived Plaintiff of a fundamental, enumerated right. The

10

deprivation confers standing, the burden of proof to justify that deprivation lies
with CITY. Plaintiff does not seek solely to carry a firearm for the purpose of self-
defense but for other lawful purposes as well. Plaintiff submits that he has a First
Amendment right to openly carry an unloaded firearm. CITY has banned ALL
First Amendment uses of ALL weapons, including ALL firearms, ALL knives and
ALL Archery equipment in ALL public places of the city, virtually all of which is
zoned other than for parks and recreation. In fact, most of CITY'S land zoned as
such lies within the beach zone of the city exempted by its own municipal
ordinances from the ban. *Heller* at 2809 says that Open Carry is "noble." Plaintiff
submits that the First Amendment protects noble speech and conduct just as it
protects reprehensible speech and conduct such as: neo-NAZIs marching in full
uniform through a predominantly Jewish neighborhood where victims of the
holocaust lived (*National Socialist Party of America v. Skokie*, 432 U.S. 43, 97
S.Ct. 2205, 53 L.Ed.2d 96 (1977)), and outrageous speech and conduct such as that
of Westboro Baptist Church in *Snyder v. Phelps*, 562 U.S. ___ (2011). For this
court to concur with CITY that Plaintiff has no First Amendment right to openly
carry an unloaded firearm in a public place then this court would be concluding
that Open Carry is an obscenity and every honor guard who openly carries an
unloaded rifle in a park, on Veterans Day, and every person who marches in a
parade openly carrying an unloaded firearm is committing an obscene act.

RBMPA 11, 8-22. A written death threat and police report is a factual basis.
Plaintiff tried to submit the police report under seal in support of his initial
complaint but it was rejected. If this court no longer possesses the document then
Plaintiff is willing to again submit it under seal if this court so requests. CITY,
much like DEFENDANT HARRIS, seems preoccupied with conflating decisions
upholding presumptively lawful restrictions on the carrying of loaded, concealed
handguns with its unconstitutional prohibition on even the possession of an
unloaded firearm and specifically its unconstitutional prohibition on the right

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND
AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

1    guaranteed by the Constitution – Open Carry. *Kachalsky* did not challenge New

2    York's 1963 ban on openly carrying loaded handguns and New York does not

3    prohibit the Open Carry of long guns, loaded or unloaded. CITY'S citation of

4    *Kachalsky* (RBMPA 11,22) left out the last sentence and most relevant part of the

5    decision – "See, e.g., *People v. Aiken*, 4 N.Y.3d 324, 327-29, 795 N.Y.S.2d 158,

6    828 N.E.2d 74 (2005) (discussing duty to retreat in New York)." California, unlike

7    New York, has no duty to retreat (SAC ¶ 49). Had *Kachalsky* challenged New

8    York's ban on the Open Carry of loaded handguns he, like the Plaintiff in

9    *Peterson*, may very well have prevailed as the 2nd Circuit Court of Appeals noted

10    in footnote 13 of *Kachalsky* "Notably, Chandler and Reid conflict with Plaintiffs'

11    position, at least in part. Plaintiffs contend that a state may choose to ban open

12    carrying so long as concealed carrying is permitted. But both Chandler and Reid

13    suggest that open carrying must be permitted. The Reid court explained: Under the

14    provision of our constitution, we incline to the opinion that the Legislature cannot

15    inhibit the citizen from bearing arms openly, because it authorizes him to bear

16    them for the purposes of defending himself and the State, and it is only when

17    carried openly, that they can be efficiently used for defence. 1840 WL 229, at *5;

18    see also *Chandler*, 1850 WL 3838, at *1." Plaintiff has always contended that the

19    *Heller* decision means exactly what it said, that Open Carry is the right guaranteed

20    by the Constitution and that states can prohibit concealed carry except for certain

21    very narrow exceptions such as travelers while on a journey. In any event, none of

22    California's concealed carry statutes are at issue in this case and the concealed

23    carry of weapons, like Open Carry, is an area of the law where CITY'S municipal

24    ordinances are preempted.

25        RBMPA 11, 23-28 and 12, 1-5. The existence of the Second Amendment

26    right, the central component of which is self-defense is mentioned nearly 40 times

27    in Plaintiff's SAC and other "lawful purposes" a dozen more. The "central

28    component" of the Second Amendment logically entails there are other

1  components of the Second Amendment right such as hunting and target shooting

2  which includes transporting firearms either from one's place of residence or

3  through the city which RBMC 4-35.20 prohibits.  Under the plain text of the

4  ordinance, coupled with CITY designating ALL public places (including public

5  streets and sidewalks) as falling within its "park" ban, Plaintiff cannot even

6  transport and unloaded firearm in a fully enclosed locked container to visit his

7  relatives who live in the city for the purpose of self-defense.  However, neither the

8  First Amendment nor the Second Amendment rights are predicated upon each

9  other.  Plaintiff submits that there is a very real as-applied challenge to the

10  ordinances at issue.

