1   KAMALA D. HARRIS
    Attorney General of California
2   MARK R. BECKINGTON
    Supervising Deputy Attorney General
3   JONATHAN M. EISENBERG
    Deputy Attorney General
4   State Bar No. 184162
      300 South Spring Street, Suite 1702
5     Los Angeles, CA  90013
      Telephone:  (213) 897-6505
6     Fax:  (213) 897-1071
      E-mail: jonathan.eisenberg@doj.ca.gov
7   *Attorneys for Defendants California Attorney*
    *General Kamala D. Harris*
8

9                 IN THE UNITED STATES DISTRICT COURT

10              FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                         WESTERN DIVISION

12

13   **CHARLES NICHOLS,**                 CV-11-09916-SJO-(SS)

14                         Plaintiff,     **DEFENDANT KAMALA D.**
                                          **HARRIS'S OPPOSITION TO**
15        **v.**                          **PLAINTIFF CHARLES**
                                          **NICHOLS'S MOTION FOR**
16                                        **PRELIMINARY INJUNCTION**
     **EDMUND G. BROWN, Jr., in his**     **(FED. R. CIV. P. 65(A))**
17   **official capacity as Governor of**
     **California, KAMALA D.**
18   **HARRIS,Attorney General, in her**  Date:        N/A
     **official capacity as Attorney General**  Time:        N/A
19   **of California, CITY OF REDONDO**   Courtroom:   23 – 3d Flr.
     **BEACH, CITY OF REDONDO**           Judge:       Hon. Suzanne Segal
20   **BEACH POLICE DEPARTMENT,**         Trial Date:  Not Set
     **CITY OF REDONDO BEACH**            Action Filed: Nov. 30, 2011
21   **POLICE CHIEF JOSEPH**
     **LEONARDI and DOES 1 to 10,**
22
                          Defendants.
23

24

25

26

27

28

1
2
3
4

# TABLE OF CONTENTS

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | | | | | Page |
|---|---|---|---|---|---|

SUMMARY OF OPPOSITION ..................................................................... 1

THE STATUTES IN QUESTION ................................................................ 2

PERTINENT FACTS ...................................................................................... 3

PERTINENT PROCEDURAL HISTORY ................................................. 5

LEGAL STANDARDS FOR PRELIMINARY INJUNCTION MOTIONS ........... 7

ARGUMENT .................................................................................................... 7

   I.    Nichols Has Not Made Any Of The Showings Necessary For The Court To Grant Him A Preliminary Injunction .......................... 7

       A.    Nichols Is Unlikely To Prevail On The Merits In This Case ........................................................................................ 8

           1.    On The Second Amendment Claim ................................. 8

              a.    There Is No Absolute Right To Carry Firearms Openly In Public Places .......................... 8

                  (1)    U.S. Supreme Court Cases ...................... 8

                  (2)    U.S. Court Of Appeals And Other Cases ........................................................ 9

              b.    The Three Challenged Laws, Even If They Implicate The Second Amendment, Are Constitutional ........................................................ 13

                  (1)    Under The Substantial-Burden Test ......... 13

                  (2)    Under Intermediate Scrutiny ..................... 16

           2.    On The Fourth Amendment Claim ................................. 19

           3.    On The Fourteenth Amendment Claim .......................... 20

           4.    On The "Vagueness" Claim ............................................ 21

       B.    Nichols Has Not Been Irreparably Harmed By The Existence Or Enforcement Of The Laws In Question ............. 22

       C.    The Balance of Harms Tips Decidedly Against Granting Injunctive Relief Here ..................................................... 23

       D.    The Public Interest Is Served by Denying Injunctive Relief Here .................................................................... 23

   II.    Nichols's Facial Challenge To The Three California Firearms Laws is Disfavored ...................................................................... 24

CONCLUSION ................................................................................................ 25

i

1
2
3
4

# TABLE OF AUTHORITIES

**Page**

CASES

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011)............................................................. 7

*Burdick v. Takushi*
    504 U.S. 428 [112 S.Ct. 2059; 119 L.Ed.2d 245] (1992) ..................... 14

*Coalition for Econ. Equity v. Wilson*
    122 F.3d 718 (9th Cir. 1997).............................................................. 23

*Cupolo v. Bay Area Rapid Transit*
    5 F. Supp. 2d 1078 (N.D. Cal. 1997) ................................................. 23

*District of Columbia v. Heller*
    554 U.S. 570 [128 S.Ct. 2783; 171 L.Ed.2d 637] (2008) ............... passim

*Emily's List v. Fed. Election Comm'n*
    362 F.Supp.2d 43 (D.D.C. 2005) ....................................................... 22

*Ezell v. City of Chicago*
    651 F.3d 684 (7th Cir. 2011)............................................................. 14

*GeorgiaCarry.Org, Inc. v. Georgia*
    687 F.3d 1244 (11th Cir. 2012)......................................................... 10

*Grayned v. City of Rockford*
    408 U.S. 104 [92 S. Ct. 2294; 33 L. Ed. 2d 222] (1972) ................... 22

*Heller v. District of Columbia*
    670 F.3d 1244 (D.C. Cir. 2011) ........................................................ 15

*Hightower v. City of Boston*
    691 F.3d 61 (1st Cir. 2012) ............................................................... 10

*Holder v. Humanitarian Law Project*
    130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010) .................................. 21, 22

*Kachalsky v. Cacace*
    ___ U.S. ___, No. 12-845, 2013 WL 127127 (Apr. 15, 2013) ............... 9

1

2

3

4

*Kachalsky v. County of Westchester*
    701 F.3d 81 (2d Cir. 2012).......................................................................... 9, 10

5

*Maryland v. King*
    133 S. Ct. 1 [183 L.Ed.2d 667] (2012) ............................................................. 23

6

7

*Mazurek v. Armstrong*
    520 U.S. 968 [117 S. Ct. 1865; 138 L. Ed. 2d 162] (1997) ...................................... 7

8

9

*McDonald v. City of Chicago*
    ___ U.S. ___ [130 S.Ct. 3020; 177 L.Ed.2d 894] (2010) .................................. 8, 10

10

*Moore v. Madigan*
    702 F.3d 933 (7th Cir. 2012).......................................................................... 11, 12

11

12

*Nordyke v. King*
    681 F.3d 1041 (9th Cir. 2012).......................................................................... 13, 20

13

14

*Nunn v. State*
    1 Ga. 243 (1846) ........................................................................................... 9

15

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*
    762 F.2d 1374 (9th Cir. 1985).......................................................................... 22

16

17

*People v. Flores*
    169 Cal. App. 4th 568 [86 Cal. Rptr. 3d 804] (2008) .................................. 16, 17, 18

18

19

*Peruta v. County of San Diego*
    758 F. Supp. 2d 1106 (S.D. Cal. 2010) .............................................................. 16

20

*Peterson v. Martinez*
    707 F.3d 1197 (10th Cir. 2013).......................................................................... 8

