# EXHIBIT B

*California*
LEGISLATIVE INFORMATION

AB-1527 Firearms. (2011-2012)

## Assembly Bill No. 1527

### CHAPTER 700

**An act to amend Sections 7574.14 and 7582.2 of the Business and Professions Code, and to amend Sections 626.92, 16520, 16750, 16850, and 17295 of, to add Sections 16505, 26366.5, 26390, and 26391 to, and to add Chapter 7 (commencing with Section 26400) to Division 5 of Title 4 of Part 6 of, the Penal Code, relating to firearms.**

[ Approved by Governor  September 28, 2012. Filed Secretary of State September 28, 2012. ]

### LEGISLATIVE COUNSEL'S DIGEST

AB 1527, Portantino. **Firearms.**

Existing law prohibits, with exceptions, a person from possessing a firearm in a place that the person knows or reasonably should know is a school zone, as defined.

This bill would, additionally, exempt a security guard authorized to openly carry an unloaded firearm that is not a handgun and an honorably retired peace officer authorized to openly carry an unloaded firearm that is not a handgun from that prohibition.

Existing law, subject to certain exceptions, makes it an offense for a person to carry an exposed and unloaded handgun on his or her person outside a motor vehicle or inside or on a motor vehicle in public areas and public streets, as specified.

This bill would exempt a person from the crime of openly carrying an unloaded handgun if he or she is in compliance with specified provisions relating to carrying a handgun in an airport or the open carrying of an unloaded handgun by a licensed hunter while actually engaged in training a hunting dog or while transporting the handgun while going to or from that training.

This bill would, subject to exceptions, make it a misdemeanor for a person to carry an unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an incorporated city or city and county and would make it a misdemeanor with specified penalties if a person carries an unloaded firearm that is not a handgun outside a motor vehicle in an incorporated city or city and county and the person at the same time possesses ammunition capable of being discharged from the unloaded firearm that is not a handgun, and the person is not in lawful possession of the unloaded firearm that is not a handgun, as specified.

By creating a new offense, and expanding the scope of existing crimes, this bill would impose a state-mandated local program.

The bill would make conforming technical changes.

AG0073

This bill would incorporate additional changes to Section 16520 of the Penal Code proposed by SB 1366, that would become operative only if SB 1366 and this bill are both enacted, both bills become effective on or before January 1, 2013, and this bill is enacted last.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority   Appropriation: no   Fiscal Committee: yes   Local Program: yes

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 7574.14 of the Business and Professions Code is amended to read:

**7574.14.** This chapter shall not apply to the following:

(a) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in a calendar month.

(b) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(c) A charitable philanthropic society or association incorporated under the laws of this state that is organized and duly maintained for the public good and not for private profit.

(d) Patrol special police officers appointed by the police commission of a city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(e) An attorney at law in performing his or her duties as an attorney at law.

(f) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(g) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(h) A bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of Currency of the United States.

(i) A person engaged solely in the business of securing information about persons or property from public records.

(j) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt such a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(k) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where

employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, may not carry an unloaded firearm that is not a handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26405) of Chapter 7 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Sections 25450 to 25475, inclusive, of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(l) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(m) A savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(n) A secured creditor engaged in the repossession of the creditor's collateral and a lessor engaged in the repossession of leased property in which it claims an interest.

(o) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(p) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses a deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(q) An armored contract carrier operating armored vehicles pursuant to the authority of the Department of the California Highway Patrol or the Public Utilities Commission, or an armored vehicle guard employed by an armored contract carrier.

**SEC. 2.** Section 7582.2 of the Business and Professions Code is amended to read:

7582.2. This chapter does not apply to the following:

(a) A person who does not meet the requirements to be a proprietary private security officer, as defined in Section 7574.01, and is employed exclusively and regularly by an employer who does not provide contract security services for other entities or persons, in connection with the affairs of the employer only and where there exists an employer-employee relationship if that person at no time carries or uses a deadly weapon in the performance of his or her duties. For purposes of this subdivision, "deadly weapon" is defined to include an instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, a dirk, dagger, pistol, revolver, or any other firearm, a knife having a blade longer than five inches, a razor with an unguarded blade, and a metal pipe or bar used or intended to be used as a club.

(b) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in any calendar month.

(c) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(d) A charitable philanthropic society or association duly incorporated under the laws of this state that is organized and maintained for the public good and not for private profit.

(e) Patrol special police officers appointed by the police commission of a city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(f) An attorney at law in performing his or her duties as an attorney at law.

(g) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(h) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(i) A bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of the Currency of the United States.

(j) A person engaged solely in the business of securing information about persons or property from public records.

(k) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(l) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, may not carry an unloaded firearm that is not a handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26405) of Chapter 7 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4 of Part 6 of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(m) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(n) A savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(o) A secured creditor engaged in the repossession of the creditor's collateral and a lessor engaged in the repossession of leased property in which it claims an interest.

AG0076

(p) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(q) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses a deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(r) The changes made to this section by the act adding this subdivision during the 2005–06 Regular Session of the Legislature shall apply as follows:

(1) On and after July 1, 2006, to a person hired as a security officer on and after January 1, 2006.

(2) On and after January 1, 2007, to a person hired as a security officer before January 1, 2006.

SEC. 3. Section 626.92 of the Penal Code is amended to read:

626.92. Section 626.9 does not apply to or affect any of the following:

(a) A security guard authorized to openly carry an unloaded handgun pursuant to Chapter 6 (commencing with Section 26350) of Division 5 of Title 4 of Part 6.

(b) An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to Section 26361.

(c) A security guard authorized to openly carry an unloaded firearm that is not a handgun pursuant to Chapter 7 (commencing with Section 26400) of Division 5 of Title 4 of Part 6.

(d) An honorably retired peace officer authorized to openly carry an unloaded firearm that is not a handgun pursuant to Section 26405.

SEC. 4. Section 16505 is added to the Penal Code, to read:

16505. For purposes of Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, a firearm is "encased" when that firearm is enclosed in a case that is expressly made for the purpose of containing a firearm and that is completely zipped, snapped, buckled, tied, or otherwise fastened with no part of that firearm exposed.

SEC. 5. Section 16520 of the Penal Code is amended to read:

16520. (a) As used in this part, "firearm" means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26600 to 27140, inclusive.

(9) Sections 27400 to 28000, inclusive.

(10) Section 28100.

(11) Sections 28400 to 28415, inclusive.

(12) Sections 29010 to 29150, inclusive.

(13) Sections 29610 to 29750, inclusive.

(14) Sections 29800 to 29905, inclusive.

(15) Sections 30150 to 30165, inclusive.

(16) Section 31615.

(17) Sections 31705 to 31830, inclusive.

(18) Sections 34355 to 34370, inclusive.

(19) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes a rocket, rocket propelled projectile launcher, or similar device containing an explosive or incendiary material, whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(6) Chapter 7 (commencing with Section 26400) of Division 5 of Title 4.

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26700 to 26915, inclusive.

(9) Section 27510.

(10) Section 27530.

(11) Section 27540.

(12) Section 27545.

(13) Sections 27555 to 27570, inclusive.

(14) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

SEC. 5.5. Section 16520 of the Penal Code is amended to read:

16520. (a) As used in this part, "firearm" means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

(7) Sections 25250 to 25256, inclusive.

(8) Sections 26500 to 26588, inclusive.

(9) Sections 26600 to 27140, inclusive.

(10) Sections 27400 to 28000, inclusive.

(11) Section 28100.

(12) Sections 28400 to 28415, inclusive.

(13) Sections 29010 to 29150, inclusive.

(14) Sections 29610 to 29750, inclusive.

(15) Sections 29800 to 29905, inclusive.

(16) Sections 30150 to 30165, inclusive.

(17) Section 31615.

(18) Sections 31705 to 31830, inclusive.

(19) Sections 34355 to 34370, inclusive.

(20) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes a rocket, rocket propelled projectile launcher, or similar device containing an explosive or incendiary material, whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Sections 25250 to 25256, inclusive.

(6) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(7) Chapter 7 (commencing with Section 26400) of Division 5 of Title 4.

(8) Sections 26500 to 26588, inclusive.

(9) Sections 26700 to 26915, inclusive.

(10) Section 27510.

(11) Section 27530.

(12) Section 27540.

(13) Section 27545.

(14) Sections 27555 to 27570, inclusive.

(15) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

SEC. 6. Section 16750 of the Penal Code is amended to read:

16750. (a) As used in Section 25400, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(b) As used in Article 2 (commencing with Section 25850), Article 3 (commencing with Section 25900), and Article 4 (commencing with Section 26000) of Chapter 3 of Division 5 of Title 4, Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, and Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

SEC. 7. Section 16850 of the Penal Code is amended to read:

16860. As used in Sections 1774, 25925, 25105, 25205, and 25610, in Article 7 (commencing with Section 25505) of Chapter 2 of Division 5 of Title 4, in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, and in Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, "locked container" means a secure container that is fully enclosed and locked by a padlock, keylock, combination lock, or similar locking device. The term "locked container" does not include the utility or glove compartment of a motor vehicle.

**SEC. 8.** Section 17295 of the Penal Code is amended to read:

17295. (a) For purposes of Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

(b) For purposes of Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, a firearm that is not a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

**SEC. 9.** Section 26366.5 is added to the Penal Code, to read:

26366.5. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

**SEC. 10.** Section 26390 is added to the Penal Code, to read:

26390. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun in any of the following circumstances:

(a) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 1 (commencing with Section 18710) of Division 5 of Title 2 by a person who holds a permit issued pursuant to Article 3 (commencing with Section 18900) of that chapter, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit.

(b) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 2 (commencing with Section 30500) of Division 10 by a person who holds a permit issued pursuant to Section 31005, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit.

(c) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 6 (commencing with Section 32610) of Division 10 by a person who holds a permit issued pursuant to Section 32650, if the carrying is conducted in accordance with the terms and conditions of the permit.

(d) The open carrying of an unloaded handgun that is regulated pursuant to Article 2 (commencing with Section 33300) of Chapter 8 of Division 10 by a person who holds a permit issued pursuant to Section 33300, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit.

**SEC. 11.** Section 26391 is added to the Penal Code, to read:

26391. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun when done in accordance with the provisions of subdivision (d) of Section 171.5.

**SEC. 12.** Chapter 7 (commencing with Section 26400) is added to Division 5 of Title 4 of Part 6 of the Penal Code, to read:

CHAPTER 7. Carrying an Unloaded Firearm That is not a Handgun in an Incorporated City or City and County
Article 1. Crime of Carrying an Unloaded Firearm that is not a Handgun in an Incorporated City or City and County

26400. (a) A person is guilty of carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county.

(b) (1) Except as specified in paragraph (2), a violation of this section is a misdemeanor.

(2) A violation of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if the firearm and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not in lawful possession of that firearm.

(c) (1) Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d) Notwithstanding the fact that the term "an unloaded firearm that is not a handgun" is used in this section, each individual firearm shall constitute a distinct and separate offense under this section.

### Article 2. Exemptions

**26405.** Section 26400 does not apply to, or affect, the carrying of an unloaded firearm that is not a handgun in any of the following circumstances:

(a) By a person when done within a place of business, a place of residence, or on private property, if that person, by virtue of subdivision (a) of Section 25605, may carry a firearm within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

(b) By a person when done within a place of business, a place of residence, or on private property, if done with the permission of a person who, by virtue of subdivision (a) of Section 25605, may carry a firearm within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

(c) When the firearm is either in a locked container or encased and it is being transported directly between places where a person is not prohibited from possessing that firearm and the course of travel shall include only those deviations between authorized locations as are reasonably necessary under the circumstances.

(d) If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety. This paragraph may not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with Section 6200) of the Family Code absent a factual finding of a specific threat to the person's life or safety. Upon a trial for violating subdivision (a), the trier of fact shall determine whether the defendant was acting out of a reasonable belief that he or she was in grave danger.

(e) By a peace officer or an honorably retired peace officer if that officer may carry a concealed firearm pursuant to Article 2 (commencing with Section 25450) of Chapter 2, or a loaded firearm pursuant to Article 3 (commencing with Section 25900) of Chapter 3.

(f) By a person to the extent that person may openly carry a loaded firearm that is not a handgun pursuant to Article 4 (commencing with Section 26000) of Chapter 3.

(g) As merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in **firearms** and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.

(h) By a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization.

(i) By a member of a club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a firearm that is not a handgun at that target range.

(j) By a licensed hunter while engaged in hunting or while transporting that firearm when going to or returning from that hunting expedition.

(k) Incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law.

(l) By a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions.

(m) Within a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6.

(n) Within a school zone, as defined in Section 626.9, with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority.

(o) When in accordance with the provisions of Section 171b.

(p) By a person while engaged in the act of making or attempting to make a lawful arrest.

(q) By a person engaged in **firearms**-related activities, while on the premises of a fixed place of business that is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of **firearms**, or related to **firearms** training.

(r) By an authorized participant in, or an authorized employee or agent of a supplier of **firearms** for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event.

