T. PETER PIERCE (Bar No. 160408)
ppierce@rwglaw.com
LISA BOND (Bar No. 172342)
lbond@rwglaw.com
RICHARDS, WATSON & GERSHON
 A Professional Corporation
355 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3101
Telephone: 213.626.8484
Facsimile: 213.626.0078

Attorneys for Defendant
CITY OF REDONDO BEACH

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES NICHOLS,<br><br>    Plaintiff,<br>vs.<br><br>KAMALA D. HARRIS, Attorney General, in her capacity as Attorney General of California, CITY OF REDONDO BEACH and DOES 1 to 10,<br><br>    Defendants. | Case No. CV-11-9916 SJO (SS)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AND THIRD CLAIMS IN THE SECOND AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, IN SUPPORT OF MOTION FOR MORE DEFINITE STATEMENT**<br><br>Magistrate Judge: Hon. Suzanne H. Segal<br><br>Date:  May 21, 2013<br>Time:  10:00 a.m.<br>Ctrm:  23<br><br>Action Filed: November 30, 2011 |

# TABLE OF CONTENTS

**Page**

I. PLAINTIFF DOES NOT CONTEST THAT HE LACKS STANDING ............................................................................................. 1

II. BASED ON THE ALLEGATIONS IN THE SECOND AMENDED COMPLAINT, THIS COURT SHOULD NOT EXPAND THE SECOND AMENDMENT TO PROTECT A RIGHT TO CARRY A FIREARM OUTSIDE OF THE HOME ................... 1

    A. If The Court Extends The Second Amendment Beyond The Home, Plaintiff's Facial Challenge Still Fails ........................................ 3

    B. If The Court Extends The Second Amendment Beyond The Home, Plaintiff's As-Applied Challenge Still Fails ............................. 5

III. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FOURTH AMENDMENT ........................................................................ 7

IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT ......................................................................................... 9

V. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST AMENDMENT ....................................................................................... 10

VI. ALTERNATIVELY, UNDER THE *YOUNGER* ABSTENTION DOCTRINE, THIS COURT SHOULD ABSTAIN FROM HEARING PLAINTIFF'S SECOND CLAIM, AND SHOULD DISMISS HIS THIRD CLAIM .......................................................................... 11

VII. THE SECOND AMENDED COMPLAINT FAILS TO COMPLY WITH RULE 10(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE ............................................................................. 13

VIII. CONCLUSION ........................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*District of Columbia v. Heller,*
554 U.S. 570 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)............................1, 2, 5, 6

*Dubinka v. Judges of Superior Court,*
23 F.3d 218 (9th Cir. 1994) ..........................................................................13

*Heck v. Humphrey,*
512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)...............................12

*Hill v. Colorado,*
530 U.S. 703, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000)................................4

*Illinois v. Krull,*
480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1986)..................................3

*Kolender v. Lawson,*
461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)..................................4

*Latrieste Restaurant v. Village of Port Chester,*
188 F.3d 65 (2d Cir. 1999) .............................................................................9

*McDonald v. City of Chicago,*
561 U.S. __, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010)..................................5

*Moore v. Madigan,*
702 F.3d 933 (7th Cir. 2012) ..................................................................2, 5, 6

*Nordyke v. King,*
681 F.3d 1041 (9th Cir. 2012) .....................................................................10

*Rogers v. Tennessee,*
532 U.S. 451 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001)................................3

*United States v. Armstrong,*
517 U.S. 456, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996)................................9

*United States v. Brooks,*
367 F.3d 1128, 1134 (9th Cir. 2004) .............................................................8

*United States v. Mattarolo,*
209 F.3d 1153, 1158 (9th Cir. 2000) .............................................................8

*United States v. O'Brien,*
391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968).................................11

*United States v. Salerno,*
481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).................................4

-ii-
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AND THIRD CLAIMS IN THE SECOND AMENDED COMPLAINT

