

1   Charles Nichols
    PO Box 1302
2   Redondo Beach, CA 90278
    Voice: (424) 634-7381
3   E-Mail: CharlesNichols@Pykrete.info
    In Pro Per
4

5                                                              FILED
                                                    CLERK, U.S. DISTRICT COURT
6
                                                        MAY − 7 2013
7
                                                    CENTRAL DISTRICT OF CALIFORNIA
8                                                   BY                    DEPUTY

                        United States District Court
9
                        Central District of California
10

11  Charles Nichols,                    )   Case No.: CV-11-9916 SJO (SS)
                                         )
12          PLAINTIFF,                   )   (Honorable Samuel James Otero)
                                         )
13      vs.                              )   PLAINTIFF'S REPLY TO
                                         )   DEFENDANT KAMALA D.
14  KAMALA D. HARRIS, Attorney           )   HARRIS'S OPPOSITION TO
                                         )   PLAINTIFF CHARLES
15  General, in her official capacity as )   NICHOLS'S MOTION FOR
                                         )   PRELIMINARY INJUNCTION
16  Attorney General of California, CITY )
                                         )
17  OF REDONDO BEACH, and DOES 1         )   Date: Vacated
                                         )   Time: Vacated
18  to 10,                               )   Location: United States Courthouse
                                         )            312 North Spring Street
19          Defendants.                  )            Los Angeles, CA 90012-4701
                                         )   Courtroom: 1 - 2nd Floor
20                                       )   Judge: Hon. Samuel James Otero
                                         )   Magistrate: Hon. Suzanne Segal
21                                       )   Date Action Filed: November 30, 2011
                                         )
22

23

24

25

26

27

28

    PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

PAGE

I. THE HELLER COURT DID NOT CONFINE THE RIGHT TO OPENLY
CARRY A FIREARM TO THE INTERIOR OF ONE'S HOME.................1

II. THE STATUTES IN QUESTION............................................................3

III. PLAINTIFF'S REPLY TO DEFENDANT HARRIS' SUMMARY.........4

IV. PLAINTIFF HAS BEEN IRREPARABLY HARMED AND
CONTINUES TO SUFFER AN IRREPARABLE HARM........................6

V. PLAINTIFF FILED A TIMELY ACTION AGAINST THE STATE
STATUTES................................................................................................6

VI. DEFENDANT HARRIS CONCEDES THAT CALIFORNIA BANS
OPEN CARRY........................................................................................7

VII. PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION IS
AS-APPLIED AS WELL AS FACIAL...................................................7

VIII. PLAINTIFF'S REPLY TO DEFENDANT HARRIS' PERTINENT
FACTS AND PERTINENT PROCEDURAL HISTORY........................7

IX. PLAINTIFF'S REPLY TO DEFENDANT HARRIS' LEGAL
STANDARDS FOR PRELIMINARY INJUNCTION MOTIONS..............8

i

1

## TABLE OF CONTENTS (CONT.)

2

3   X.  DEFENDANT HARRIS' CITATIONS DO NOT SUPPORT HER
4   ARGUMENT THAT THE SECOND AMENDMENT RIGHT OF SELF-
5   DEFENSE IS LIMITED TO ONE'S HOME……………………………………9

6

7   XI.  THERE ARE NO MEANINGFUL EXCEPTIONS TO CALIFORNIA'S
8   BANS ON OPEN CARRY……………………………………………………...19

9

10   XII.  EVEN IF THE VACATED SUBSTANTIAL BURDEN TEST IN
11   NORDYKE WERE APPLICABLE, CALIFORNIA'S BANS ON OPEN
12   CARRY ARE A SUBSTANTIAL BURDEN……………………………..21

13

14   XIII.  DEFENDANT HARRIS' THEATRE HORRIBLES………………..23

15

16   XIV.  ON THE FOURTH AMENDMENT CLAIM…………………………..23

17

18   XV.  ON THE FOURTEENTH AMENDMENT CLAIMS AND THE
19   VAGUENESS CLAIMS………………………………………………...24

20

21   CONCLUSION………………………………………………………...25

22

23

24

25

26

27

28

ii

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*District of Columbia v. Heller*
554 U.S. 570 [128 S.Ct. 2783; 171 L.Ed.2d 637] (2008)................................*passim*

*Ezell v. City of Chicago*
651 F.3d 684 (7th Cir. 2011).......................................................12, 17, 23

*GeorgiaCarry.Org, Inc. v. Georgia*
687 F.3d 1244 (11th Cir. 2012).........................................................13

*Heller v. District of Columbia*
670 F.3d 1244 (D.C. Cir. 2011).........................................................23

*Hightower v. City of Boston*
691 F.3d 61 (1st Cir. 2012)...........................................................9, 10

*Kachalsky v. Cacace*
___ U.S. ___ No. 12-845, 2013 WL 127127 (Apr. 15, 2013) ....................10, 11, 17

*Kachalsky v. County of Westchester*
701 F.3d 81 (2d Cir. 2012)..............................................................11

*McDonald v. City of Chicago*
___ U.S. ___ [130 S.Ct. 3020; 177 L.Ed.2d 894] (2010)................................ *passim*

*Moore v. Madigan*
702 F.3d 933 (7th Cir. 2012)........................................................ *passim*

*Nat'l Rifle Ass's of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*
700 F.3d 185, 204 (5th Cir. 2012))....................................................23

*Nordyke v. King*
681 F.3d 1041 (9th Cir. 2012) (en banc)...........................................13, 21

*Nunn v. State*
1 Ga. 243 (1846).................................................................1, 2, 11, 14

iii

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES (CONT.)

PAGE(S)

## CASES

*People v. Flores*
169 Cal. App. 4th 568 [86 Cal. Rptr. 3d 804] (2008)................................................11

*People v. Lopez*
78 Cal. Rptr. 2d 66 - Cal: Court of Appeal, 5th Appellate Dist. (1998))..................4

*People v. Mitchell*
209 Cal. App. 4th 1364 (2012))........................................................12, 16

*Peruta v. County of San Diego*
758 F. Supp. 2d 1106 (S.D. Cal. 2010)........................................................14

*Peterson v. Martinez*
707 F.3d 1197 (10th Cir. 2013)........................................................9, 14, 15

*Piszczatoski v. Filko*
840 F. Supp. 2d 813 (D. N.J. 2012)........................................................15

*Richards v. County of Yolo*
821 F. Supp. 2d 1169 (E.D. Cal. 2011)........................................................15

*Rodriguez v. Robbins*
(Court of Appeals, 9th Circuit No. 12-56734, Filed April 16, 2013).................6

*State v. Chandler*
5 La. Ann. 489 (1850)........................................................1, 2, 14

*United States v. Barton*
633 F.3d 168 (3d Cir. 2011)........................................................15

*United States v. Black*
707 F.3d 531 (4th Cir. 2013)........................................................16, 17

*United States v. Booker*
644 F.3d 12 (1st Cir. 2011)........................................................15

iv

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES (CONT.)

