KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 897-6505
  Fax:  (213) 897-1071
  E-mail: jonathan.eisenberg@doj.ca.gov
*Attorneys for Defendants California Attorney
General Kamala D. Harris*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHARLES NICHOLS,**<br><br>                                              Plaintiff,<br><br>             **v.**<br><br>**EDMUND G.  BROWN, Jr., in his official capacity as Governor of California, KAMALA D.  HARRIS, Attorney General, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,**<br><br>                                              Defendants. | CV-11-09916-SJO-(SS)<br><br>**DEFENDANT KAMALA D. HARRIS'S OPPOSITION TO PLAINTIFF CHARLES NICHOLS'S MOTION FOR PRELIMINARY INJUNCTION (FED.  R.  CIV. P.  65(A))**<br><br>Date:            N/A<br>Time:            N/A<br>Courtroom:   1 – 2d Flr.<br>Judge:          Hon. S. James Otero<br>Trial Date:    Not Set<br>Action Filed: Nov. 30, 2011 |

# TABLE OF CONTENTS

**Page**

SUMMARY OF OPPOSITION ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 2

STATUTES BEING CHALLENGED ............................................................ 3

PROCEDURAL HISTORY ............................................................................ 4

LEGAL STANDARDS FOR PRELIMINARY INJUNCTION MOTIONS ........... 4

ARGUMENT .................................................................................................... 5

    I.    Nichols Has Not Made Any Of The Showings Necessary For
        The Court To Grant Him A Preliminary Injunction ............................ 5

        A.    Nichols is unlikely to prevail on the merits in this case ............ 5

               1.    On the Second Amendment claim .................................. 5

                    a.    There is no general right to carry firearms
                            openly in public places ........................................ 5

                        (1)    U.S. Supreme Court cases ......................... 5

                        (2)    U.S. Court Of Appeals cases ...................... 6

                    b.    The three challenged laws, even if they
                            implicate the Second Amendment, are
                            constitutional ............................................................. 9

                        (1)    Under the substantial-burden test ............... 9

                        (2)    Under intermediate scrutiny ...................... 12

               2.    On the Fourth Amendment claim ................................. 15

               3.    On the Fourteenth Amendment claim ........................... 15

                4.    On the "vagueness" claim .............................................. 16

        B.    Nichols has not been irreparably harmed by the existence
            or enforcement of the laws in question .................................. 17

        C.    The balance of harms tips decidedly against granting
            injunctive relief here ............................................................... 18

        D.    The public interest is served by denying injunctive relief
            here ........................................................................................... 19

    II.    Nichols's Facial Challenge To The Three California Firearms
        Laws Is Disfavored ............................................................................ 19

CONCLUSION ............................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alliance for the Wild Rockies v. Cottrell*
  632 F.3d 1127 (9th Cir. 2011).................................................................. 5

*Burdick v. Takushi*
  504 U.S. 428 [112 S. Ct. 2059; 119 L.Ed.2d 245] (1992) ..................... 10

*Coalition for Econ. Equity v. Wilson*
  122 F.3d 718 (9th Cir. 1997)................................................................... 19

*Cupolo v. Bay Area Rapid Transit*
  5 F.Supp.2d 1078 (N.D. Cal. 1997) ....................................................... 19

*District of Columbia v. Heller*
  554 U.S. 570 [128 S. Ct. 2783; 171 L.Ed.2d 637] (2008) ............... 5-10, 13

*Emily's List v. Fed. Election Comm'n*
  362 F.Supp.2d 43 (D.D.C. 2005) ........................................................... 18

*Ezell v. City of Chicago*
  651 F.3d 684 (7th Cir. 2011)................................................................... 10

*GeorgiaCarry.Org, Inc. v. Georgia*
  687 F.3d 1244 (11th Cir. 2012)................................................................. 7

*Grayned v. City of Rockford*
  408 U.S. 104 [92 S. Ct. 2294; 33 L.Ed.2d 222] (1972) ........................ 17

*Heller v. District of Columbia*
  670 F.3d 1244 (D.C. Cir. 2011) ............................................................. 10

*Holder v. Humanitarian Law Project*
  __ U.S. __, 130 S. Ct. 2705 [177 L.Ed.2d 355] (2010) .................... 17, 18

*Kachalsky v. Cacace*
  ___ U.S. ___, 2013 WL 127127 (Apr. 15, 2013) ............................ 6, 7, 9

*Maryland v. King*
  __ U.S. __, 133 S. Ct. 1 [183 L.Ed.2d 667] (2012) .............................. 19

*Mazurek v. Armstrong*
  520 U.S. 968 [117 S. Ct. 1865; 138 L.Ed.2d 162] (1997) ...................... 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

*McDonald v. City of Chicago*
___ U.S. ___, 130 S. Ct. 3020 (2010) .............................................................................. 6, 7, 8

*Mehl v. Blanas*
U.S. Ct. of Appeals, Ninth Circuit, Case No. 08-15773 ........................................................ 9

*Moore v. Madigan*
702 F.3d 933 (2012) ............................................................................................................ 8, 9

*Nordyke v. King*
681 F.3d 1041 (9th Cir. 2012) ............................................................................................ 9, 16

*Nunn v. State*
1 Ga. 243 (1846) ..................................................................................................................... 6

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*
762 F.2d 1374 (9th Cir. 1985) ............................................................................................... 18

*People v. Flores*
169 Cal. App. 4th 568 [86 Cal. Rptr. 3d 804] (2008) ..................................................... 12, 13

*People v. Foley*
149 Cal. App. 3d Supp. 33 [197 Cal.Rptr. 533] (1983) ........................................................ 13