11      RBMPA 12, 6-18.  CITY admits that RBMC 4-35.20 is preempted by state

12  law.  As such it was facially unconstitutional under the California Constitution the

13  moment it was enacted.  CITY now claims here that by illegally applying its

14  facially unconstitutional and unconstitutionally vague ordinance to Plaintiff in the

15  future, that makes the ordinance not facially vague.  Stalin is laughing in his grave.

16  CITY also fails to give an example of how it can apply its ordinance in any

17  circumstance that is not preempted by state or Federal law or is constitutionally

18  applied.  If there are "numerous circumstances under which Redondo Beach could

19  validly apply its prohibition on firearms" CITY should have described at least one.

20  The third and final Amended Complaint in *Heller* alleged a Facial and As-Applied

21  challenge to less restrictive ordinances which the *Heller* court found were facially

22  invalid. The ordinances at issue in *Heller* and *McDonald* could have been applied

23  to prohibited persons or to "dangerous and unusual weapons" but that did not stop

24  the US Supreme Court from finding that they were facially invalid.  CITY must

25  make the case why its ordinance, which is more restrictive than those struck down

26  in *Heller* and *McDonald*, is not facially unconstitutional.  Simply saying so fails

27  even rational review and *Heller* precludes rational review.  Vagueness is a form of

28  facial invalidity.  "As generally stated, the void-for-vagueness doctrine requires

1  that a penal statute define the criminal offense with sufficient definiteness that

2  ordinary people can understand what conduct is prohibited and in a manner that

3  does not encourage arbitrary and discriminatory enforcement…Although the

4  doctrine focuses both on actual notice to citizens and arbitrary enforcement, we

5  have recognized recently that the more important aspect of the vagueness doctrine

6  "is not actual notice, but the other principal element of the doctrine — the

7  requirement that a legislature establish minimal guidelines to govern law

8  enforcement." …Where the legislature fails to provide such minimal guidelines, a

9  criminal statute may permit "a standardless sweep [that] allows policemen,

10  prosecutors, and juries to pursue their personal predilections."" *Kolender v.*

11  *Lawson*, 461 US 352 - Supreme Court 1983 (internal citations omitted).  Plaintiff

12  has video of CITY police officers saying they do not know where its "park" ban

13  applies and expressing skepticism that the commercially zoned pier is a park.

14  CITY'S position is that a "park" is anyplace it says is a park.  The facts of this case

15  clearly prove that the ordinance is unconstitutionally vague.  Similarly, in a First

16  Amendment context, the bar for facial invalidity is not as high, a law may be

17  invalidated as overbroad if a substantial number of its applications are

18  unconstitutional, judged in relation to the statute's plainly legitimate sweep."

19  *United States v. Stevens*, ___ U.S. ___, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435

20  (2010) (internal quotation marks omitted).  Plaintiff submits it has no legitimate

21  sweep but if one were to assume that it has then this court would have to "first

22  ascertain whether a construction of the statute is fairly possible by which the

23  question may be avoided." *Zadvydas v. Davis*, 533 U.S. 678, 689, 121 S.Ct. 2491,

24  150 L.Ed.2d 653 (2001) (internal quotation marks omitted).  Plaintiff submits that

25  there is no construction to the statute without a thorough rewriting of CITY'S

26  municipal code which is a legislative role, not a judicial one. Plaintiff requests that

27  he be allowed to file a reply to any circumstance CITY may contrive in its

28  response to Plaintiff's Objection to CITY'S Motion to Dismiss.

14

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND
AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

RBMPA 12, 24-28.  Neither SAC ¶ 15 nor ¶ 50 state that Plaintiff is being prosecuted for violating Penal Code section 25850.  In fact, at this point in his criminal proceedings CITY is procedurally barred from amending its Complaint to include a violation of PC 25850 and even absent a procedural bar it could only be amended for violating PC 25850(b) given CITY'S contention, and this court's conclusion, that Plaintiff's firearm was unloaded.  However, CITY'S admission that PC 25850 applies to both its "parks" and beaches it is once again admitting that RBMC 4-35.20 is preempted by state law and that the criminal prosecution of Plaintiff is unlawful.

RBMPA 12, 19-22 and 13, 1-7.  The Fourth Amendment is not predicated upon the Second Amendment.  Plaintiff vocally and unambiguously refused to consent to the search and seizure of his person and valuable property as required by *Vongxay* and CITY'S police officer clearly stated that Plaintiff was not under arrest or even being cited for violating RBMC 4-35.20 and CITY waited nearly two months to the day to file criminal charges.  Plaintiff was openly carrying an unloaded firearm in a time, place and manner which CITY knew was legal under both state and Federal law in a location within the city which CITY knew RBMC 4-35.20 did not apply.  CITY knew that Plaintiff was carrying the firearm for the purpose of self-defense while engaged in a lawful protest.  CITY had no warrant, no probable cause or even a reasonable suspicion that Plaintiff was committing a crime.  Plaintiff could have been carrying a bag full of illegal drugs.  Absent a valid warrant or probable cause to believe that his bag contained illegal drugs, Fourth Amendment protections still apply.  This court has already denied CITY'S motion to dismiss, it should do so again.