21

22

*Piszczatoski v. Filko*
    840 F. Supp. 2d 813 (D. N.J. 2012) .................................................................. 11

23

24

*Richards v. County of Yolo*
    821 F. Supp. 2d 1169 (E.D. Cal. 2011) .............................................................. 11

25

*State v. Chandler*
    5 La. Ann. 489 (1850) .................................................................................... 9

26

27

*United States v. Barton*
    633 F.3d 168 (3d Cir. 2011).......................................................................... 11

28

1

2

3   *United States v. Black*
4       707 F.3d 531 (4th Cir. 2013)........................................................................ 10

5   *United States v. Booker*
6       644 F.3d 12 (1st Cir. 2011) ........................................................................ 11

    *United States v. DeCastro*
7       682 F.3d 160 (2d Cir. 2012)............................................................. 13, 14, 15

8   *United States v. Greeno*
9       679 F.3d 510 (6th Cir. 2012)........................................................................ 11

10  *United States v. Mahin*
        668 F.3d 119 (4th Cir. 2012)........................................................................ 11
11
    *United States v. Masciandaro*
12      638 F.3d 458 (4th Cir. 2011)................................................................. 11, 14

13  *United States v. Mazurie*
        419 U.S. 544, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975) ............................... 21
14
    *United States v. Nat'l Dairy Products Corp.*
15      372 U.S. 29 [83 S. Ct. 594; 9 L. Ed. 2d 561] (1963) ................................. 22

16  *United States v. Purdy*
17      264 F.3d 809 (9th Cir. 2001)........................................................................ 21

18  *United States v. Reese*
19      627 F.3d 792 (10th Cir. 2012)...................................................................... 11

    *United States v. Skoien*
20      614 F.3d 638 (7th Cir. 2010) (*en banc*) ..................................................... 11

21  *United States v. Staten*
22      666 F.3d 154 (4th Cir. 2011)........................................................................ 11

23  *United States v. Vongxay*
        594 F.3d 1111 (9th Cir. 2010)...................................................................... 10
24
    *Wash. State Grange v. Wash. State Republican Party*
25      552 U.S. 450-51 [128 S. Ct. 1184, 170 L.Ed. 2d 151] (2008) ................... 25

26  *Williams v. State*
27      10 A.3d 1177 Md. 2011)............................................................................... 11

28

*Williamson v. Lee Optical of Okla.*
    Inc., 348 U.S. 483 [75 S. Ct. 461; 99 L.Ed. 563] (1955) ........................................ 20

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 [129 S. Ct. 365; 172 L. Ed. 2d 249] (2008) ........................................ 7

*Woollard v. Gallagher*
    ___ F.3d ___, No. 12-1437, 2013 WL 1150575 (4th Cir. Mar. 21, 2013) ...................... 10, 12

*Young v. Hawaii*
    ___ F.Supp.2d ___, Civ. No. 12-00336 HG BMK, 2012 WL 5987588 (D. Haw. Nov. 29, 2012) ........................................ 8

*Zablocki v. Redhail*
    434 U.S. 374 [98 S.Ct. 673; 54 L.Ed.2d 618] (1978) ........................................ 15

**STATUTES**

Cal. P. Code § 25850 ........................................ passim

Cal. P. Code § 26150 ........................................ 12

Cal. P. Code § 26155 ........................................ 6

Cal. P. Code § 26350 ........................................ passim

Cal. P. Code § 26361 ........................................ 16

Cal. P. Code § 26391 ........................................ 16

Cal. P. Code § 26400 ........................................ passim

Cal. P. Code § 26405 ........................................ 16

Cal. P. Code § 26440 ........................................ 16

**CONSTITUTIONAL PROVISIONS**

U.S. Amend. Const. I ........................................ 21

U.S. Amend. Const. II ........................................ passim

U.S. Amend Const. IV ........................................ 19

U.S. Amend. Const.XIV ........................................ 14, 20

1
2
3

**COURT RULES**

4

Fed. R. Civ. P. 65(a)..................................................................................... 1

5

Fed. R. Evid. 201 ......................................................................................... 18

6

**OTHER AUTHORITIES**

7

8

Patrick J. Charles, *The Face of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review,* 60 Clev. St. L. Rev. 1, 7-41 (2012) ................................... 12

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Kamala D. Harris, Attorney General of the State of California (the "Attorney General"), submits the following opposition to the April 10, 2013, motion of Plaintiff Charles Nichols's ("Nichols") for a preliminary injunction in the present case. Fed. R. Civ. P. 65(a).

## SUMMARY OF OPPOSITION

Nichols, a *pro se* plaintiff, seeks a preliminary injunction that would halt enforcement of three California firearms laws, effectively enabling Nichols and other people to carry loaded or unloaded firearms openly in most public places in California. These statutes are critical public-safety measures, and an injunction preventing their enforcement would endanger law enforcement, the general public, and gun owners such as Nichols. Because Nichols cannot satisfy *any* of the four requisite elements that the Court must consider before granting him the relief that he seeks, his motion for preliminary injunctive relief should be denied.

*First*, Nichols cannot show that the statutes (Cal. Penal Code §§ 25850, 26350 and 26400)[1] violate any right recognized under the Second Amendment to the U.S. Constitution to possess or to carry a firearm. The reasonable restrictions that California has placed on the open carry of firearms in public do not substantially burden Nichols's rights, and serve legitimate and rational public ends. And even if the Court were to subject the restrictions to heightened scrutiny, the statutes' constitutionality is supported by the strong public interest in restricting possession and display of weapons outside the home. Consequently, Nichols is unlikely to succeed in his quest to obtain a permanent injunction against laws that, in effect, ban public "open carry" in most circumstances. Because Nichols is unlikely to succeed on the merits, the Court should not preliminarily enjoin enforcement of the laws.

---

[1] Throughout this brief, references to "Section" shall mean California Penal Code section.

1

*Second*, Nichols has not shown that he will suffer any irreparable harm in the absence of the requested relief. Because his motion makes out a strictly facial claim of unconstitutionality, untethered to any specific factual circumstances, Nichols's only claim of injury is the inability to exercise his alleged constitutional right. (Nichols has alleged actual injury – the search and seizure of a firearm – based on enforcement of *municipal* laws not in question on the instant motion.) But this alleged injury in and of itself is insufficient to obtain injunctive relief. Further, Nichols's knowing failure to seek injunctive relief for months or years (depending on the statute in question) undermines his contention that there is an immediate need for the statutes to be enjoined.

*Third*, the balance of harms favors the Attorney General, on behalf of the State of California and its people, which will suffer a significant, overriding injury if this Court enjoins enforcement of important public-safety laws duly passed by the California Legislature.

*Finally*, the public interest would *not* be served by striking down the challenged statutes before the State has had an opportunity to respond fully on the merits to Nichols's allegations. The significant interest in public safety constitutes an additional reason to deny Nichols's motion.