(s) Incident to obtaining an identification number or mark assigned for that firearm from the Department of Justice pursuant to Section 23910.

(t) At an established public target range while the person is using that firearm upon that target range.

(u) By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace, while the person is actually engaged in assisting that officer.

(v) Incident to any of the following:

(1) Complying with Section 27560 or 27565, as it pertains to that firearm.

(2) Section 28000, as it pertains to that firearm.

(3) Section 27850 or 31725, as it pertains to that firearm.

(4) Complying with Section 27870 or 27875, as it pertains to that firearm.

(5) Complying with Section 27915, 27920, or 27925, as it pertains to that firearm.

(w) Incident to, and in the course and scope of, training of, or by an individual to become a sworn peace officer as part of a course of study approved by the Commission on Peace Officer Standards and Training.

(x) Incident to, and in the course and scope of, training of, or by an individual to become licensed pursuant to Chapter 4 (commencing with Section 26150) as part of a course of study necessary or authorized by the person authorized to issue the license pursuant to that chapter.

(y) Incident to and at the request of a sheriff, chief, or other head of a municipal police department.

(z) If all of the following conditions are satisfied:

(1) The open carrying occurs at an auction or similar event of a nonprofit public benefit or mutual benefit corporation at which **firearms** are auctioned or otherwise sold to fund the activities of that corporation or the local chapters of that corporation.

(2) The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for that nonprofit public benefit or mutual benefit corporation.

(3) The unloaded firearm that is a handgun is to be delivered by a licensed dealer, and
operating in accordance with, Sections 26700 to 26925, inclusive.

(aa) Pursuant to paragraph (3) of subdivision (b) of Section 171c.

(ab) Pursuant to Section 171d.

(ac) Pursuant to subparagraph (F) of paragraph (1) of subdivision (c) of Section 171.7.

(ad) On publicly owned land, if the possession and use of unloaded firearm that is not a handgun is specifically permitted by the managing agency of the land and the person carrying that firearm is in lawful possession of that firearm.

(ae) By any of the following:

(1) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Chapter 1 (commencing with Section 18710) of Division 5 of Title 2 by a person who holds a permit issued pursuant to Article 3 (commencing with Section 18900) of that chapter, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(2) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Chapter 2 (commencing with Section 30500) of Division 10 by a person who holds a permit issued pursuant to Section 31005, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(3) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Chapter 6 (commencing with Section 32610) of Division 10 by a person who holds a permit issued pursuant to Section 32650, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(4) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Article 2 (commencing with Section 33300) of Chapter 8 of Division 10 by a person who holds a permit issued pursuant to Section 33300, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(af) By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

(ag) Pursuant to the provisions of subdivision (d) of Section 171.5.

(ah) By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while the firearm is being used in the lawful course and scope of the licensee's activities as a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and regulations issued pursuant thereto.

(ai) On the navigable waters of this state that are held in public trust, if the possession and use of an unloaded firearm that is not a handgun is not prohibited by the managing agency thereof and the person carrying the firearm is in lawful possession of the firearm.

SEC. 13. Section 5.5 of this bill incorporates amendments to Section 16520 of the Penal Code proposed by both this bill and Senate Bill 1366. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2013, (2) each bill amends Section 16520 of the Penal Code, and (3) this bill is enacted after Senate Bill 1366, in which case Section 5 of this bill shall not become operative.

SEC. 14. No reimbursement is required by this act pursuant to Section 6 of Article XIIIB of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIIIB of the California Constitution.

AG0084

# California
## LEGISLATIVE INFORMATION

**AB-1527 Firearms.** (2011-2012)

| Date | Result | Location | Ayes | Noes | NVR | Motion |
|------|--------|----------|------|------|-----|--------|
| 08/29/12 | (PASS) | Assembly Floor | 47 | 31 | 2 | AB 1527 PORTANTINO Concurrence in Senate Amendments |
| | | **Ayes:** Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bonilla, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Davis, Dickinson, Eng, Feuer, Fletcher, Fong, Fuentes, Gatto, Gordon, Hall, Hayashi, Roger Hernández, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mendoza, Mitchell, Monning, Pan, Portantino, Skinner, Solorio, Swanson, Torres, Wieckowski, Williams, Yamada, John A. Pérez | | | | |
| | | **Noes:** Achadjian, Bill Berryhill, Chesbro, Conway, Cook, Donnelly, Beth Gaines, Garrick, Gorell, Grove, Hagman, Halderman, Harkey, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Norby, Olsen, Perea, V. Manuel Pérez, Silva, Smyth, Valadao, Wagner | | | | |
| | | **No Votes Recorded:** Furutani, Galgiani | | | | |
| 08/27/12 | (PASS) | Senate Floor | 23 | 15 | 2 | Assembly 3rd Reading AB1527 Portantino By De León |
| | | **Ayes:** Alquist, Calderon, Corbett, De León, DeSaulnier, Evans, Hancock, Hernandez, Kehoe, Leno, Lieu, Liu, Lowenthal, Negrete McLeod, Padilla, Pavley, Price, Rubio, Simitian, Steinberg, Vargas, Wolk, Yee | | | | |
| | | **Noes:** Anderson, Berryhill, Blakeslee, Cannella, Correa, Dutton, Emmerson, Fuller, Gaines, Harman, Huff, La Malfa, Strickland, Walters, Wright | | | | |
| | | **No Votes Recorded:** Runner, Wyland | | | | |
| 08/06/12 | (PASS) | Sen Appropriations | 5 | 2 | 0 | Do pass. |
| | | **Ayes:** Alquist, Kehoe, Lieu, Price, Steinberg | | | | |
| | | **Noes:** Dutton, Walters | | | | |
| | | **No Votes Recorded:** | | | | |
| 06/26/12 | (PASS) | Sen Public Safety | 5 | 2 | 0 | Do pass, but re-refer to the Committee on Appropriations. |
| | | **Ayes:** Calderon, Hancock, Liu, Price, Steinberg | | | | |
| | | **Noes:** Anderson, Harman | | | | |
| | | **No Votes Recorded:** | | | | |
| 05/03/12 | (PASS) | Assembly Floor | 44 | 29 | 7 | AB 1527 PORTANTINO Assembly Third Reading |
| | | **Ayes:** Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Galgiani, Gatto, Gordon, Hayashi, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mendoza, Mitchell, Monning, Pan, Portantino, Skinner, Solorio, Swanson, Torres, Wieckowski, Williams, Yamada, John A. Pérez | | | | |
| | | **Noes:** Achadjian, Bill Berryhill, Chesbro, Conway, Cook, Donnelly, Beth Gaines, Garrick, Gorell, Grove, Hagman, Halderman, Harkey, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Norby, Olsen, Perea, Silva, Valadao, Wagner | | | | |
| | | **No Votes Recorded:** Bonilla, Fletcher, Furutani, Hall, Roger Hernández, V. Manuel Pérez, Smyth | | | | |
| 04/18/12 | (PASS) | Asm Appropriations | 12 | 5 | 0 | Do pass. |
| | | **Ayes:** Blumenfield, Bradford, Charles Calderon, Campos, Davis, Fuentes, Gatto, Hall, Hill, Lara, Mitchell, Solorio | | | | |
| | | **Noes:** Donnelly, Harkey, Nielsen, Norby, Wagner | | | | |
| | | **No Votes Recorded:** | | | | |
| 03/27/12 | (PASS) | Asm Public Safety | 4 | 2 | 0 | Do pass as amended and be re-referred to the Committee on Appropriations. |

AG0085

| Date | Result | Location | Ayes | Noes | NVR | Motion |
|------|--------|----------|------|------|-----|--------|
| | | **Ayes:** Ammiano, Cedillo, Mitchell, Skinner | | | | |
| | | **Noes:** Hagman, Knight | | | | |
| | | **No Votes Recorded:** | | | | |
| | | | | | | |

*California*
LEGISLATIVE INFORMATION

**AB-1527 Firearms.** (2011-2012)

| Date | Action |
|------|--------|
| 09/28/12 | Chaptered by Secretary of State - Chapter 700, Statutes of 2012. |
| 09/28/12 | Approved by the Governor. |
| 09/13/12 | Enrolled and presented to the Governor at 12:15 p.m. |
| 08/29/12 | Senate amendments concurred in. To Engrossing and Enrolling. (Ayes 47. Noes 31. Page 6503.). |
| 08/29/12 | Assembly Rule 77 suspended. (Page 6488.) |
| 08/28/12 | In Assembly. Concurrence in Senate amendments pending. May be considered on or after August 30 pursuant to Assembly Rule 77. |
| 08/27/12 | Read third time. Passed. Ordered to the Assembly. (Ayes 23. Noes 15. Page 4873.). |
| 08/23/12 | Read second time. Ordered to third reading. |
| 08/22/12 | Read third time and amended. Ordered to second reading. |
| 08/08/12 | Read second time. Ordered to third reading. |
| 08/07/12 | From committee: Do pass. (Ayes 5. Noes 2.) (August 6). |
| 06/26/12 | From committee: Do pass and re-refer to Com. on APPR. (Ayes 5. Noes 2.) (June 26). Re-referred to Com. on APPR. |
| 05/17/12 | Referred to Com. on PUB. S. |
| 05/03/12 | In Senate. Read first time. To Com. on RLS. for assignment. |
| 05/03/12 | Read third time. Passed. Ordered to the Senate. (Ayes 44. Noes 29. Page 4661.) |
| 04/19/12 | Read second time. Ordered to third reading. |
| 04/18/12 | From committee: Do pass. (Ayes 12. Noes 5.) (April 18). |
| 04/11/12 | Re-referred to Com. on APPR. |
| 04/10/12 | Read second time and amended. |
| 04/09/12 | From committee: Do pass as amended and re-refer to Com. on APPR. (Ayes 4. Noes 2.) (March 27). |
| 03/08/12 | Re-referred to Com. on PUB. S. |
| 03/07/12 | From committee chair, with author's amendments: Amend, and re-refer to Com. on PUB. S. Read second time and amended. |
| 02/02/12 | Referred to Com. on PUB. S. |
| 01/24/12 | From printer. May be heard in committee February 23. |
| 01/23/12 | Read first time. To print. |

 *California*
LEGISLATIVE INFORMATION

**AB-1527 Firearms.** (2011-2012)

| Bill Analysis |
|---|
| 08/28/12- Assembly Floor Analysis |
| 08/23/12- Senate Floor Analyses |
| 08/16/12- Senate Appropriations |
| 08/08/12- Senate Floor Analyses |
| 08/05/12- Senate Appropriations |
| 06/25/12- Senate Public Safety |
| 04/20/12- Assembly Floor Analysis |
| 04/17/12- Assembly Appropriations |
| 03/26/12- Assembly Public Safety |

AG0146

CONCURRENCE IN SENATE AMENDMENTS
AB 1527 (Portantino and Ammiano)
As Amended August 22, 2012
Majority vote

| ASSEMBLY: | 44-29 (May 3, 2012) | SENATE: | 23-15 (August 27, 2012) |

Original Committee Reference: <u>PUB. S.</u>

<u>SUMMARY:</u> Makes it a misdemeanor, with certain exceptions, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an incorporated city or city and county.

<u>The Senate amendments</u> add double jointing language to avoid chaptering problems with SB 1366 (De Saulnier).

<u>AS PASSED BY THE ASSEMBLY,</u> this bill made it a misdemeanor, with certain exceptions, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an incorporated city or city and county. Specifically, <u>this bill</u>

1) Made it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

2) Stated that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

3) Provided that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

4) Provided that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his or her person outside a vehicle in specified areas does not apply under any of the following circumstances:

   a) By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property;

   b) When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances;

AG0088

c) If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety, as specified;

d) By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified;

e) By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States;

f) As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business;

g) By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization;

h) By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;

i) By a licensed hunter while engaged in lawful hunting or while transporting that firearm while going to or returning from that hunting expedition;

j) Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;

k) By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;

l) Within a licensed gun show;

m) Within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

n) When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;

o) By any person while engaged in the act of making or attempting to make a lawful arrest;

p) By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or

AG0089

related to firearms training;

q) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event;

r) Incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

s) At any established public target range while the person is using that firearm upon the target range;

t) By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;

u) Complying with specified provisions of law relating to the regulation of firearms;

v) Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training;

w) Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon;

x) Incident to and at the request of a sheriff or chief or other head of a municipal police department;

y) If all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii) The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and,

   iii) The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

z) By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol;

aa) By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion;

bb) By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a

weapon within a public transit system;

cc) On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun;

dd) The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit;

ee) By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from the training;

ff) By a person in compliance with specified provisions related to carrying a firearm in an airport; or,

gg) By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

5) Exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

6) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

7) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in an airport.

8) Made conforming technical changes.

FISCAL EFFECT: According to the Senate Appropriations Committee

1) Ongoing court costs for increased misdemeanor filings potentially in excess of $100,000 (General Fund) per year, offset to a degree by fine revenue.

2) Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.