R6900-1031\1560103v1.doc

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*United States v. Stafford,*
  416 F.3d 1068 (9th Cir. 2005) .................................................................... 8

*Vlasak v. Superior Court,*
  329 F.3d 683 (9th Cir. 2003) .............................................................. 10, 11

*Younger v. Harris,*
  401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2 669 (1971) ..................................... 11

**Statutes**

Federal Rule of Civil Procedure 10(b) ............................................................. 13

Penal Code Section 25850 ................................................................................. 7

-iii-
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AND THIRD CLAIMS IN THE SECOND AMENDED COMPLAINT

R6900-1031\1560103v1.doc

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PLAINTIFF DOES NOT CONTEST THAT HE LACKS STANDING.

The City of Redondo Beach (Redondo Beach or City) explained in its moving papers that plaintiff lacks standing to assert his Second and Third Claims for relief. (Motion at pp. 4-5). Instead of contesting that he lacks standing, plaintiff asserts that Redondo Beach's standing argument somehow amounts to an admission that Section 4-35.20 of its Municipal Code is preempted by California law. (Opp. Brief at p. 1, lines 19-20; p. 13, lines 11-12). But plaintiff has never asserted a preemption claim in this lawsuit, and much less does he even explain how Redondo Beach's regulation is supposedly preempted. Furthermore, Redondo Beach simply observed that California law prohibits plaintiff from carrying a firearm on public property for reasons *different* than those underlying the City's ban. (Motion at p. 1, lines 8-16). Plaintiff has not furnished any basis for a finding of preemption.

Plaintiff lacks standing to assert his claims against Redondo Beach.

## II. BASED ON THE ALLEGATIONS IN THE SECOND AMENDED COMPLAINT, THIS COURT SHOULD NOT EXPAND THE SECOND AMENDMENT TO PROTECT A RIGHT TO CARRY A FIREARM OUTSIDE OF THE HOME.

Second Amendment case law is in its infancy. The Supreme Court has urged restraint in proceeding quickly to define the parameters of the Second Amendment right. Responding to criticism in one of the dissenting opinions, the Court in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), cautioned that

> "since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field . . . And there will be time enough to expound upon the historical

justifications for the exceptions we have mentioned if and when those exceptions come before us."

*Id.* at 635. The Court, without significant elaboration, observed that the "right secured by the Second Amendment is not unlimited" and it is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.

Following these general observations, one reasonably would expect Second Amendment case law to evolve carefully from *Heller's* core holding: "In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home inoperable for the purpose of immediate self-defense." *Id.* at 635. One might expect the Second Amendment case law initially to explore whether possessing a handgun for self-defense expands to areas beyond the home but akin to the home setting, such as hotels, RV campers, and the like.

In the only decision by a federal appeals court observing that the right to bear arms for self defense "implies a right to carry a loaded gun outside the home," the Seventh Circuit exercised a measure of restraint. See *Moore v. Madigan*, 702 F.3d 933, 936 (7th Cir. 2012) (*Moore*). In a split decision, *Moore* struck down an Illinois law that prohibited carrying guns in all public places. *Id.* at 934. The majority studiously avoiding saying *where* outside the home the right to bear arms for self-defense might extend; it provided the Legislature with 180 days to "craft a new gun law that will impose reasonable limitations, consistent with public safety . . . on the carrying of guns in public." *Id.* at 942. After Illinois sought rehearing en banc, four circuit judges dissented from denial of rehearing, observing that the "Supreme Court has not yet decided whether the post-*Heller* individual right to keep and bear arms extends beyond the home." *Moore v. Madigan*, 708 F.3d 901, 902 (7th Cir. 2013) (Order dissenting from denial of rehearing en banc).