**PAGE(S)**

## CASES

*United States v. Chester*
628 F.3d 673, 680 (4th Cir.2010)..........................................................................23

*United States v. DeCastro*
682 F.3d 160 (2d Cir. 2012)................................................................................21

*United States v. Fuentes*
105 F. 3d 487 - (Court of Appeals, 9th Circuit (1997)................................16, 14, 24

*United States v. Greeno*
679 F.3d 510 (6th Cir. 2012)..........................................................................15, 23

*United States v. Henry*
688 F. 3d 637 - (Court of Appeals, 9th Circuit 2012)...................................19

*United States v. Mahin*
668 F.3d 119 (4th Cir. 2012)................................................................................17

*United States v. Marzzarella*
614 F.3d 85, 89 (3d Cir.2010)................................................................................23

*United States v. Masciandaro*
638 F.3d 458 (4th Cir. 2011)................................................................................17

*United States v. Potter*
630 F. 3d 1260 - Court of Appeals, 9th Circuit (2011)............................................19

*United States v. Reese*
627 F.3d 792 (10th Cir. 2012)..........................................................................15, 23

*United States v. Skoien*
614 F.3d 638 (7th Cir. 2010) (en banc)..........................................................15, 22

*United States v. Staten*
666 F.3d 154 (4th Cir. 2011)................................................................................15

*United States v. Vongxay*

v

## TABLE OF AUTHORITIES (CONT.)

**PAGE(S)**

**CASES**

594 F.3d 1111 (9th Cir. 2010)...........................................................................16

*Williams v. State*

(10 A.3d 1177 Md. 2011) ...........................................................................11, 15

*Winter v. Natural Res. Def. Council, Inc.*

555 U.S. 7 [129 S. Ct. 365; 172 L. Ed. 2d 249] (2008) ...........................................8

*Woollard v. Gallagher*

___ F.3d ___, No. 12-1437, 2013 WL 1150575 (4th Cir. Mar. 21, 2013)........16, 17

*Young v. Hawaii*

___ F.Supp.2d ___, Civ. No. 12-00336 HG BMK, 2012 WL 5987588 (D. Haw.
Nov. 29, 2012)...........................................................................9, 18


**STATUTES**

Cal. P. Code § 25850 ...........................................................................*passim*

Cal. P. Code § 26150 ...........................................................................8

Cal. P. Code § 26155 ...........................................................................8

Cal. P. Code § 26350...........................................................................3, 8

Cal. P. Code § 26400...........................................................................4

N.J. Rev. Stat. § 2C:39-5c...........................................................................15


**CONSTITUTIONAL PROVISIONS**

U.S. Amend. Const. I ...........................................................................4

U.S. Amend. Const. II ...........................................................................*passim*

U.S. Amend Const. IV ...........................................................................3, 23, 24

U.S. Amend. Const.XIV ...........................................................................1, 13, 24

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

I.    **THE HELLER COURT DID NOT CONFINE THE RIGHT TO
OPENLY CARRY A FIREARM TO THE INTERIOR OF ONE'S
HOME**

When did the fundamental right to armed self-defense become confined to the interior of one's home? It wasn't in 1791 when the Second Amendment to the Bill of Rights was adopted. There were no prohibitions on the carrying of firearms in public, openly or concealed, loaded or unloaded. Colonial era laws required the bearing of arms in public, even to church. It wasn't in 1868 when the Fourteenth Amendment was adopted, the prohibitions on the carrying of firearms in public were limited to concealed carry and even then provided for several exemptions such as for travelers and for women. It wasn't in July of 1967 when California enacted former Penal Code Section 12031. The exhibits to Plaintiff's motion for a preliminary injunction from the Mulford Act of 1967 clearly indicate that the California legislature believed that the Open Carry of firearms was a Constitutional Right. The Mulford Act of 1967 was itself an arbitrary and irrational response to members of the Black Panther Party for Self-Defense seeking out and confronting police officers and elected officials and, in particular, staging an impromptu armed demonstration in the halls of the California State Capitol building.

In *District of Columbia v. Heller* 554 U.S. 570 [128 S.Ct. 2783; 171 L.Ed.2d 637] (2008) the U.S. Supreme Court said "In *Nunn v. State*, 1 Ga. 243, 251 (1846), the Georgia Supreme Court construed the Second Amendment as protecting the "natural right of self-defence" and therefore struck down a ban on carrying pistols openly. Its opinion perfectly captured the way in which the operative clause of the Second Amendment furthers the purpose announced in the prefatory clause, in continuity with the English right:" *Heller* at 2809.

The Heller Court then went on to say: "Likewise, in *State v. Chandler*, 5 La. Ann. 489, 490 (1850), the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the

1

United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations." *Heller* at 2809.

The Heller Court painted with a broad brush the time, manner and place restrictions on the Second Amendment Right. "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. See, e.g., Sheldon, in 5 Blume 346; Rawle 123; Pomeroy 152-153; Abbott 333. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, e.g., *State v. Chandler*, 5 La. Ann., at 489-490; *Nunn v. State*, 1 Ga., at 251; see generally 2 Kent *340, n. 2; The American Students' Blackstone 84, n. 11 (G. Chase ed. 1884). Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller* at 2817 (internal footnote #26 omitted).

Defendant Harris' position is that the decision in Heller eliminated the right to possess and carry weapons in case of confrontation in public but cannot point to any line or phrase in the decision that even remotely implies that it did.

"Meaning of the Operative Clause. Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and

2

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed." As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The Second amendment declares that it shall not be infringed . . . ." *Heller* at 2797-2798 (footnote 16 omitted).

On January 1, 2012 California's ban on openly carrying an unloaded handgun went into effect. On January 1, 2013 California's ban on openly carrying an unloaded long gun went into effect. These two bans, combined with the reenacted ban of openly carrying a loaded firearm which went into effect on January 1, 2012 have resulted in a nearly total ban on the Open Carry of firearms in all incorporated cities and in unincorporated county territory where the discharge of firearms is prohibited. These bans were enacted in defiance of both the *Heller* and *McDonald* decisions and Article I, Section 1 of the California Constitution which enumerates the fundamental right to self-defense. The California Legislature has neither the right nor the authority to enact laws contrary to the Constitution of the United States or contrary to its own state Constitution. This court should grant Plaintiff's motion for a preliminary injunction.