*Peruta v. County of San Diego*
758 F.Supp.2d 1106 (S.D. Cal. 2010) ............................................................................... 8, 12

*Peterson v. Martinez*
707 F.3d 1197 (10th Cir. 2013) ............................................................................................... 5

*Richards v. County of Yolo*
821 F.Supp.2d 1169 (E.D. Cal. 2011) ..................................................................................... 8

*Silveira v. Lockyer*
312 F.3d 1052 (9th Cir. 2002) ............................................................................................... 12

*State v. Chandler*
5 La. Ann. 489 (1850) ............................................................................................................. 6

*Thomas v. County of Los Angeles*
978 F.2d 504 (9th Cir. 1992) ................................................................................................. 19

*United States v. Black*
707 F.3d 531 (4th Cir. 2013) ................................................................................................... 7

iii

# TABLE OF AUTHORITIES
## (continued)

Page

*United States v. DeCastro*
  682 F.3d 160 (2d Cir. 2012) ........................................................... 9, 10, 11

*United States v. Mahin*
  668 F.3d 119 (4th Cir. 2012) ..................................................................... 7

*United States v. Masciandaro*
  638 F.3d 458 (4th Cir. 2011) .............................................................. 7, 10

*United States v. Marzzarella*
  614 F.3d 85 (3d Cir. 2010) ........................................................................ 17

*United States v. Nat'l Dairy Products Corp.*
  372 U.S. 29 [83 S. Ct. 594; 9 L.Ed.2d 561] (1963) ............................... 18

*United States v. Purdy*
  264 F.3d 809 (9th Cir. 2001) ..................................................................... 17

*United States v. Vongxay*
  594 F.3d 1111 (9th Cir. 2010) ..................................................................... 7

*United States v. Williams*
  553 U.S. 285 [128 S.Ct. 1830] .......................................................... 17, 18

*Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*
  455 U.S. 489 [102 S.Ct. 1186; 71 L.Ed.2d 362] (1982) ......................... 17

*Wash. State Grange v. Wash. State Republican Party*
  552 U.S. 442 [128 S. Ct. 1184; 170 L.Ed.2d 151] (2008) ...................... 20

*Williams v. State*
  10 A.3d, 1167 (Md. 2011) ........................................................................... 8

*Williamson v. Lee Optical of Okla., Inc.*
  348 U.S. 483 [75 S. Ct. 461; 99 L.Ed.2d 563] (1955) ............................ 16

*Winter v. Natural Res. Def. Council, Inc.*
  555 U.S. 7 [129 S. Ct. 365; 172 L.Ed.2d 249] (2008) ........................... 4, 5

*Woollard v. Gallagher*
  ___ F.3d ___, 2013 WL 1150575 (4th Cir. Mar. 21, 2013) ..................... 7, 9

*Young v. Hawaii*
  ___ F.Supp.2d ___, 2012 WL 5987588 (D. Haw. Nov. 29, 2012) ............. 5

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

Cal. Penal Code

§ 25850 ...................................................................... 1, 3, 4, 8, 11, 13, 14, 15-18
§ 25900 ........................................................................................................... 3
§ 26060 ........................................................................................................... 3
§ 26350 ........................................................................................ 1, 3, 4, 12, 13, 18, 19
§ 26361 ..................................................................................................... 3, 12
§ 26362 ......................................................................................................... 12
§ 26378 ......................................................................................................... 12
§ 26391 ..................................................................................................... 3, 12
§ 26400 ...................................................................................... 1, 4, 12-14, 18, 19
§ 26405 ......................................................................................................... 12
§ 26450 ........................................................................................................... 4

**CONSTITUTIONAL PROVISIONS**

U.S. Const., First Am. ........................................................................................ 17
U.S. Const., Second Am ..................................................................................... 19
U.S. Const., Fourth Am ...................................................................................... 15
U.S. Const., Fourteenth Am ......................................................................... 10, 16

**COURT RULES**

Federal Rule of Civil Procedure 65(a) ................................................................ 1

Defendant Kamala D. Harris, Attorney General of the State of California (the "Attorney General"), submits the following opposition to the April 10, 2013, motion of *Pro Se* Plaintiff Charles Nichols ("Nichols") for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a).

## SUMMARY OF OPPOSITION

Nichols seeks a preliminary injunction that would halt enforcement of three California firearms laws, effectively enabling Nichols to carry loaded or unloaded firearms openly in most public places in California.  These statutes are critical public-safety measures, and an injunction preventing their enforcement would endanger the general public, law enforcement, and the gun wielders themselves.  Because Nichols cannot satisfy *any* of the four requisite elements that the Court must consider before granting him the relief that he seeks, his motion for preliminary injunctive relief should be denied.

*First*, Nichols cannot show that the statutes (Cal.  Penal Code §§ 25850, 26350 and 26400)[1] violate any right recognized under the Second Amendment to the U.S. Constitution to possess or to carry a firearm.  The reasonable restrictions that California has placed on the carrying of firearms in public do not substantially burden Nichols's rights, and they serve important public-safety ends.  Nichols is unlikely to succeed in his quest to obtain a permanent injunction in this case.

*Second*, Nichols has not shown that he will suffer any irreparable harm in the absence of the requested relief.  Because his motion makes out a facial claim of unconstitutionality, untethered to any specific factual circumstances, Nichols's only claim of injury is the inability to exercise his alleged constitutional right.[2]  This alleged injury is insufficient for injunctive relief.  Further, Nichols's knowing

---

[1] Throughout this brief, references to "Section" shall refer to the California Penal Code, unless otherwise indicated.

[2] Nichols has alleged actual injury, the search and seizure of a firearm, based on enforcement of *municipal* laws *not* in question on the instant motion.