RBMPA 13, 7-28 and 14, 1-8 for the reasons previously stated in this objection, Plaintiff can easily amend his complaint to satisfy CITY'S objections if this court finds that the existing allegations are insufficient. And a complaint can only be dismissed with prejudice if amendment would be futile or the complaint is

1   frivolous.  CITY has failed to show how amendment would be futile.  "To prevail
2   on an equal protection claim under the "Fourteenth Amendment, a plaintiff must
3   demonstrate that enforcement had a discriminatory effect and the police were
4   motivated by a discriminatory purpose." *Rosenbaum v. City & Cnty. of S.F.*, 484
5   F.3d 1142, 1152 (9th Cir.2007) (citing *Wayte v. United States*, 470 U.S. 598, 608,
6   105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)).  Enforcement may be shown through a
7   variety of actual or threatened arrests, searches and temporary seizures, citations,
8   and other coercive conduct by the police. See id. at 1152-54; see also *United States*
9   *v. Frazier*, 408 F.3d 1102, 1108 (8th Cir.2005); *Flowers v. Fiore*, 359 F.3d 24, 34
10  (1st Cir.2004); *Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001);
11  *United States v. Avery*, 137 F.3d 343, 358 (6th Cir. 1997). In order to prove a
12  discriminatory effect, "the claimant must show that similarly situated individuals ...
13  were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct.
14  1480, 134 L.Ed.2d 687 (1996). The standard for proving discriminatory effect "is a
15  demanding one." Id. at 463, 116 S.Ct. 1480. Yet, to state a claim, Lacey need only
16  allege some facts, either anecdotal or statistical, demonstrating "that similarly
17  situated defendants ... could have been prosecuted, but were not." Id. at 469, 116
18  S.Ct. 1480; see *also Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th
19  Cir.1995) ("[I]t is necessary to identify a `similarly situated' class against which the
20  plaintiff's class can be compared.")" *Lacey v. Maricopa County*, 693 F. 3d 896 -
21  Court of Appeals, 9th Circuit 2012 at 920.  There is no question of enforcement
22  against Plaintiff and Plaintiff has video of members of the South Bay Open Carry
23  group openly carrying firearms in the beach zone of the city who were neither
24  arrested nor prosecuted while Plaintiff, the President of California Right To Carry
25  (a California non-profit association) was arrested and prosecuted.  The ordinance is
26  not limited to firearms, it explicitly includes knives (which are weapons), and
27  fishermen routinely carry knives on the commercially zoned Pier which CITY
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND
AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

contends is a "park" and are not prosecuted.  A knife is, of course, far more deadly than an unloaded long gun carried in a sling but nonetheless a weapon all the same.

RBMPA 14, 9-28 and 15, 1-28 and 16, 1-28 and 17, 1-28 and 18, 1-28 and 19, 1-18.  CITY relies extensively on the *Nordyke* decisions which are fatal to its position.  The only decision that is binding is the final en banc decision *Nordyke v. King*, 681 F. 3d 1041 - Court of Appeals, 9th Circuit 2012 (*Nordyke VI*) in which the court held "The County now avers that a gun show is an "event" within the meaning of exception (f)(4). Moreover, the County affirmatively asserts that Plaintiffs, when conducting a gun show, may offer firearms for sale with the requirement that, when a "firearm is not in the actual possession of the authorized participant," the firearm must be "secured to prevent unauthorized use." Id. The County represents that a sturdy cable attaching the firearm to a fixture, such as a table, would suffice — much as cell phones, cameras, and other attractive items routinely are displayed for sale. The County further represents that buyers may physically inspect properly secured firearms.  We hold the County to its interpretation of the ordinance, and its reading is a reasonable one…Should the County add new requirements or enforce the ordinance unequally, or should additional facts come to light, Plaintiffs or others similarly situated may, of course, bring a new Second Amendment challenge to the relevant laws or practices." *Nordyke* at 1044-1045. *Nordyke* involved a presumptively lawful regulation of the commercial sale of firearms during a gun show in a government building on its fairgrounds.  The California legislature has explicitly allowed local governments to regulate gun shows in its government buildings.  The Alameda County ordinance did not prohibit the Open Carry of firearms in its government buildings or on its fairgrounds nor did it prevent the live firing of blanks during the Scottish Games on the County Fairgrounds.  In *Nordyke* 1 (*Nordyke v. King*, 229 F. 3d 1266 - Court of Appeals, 9th Circuit 2000) the only question was "Does state law regulating the possession of firearms and gun shows preempt a municipal

17

1  ordinance prohibiting gun possession on county property?" *Nordyke 1* at 1267.