## THE STATUTES IN QUESTION

*First*, Nichols attacks the constitutionality of Section 25850, passed in 1967, which provides in pertinent part:

> (a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.
>
> (b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on

2

1    any public street in an incorporated city or prohibited area of an

2    unincorporated territory. Refusal to allow a peace officer to inspect a firearm

3    pursuant to this section constitutes probable cause for arrest for violation of

4    this section.

5    Sections 25900 to 26060 contain the exemptions to Section 25850.

6    *Second*, Nichols attacks the constitutionality of Section 26350, passed in 2011,

7    which provides in pertinent part:

8    [(a) (1)] A person is guilty of openly carrying an unloaded handgun when that

9    person carries upon his or her person an exposed and unloaded handgun

10    outside a vehicle while in or on any of the following: (A) A public place or

11    public street in an incorporated city or city and county. (B) A public street in a

12    prohibited area of an unincorporated area of a county or city and county. (C)

13    A public place in a prohibited area of a county or city and county.[2]

14    Sections 26361 to 26391 contain the exemptions to Section 26350.

15    *Third*, Nichols attacks the constitutionality of Section 26400, passed in 2011,

16    which provides in pertinent part:

17    A person is guilty of carrying an unloaded firearm that is not a handgun in an

18    incorporated city or city and county when that person carries upon his or her

19    person an unloaded firearm that is not a handgun outside a vehicle while in

20    the incorporated city or city and county.

21    Section 26450 contains the exemptions to Section 26400.

22    **PERTINENT FACTS**

23    Nichols is waging a *pro se* legal battle to establish a broad constitutional right

24    for people to carry firearms openly in most public places in California "for the

25    purpose of self-defense and for other lawful purposes." (Nichols's April 10, 2013,

26    Memo. of P's and A's in Support of Mtn. for Prelim. Injunction ("P.I. Mtn. Brief")

27    ───────────────

       [2] Subdivision (a)(2) is nearly identical, but addresses carrying "inside or on a

28    vehicle."

at 1.) As the Attorney General has argued in her motions to dismiss this case,
Nichols's battle is predominantly hypothetical and theoretical. Nichols's pleadings
and declarations give very few particulars of how Nichols has openly carried
firearms in public places. Nichols's preliminary injunction motion is even more
devoid of relevant facts. Furthermore, it is undisputed both that (1) the Attorney
General has never tried to enforce against Nichols any of the three laws in question
in the motion, and (2) no law-enforcement authority has ever charged Nichols with
violating any of these laws.

In the original complaint in this case, Nichols asserted that, in September 2011,
he received a "not so thinly veiled death threat" that caused him to want to carry a
loaded firearm openly wherever he went in public, to be able to protect himself in
the event of a chance encounter with his unnamed nemesis. (Compl., ¶15.) Nichols
has never disclosed to the Attorney General any details about the two-and-a-half-
year old alleged threat, the person who allegedly made it, or its surrounding
circumstances. Perhaps tellingly, Nichols did not bother to mention the alleged
threat in the second or third complaints in this case. *In the instant preliminary-
injunction motion, Nichols alludes to the alleged threat, but remains vague about it*.

Starting with the second version of the complaint, Nichols recounted a story of
how, in August 2010, a group of self-described open-carry activists made an open-
carry demonstration in Redondo Beach. These people openly carried unloaded
firearms in a park and on a pier in the beach city. (It seems that, at the time, these
types of acts were legal under California statutes.) Nonetheless, Nichols did not
carry any firearm on this occasion. He deliberately left his firearm in his car for the
duration of the protest. (First Am. Compl., ¶¶41-56, 59-72.) *In the instant
preliminary-injunction motion, Nichols makes no mention of this August 2010 event*.

As Nichols relays in the second and third versions of the complaint, in May
2012, about a week prior to filing the second version of the complaint, Nichols
staged an event specifically designed to create standing for this case. Nichols,

following through on a promise posted prominently on his Internet site, californiaopencarry.org, walked and stood in or near a park in Redondo Beach, openly carrying a long gun with the wrong kind of bullets literally taped to the end of the gun. Redondo Beach police officers – but nobody associated with the Attorney General – took Nichols's gun away from him. And Nichols was cited and presently is being prosecuted by a Redondo Beach city attorney for violating the beach city's municipal laws. (First Am. Compl., ¶¶58, 75-81, 84-86.) (It seems that Nichols did not violate any state open-carry law then on the books.) *In the instant preliminary-injunction motion, Nichols makes no mention of this May 2012 event.*

In the second and third versions of the complaint, Nichols also stated, with varying degrees of specificity, his intentions some day to carry firearms openly in public places in California in ways that could violate state law. Based on the planned dates for those activities, Nichols should have violated the laws several times now, but there is no evidence that Nichols actually followed through on the plans. *And these plans do not figure into Nichols's preliminary-injunction motion.*

It is problematic that Nichols's moving papers herein do not discuss any of the above-described events or plans. Nichols purports to challenge the laws in question both facially and as applied, yet he has declined to allege any fact pattern that the Court could analyze, as the basis for making a ruling on the constitutionality of the laws being challenged.

## PERTINENT PROCEDURAL HISTORY

On November 30, 2011, Nichols filed the original complaint in the instant lawsuit. Nichols pleaded for a preliminary injunction and a permanent injunction against enforcement of Section 25850, which, in essence, restricts people from openly carrying loaded firearms in public places. Nichols did *not* seek an injunction against enforcement of any other California law, including Section 26155, which, in essence, establishes the scheme by which people in California may obtain licenses to carry firearms in public places.

1    Over the next few months, the many defendants in the case pursued several
2    motions to dismiss the original complaint, primarily for Nichols's lack of standing
3    under Article III of the U.S. Constitution. This Court granted these motions, partly
4    with leave to amend, and partly with prejudice.
5    On May 30, 2012, Nichols filed the first amended complaint in this case.
6    Nichols pleaded for injunctions against enforcement of Section 25850 and Section
7    26155, as well as two Redondo Beach municipal ordinances. Nichols did *not* seek
8    an injunction against enforcement of any other California law, including Section
9    26350, which, in essence, restricts people from openly carrying unloaded handguns
10   in public places.
11   Once again, the remaining defendants in the case pursued motions to dismiss
12   the first amended complaint, primarily for lack of standing. This Court granted in
13   part and denied in part these motions, and, in particular, dismissed the first
14   amended complaint but granted Nichols leave to file an amended complaint.
15   On March 29, 2013, Nichols filed the second amended (and operative)
16   complaint in this case. Nichols pleaded for injunctions against enforcement of
17   Section 25850, Section 26155, and Section 26350, as well as against Section 26400,
18   which, in essence, restricts people from openly carrying unloaded firearms *other*
19   *than handguns* in public places. Nichols also pleaded for injunctions against 11
20   other California firearms laws, as well as two Redondo Beach municipal ordinances.
21   On April 10, 2013, before any defendant responded to the second amended
22   complaint, and without have consulted or notified any defendant beforehand,
23   Nichols noticed the instant motion for preliminary injunction.[3]
24   On April 15, 2013, the City of Redondo Beach, a co-defendant herein, filed a
25   motion to dismiss the second amended complaint. That motion is pending.
26
27   _____
     [3] Nichols did not clear the hearing date (May 20, 2013), with the Attorney
28   General.