3) While the impact of this bill independently on local jails could be minor, the cumulative effect of increasing the number of misdemeanors filed could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources in the context of recently enacted 2011 Public Safety Realignment.

AG0091

COMMENTS: According to the author, "AB 1527 is a modified version of AB 144 from last session. AB 1527 bans the open carrying of an unloaded firearm that is not a handgun in an incorporated city or city and county, with specific exceptions." The absence of a prohibition on 'open carry' of long guns has created an increase in problematic instances of these guns carried in public, alarming unsuspecting individuals causing issues for law enforcement. Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation the practice of 'open carry' creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in 'open carry' calls has placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

Please see the policy committee for a full discussion of this bill.

Analysis Prepared by:   Gregory Pagan / PUB. S. / (916) 319-3744

FN: 0005485

AG0092

**SENATE RULES COMMITTEE**                                    AB 1527
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520      Fax: (916) 327-4478

---

### THIRD READING

---

Bill No:     AB 1527
Author:      Portantino (D)
Amended:     8/22/12 in Senate
Vote:        21

---

<u>SENATE PUBLIC SAFETY COMMITTEE</u>: 5-2, 6/26/12
AYES: Hancock, Calderon, Liu, Price, Steinberg
NOES: Anderson, Harman

<u>SENATE APPROPRIATIONS COMMITTEE</u>: 5-2, 8/6/12
AYES: Kehoe, Alquist, Lieu, Price, Steinberg
NOES: Walters, Dutton

<u>ASSEMBLY FLOOR</u>: 44-29, 5/3/12 - See last page for vote

---

**SUBJECT:**   Openly carrying long guns

**SOURCE:**    California Police Chiefs Association
               Peace Officer Research Association of California

---

**DIGEST:**  This bill (1) makes it a misdemeanor, punishable by up to six months in a county jail, or a fine of up to $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his/her person outside a vehicle while in an incorporated city or city and county; (2) makes this offense punishable by up to one year in the county jail, or a fine of up to $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm; (3) establishes numerous exemptions from this prohibition; (4) creates an exemption from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place for a licensed hunter while actually

CONTINUED

AG0093

engaged in the training of a dog for the purpose of using the dog in hunting
that is not prohibited by law, or while transporting the firearm while going to
or returning from that training; and (5) creates an exemption from the
existing prohibition against carrying an exposed and unloaded handgun
outside a vehicle in a public place for a person in compliance with specified
provisions related to carrying a firearm in airports and commuter passenger
terminals, as specified.

Senate Floor Amendments of 8/22/12 exempt from the bill's prohibition on
openly carrying unloaded long guns in incorporated cities the carrying of
such guns "on the navigable waters of this state that are held in public trust",
and add double-jointing with SB 1366, to prevent chaptering out.

**ANALYSIS:**   Existing law makes it a misdemeanor punishable by
imprisonment in the county jail not to exceed six months, by a fine not to
exceed $1,000, or both, for any person to carry an exposed and unloaded
handgun outside a vehicle upon his/her person while in any public place or
on any public street in an incorporated city, or in any public place or public
street in a prohibited area of an unincorporated county.  (Penal Code (PEN)
Section 26350(a)(1))

Existing law makes the crime of openly carrying an unloaded handgun
punishable by imprisonment in the county jail not to exceed one year, or by
a fine not to exceed $1,000, or by that fine and imprisonment if the handgun
and unexpended ammunition capable of being discharged from that firearm
are in the immediate possession of the person and the person is not the
registered owner of the firearm.  (PEN Section 26350(a)(2))

Existing law prohibits the carrying of a loaded firearm on his/her person or
in a vehicle while in any public place or on any public street in an
incorporated city or a prohibited area of unincorporated territory.  This
offense is a misdemeanor, punishable by up to one year in the county jail, a
fine of up to $1,000, or both, unless various aggravating circumstances are
present, in which case this offense it is punishable as a felony.  (PEN Section
25850)

Existing law provides that a firearm shall be deemed to be loaded for the
purposes of PEN Section 12031 when there is an unexpended cartridge or
shell, consisting of a case that holds a charge of powder and a bullet or shot,
in, or attached in any manner to, the firearm, including, but not limited to, in
the firing chamber, magazine, or clip thereof attached to the firearm; except

CONTINUED

that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (PEN Section 16840(b))

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code Section 2006)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine. (Id.)

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;

- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen;

- A felony where the person is an active participant in a criminal street gang;

- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the Department of Justice (DOJ) as the registered owner of the firearm. (PEN Section 25858(c))

CONTINUED

This bill makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his/her person outside a vehicle while in an incorporated city or city and county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

This bill states that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

This bill states that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

This bill provides that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his/her person outside a vehicle in specified areas does not apply under any of the following circumstances:

- By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property.

- When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances.

- If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his/her life or safety, as specified.

- By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified.

- By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States.

CONTINUED

AG0096

- As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business.

- By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization.

- By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

- Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law.

- By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.

- Within a licensed gun show.

- Within a school zone, as defined, with the written permission of the school district superintendent, his/her designee, or equivalent school authority.

- When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.

- By any person while engaged in the act of making or attempting to make a lawful arrest.

- By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

- By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event.

CONTINUED

<u>AB 1527</u>
Page 6

- Incident to obtaining an identification number or mark assigned for that handgun from the DOJ.

- At any established public target range while the person is using that firearm upon the target range.

- By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer.

- Complying with specified provisions of law relating to the regulation of firearms.

- Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training.

- Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon.

- Incident to and at the request of a sheriff or chief or other head of a municipal police department.

- If all of the following conditions are satisfied:

   o The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   o The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and

   o The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

   o By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol.

   o By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion.

   o By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system.

CONTINUED

AG0098

- o  On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

- o  The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit.

- o  By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training.

- o  By a person in compliance with specified provisions related to carrying a firearm in an airport.

- o  By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

This bill states that, for purposes of the prohibition on openly carrying an unloaded firearm that is not a handgun, the definition of "firearm" does not include any antique firearm.

This bill exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals.

Existing law also exempts from the provisions of carrying an exposed and unloaded handgun a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while the firearm is being

CONTINUED

AG0099

used in the lawful course and scope of the licensee's activities as a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and regulations issued pursuant thereto.

This bill adds to that exemption an individual carrying an exposed and unloaded firearm on the navigable waters of this state that are held in public trust, if the possession and use of an unloaded firearm that is not a handgun is not prohibited by the managing agency thereof and the person carrying the firearm is in lawful possession of the firearm.

This bill makes conforming technical changes and is double-jointed with SB 1366 (DeSaulnier).

<u>Prior Legislation</u>

AB 144 (Portantino), Chapter 725, Statutes of 2011, passed the Senate Floor (21-18) on 9/8/11.

AB 1934 (Saldana, 2010) died on Assembly Concurrence.

AB 98 (Cohn, 2005) was held on Suspense in the Assembly Appropriations Committee.

AB 2501(Horton, 2004) failed passage in the Assembly Public Safety Committee.

AB 2828 (Cohn, 2004) failed passage in the Assembly Public Safety Committee.

**FISCAL EFFECT**:  Appropriation: No   Fiscal Com.: Yes   Local: Yes

According to the Senate Appropriations Committee:

- Potential ongoing court costs of $24,000 to $48,000 (General Fund) for 50 to 100 additional misdemeanor filings per year.

- Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.

- While the impact of this bill independently is likely to be minor, the cumulative effect of all new misdemeanors could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and

CONTINUED

AG0100

AB 1527
Page 9

other resources in the context of recently enacted 2011 Public Safety Realignment.

**SUPPORT:** (Verified 8/22/12)

California Police Chiefs Association (co-source)
Peace Officer Research Association of California (co-source)
California Chapters of the Brady Campaign Against Gun Violence
California Peace Officers Association
Coalition Against Gun Violence
Law Center to Prevent Gun Violence
Los Angeles Sheriff's Department
Women Against Gun Violence

**OPPOSITION:** (Verified 8/22/12)

California Rifle and Pistol Association
National Association for Gun Rights
National Rifle Association of America
Save Our State

**ARGUMENTS IN SUPPORT:** The Peace Officer Research Association of California states:

The practice by individuals and organizations to "openly carry" firearms in public places in order to challenge law enforcement and firearms statutes in California is increasing in frequency. While PORAC understands that most of these open carry demonstrations are being done by law abiding citizens, it places law enforcement and the public in a precarious and possible dangerous situation. Most often, law enforcement is called to the scene based on a citizen or merchant complaint. When the officer arrives at the scene, it is their obligation to question those persons carrying the firearms and to inquire as to whether the firearm is loaded. Until that officer has physically seen if the firearm is loaded, that officer must assume that their lives and the lives of those around them may be in danger.

Again, these situations are potentially dangerous and should not occur in a public place wherein any number of things could go wrong. We believe this bill will be very helpful in preventing these potentially unsafe incidents from happening.

CONTINUED

AG0101

**ARGUMENTS IN OPPOSITION:**   The National Association for Gun Rights states, "Rifles and shotguns are hardly the weapons of choice for the common criminal.  This is yet another attempt to prohibit something because it 'looks scary.'  In a recent press release, Assemblyman Anthony Portantino admitted this bill is merely retaliation against law-abiding citizens who chose to peacefully exercise their First Amendment right of free speech in support of their Second Amendment rights after passage of last year's Open Carry Ban.  Punishing citizens for engaging in lawful public demonstration is an outrageous abuse of power, further infringing on their constitutionally protected rights.  Currently twenty-eight states allow for the Open Carry of firearms in some form without a permit, and an additional thirteen allow Open Carry with a permit.  Eight states and the District of Colombia ban open carry; half of which are remnants of the 'Jim Crow' era where the intent was to prevent African-Americans from possessing firearms.  Open Carry should be viewed in the same light as [ ] concealed carry: if a person is legally able to purchase a firearm, it is not the place of the state to deny their right to carry it."

**ASSEMBLY FLOOR**: 44-29, 5/3/12
AYES: Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Galgiani, Gatto, Gordon, Hayashi, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mendoza, Mitchell, Monning, Pan, Portantino, Skinner, Solorio, Swanson, Torres, Wieckowski, Williams, Yamada, John A. Pérez
NOES: Achadjian, Bill Berryhill, Chesbro, Conway, Cook, Donnelly, Beth Gaines, Garrick, Gorell, Grove, Hagman, Halderman, Harkey, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Norby, Olsen, Perea, Silva, Valadao, Wagner
NO VOTE RECORDED: Bonilla, Fletcher, Furutani, Hall, Roger Hernández, V. Manuel Pérez, Smyth

RJG:d  8/23/12   Senate Floor Analyses
SUPPORT/OPPOSITION:  SEE ABOVE
**** **END** ****

**Senate Appropriations Committee Fiscal Summary**
**Senator Christine Kehoe, Chair**

**AB 1950 (Davis) – Prohibited business practices: enforcement.**

**Amended:** August 6, 2012          **Policy Vote:** Judiciary 4-0
**Urgency:** No                      **Mandate:** Yes
**Hearing Date:** August 16, 2012    **Consultant:** Jolie Onodera

**SUSPENSE FILE.**

**Bill Summary:** AB 1950 would remove the January 1, 2013, sunset date on the prohibition from unlawfully performing mortgage loan modification or loan forbearance services. This bill would extend the statute of limitations period for prosecution of certain real estate-related misdemeanors, as specified, and would provide that it is unlawful to act as a mortgage loan originator without being licensed.

**Fiscal Impact:**
- Ongoing court costs for increased misdemeanor filings potentially in excess of $100,000 (General Fund) per year, offset to a degree by fine revenue.
- Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.
- While the impact of this bill independently on local jails could be minor, the cumulative effect of increasing the number of misdemeanors filed could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources in the context of recently enacted 2011 Public Safety Realignment.

**Background:** This bill is part of the Attorney General's package of mortgage fraud reform termed the "California Homeowner Bill of Rights." This bill seeks to enable more thorough investigations and prosecutions of mortgage-related crime. In May 2011, the Attorney General announced the creation of the Mortgage Fraud Strike Force whose purpose is to monitor and prosecute violations related to all steps in the mortgage process. The Attorney General has indicated the one-year statute of limitations on various mortgage-related crimes has inhibited a number of prosecutions due to the protracted nature of the foreclosure process and the delayed discovery of illegal activity.

Existing law, until January 1, 2013, prohibits any person, real estate licensee, or attorney who negotiates, attempts to negotiate, arranges, attempts to arrange, or otherwise offers to perform a mortgage loan modification or other form of mortgage loan forbearances for a fee or other compensation paid by the borrower to do any of the following:
- Claim, demand, charge, collect, or receive any compensation until after the person or licensee has fully performed each and every service he or she contracted to perform or represented that he or she would perform.
- Take any wage assignment, any lien of any type on real or personal property, or any other security to secure the payment of compensation.

AG0103

AB 1950 (Davis)
Page 2

- Take any power of attorney from the borrower for any purpose.