As Redondo Beach argued in its moving papers (at pp. 5-7), the Court should

decline plaintiff's invitation to find that the Second Amendment extends outside of the home. Plaintiff does not simply ask this Court to extend *Heller* to a setting akin to the home for purposes of self-defense. He asks this Court instead to take a quantum leap and find that the Second Amendment extends to government-owned or government-leased property, primarily for the purpose of political protest. If this Court adopts plaintiff's position, it "would unduly impair the incremental and reasoned development of precedent that is the foundation of" constitutional law. *Rogers v. Tennessee*, 532 U.S. 451, 461, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001). "The process of clearly establishing constitutional rights is a long, tedious, and uncertain one." *Illinois v. Krull,* 480 U.S. 340, 367, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1986) (O'Connor, J. dissenting, writing for four Justices). Nothing in the evolving case law warrants the vast expansion of the Second Amendment landscape urged by plaintiff.

### A. If The Court Extends The Second Amendment Beyond The Home, Plaintiff's Facial Challenge Still Fails.

Even if this Court extends the reach of the Second Amendment, this case is a poor vehicle for its maiden voyage outside of the home in the Ninth Circuit. Redondo Beach prohibits the carrying of firearms in any "park," defined as "any publicly owned or leased property established, designated, maintained, or otherwise provided by the City for recreational use or enjoyment." (Second Amended Complaint (SAC) at p. 14, lines 20-22). On its face, the definition is limited to "publicly owned or leased property," that is, property owned or leased by the government. No court of which Redondo Beach is aware has recognized a Second Amendment right to carry firearms on government property. There are many potential valid applications of Redondo Beach's prohibition. For example, no court has articulated a Second Amendment right to hunt or target shoot on government property. Plaintiff simply cannot meet his burden of establishing "that no set of

circumstances exists under which [Redondo Beach's prohibition] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). To the extent plaintiff challenges the prohibition on its face, plaintiff's challenge must fail.

Nor can plaintiff maintain a facial claim on a void for vagueness theory. (See Opp. Brief at p. 13, line 27 to p. 14, line 11). As a preliminary matter, plaintiff has not even pled a void for vagueness claim, but the City nevertheless addresses the issue in the event plaintiff has any opportunity (and he should not) to file another amended complaint.

> "A statute can be impermissibly vague for either of two independent reasons. First, it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."

*Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000). The "more important" aspect of the vagueness inquiry is "'the requirement that a legislature establish minimal guidelines to govern law enforcement.' [Citation.]" *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983).

A person of ordinary intelligence can easily understand from the definition of "park" the locations in which the carrying of firearms is prohibited. The definition provides myriad examples of publicly owned and publicly leased property that has been provided by the City for recreational use or enjoyment, and on which firearms may not be carried. (See SAC at p. 14, lines 21-27). The definition establishes concrete guidelines governing law enforcement and does not encourage arbitrary or discriminatory enforcement. Plaintiff's void for vagueness argument fails. Redondo Beach's regulation is facially valid.

### B. If The Court Extends The Second Amendment Beyond The Home, Plaintiff's As-Applied Challenge Still Fails.

The crux of plaintiff's Second Amendment claim appears to be an as-applied challenge. (See Opp. Brief at p. 13, lines 9-10). Plaintiff alleges that Redondo Beach interprets its prohibition on firearms "to apply to all public, open spaces within the city including the coastal parklands and public coastal property not zoned as parkland," which he alleges are excluded from the prohibition. (SAC at p. 16, lines 20-24). The running theme in plaintiff's opposition brief is that the City allegedly applies its prohibition in places that fall outside the definition of "park," and specifically as to plaintiff, the City allegedly applied its definition to the "beach" zone. (Opp. Brief at p. 3, lines 11-13; SAC at p. 20, lines 12-15). Specifically, plaintiff alleges that when he was arrested on May 21, 2012 for violating the City's ordinance, he was on a street open to the public, posted as "private property," and located adjacent to the Redondo Beach Pier. (SAC at p. 20, lines 17-19; p. 22, lines 18-26).

Assuming the truth of plaintiff's allegations for purposes of this motion, he still cannot maintain a Second Amendment claim. No court has extended the Second Amendment to a street open to the public, and much less near a crowded venue like the Redondo Beach Pier.