## II.    THE STATUTES IN QUESTION

California Penal Code section 25850 was not passed in 1967. It went into effect on January 1, 2012. PC 25850(a) contains the same language as did former Penal Code section 12031(a). PC 25850(b) contains the same language as did former Penal Code section PC12031(e). Former Penal Code section 12031 was passed in 1967. It was repealed. The various subsections of PC 12031, including its purported exceptions, have been scattered throughout the penal code. Combined with Penal Code section 26350 they are "…laws that, in effect, ban public "open carry" in most circumstances." Defendant Harris' Opposition to Plaintiff's Motion

3

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

for a Preliminary Injunction at page 1, lines 22-23. Combine the Open Carry bans with the de facto concealed carry bans, the level of scrutiny is irrelevant. Laws that, in effect, ban a fundamental right (not just First Amendment Rights) in most circumstances are facially unconstitutional as are laws which are vague (see *People v. Lopez*, 78 Cal. Rptr. 2d 66 - Cal: Court of Appeal, 5th Appellate Dist. 1998 at 75-76). California Penal Code section 26400 was not passed in 2011. It was passed in 2012 and went into effect on January 1, 2013.

## III.    PLAINTIFF'S REPLY TO DEFENDANT HARRIS' SUMMARY

These statues are not critical public safety measures and an injunction would not endanger law enforcement, the general public or Plaintiff. Only Florida, Illinois, Texas and the District of Columbia prohibit the Open Carry of loaded handguns. The Illinois' prohibitions were struck down as unconstitutional by the 7th Circuit. Florida's Open Carry ban wasn't enacted until 1987 and that state is a concealed carry "shall issue" state. On April 19, 2013, Florida's Supreme Court denied a motion by the State Attorney to prohibit the Fourth District Court of Appeals from considering the appeal of a Concealed Carry licensee who was convicted of violating Florida's Open Carry Ban and answering three questions which the county court considered to be of great public importance. The first question - "Is Florida's statutory scheme related to the open carry of firearms constitutional?" Texas does not prohibit the Open Carry of loaded long guns and the District of Columbia did not enact a de jure ban on the Open Carry of handguns until after the Heller decision.

States that do not require a permit to openly carry a handgun include: Alabama, Alaska, Arizona, Arkansas, Colorado, Delaware, Georgia, Idaho, Kansas, Kentucky, Louisiana, Maine, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota (If unloaded, and only during the day), Ohio, Oklahoma, Oregon, Pennsylvania,

4

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

South Dakota, Utah (If unloaded), Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming.

States that provide for the Open Carry of handguns with a permit include: Connecticut, Indiana, Iowa, Maryland, Massachusetts, Minnesota, North Dakota (Permit holders are exempt from the nighttime and unloaded handgun open carrying restrictions), Rhode Island, South Carolina, Tennessee, Utah. Omitted from the list are California and Hawaii which have de facto bans on Open Carry.

States that do not prohibit the Open Carry of Long Guns in public include: Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia (Limited), Georgia, Idaho, Indiana, Iowa (If unloaded), Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey (Limited. If unloaded with valid permit to possess), New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania (Except for Philadelphia), Rhode Island, South Carolina, South Dakota, Tennessee (If unloaded), Texas, Utah (If unloaded), Vermont, Virginia (Open carrying of certain loaded long guns is prohibited in select cities), Washington, West Virginia, Wisconsin, Wyoming. Omitted from the list are California and Hawaii which have de facto bans on Open Carry.

California, Hawaii, New Jersey and the District of Columbia are the anomalies. According to the author of California's bans on the Open Carry of unloaded firearms "You don't need a gun to buy a cheeseburger." That reason is insufficient to withstand even rational review were rational review permitted, which it is not according to *Heller*.

In any event, the Heller Court has taken "public safety" and "rational review" off the table. Defendant Harris' contrived public safety fears are belied by the fact they never materialized in the 163 years it was legal to openly carry a firearm in California not to mention the absence of public safety problems in the

5

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

47 states which do not prohibit Open Carry. Even the Black Panthers peacefully surrendered their firearms during their 1967 protest in the State Capitol building.

## IV.   PLAINTIFF HAS BEEN IRREPARABLY HARMED AND CONTINUES TO SUFFER AN IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights `unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))." *Rodriguez v. Robbins*, Court of Appeals, 9th Circuit 2013 No. 12-56734, Filed April 16, 2013, slip op. at pg. 34.

Even if the Second Amendment were limited to the curtilage of Plaintiff's home, California statutes penalize constitutionally protected conduct by banning the carrying of firearms openly or concealed there; the injunction must be issued.

## V.   PLAINTIFF FILED A TIMELY ACTION AGAINST THE STATE STATUTES

Plaintiff filed his initial complaint on November 30, 2011 against California Penal Code section 25850 which went into effect on January 1, 2012. It would have been futile to bring an action against former section PC 12031 prior to *McDonald v. City of Chicago*, ___ U.S. ___ [130 S.Ct. 3020; 177 L.Ed.2d 894] (2010) and Plaintiff simply did not have the money to file an earlier lawsuit. Had he known his lawsuit would be as expensive as it turned out to be, he would have delayed filing his action even longer. Plaintiff did not include California's ban on openly carrying unloaded handguns because National Rifle Association attorney Carl "Chuck" Michel testified before a California legislative committee that he would sue if Assembly Bill 144 passed. Obviously, he lied.

Similarly, it would have been pointless to file a motion for a preliminary injunction because Plaintiff did not have money to take his case to the Court of Appeals which is why Plaintiff asked for a stay pending the decisions in the three California concealed carry cases that have been taken under submission by the 9th.

6

<u>PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION</u>

Also, the unconstitutional criminal prosecution by the City of Redondo Beach has, as NRA attorney Chuck Michel hoped it would do, adversely impacted Plaintiff's ability to prosecute this case as rapidly as he had hoped.

Plaintiff now has the money to argue his case on appeal. This court did not publish its order (docket #82) denying the motion to dismiss by Defendant Harris until March 3, 2013. Plaintiff then wrote and filed his SAC on March 29, 2013 which was shortly followed by his notice of motion and motion for a Preliminary Injunction on April 10, 2013. Plaintiff is proceeding pro se without the benefit of an attorney, unlike Defendant Harris who has virtually unlimited resources at her disposal. Given Plaintiff's extremely limited resources, his motion for a preliminary injunction was filed as soon as was humanly possible.

## VI.    DEFENDANT HARRIS CONCEDES THAT CALIFORNIA BANS OPEN CARRY

On page one, lines 22-23 of her Opposition, Defendant Harris states "…Nichols is unlikely to succeed in his quest to obtain a permanent injunction against laws that, in effect, ban public "open carry" in most circumstances." Precisely because the laws "in effect, ban public "open carry" in most circumstances" they are unconstitutional under any level of scrutiny including rational basis which Defendant Harris posits as the level of scrutiny to apply to the bans despite the Heller Court taking rational review off the table.

## VII.   PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION IS AS-APPLIED AS WELL AS FACIAL

Contrary to Defendant Harris' false claim that Plaintiff's motion for a preliminary injunction is purely a facial attack, Plaintiff explicitly makes an As-Applied challenge in his motion at pg. 5, line 27; pg 16, line 18 and pg 17, line 5.