1

failure to seek injunctive relief for months or years (depending on the statute in question) undermines his claim of an immediate need for the statutes to be enjoined.

*Third*, the balance of harms favors the Attorney General, on behalf of the State of California and its people, which will suffer a significant injury if this Court enjoins enforcement of duly passed public-safety laws.

*Finally*, the public interest would *not* be served by striking down the challenged statutes before the State has had an opportunity to respond fully on the merits to Nichols's allegations. The significant interest in public safety constitutes an additional reason to deny Nichols's motion.

## STATEMENT OF FACTS

Nichols is waging a *pro se* legal battle to establish a broad constitutional right for people to carry firearms openly in most public places in California. As the Attorney General has argued in her motions to dismiss this case, Nichols's battle is predominantly hypothetical. Nichols's pleadings and declarations give very few particulars of how Nichols has tried to become licensed to carry or actually has carried firearms openly in public places. The instant motion is even more devoid of relevant facts.

In the original complaint in this case, Nichols asserted that, in September 2011, he received a "not so thinly veiled death threat" that made him want to carry a loaded firearm openly wherever he went in public, to protect himself if he has a chance encounter with his unnamed nemesis. (Compl., ¶15.) Nichols has never disclosed to the Attorney General any details about the two-and-a-half-year old alleged threat. Perhaps tellingly, Nichols did not bother to mention the alleged threat in the second or third complaints in this case. In the instant preliminary-injunction motion, Nichols alludes to the alleged threat, but remains vague about it.

In the second version of the complaint, Nichols recounted a story of how, in August 2010, a group of self-described open-carry activists demonstrated in Redondo Beach. These people openly carried unloaded firearms in or near a park

and a pier.  Nonetheless, Nichols did *not* carry any firearm on this occasion.  He deliberately left his firearm in his car for the duration of the protest.  (First Am. Compl., ¶¶41-56, 59-72.)  In the instant motion, Nichols makes no mention of this August 2010 event.

As Nichols relays in the second and third versions of the complaint, in May 2012, about a week prior to filing the second version of the complaint, Nichols staged an event designed to create standing for this case.  Nichols walked and stood in or near a park in Redondo Beach, openly carrying a long gun with the wrong kind of bullets taped to the outside end of the gun.  Redondo Beach police officers took Nichols's gun away from him.  And Nichols was cited and, apparently, presently is being prosecuted by a Redondo Beach city attorney for violating the beach city's *municipal* laws.  (First Am. Compl., ¶¶58, 75-81, 84-86.)  In the instant motion, Nichols makes no mention of this May 2012 event.

Problematically, Nichols's moving papers do not discuss any of these events or plans.  Nichols purports to challenge the state laws in question both facially and as applied, yet he has declined to allege any fact pattern that the Court could analyze, as the basis for ruling on the constitutionality of the laws.

## STATUTES BEING CHALLENGED

The three statutes that Nichols seeks to have preliminarily enjoined may be summarized as follows:  *one*, Section 25850, enacted in 1967, in essence restricts people from openly carrying loaded firearms in public places.[3]  Sections 25900 to 26060 contain the exemptions, including the self-defense exemption, to Section 25850.  *Two*, Section 26350, enacted in 2011, in essence restricts people from openly carrying unloaded handguns in public places.  Sections 26361 to 26391 contain the exemptions, including the self-defense exemption, to Section 26350.  *Three*, Section 26400, enacted in 2012, in essence restricts people from openly

---

[3] This law has been in effect since 1967, albeit with a different Penal Code section number before 2012.

carrying unloaded firearms *other than handguns* in public places.  Section 26450 contains the exemptions, including the self-defense exemption, to Section 26400.

## PROCEDURAL HISTORY

On November 30, 2011, Nichols filed the original complaint in the instant lawsuit.  Nichols pleaded for a preliminary injunction and a permanent injunction against enforcement of Section 25850.  However, Nichols did not move for a preliminary injunction at that time or any time in the next year-and-a-half.

On March 29, 2013, Nichols filed the second amended (and operative) complaint that for the first time in this case mentioned Section 26350 and Section 26400.  Nichols pleaded for injunctions against enforcement of Sections 25850, Section 26350, and Section 26400.

On April 10, 2013, before any defendant responded to the second amended complaint, and without having consulted or notified any defendant beforehand, Nichols noticed the instant motion for preliminary injunction.[4]

## LEGAL STANDARDS FOR PRELIMINARY INJUNCTION MOTIONS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 [117 S. Ct. 1865; 138 L.Ed.2d 162] (1997) (emphasis in original).  A plaintiff seeking a preliminary injunction must establish:  (1) that the plaintiff is likely ultimately to succeed on the merits in the case, (2) that the plaintiff is likely to suffer irreparable harm in the absence of preliminary injunctive relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 [129 S. Ct. 365; 172 L.Ed.2d 249] (2008).  Alternatively, "[a] preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance

---

[4] Nichols did not clear the hearing date (May 20, 2013), with the Attorney General.

of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted). Nonetheless, a plaintiff must make a showing of all four *Winter* factors even under the alternative sliding-scale test. *Alliance*, 632 F.3d at 1132, 1135.

## ARGUMENT

**I.    NICHOLS HAS NOT MADE ANY OF THE SHOWINGS NECESSARY FOR THE COURT TO GRANT HIM A PRELIMINARY INJUNCTION**

### A.    Nichols Is Unlikely to Prevail On The Merits In This Case

#### 1.    On The Second Amendment Claim

##### a.    There Is No General Right To Carry Firearms Openly In Public Places

If there is no Second Amendment right to carry firearms openly in public places, then this Court, *ipso facto*, has no cause to enjoin, even preliminarily, the three laws in question for allegedly infringing that non-existent right. *Peterson v. Martinez*, 707 F.3d 1197, 1208 (10th Cir. 2013); *Young v. Hawaii*, ___ F.Supp.2d ___, ___, 2012 WL 5987588 at *11 (D. Haw. Nov. 29, 2012). As will be shown below, there is no such established right, meaning that the Court should not enter the preliminary injunction that Nichols prays for.