2  Clearly, it does not. Similarly, the majority in *Nordyke* 2 (*Nordyke v. King*, 44 P.

3  3d 133 - Cal: Supreme Court 2002) addressed preemption and not the First

4  Amendment. *Nordyke 3* (*Nordyke v. King*, 319 F. 3d 1185 - Court of Appeals, 9th

5  Circuit 2003) involved a facial First Amendment challenge where the court held

6  "Here, Nordyke is mounting a facial challenge. In this context, the presence of a

7  handful of NRA Tribute Rifles at a show at which the vast majority of the

8  prohibited guns bear no message whatsoever does not impugn the facial

9  constitutionality of the Ordinance." *Nordyke* 3 at 1190. In Plaintiff's Long Gun

10  Open Carry Protest his unloaded firearm was an essential element necessary to

11  express the absurdity of California Penal Code section 16840 which states that "A

12  firearm shall be deemed to be "loaded" when there is an unexpended cartridge or

13  shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or

14  attached in any manner to, the firearm, including, but not limited to, in the firing

15  chamber, magazine, or clip thereof attached to the firearm." Plaintiff taped a rifle

16  cartridge to a shotgun and pointed out that fact to the KTLA news cameraman,

17  radio and print reporters who were present. The firearm was also an essential

18  element necessary to protest various state laws which prohibited Plaintiff from

19  carrying any firearm other than an unloaded long gun as well as to demonstrate the

20  absurdity of CITY'S own municipal ordinances which prohibit the possession of

21  firearms everywhere in the city except for the beach zone. Plaintiff had nothing

22  else to use as a prop. CITY bans the possession of BB guns and even a wooden

23  replica of a long gun can still be used as a weapon. CITY'S ordinance bans all

24  weapons. There is no alternative channel for expressive conduct with a weapon,

25  even non-functional ones and certainly no means for Plaintiff to defend himself in

26  any public place within the city. Under CITY'S "park" ban, any public

27  performance of Shakespeare's Romeo and Juliet is unlawful from Act I, Scene I

28  where "*Enter SAMPSON and GREGORY, of the house of Capulet, **armed with***

1  *swords and bucklers*." The actress playing Juliet would have to pretend to stab

2  herself with a baguette to escape arrest, prosecution, fine and imprisonment.

3  *Nordyke* IV (*Nordyke v. King*, 563 F. 3d 439 - Court of Appeals, 9th Circuit 2009),

4  the first post-Heller decision was vacated (*Nordyke v. King*, 611 F. 3d 1015 - Court

5  of Appeals, 9th Circuit 2010). *Nordyke* V (*Nordyke v. King*, 644 F. 3d 776 - Court

6  of Appeals, 9th Circuit 2011) was the first time "…the County "does not contest

7  that gun possession in the context of a gun show may involve certain elements of

8  protected speech,"" *Nordyke* V at 791. The legislative intent of RBMC 4-35.20

9  was "…an ordinance revising park rules to control and prevent nuisance activity."

10  (Redondo Beach Parks Commission Meeting Minutes, 5-12-2010, pg 17,

11  http://www.redondo.org/civica/filebank/blobdload.asp?BlobID=20993). It was the

12  conclusion of the City Attorney for Redondo Beach (Michael Webb) and his

13  privately retained counsel (NRA lawyer Carl "Chuck" Michel) that RBMC 4-35.20

14  did not apply to firearms lawfully carried under state law after Mr. Michel spoke

15  with Plaintiff and understood that the purpose of his Open Carry event was to

16  generate a press kit and to convey the message to the public that people who

17  openly carry firearms for self-defense are just like everyone else. Mr. Michel

18  wanted participants to dress in western garb and to carry Winchesters instead of

19  "black rifles" to which Plaintiff declined. Two days before the scheduled event,

20  City Attorney Webb decreed the commercially zoned pier to be a park when the

21  spokesman for the group South Bay Open Carry got into a scheduling argument

22  over Plaintiff's planned Open Carry event which was to be held on August 7, 2010.

23  This fact is well documented in CITY'S own documents and emails. Had the

24  participants dressed in western garb and had the spokesman for the South Bay

25  Open Carry group not argued over the date of the event with Redondo Beach

26  police captain Jeff Hink the event would have taken place and CITY would not

27  now be a defendant in this action. Instead, CITY reinterpreted its ordinance to

28  suppress the free expression of Plaintiff and members of the Open Carry

movement.  As such, strict scrutiny applies "If the possession of firearms is expressive conduct, the question becomes whether the County's "regulation is related to the suppression of free expression." *Texas v. Johnson*, 491 U.S. 397, 403 [109 S.Ct. 2533, 105 L.Ed.2d 342] (1989)." *Nordyke v. King*, 644 F. 3d 776 - Court of Appeals, 9th Circuit 2011 at 791.  In any event, the *O'Brien* test CITY relies on fails because "The Scottish Games reenact old battles; the Nordykes sponsor heavily attended gun shows. It is not difficult to see how 4,000 shoppers trading in modern firearms pose more danger than a crowd of history buffs in traditional garb playing with blank ammunition." *Nordyke* 4 at 462.  Plaintiff submits that he with his unloaded long gun, while leading his group of a dozen or so protesters is analogous to the South Bay Open Carry group whose members who were not arrested in the beach zone of the city and the comparable number of fishermen who carry knives on the pier every day of the year who are not arrested. Plaintiff also submits that an unloaded long gun does not become a deadly weapon until it is used as a weapon, or at least loaded, unlike a knife which can always be used as a deadly weapon.  Regardless, the level of scrutiny only comes into play if RBMC 4-35.20(a) passes all of the as applied challenges as well as all the tests for facial invalidity such as facial vagueness established in *Coates v. Cincinnati*, 402 US 611 - Supreme Court 1971 at 614-616 and its progeny and facial invalidity under state preemption, the latter to which CITY has already conceded.