1    On April 16, 2013, the Attorney General filed an answer to the second

2    amended complaint.

3    On April 18, 2013, the Court established an expedited briefing schedule for

4    the instant motion, requiring any opposition to be filed by May 2, 2013, any reply

5    by May 9, 2013, and taking off calendar the hearing on the motion.

6    **LEGAL STANDARDS FOR PRELIMINARY INJUNCTION MOTIONS**

7    "[A] preliminary injunction is an extraordinary and drastic remedy, one that

8    should not be granted unless the movant, *by a clear showing*, carries the burden of

9    persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 [117 S.Ct. 1865; 138

10   L.Ed.2d 162] (1997) (emphasis in original). A plaintiff seeking a preliminary

11   injunction must establish: (1) that the plaintiff is likely ultimately to succeed on the

12   merits in the case, (2) that the plaintiff is likely to suffer irreparable harm in the

13   absence of preliminary injunctive relief, (3) that the balance of equities tips in the

14   plaintiff's favor, and (4) that an injunction is in the public interest. *Winter v.*

15   *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 [129 S.Ct. 365; 172 L.Ed.2d 249]

16   (2008).

17   Alternatively, "[a] preliminary injunction is appropriate when a plaintiff

18   demonstrates that serious questions going to the merits were raised and the balance

19   of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v.*

20   *Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

21   Nonetheless, a plaintiff must make a showing of all four *Winter* factors even under

22   the alternative sliding scale test. *Alliance*, 632 F.3d at 1132, 1135.

23   **ARGUMENT**

24   **I.    NICHOLS HAS NOT MADE ANY OF THE SHOWINGS NECESSARY FOR**
     **THE COURT TO GRANT HIM A PRELIMINARY INJUNCTION**

25

26   Nichols cannot satisfy any of the four requisite elements that the Court must

27   consider before granting Nichols the drastic relief that he seeks, so the Court should

28   deny Nichols's motion seeking that relief.

7

**A.    Nichols Is Unlikely to Prevail On The Merits In This Case**

      **1.    On The Second Amendment Claim**

          **a.    There Is No Absolute Right To Carry Firearms Openly In Public Places**

If there is no Second Amendment right to carry firearms openly in public places, then this Court, *ipso facto*, has no cause to enjoin, even preliminarily, the three laws in question for allegedly infringing that non-existent right. *Peterson v. Martinez*, 707 F.3d 1197, 1208 (10th Cir. 2013); *Young v. Hawaii*, ___ F.Supp.2d ___, ___, 2012 WL 5987588 at *11 (D. Haw. Nov. 29, 2012). As will be shown below, there is no such established right, meaning that the Court should not enter the preliminary injunction that Nichols prays for.

### (1)   U.S. Supreme Court Cases

The U.S. Supreme Court has never held that an ordinary person has a Second Amendment right to carry firearms openly in public places. Rather, *District of Columbia v. Heller*, 554 U.S. 570, 635 [128 S.Ct. 2783; 171 L.Ed.2d 637] (2008), conferred a limited right "for law-abiding responsible citizens to use arms *in defense of hearth and home*" (emphasis added.) *Heller* also provided an expressly non-exhaustive list of firearms regulations that are presumptively lawful, and included on the list are "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id*. at 625-27. Furthermore, *Heller* specifically did *not* recognize "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. at 628.

Although Nichols cites a passage in *Heller* discussing two 19th-century state-court opinions, *Nunn v. State*, 1 Ga. 243 (1846), and *State v. Chandler*, 5 La. Ann. 489 (1850), striking down open-carry bans (in part because it is supposedly "manly" for people to carry firearms openly as opposed to concealed (*Chandler*, 5 La. Ann. at 490)). (P.I. Mtn. Brief at 6.) But *Heller* did *not* adopt the holdings of those two long-ago cases. *Heller* merely cited the cases in attempting to prove that

"[m]any early-19th century state cases indicated that the Second Amendment right to bear arms was an individual right unconnected to militia service, though subject to certain restrictions." *Heller*, 554 U.S. at 611; cf. *Kachalsky v. County of Westchester*, 701 F.3d 81, 90 n.12 (2d Cir. 2012) ("*Nunn* is cited in Justice Scalia's majority opinion in *Heller* as an example of state court responses to handgun regulatory efforts within the states").

In *McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020, 3044 (2010), the Supreme Court reiterated that "our central holding in *Heller* [is] that the Second Amendment protects the personal right to keep and bear arms for lawful purposes, *most notably for self-defense within the home*" (emphasis added). "State and local experimentation with reasonable firearms regulations will continue under the Second Amendment." *Id.*, 130 S. Ct. at 3046 (quotation marks omitted).

In sum, there is nothing in *Heller* or *McDonald* to indicate that the Supreme Court will expand those cases' holdings and recognize an open-carry right, as Nichols desires. And, recently, the Supreme Court denied a petition for a writ of certiorari in a case that could have afforded the high court an opportunity to decide the open-carry question. *Kachalsky v. Cacace*, ___ U.S. ___, 2013 WL 127127 (Apr. 15, 2013).

### (2)   U.S. Court Of Appeals And Other Cases

Like the Supreme Court, the U.S. Court of Appeals for the Ninth Circuit has never held that an ordinary person has a Second Amendment right to carry firearms openly in public places. Instead, the Ninth Circuit has interpreted Supreme Court jurisprudence as conferring "the right to register and keep a loaded firearm in [the] home for self-defense, provided [the person] was 'not disqualified from the exercise of Second Amendment rights.'" *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010), citing *Heller*, 554 U.S. at 635.

And the *overwhelming* majority of the other federal appellate courts that have considered the open-carry question (or a related question) have interpreted *Heller*

9

and *McDonald* as recognizing only a narrow individual-person right to keep an

operable handgun in the home for self-defense. For example, in the very recent case

of *Woollard v. Gallagher*, ___ F.3d ___, 2013 WL 1150575 (4th Cir. Mar. 21,

2013), the Fourth Circuit criticizes the U.S. District Court, District of Maryland, for

making a "trailblazing pronouncement that the Second Amendment right to keep

and bear arms for the purpose of self-defense extends outside the home…" (*id.*, * 1)

and for "br[eaking] ground that our superiors have not tread, proclaiming that the

Second Amendment right…of individuals to possess and carry firearms in case of

confrontation [] is a right that extends beyond the home." (*Id.*, *4.) "*Heller*…was

principally concerned with the 'core protection' of the Second Amendment: 'the

right of law-abiding, responsible citizens to use arms in defense of hearth and

home.'" (*Woollard*, 2013 WL 1150575 at *5.)[4]

The Second Circuit has also rejected the broad right claimed by Nichols. See

*Kachalsky*, 701 F.3d at 89 ("What we know from [Heller and McDonald] is that

Second Amendment guarantees are at their zenith within the home. What we do not

know is the scope of that right beyond the home…"). Other circuit-court decisions

similarly cast doubt on viewing *Heller* and *McDonald* as creating an individual

right to carry weapons openly outside the home. See *United States v. Mahin*, 668

F.3d 119, 123-24 (4th Cir. 2012) (declining criminal defendant's invitation to

"recognize that Second Amendment protections apply outside the home…");

*United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011) ("[A] considerable

degree of uncertainty remains as to the scope of [the *Heller*] right beyond the

home…"); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir.