A violation of the above provision is a misdemeanor, punishable by a fine not exceeding $10,000 ($50,000 if the party violating the law is a corporation), imprisonment in the county jail for up to one year, or by both a fine and imprisonment, and provides that those penalties are cumulative to any other remedies or penalties provided by law.

Existing law generally applies a one year statute of limitations to the prosecution of violations of California laws not punishable by death or imprisonment in the state prison or pursuant to subdivision (h) of PC section 1170.

**Proposed Law:** This bill seeks to expand protections related to mortgage fraud. Specifically, this bill:

- Deletes the January 1, 2013, sunset date on the prohibition against charging up-front fees, thereby extending the prohibition indefinitely.
- Deletes the January 1, 2013, sunset date on Business and Professions Code section 10085.6 and Civil Code section 2944.7 which apply to real estate licensees and other persons, thereby extending these provisions indefinitely.
- Extends the statute of limitations from one year to three years after discovery of the offense or completion of the offense, whichever is later, for prosecution of misdemeanor violations of the following:
  o Prohibition against the practice of law by unlicensed or disbarred persons.
  o Prohibition against collecting up-front fees in connection with offers to help borrowers obtain mortgage loan modifications or forbearance.
  o Prohibition against the practice of real estate by unlicensed persons.
  o Requirement for real estate licensees to provide a specified notice to borrowers before entering into a fee agreement in connection with offers to help obtain mortgage loan modifications or forbearance.
  o General requirement to provide a specified notice to borrowers before entering into a fee agreement with them in mortgage loan transactions.
  o General prohibition against collecting up-front fees in connection with offers to help borrowers obtain mortgage loan modifications or forbearance.
- Provides that it is unlawful to act as a mortgage loan originator without being licensed.

**Related Legislation:** SB 980 (Vargas) 2012 would extend the sunset date on the provisions of SB 94 from January 1, 2013, to January 1, 2017. This bill has been referred to the Assembly Committee on Appropriations.

SB 94 (Calderon) Chapter 630/2009 prohibits, until January 1, 2013, any person who, for a fee, assists a borrower in obtaining a loan modification from charging compensation before a service is completed.

**Staff Comments:** The provisions of this bill will likely result in an increased number of misdemeanor court filings that otherwise would not have occurred under existing law in the absence of the removal of the sunset date and the extension of the statute of limitations from one to three years for specified offenses. It is unknown how many

AB 1950 (Davis)
Page 3

additional filings will result due to the provisions of this bill. The Judicial Council would incur costs for increased misdemeanor filings of approximately $120,500 (General Fund) statewide for 250 new misdemeanors filed annually, offset to a degree by fine revenue. This estimate equates to less than five misdemeanor filings per county per year. To the extent the actual number of annual filings per county is greater, associated costs to the courts could be significantly higher.

The creation of new, or the extension of existing, misdemeanors has historically been analyzed by this Committee to result in non-reimbursable state mandated costs for local law enforcement and incarceration. Staff notes, however, that the potential for an increased number of misdemeanor convictions taken cumulatively could increase the statewide adult jail population to a degree that could potentially impact the flexibility of counties to manage their jail populations recently increased under the 2011 Public Safety Realignment. While the provisions of this bill could be minor, the cumulative effect of all additional misdemeanors could create unknown General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources.

**SENATE RULES COMMITTEE**
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520    Fax: (916) 327-4478

<u>AB 1527</u>

## THIRD READING

Bill No:    AB 1527
Author:    Portantino (D)
Amended:    4/10/12 in Assembly
Vote:    21

<u>SENATE PUBLIC SAFETY COMMITTEE</u>: 5-2, 6/26/12
AYES:  Hancock, Calderon, Liu, Price, Steinberg
NOES:  Anderson, Harman

<u>SENATE APPROPRIATIONS COMMITTEE</u>: 5-2, 8/6/12
AYES:  Kehoe, Alquist, Lieu, Price, Steinberg
NOES:  Walters, Dutton

<u>ASSEMBLY FLOOR</u>: 44-29, 5/3/12 - See last page for vote

**<u>SUBJECT</u>:**    Openly carrying long guns

**<u>SOURCE</u>:**    California Police Chiefs Association
            Peace Officer Research Association of California

**<u>DIGEST</u>:**  This bill (1) makes it a misdemeanor, punishable by up to six months in a county jail, or a fine of up to $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his/her person outside a vehicle while in an incorporated city or city and county; (2) makes this offense punishable by up to one year in the county jail, or a fine of up to $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm; (3) establishes numerous exemptions from this prohibition; (4) creates an exemption from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place for a licensed hunter while actually

CONTINUED

AG0106

engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training; and (5) creates an exemption from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place for a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals, as specified.

**ANALYSIS:**   Existing law makes it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or both, for any person to carry an exposed and unloaded handgun outside a vehicle upon his/her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. (Penal Code (PEN) Section 26350(a)(1))

Existing law makes the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm.  (PEN Section 26350(a)(2))

Existing law prohibits the carrying of a loaded firearm on his/her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory.  This offense is a misdemeanor, punishable by up to one year in the county jail, a fine of up to $1,000, or both, unless various aggravating circumstances are present, in which case this offense it is punishable as a felony.  (PEN Section 25850)

Existing law provides that a firearm shall be deemed to be loaded for the purposes of PEN Section 12031 when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (PEN Section 16840(b))

CONTINUED

AG0107

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code Section 2006)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine. (Id.)

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;

- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen;

- A felony where the person is an active participant in a criminal street gang;

- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the Department of Justice (DOJ) as the registered owner of the firearm. (PEN Section 25858(c))

This bill makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his/her person

CONTINUED

AG0108

outside a vehicle while in an incorporated city or city and county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

This bill states that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

This bill states that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

This bill provides that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his/her person outside a vehicle in specified areas does not apply under any of the following circumstances:

- By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property.

- When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances.

- If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his/her life or safety, as specified.

- By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified.

- By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States.

- As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business.

CONTINUED

AG0109

- By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization.

- By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

- Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law.

- By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.

- Within a licensed gun show.

- Within a school zone, as defined, with the written permission of the school district superintendent, his/her designee, or equivalent school authority.

- When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.

- By any person while engaged in the act of making or attempting to make a lawful arrest.

- By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

- By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event.

- Incident to obtaining an identification number or mark assigned for that handgun from the DOJ.

CONTINUED

- At any established public target range while the person is using that firearm upon the target range.

- By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer.

- Complying with specified provisions of law relating to the regulation of firearms.

- Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training.

- Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon.

- Incident to and at the request of a sheriff or chief or other head of a municipal police department.

- If all of the following conditions are satisfied:

  o The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

  o The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and

  o The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

  o By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol.

  o By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion.

  o By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system.

  o On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

CONTINUED

AG0111

o   The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit.

o   By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training.

o   By a person in compliance with specified provisions related to carrying a firearm in an airport.

o   By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

This bill states that, for purposes of the prohibition on openly carrying an unloaded firearm that is not a handgun, the definition of "firearm" does not include any antique firearm.

This bill exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals.

This bill makes conforming technical changes.

Prior Legislation

AB 144 (Portantino), Chapter 725, Statutes of 2011, passed the Senate Floor (21-18) on 9/8/11.

CONTINUED

AG0112

AB 1934 (Saldana, 2010) died on Assembly Concurrence.

AB 98 (Cohn, 2005) held on Suspense in the Assembly Appropriations Committee.

AB 2501(Horton, 2004) failed passage in the Assembly Public Safety Committee.

AB 2828 (Cohn, 2004) failed passage in the Assembly Public Safety Committee.

**FISCAL EFFECT**:  Appropriation: No  Fiscal Com.: Yes  Local: Yes

According to the Senate Appropriations Committee:

- Potential ongoing court costs of $24,000 to $48,000 (General Fund) for 50 to 100 additional misdemeanor filings per year.

- Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.

- While the impact of this bill independently is likely to be minor, the cumulative effect of all new misdemeanors could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources in the context of recently enacted 2011 Public Safety Realignment.

**SUPPORT**:  (Verified  8/8/12)

California Police Chiefs Association (co-source)
Peace Officer Research Association of California (co-source)
California Chapters of the Brady Campaign Against Gun Violence
California Peace Officers Association
Coalition Against Gun Violence
Law Center to Prevent Gun Violence
Los Angeles Sheriff's Department
Women Against Gun Violence

**OPPOSITION**:  (Verified  8/8/12)

California Rifle and Pistol Association
National Association for Gun Rights
National Rifle Association of America

CONTINUED

Save Our State

**ARGUMENTS IN SUPPORT:**   The Peace Officer Research Association states:

> The practice by individuals and organizations to "openly carry" firearms in public places in order to challenge law enforcement and firearms statutes in California is increasing in frequency. While PORAC understands that most of these open carry demonstrations are being done by law abiding citizens, it places law enforcement and the public in a precarious and possible dangerous situation. Most often, law enforcement is called to the scene based on a citizen or merchant complaint. When the officer arrives at the scene, it is their obligation to question those persons carrying the firearms and to inquire as to whether the firearm is loaded. Until that officer has physically seen if the firearm is loaded, that officer must assume that their lives and the lives of those around them may be in danger.

> Again, these situations are potentially dangerous and should not occur in a public place wherein any number of things could go wrong. We believe this bill will be very helpful in preventing these potentially unsafe incidents from happening.

**ARGUMENTS IN OPPOSITION:**   The National Association for Gun Rights states, "Rifles and shotguns are hardly the weapons of choice for the common criminal. This is yet another attempt to prohibit something because it 'looks scary.' In a recent press release, Assemblyman Anthony Portantino admitted this bill is merely retaliation against law-abiding citizens who chose to peacefully exercise their First Amendment right of free speech in support of their Second Amendment rights after passage of last year's Open Carry Ban. Punishing citizens for engaging in lawful public demonstration is an outrageous abuse of power, further infringing on their constitutionally protected rights. Currently twenty-eight states allow for the Open Carry of firearms in some form without a permit, and an additional thirteen allow Open Carry with a permit. Eight states and the District of Colombia ban open carry; half of which are remnants of the 'Jim Crow' era where the intent was to prevent African-Americans from possessing firearms. Open Carry should be viewed in the same light as [ ] concealed carry: if a person is legally able to purchase a firearm, it is not the place of the state to deny their right to carry it."

CONTINUED

AG0114

**ASSEMBLY FLOOR**: 44-29, 5/3/12

AYES: Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Galgiani, Gatto, Gordon, Hayashi, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mendoza, Mitchell, Monning, Pan, Portantino, Skinner, Solorio, Swanson, Torres, Wieckowski, Williams, Yamada, John A. Pérez

NOES: Achadjian, Bill Berryhill, Chesbro, Conway, Cook, Donnelly, Beth Gaines, Garrick, Gorell, Grove, Hagman, Halderman, Harkey, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Norby, Olsen, Perea, Silva, Valadao, Wagner

NO VOTE RECORDED: Bonilla, Fletcher, Furutani, Hall, Roger Hernández, V. Manuel Pérez, Smyth


RJG:d  8/8/12   Senate Floor Analyses

SUPPORT/OPPOSITION:  SEE ABOVE

**** **END** ****

Senate Appropriations Committee Fiscal Summary
Senator Christine Kehoe, Chair

**AB 1527 (Portantino) – Firearms: openly carrying long guns.**

**Amended:** April 10, 2012
**Urgency:** No
**Hearing Date:** August 6, 2012

**Policy Vote:** Public Safety 5-2
**Mandate:** Yes
**Consultant:** Jolie Onodera

**This bill does not meet the criteria for referral to the Suspense File.**

**Bill Summary:** AB 1527 would make it a misdemeanor, subject to numerous exemptions, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county. This bill creates additional exemptions from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public space, as specified.

**Fiscal Impact:**

- Potential ongoing court costs of $24,000 to $48,000 (General Fund) for 50 to 100 additional misdemeanor filings per year.
- Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.
- While the impact of this bill independently is likely to be minor, the cumulative effect of all new misdemeanors could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources in the context of recently enacted 2011 Public Safety Realignment.

**Background:** Existing law makes it a misdemeanor for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. Openly carrying an unloaded handgun is also prohibited if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm.

**Proposed Law:** This bill would make it a misdemeanor to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county, to be punishable as follows:

- By up to six months in a county jail, or a fine of up to $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county.
- By up to one year in the county jail, or a fine of up to $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

AG0116

AB 1527 (Portantino)
Page 2

This bill provides numerous exemptions to the prohibition on the carrying of an unloaded firearm that is not a handgun outside a vehicle in specified areas, including but not limited to the following:

- By a person when done within a place of business, a place of residence, or on private property, if that person may carry a firearm within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.
- When the firearm is either in a locked container or encased and it is being transported directly between places where a person is not prohibited from possessing that firearm and the course of travel shall include only those deviations between authorized locations as are reasonably necessary under the circumstances.
- If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety. This paragraph may not apply when the circumstances involve a mutual restraining order absent a factual finding of a specific threat to the person's life or safety.
- By a peace officer or an honorably retired peace officer if that officer may carry a concealed firearm or a loaded firearm pursuant to existing law.
- As merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.
- By a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization.
- By a member of a club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a firearm that is not a handgun at that target range.
- By a licensed hunter while engaged in hunting or while transporting that firearm when going to or returning from that hunting expedition.
- Incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law.
- By a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions.
- Within a gun show.
- Within a school zone, as defined, with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority.
- By a person while engaged in the act of making or attempting to make a lawful arrest.