In addition to asking this Court to extend the Second Amendment to a public venue to which the right has never been held to extend, plaintiff also asks the Court to extend the right to encompass a purpose other than self-defense. The first sentence of *McDonald v. City of Chicago*, 561 U.S. __, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) (*McDonald*) circumscribes the right: "Two years ago in [*Heller*], this Court held that the Second Amendment protects the right to keep and bear arms for the purpose of self defense. . . ." 130 S. Ct. at 3026. Even in *Moore*, where the Seventh Circuit held in the abstract that the Second Amendment extends beyond the home, the court limited its holding to "the constitutional right of armed self-defense."

1  702 F.3d at 935.

2  From *Heller's* observation that "the inherent right of self-defense has been central to the Second Amendment right," 554 U.S. at 628, plaintiff *assumes* that there must be other, unarticulated aspects of the Second Amendment right beyond self-defense. (Opp. Brief at p. 5, lines 22-24.) Plaintiff asserts that the right extends to "other lawful purposes" such as "peaceful protest" and "hunting and target shooting." (Opp. Brief at p. 9, lines 6-7; p. 12, line 27 to p. 13, line 1). But he cites no authority, and the City has found no such authority. All that can be said for certain is that the Second Amendment protects the right of self-defense, and that the Second Amendment does not "protect the right of citizens to carry arms for *any sort* of confrontation" just as the First Amendment does not "protect the right of citizens to speak for *any purpose*." *Heller*, 554 U.S. at 595 (italics original). If anything, *Heller* suggests limits on the right of self-defense outside of the home. It does not suggest that the Second Amendment right protects a range of purposes other than self-defense.

Plaintiff contends that he wishes "to openly carry a firearm for the purpose of self-defense and for other lawful purposes" and that "peaceful protest is a lawful purpose." (Opp. Brief at p. 9, lines 6-7). He alleges the same in the SAC (at p. 20, lines 7-12.) The City is not aware of any authority even suggesting that the Second Amendment protects a right to carry a firearm for purposes of protest. Nor has the City found any basis in text or history to suggest such a right. See *Heller*, 554 U.S. at 595 (Court looks to "text and history" to determine scope of Second Amendment).

Turning to self-defense, plaintiff alleges that he needs to carry a firearm in public in case he is "confronted by aggressors" because "it is impossible to know when such occasions will arise." (SAC at p. 23, lines 8-10). In his opposition brief, plaintiff states that he has received death threats. (Opp. Brief at p. 10, lines 26-27; p. 11, line 21). But plaintiff has never alleged, through three rounds of pleading, that he needs to carry firearms in public because he fears for his safety everywhere he goes.

Indeed, his allegations contradict this story. The heart of plaintiff's cause is political protest against the State's, and against the City's, gun policies. (See SAC at pp. 19-20, ¶ 45; pp. 22-23, ¶ 49). It is telling that the allegation about not knowing when aggressors will appear is tied directly to plaintiff's political protest. (See SAC at p. 22, line 25 to p. 23, line 10). This is not a case about self-defense.

In summary, plaintiff's as-applied challenge fails for two separate and independent reasons: (1) the Second Amendment does not extend to the street used by the public where plaintiff was arrested; and (2) the Second Amendment does not protect the carrying of firearms for any purpose other than self-defense. Plaintiff cannot maintain a Second Amendment claim and this Court should dismiss that claim with prejudice.[1]

## III. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FOURTH AMENDMENT.

In drafting its motion, the City construed the SAC as alleging a Fourth Amendment violation based on plaintiff's assertion that he enjoys a Second Amendment right to carry his firearm in public, and that by inspecting and seizing his firearm in alleged violation of that right, the City also allegedly violated the Fourth Amendment.

Plaintiff explains in his opposition (at p. 15, lines 10-24) that his Fourth Amendment claim has nothing to do with the Second Amendment. Instead, it is based on the City's search and seizure without a warrant, and allegedly without probable cause, or reasonable suspicion. The City now addresses these issues.