## VIII.  PLAINTIFF'S REPLY TO DEFENDANT HARRIS' PERTINENT FACTS AND PERTINENT PROCEDURAL HISTORY

7

Defendant Harris reargues her denied motion to dismiss Plaintiff's case. This court gave Defendant Harris the opportunity to bow out of this action by merely promising not to enforce California's Open Carry ban. Instead, she filed an Answer to Plaintiff's SAC admitting that "the Attorney General "has participated in [the] enforcement" of California Penal Code section 25850; at ¶ 41, California Penal Code sections 25850, 26350, 26150, and 26155; at ¶ 42 of the SAC.

## IX.    PLAINTIFF'S REPLY TO DEFENDANT HARRIS' LEGAL STANDARDS FOR PRELIMINARY INJUNCTION MOTIONS

Plaintiff satisfies all four factors in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 [129 S.Ct. 365; 172 L.Ed.2d 249] (2008) and the documented death threat against him weighs in his favor. If the court concludes that a copy of his police incident report and threat would be dispositive, Plaintiff is more than happy to provide this court with a copy of each.

The relief Plaintiff seeks is not "drastic" as Defendant Harris contends. A preliminary injunction against the Unloaded Open Carry bans would simply preserve the "status quo" which had existed in this state for over 160 years. An injunction against the Loaded Open Carry ban would enable Plaintiff to Openly Carry a loaded firearm in only those places where it was legal for him to Openly Carry an unloaded firearm with ammunition at the ready before the bans went into effect. It would still be illegal for Plaintiff to openly carry a loaded firearm in many areas of incorporated cities and unincorporated county territory where the discharge of a firearm is prohibited. California Penal Code section 626.9 prohibits the open carry of handguns, loaded or unloaded within 1,000 feet of a K-12 public or private school and requires long guns to be unloaded. It would still be illegal for Plaintiff to openly carry a firearm in all other places prohibited by California's numerous statutes prohibiting the carrying and possession of firearms.

Plaintiff does not contend that there is an "Absolute Right To Carry Firearms Openly In Public Places." There are many presumptively lawful

8

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

"sensitive places" such as schools, government buildings, secure areas of airports, on board commercial airliners, inside of court houses, military bases, and jails. There are other non-sensitive public places where Plaintiff does not have the right to openly carry a firearm such as commercial buildings not open to the general public and of course, other people's residential property without their permission.

For the reasons given in the next section, *Young v. Hawaii*, ___ F.Supp.2d ___, ___, 2012 WL 5987588 at *11 (D. Haw. Nov. 29, 2012) is the only case cited by Defendant Harris in her opposition which directly supports her case. *Peterson v. Martinez*, 707 F.3d 1197, 1208 (10th Cir. 2013) certainly does not. To the contrary, *Peterson* makes Plaintiff's case for him.

Plaintiff does not seek to "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." He seeks to carry firearms legal to possess in the State of California, for the purpose of self-defense and for other lawful purposes in the only available manner permitted by *Heller* – Openly.

## X.    DEFENDANT HARRIS' CITATIONS DO NOT SUPPORT HER ARGUMENT THAT THE SECOND AMENDMENT RIGHT OF SELF-DEFENSE IS LIMITED TO ONE'S HOME.

California Attorney General Harris repeatedly claims that the decision in District of Columbia v. Heller 554 U.S. 570 [128 S.Ct. 2783; 171 L.Ed.2d 637] (2008) as well as Federal Court decisions concerning the presumptively lawful prohibitions including the carrying of concealed weapons apply to the Open Carry of firearms, both loaded and unloaded in non-sensitive public places of California. This is an Open Carry case and Plaintiff has carefully constructed his Motion for a Preliminary Injunction to not affect the presumptively lawful prohibitions or restrictions on carrying a firearm concealed.

Defendant Harris cites: *Hightower v. City of Boston*, 691 F.3d 61 (1st Cir. 2012). In Hightower the court said "Hightower's as-applied claim extends only to the characteristics of the license that was revoked — a Class A unrestricted license

9

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

that allows for carrying of concealed, large capacity weapons outside the home. Hightower lacks standing to raise a claim as to a Class B license; she has never applied for such a license, been denied one, or had such a license revoked. Such a license would allow her to carry a non-concealed…non-large capacity weapon in public." *Hightower* at 70 (internal footnote #5 ommitted).

The Hightower Court then noted: "Hightower asserts that "the Boston police apparently do not issue unrestricted Class B licenses to openly carry revolvers and other non-large capacity handguns," and so, de facto, the only way for her to carry a firearm, openly or not, outside her home is with an unrestricted Class A license. Hightower cites no authority for this proposition, aside from certain comments that do not address the matter made by defense counsel at a hearing. The statute itself only provides that Class B licenses "shall not entitle the holder thereof to carry or possess a loaded firearm in a concealed manner in any public way or place." Mass. Gen. Laws ch. 140, § 131(b) (emphasis added). The defendants claim that "a Class B license is sufficient to keep a regular capacity firearm, rifle, or shotgun in one's home or to carry it openly in public." The defendants also point out that Hightower could apply for a restricted Class A license that would allow her to carry a firearm in public." *Hightower* at footnote #6. The various California Penal Code sections referenced in Plaintiff's complaint and Motion for a Preliminary injunction clearly state that Plaintiff, and every similarly situated individual, living in a county of 200,000 or more people, is prohibited from being issued a license to openly carry a handgun, loaded or unloaded. Similarly, California does not provide for the issuance of a license to openly carry a long gun, loaded or unloaded, in public. Plaintiff submits, as he did so in his SAC, that a license is not required to exercise one's Second Amendment right and the Heller Court did not say that a license was required. The plaintiff in *Heller* had a license to openly carry a handgun in public.

Similarly, Defendant Harris' reliance on *Kachalsky v. Cacace*, ___ U.S. ___, No. 12-845, 2013 WL 127127 (Apr. 15, 2013); Kachalsky v. County of

10

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Westchester, *Kachalsky v. County of Westchester* 701 F.3d 81 (2d Cir. 2012) is misplaced. Kachalsky did not challenge New York's 1963 ban on openly carrying a loaded handgun and New York, unlike California, does not ban the Open Carry of long guns, loaded or unloaded. Kachalsky sought an unrestricted license to carry a concealed handgun, a presumptive lawful prohibition in Heller at 2817 and at footnote #26. There was no "open-carry question" in *Kachalsky*. Kachalsky argued that states can ban either manner of carry but could not ban both. The "COUNTERSTATEMENT OF QUESTION PRESENTED" in the "BRIEF FOR THE STATE RESPONDENTS IN OPPOSITION" proffered the "COUNTERSTATEMENT OF QUESTION PRESENTED" – "Whether the Second Amendment to the United States Constitution prohibits the State of New York from requiring an applicant to show proper cause to obtain a license to carry **a concealed handgun** in public." (emphasis added).