#### (1)    U.S. Supreme Court Cases

The U.S. Supreme Court has not held that an individual person has a Second Amendment right to carry firearms openly in public. *District of Columbia v. Heller*, 554 U.S. 570, 635 [128 S. Ct. 2783; 171 L.Ed.2d 637] (2008) (conferring limited right "for law-abiding responsible citizens to use arms *in defense of hearth and home*" [emphasis added]). In *Heller*, the Supreme Court deemed presumptively *lawful* "laws forbidding the carrying of firearms in sensitive places…" *Id.* at 625-27. But *Heller* disavowed "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 628.

Although Nichols cites a passage in *Heller* discussing two 19th-century state-court opinions, *Nunn v. State*, 1 Ga. 243 (1846), and *State v. Chandler*, 5 La. Ann.

489 (1850), striking down open-carry bans (in part because it is supposedly "manly" for people to carry firearms openly as opposed to concealed (*Chandler*, 5 La. Ann. at 490)) (P.I. Mtn. Brief at 6), *Heller* did *not* adopt the holdings of those two long-ago cases.  *Heller* cited the cases in trying to prove that "[m]any early-19th century state cases indicated that the Second Amendment right to bear arms was an individual right unconnected to militia service, though subject to certain restrictions."  *Heller*, 554 U.S. at 611.

In *McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020, 3044 (2010), the Supreme Court reiterated that "our central holding in *Heller* [is] that the Second Amendment protects the personal right to keep and bear arms for lawful purposes, *most notably for self-defense within the home*" (emphasis added).  "State and local experimentation with reasonable firearms regulations will continue under the Second Amendment."  *Id*., 130 S. Ct. at 3046 (quotation marks omitted).

In sum, nothing in *Heller* or *McDonald* indicates that the Supreme Court will recognize an unlicensed, open-carry right as Nichols desires.  And, recently, the Supreme Court denied a petition for a writ of certiorari in a case that could have afforded the high court an opportunity to decide the open-carry question.  *Kachalsky v. Cacace*, ___ U.S. ___, 2013 WL 127127 (Apr. 15, 2013).

### (2)   U.S. Court of Appeals Cases

Like the Supreme Court, the U.S. Court of Appeals for the Ninth Circuit has never held that an individual person has a Second Amendment right to carry firearms openly in public places.  Instead, the Ninth Circuit has interpreted Supreme Court jurisprudence as conferring "the right to register and keep a loaded firearm in [the] home for self-defense, provided [the person] was 'not disqualified from the exercise of Second Amendment rights.'"  *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010), citing *Heller*, 554 U.S. at 635.

And the *overwhelming* majority of the other federal appellate courts that have considered the open-carry question (or a related question) have interpreted *Heller*

6

and *McDonald* as recognizing an individual-person right to keep an operable handgun in the home for self-defense. For example, in *Woollard v. Gallagher*, ___ F.3d ___, 2013 WL 1150575 (4th Cir. Mar. 21, 2013), the Fourth Circuit criticized the U.S. District Court, District of Maryland, for making a "trailblazing pronouncement that the Second Amendment right to keep and bear arms for the purpose of self-defense extends outside the home…" (*id.*, * 1) and for "br[eaking] ground that our superiors have not tread, proclaiming that the Second Amendment right…of individuals to possess and carry firearms in case of confrontation [] is a right that extends beyond the home." (*Id.*, *4.)[5]

The Second Circuit has also declined to find the broad right claimed by Nichols. See *Kachalsky*, 701 F.3d 81, 89 (2012). Other circuit-court decisions similarly express doubt that *Heller* and *McDonald* created an individual right to carry weapons openly outside the home. See, e.g., *United States v. Mahin*, 668 F.3d 119, 123-24 (4th Cir. 2012) (declining criminal defendant's invitation to "recognize that Second Amendment protections apply outside the home…"); *United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011) ("[A] considerable degree of uncertainty remains as to the scope of [the *Heller*] right beyond the home…"); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir. 2012) (*Heller* "went to great lengths to emphasize the special place that the home— an individual's private property—occupies in our society"); cf. *Williams v. State*, 10 A.3d 1167, 1177 (Md. 2011) ("If the Supreme Court…meant its holding to extend beyond home possession, it will need to say so more plainly").[6]

---

[5] *Woollard* also clarified that another decision issued by the same circuit, *United States v. Black*, 707 F.3d 531 (4th Cir. 2013), does *not* hold that the Second Amendment has force outside the home. *Woollard*, 2013 WL 115075 at *6 n.5.

[6] See also, e.g., *Richards v. County of Yolo*, 821 F.Supp.2d 1169, 1174 (E.D. Cal. 2011) (Second Amendment "does not create a fundamental right to carry a concealed weapon in public"); and *Peruta v. County of San Diego*, 758 F.Supp.2d 1106, 1114 (S.D. Cal. 2010) ("declin[ing] to assume that" Section 25850 "places an unlawful burden on the right to carry a firearm for self-defense").

1    These decisions reveal the trend of legal authority, that *Heller* and *McDonald*

2    should not be extrapolated to confer a broad right openly to carry a weapon, loaded

3    or unloaded, in public.  The Court should thus find that Nichols is unlikely to

4    succeed in establishing that the challenged California laws are facially invalid.