RBMPA 19, 19-28 and 20, 1-28 and 21, 1-8. The question of municipal liability under *Monell* is a merits question.  CITY already concedes that "...California law also prohibits plaintiff from carrying firearms on the same property." (RBMPA 1, 12-13) and this court has already found that Plaintiff has standing to proceed with his case against DEFENDANT Harris for identical constitutional violations arising out of the same set of circumstances.  CITY has already admitted in its RBMPA that it has enforced its policy against Plaintiff and will do so again in the future. "In Pembaur, the Supreme Court held that a single

1    decision by a municipal policymaker may be sufficient to trigger section 1983

2    liability under *Monell*, even though the decision is not intended to govern future

3    situations. See 475 U.S. at 480-81, 106 S.Ct. at 1298-99. There must, however, be

4    evidence of a conscious, affirmative choice. Municipal liability under section 1983

5    attaches only where "a deliberate choice to follow a course of action is made from

6    among various alternatives by the official or officials responsible for establishing

7    final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at

8    483-84, 106 S.Ct. at 1300 (plurality opinion); accord *City of Oklahoma City v.*

9    *Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality

10   opinion) ("[T]he word `policy' generally implies a course of action consciously

11   chosen from among various alternatives.")." *Gillette v. Delmore*, 979 F. 2d 1342 -

12   Court of Appeals, 9th Circuit 1992. "To survive a motion to dismiss, a complaint

13   must contain sufficient factual matter, accepted as true, to `state a claim to relief

14   that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

15   *Twombly*, 550 U.S. at 570)). A claim is facially plausible "when the plaintiff pleads

16   factual content that allows the court to draw the reasonable inference that the

17   defendant is liable for the misconduct alleged." Id. at 678." *Li v. Kerry*, Court of

18   Appeals, 9th Circuit 2013 at slip opinion page 8 (case number 11-35412).

19       Although Plaintiff stated in his SAC that "…PLAINTIFF is keeping the

20   claim in for now but is not seeking to move it forward until the Abstention is

21   lifted." (¶70 & ¶80) CITY'S present motion is an invitation to Plaintiff to make the

22   case why Younger abstention should not be applied.

23       There was no pending state court proceeding when this Federal proceeding

24   began (November 30, 2011). Plaintiff recently discovered that criminal charges

25   were not filed until July 13, 2012. CITY falsely claimed that there were in its

26   Memorandum of Points and Authorities in support of its motion to dismiss filed on

27   June 29, 2012 (docket #55, pg 2, lines 1-7). This is the "exceptional case"

28   anticipated in *Perez v. Ledesma*, 401 US 82 - Supreme Court 1971. Plaintiff is not

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND
AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

1   charged for violation of a state criminal statute, he is charged with violation of a

2   municipal ordinance which CITY admits is preempted (unconstitutional) under

3   state law. "…in cases of proven harassment or prosecutions undertaken by state

4   officials in bad faith without hope of obtaining a valid conviction and perhaps in

5   other extraordinary circumstances where irreparable injury can be shown is federal

6   injunctive relief against pending state prosecutions appropriate. See *Younger v.*

7   *Harris*, supra; *Ex Parte Young*, 209 U. S. 123 (1908). The criminal charge was

8   brought in bad faith by CITY to harass Plaintiff without hope of obtaining a valid

9   conviction. Denial of due process, fine, imprisonment and deprivation of

10  Plaintiff's constitutional rights constitutes irreparable injury. CITY prosecutor,

11  Sydne S. Michel, is the wife of National Rifle Association (NRA) lawyer Carl D.

12  Michel who was retained by CITY to represent CITY in Plaintiff's Open Carry

13  event of August 7, 2010 which Plaintiff arranged and promoted. Mr. Michel was

14  the lead attorney in *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106 - Dist.

15  Court, SD California 2010 in which the NRA state affiliate, the California Rifle

16  and Pistol Association (CRPA) was a plaintiff and he filed an extensive opening

17  brief in his appeal (case number 10-56971) in which he argued to uphold

18  California's 1967 ban on openly carrying a loaded firearm (former California Penal

19  Code section 12031(a)(1) & (e) now renumbered as PC 25850(a) &(b)), a ban

20  which is at issue in this case. Mr. Michel is also the lead attorney in *Dorothy*

21  *McKay et al v. Sheriff Sandra Hutchens et al* (district court case number

22  8:2012cv01458, appellate court case number 12-57049, the CRPA is a plaintiff) by

23  which he similarly seeks to force Orange County Sheriff Hutchens to issue

24  unrestricted licenses to carry handguns concealed. The criminal prosecution

25  against Plaintiff was brought in bad faith to delay and to derail Plaintiff's Federal