2012) (*Heller* "went to great lengths to emphasize the special place that the home –

an individual's private property – occupies in our society"); and see *Hightower v.*

---

[4] *Woollard* also clarifies that another case, *United States v. Black*, 707 F.3d
531 (4th Cir. 2013), does *not* hold that the Second Amendment has force outside
the home. *Woollard*, 2013 WL 115075 at *6 n.5.

*City of Boston*, 691 F.3d 61, 72-73 (1st Cir. 2012); *United States v. Booker*, 644
F.3d 12, 25 n.17 (1st Cir. 2011); *United States v. Barton*, 633 F.3d 168, 170 (3d Cir.
2011); *United States v. Staten*, 666 F.3d 154, 158 (4th Cir. 2011); *United States v.
Greeno*, 679 F.3d 510, 517 (6th Cir. 2012); *United States v. Skoien*, 614 F.3d 638,
640 (7th Cir. 2010) (*en banc*); *United States v. Reese*, 627 F.3d 792, 800 (10th Cir.
2012); cf. *Williams v. State*, 10 A.3d 1167, 1177 (Md. 2011) ("If the Supreme
Court, in this dicta, meant its holding to extend beyond home possession, it will
need to say so more plainly").[5]

As these decisions show, the clear trend of legal authority is to recognize that
*Heller* and *McDonald* should not be extrapolated to confer a broad right openly to
carry a weapon, loaded or unloaded, in public. Therefore, the Court should find that
Nichols is unlikely to succeed in establishing that any of the challenged California
laws are facially invalid.

Nichols, for his part, ignores this legal authority and spends much of his brief
quoting from a split (2-1) Seventh Circuit opinion, *Moore v. Madigan*, 702 F.3d
933 (7th Cir. 2012), which held, "A right to bear arms thus implies a right to carry a
loaded gun outside the home." *Id.* at 936. Despite that broad pronouncement,
*Moore* is unhelpful to Nichols. *Moore* construed a strict Illinois law that broadly
forbade carrying any loaded or unloaded firearms – "[a] blanket prohibition on
carrying a gun in public." *Id.* at 934, 940. "Remarkably, Illinois is the *only* state that
maintains a flat ban on carrying ready-to-use guns outside the home…" *Id.*
(emphasis in original). There were no concealed-carry licenses available in Illinois.

---

[5] See also, e.g., *Richards v. County of Yolo*, 821 F. Supp. 2d 1169, 1174 (E.D.
Cal. 2011) (Second Amendment "does not create a fundamental right to carry a
concealed weapon in public"); *Peruta v. County of San Diego*, 758 F. Supp. 2d
1106, 1114 (S.D. Cal. 2010) ("declin[ing] to assume that" Section 25850 "places an
unlawful burden on the right to carry a firearm for self-defense"); *Piszczatoski v.
Filko*, 840 F. Supp. 2d 813, 831 (D. N.J. 2012) (New Jersey concealed-carry
weapons licensing scheme "unequivocally" falls outside the scope of the Second
Amendment, because the scheme does not burden the right to possess handguns in
the home for self-defense).

1    *Id.* In this important way, the *Moore* case contrasts with the present case, because,

2    as Nichols acknowledges, California has a comprehensive statutory scheme by

3    which individual people may apply for and receive concealed-carry weapons

4    permits and, in some counties, open-carry permits, and thus be able lawfully to

5    carry guns outside the home. (See §§ 26150, *et eq.*) In other words, *Moore* is off

6    point.

7         Even if this Court were to decide that *Moore* is factually close enough to

8    Nichols's case to be instructive, the Court should not choose to follow *Moore*'s

9    bold Second Amendment pronouncement, which the Supreme Court has not

10   endorsed. Although both the majority and the dissenting justices in *Heller* grounded

11   their analyses of the Second Amendment in history, specifically the beliefs of 18th-

12   century Americans about gun ownership and use, the majority judges in *Moore*

13   disregarded the historical evidence presented in the case. 702 F.3d at 935. As the

14   dissenting judge in *Moore* pointed out, the majority judges in *Moore* should have

15   considered this evidence, to be true to *Heller*'s analytical approach. *Moore*, 702

16   F.3d at 943 (Williams, J., dissenting). That evidence, described at pages 943 to 946

17   of the *Moore* opinion and in *Kalchasky*, 701 F.3d at 84-85, 89-91, 94-97, strongly

18   suggests that Colonial Americans did *not* believe that people had a right to carry

19   firearms openly in public places. See also Patrick J. Charles, *The Face of the*

20   *Second Amendment Outside the Home: History Versus Ahistorical Standards of*

21   *Review*, 60 Clev. St. L. Rev. 1, 7-41 (2012). As such, there is no reason to treat

22   *Moore* as persuasive authority for a broad right to carry a firearm openly in public,

23   in contradiction of the California statutory scheme.

24        The Court need go no further before deciding to deny Nichols's preliminary-

25   injunction motion, because the challenged statutes do not infringe any recognized

26   right that Nichols has put forth.  *Woollard*, 2013 WL 1150575 at *6.

27

28

12

**b.   The Three Challenged Laws, Even If They Implicate
The Second Amendment, Are Constitutional**

**(1)   Under The Substantial-Burden Test**

The Supreme Court has neither marked the outer bounds of what conduct the
Second Amendment protects (*Heller*, 554 U.S. at 635) nor defined the standard of
review that applies to laws regulating conduct within the Second Amendment's
scope. *Id.* at 628, 634. Nor has the Ninth Circuit. *Nordyke v. King*, 681 F.3d 1041,
1044 (9th Cir. 2012). (The Ninth Circuit may do so in the pending case *Mehl v.
Blanas*, No. 08-15773.)