AB 1527 (Portantino)
Page 3

- By a person engaged in firearms-related activities, while on the premises of a fixed place of business that is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.
- By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event.
- At an established public target range while the person is using that firearm upon that target range.

This bill creates the following exemptions from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public space:

- A licensed hunter while engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.
- A person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals.

**Related Legislation:** AB 144 (Portantino) Chapter 725/2011 made it a misdemeanor punishable by up to six months in jail and a $1,000 fine to openly carry an unloaded handgun on one's person, as specified, and established specified exceptions to this prohibition.

**Staff Comments:** The provisions of this bill will result in non-reimbursable local law enforcement costs offset to a degree by fine revenue. The Judicial Council has indicated costs for increased misdemeanor filings could result in increased costs of approximately $24,000 to $48,000 (General Fund) statewide if 50 to 100 new misdemeanors are filed annually.

The creation of new misdemeanors has historically been analyzed by this Committee to result in non-reimbursable state mandated costs for local law enforcement and incarceration. Staff notes, however, that the creation of new misdemeanors taken cumulatively could increase the statewide adult jail population to a degree that could potentially impact the flexibility of counties to manage their jail populations recently increased under the 2011 Public Safety Realignment. While the provisions of this bill are likely to be minor, the cumulative effect of all new misdemeanors could create unknown General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources.

AG0118

**SENATE COMMITTEE ON PUBLIC SAFETY**
Senator Loni Hancock, Chair
2011-2012 Regular Session

A
B

1
5
2
7

AB 1527 (Portantino)
As April 10, 2012
Hearing date: June 26, 2012
Business and Professions Code; Penal Code
SM:dl

## OPENLY CARRYING LONG GUNS

### HISTORY

Source:    California Police Chiefs Association; Peace Officer Research Association of California

Prior Legislation:    AB 144 (Portantino) - Chapter 725, Statutes of 2011
AB 1934 (Saldana) - 2010, died on Assembly Concurrence
AB 98 (Cohn) - 2005, held on Suspense in Assembly Appropriations
AB 2501 (Horton) - 2004, failed passage in Assembly Public Safety
AB 2828 (Cohn) - 2004, failed passage in Assembly Public Safety

Support:    California Chapters of the Brady Campaign Against Gun Violence; California Peace Officers Association; Coalition Against Gun Violence; Los Angeles Sheriff's Department; Women Against Gun Violence; Law Center to Prevent Gun Violence

Opposition:    California Rifle and Pistol Association; National Association for Gun Rights; Save Our State; National Rifle Association of America

Assembly Floor Vote: Ayes  44 - Noes 29

---

### KEY ISSUES

SHOULD IT BE A MISDEMEANOR, PUNISHABLE BY UP TO SIX MONTHS IN A COUNTY JAIL, OR A FINE OF UP TO $1,000, OR BOTH, FOR A PERSON TO CARRY AN UNLOADED FIREARM THAT IS NOT A HANDGUN ON HIS OR HER PERSON OUTSIDE A VEHICLE WHILE IN AN INCORPORATED CITY OR CITY AND COUNTY, EXCEPT AS SPECIFIED?

(CONTINUED)

---

(More)

AB 1527 (Portantino)
Page 2

SHOULD THIS OFFENSE BE PUNISHABLE BY UP TO ONE YEAR IN THE COUNTY JAIL, OR A FINE OF UP TO $1,000, OR BOTH, IF THE FIREARM AND UNEXPENDED AMMUNITION CAPABLE OF BEING FIRED FROM THAT FIREARM ARE IN THE IMMEDIATE POSSESSION OF THAT PERSON AND THE PERSON IS NOT IN LAWFUL POSSESSION OF THAT FIREARM?

## PURPOSE

*The purpose of this bill is to (1) make it a misdemeanor, punishable by up to six months in a county jail, or a fine of up to $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county; (2) make this offense punishable by up to one year in the county jail, or a fine of up to $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm; (3) establish numerous exemptions from this prohibition; (4) create an exemption from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place for a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training; and (5) create an exemption from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place for a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals, as specified.*

Existing law makes it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or both, for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county.  (Penal Code § 26350(a)(1).)

Existing law makes the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm.  (Penal Code § 26350(a)(2).)

Existing law prohibits the carrying of a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory.  This offense is a misdemeanor, punishable by up to one year in the

(More)

AG0120

AB 1527 (Portantino)
Page 3

county jail, a fine of up to $1,000, or both, unless various aggravating circumstances are present, in which case this offense it is punishable as a felony. (Penal Code § 25850.)

Existing law provides that a firearm shall be deemed to be loaded for the purposes of Penal Code Section 12031 when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (Penal Code § 16840(b).)

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code § 2006.)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine. (Id.)

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;
- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen ;
- A felony where the person is an active participant in a criminal street gang;
- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;
- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.
- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the DOJ as the registered owner of the firearm.

(Penal Code § 25858(c).)

This bill makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and

(More)

AG0121

county, and makes this offense punishable by imprisonment in the county jail not exceeding one
year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition
capable of being fired from that firearm are in the immediate possession of that person and the
person is not in lawful possession of that firearm.

This bill states that the sentencing provisions of this prohibition shall not preclude prosecution
under other specified provisions of law with a penalty that is greater.

This bill states that the provisions of this prohibition are cumulative, and shall not be construed
as restricting the application of any other law. However, an act or omission punishable in
different ways by different provisions of law shall not be punished under more than one
provision.

This bill provides that the provisions relating to the carrying of an unloaded firearm that is not a
handgun on his or her person outside a vehicle in specified areas does not apply under any of the
following circumstances:

- By a person when done within a place of business, a place of residence, or on private
  property, or if done with the permission of the owner or lawful possessor of the property.
- When the firearm is either in a locked container or encased and it is being transported
  directly from any place where a person is not prohibited from possessing that firearm and
  the course of travel includes only those deviations that are reasonably necessary under the
  circumstances.
- If the person possessing the firearm reasonably believes that he or she is in grave danger
  because of circumstances forming the basis of a current restraining order issued by a
  court against another person or persons who has or have been found to pose a threat to his
  or her life or safety, as specified.
- By any peace officer or by an honorably retired peace officer if that officer may carry a
  concealed firearm, as specified.
- By any person to the extent that person is authorized to openly carry a loaded firearm as a
  member of the military of the United States.
- As merchandise by a person who is engaged in the business of manufacturing,
  wholesaling, repairing or dealing in firearms and who is licensed to engaged in that
  business or an authorized representative or agent of that business.
- By a duly authorized military or civil organization, or the members thereof, while
  parading or rehearsing or practicing parading, when at the meeting place of the
  organization.
- By a member of any club or organization organized for the purpose of practicing shooting
  at targets upon established target ranges, whether public or private, while the members
  are using handguns upon the target ranges or incident to the use of a handgun at that
  target range.
- Incident to transportation of a handgun by a person operating a licensed common carrier
  or an authorized agent or employee thereof when transported in conformance with
  applicable federal law.

(More)

AG0122

- By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.
- Within a licensed gun show.
- Within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority.
- When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.
- By any person while engaged in the act of making or attempting to make a lawful arrest.
- By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.
- By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event.
- Incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ).
- At any established public target range while the person is using that firearm upon the target range.
- By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer.
- Complying with specified provisions of law relating to the regulation of firearms.
- Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training.
- Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon.
- Incident to and at the request of a sheriff or chief or other head of a municipal police department.
- If all of the following conditions are satisfied:

  o The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;
  o The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and
  o The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

(More)

- By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol.
- By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion.
- By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system.
- On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.
- The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit.
- By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training.
- By a person in compliance with specified provisions related to carrying a firearm in an airport.
- By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

This bill states that, for purposes of the prohibition on openly carrying an unloaded firearm that is not a handgun, the definition of "firearm" does not include any antique firearm.

This bill exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals.

This bill makes conforming technical changes.

(More)

### RECEIVERSHIP/OVERCROWDING CRISIS AGGRAVATION
### ("ROCA")

In response to the unresolved prison capacity crisis, since early 2007 it has been the policy of the chair of the Senate Committee on Public Safety and the Senate President pro Tem to hold legislative proposals which could further aggravate prison overcrowding through new or expanded felony prosecutions. Under the resulting policy known as "ROCA" (which stands for "Receivership/Overcrowding Crisis Aggravation"), the Committee has held measures which create a new felony, expand the scope or penalty of an existing felony, or otherwise increase the application of a felony in a manner which could exacerbate the prison overcrowding crisis by expanding the availability or length of prison terms (such as extending the statute of limitations for felonies or constricting statutory parole standards). In addition, proposed expansions to the classification of felonies enacted last year by AB 109 (the 2011 Public Safety Realignment) which may be punishable in jail and not prison (Penal Code section 1170(h)) would be subject to ROCA because an offender's criminal record could make the offender ineligible for jail and therefore subject to state prison. Under these principles, ROCA has been applied as a content-neutral, provisional measure necessary to ensure that the Legislature does not erode progress towards reducing prison overcrowding by passing legislation which could increase the prison population. ROCA will continue until prison overcrowding is resolved.

For the last several years, severe overcrowding in California's prisons has been the focus of evolving and expensive litigation. On June 30, 2005, in a class action lawsuit filed four years earlier, the United States District Court for the Northern District of California established a Receivership to take control of the delivery of medical services to all California state prisoners confined by the California Department of Corrections and Rehabilitation ("CDCR"). In December of 2006, plaintiffs in two federal lawsuits against CDCR sought a court-ordered limit on the prison population pursuant to the federal Prison Litigation Reform Act. On January 12, 2010, a three-judge federal panel issued an order requiring California to reduce its inmate population to 137.5 percent of design capacity -- a reduction at that time of roughly 40,000 inmates -- within two years. The court stayed implementation of its ruling pending the state's appeal to the U.S. Supreme Court.

On May 23, 2011, the United States Supreme Court upheld the decision of the three-judge panel in its entirety, giving California two years from the date of its ruling to reduce its prison population to 137.5 percent of design capacity, subject to the right of the state to seek modifications in appropriate circumstances. Design capacity is the number of inmates a prison can house based on one inmate per cell, single-level bunks in dormitories, and no beds in places not designed for housing. Current design capacity in CDCR's 33 institutions is 79,650.

On January 6, 2012, CDCR announced that California had cut prison overcrowding by more than 11,000 inmates over the last six months, a reduction largely accomplished by the passage of Assembly Bill 109. Under the prisoner-reduction order, the inmate population in California's 33 prisons must be no more than the following:

(More)

AB 1527 (Portantino)
Page 8

- 167 percent of design capacity by December 27, 2011 (133,016 inmates);
- 155 percent by June 27, 2012;
- 147 percent by December 27, 2012; and
- 137.5 percent by June 27, 2013.

This bill does not aggravate the prison overcrowding crisis described above under ROCA.

## COMMENTS

1. Need for This Bill

According to the author:

AB 1527 makes it a misdemeanor for carrying an unloaded long gun in public, vehicle or street in incorporated communities in California and in unincorporated communities that meet certain criteria. The bill contains specific exemptions for law enforcement personnel as well as licensed hunters. It is a follow-up to AB 144 of last year that banned the open carry of handguns.

Open carry creates a potentially dangerous situation when police officers respond to calls from the public when confronted with someone carrying a rifle or shotgun. It's a bad situation for everyone – the police, the gun owner and innocent bystanders who could be injured by this risky behavior. In addition, it wastes time, money and attention when police have to roll-out and respond to these unnecessary calls.

If AB 1527 becomes law, violations are punishable by six months in county jail and a fine up to $1,000. The measure is backed by the California Brady Campaign Against Gun Violence, PORAC- Peace Officers Research Association of California and the California Police Chiefs Association which refers to AB 1527 as "one of our most important bills in this session".

"This bill just makes sense. Sooner or later, somebody's going to get hurt. If you see somebody walking around a mall or main street with a shotgun, it's pretty intimidating. It's unnecessary and it is just going to lead to trouble. I had hoped that the earlier measure banning open carry of handguns would solve this problem but when long gun advocates attended a police fundraiser it became clear that there was more work to do. When law enforcement asks the legislature for help because of a public safety risk, we should help them.

Open carry advocates are now taking the opportunity to openly carry rifles and shotguns in urban areas of the state. Invariably, these demonstrations result in a call to the police or sheriff's departments to respond. This causes the waste of police time and assets besides causing an unnecessary risk to public safety. Attached are several articles that detail such incidences. In one case open carry advocated carried long guns to a city police department fund raiser.