---

[1] In footnote 2 in its moving papers, the City mistakenly stated that it is criminally prosecuting plaintiff under Penal Code Section 25850. The City instead meant to say that to the extent the Court might infer from plaintiff's allegations that he is being prosecuted under Section 25850 (and he is not), the Second Amendment analysis would be the same.

Plaintiff alleges he was standing on a street used by the public, and openly carrying his firearm when police officers approached him, searched him, searched his firearm for ammunition, seized it and arrested him. (SAC at pp. 19-20, ¶ 45). Under the plain view doctrine, a search warrant was not required to detain plaintiff and search his firearm for ammunition. "'To fall within the plain view exception [to the warrant requirement], two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent.' [Citation.]" *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005). First, there can be no question that police officers may lawfully conduct searches on a street used by the public, and plaintiff does not contend to the contrary. Second, the incriminatory nature of a firearm, a deadly weapon, is immediately apparent upon sight. Police officers did not need a warrant to search plaintiff's firearm for ammunition.

To the extent plaintiff argues that police lacked probable cause to search his person, if he is indeed alleging that his person was searched, probable cause depends on the totality of circumstances. *United States v. Brooks*, 367 F.3d 1128, 1134 (9th Cir. 2004). Here, police officers saw plaintiff openly carrying a firearm in public. They did so only four days after plaintiff had sought to apply for a permit to carry a concealed weapon. (SAC at p. 21, ¶ 46). The Ninth Circuit has found that "an officer may conduct a limited protective search [patdown search] for concealed weapons if there is a reason to believe the suspect may have a weapon." *United States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000). Police officers had reason to believe plaintiff had a concealed weapon the moment they saw him openly carrying a firearm in public, particularly considering that plaintiff earlier had inquired about obtaining a permit to carry a concealed weapon.

Plaintiff's Fourth Amendment claim, to the extent it is based on the City's detention and search of his weapon and person, fails as a matter of law and should be dismissed with prejudice.

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

In his opposition brief, plaintiff clarifies that his equal protection claim flows from the City's alleged selective enforcement of its prohibition on firearms in parks. (Opp. Brief at p. 15, line 25 to p. 17, line 2). Plaintiff asserts that while the City enforced the prohibition against him while he was allegedly in the beach zone, the City did not arrest or prosecute others for the same conduct. (Opp. Brief at p. 16, lines 21-25). Even if plaintiff amended his complaint to include these allegations, he still could not allege an equal protection claim based on selective enforcement. To show selective enforcement, plaintiff must make "a credible showing" that the City knew that someone other than plaintiff was carrying a firearm in the beach zone and did not arrest and prosecute that person. See *United States v. Armstrong*, 517 U.S. 456, 470, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996). *Armstrong* requires "a showing that the [government] knew of other violations, but declined to prosecute them." *Latrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999). Noticeably absent from plaintiff's SAC, and from his opposition brief, is any allegation that the City knew of any other person who engaged in the same illegal activity as plaintiff, and then declined to prosecute that other person. In fact, such an allegation would seem to be at odds with plaintiff's assertion that he has a video of other persons violating the City's law (Opp. Brief at p. 16, lines 22-23), and with plaintiff's implicit suggestion that he could show the video to the City.

Plaintiff compares himself with fishermen who carry knives on the City's pier. (See Opp. Brief at p. 16, line 25 to p. 17, line 2). This goes nowhere. Plaintiff merely speculates without alleging any specific facts that the City knows of fishermen who carry illegal weapons on the pier, and that the City does nothing about it.

Plaintiff's equal protection claim should be dismissed with prejudice.

///

## V. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST AMENDMENT.

Plaintiff largely fails to rebut the City's position that he states neither a facial nor an as-applied First Amendment claim.