Likewise, *Williams v. State*, 10 A.3d 1177 Md. 2011) was a concealed carry case and Maryland, like New York, does not prohibit the Open Carry of long guns in public. In any event, Maryland's interpretation of the Heller decision is not that of California's despite Defendant Harris' reliance on a California pre *McDonald v. City of Chicago*, ___ U.S. ___ [130 S.Ct. 3020; 177 L.Ed.2d 894] (2010) decision *People v. Flores*, 169 Cal. App. 4th 568 [86 Cal. Rptr. 3d 804] (2008). Flores, a prohibited person, was convicted of carrying a loaded, concealed handgun in public. Notably, the Flores court cited "*In re Rameriz* (1924) 193 Cal. 633, 652 [226 P. 914] (Rameriz)", *Flores* at 573. The California Supreme Court in *Rameriz* erroneously concluded that the Second Amendment refers only to Militias and limits only the Federal Court. In deciding the applicable law for the carrying of loaded firearms in public, the Rameriz Court, in the same section, said "It may be remarked that an absolute prohibition of such right might be held to infringe a fundamental right. In Nunn v. Georgia, 1 Ga. 243,…" and then cited the same passage of *Nunn* from *Heller* at 2809. Granting Plaintiff's motion would not

11

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

prevent the state from prosecuting persons for unlawful concealed carry or the carrying of firearms, openly or concealed by prohibited persons. The Rameriz Court involved the concealed carry of a loaded handgun. It upheld the ban on the mere possession of a handgun by persons not born in the United States but recognized that even they have the right to openly carry a loaded long gun in public. The California courts overturned the possession ban on equal protection grounds in 1972.

The California Court's recent evaluation of the Second Amendment right to openly carry weapons in public emphasizes why Plaintiff's motion for a preliminary injunction should be granted. In *People v. Mitchell*, 209 Cal. App. 4th 1364 (Cal. App. 4th Dist. 2012) the Mitchell Court applied intermediate scrutiny to the carrying of a concealed weapon in public because "…the statute under review regulated the manner of possession of a weapon, but did not completely ban the possession of the weapon. (Id. at p. 97; accord *People v. Ellison* (2011) 196 Cal.App.4th 1342, 1347.)" at 1374. California counties have de facto bans on the issuance of concealed weapons permits. This coupled with the states bans on openly carried firearms may very well persuade the 9th Circuit Court of Appeals to conclude that strict scrutiny is applicable to one or more of the concealed carry lawsuits pending before it resulting in "shall issue" of unrestricted licenses to carry concealed weapons. Open Carry is "noble" *Heller* at 2809. Concealed carry, with certain limited exceptions such as "travelers" (*Heller* at 2812) is not.

Defendant Harris' reliance on *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) does nothing to further her position. The 7th Circuit Ezell Court struck down Chicago's ban on public shooting ranges as a violation of the Second Amendment which was followed by the 7th Circuit striking down Illinois' near total ban on firearms possession in public in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). "Even carrying an unloaded gun in public, if it's uncased and immediately accessible, is prohibited, other than to police and other excepted

12

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

persons, unless carried openly outside a vehicle in an unincorporated area and ammunition for the gun is not immediately accessible." *Moore* at 934.

The "uncertainty" she cites in *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir. 2012) applied to "a "place of worship."" *GeorgiaCarry.Org, Inc.* at 1249. This case pitted private property rights against the Second Amendment to which the court said "…Plaintiffs cannot contend that the Second Amendment in any way abrogated the well established property law, tort law, and criminal law that embodies a private property owner's exclusive right to be king of his own castle. By codifying a pre-existing right, the Second Amendment did not expand, extend, or enlarge the individual right to bear arms at the expense of other fundamental rights; rather, the Second Amendment merely preserved the status quo of the right that existed at the time." *GeorgiaCarry.Org, Inc.* at 1264. If the 11th Circuit conclusion that the date of adoption of the Second Amendment (1791) is the relevant "status quo" to be preserved it demands that Plaintiff's motion be granted and any future case challenging California's regulation of concealed carry because there were no prohibitions on the carrying of concealed weapons in 1791, only prohibitions on their use in "fair fights." Likewise, there were no prohibitions on the Open Carry of firearms in the places within the scope of Plaintiff's motion for a preliminary injunction in either 1791 or in 1868 when the Fourteenth Amendment was adopted and through which the Second Amendment was incorporated to all states and local governments via the *McDonald* decision.

*Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012) involved presumptively lawful regulations on the commercial sale of firearms inside a presumptively sensitive place, an Alameda County government building. Granting Plaintiff's preliminary injunction would not affect any California law regulating the possession of firearms in government buildings or any California regulation on the sale of firearms. There is no presumptively lawful regulation at issue in this case.

13

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Plaintiff's case is concerned solely with the right guaranteed by the Constitution – Open Carry.

*Peruta v. County of San Diego*, 758 F. Supp. 2d 1106 (S.D. Cal. 2010) is yet another failed concealed carry case in which the Plaintiffs did not challenge the constitutionality of ANY state statute.  Moreover, in its Appellant Opening Brief before the 9th Circuit, Peruta extensively argued to uphold California's 1967 ban on openly carrying a loaded firearm in public (former penal code section 12031(a)(1) now codified as PC 25850(a)).  Indeed, the Peruta Court said "The Heller Court relied on 19th-century cases upholding concealed weapons bans, but in each case, the court upheld the ban because alternative forms of carrying arms were available. See *State v. Chandler*, 5 La. Ann. 489, 490 (1850) (holding concealed weapons ban "interfered with no man's right to carry arms... in full open view"); *Nunn v. State*, 1 Ga. 243, 251 (1846) (holding concealed weapons ban valid so long as it does not impair the right to bear arms "altogether"). See also *Andrews v. State*, 50 Tenn. 165, 178 (1871) (holding that a statute that forbade openly carrying a pistol "publicly or privately, without regard to time or place, or circumstances," violated the state right to keep and bear arms); *State v. Reid*, 1 Ala. 612, 616-17 (1840) (observing that a regulation that amounts to a total ban would be "clearly unconstitutional")." *Peruta* at 1114.  "*Heller* does not preclude Second Amendment challenges to laws regulating firearm possession outside of home." *Peruta v. San Diego*, 678 F. Supp. 2d 1046, 1051 (S.D. Cal. 2010).

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) was another failed concealed carry lawsuit where the court affirmed *Heller's* "manner" restriction on carrying a loaded handgun in public.  Fatal to Defendant Harris's citation is this passage from the decision – ""...had Peterson challenged the Denver ordinance, he may have obtained a ruling that allows him to carry a firearm openly while maintaining the state's restrictions on concealed carry. The specific constitutional challenge thus delineates the proper form of relief and clarifies the particular

14

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Second Amendment restriction that is before us." *Peterson v. Martinez*, Court of Appeals, 10th Circuit 2013 slip op. at pg 20.  Colorado does not prohibit the Open Carry of handguns or long guns in public.