5    Nichols, for his part, ignores this legal authority and spends much of his brief

6    quoting from a split (2-1) Seventh Circuit opinion, *Moore v. Madigan*, 702 F.3d

7    933 (2012), which held, "A right to bear arms thus implies a right to carry a loaded

8    gun outside the home."  *Id.* at 936.  Despite that bold pronouncement, *Moore* is

9    unhelpful to Nichols.  *Moore* construed a strict Illinois law that broadly forbade

10   carrying any loaded or unloaded firearms, i.e., "[a] blanket prohibition on carrying

11   a gun in public."  *Id.* at 934, 940.  "Remarkably, Illinois is the *only* state that

12   maintains a flat ban on carrying ready-to-use guns outside the home…"  *Id.*

13   (emphasis in original).  There were no concealed-carry licenses available in Illinois.

14   *Id.*  In this important way, the *Moore* case contrasts with the present case, because,

15   as Nichols acknowledges, California has a comprehensive statutory scheme by

16   which individual people may apply for and receive concealed-carry weapons

17   permits and, in some counties, open-carry permits.  (See § 26150, *et eq.*)  *Moore* is

18   simply off point.

19   Even if this Court were to decide that *Moore* is factually close enough to

20   Nichols's case to be instructive, the Court should not choose to follow *Moore*'s

21   stark Second Amendment pronouncement, which the Supreme Court has not

22   endorsed.  Although both the majority and the dissent in *Heller* grounded their

23   analyses of the Second Amendment in history, specifically the beliefs of 18th-

24   century Americans about gun ownership and use, the majority in *Moore*

25   disregarded the historical evidence presented in the case.  702 F.3d at 935.  As the

26   *Moore* dissent pointed out, the majority should have considered this evidence, to be

27   true to *Heller*'s analytical approach.  *Moore*, 702 F.3d at 943 (Williams, J.,

28   dissenting).  That evidence, described at pages 943 to 946 of *Moore* and in

8

*Kachalsky*, 701 F.3d at 84-85, 89-91, 94-97, strongly suggests that Colonial

Americans did *not* believe that people had a right to carry firearms openly in public.

Thus, *Moore* is not sound authority for a right to carry a firearm openly in public.

The Court need go no further before deciding to deny Nichols's preliminary-

injunction motion, because he has not shown that he is likely to establish that any

recognized right of his has been infringed. *Woollard*, 2013 WL 1150575 at *6.

### b.  The Three Challenged Laws, Even If They Implicate The Second Amendment, Are Constitutional

### (1)  Under The Substantial-Burden Test

The Supreme Court has neither marked the outer bounds of what conduct the

Second Amendment protects (*Heller*, 554 U.S. at 635) nor defined the standard of

review that applies to laws regulating conduct within the Second Amendment's

scope. *Id.* at 628, 634. Nor has the Ninth Circuit. *Nordyke v. King*, 681 F.3d 1041,

1044 (9th Cir. 2012). (The Ninth Circuit may do so in the pending case *Mehl v.*

*Blanas*, No. 08-15773.)

The Attorney General urges this Court to adopt the "substantial-burden" test

articulated in *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012). In *DeCastro*,

the Second Circuit holds that "heightened scrutiny is appropriate only as to those

regulations that substantially burden the Second Amendment." *Id.* at 164.[7] The

*DeCastro* Court reads *Heller* to mean that "heightened scrutiny is triggered only by

those restrictions that…operate as a substantial burden on the ability of law-abiding

citizens to possess and use a firearm for self-defense (or for other lawful

purposes)." *DeCastro*, 682 F.3d at 166. *DeCastro* emphasizes that its approach is

consistent with that of other circuit courts, which have endorsed adjusting the

---

[7] Nichols argues that "at minimum, strict scrutiny is required." (P.I. Mtn. Brief at 14.) Nichols offers no case-law support for using that standard here. The Attorney General is aware of none.

1  degree of scrutiny based on the degree of burden on the Second Amendment right

2  and the extent to which the regulation impinges on the "core" of the right. *Id.*

3  The *DeCastro* substantial-burden test accommodates *Heller*'s caution that the

4  scope of the Second Amendment right is not unlimited, as well as *Heller*'s

5  recognition of the many and varied forms of valid firearms regulations that have

6  existed throughout our country's history (such as concealed weapons prohibitions,

7  storage laws, and felon-possession prohibitions). *Heller*, 554 U.S. at 626-27 & n.

8  26, 632. A similar threshold showing is needed to trigger heightened scrutiny of

9  laws alleged to infringe other fundamental constitutional rights. *Id.*, 681 F.3d at

10 167. For example, the right to vote is fundamental, but "the rigorousness of our

11 inquiry into the propriety of a state election law depends upon the extent to which a

12 challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v.*

13 *Takushi*, 504 U.S. 428, 434 [112 S. Ct. 2059; 119 L.Ed.2d 245] (1992).

14 Other circuit courts have joined *DeCastro* in holding that courts must consider

15 the severity of the burden on Second Amendment rights in deciding what level of

16 scrutiny to apply. See, e.g., *Heller v. District of Columbia*, 670 F.3d 1244, 1261,

17 1252 (D.C. Cir. 2011); *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011);

18 *Masciandaro*, 638 F.3d at 470. In the absence of such a severe burden, lenient

19 rational-basis review should be applied. *DeCastro*, 682 F.3d at 166-67.

20 This Court should take a similar approach and apply a substantial-burden test

21 like the one used in *DeCastro*.

22 California's open-carry laws do not trigger heightened scrutiny because they

23 do not substantially burden the Second Amendment right to possess a handgun in

24 the home for self-defense. As a California appellate court has explained:

25 Section [25850] prohibits a person from "carr[ying] a loaded firearm on

26 his or her person...while in any public place or on any public street."