26  Civil case. If Plaintiff is sentenced to a year in jail, which CITY seeks, he would

27  be unable to pursue his Federal action. It is impossible for Plaintiff to be

28  convicted. CITY has charged Plaintiff not with "use" or "carrying" but with

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND
AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

simply possessing a firearm in an area of the city to which the municipal statute does not apply. "The act of firearm possession, by itself, is innocent." *People v. Jones*, 278 P. 3d 821 - Cal: Supreme Court 2012 at 356. The criminal complaint also contained a misjoinder of RBMC § 4-35.20(b) in which it alleges "possession" of explosives. Plaintiff demurred to the misjoinder, CITY conceded the explosives charge was in error but refused to correct the error and Superior Court judge Sotello denied the demurrer. Plaintiff is about to go to trial charged with possession of explosives in a city park on the heels of the Boston Marathon bombing. A false charge of being in possession of explosives is clearly prejudicial. Plaintiff was not even properly arraigned. He demurred to the complaint and the court was required to conduct an immediate hearing to the demurrer. Instead, the court scheduled a demurrer hearing on 10/24/2012 in which Plaintiff's former attorney said he was ready to argue to which the court said "I think we argued and submitted already." To which Plaintiff's former attorney "fully agreed" and was then handed a written denial of the demurrer by the court. The court denied the demurrer without a hearing, immediate or otherwise, prior to the scheduled hearing. Plaintiff's former attorney then entered a plea against Plaintiff's objections and Plaintiff was not allowed to object to the judge, although he tried, because it turns out under California rules of court, only attorneys are allowed to speak to a judge unless a defendant is pro-se or via a Marsden motion to dismiss his public defender.

Abstention under Younger is also inappropriate when Plaintiff has no opportunity to raise his constitutional claims. Plaintiff's public defender stated in open court that he is unable to provide Plaintiff with a competent defense. Both Plaintiff's public defender and trial court judge Taylor have stated that Plaintiff's former private attorney was incompetent. Judge Taylor was required under California law to appoint a competent attorney, a private one if necessary, to represent Plaintiff, he did not. Plaintiff is not competent to raise those claims in his

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND
AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

1   criminal case (see included Declaration), his public defender refuses to raise his

2   Federal Constitutional claims or file any writs, most notably his Second

3   Amendment claim saying that it is the opinion of the Los Angeles County Public

4   Defender's office that the Second Amendment is not a fundamental individual

5   right.  Plaintiff forwarded to his public defender an email from UCLA law

6   professor Eugene Volokh, who was referenced in the *McDonald* decision which

7   clearly stated that the Second Amendment was incorporated against all state and

8   local governments precisely because it is a constitutional right.  To date, Superior

9   Court Judge Taylor has refused to consider any motions to dismiss based on

10  grounds raised in the demurrer and denied the motion for a continuance made by

11  Plaintiff's public defender, apparently the only motion for a continuance ever made

12  by the public defender.  Plaintiff's public defender submitted a single motion to

13  dismiss under protest based on state preemption which cites just a single line from

14  AB 1527 which is a bill 15 pages in length.  A proper preemption motion would

15  have, at a minimum, argued the over 200 pages of the California Penal code

16  preempting the municipal ordinance.  Enjoining the state court proceedings is not

17  an improper interference in a state court proceeding contemplated by *Younger*.  An

18  injunction does not go to go to the core of the administration of a State's judicial

19  system which *Younger* seeks to protect.

20        RBMPA 21, 9-28 and 22, 1-16. CITY states that "The Third Claim in the

21  SAC seeks the same relief as plaintiff sought in his First Claim in the FAC…" and

22  "The Third Claim is different from the First Claim in the FAC, but only in one

23  insignificant respect…First Amendment grounds."  Given CITY'S admission, and

24  disputing that the First Amendment of the Bill of Rights is "insignificant," the

25  court should deny CITY'S current "motion to dismiss or, in the alternative, motion

26  for more definite statement" for the same reasons it gave in denying CITY'S last

27  "motion to dismiss or, in the alternative, motion for more definite statement" and

28

for the preceding and following reasons given here in Plaintiff's opposition, this court should decline to dismiss based on *Younger* abstention grounds.

RBMPA 22, 17-28 and 23, 1-28. CITY claims that "The Third Claim is different from the First Claim in the FAC, but only in one insignificant respect..." (RBMPA 21, 22-23) and this court has already denied CITY'S previous motion to dismiss that count. Although CITY argues with dismissal with prejudice against both counts 2 and 3, its own RBMPA at 21, 4-7 citing *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc) forecloses that possibility. Plaintiff's complaint fully complies with F.R.C.P Rule 10(b) for both claims against CITY and CITY provides no explicit example showing how it does not. CITY merely provides vague allegations that Plaintiff's complaint does not comply. In any event, *Bautista v. Los Angeles County*, 216 F. 3d 837 - Court of Appeals, 9th Circuit 2000 at 841,842 forecloses the dismissal with prejudice sought by CITY and, should the court grant the motion pursuant to F.R.C.P Rule 10(b), *Bautista* at 842, requires guidance from this court to cure the deficiencies.