The Attorney General urges this Court to adopt the "substantial burden" test
articulated in *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012). In *DeCastro*,
the Second Circuit holds that "heightened scrutiny is appropriate only as to those
regulations that substantially burden the Second Amendment." *Id.* at 164. The
*DeCastro* Court observes that *Heller* did not "mandate that any marginal,
incremental or even appreciable restraint on the right to keep and bear arms be
subject to heightened scrutiny. Rather, heightened scrutiny is triggered only by
those restrictions that…operate as a substantial burden on the ability of law-abiding
citizens to possess and use a firearm for self-defense (or for other lawful
purposes)." *DeCastro*, 682 F.3d at 166. *DeCastro* emphasizes that its approach is
consistent with that of other circuit courts, which have endorsed applying varying
degrees of scrutiny based not only on the degree of burden on the Second
Amendment right but also on the extent to which the regulation impinges on the
"core" of the right. *Id.*

The *DeCastro* substantial-burden test accommodates *Heller*'s caution that the
scope of the Second Amendment right is not unlimited, as well as *Heller*'s
recognition of the many and varied forms of valid firearms regulations that have
existed throughout our country's history (such as concealed weapons prohibitions,
storage laws, and felon-possession prohibitions). *Heller*, 554 U.S. at 626-27 & n. 26,

13

632. As *DeCastro* explains in justifying the substantial-burden standard, a similar threshold showing is needed to trigger heightened scrutiny of laws alleged to infringe other fundamental constitutional rights. 681 F.3d at 167. For example, the right to marry is fundamental, but "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship" are not subject to the "rigorous scrutiny" that is applied to laws that "interfere directly and substantially with the right to marry." *Zablocki v. Redhail*, 434 U.S. 374, 386-87 [98 S.Ct. 673; 54 L.Ed.2d 618] (1978). The right to vote is fundamental, but "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 [112 S.Ct. 2059; 119 L.Ed.2d 245] (1992).

Other circuit courts have join *DeCastro* in holding that courts must consider the severity of the burden on Second Amendment rights in deciding what level of scrutiny to apply. See, e.g., *Heller v. District of Columbia*, 670 F.3d 1244, 1261, 1252 (D.C. Cir. 2011) ("[W]e determine the appropriate standard of review by assessing how severely the prohibitions burden the Second Amendment right"); *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011) ("[T]he rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right"); *Masciandaro*, 638 F.3d at 470 (to determine standard of review, "we would take into account the nature of a person's Second Amendment interest, the extent to which those interests are burdened by government regulation, and the strength of the government's justifications for the regulation").  In the absence of such a severe burden, lenient rational-basis review should be applied.  *DeCastro*, 682 F.3d at 166-67.

This Court should take a similar approach and apply a substantial-burden test like the one used in *DeCastro*.

1      California's open-carry laws do not trigger heightened scrutiny because they

2  do not substantially burden the Second Amendment right to possess a handgun in

3  the home for self-defense. As a California appellate court has explained:

4       Section [25850] prohibits a person from "carr[ying] a loaded firearm on

5       his or her person...while in any public place or on any public street."

6       The statute contains numerous exceptions. There are exceptions for

7       security guards, police officers and retired police officers, private

8       investigators, members of the military, hunters, target shooters, persons

9       engaged in "lawful business" who possess a loaded firearm on business

10      premises and persons who possess a loaded firearm on their own private

11      property. A person otherwise authorized to carry a firearm is also

12      permitted to carry a loaded firearm in a public place if the person

13      "reasonably believes that the person or property of himself or herself or

14      of another is in immediate, grave danger and that the carrying of the

15      weapon is necessary for the preservation of that person or property."

16      Another exception is made for a person who "reasonably believes that

17      he or she is in grave danger because of circumstances forming the basis

18      of a current restraining order issued by a court against another person or

19      persons who has or have been found to pose a threat to his or her life or

20      safety." Finally, the statute makes clear that "[n]othing in this section

21      shall prevent any person from having a loaded weapon, if it is otherwise

22      lawful, at his or her place of residence, including any temporary

23      residence or campsite."

24      This wealth of exceptions creates a stark contrast between [S]ection

25      [25850] and the District of Columbia statutes at issue in *Heller*. In

26      particular, given the exceptions for self-defense (both inside and outside

27      the home), there can be no claim that [S]ection [25850] in any way

28

precludes the use "of handguns held and used for self-defense in the home."

*People v. Flores*, 169 Cal. App. 4th 568, 576-77 [86 Cal. Rptr. 3d 804](2008) (emphasis in original; some citations and internal punctuation omitted; obsolete Penal Code section number references updated).

Section 26350 and Section 26400 contain essentially the same exceptions (§§ 26361-26391, 26405), including self-defense exceptions. (§§ 26362, 26378, 26405, subds. (d), (f) and (u)).[6]

As can be seen, all three laws are carefully tailored to achieve their ends, and do not substantially burden Second Amendment rights. Therefore, the Court should apply rational-basis review to the laws. Under this form of scrutiny, a legislative classification will be upheld if it is rationally related to a legitimate government interest. *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002). In the present case, California's open-carry laws are certainly rationally related to the legitimate government interest in public safety. The California Legislature could have rationally determined that restricting people from carrying loaded (or unloaded) firearms openly in public places would increase public safety. Therefore, the three laws survive rational-basis scrutiny – and pass the substantial-burden test.

### (2)   Under Intermediate Scrutiny

The Ninth Circuit has *not* adopted an "intermediate-scrutiny" standard applicable to Second Amendment. But even if the Court were to determine that intermediate scrutiny is the appropriate standard of review here, California's open-carry laws would survive that level of scrutiny.

" [I]ntermediate scrutiny requires [1] the asserted governmental end to be more than just legitimate; it must be either 'significant,' 'substantial,' or

---

[6] All these exceptions expose as misleading Nichols's claim that the laws are "completely banning" him and similar people from openly carrying firearms in public places. (P.I. Mtn. Brief at 2.)

1  'important,' and it requires [2] the "fit between the challenged regulation and the

2  asserted objective be reasonable, [but] not perfect." *Peruta*, 758 F. Supp. 2d at 1117,

3  quoting *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

4      As to the first prong of the substantial interest test, the governmental objective,

5  there can be no doubt that California's interest in restricting the open carry of

6  loaded firearms (per Section 25850) is significant, substantial, and/or important.

7      [S]ection [25850] is narrowly tailored to reduce the incidence of

8      unlawful *public* shootings, while at the same time respecting the need

9      for persons to have access to firearms for lawful purposes, including

10      self-defense. (See *People v. Foley* (1983) 197 Cal. Rptr. 533, 149

11      Cal.App.3d Supp. 33, 39 ["The primary purpose of the Weapons

12      Control Law is to control the threat to public safety in the

13      indiscriminate possession and carrying about of concealed and loaded

14      weapons"].) Consequently, [S]ection [25850] does not burden the core

15      Second Amendment right announced in *Heller* – "the right of law-

16      abiding, responsible citizens to use arms in defense of hearth and

17      home" – to any significant degree. (*Heller, supra,* 128 S. Ct. at p.

18      2831.)

19  *Flores*, 169 Cal. App. 4th at 577 (emphasis in original). The two unloaded-open-

20  carry laws have related significant, substantial, and/or important justifications, as

21  revealed in the following representative excerpts from the legislative history

22  (Assembly Floor Analyses, Assembly Appropriations) of the two newer laws:

23      [About Section 26350 and 26400 (handguns and long guns)] The

24      absence of a prohibition on "open carry" has created an increase in

25      problematic instances of guns carried in public, alarming unsuspecting

26      individuals [and] causing issues for law enforcement.

27      Open carry creates a potentially dangerous situation. In most cases

28      where a person is openly carrying a firearm, law enforcement is called

17

to the scene with few details other than one or more people are present at a location and armed.