(More)

AG0126

In a Redondo Beach protest in May, an open carry advocate was reported carrying a 12 gauge shotgun through the Redondo Beach pier and adjoining Veterans Park. In the attached photographs you can clearly see that at least 4, maybe 5 or more Redondo Police officers responded to this open carry. In a time when many city and county police and sheriff departments are facing severe budget cuts, our law enforcement agencies shouldn't be squandering scarce resources following open carry advocates around incorporated areas of the state.

2.  The Open-Carrying of Rifles and Shotguns in Public

In response to the enactment of AB 144 (Portantino) -1 Chapter 725, Statutes of 2011, some gun rights advocates have shifted their focus to openly carrying rifles and shotguns in public places. This bill is intended to outlaw that practice. Last October the San Francisco Chronicle reported:

> SAN LEANDRO -- Now that a new California law banning the open carrying of pistols is loaded for action, the big guns are coming out.
>
> Rifles, that is. And shotguns.
>
> Gun owners who are upset that the anti-carry state law will go into effect Jan. 1 intend to start packing their biggest heat in open as often and as visibly as they can, beginning with a gathering in San Leandro today.
>
> They expect at least 50 gun-toting Second Amendment enthusiasts to show up on Hesperian Boulevard at Bayfair mall from noon to 1 p.m. From target-plinking .22-caliber rifles and .270-caliber deer-hunting weapons to 12-gauge shotguns that can blow a gaping hole in a wall - expect any or all long guns that are legal to own in California, organizers say.
>
> The point is to be provocative enough to spur action by the courts or legislators to repeal the new law and restore the right to pack unloaded pistols in the open.
>
> "People are really upset about this law, and if they won't let us carry handguns, we just have to defend ourselves with the next thing available," said co-organizer Yih Chau Chang of Dublin, who intends to bring his unloaded pump-action shotgun to today's rifle meet-up. "This just shows that here in California, our gun-control laws have gotten out of control."
>
> Gun opponents say this new tactic, which follows last year's open-carry displays of handguns by many of those now promoting rifles, is reprehensible.
>
> There will be change, all right, they say - but not the kind the gun advocates want.
>
> 'Alarms the public'

(More)

AG0127

"Actually, this kind of event is an invitation to ban long rifles in public now," said Juliet Leftwich, legal director of Legal Community Against Violence, a gun-control group founded in San Francisco in response to the 101 California St. massacre of 1993 in which nine people died.

"Open carrying of any guns, pistols or rifles alarms the public and it wastes law enforcement resources while they have to monitor the people carrying them," Leftwich said. "It would be best if it were totally banned."

Motivation for tactic
The law spurring this new tactic is AB144, which Gov. Jerry Brown signed Oct. 10. Introduced in January right after the shooting in Tucson that left six dead and 13 wounded including Rep. Gabrielle Giffords, D-Ariz., the law forbids anyone from openly carrying handguns in public.

Previously, Californians could tote handguns any way they wished, in holsters or in their hands, as long as they were unloaded. Violation of the new law is a misdemeanor punishable by up to a year in prison.

California is the fifth state, including Florida and Texas, to outlaw openly carrying pistols. The District of Columbia also forbids it. Thirty-three states allow unrestricted open carry, and 12 require permits.

Gun advocates say the California law is doomed whenever a lawsuit gets filed - and they say one will be - because two federal court rulings in the past year asserted the legality of open-carry rights. The rulings upheld rejections of several individual concealed-weapons-permit applications in San Diego and Yolo counties, saying the old open-carry law negated the need to pack a hidden gun.

Gun-control advocates say the gun-rights crowd shouldn't pin any hopes on those rulings.

They say the danger is too acute to play politics with, citing figures from the Brady Center to Prevent Gun Violence showing that America's annual toll of 30,000 gun-related deaths far outstrips those of any other Western country. Britain, for example, experiences about 50 gun-related deaths a year.

Seal Beach rampage cited
Gun advocates say those same statistics just prove their point.

"What you will see if you restrict people's gun rights is more of what happened in Seal Beach last week, where people don't have the right to defend themselves," said Jeff Dunhill, an open-carry organizer who spent this week hunting elk in Colorado. He was referring to a rampage in which eight people were shot to death

(More)

at an Orange County beauty salon, allegedly by a man involved in a child-custody
battle with one of the victims.

"They are arguing that patrons at the nail salon in Seal Beach should have had
firearms with them?" said Leftwich. "That's crazy."

(*Handgun Law Riles Activists - They'll Carry Rifles*, San Francisco Chronicle, Saturday, October
22, 2011, http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2011/10/21/BAVU1LKGRM.DTL)

3.    Is Banning Open Carrying of Rifles and Shotguns Unconstitutional?

The Second Amendment to the United States Constitution states, "A well-regulated militia, being
necessary to the security of a free state, the right of the people to keep and bear arms, shall not be
infringed". (U.S. Const., Second Amend.) For many years, courts have wrestled with the
question of whether the Second Amendment protects the individual's right to own a weapon. In
*United States vs. Cruikshank* (1875) 92 U.S. 542, the Supreme Court held that the Second
Amendment guaranteed states the right to maintain militias but did not guarantee to individuals
the right to possess guns. Subsequently, in *United States vs. Miller* (1939), the Court upheld a
federal law banning the interstate transportation of certain firearms. Miller, who had been
arrested for transporting a double-barreled sawed-off shotgun from Oklahoma to Arkansas,
claimed the law was a violation of the Second Amendment.

The Court rejected Miller's argument, stating:

> In the absence of any evidence tending to show that possession or use of a
> "shotgun having a barrel of less than eighteen inches in length" at this time has
> some reasonable relationship to the preservation or efficiency of a well regulated
> militia, we cannot say that the Second Amendment guarantees the right to keep
> and bear such an instrument. Certainly it is not within judicial notice that this
> weapon is any part of the ordinary military equipment or that its use could
> contribute to the common defense. (*United States* v. *Miller*, 307 U.S. 174, 178
> (1939).)

> For many years following the Supreme Court's decision in *United States vs.
> Miller*, the orthodox opinion among academics and federal appeals courts alike
> was that the Second Amendment to the United States Constitution did not protect
> possession of firearms unrelated to service in the lawfully established militia.
> (Merkel, *Parker v. District of Columbia and the Hollowness of the Originalist
> Claims to Principled Neutrality*, 18 Geo. Mason U. Civil Right L. Journal, 251,
> 251.)

That changed in June 2008, when the United States Supreme Court ruled in *District of Columbia
vs. Heller* that a District of Columbia complete ban on possession of a handgun in the home was
an unconstitutional violation of the Second Amendment. (*District of Columbia v. Heller* (2008)
128 S. Ct. 2783, 2797.) After a lengthy discussion of the historical context and meaning of the
Second Amendment, the Court stated:

(More)

Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank* [citation omitted] '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The Second Amendment declares that it shall not be infringed ...' " (*Heller* at 2797.)

However, in the *Heller* decision, the Supreme Court also stated:

Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. n26

FOOTNOTES
n26 We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive. (*District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2816-2817 (2008), citations omitted.)

Therefore, while the *Heller* decision established that the right to own a firearm is a personal right, not one limited to ownership while serving in a "well-regulated militia," it also held that the government may place reasonable restrictions on that right such as restricting "carrying firearms in sensitive places." It is not clear whether the Supreme Court would include in its list of lawful regulatory measures prohibiting the open carrying of unloaded rifles and shotguns in public.

IS A BAN ON OPEN CARRYING OF RIFLES AND SHOTGUNS IN PUBLIC CONSTITUTIONAL?

(More)

4. Argument in Support

The Peace Officer Research Association states:

> The practice by individuals and organizations to "openly carry" firearms in public places in order to challenge law enforcement and firearms statutes in California is increasing in frequency. While PORAC understands that most of these open carry demonstrations are being done by law abiding citizens, it places law enforcement and the public in a precarious and possible dangerous situation. Most often, law enforcement is called to the scene based on a citizen or merchant complaint. When the officer arrives at the scene, it is their obligation to question those persons carrying the firearms and to inquire as to whether the firearm is loaded. Until that officer has physically seen if the firearm is loaded, that officer must assume that their lives and the lives of those around them may be in danger.

> Again, these situations are potentially dangerous and should not occur in a public place wherein any number of things could go wrong. We believe this bill will be very helpful in preventing these potentially unsafe incidents from happening.

5. Argument in Opposition

The National Association for Gun Rights states:

> Rifles and shotguns are hardly the weapons of choice for the common criminal. This is yet another attempt to prohibit something because it "looks scary."

> In a recent press release, Assemblyman Anthony Portantino admitted this bill is merely retaliation against law-abiding citizens who chose to peacefully exercise their First Amendment right of free speech in support of their Second Amendment rights after passage of last year's Open Carry Ban.

> Punishing citizens for engaging in lawful public demonstration is an outrageous abuse of power, further infringing on their constitutionally protected rights.

> Currently twenty-eight states allow for the Open Carry of firearms in some form without a permit, and an additional thirteen allow Open Carry with a permit. Eight states and the District of Colombia ban open carry; half of which are remnants of the "Jim Crow" era where the intent was to prevent African-Americans from possessing firearms.

> Open Carry should be viewed in the same light as [ ] concealed carry: if a person is legally able to purchase a firearm, it is not the place of the state to deny their right to carry it.

***************

ASSEMBLY THIRD READING
AB 1527 (Portantino and Ammiano)
As Amended April 10, 2012
Majority vote

| PUBLIC SAFETY | 4-2 | APPROPRIATIONS | 12-5 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Ayes: | Ammiano, Cedillo, Mitchell, Skinner | Ayes: | Fuentes, Blumenfield, Bradford, Charles Calderon, Campos, Davis, Gatto, Hall, Hill, Lara, Mitchell, Solorio |
| Nays: | Knight, Hagman | Nays: | Harkey, Donnelly, Nielsen, Norby, Wagner |

SUMMARY: Makes it a misdemeanor, with certain exceptions, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an incorporated city or city and county. Specifically, this bill:

1) Makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

2) States that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

3) Provides that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

4) Provides that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his or her person outside a vehicle in specified areas does not apply under any of the following circumstances:

   a) By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property;

   b) When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances;

   c) If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a

AG0132

court against another person or persons who has or have been found to pose a threat to his or her life or safety, as specified;

d) By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified;

e) By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States;

f) As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business;

g) By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization;

h) By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;

i) By a licensed hunter while engaged in lawful hunting or while transporting that firearm while going to or returning from that hunting expedition;

j) Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;

k) By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;

l) Within a licensed gun show;

m) Within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

n) When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;

o) By any person while engaged in the act of making or attempting to make a lawful arrest;

p) By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training;

AB 1527
Page 3

q) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event;

r) Incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

s) At any established public target range while the person is using that firearm upon the target range;

t) By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;

u) Complying with specified provisions of law relating to the regulation of firearms;

v) Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training;

w) Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon;

x) Incident to and at the request of a sheriff or chief or other head of a municipal police department;

y) If all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii) The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and,

   iii) The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

z) By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol;

aa) By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion;

bb) By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system;

AG0134

cc) On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun;

dd) The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit;

ee) By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training;

ff) By a person in compliance with specified provisions related to carrying a firearm in an airport; or,

gg) By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

5) Exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

6) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

7) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in an airport.

8) Makes conforming technical changes.

FISCAL EFFECT: According to the Assembly Appropriations Committee, unknown, likely minor, non-state-reimbursable local law enforcement and incarceration costs, offset to a degree by increased fine revenue.

COMMENTS: According to the author, "AB 1527 is a modified version of AB 144 from last session. AB 1527 bans the open carrying of an unloaded firearm that is not a handgun in an incorporated city or city and county, with specific exceptions." The absence of a prohibition on 'open carry' of long guns has created an increase in problematic instances of these guns carried in public, alarming unsuspecting individuals causing issues for law enforcement. Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could

AG0135

be lethal.  In this situation the practice of 'open carry' creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in 'open carry' calls has placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

Please see the policy committee for a full discussion of this bill.

<u>Analysis Prepared by</u>:    Gregory Pagan / PUB. S. / (916) 319-3744

FN: 0003321

AG0136

Date of Hearing:   April 18, 2012

ASSEMBLY COMMITTEE ON APPROPRIATIONS
Felipe Fuentes, Chair

AB 1527 (Portantino) – As Amended:  April 10, 2012

Policy Committee:  Public Safety                           Vote:     4-2

Urgency:  No     State Mandated Local Program: Yes          Reimbursable:     No

SUMMARY

This bill makes it a misdemeanor, with a long list of exceptions, for a person to carry an unloaded gun that is not a handgun on his or her person (long-gun open-carry) outside a motor vehicle in an incorporated city or city and county.  Specifically, this bill:

1) Makes the misdemeanor punishable by up to six months and/or a fine of up to $1,000, or by up to one year in county jail and/or a fine up to $1,000 if the gun and unexpended ammunition capable of being fired from that gun are in the immediate possession of that person and the person is not in lawful possession of that gun.