The only distinction plaintiff attempts to draw between his lawsuit and the *Nordyke* case involves a comparison of the two regulations at stake. Plaintiff mistakenly asserts that Alameda County did not prohibit the open carry of firearms on its property. (Opp. Brief at p. 17, lines 23-25). In fact, Alameda County prohibited the very *possession* of firearms (open or concealed) on all of its property throughout the county, with an exception for events where firearms were secured when not in the actual possession of an authorized participant in the event. *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012) (en banc). Plaintiff's incorrect reading of *Nordyke* does not provide any basis for distinguishing *Nordyke's* otherwise compelling First Amendment analysis, which plaintiff does not challenge in any meaningful way.

Next, plaintiff suggests that he must openly carry firearms in order to effectively protest laws which prohibit him from carrying firearms. (Opp. Brief at p. 18, lines 17-21). Under plaintiff's theory, no law which bans possession of an object could be enforced because people would have a First Amendment right to possess that object in order to protest the law. No court has ever subscribed to that theory and it is telling that plaintiff cites no authority here.

Plaintiff then says he needs to carry firearms to let people know that he and others who carry firearms for self-defense "are just like everyone else." (Opp. Brief at p. 19, lines 15-17). Aside from the fact that plaintiff has not even pled a cognizable expressive conduct claim, the Ninth Circuit has held squarely that people are not entitled to convey their "message" in the way they think most effective when it comes to dangerous objects. In *Vlasak v. Superior Court*, 329 F.3d 683 (9th Cir. 2003), the court upheld an ordinance prohibiting during protests possession of

wooden objects exceeding a certain thickness. *Id.* at 685-86. The ordinance prohibited the plaintiff from carrying a large wooden bull hook – a device used to train elephants – during an animal rights protest. *Id.* at 691. Using the applicable standard announced in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968) (*O'Brien*), the Ninth Circuit rejected plaintiff's argument that she was entitled to carry the bull hook as the most effective means of communicating her message.

> "Although non-wooden replicas and pictures of the bull hook may not have the same impact as the real thing, the potential hazards of wielding what is essentially a heavy wood club in a crowd during demonstrations justified the relatively small burden imposed on Vlasak by the ordinance"

329 F.3d at 691. Furthermore, "leaflets, pictures, signs, videotapes, and press releases" were "other, less hazardous, but still effective, ways of communicating their message." *Ibid.*

Similarly, the potential hazard posed by openly carrying a firearm in public justifies requiring plaintiff to communicate any message with the many other tools available – speech, leaflets, pictures, signs, and press releases to name just a few. Redondo Beach's ordinance leaves open multiple avenues of communication (*Vlasak*, 329 F.3d at 691) and thereby satisfies the fourth *O'Brien* factor.

Plaintiff's First Amendment claim should be dismissed with prejudice.

## VI. ALTERNATIVELY, UNDER *YOUNGER*, THIS COURT SHOULD ABSTAIN FROM HEARING PLAINTIFF'S SECOND CLAIM, AND SHOULD DISMISS HIS THIRD CLAIM.

Plaintiff offers three responses to *Younger* abstention. *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2 669 (1971). None has merit.

1    First, plaintiff argues that *Younger* abstention is inappropriate because he filed
2  this lawsuit before the City initiated state court criminal proceedings against him.
3  (Opp. Brief at p. 21, lines 23-24). The Court has already rejected that argument. In
4  the Magistrate Judge's Report, the Court found that the first prong of *Younger* is
5  satisfied so long as the state court proceeding is filed before any proceedings of
6  substance have occurred in the federal action. (*See* Report and Recommendation of
7  the United State Magistrate Judge (Magistrate Judge's Report) (Doc. 71), p. 16, lines
8  8-19). This action has not progressed beyond the pleading stage.

9    Second, plaintiff contends that the criminal action was brought in bad faith.
10 (Opp. Brief at p. 22, lines 7-26). Plaintiff does not explain how this bears upon a
11 *Younger* analysis. Nor does plaintiff assert, and let alone explain, that he is without
12 the opportunity to raise "bad faith" in defense of the criminal charges. If defendant
13 is convicted in the criminal case, his "bad faith" claim is irrelevant anyway unless the
14 conviction is reversed or expunged. See *Heck v. Humphrey*, 512 U.S. 477, 486-87,
15 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). A "bad faith" allegation does provide a
16 basis for rejecting *Younger* abstention.