*Piszczatoski v. Filko*, 840 F. Supp. 2d 813 (D. N.J. 2012) is another failed concealed carry lawsuit out of New Jersey in which the plaintiffs did not challenge New Jersey's 1965 ban on openly carried handguns.  Instead, the plaintiffs sought an unrestricted handgun carry license which would have permitted them to carry a loaded, concealed handgun in public.  A decision in the case is now pending before the 3rd Circuit Court of Appeals and has since been renamed to Drake v. Filko (case no. 12-1150). Unlike California, New Jersey does not prohibit the unloaded Open Carry of long guns in incorporated cities (see N.J. Rev. Stat. § 2C:39-5c).

*Richards v. County of Yolo*, 821 F. Supp. 2d 1169 (E.D. Cal. 2011) is another failed concealed carry case which supports Plaintiff's Open Carry claims. It is nonsensical for Defendant Harris to argue that the manner of carrying a firearm in public, is orbiter dicta in *Heller* while at the same time citing numerous cases which came to the opposite conclusion that the time, manner and place restrictions, as well as the other presumptively lawful regulations are binding.

Defendant Harris' citations affirming Heller's presumptively lawful prohibitions serve only to support Plaintiff's motion: *United States v. Booker*, 644 F.3d 12, 25 n.17 (1st Cir. 2011) – misdemeanor crime of domestic violence, *United States v. Barton*, 633 F.3d 168, 170 (3d Cir. 2011) – convicted felon; *United States v. Staten*, 666 F.3d 154, 158 (4th Cir. 2011) - misdemeanor crime of domestic violence; *United States v. Greeno*, 679 F.3d 510, 517 (6th Cir. 2012) "right to keep and bear arms is for lawful purposes" and not for dealing in illegal drugs; *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) misdemeanor crime of domestic violence; *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2012) possessing firearms while subject to a domestic protection order.  Despite Defendant Harris' "cf. *Williams*" these courts had no difficulty in concluding that

15

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

the language in *Heller* at 2816-2817 (section III) is not orbiter but is indeed binding. She makes no logical argument to support her claim that the scope of the Second Amendment is limited to the home. That was the same failed argument made in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) where Vongxay argued that the Heller decision was orbiter dicta beyond the right to keep a fully functional loaded firearm in one's home (*Heller* at 2821-2822). The 9th Circuit disagreed and cited "Heller, 128 S.Ct. at 2816-2817... felons are categorically different from the individuals who have a fundamental right to bear arms..." *Vongxay* at 1115 and went on to say, in the same section, that ""[l]egal rulings in a prior opinion are applicable to future cases only to the degree one can ascertain from the opinion itself the reach of the ruling."" No Federal Appellate court has concluded from the Heller opinion itself that the reach of the decision is limited to the confines of the interior of one's home and California State Courts certainly have not. The US Supreme Court has taken rational review off the table and even the California courts have applied intermediate scrutiny to the presumptively lawful prohibition on the concealed carry of weapons (knives) because the state did not prohibit their Open Carry. *Mitchell* at 1374.

   *United States v. Black*, 707 F.3d 531 (4th Cir. 2013) supports Plaintiff's case against California Penal Code section 25850(b). *US v. Fuentes*, 105 F. 3d 487 - Court of Appeals, 9th Circuit 1997 clearly states that "Mere refusal to consent to a stop or search does not give rise to reasonable suspicion or probable cause. People do not have to voluntarily give up their privacy or freedom of movement, on pain of justifying forcible deprivation of those same liberties if they refuse." *Black* at 490.

   "The thrust of *Black* is that "where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention."" *Woollard v. Gallagher* ___ F.3d ___, No. 12-1437, 2013

16

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

WL 1150575 (4th Cir. Mar. 21, 2013) at footnote #5. The combination of *Black* and *Fuentes* invalidates PC 25850(b) facially and as-applied.

United States v. *Mahin*, 668 F.3d 119, 123-24 (4th Cir. 2012) made no opinion on the carrying of firearms, loaded or unloaded, openly or concealed, inside or outside of the home. The case involved a person possessing a firearm or ammunition while subject to a domestic violence protective order in violation of 18 U.S.C. § 922(g)(8). In this particular case, the crime occurred inside of a public shooting range where Mahin rented a gun and purchased two boxes of ammunition. The 7th Circuit in *Ezell* held that Chicago's ban on shooting ranges was a violation of the Second Amendment. *Mahin*, like United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011) ducked the question entirely as have all of the 4th Circuit Court of Appeals decisions, most recently in *Woollard* where the court agreed with much of the Second Circuit's recent decision in *Kachalsky* requiring an applicant to demonstrate "proper cause" — i.e., a special need for self-protection — as a prerequisite for a license to carry a ***concealed*** handgun in public. Prohibitions on concealed carry are presumptively lawful, prohibitions on Open Carry are not. *Kachalsky* based its decision on New York's "duty to retreat." There is no such duty to retreat in California and California recognizes the right of even convicted felons to defend themselves with loaded firearms when they have a reasonable belief that they are in danger. Self-defense is an enumerated, fundamental right in the California Constitution – Article I, Section 1. Maryland, unlike California, does not require that a person's private property, residential or commercial, be fully enclosed by a sufficiently tall fence to openly carry a loaded handgun on his property. Neither does Maryland prohibit the Open Carry of loaded long guns in public.

United States v. *Masciandaro*, 638 F.3d 458 (4th Cir. 2011) ducked the Second Amendment question of whether or not a national park was a "sensitive place" under *Heller*. Instead it noted that the National Park Service did not

17

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Case 2:11-cv-09916-SSS-KES    Document 100    Filed 05/07/13    Page 25 of 33    Page
ID #:1522

prohibit the loaded open carry of firearms or the possession of unloaded firearms in a motor vehicle on its parklands and therefore applied intermediate scrutiny to the possession of a loaded, concealed handgun in a motor vehicle inside of the park.

Plaintiff does not challenge California's regulations on the possession of firearms in its state parks, or in any government building or even within 1,000 feet of a K-12 public or private school.

*Young v. Hawaii*, ___ F.Supp.2d ___, Civ. No. 12-00336 HG BMK, 2012 WL 5987588 (D. Haw. Nov. 29, 2012) is Defendant Harris' first, and only, citation to support her proposition that the Heller decision, instead of affirming the right to openly carry a loaded firearm in non-sensitive public places, contracted the Second Amendment right to one's home. Young seeks a permit to carry a concealed or unconcealed weapon. Plaintiff does not seek to carry a concealed weapon and he argues that no permit/license is required for him to exercise his Second Amendment right to Open Carry in non-sensitive public places. His alternative position in his SAC is that if the courts conclude that a permit/license is required then he has a liberty and property interest in the permit. Plaintiff's preliminary injunction does not seek the issuance of a permit/license and the injunction would have no effect on the states ability to regulate the carrying of concealed weapons. Concealed carry is simply not at issue in this case or in the preliminary injunction.