27 The statute contains numerous exceptions. There are exceptions for

28 security guards, police officers and retired police officers, private

1  investigators, members of the military, hunters, target shooters, persons

2  engaged in "lawful business" who possess a loaded firearm on business

3  premises and persons who possess a loaded firearm on their own private

4  property. A person otherwise authorized to carry a firearm is also

5  permitted to carry a loaded firearm in a public place if the person

6  "reasonably believes that the person or property of himself or herself or

7  of another is in immediate, grave danger and that the carrying of the

8  weapon is necessary for the preservation of that person or property."

9  Another exception is made for a person who "reasonably believes that

10  he or she is in grave danger because of circumstances forming the basis

11  of a current restraining order issued by a court against another person or

12  persons who has or have been found to pose a threat to his or her life or

13  safety." Finally, the statute makes clear that "[n]othing in this section

14  shall prevent any person from having a loaded weapon, if it is otherwise

15  lawful, at his or her place of residence, including any temporary

16  residence or campsite."

17  [G]iven the exceptions for self-defense (both inside and outside the

18  home), there can be no claim that [S]ection [25850] in any way

19  precludes the use "of handguns held and used for self-defense in the

20  home."

21  *People v. Flores*, 169 Cal. App. 4th 568, 576-77 [86 Cal. Rptr. 3d 804] (2008)

22  (emphasis in original; some citations and internal punctuation omitted; obsolete

23  Penal Code section number references updated). Section 26350 and Section 26400

24  contain essentially the same exceptions (§§ 26361-26391, 26405), including self-

25  defense exceptions. (§§ 26362, 26378, 26405, subds. (d), (f) and (u)).

26  As can be seen, all three laws are carefully tailored to achieve their ends, and

27  do not substantially burden Second Amendment rights. Therefore, the Court should

28  apply rational-basis review to the laws. Under this form of scrutiny, a legislative

11

1 classification will be upheld if it is rationally related to a legitimate government

2 interest. *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002). In the present

3 case, California's open-carry laws are rationally related to the legitimate

4 government interest in public safety. The California Legislature could have

5 rationally determined that restricting people from carrying loaded (or unloaded)

6 firearms openly in public places would increase public safety.

### (2)   Under Intermediate Scrutiny

8     The Ninth Circuit has *not* adopted an "intermediate-scrutiny" standard

9 applicable to Second Amendment. But even if this Court were to determine that

10 intermediate scrutiny is the appropriate standard of review here, California's open-

11 carry laws would survive that level of scrutiny.

12     "[I]ntermediate scrutiny requires [1] the asserted governmental end to be more

13 than just legitimate; it must be either 'significant,' 'substantial,' or 'important,' and

14 it requires [2] the 'fit between the challenged regulation and the asserted objective

15 be reasonable, [but] not perfect.'" *Peruta*, 758 F.Supp.2d at 1117, quoting *United

16 States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

17     As to the first prong of the substantial-interest test, the governmental objective,

18 there can be no doubt that California's interest in restricting the open carry of

19 loaded firearms (per Section 25850) is significant, substantial, and/or important.

20     [S]ection [25850] is narrowly tailored to reduce the incidence of

21     unlawful *public* shootings, while at the same time respecting the need

22     for persons to have access to firearms for lawful purposes, including

23     self-defense. (See *People v. Foley* (1983) 197 Cal. Rptr. 533, 149 Cal.

24     App. 3d Supp. 33, 39 ["The primary purpose of the Weapons Control

25     Law is to control the threat to public safety in the indiscriminate

26     possession and carrying about of concealed and loaded weapons"].)

27     Consequently, [S]ection [25850] does not burden the core Second

28     Amendment right announced in *Heller* – "the right of law-abiding,

responsible citizens to use arms in defense of hearth and home" – to any

significant degree.  (*Heller, supra,* 128 S. Ct. at p. 2831.)

*Flores*, 169 Cal. App. 4th at 577 (emphasis in original).  The two unloaded-open-carry laws have related significant, substantial, and/or important justifications, as revealed in the following representative excerpts from the legislative history (Assembly Floor Analyses, Assembly Appropriations) of the two newer laws:

> [About Section 26350 and 26400 (handguns and long guns)]  The absence of a prohibition on "open carry" has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals [and] causing issues for law enforcement.
>
> Open carry creates a potentially dangerous situation.  In most cases where a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and armed.
>
> In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal.  In this situation, the practice of "open carry" creates an unsafe environment for all parties involved:  the officer, the gun-carrying individual, and [] any other individuals nearby as well.
>
> Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways.[8]

---

[8] Decl. of Jonathan M. Eisenberg in Opp. to Plf. Charles Nichols's Mtn. for a Prelim. Injunction ("Eisenberg Decl."), Exh. A at AG0021 (Assembly Floor Analysis), Exh. B at AG0092 (Assembly Floor Analysis; identical text as found in AG0021), submitted herewith.  *Id.* at AG0032-33, AG0044-47, AG0051, AG0053, and AG0059-60, AG0101, AG0114, AG0126-31, AG0135-36, and AG0138.  The Attorney General respectfully requests that, under Federal Rule of Evidence 201,

(continued…)

[About Section 26400 (long guns)]  We continue to believe that carrying exposed firearms in crowded public places with ammunition readily available is inappropriate and risky behavior that threatens public safety and strains law enforcement resources.  The carrying of exposed rifles and shotguns in urban settings, such as shopping malls and restaurants, is particularly inappropriate and threatening.