## 3. CONCLUSION

Based on all of the foregoing, plaintiff respectfully requests that Defendants' Motion to Dismiss and Motion for a More Definite Statement be denied in their entirety. To the extent the Court is inclined to grant the Defendants' request for Younger abstention, plaintiff requests that the Court conduct a hearing to determine if abstention is appropriate.

Dated: April 29, 2013

Respectfully submitted,

By: Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail:
CharlesNichols@Pykrete.info

PLAINTIFF'S OPPOSITION TO DEFENDANTS' (REDONDO BEACH, ET AL.) MOTION TO DISMISS SECOND AMENDED COMPLAINT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECL. OF CHARLES NICHOLS

Charles Nichols
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail: CharlesNichols@Pykrete.info
In Pro Per

United States District Court

Central District of California

| | |
|---|---|
| Charles Nichols, | Case No.: CV-11-9916 SJO (SS) |
| PLAINTIFF, | (Honorable S. James Otero) |
| vs. | **PLAINTIFF'S DECLARATION IN OPPOSITION TO MOTION BY DEFENDANT CITY OF REDONDO BEACH TO DISMISS THE SECOND AND THIRD CLAIMS IN THE SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT** |
| KAMALA D. HARRIS, Attorney General, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, and DOES 1 to 10, | |
| Defendants. | Date: Vacated |
| | Time: N/A |
| | Courtroom: 23 |
| | Magistrate: Hon. Suzanne H. Segal |
| | Trial Date: Not Set |
| | Action Filed: Nov. 30, 2011 |

I, Charles Nichols, declare:

1. Unless stated on information and belief, I have personal knowledge of the statements contained in this declaration, and if called upon to testify, I could and

would competently testify to the facts stated below. Where statements are made on information and belief, I believe those statements to be true.

2. I am not competent to represent myself pro-se in the criminal proceedings brought against me by the City of Redondo Beach which is a defendant in this action.

3. My public defender, John Mattingly, has stated in open court that he cannot provide me with a competent defense.

4. Los Angeles Superior Court Judge Taylor has not replaced my public defender and it is my belief that I am entitled to a competent attorney.

5. Without a competent attorney, I do not believe I will have the opportunity to raise my constitutional claims.

6. My public defender has thus far refused to raise any of my Federal Constitutional claims or any of my state claims other than an inadequate claim of preemption under California law.

7. My public defender has refused to file any writs on my behalf.

8. It is my belief that the criminal prosecution is in bad faith.

9. It is my belief that the criminal prosecution was brought to harass me.

10. It is my belief that the criminal prosecution was brought, in part, to delay, obstruct and derail my Federal action against California's 1967 ban on openly carrying a loaded firearm, a ban which the National Rifle Association (NRA) through its state affiliate the California Rifle and Pistol Association (CRPA) seeks to preserve.

11. The National Rifle Association endorsed the 1967 ban on openly carrying a loaded firearm in public.

12. The NRA lawyer, Carl Michel, was the lead attorney in *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106 - Dist. Court, SD California 2010 in which the NRA state affiliate, the California Rifle and Pistol Association (CRPA) was a plaintiff and he filed an extensive opening brief in his appeal (case number

10-56971) in which he argued to uphold California's 1967 ban on openly carrying a loaded firearm (former California Penal Code section 12031(a)(1) & (e) now renumbered as PC 25850(a) &(b)), a ban which is at issue in this case.

13. Redondo Beach City prosecutor, Sydne S. Michel, is the wife of National Rifle Association (NRA) lawyer Carl D. Michel. Mr. Michel was retained by the City of Redondo Beach City Attorney, Michael Webb, to represent it in Plaintiff's Open Carry event of August 7, 2010 which Plaintiff arranged and promoted.

14. It is my belief that I am the only person who has been charged with violating Redondo Beach Municipal Code § 4-35.20 for possession of an unloaded firearm, legal under both Federal and State law, in a location of the City of Redondo Beach where its own municipal code says the ordinance does not apply.

15. It is my belief that by admitting that "Plaintiff challenges that California law. If the State law is upheld, a judgment invalidating the City's ban would provide no relief to plaintiff because he still would be prohibited from carrying firearms as he desires." (Docket #90, pg 1, lines 13-16 - MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF REDONDO BEACH'S MOTION TO DISMISS THE SECOND AND THIRD CLAIMS IN THE SECOND AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, IN SUPPORT OF MOTION FOR MORE DEFINITE STATEMENT) Defendant City of Redondo Beach has admitted that Redondo Beach Municipal Code § 4-35.20 is preempted by state law and as such is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.

16. I am not charged with violating a state statute.

17. I believe that the United States Supreme Court in its decision *District of Columbia v. Heller*, 554 U.S. 570 (2008) broadly outlined the time, place and

manner restrictions of the Second Amendment saying that Open Carry is the right guaranteed by the Second Amendment, that states may prohibit concealed carry, and that there are certain sensitive places, such as schools and government buildings, where the right to carry a weapon can be prohibited.

18. Even if this is construed as dicta by this court, the 9th Circuit Court of Appeals and sister appellate districts consider Supreme Court dictum to be special.