In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation, the practice of "open carry" creates an unsafe environment for all parties involved: the officer, the gun-carrying individual, and [] any other individuals nearby as well.

Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways.[7]

[About Section 26400 (long guns)] We continue to believe that carrying exposed firearms in crowded public places with ammunition readily available is inappropriate and risky behavior that threatens public safety and strains law enforcement resources. The carrying of exposed rifles and shotguns in urban settings, such as shopping malls and restaurants, is particularly inappropriate and threatening.

Those who carry exposed long guns in public are not required to undergo any special screening or clearance. In fact, there is no verification process to ensure that a person is not prohibited from possessing firearms. People who carry long guns in crowded public

---

[7] Decl. of Jonathan M. Eisenberg in Opp. to Plf. Charles Nichols's Mtn. for a Prelim. Injunction ("Eisenberg Decl."), Exh. A at AG0021 (Assembly Floor Analysis), Exh. B at AG0092 (Assembly Floor Analysis; identical text as found in AG0021), submitted herewith. *Id.* at AG0032-33, AG0044-47, AG0051, AG0053, and AG0059-60, AG0101, AG0114, AG0126-31, AG0135-36, and AG0138. The Attorney General respectfully requests that, under Federal Rule of Evidence 201, the Court take judicial notice of the legislative history of Section 26350 and Section 26400, contained in the Eisenberg declaration.

places may lack the skill, experience, judgment or moral character for
safely carrying an exposed weapon, particularly when faced with a
confrontational situation.

The public display and flaunting of long guns in shopping malls and
restaurants puts employees and customers at risk of an accidental or
vigilante-type incident where innocent bystanders could get shot. A
member of the public, when confronted by a person openly carrying a
long gun, has no way of knowing the intentions of that person. Caution
would dictate that the incident be reported to police. Police, in turn,
must respond and assume that the firearm is loaded until determined
otherwise. In this potentially life threatening situation, law enforcement
may understandably take lethal action to protect the public and
themselves from a perceived armed threat.[8]

As can be seen, all three laws easily meet the first part of the intermediate-scrutiny
test.

As to the second prong, the "fit," the three laws' many, detailed, thoughtful
exceptions, summarized above, narrowly tailor the laws to ban only unjustifiable,
dangerous open carrying, while permitting justified open carrying. The fit between
the laws and their objectives is more than reasonable.

Therefore, even if the Court were to apply an intermediate scrutiny test, each
of the three laws would survive that standard of review.[9]

## 2.    On The Fourth Amendment Claim

In the City of Redondo Beach's April 15, 2013, brief in support of its pending
motion to dismiss Nichols's case, Redondo Beach has argued that Nichols's Fourth
Amendment claim rises or falls with his Second Amendment claim. (*Id.* at 12-13.)

---

[8] Eisenberg Decl., Exh. B at AG0143-44 (Assembly Appropriations).
[9] Nichols argues that "at minimum, strict scrutiny is required." (P.I. Mtn.
Brief at 14.)  Nichols offers no legal support for using that standard here.  The
Attorney General is aware of none.

1    The Attorney General agrees that if Nichols has not stated a claim for relief under

2    the Second Amendment, his objection to Section 25850(b) must fail as well.

3        Given that, as shown above, Nichols has *not* established that the open-carry

4    statutes contradict individual-person rights under the Second Amendment, then

5    Nichols has no basis to object that Section 25850(b) is facially invalid.  A peace

6    officer would have reasonable, legitimate grounds under Section 25850(a) to check

7    a firearm to determine if it is loaded, etc. § 25850, subd. (b).

8              **3.    On The Fourteenth Amendment Claim**

9        Nichols perceives a Fourteenth Amendment Equal Protection Clause violation

10    herein because, allegedly, the open-carry laws are interpreted and applied

11    differently in different counties within California, and certain classes of people

12    have statutory exemptions from the laws. (P.I. Mtn. Brief at 10-11.) *Nordyke* also

13    considered and quickly dismissed a similar claim, in a footnote: where a gun

14    regulation does not discriminate among people based on suspect-class status (such

15    as ethnicity, national origin, or race), a court should evaluate the equal-protection

16    claim under lenient rational-basis review. 681 F.3d at 1043 n.2; see also *Williamson*

17    *v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 [75 S.Ct. 461; 99 L.Ed.2d 563]

18    (1955) ("Evils in the same field may be of different dimensions and proportions,

19    requiring different remedies. Or so the legislature may think").

20        This Court should follow the *Nordyke* approach here. For example, it would

21    have been rational for the California Legislature to have considered it more

22    dangerous for people to go around openly carrying loaded firearms in densely

23    populated public places versus sparsely populated public places, and so made it

24    immeasurably harder to obtain open-carry licenses for people in high-population

25    areas versus low-population areas. For another example, the Legislature could

26    rationally have concluded that, as a group, retired peace officers, who likely

27    arrested many people who ended up in jail before eventually being released, have

28    unusually strong self-protection needs to carry firearms when in public, compared

1  to ordinary people's needs. Consequently, Nichols's Fourteenth Amendment claim

2  lacks any real merit.[10]

3  ### 4. On The "Vagueness" Claim

4  Nichols avers that Section 25850 is unconstitutionally vague. However,

5  Nichols makes no First Amendment challenge to any act or omission of the

6  Attorney General, or to enforcement of the statutes in question.[11] Because Nichols

7  is alleging that a statute is unconstitutionally vague via a cause of action not

8  involving the First Amendment, the Court must not consider whether the statute is

9  unconstitutional on its face, and instead should consider whether the statute is

10  impermissibly vague as applied to the plaintiff. *United States v. Mazurie*, 419 U.S.

11  544, 550 [95 S.Ct. 710; 42 L.Ed.2d 706] (1975); *United States v. Purdy*, 264 F.3d

12  809, 811 (9th Cir. 2001). The reason is that "'a plaintiff who engages in some

13  conduct that is clearly proscribed cannot complain of the vagueness of the law as

14  applied to the conduct of others.'" *Holder v. Humanitarian Law Project*, __ U.S.

15  __, 130 S. Ct. 2705, 2719 [177 L.Ed.2d 355] (2010), quoting *Village of Hoffman*

16  *Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 [102 S.Ct. 1186; 71

17  L.Ed.2d 362] (1982). Because, as explained above, Nichols has not provided the

18  Court with any foundation for evaluating the constitutionality of Section 25850 on

19  an as-applied basis, the Court should deny Nichols's motion to the extent that it

20  attacks Section 25850 for vagueness.

21  Even if the Court were inclined to go further, the Court should not find

22  Section 25850 unconstitutionally vague. A law is unconstitutionally vague if it does

23

24  [10] Nichols also attacks Section 25850 because, it appears, one of the motivations of the Legislature in passing the law in 1967 was to prevent the Black

25  Panthers from openly carrying firearms in public places, such as the State Capitol. (P.I. Mtn. Brief at 12.) But the statute itself makes no mention of people's races,

26  and Nichols has presented no evidence that the law has been applied, ever or, especially, recently, disproportionately against African Americans, or people in

27  another racial minority group, to disarm them.
[11] Nichols does make First Amendment claims (as parts of his second and third causes of action), but against only Redondo Beach and its municipal laws.