2) Creates a lengthy series of exceptions to the long-gun open carry prohibition.

3) Makes a series of conforming changes.

FISCAL EFFECT

Unknown, likely minor, non-state-reimbursable local law enforcement and incarceration costs, offset to a degree by increased fine revenue.

COMMENTS

1) Rationale.  The principle purpose of the bill is to follow up on the author's AB 144 (Statutes of 2011), which made public open-carry of handguns a misdemeanor, as specified, by expanding the prohibition to long-guns in incorporated cities.

   According to the author, "The absence of a prohibition on 'open carry' of long guns has created an increase in problematic instances of these guns carried in public, alarming unsuspecting individuals causing issues for law enforcement.  Open carry creates a potentially dangerous situation.  In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

   "In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal.  In this situation the practice of 'open carry' creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as well.

AG0137

AB 1527
Page 2

"Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

2) Current law.

a) Makes it a misdemeanor punishable by up to six months in county jail and/or a fine of up to $1,000 to carry an exposed and unloaded handgun upon his or her person, or inside a vehicle, while in any public place or on any public street in an incorporated city, on any public street in a prohibited area of an unincorporated county, in any public place in a prohibited area of a city or county. The penalty is up to one year in county jail and/or a fine of up to $1,000 if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the gun.

b) Makes it a felony or a misdemeanor, depending on the circumstances, to carry a loaded gun upon the person or in a vehicle while at any public or on any public street in an incorporated city or in any public place or in a prohibited area of an unincorporated territory.

3) Support. According to the Peace Officers Research Association of California (PORAC), "The practice by individuals and organizations to "openly carry" firearms in public places in order to challenge law enforcement and firearm statutes in California is increasing in frequency. While PORAC understands that most of these open carry demonstrations are being done by law abiding citizens, it places law enforcement and the public in a precarious and possibly dangerous situation."

According to the California Chapter of the Brady Campaign to Prevent Gun Violence, "The California Brady Campaign Chapters oppose the open carry of long guns for the same reasons that we opposed the open carrying of handguns. We continue to believe that carrying exposed firearms in crowded public places with ammunition readily available is inappropriate and risky behavior that threatens public safety and strains law enforcement resources. The carrying of exposed rifles and shotguns in urban settings, such as shopping malls and restaurants, is particularly inappropriate and threatening."

4) Opposition. According to the National Rifle Association of America, "The defensive carrying of firearms in public is protected by the Second Amendment of the United States Constitution, which the U.S. Supreme Court has already stated protects the individual right to possess and carry weapons in case of confrontation.

"The extreme nature of this prohibition is illustrated in the bill itself, which follows the prohibition with dozens of exceptions, all of which merely reflect the fact that firearms are a normal and integral part of American culture and are handled or carried in a variety of perfectly innocent and legitimate context."

Analysis Prepared by:    Geoff Long/ APPR. / (916) 319-2081

AG0138

Date of Hearing:    March 27, 2011
Chief Counsel:      Gregory Pagan

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Tom Ammiano, Chair

AB 1527 (Portantino) – As Amended:  March 7, 2012

SUMMARY:  Makes it a misdemeanor, with certain exceptions, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an incorporated city or city and county.  Specifically, this bill:

1)  Makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

2)  States that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

3)  Provides that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law.  However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

4)  Provides that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his or her person outside a vehicle in specified areas does not apply under any of the following circumstances:

    a)  By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property.

    b)  When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances.

    c)  If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety, as specified.

AG0139

d) By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified.

e) By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States.

f) As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business.

g) By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization.

h) By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

i) By a licensed hunter while engaged in lawful hunting or while transporting that firearm while going to or returning from that hunting expedition.

j) Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law.

k) By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.

l) Within a licensed gun show.

m) Within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority.

n) When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.

o) By any person while engaged in the act of making or attempting to make a lawful arrest.

p) By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

q) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or

while the participant or authorized employee or agent is at that production event.

r) Incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ).

s) At any established public target range while the person is using that firearm upon the target range.

t) By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer.

u) Complying with specified provisions of law relating to the regulation of firearms.

v) Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training.

w) Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon.

x) Incident to and at the request of a sheriff or chief or other head of a municipal police department.

y) If all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii) The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and

   iii) The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

z) By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol.

aa) By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion.

bb) By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system.

cc) On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

AG0141

dd) The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit.

ee) By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training.

ff) By a person in compliance with specified provisions related to carrying a firearm in an airport.

gg) By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

5) Exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

6) Recasts existing provisions of law that make it an offense for a person to carry a loaded firearm on his or her person or in a vehicle in a public place or a public street, public road, or public highway in an incorporated city, or on his or her person in a public place or on a public street in a prohibited area of an unincorporated territory, or in a vehicle while in a public place or on a public street, public road, or public highway in any part of an unincorporated area.

7) Expands the prohibition against carrying an exposed an unloaded handgun on his or her person outside a motor vehicle in public areas and public streets to include public roads and public highways in the areas a person is prohibited from carrying an exposed and unloaded handgun, as specified.

8) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

9) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in an airport.

10) Authorizes a county board of supervisors to enact an ordinance that regulates the carrying of unloaded firearms that are not handguns outside of a vehicle in the unincorporated area of a county where the county has prohibited the discharge of firearms if the ordinance contains specified exemptions.

11) Makes conforming technical changes.

EXISTING LAW:

1) Makes it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or by both a fine and imprisonment for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. [Penal Code Section 26350(a)(1).]

2) Makes the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm. [Penal Code Section 26350(a)(2).]

3) Provides that a person is guilty of carrying a loaded firearm when the person carries a loaded firearm upon the person or in a vehicle while at any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of an unincorporated territory. [Penal Code Section 25850(a).]

FISCAL EFFECT:  Unknown

COMMENTS:

1) Author's Statement:  According to the author, "AB 1577 is a modified version of AB 144 from last session. AB 1577 bans the open carrying of an unloaded firearm that is not a handgun in an incorporated city or city and county, with specific exceptions The absence of a prohibition on 'open carry 'of long guns has created an increase in problematic instances of these guns carried in public, alarming unsuspecting individuals causing issues for law enforcement. Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation the practice of 'open carry' creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in "open carry" calls has placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

2) Comments:  This bill makes it a misdemeanor punishable by up to six months in the county jail to carry an unloaded rifle or shotgun in an incorporated city or city and county. Additionally, this bill contains 33 exemptions or exceptions that acknowledge the need to openly carry an unloaded rifle or shotgun in order to engage in otherwise legal activity, such as hunting and target shooting. What is the point of a prohibition that requires 33 exceptions?

3) Argument in Support:  According to the California Chapter of the Brady Campaign to Prevent Gun Violence, "Last year, AB 144, which prohibits the open carry of unloaded

AG0143

AB 1527
Page 6

handguns was enacted and became operative on January 1, 2012. In response to this new law, the open carry proponents announced that they would openly carry long guns, which is still permitted under existing state law. The original open carry problem has now been escalated with the carrying of exposed long guns in crowded public places and in response, AB 1527 was introduced.

"The California Brady Campaign Chapters oppose the open carry of long guns for the same reasons that we opposed the open carrying of handguns. We continue to believe that carrying exposed firearms in crowded public places with ammunition readily available is inappropriate and risky behavior that threatens public safety and strains law enforcement resources. The carrying of exposed rifles and shotguns in urban settings, such as shopping malls and restaurants, is particularly inappropriate and threatening.

"Those who carry exposed long guns in public are not required to undergo any special screening or clearance. In fact, there is no verification process to ensure that the person is not prohibited from possessing firearms. People who carry long guns in crowded public places may lack the skill, experience, judgment or moral character for safely carrying an exposed weapon, particularly when faced with a confrontational situation.

"The public display and flaunting of long guns in shopping malls and restaurants puts employees and customers at risk of an accidental or vigilante-type incident where innocent bystanders could get shot. A member of the public, when confronted by a person openly carrying a long gun, has no way of knowing the intentions of that person. Caution would dictate that the incident be reported to police. Police, in turn, must respond and assume that the firearm is loaded until determined otherwise. In this potentially life threatening situation, law enforcement may understandably take lethal action to protect the public and themselves from a perceived armed threat."

4) <u>Argument in Opposition</u>: According to the <u>National Rifle Association of America</u>, "In AB 1527, the proponents seek to ban the open carry of unloaded guns. The provisions are written without the basic comprehension of what an integral part of the open carrying and possession of long guns are in the numerous outdoor activities Californians enjoy.

"The defensive carrying of firearms in public is protected by the Second Amendment of the United States Constitution, which the U.S. Supreme Court has already stated protects 'the individual right to possess and carry weapons in case of confrontation'.

"The extreme nature of this prohibition is illustrated in the bill itself, which follows the prohibition with dozens of exceptions, all of which merely reflect the fact that firearms are a normal and integral part of American culture and are handled or carried in a variety of perfectly innocent and legitimate context."

<u>REGISTERED SUPPORT / OPPOSITION</u>:

Support

Peace Officers Research Association of California
California Chapter of the Brady Campaign to Prevent Gun Violence

<u>AB 1527</u>
Page 7

<u>Opposition</u>

California Rifle and Pistol Association
National Rifle Association of America
National Association for Gun Rights
California Right to Carry

<u>Analysis Prepared by:</u>    Gregory Pagan / PUB. S. / (916) 319-3744

AG0145



*California*
LEGISLATIVE INFORMATION

AB-1527 Firearms. (2011-2012)

**SECTION 1.** Section 7574.14 of the Business and Professions Code is amended to read:

7574.14. This chapter shall not apply to the following:

(a) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in a calendar month.

(b) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(c) A charitable philanthropic society or association incorporated under the laws of this state that is organized and duly maintained for the public good and not for private profit.

(d) Patrol special police officers appointed by the police commission of a city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(e) An attorney at law in performing his or her duties as an attorney at law.

(f) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(g) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(h) A bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of Currency of the United States..

(i) A person engaged solely in the business of securing information about persons or property from public records.

(j) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt such a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(k) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may

AG0147

not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, may not carry an unloaded firearm that is not a handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26405) of Chapter 7 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Sections 25450 to 25475, inclusive, of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(l) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(m) A savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(n) A secured creditor engaged in the repossession of the creditor's collateral and a lessor engaged in the repossession of leased property in which it claims an interest.

(o) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(p) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses a deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(q) An armored contract carrier operating armored vehicles pursuant to the authority of the Department of the California Highway Patrol or the Public Utilities Commission, or an armored vehicle guard employed by an armored contract carrier.

SEC. 2. Section 7582.2 of the Business and Professions Code is amended to read:

7582.2. This chapter does not apply to the following:

(a) A person who does not meet the requirements to be a proprietary private security officer, as defined in Section 7574.01, and is employed exclusively and regularly by an employer who does not provide contract security services for other entities or persons, in connection with the affairs of the employer only and where there exists an employer-employee relationship if that person at no time carries or uses a deadly weapon in the performance of his or her duties. For purposes of this subdivision, "deadly weapon" is defined to include an instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, a dirk, dagger, pistol, revolver, or any other firearm, a knife having a blade longer than five inches, a razor with an unguarded blade, and a metal pipe or bar used or intended to be used as a club.

(b) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in any calendar month.

(c) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(d) A charitable philanthropic society or association duly incorporated under the laws of this state that is organized and maintained for the public good and not for private profit.

(e) Patrol special police officers appointed by the police commission of a city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(f) An attorney at law in performing his or her duties as an attorney at law.

(g) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(h) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(i) A bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of the Currency of the United States.

(j) A person engaged solely in the business of securing information about persons or property from public records.

(k) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(l) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, may not carry an unloaded firearm that is not a handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26405) of Chapter 7 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4 of Part 6 of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(m) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(n) A savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(o) A secured creditor engaged in the repossession of the creditor's collateral and a lessor engaged in the repossession of leased property in which it claims an interest.

(p) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

AG0149

(q) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses a deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(r) The changes made to this section by the act adding this subdivision during the 2005–06 Regular Session of the Legislature shall apply as follows:

(1) On and after July 1, 2006, to a person hired as a security officer on and after January 1, 2006.

(2) On and after January 1, 2007, to a person hired as a security officer before January 1, 2006.

SEC. 3. Section 626.92 of the Penal Code is amended to read:

626.92. Section 626.9 does not apply to or affect any of the following:

(a) A security guard authorized to openly carry an unloaded handgun pursuant to Chapter 6 (commencing with Section 26350) of Division 5 of Title 4 of Part 6.

(b) An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to Section 26361.

(c) A security guard authorized to openly carry an unloaded firearm that is not a handgun pursuant to Chapter 7 (commencing with Section 26400) of Division 5 of Title 4 of Part 6.

(d) An honorably retired peace officer authorized to openly carry an unloaded firearm that is not a handgun pursuant to Section 26405.