17    Third, plaintiff contends that he has no opportunity to raise his constitutional
18 claims as defenses in the state criminal action. (Opp. Brief at p. 23, line 22 to p. 24,
19 lines 19). But his contention is completely refuted by a certified copy of the state
20 court's ruling on his demurrer to the criminal complaint. The certified copy of the
21 ruling is attached to the City's Request for Judicial Notice filed with this reply brief.
22 The ruling reflects that the state court considered and rejected plaintiff's preemption
23 defense and his Second Amendment argument. Plaintiff has had an opportunity to
24 raise his constitutional claims in state court. His real problem is that he does not like
25 the result reached by the state court.

26    Furthermore, if plaintiff is convicted in state court, he may appeal the
27 conviction. This weighs heavily in favor of exercising *Younger* abstention. A state
28 court proceeding remains pending for purposes of *Younger* abstention until all direct

appeals are exhausted. *Dubinka v. Judges of Superior Court*, 23 F.3d 218, 223 (9th Cir. 1994).

In summary, if the Court finds that plaintiff has stated any claim for relief, the Court should abstain under *Younger* from hearing plaintiff's damages claims until the state criminal proceedings are final, and should dismiss plaintiff's claims for injunctive and declaratory relief.

## VII. THE SECOND AMENDED COMPLAINT FAILS TO COMPLY WITH RULE 10(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

The City explained in its moving papers (at pp. 22-23) that plaintiff fails to plead distinct constitutional claims with each one supported by specific factual allegations. Plaintiff responds only by saying that he has complied with Rule 10(b), but he does not explain how the SAC complies with the rule. (Opp. Brief at p. 25, lines 8-10).

If the Court decides to hear this case now, it should at a minimum require plaintiff to comply with Rule 10(b) in the manner urged by the City.

## VIII. CONCLUSION

The Court should dismiss the Second and Third Claims in the Second Amended Complaint without leave to amend, and with prejudice.

Alternatively, under *Younger*, the Court should dismiss the Third Claim without leave to amend, and should stay proceedings on the Second Claim until the state criminal proceedings reach final judgment.

If the Court exercises jurisdiction now, it should at a minimum order plaintiff to file an amended complaint that complies with Rule 10(b).

///
///
///

Dated: May 7, 2013

RICHARDS, WATSON & GERSHON
A Professional Corporation
T. PETER PIERCE
LISA BOND

By: /s/ T. Peter Pierce
T. PETER PIERCE
Attorneys for Defendant
CITY OF REDONDO BEACH

-14-
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AND THIRD CLAIMS IN THE SECOND AMENDED COMPLAINT

R6900-1031\1560103v1.doc

# PROOF OF SERVICE

I, Clotilde Bigornia, declare:

I am a resident of the state of California and over the age of eighteen years and not a party to the within action. My business address is 355 South Grand Avenue, 40th Floor, Los Angeles, California 90071-3101. On May 7, 2013, I served the within document(s) described as:

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AND THIRD CLAIMS IN THE SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, IN SUPPORT OF MOTION FOR MORE DEFINITE STATEMENT**

on the interested parties in this action as stated below:

Charles Nichols
P.O. Box 1302
Redondo Beach, CA 90278
Tel:  (424) 634-7381

Jonathan Michael Eisenberg
Office of the California Attorney General
Government Law Section
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel:  (213) 897-6505
Fax:  (213) 897-1071
Email:  jonathan.eisenberg@doj.ca.gov

[ X ]  (BY MAIL) By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth above. I am readily familiar with the firm's practice for collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing contained in this affidavit.

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 7, 2013, at Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Clotilde Bigornia

R6900-1031\1549017v1.doc