Most significantly is that the *Young* Court relied on Justice Breyer's dissent (*Heller* at 2869) which in turned referenced Justice Stevens' dissent (*Heller* at 2801) in holding that the "core" right is that of "law-abiding, responsible citizens to use arms in defense of hearth and home." The Heller Court said no such thing. What the Heller Court said was that the "core lawful purpose" is "self-defense" *Heller* at 2818. Directly to the point "Two years ago, in *District of Columbia v. Heller*, 554 U.S. ___, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, **and** we struck down a District of Columbia law that banned the

18

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

possession of handguns in the home." *McDonald v. City of Chicago*, ___ U.S. ___ [130 S.Ct. 3020; 177 L.Ed.2d 894] (2010) at 3026 (emphasis added).

"And" is a simple grammatical construct understood even by small children. The Heller decision did two things: (1) it held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense and (2) it struck down a District of Columbia law that banned the possession of handguns in the home.

Majority decisions are the decisions that are binding, the dissents in *Heller* are not binding. The Young Court erred in applying the dissents in *Heller* to its decision. See *US v. Potter*, 630 F. 3d 1260 - Court of Appeals, 9th Circuit 2011 "Not surprisingly, the plurality opinion in the Court's later Second Amendment case described the "central holding in Heller" as "the Second Amendment protects a personal right to keep and bear arms for lawful purposes." *McDonald v. City of Chicago*, ___ U.S. ___, 130 S.Ct. 3020, 3044, 177 L.Ed.2d 894 (2010) (plurality)" *Potter* at 1261. "In Heller, the Supreme Court struck down the District of Columbia's ban on handgun possession, concluding that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *US v. Henry*, 688 F. 3d 637 - Court of Appeals, 9th Circuit 2012 at 639-640.

## XI.    THERE ARE NO MEANINGFUL EXCEPTIONS TO CALIFORNIA'S BANS ON OPEN CARRY

Defendant Harris' claims that Plaintiff is "authorized" to carry a firearm in public if he reasonably believes that he is in "immediate, grave danger" while at the same time failing to note that he is prevented from openly carrying a firearm, loaded or unloaded, until he is in grave immediate danger. She also fails to note that this exception is an affirmative defense which does not prohibit the arrest, prosecution, conviction, fine and imprisonment of Plaintiff. Plaintiff is currently being prosecuted for violating a Redondo Beach municipal ordinance which bans

19

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

the possession of ALL weapons in ALL public places. The prosecution has conceded that its municipal ordinance is unconstitutional under state law (preempted) but complained that it would be unfair to dismiss the criminal charge against him because Plaintiff cannot be prosecuted for violating California's ban on openly carrying an unloaded long gun in public because, at the time of his protest, it was legal for him to do so. The judge agreed and denied the motion to dismiss the criminal case. Plaintiff is being prosecuted for violating a municipal ordinance which all parties agree is unconstitutional. Plaintiff's public defender refuses to file any motions to dismiss based on his Federal claims and, for that matter, any other motion to dismiss based on any Federal or State law claim. His public defender's lone motion to dismiss based on state preemption is all he is going to file. Plaintiff now goes before a jury where his public defender will likewise provide no effective defense. An affirmative defense is no defense in a California Court and the exercise of an enumerated, fundamental right cannot be left to prosecutors, judges and juries in criminal cases.

Many of the "exceptions" that Defendant Harris cites were also present in Illinois: security guards, police officers and retired police officers, private investigators, members of the military, hunters, target shooters, persons engaged in "lawful business" who possess a loaded firearm on business premises and persons who possess a loaded firearm on their own private property. California, unlike Illinois, penalizes the possession of a firearm on private property unless it is fully enclosed by a fence sufficiently tall to deter the public from entering the property. California law broadly defines "public place" when it comes to firearms and Plaintiff may only openly carry an unloaded firearm in a public, commercial place with the permission of the owner and provided he travel directly to and from a place where it is legal for him to openly carry an unloaded firearm. Plaintiff violates the laws at issue in this motion the moment he steps outside his door onto his own private property. Even if it were legal for Plaintiff to openly carry an

20

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

unloaded firearm on his own property, he would be prevented from so much as stepping one foot onto commercial property which prohibits him from possessing his firearm to get to a commercial business which allows him to openly carry an unloaded firearm; such as the Starbucks inside the Galleria Mall in Redondo Beach.  Starbucks permits the possession of firearms on its property, the ownership of the Galleria Mall does not permit him to cross its property to get there.

Despite these exceptions, the 7th Circuit in *Moore* struck down Illinois' bans on carrying loaded firearms in public, so should this court.

Defendant Harris proffers that Plaintiff's right to exercise his Second Amendment right to Openly Carry a firearm in public is predicated upon the decision of a prosecutor, judge and jury each time Plaintiff is arrested for exercising his enumerated, fundamental right to openly carry a firearm, loaded or unloaded, on his own residential property or in public.  She contends that this does not place a "substantial burden" on his Second Amendment right.  Stalin would have agreed, Plaintiff prays that this court does not.

## XII. EVEN IF THE VACATED SUBSTANTIAL BURDEN TEST IN NORDYKE WERE APPLICABLE, CALIFORNIA'S BANS ON OPEN CARRY ARE A SUBSTANTIAL BURDEN

The 9th Circuit Court of Appeals in *Nordyke v. King*, 681 F. 3d 1041 - Court of Appeals, 9th Circuit 2012 (en banc) declined to adopt the substantial burden test Defendant Harris proposes citing *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012), there simply weren't enough votes.  Had there been enough votes, here is a simple scenario which proves that California's bans on openly carried firearms is a substantial burden to Plaintiff.  Plaintiff is subject to arrest, prosecution, fine and imprisonment if he so much as steps outside the door of his private residential property openly carrying a loaded or unloaded firearm. Likewise if he walks around the block, walks to the corner market, walks or drives the few blocks to the nearby supermarket, walks or drives to his bank's ATM, walks or drives to visit

21

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1  relatives, or even arms himself to defend himself from "grave, immediate danger"
2  on his own private residential property or in public because doing so is only an
3  affirmative defense which Plaintiff's own, personal experience in the California
4  criminal justice system proves is no defense.

5        Neither the right to marry nor the right to vote is as fundamental as the right
6  to defend one's life from an attacker.  The right to self-defense is the most
7  fundamental right.  A corpse has no rights.

8        This court should follow the Supreme Courts reasoning in *Heller* and
9  *McDonald*.  The District of Columbia did not ban all handgun possession in the
10  home.  Nonetheless, it overturned the city's ban without having to articulate a
11  standard of review.

12        Similarly, this court should heed Judge Posner's admonitions in *Moore*.

13        "We are disinclined to engage in another round of historical analysis to
14  determine whether eighteenth-century America understood the Second
15  Amendment to include a right to bear guns outside the home. The Supreme Court
16  has decided that the amendment confers a right to bear arms for self-defense,
17  which is as important outside the home as inside." *Moore* at 942.