Those who carry exposed long guns in public are not required to undergo any special screening or clearance.  In fact, there is no verification process to ensure that a person is not prohibited from possessing firearms.  People who carry long guns in crowded public places may lack the skill, experience, judgment or moral character for safely carrying an exposed weapon, particularly when faced with a confrontational situation.

The public display and flaunting of long guns in shopping malls and restaurants puts employees and customers at risk of an accidental or vigilante-type incident where innocent bystanders could get shot.  A member of the public, when confronted by a person openly carrying a long gun, has no way of knowing the intentions of that person.  Caution would dictate that the incident be reported to police.  Police, in turn, must respond and assume that the firearm is loaded until determined otherwise.  In this potentially life threatening situation, law enforcement may understandably take lethal action to protect the public and themselves from a perceived armed threat.[9]

As can be seen, all three laws are well-justified and easily meet the first part of the intermediate-scrutiny test.

_____

(…continued)
the Court take judicial notice of the legislative history of Section 26350 and Section 26400, contained in the Eisenberg declaration.
[9] Eisenberg Decl., Exh. B at AG0143-44 (Assembly Appropriations).

As to the second prong, the "fit," the three laws' many, detailed, thoughtful exceptions, summarized above, narrowly tailor the laws to ban only unjustifiable, dangerous open carrying, while permitting justified open carrying.  The fit between the laws and their objectives is more than reasonable.

Therefore, even if the Court were to apply an intermediate scrutiny test, each of the three laws would survive that standard of review.

### 2.    On The Fourth Amendment Claim

Nichols's Fourth Amendment claim rises or falls with his Second Amendment claim.  If Nichols has not stated a claim for relief under the Second Amendment, his objection to enforcement of Section 25850(b) must fail as well.  Given that, as shown above, Nichols has *not* established that the open-carry statutes contradict individual-person rights under the Second Amendment, then Nichols has no basis to object that Section 25850(b) is facially invalid.  A peace officer would have reasonable, legitimate grounds under Section 25850(a) to check a firearm openly carried in public, to determine if it is loaded, etc.  § 25850, subd. (b).

### 3.    On The Fourteenth Amendment Claim

Nichols perceives a Fourteenth Amendment Equal Protection Clause violation herein because, allegedly, the open-carry laws are interpreted and applied differently in different counties within California, and certain classes of people have statutory exemptions from the laws.  (P.I. Mtn. Brief at 10-11.)  *Nordyke* considered and quickly dismissed a similar claim, in a footnote:  where a gun regulation does not discriminate among people based on suspect-class status (such as ethnicity, national origin, or race), a court should evaluate the equal-protection claim under lenient rational-basis review.  681 F.3d at 1043 n.2; see also *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 [75 S. Ct. 461; 99 L.Ed.2d 563] (1955).

This Court should follow the *Nordyke* approach here.  For example, it would have been rational for the California Legislature to have considered it more

dangerous for people to go around openly carrying loaded firearms in densely populated public places versus sparsely populated public places, and so made it much harder to obtain open-carry licenses for people in high-population areas versus low-population areas.  For another example, the Legislature could rationally have concluded that, as a group, retired peace officers, who likely arrested many criminals who served terms in jail before eventually being released, have unusually strong self-protection needs to carry firearms when in public, compared to ordinary people's needs.  Consequently, Nichols's Fourteenth Amendment claim lacks merit.[10]

### 4.    On The "Vagueness" Claim

Nichols avers that Section 25850 is unconstitutionally vague.  However, Nichols makes no First Amendment challenge to any act or omission of the Attorney General, or to enforcement of the statutes in question.[11]  Because Nichols is alleging that a statute is unconstitutionally vague via a cause of action not involving the First Amendment, the Court may not consider whether the statute is unconstitutional on its face, but instead should consider whether the statute is impermissibly vague as applied to the plaintiff.  *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001).  The reason is that "'a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'"  *Holder v. Humanitarian Law Project*, __ U.S. __, 130 S. Ct. 2705, 2719 [177 L.Ed.2d 355] (2010), quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 [102 S. Ct. 1186; 71

---

[10] Nichols also attacks Section 25850 because, it appears, one of the motivations of the Legislature in passing the law in 1967 was to prevent the Black Panthers from openly carrying firearms in public places, such as the State Capitol. (P.I. Mtn. Brief at 12.)  But the statute itself makes no mention of people's races, and Nichols has presented no evidence that the law has been applied, ever or, especially, recently, disproportionately against African Americans, or people in another racial minority group, to disarm them.

[11] Nichols does make First Amendment claims (as parts of his second and third causes of action), but against only Redondo Beach and its municipal laws.

1   L.Ed.2d 362] (1982).  Because Nichols has failed to provide the Court with any

2   foundation for evaluating the constitutionality of Section 25850 on an as-applied

3   basis, the Court should deny his motion as it attacks Section 25850 for vagueness.

4       Even if the Court were inclined to go further, the Court should not find

5   Section 25850 unconstitutionally vague.  A law is unconstitutionally vague if it

6   does not provide a "person of ordinary intelligence a reasonable opportunity to

7   know what is prohibited, so that he may act accordingly" (*Grayned v. City of*

8   *Rockford*, 408 U.S. 104, 108 [92 S. Ct. 2294; 33 L.Ed.2d 222] (1972)), or if it is

9   "'so standardless that it authorizes or encourages seriously discriminatory

10  enforcement.'"  *Holder*, 130 S. Ct. at 2718 (quoting *United States v. Williams*, 553

11  U.S. 285, 304 [128 S. Ct. 1830; 170 L.Ed.2d 650] (2008)).  "[P]erfect clarity and

12  precise guidance have never been required even of regulations that restrict

13  expressive activity."  *Holder*, 130 S. Ct. at 2719 (citations and quotations omitted).