19. It has always been legal to openly carry a firearm in California and in the United States.

20. In 1791, when the Second Amendment was adopted, the prohibitions on concealed carry where not in the carrying of a weapon concealed but in their use. Were one to enter into an otherwise fair fight with the intention of using a concealed weapon and he killed his opponent, he was guilty of murder. If he did so without the intention of using the concealed weapon, he was guilty of manslaughter. If he was defending himself from an unprovoked attack, such as from a robber, he was innocent of any crime.

21. In the 19th Century many states had adopted restrictions and prohibitions on the carrying of concealed weapons except for travelers while on a journey.

22. The Heller decision embraced those 19th Century restrictions on concealed carry present at the time the 14th Amendment was adopted in 1868.

23. The United States Supreme Court in *McDonald v. City of Chicago*, 561 U.S. , 130 S. Ct. 3020 (2010) incorporated the *Heller* decision to all states and local governments via the 14th Amendment because it is a fundamental right.

24. Public, open places such as streets, sidewalks, piers and even municipal parks have not historically been considered to be "sensitive places" where weapons can be prohibited.

25. Municipal parks have historically been, and to the present day, are locations where people have gone to assemble with weapons and to practice shooting them.

29

26.  Throughout California and throughout the United States there are shooting ranges operated by parks and recreations departments. Here are but a few in California: The Los Angeles County Parks and Recreation Department operates an archery range, a small bore rifle range, a rifle range, and trap and skeet shooting ranges in Whittier Narrows Park. The City of Los Angeles operates an archery range in Cheviot Hills Park. There is an archery range in Santiago Park, Santa Ana, California. Prado Regional Park in Chino California has rifle, pistol and shotgun ranges.  It was the site of the 1984 Olympic Shooting Events. Upper Bidwell Park in Chico California has a pistol and .22 caliber rifle range. Mangan Park in the City of Sacramento has a rifle, pistol and archery range. Anthony Chabot Regional Park in Castro Valley California has pistol, rifle and shotgun ranges. Briones Regional Park in Martinez California has an archery range. El Dorado Park in the City of Long Beach California has an archery range. Field Sports Park owned by the Santa Clara County Parks Department has rifle, pistol and trap & skeet ranges. Golden Gate Park in San Francisco has an archery range. Coyote Point County Park in San Mateo County has a .22 caliber pistol and rifle range. The City of Pasadena operates an archery range in its Arroyo Seco parklands. Balboa Park in San Diego has an archery range. The Los Angeles Rifle and Revolver Club is located on Loma Ave inside the Whittier Narrows Recreation Area in South El Monte.  The range is limited to .22 caliber rifles. The Laguna Seca Rifle and Pistol Range is owned by the Monterey County Parks department. There is a rifle and pistol range as well as a shotgun and trap range in Yucca Park, Morongo Valley California. There is an archery range in Roberts Regional Recreation Area in Oakland, California.

28.  It is impossible to shoot someone with an unloaded firearm.

29.  It takes very little skill to shoot someone using a bow and arrow. Humans have been doing so for at least 10,000 years. Knives are even older.

30. According to the latest Uniform Crime Report published by the FBI, there were 356 murders committed with shotguns in the United States in 2011. 50 of those were in California. Nationwide, 50 murders were of Felony type. According to the United States Census Bureau, there are an estimated 38,041,430 people in California and 313,914,040. That is a murder rate of approximately 1 per 760,826 people in California and 1 per 881,781 people nationwide. Knives and other cutting instruments accounted for 1,694 murders nationwide and for 261 murders in California. There is a 522% greater chance of being murdered with a knife or other cutting instrument than with a shotgun. According to the US Census Bureau, there were 3,081 traffic fatalities in 2009.

31. While walking through Veterans Park in Redondo Beach with my public defender, we noticed what appeared to be a wedding reception in progress with an open bar serving alcohol and banquet tables with steak knives. According to the City of Redondo Beach, knives are prohibited in parks. We did not witness anyone being arrested for violation of the "park" ban.

32. I have violated the laws at issue in the past and I have articulated a concrete plan to violate the laws at issue in the future.

33. Gang members and criminals do not openly carry firearms. They carry weapons concealed. That is why states and local governments enacted prohibitions on the carrying of concealed weapons in the first place.

34. Concealed carry is to the Second Amendment as pornography is to the First Amendment.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

EXECUTED this 29th day of April 2013, at Redondo Beach, California.

Charles Nichols

31

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **PLAINTIFF'S OPPOSITION TO MOTION BY DEFENDANT CITY OF REDONDO BEACH TO DISMISS THE SECOND AND THIRD CLAIMS IN THE SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT, ETC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHARLES NICHOLS** was served via United States Mail, postage prepaid, on this 29 , day of April, 2013; on the following:

KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Attorneys for Defendant California Attorney General Kamala Harris

AND

T. PETER PIERCE
LISA BOND
AARON C. O'DELL
RICHARDS WATSON & GERSHON
A Professional Corporation
355 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3101
Attorney for Defendants:
CITY OF REDONDO BEACH and DOES 1 to 10

Charles Nichols
Plaintiff, In Pro Per
Case No. CV-11-9916 SJO (SS)