28

1   not provide a "person of ordinary intelligence a reasonable opportunity to know

2   what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*,

3   408 U.S. 104, 108 [92 S.Ct. 2294; 33 L.Ed.2d 222] (1972). A law also runs afoul of

4   the Fourteenth Amendment's Due Process Clause if it is "'so standardless that it

5   authorizes or encourages seriously discriminatory enforcement.'" *Holder*, 130 S.

6   Ct. at 2718 (quoting *United States v. Williams*, 553 U.S. 285, 304 [128 S.Ct. 1830;

7   170 L.Ed.2d 650] (2008)). Yet "perfect clarity and precise guidance have never

8   been required even of regulations that restrict expressive activity." *Holder*, 130 S.

9   Ct. at 2719 (citations and quotations omitted). Statutes are presumptively valid and

10  not automatically invalidated simply because it is difficult to determine whether

11  marginal offenses fall within their language. *United States v. Nat'l Dairy Products

12  Corp.*, 372 U.S. 29, 32 [83 S.Ct. 594; 9 L.Ed.2d 561] (1963).

13       Nichols makes some contrived pleas of confusion over the meaning of the

14  terms "loaded" and "unloaded" for a firearm, and the term "public places," in

15  certain contexts. (P.I. Mtn. Brief at 12, 16.) But a person of ordinary intelligence

16  should have a general understanding of those terms, and hence of the laws in

17  question, and confusion could possibly arise in only marginal instances.

18  **B.    Nichols Has Not Been Irreparably Harmed By The Existence Or

19         Enforcement Of The Laws In Question**

20       To warrant a preliminary injunction, a plaintiff's showing of harm must "be

21  actual and not theoretical." *Emily's List v. Fed. Election Comm'n*, 362 F.Supp.2d

22  43, 57 (D.D.C. 2005). Yet Nichols's showing of harm is entirely theoretical,

23  consisting of mere rhetoric about his inability to exercise his alleged constitutional

24  rights. Nichols has not offered even one iota of evidence that he has been actually

25  harmed because Nichols cannot lawfully carry a loaded firearm openly in public

26  places.[12]

27  _____

        [12] Nichols's complaints about having his firearm seized by the Redondo

28  Beach Police Department is in the context of enforcement of municipal laws not at

                                                                    (continued…)

Furthermore, a plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc*., 762 F.2d 1374, 1377 (9th Cir. 1985). Nichols has waited decades to challenge Section 25850. He waited more than a year to challenge Section 26350. Even Section 26400 has been on the books for several months, and Nichols just now has tried to stop enforcement of that law. These delays reveal that Nichols has no urgent need to enjoin these laws and no irreparable harm.

## C.    The Balance of Harms Tips Decidedly Against Granting Injunctive Relief Here

While Nichols has no injury, "it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, __ U.S. __, 133 S. Ct. 1, 3 [183 L.Ed.2d 667] (2012). "A strong factual record is therefore necessary before a federal district court may enjoin a State agency." *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1085 (N.D. Cal. 1997), citing *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992). The acknowledged harm to the State of California if this Court enjoins the enforcement of duly-enacted public-safety laws plainly outweighs and overrides Nichols's imagined harm.

## D.    The Public Interest Is Served By Denying Injunctive Relief Here

The open carry of firearms, whether loaded or unloaded, creates potentially or actually very dangerous situations. As the legislative history of Section 26350 and Section 26400, cited above, explains, when police officers are called about "a person with a gun," they typically are responding to a situation about which they

_____

(…continued)
issue in the present preliminary-injunction motion.  (Second Am. Compl., ¶¶71, 81.)

23

have few details. Officers may have no idea whether the person has a criminal

intent or is just "exercising Second Amendment rights." Consequently, police tend

to react with "hypervigilant urgency," to protect the public from an armed threat or

potential threat. If the person fails to comply with law-enforcement requests, the

officers may be compelled to respond in kind, possibly with deadly results. Instead

of improving public safety, open carrying just increases the likelihood that

everyday interpersonal conflicts will turn into deadly shootouts. Accordingly, the

way to improve public safety is to keep the open-carry laws in place, not to strike

them down.

## II.   NICHOLS'S FACIAL CHALLENGE TO THE THREE CALIFORNIA FIREARMS LAWS IS DISFAVORED

As explained above, with the instant motion, Nichols does not present this

Court with a fact pattern to analyze. Instead, Nichols argues in the abstract about

his alleged right, as an allegedly law-abiding citizen not disqualified from

possessing firearms, to carry loaded firearms openly in most public places in

California. As such, Nichols's challenge to the California firearms laws in question

necessarily is a facial not an as-applied challenge (although Nichols claims to be

making both challenges). But the U.S. Supreme Court has made clear that such

facial challenges are disfavored:

> Facial challenges are disfavored for several reasons. Claims of facial
>
> invalidity often rest on speculation. As a consequence, they raise the
>
> risk of "premature interpretation of statutes on the basis of factually
>
> barebones records." [Citation.] Facial challenges also run contrary to
>
> the fundamental principle of judicial restraint that courts should neither
>
> "anticipate a question of constitutional law in advance of the necessity
>
> of deciding it" nor "formulate a rule of constitutional law broader than
>
> is required by the precise facts to which it is to be applied.'" [Citation.]
>
> Finally, facial challenges threaten to short circuit the democratic

1     process by preventing laws embodying the will of the people from

2     being implemented in a manner consistent with the Constitution.

3  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51

4  [128 S.Ct. 1184; 170 L.Ed.2d 151] (2008). This Court faces all these

5  problems and pitfalls in granting Nichols the relief that he seeks here. The

6  Court should hold against Nichols the substantive deficiencies of his motion

7  for a preliminary injunction, and deny the motion on that additional basis.

8                              **CONCLUSION**

9         Nichols has not come close to establishing any of the four requisite factors that

10  must be considered prior to granting preliminary injunctive relief. He has not

11  established any likelihood that he will succeed on the merits in establishing that any

12  of the challenged statutes are unconstitutional, or that he will suffer irreparable

13  harm in the absence of injunctive relief. Nor does the public interest weigh in favor

14  of enjoining enforcement of these important public-safety statutes. Therefore, the

15  Court should deny Nichols's motion for a preliminary injunction.

16  Dated: May 2, 2013                         Respectfully submitted,

17                                              KAMALA D. HARRIS
                                                Attorney General of California
18                                              MARK R. BECKINGTON
                                                Supervising Deputy Attorney General
19

20                                              */s/ Jonathan M. Eisenberg*
                                                JONATHAN M. EISENBERG
21                                              Deputy Attorney General
                                                *Attorneys for Defendant California*
22                                              *Attorney General Kamala D. Harris*

23

24

25

26

27

28