SEC. 4. Section 16505 is added to the Penal Code, to read:

16505. For purposes of Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, a firearm is "encased" when that firearm is enclosed in a case that is expressly made for the purpose of containing a firearm and that is completely zipped, snapped, buckled, tied, or otherwise fastened with no part of that firearm exposed.

SEC. 5. Section 16520 of the Penal Code is amended to read:

16520. (a) As used in this part, "firearm" means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

(7) Sections 26500 to 26588, inclusive.

AG0150

(8) Sections 26600 to 27140, inclusive.

(9) Sections 27400 to 28000, inclusive.

(10) Section 28100.

(11) Sections 28400 to 28415, inclusive.

(12) Sections 29010 to 29150, inclusive.

(13) Sections 29610 to 29750, inclusive.

(14) Sections 29800 to 29905, inclusive.

(15) Sections 30150 to 30165, inclusive.

(16) Section 31615.

(17) Sections 31705 to 31830, inclusive.

(18) Sections 34355 to 34370, inclusive.

(19) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes a rocket, rocket propelled projectile launcher, or similar device containing an explosive or incendiary material, whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(6) Chapter 7 (commencing with Section 26400) of Division 5 of Title 4.

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26700 to 26915, inclusive.

(9) Section 27510.

(10) Section 27530.

(11) Section 27540.

(12) Section 27545.

(13) Sections 27555 to 27570, inclusive.

(14) Sections 29010 to 29150, inclusive.

AG0151

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

**SEC. 5.5.** Section 16520 of the Penal Code is amended to read:

**16520.** (a) As used in this part, "firearm" means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

*(7) Sections 25250 to 25256, inclusive.*

~~(7)~~ *(8)* Sections 26500 to 26588, inclusive.

~~(8)~~ *(9)* Sections 26600 to 27140, inclusive.

~~(9)~~ *(10)* Sections 27400 to 28000, inclusive.

~~(10)~~ *(11)* Section 28100.

~~(11)~~ *(12)* Sections 28400 to 28415, inclusive.

~~(12)~~ *(13)* Sections 29010 to 29150, inclusive.

~~(13)~~ *(14)* Sections 29610 to 29750, inclusive.

~~(14)~~ *(15)* Sections 29800 to 29905, inclusive.

~~(15)~~ *(16)* Sections 30150 to 30165, inclusive.

~~(16)~~ *(17)* Section 31615.

~~(17)~~ *(18)* Sections 31705 to 31830, inclusive.

~~(18)~~ *(19)* Sections 34355 to 34370, inclusive.

~~(19)~~ *(20)* Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes a rocket, rocket propelled projectile launcher, or similar device containing an explosive or incendiary material, whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

AG0152

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Sections 25250 to 25256, inclusive.

(5) (6) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(6) (7) Chapter 7 (commencing with Section 26400) of Division 5 of Title 4.

(7) (8) Sections 26500 to 26588, inclusive.

(8) (9) Sections 26700 to 26915, inclusive.

(9) (10) Section 27510.

(10) (11) Section 27530.

(11) (12) Section 27540.

(12) (13) Section 27545.

(13) (14) Sections 27555 to 27570, inclusive.

(14) (15) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

SEC. 6. Section 16750 of the Penal Code is amended to read:

16750. (a) As used in Section 25400, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(b) As used in Article 2 (commencing with Section 25850), Article 3 (commencing with Section 25900), and Article 4 (commencing with Section 26000) of Chapter 3 of Division 5 of Title 4, Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, and Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

SEC. 7. Section 16850 of the Penal Code is amended to read:

16850. As used in Sections 17740, 23925, 25105, 25205, and 25610, in Article 3 (commencing with Section 25505) of Chapter 2 of Division 5 of Title 4, in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, and in Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, "locked container" means a

secure container that is fully enclosed and locked by a padlock, keylock, combination lock, or similar locking device. The term "locked container" does not include the utility or glove compartment of a motor vehicle.

**SEC. 8.** Section 17295 of the Penal Code is amended to read:

**17295.** (a) For purposes of Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

(b) For purposes of Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, a firearm that is not a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

**SEC. 9.** Section 26366.5 is added to the Penal Code, to read:

**26366.5.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

**SEC. 10.** Section 26390 is added to the Penal Code, to read:

**26390.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun in any of the following circumstances:

(a) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 1 (commencing with Section 18710) of Division 5 of Title 2 by a person who holds a permit issued pursuant to Article 3 (commencing with Section 18900) of that chapter, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit.

(b) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 2 (commencing with Section 30500) of Division 10 by a person who holds a permit issued pursuant to Section 31005, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit.

(c) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 6 (commencing with Section 32610) of Division 10 by a person who holds a permit issued pursuant to Section 32650, if the carrying is conducted in accordance with the terms and conditions of the permit.

(d) The open carrying of an unloaded handgun that is regulated pursuant to Article 2 (commencing with Section 33300) of Chapter 8 of Division 10 by a person who holds a permit issued pursuant to Section 33300, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit.

**SEC. 11.** Section 26391 is added to the Penal Code, to read:

**26391.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun when done in accordance with the provisions of subdivision (d) of Section 171.5.

**SEC. 12.** Chapter 7 (commencing with Section 26400) is added to Division 5 of Title 4 of Part 6 of the Penal Code, to read:

**CHAPTER 7. Carrying an Unloaded Firearm That is not a Handgun in an Incorporated City or City and County**
**Article 1. Crime of Carrying an Unloaded Firearm that is not a Handgun in an Incorporated City or City and County**
**26400.** (a) A person is guilty of carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county.

(b) (1) Except as specified in paragraph (2), a violation of this section is a misdemeanor.

(2) A violation of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if the firearm and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not in lawful possession of that firearm.

AG0154

(c) (1) Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d) Notwithstanding the fact that the term "an unloaded firearm that is not a handgun" is used in this section, each individual firearm shall constitute a distinct and separate offense under this section.

## Article 2. Exemptions

26405. Section 26400 does not apply to, or affect, the carrying of an unloaded firearm that is not a handgun in any of the following circumstances:

(a) By a person when done within a place of business, a place of residence, or on private property, if that person, by virtue of subdivision (a) of Section 25605, may carry a firearm within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

(b) By a person when done within a place of business, a place of residence, or on private property, if done with the permission of a person who, by virtue of subdivision (a) of Section 25605, may carry a firearm within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

(c) When the firearm is either in a locked container or encased and it is being transported directly between places where a person is not prohibited from possessing that firearm and the course of travel shall include only those deviations between authorized locations as are reasonably necessary under the circumstances.

(d) If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety. This paragraph may not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with Section 6200) of the Family Code absent a factual finding of a specific threat to the person's life or safety. Upon a trial for violating subdivision (a), the trier of fact shall determine whether the defendant was acting out of a reasonable belief that he or she was in grave danger.

(e) By a peace officer or an honorably retired peace officer. If that officer may carry a concealed firearm pursuant to Article 2 (commencing with Section 25450) of Chapter 2, or a loaded firearm pursuant to Article 3 (commencing with Section 25900) of Chapter 3.

(f) By a person to the extent that person may openly carry a loaded firearm that is not a handgun pursuant to Article 4 (commencing with Section 26000) of Chapter 3.

(g) As merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.

(h) By a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization.

(i) By a member of a club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a firearm that is not a handgun at that target range.

(j) By a licensed hunter while engaged in hunting or while transporting that firearm when going to or returning from that hunting expedition.

(k) Incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law.

(l) By a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions.

(m) Within a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6.

(n) Within a school zone, as defined in Section 626.9, with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority.

(o) When in accordance with the provisions of Section 171b.

(p) By a person while engaged in the act of making or attempting to make a lawful arrest.

(q) By a person engaged in firearms-related activities, while on the premises of a fixed place of business that is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

(r) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event.

(s) Incident to obtaining an identification number or mark assigned for that firearm from the Department of Justice pursuant to Section 23910.

(t) At an established public target range while the person is using that firearm upon that target range.

(u) By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace, while the person is actually engaged in assisting that officer.

(v) Incident to any of the following:

(1) Complying with Section 27560 or 27565, as it pertains to that firearm.

(2) Section 28000, as it pertains to that firearm.

(3) Section 27850 or 31725, as it pertains to that firearm.

(4) Complying with Section 27870 or 27875, as it pertains to that firearm.

(5) Complying with Section 27915, 27920, or 27925, as it pertains to that firearm.

(w) Incident to, and in the course and scope of, training of, or by an individual to become a sworn peace officer as part of a course of study approved by the Commission on Peace Officer Standards and Training.

(x) Incident to, and in the course and scope of, training of, or by an individual to become licensed pursuant to Chapter 4 (commencing with Section 26150) as part of a course of study necessary or authorized by the person authorized to issue the license pursuant to that chapter.

(y) Incident to and at the request of a sheriff, chief, or other head of a municipal police department.

(z) If all of the following conditions are satisfied:

(1) The open carrying occurs at an auction or similar event of a nonprofit public benefit or mutual benefit corporation at which firearms are auctioned or otherwise sold to fund the activities of that corporation or the local chapters of that corporation.

(2) The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for that nonprofit public benefit or mutual benefit corporation.

(3) The unloaded firearm that is not a handgun is to be delivered by a person licensed pursuant to, and operating in accordance with, Sections 26700 to 26925, inclusive.

(aa) Pursuant to paragraph (3) of subdivision (b) of Section 171c.

(ab) Pursuant to Section 171d.

(ac) Pursuant to subparagraph (F) of paragraph (1) of subdivision (c) of Section 171.7.

AG0156

(ad) On publicly owned land, if the possession and use of unloaded firearm that is not a handgun is specifically permitted by the managing agency of the land and the person carrying that firearm is in lawful possession of that firearm.

(ae) By any of the following:

(1) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Chapter 1 (commencing with Section 18710) of Division 5 of Title 2 by a person who holds a permit issued pursuant to Article 3 (commencing with Section 18900) of that chapter, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(2) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Chapter 2 (commencing with Section 30500) of Division 10 by a person who holds a permit issued pursuant to Section 31005, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(3) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Chapter 6 (commencing with Section 32610) of Division 10 by a person who holds a permit issued pursuant to Section 32650, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(4) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Article 2 (commencing with Section 33300) of Chapter 8 of Division 10 by a person who holds a permit issued pursuant to Section 33300, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(af) By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

(ag) Pursuant to the provisions of subdivision (d) of Section 171.5.

(ah) By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while the firearm is being used in the lawful course and scope of the licensee's activities as a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and regulations issued pursuant thereto.

(ai) On the navigable waters of this state that are held in public trust, if the possession and use of an unloaded firearm that is not a handgun is not prohibited by the managing agency thereof and the person carrying the firearm is in lawful possession of the firearm.

SEC. 13. Section 5.5 of this bill incorporates amendments to Section 16520 of the Penal Code proposed by both this bill and Senate Bill 1366. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2013, (2) each bill amends Section 16520 of the Penal Code, and (3) this bill is enacted after Senate Bill 1366, in which case Section 5 of this bill shall not become operative.

SEC. 14. No reimbursement is required by this act pursuant to Section 6 of Article XIIIB of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIIIB of the California Constitution.



# California
## LEGISLATIVE INFORMATION

### AB-1527 Firearms. (2011-2012)

| | | 1st | Cmt | 2nd | 3rd | 2nd | 3rd | Pass | Chp |
|---|---|---|---|---|---|---|---|---|---|
| Senate: | | | | | | | | | |
| Assembly: 1st | Cmt | 2nd | Cmt | 2nd | 3rd | Pass | | Pass | |

| Bill Status | |
|---|---|
| Measure: | AB-1527 |
| Lead Authors: | Portantino (A) , Ammiano (A) |
| Principal Coauthors: | |
| Coauthors: | |
| Topic: | Firearms. |
| 31st Day in Print: | 02/23/12 |
| Title: | An act to amend Sections 7574.14 and 7582.2 of the Business and Professions Code, and to amend Sections 626.92, 16520, 16750, 16850, and 17295 of, to add Sections 16505, 26366.5, 26390, and 26391 to, and to add Chapter 7 (commencing with Section 26400) to Division 5 of Title 4 of Part 6 of, the Penal Code, relating to firearms. |
| House Location: | Secretary of State |
| Chaptered Date: | 09/28/12 |
| Last Amended Date: | 08/22/12 |

| Type of Measure | |
|---|---|
| Inactive Bill - Chaptered | |
| Majority Vote Required | |
| Non-Appropriation | |
| Fiscal Committee | |
| State-Mandated Local Program | |
| Non-Urgency | |
| Non-Tax levy | |

| Last 5 History Actions | |
|---|---|
| Date | Action |
| 09/28/12 | Chaptered by Secretary of State - Chapter 700, Statutes of 2012. |
| 09/28/12 | Approved by the Governor. |
| 09/13/12 | Enrolled and presented to the Governor at 12:15 p.m. |
| 08/29/12 | Senate amendments concurred in. To Engrossing and Enrolling. (Ayes 47. Noes 31. Page 6503.). |
| 08/29/12 | Assembly Rule 77 suspended. (Page 6488.) |

AG0158