18        "Both *Heller* and *McDonald* do say that "the need for defense of self,
19  family, and property is most acute" in the home, id. at 3036 (emphasis added); 554
20  U.S. at 628, 128 S.Ct. 2783, but that doesn't mean it is not acute outside the home.
21  Heller repeatedly invokes a broader Second Amendment right than the right to
22  have a gun in one's home, as when it says that the amendment "guarantee[s] the
23  individual right to possess and carry weapons in case of confrontation." 554 U.S. at
24  592, 128 S.Ct. 2783. Confrontations are not limited to the home." *Moore* at 935-
25  936. "...when a state bans guns merely in particular places, such as public schools,
26  a person can preserve an undiminished right of self-defense by not entering those
27  places; since that's a lesser burden, the state doesn't need to prove so strong a need.
28  Similarly, the state can prevail with less evidence when, as in *Skoien*, guns are

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1  forbidden to a class of persons who present a higher than average risk of misusing
2  a gun. See also *Ezell v. City of Chicago*, supra, 651 F.3d at 708. And empirical
3  evidence of a public safety concern can be dispensed with altogether when the ban
4  is limited to obviously dangerous persons such as felons and the mentally ill.
5  *District of Columbia v. Heller*, supra, 554 U.S. at 626, 128 S.Ct. 2783. Illinois has
6  lots of options for protecting its people from being shot without having to eliminate
7  all possibility of armed self-defense in public." *Moore* at 940.

8        Alternately, this court should adopt the two-step approach from the 3rd, 4th,
9  5th, 6th, 7th, 10th and D.C., Circuit Courts of Appeal. "...the first step is to
10  determine whether the challenged law impinges upon a right protected by the
11  Second Amendment — that is, whether the law regulates conduct that falls within
12  the scope of the Second Amendment's guarantee; the second step is to determine
13  whether to apply intermediate or strict scrutiny to the law, and then to determine
14  whether the law survives the proper level of scrutiny. See *United States v. Greeno*,
15  679 F.3d 510, 518 (6th Cir.2012); *Heller v. District of Columbia*, 670 F.3d 1244,
16  1252 (D.C.Cir.2011) (*Heller II*); *Ezell v. City of Chicago*, 651 F.3d 684, 701-04
17  (7th Cir.2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir.2010); *United*
18  *States v. Reese*, 627 F.3d 792, 800-01 (10th Cir.2010) *United States v.*
19  *Marzzarella*, 614 F.3d 85, 89 (3d Cir.2010). *NATIONAL RIFLE ASS'N v. BUREAU*
20  *OF ALCOHOL, TOBACCO*, 700 F. 3d 185 - Court of Appeals, 5th Circuit (2012).

21  **XIII.  DEFENDANT HARRIS' THEATRE HORRIBLES**

22        Beginning on page 17 line 23 through page 19, line 21 Defendant Harris
23  imagines a post-apocalyptic world of mayhem and chaos were the right to openly
24  carry a firearm, loaded or unloaded, be restored.  Tellingly absent is any real life
25  example from any state, including California.  If Open Carry were as deadly as she
26  imagines, California, Hawaii and New Jersey would be the only populated states
27  left in the Nation.

28  **XIV.  ON THE FOURTH AMENDMENT CLAIM**

23

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

The Fourth Amendment right is not predicated on the existence of the Second Amendment right. The Fourth Amendment applies even to unlawful conduct such as that of the drug courier in *Fuentes*. There is no escaping that "Mere refusal to consent to a stop or search does not give rise to reasonable suspicion or probable cause." *Fuentes* at 490. California Penal Code section 25850(b) is facially invalid as well as as-applied.

## XV.    ON THE FOURTEENTH AMENDMENT CLAIMS AND THE VAGUENESS CLAIMS

The history of gun control in America is a history of racism and the history of California's Open Carry bans is no exception. There is no question as to the legislative intent of former Penal Code section 12031 (now partially renumbered as PC 25850). During the height of the racial unrest of the 1960s California enacted its Loaded Open Carry ban specifically to disarm African-Americans who lived predominantly in incorporated cites. The evidence is in Plaintiff's exhibits to his motion and in the legislative history of the Act. The legislative debate and sponsors of the two recently enacted Unloaded Open Carry bans leaves no doubt that they were enacted to keep the predominantly minority communities in the County of Los Angeles disarmed. If it has the effect of disarming the minority white population as well, so be it. Race is a suspect class. For this reason alone the laws are subject to strict scrutiny.

The district court in *Nordyke* held that 4,000 people bearing guns in a government building were not similarly situated to a handful of people firing blanks on the County Fairgrounds and therefore applied intermediate scrutiny.

The twenty page limit set by Judge Otero on a motion for a preliminary injunction does not allow Plaintiff to argue his motion as extensively as he would have liked. However, Defendant City of Redondo Beach makes many of the same arguments in its motion to dismiss Plaintiff's SAC. Plaintiff refers Defendant Harris and this Court to Plaintiff's Opposition to Motion to Motion by Defendant

24

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

City of Redondo Beach to Dismiss (Docket # 95). Plaintiff's arguments against the Redondo Beach weapons ban apply equally to the state statutes. Plaintiff is more than happy to supplement his motion for a preliminary injunction and/or this instant Reply to Defendant Harris' Opposition to Plaintiff's Motion for a Preliminary Injunction. Open carry licenses are not at issue in Plaintiff's motion. The California Courts themselves admit that they do not consistently define "public place" and they are split on what constitutes a loaded weapon. The laws are left to the whim of police, prosecutors, judges and juries and do not provide fair notice to the public. This is a textbook case of vagueness.

## CONCLUSION

Plaintiff opposes Defendant Harris' Opposition in its entirety. Plaintiff is more than happy to file a supplemental brief should this court so request. Plaintiff has met his burden to prove why his Motion for a Preliminary Injunction should be issued. The Court should grant Plaintiff's motion for a Preliminary Injunction. If his documented death threat and police report are dispositive, Plaintiff will provide copies, preferably under seal but openly if need be.


Dated: May 7, 2013                                    Respectfully submitted,


By: Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail:
CharlesNichols@Pykrete.info

///

25

PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **PLAINTIFF'S REPLY TO DEFENDANT KAMALA D. HARRIS'S OPPOSITION TO PLAINTIFF CHARLES NICHOLS'S MOTION FOR PRELIMINARY INJUNCTION** was served via United States Mail, postage prepaid, on this _7_, day of _May_, 2013; on the following:

KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Attorneys for Defendant California Attorney General Kamala Harris

AND

T. PETER PIERCE
LISA BOND
AARON C. O'DELL
RICHARDS WATSON & GERSHON
A Professional Corporation
355 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3101
Attorney for Defendants:
CITY OF REDONDO BEACH and DOES 1 to 10

Charles Nichols
Plaintiff, In Pro Per
Case No. CV-11-9916 SJO (SS)