14  Statutes are presumptively valid and not invalidated just because it may be difficult

15  to determine whether they cover marginal offenses.  *United States v. Nat'l Dairy*

16  *Products Corp.*, 372 U.S. 29, 32 [83 S. Ct. 594; 9 L.Ed.2d 561] (1963).

17      Nichols makes contrived pleas of confusion over the meaning of "loaded" and

18  "unloaded" for a firearm, and "public places," in certain contexts.  (P.I. Mtn. Brief

19  at 12, 16.)  But a person of ordinary intelligence should generally understand those

20  terms; confusion could possibly arise in only marginal instances.

21  **B.   Nichols Has Not Been Irreparably Harmed By The Existence Or**

22  **Enforcement Of The Laws In Question**

23      To warrant a preliminary injunction, a plaintiff's showing of harm must "be

24  actual and not theoretical."  *Emily's List v. Fed. Election Comm'n*, 362 F.Supp.2d

25  43, 57 (D.D.C. 2005).  Nichols's showing of harm is *entirely* theoretical.  Nichols

26  has not shown that he has been actually harmed at all by the laws in question.[12]

27      [12] Nichols's complaints about having his firearm seized by the Redondo
28  Beach Police Department, and thereby being injured, is in the context of

(continued…)

17

1    Also, a plaintiff's "long delay before seeking a preliminary injunction implies

2  a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub.*

3  *Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  Nichols has waited many years to

4  challenge Section 25850.  He waited more than a year to challenge Section 26350.

5  Even Section 26400 has been on the books for several months, and Nichols just

6  now has tried to stop enforcement of that law.  These delays reveal that Nichols has

7  no urgent need to enjoin these laws and has not shown irreparable harm.

8  ### C.    The Balance of Harms Tips Decidedly Against Granting
9  ### Injunctive Relief Here

10    While Nichols has no injury, "it is clear that a state suffers irreparable injury

11  whenever an enactment of its people or their representatives is enjoined." *Coalition*

12  *for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).  "Any time a State is

13  enjoined by a court from effectuating statutes enacted by representatives of its

14  people, it suffers a form of irreparable injury." *Maryland v. King*, __ U.S. __, 133

15  S. Ct. 1, 3 [183 L.Ed.2d 667] (2012).   "A strong factual record is therefore

16  necessary before a federal district court may enjoin a State agency." *Cupolo v. Bay*

17  *Area Rapid Transit*, 5 F.Supp.2d 1078, 1085 (N.D. Cal.  1997), citing *Thomas v.*

18  *County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992).  The acknowledged

19  harm to the State of California if this Court enjoins the enforcement of duly-enacted

20  public-safety laws plainly outweighs and overrides Nichols's imagined harm,

21  lacking any factual record.

22  ### D.    The Public Interest Is Served By Denying Injunctive Relief Here

23    The open carry of firearms, whether loaded or unloaded, creates potentially or

24  actually very dangerous situations.  As the legislative history of Section 26350 and

25  Section 26400, cited above, explains, when police officers are called about "a

26  _____

(…continued)
27  enforcement of municipal laws that are not at issue in the present motion.  (Second
Am. Compl., ¶¶71, 81.)

28

18

1   person with a gun," they typically are responding to a situation about which they

2   have few details.  Officers may have no idea whether the person has a criminal

3   intent or is just "exercising Second Amendment rights."  Consequently, police tend

4   to react with "hypervigilant urgency," to protect the public from an armed threat or

5   potential threat.  If the person fails to comply with law-enforcement requests, the

6   officers may be compelled to respond in kind, possibly with deadly results.  Instead

7   of improving public safety, open carrying increases the likelihood that everyday

8   interpersonal conflicts will turn into deadly shootouts.

9   **II.   NICHOLS'S FACIAL CHALLENGE TO THE THREE CALIFORNIA**

10      **FIREARMS LAWS IS DISFAVORED**

11         As explained above, with the instant motion, Nichols does not present this

12   Court with a fact pattern to analyze.  Nichols's challenge to the California firearms

13   laws in question necessarily is a facial not an as-applied challenge (despite

14   Nichols's contrary claims).  The U.S. Supreme Court has made clear that such

15   facial challenges are disfavored:

16         Facial challenges are disfavored for several reasons.  …Facial

17         challenges also run contrary to the fundamental principle of judicial

18         restraint that courts should neither "anticipate a question of

19         constitutional law in advance of the necessity of deciding it" nor

20         "formulate a rule of constitutional law broader than is required by the

21         precise facts to which it is to be applied."  [Citation.]  Finally, facial

22         challenges threaten to short circuit the democratic process by

23         preventing laws embodying the will of the people from being

24         implemented in a manner consistent with the Constitution.

25   *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51

26   [128 S. Ct. 1184; 170 L.Ed.2d 151] (2008).  Nichols faces all these problems

27   and pitfalls in seeking injunctive relief here.  The Court should hold Nichols

28

1  to the substantive deficiencies of his motion for a preliminary injunction, and

2  deny the motion on that additional basis.

3  **CONCLUSION**

4       Nichols is asking this Court to change radically everyday life in California, yet

5  Nichols has not established any of the four requisite factors for a preliminary

6  injunction.  The Court should deny his motion for a preliminary injunction.

7  Dated: May 28, 2013                    Respectfully submitted,

8                                     KAMALA D. HARRIS
   Attorney General of California

9                                     MARK R. BECKINGTON

10                                     Supervising Deputy Attorney General

11                                   */s/ Jonathan M. Eisenberg*

12                                   JONATHAN M. EISENBERG
   Deputy Attorney General

13                                   *Attorneys for Defendant California Attorney General Kamala D. Harris*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28