KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
 300 South Spring St., Ste. 1702
 Los Angeles, CA  90013
 Telephone:  (213) 897-6505
 Fax:  (213) 897-1071
 E-mail:  jonathan.eisenberg@doj.ca.gov
*Attorneys for Defendant California Attorney General Kamala D. Harris*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHARLES NICHOLS,<br><br>                        Plaintiff,<br><br>     v.<br><br>EDMUND G. BROWN JR., in his official capacity as Governor of California, KAMALA D. HARRIS, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,<br><br>                        Defendants. | 2:11-cv-09916-SJO-(SS)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C)**<br><br>Date:          Dec. 17, 2013<br>Time:         10:00 a.m.<br>Crtrm.:       23 – 3rd Flr.<br>Judge:        Hon. Suzanne H. Segal<br>Trial Date:   Not Yet Set<br>Action Filed: Nov. 30, 2011 |

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................1

Summary of the Operative Complaint......................................................................1

Summary of the Motion for Preliminary Injunction ...............................................5

Legal Standard for Motions for Judgment On the Pleadings ..................................6

Argument......................................................................................................................7

    I.    Nichols's Facial Challenge to the California Public-Safety Laws Is Untenable ...............................................................................................7

    II.   Nichols's Second Amendment Theories Fail as a Matter of Law ........7

    III.  Nichols's Fourteenth Amendment Theory Fails as a Matter of Law...............................................................................................................10

    IV.  Nichols's Fourth Amendment Theory Fails as a Matter of Law ........11

    IV.  Nichols's Void-for-Vagueness Theory Fails as a Matter of Law.......13

Conclusion.................................................................................................................14

# TABLE OF AUTHORITIES

Page

**CASES**

*Alphonsus v. Holder*
  705 F.3d 1031 (9th Cir. 2013) ................................................................................ 7

*Ezell v. City of Chicago*
  651 F.3d 684 (7th Cir. 2011) .................................................................................. 9

*Gillan v. City of San Marino*
  147 Cal. App. 4th 1033 (2007) ............................................................................. 12

*Grayned v. City of Rockford*
  408 U.S. 104 (1972) .............................................................................................. 13

*Heck v. Humphreys*
  512 U.S. 477 (1994) .............................................................................................. 11

*Heller v. District of Columbia*
  670 F.3d 1244 (D.C. Cir. 2011) ............................................................................. 9

*Holder v. Humanitarian Law Project*
  130 S. Ct. 2705 (2010) .......................................................................................... 13

*Lewis v. Russell*
  838 F. Supp. 2d 1063 (E.D. Cal. 2012) .................................................................. 6

*Mag Instrument, Inc. v. J.S. Prods., Inc.*
  595 F. Supp. 2d 1102 (C.D. Cal. 2012) .................................................................. 6

*Morgan v. Cnty. of Yolo*
  436 F. Supp. 2d 1152 (E.D. Cal. 2006) .................................................................. 6

*Nichols v. Brown*
  CV 11-09916 SJO (SS), 2013 WL 3368922 (C.D. Cal. Jul. 3, 2013) ........... passim

*People v. Celis*
  33 Cal. App. 4th 667 (2004) ................................................................................. 12

*People v. Jones*
  228 Cal. App. 3d 519 (1991) ................................................................................ 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Scocca v. Smith*
  C-11-1318 EMC, 2012 WL 2375203 (N.D. Cal. Jun. 22, 2012) ........................... 9

*Silveira v. Lockyer*
  312 F.3d 1052 (9th Cir. 2012) ............................................................................... 9

*United States v. DeCastro*
  682 F.3d 160 (2d Cir. 2012) .................................................................................. 8

*United States v. Fuentes*
  105 F.3d 487 (9th Cir. 1997) ......................................................................... 12, 13

*United States v. Lopez*
  482 F.3d 1067 (9th Cir. 2007) ............................................................................. 12

*United States v. Masciandaro*
  638 F.3d 458 (4th Cir. 2011) ................................................................................. 9

*United States v. Nat'l Dairy Prods. Corp.*
  372 U.S. 29 (1963) ............................................................................................... 13

*United States v. Purdy*
  264 F.3d 809 ........................................................................................................ 15

*United States v. Salerno*
  481 U.S. 739 (1987) .............................................................................................. 7

*United States v. Williams*
  553 U.S. 285 (2008) ............................................................................................ 13

*Young v. Hawaii*
  911 F. Supp. 2d 972 (D. Haw. 2012) .................................................................... 9

**STATUTES**

Cal. P. Code § 25850 ................................................................................. passim

Cal. P. Code § 25850(b) ................................................................................12, 13, 14

Cal. P. Code § 26150 et seq. .................................................................................. 2, 5

Cal. P. Code § 26350 ............................................................................................. 2, 5

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. P. Code § 26400 .................................................................................................. 2, 5

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. II................................................................................................ passim

U.S. Const. Amend. IV .................................................................................4, 11, 12, 13

U.S. Const. Amend. XIV .................................................................................5, 10, 11

**COURT RULES**

Fed. R. Civ. P. 12(c) ............................................................................................... 1, 6, 8

Defendant Kamala D. Harris, Attorney General of the State of California (the "Attorney General"), submits the following memorandum of points and authorities in support of her motion for judgment on the pleadings in her favor and against Plaintiff Charles Nichols ("Nichols"). Fed. R. Civ. P. 12(c).

## INTRODUCTION

Nichols is a self-styled "open-carry" gun-rights activist who is trying to make a radical change to everyday life throughout California. Nichols advocates that almost everyone should be allowed to carry loaded or unloaded firearms openly in public places. Nichols has pursued the present litigation to overturn California's multiple public-safety laws that restrict open carrying of firearms. Nichols promotes an extreme interpretation of the Second Amendment to the U.S. Constitution that enshrines open carry as a core right and practice, and, quoting state case law from the antebellum South, denounces anything less, even licensed concealed carry. Because Nichols's case depends on a broad reading of the Second Amendment that does not comport with how courts interpret that amendment, as well as equally flawed arguments about other relevant laws, the Court should dismiss this lawsuit on the pleadings.

## SUMMARY OF THE OPERATIVE COMPLAINT

On November 30, 2011, Nichols filed the present lawsuit's initial complaint in this Court. In 2012 and early 2013, the Attorney General and the four other named defendants, in two groups, state-government defendants and local-government defendants, filed multiple motions to dismiss the case for, primarily, lack of subject-matter jurisdiction. The Court's decisions partly granting and partly denying those motions reduced but did not eliminate the number of defendants and the number of claims. The Court's rulings also required Nichols to amend the complaint twice.

1   Nichols's operative complaint, the second amended complaint (the "SAC"),
2   was filed on March 29, 2013.  Nichols named two defendants, the Attorney General
3   and the City of Redondo Beach.  The SAC states a single cause of action against
4   the Attorney General, although the cause of action invokes the Second, Fourth, and
5   Fourteenth Amendments.  (SAC, ¶¶ 55-69.)  The Attorney General submitted an
6   answer on April 16, 2013.  Although the SAC states two additional causes of action
7   against the City of Redondo Beach, on August 5, 2013, before the City of Redondo
8   Beach had filed an answer, Nichols voluntarily dismissed the City of Redondo
9   Beach, without prejudice.

10   The SAC declares that the case concerns two "important constitutional
11   principle[s]": *first*, Nichols and similarly situated people have the right, under the
12   Second Amendment, to carry fully functional, loaded firearms in public places, so
13   state or local laws that limit that open-carry right violate the Second Amendment.
14   (SAC, ¶ 8.)  *Second*, under the Fourteenth Amendment, neither state nor local
15   governments may lawfully deny Nichols or similarly situated people licenses to
16   carry fully functional, loaded firearms in public places, merely because of the
17   populations of the counties where such people reside.  (SAC, ¶ 13.)

18   The SAC asks the Court to invalidate multiple California laws.  The laws in
19   question are multiple Penal Code sections:  (1) Section 25850,[1] regulating the open
20   carry of loaded firearms; (2) Section 26350, regulating the open carry of unloaded
21   handguns; (3) Section 26400, regulating the open carry of unloaded firearms other
22   than handguns; and (4) Sections 26150 to 26220, setting forth the licensing scheme,
23   operated by county sheriffs and city police chiefs, by which individual people may
24   apply to obtain licenses to carry firearms concealed or openly.

25   The SAC alleges that these California statutes, individually or collectively,
26   make manifest California's unconstitutional public policies of prohibiting the open

---

[1] Hereinafter, references to "Section" mean California Penal Code section.

2

1  carrying of firearms, rationing licenses to carry firearms concealed or openly, and
2  discriminating against people of color in exercising their Second Amendment right.
3  (SAC, ¶¶ 41-42.)
4      With respect to Section 25850, the SAC alleges that the law – with a different
5  section number – was passed in 1967 in part to "disarm members of the Black
6  Panther Party for Self-Defense." (SAC, ¶ 43.)  The SAC also alleges that data from
7  2010 "shows that racial minorities are disproportionately arrested." (*Id.* at ¶ 39.)
8  However, the SAC also alleges that there is a "history of zealous enforcement" of
9  Section 25850 against thousands of people, not necessarily ethnic or racial
10 minorities.  (*Id.* at ¶ 50.)
11     The SAC alleges that, on May 17, 2012, Nichols sent an e-mail message to the
12 Redondo Beach police chief and a captain, asking for an application for a license to
13 carry a loaded handgun openly in public.  (SAC, ¶ 46.)
14     The SAC alleges that, on May 21, 2012, without any license, Nichols openly
15 carried a firearm in Redondo Beach, in protest against the open-carry laws.  (SAC,
16 ¶ 45.)  Without Nichols's consent, a Redondo Beach police officer approached
17 Nichols and took the firearm from him, then inspected the firearm to see if it was
18 loaded (i.e., performed a "chamber check").  (*Id.*, ¶¶ 45, 51, 52.)  The police officer
19 retained the firearm, saying that he was doing so because Nichols had violated
20 Redondo Beach ordinances.  (*Id.*, ¶ 45.)  The police officer told Nichols that he
21 would be referred to the Redondo Beach city attorney and city prosecutor for
22 criminal prosecution.  (*Id.*)
23     Nichols was prosecuted by local authorities, for violating local laws.  (SAC, ¶
24 46.)  After fighting the charges for a time, ultimately Nichols pleaded no contest.
25 [CITE.]
26     Neither the Attorney General nor anybody from the Attorney General's Office
27 participated in the above-described May 21, 2012, interaction with Nichols, or his
28

1  subsequent prosecution, which did not involve any of the California laws being
2  challenged in this case.
3       The SAC alleges that, also on May 21, 2012, the Redondo Beach City attorney
4  denied Nichols's request for an application for a license, and a license itself, to
5  carry firearms openly in public. (SAC, ¶ 47.) The two given reasons were that,
6  under state law, there are no open-carry licenses available in Los Angeles County,
7  where Redondo Beach is located, because the county has a population of more than
8  200,000 people; also, because Nichols is not a resident of Redondo Beach, Nichols
9  is not eligible for any kind of license to carry a firearm openly in the beach city.
10 (*Id.*)
11      The SAC also alleges that Nichols obtained "from DEFENDANT HARRIS'
12 California Department of Justice" a "Law Enforcement Gun Release Letter" about
13 the firearm that the Redondo Beach police officer retained, but the City of Redondo
14 Beach refused to release the firearm in response to the letter. (SAC, ¶ 48.) The
15 Attorney General understands that the firearm has recently been released to
16 Nichols. [CITE.]
17      As noted above, the SAC states only a single cause of action against the
18 Attorney General, yet the single cause of action attacks multiple California statutes
19 under multiple theories.
20      *First*, the SAC asserts that Section 25850 violates the Second Amendment by
21 criminalizing the "mere" open carrying of loaded firearms in public places. (SAC,
22 ¶¶ 57-60.)
23      *Second*, the SAC asserts that Section 25850 violates the Fourth Amendment
24 by authorizing peace officers to inspect openly carried firearms to see if they are
25 loaded, and to arrest any person who does not consent to such a chamber check.
26 (SAC, ¶ 57.)
27
28

4

1  *Third*, the SAC asserts that Section 25850 is unconstitutionally vague in how it defines the places where open carrying is prohibited, as well has how the law defines whether a firearm is loaded. (SAC, ¶ 61.)

*Fourth*, the SAC asserts that Section 26350 violates the Second Amendment by criminalizing the open carrying of unloaded handguns in public places. (SAC, ¶ 62.)

*Fifth*, the SAC asserts that Section 26400 violates the Second Amendment by criminalizing the open carrying of unloaded firearms, other than hand guns, in public places. (SAC, ¶ 63.)

*Sixth*, the SAC asserts that Section 26150 et seq. violate the Second Amendment by criminalizing the unlicensed open carrying of firearms in public places. (SAC, ¶ 64.)

*Seventh*, the SAC asserts that Section 26150 et seq. violate the Fourteenth Amendment's Equal Protection Clause by authorizing local law-enforcement leaders to issue open-carry licenses to people residing in counties with populations of less than 200,000 people, but not authorizing law-enforcement officials to issue open-carry licenses to people residing in counties with populations of more than 200,000 people. (SAC, ¶ 65.)

As can be seen, the first, fourth, fifth, and sixth legal theories stated above are essentially identical, positing a violation of the alleged Second Amendment open-carry right.

**SUMMARY OF THE MOTION FOR PRELIMINARY INJUNCTION**

On April 10, 2013, Nichols moved for a preliminary injunction against enforcement of California Penal Code sections 25850, 26350, and 26400. The Attorney General opposed the motion, and Nichols submitted a reply. By a ruling dated July 3, 2013, the present Court denied the motion. Thereafter, Nichols appealed the ruling to the U.S. Court of Appeals, Ninth Circuit, where the appeal

remains pending but stayed until the Ninth Circuit decides certain other Second Amendment cases.

The part of the Court's July 3, 2013, order discussing the likelihood-of-success prong of the test for preliminary injunctions resolves, in the Attorney General's favor and against Nichols, all or nearly all the issues raised by the present motion for judgment on the pleadings. That discussion thus leads the way toward the granting of the present motion.

## STANDARD FOR MOTIONS FOR JUDGMENT ON THE PLEADINGS

After the pleadings in a case are closed, any party may move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c). *Lewis v. Russell*, 838 F. Supp. 2d 1063, 1067 (E.D. Cal. 2012); *Mag Instrument, Inc. v. J.S. Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2012); *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154 (E.D. Cal. 2006). An FRCP 12(c) motion challenges the legal sufficiency of the opposing party's pleadings. *Mag Instrument*, 595 F. Supp. 2d at 1107; *Morgan*, 436 F. Supp. 2d at 1154-55. An FRCP 12(c) motion may ask for judgment on the basis of the plaintiff's failure to state a claim upon which relief can be granted. *Lewis*, 838 F. Supp. 2d at 1067.

> Judgment on the pleadings is appropriate if, assuming the truth of all materials facts pled in the complaint, the moving party is nonetheless entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989). In addition to considering the allegations of the complaint . . . the court may also take into account materials to which it can take judicial notice. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir.1999).

*Morgan*, 436 F. Supp. 2d at 1155.

# ARGUMENT

Each of Nichols's seven legal theories within the single cause of action against the Attorney General fails as a matter of law, meaning that the Court should grant the present motion for judgment of the pleadings.

### I. NICHOLS FACES A HIGH HURDLE TO MAKING A SUCCESSFUL FACIAL CHALLENGE TO CALIFORNIA PUBLIC-SAFETY LAWS REGULATING "OPEN CARRY"

There is an overarching problem in Nichols's case. As this Court has recognized, Nichols's case, whatever the legal theory, is especially difficult for him to win, because he:

> is mounting a facial challenge. A "claim is 'facial' [if] . . . it is not limited to plaintiffs' particular case, but challenges application of the law more broadly." *John Doe No. 1 v. Reed*, 130 S. Ct. 2811, 2817 (2010). When such a claim "reach[es] beyond the particular circumstances of the[] plaintiff[] . . . [it] must . . . satisfy our standards for a facial challenge to the extent of that reach." *Id.* Thus, an example of an as-applied challenge would be if Plaintiff were being prosecuted by the [S]tate of California for violation of Section 25850, and Plaintiff then challenged the constitutionality of the statute as applied to him. This is not the case here, where Plaintiff contends that the Challenged Statutes are unconstitutional generally. Facial challenges to the constitutionality of statutes are disfavored.

*Nichols v. Brown*, CV 11-09916 SJO (SS), 2013 WL 3368922 at *3 (C.D. Cal. Jul. 3, 2013). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Alphonsus v. Holder*, 705 F.3d 1031, 1042 n.10 (9th Cir. 2013) (affirming the validity of the rule announced in *Salerno* "[o]utside the First Amendment and abortion contexts").

### II. NICHOLS'S SECOND AMENDMENT THEORY FAILS AS A MATTER OF LAW

This Court's July 3, 2013, ruling also vanquishes Nichols's theory that there is a broad open-carry right under the Second Amendment.

> [I]n [*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008)] the Supreme Court recognized the Second Amendment "right of law-abiding,

7

> responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635 . . . This right, however, is "not unlimited," and it does not "protect the right of citizens to carry arms for *any sort* of confrontation." *Heller*, 554 U.S. at 595. Nor is this individual right "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.
>
> Lower courts have been cautious, however, in expanding the scope of this right beyond the contours delineated in *Heller* . . . Courts that have considered the meaning of *Heller* and [*McDonald v. City of Chicago*, __ U.S. __, 130 S. Ct. 3020 (2010)] in the context of open carry rights have found that these cases did not hold that the Second Amendment gives rise to an unfettered right to carry firearms in public.

*Nichols*, 2013 WL 3368922 at *3-*4 (footnotes omitted). There have been no evolutions or changes in the relevant law since this Court wrote those words a few months ago. It remains "far from clear that Plaintiff enjoys such a right." *Id.* at *4.

Furthermore, as the Court held, "[e]ven if [Nichols] does [have such a right], though, the Court finds that Plaintiff is unlikely to demonstrate that the Challenged Statutes fail to satisfy the applicable standard of review and are thus unconstitutional." *Nichols*, 2013 WL 3368922 at *4. "The Ninth Circuit has not yet established what standard of review should be applied to Second Amendment challenges." *Id.* at *5. (Footnote omitted.) "Harris asks the Court to adopt the 'substantial-burden' test[], under which 'heightened scrutiny is appropriate only as to those regulations that substantially burden the Second Amendment.' *United States v. DeCastro*, 682 F.3d 160, 164 (2d Cir. 2012). Alternatively, Harris argues that intermediate scrutiny is the appropriate standard of review." *Nichols*, 2013 WL 3368922 at *5.[2] The Court assumed without deciding that intermediate scrutiny applied, and found that:

---

[2] The Attorney General continues to advocate for Second Amendment cases to use an "undue burden" standard, as articulated in *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012). In *DeCastro*, the Second Circuit held that "heightened scrutiny is appropriate only as to those regulations that substantially burden the Second Amendment." *Id.* at 164. "[H]eightened scrutiny is triggered only by those restrictions that . . . operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful

(continued…)

1   Harris has persuasively argued that California has a substantial interest
2   in increasing public safety by restricting the open carry of firearms,
    both loaded and unloaded. As found by California courts, Section
3   25850 is designed "to reduce the incidence of unlawful *public*
    shootings." *People v. Flores*, 169 Cal. App. 4th 568, 576 (2008); *see*
4   *also People v. Foley*, 149 Cal. App. 3d Supp. 33, 39 (1983) ("The
    primary purpose of [Section 25850] is to control the threat to public
5   safety in the indiscriminate possession and carrying of concealed and
    loaded weapons.") Likewise, Section 26350 and Section 26400 were
    enacted because:

> The absence of a prohibition on "open carry" has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals and causing issues for law enforcement. Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed. In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation, the practice of "open carry" creates an unsafe environment for all parties involved: the officer, the gun-carrying individual, and for any other individuals nearby as well. Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the

---

(…continued)

purposes)." *DeCastro*, 682 F.3d at 166. Other circuit courts have joined *DeCastro* in holding that courts must consider the severity of the burden on Second Amendment rights in deciding what level of scrutiny to apply. *See, e.g., Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011); *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011); *United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011); *see also Young v. Hawaii*, 911 F. Supp. 2d 972, 988 (D. Haw. 2012) (summarizing law in this area). Under this framework, as another U.S. District Court in this federal circuit has recognized, "[a] firearm law or regulation imposes a substantial burden on Second Amendment rights if the law or regulation bans law-abiding people from owning firearms or leaves them without adequate alternatives for acquiring firearms for self-defense." *Scocca v. Smith*, No. C–11–1318 EMC, 2012 WL 2375203 at *7 (N.D. Cal. Jun. 22, 2012). In the *absence* of such a severe burden, relatively lenient *rational-basis review* should be applied. *DeCastro*, 682 F.3d at 166-67. Under rational-basis review, a legislative classification will be upheld if it is rationally related to a legitimate government interest. *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002).

9

public in other ways.  [Citation.]

*Nichols*, 2013 WL 3368922 at *5-*6.  Accordingly, the Court found the first part of the intermediate scrutiny test to be satisfied.  *Id.* at *6.

> The Court also finds that the Challenged Statutes are designed such that there is a reasonable fit between their provisions and the objective of increasing public safety.  Notably . . . the Challenged Statutes all contain an exception for self-defense.  *See* Cal. Penal Code §§ 26045(a), 26362, 26405.  The Challenged Statutes also provide for exceptions for, *inter alia*, defense of property, security guards, police officers, members of the military, hunters, target shooters, persons who possess a firearm on their own property, and persons who possess a firearm at their lawful residence, "including any temporary residence or campsite."  Cal. Penal Code §§ 25900-26060, 26361-26391, 26405.  In light of this thoughtful and comprehensive statutory regime, the Court concludes that the Challenged Statutes likely satisfy intermediate scrutiny . . .

*Nichols*, 2013 WL 3368922 at *6.  Accordingly, the Court found the second and final part of the intermediate scrutiny test to be satisfied.  *Id.*

For the very same reasons, the lack of an open-carry right, and the challenged statutes' satisfaction of even heightened Second Amendment scrutiny, the Court should dismiss on the pleadings the Second Amendment aspects (the identical first, fourth, fifth, and sixth theories) of Nichols's claim against the Attorney General.

### III.   NICHOLS'S FOURTEENTH AMENDMENT THEORY FAILS AS A MATTER OF LAW

This Court's July 3, 2013, ruling also defeats Nichols's notion that there is a Fourteenth Amendment Equal Protection Clause violation in California's firearm licensing scheme, because it allows for the possibility of open-carry licenses for people residing in counties of less than 200,000 people, but disallows open-carry licenses for people in counties of more than 200,000 people.

> [T]here is no contention here that the Challenged Statutes classify on the basis of race,[3] gender, national origin, or any other suspect

---

[3] Indisputably, all the challenged statutes are race-neutral on their faces. Moreover, although the SAC makes references to an alleged racist motivation for the 1967 passage of Section 25850 (under a different section number) and alleged racially discriminatory enforcement of the law in 2010, the SAC contains no legal claim, under the Fourteenth Amendment or otherwise, based on those alleged facts.
(continued…)

10

classification. As such, the classifications and exemptions set forth in the Challenged Statutes "need only rationally further a legitimate state purpose." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983). Here, the California Legislature could have rationally concluded that the open carrying of firearms presents a great danger to public safety in more densely populated areas. Likewise, the California Legislature could have reasonably believed that certain groups, such as retired police officers, were in greater need of self-protection and thus should be allowed to openly carry a firearm. The statutory exemptions for groups such as hunters, target shooters, and the military are also easily justified as rationally related to legitimate state purposes. As such, the Court finds that Plaintiff is unlikely to succeed on his Fourteenth Amendment claim.

*Nichols*, 2013 WL 3368922 at *6. For the very same reasons, that the challenged laws are rightfully subject to rational-basis review and pass that test, the Court should dismiss on the pleadings the Fourteenth Amendment aspect (the seventh theory) of Nichols's claim against the Attorney General.

## IV. NICHOLS'S FOURTH AMENDMENT THEORY FAILS AS A MATTER OF LAW

Regarding Nichols's Fourth Amendment claim, Nichols's no-contest plea to the charges of violating Redondo Beach municipals laws and voluntary dismissal of all Redondo Beach defendants in the present case forecloses Nichols's Fourth Amendment complaints about the Redondo Beach police officer who examined Nichols's openly exposed long gun to see if it was loaded. *Heck v. Humphreys*, 512 U.S. 477, 486-87 (1994).

Additionally, because Nichols has not successfully challenged the constitutionality of any of the laws in question here, it remains the case that a person who openly carries a firearm in a public place in California, in a county, such as Los Angeles County, of more than 200,000 people, is committing a crime.

---

(…continued)
The allegations are presented as mere background information, and not developed further.

11

1  Hence a peace officer seeing the person openly carry the firearm in a public place
2  necessarily has probable cause to *search* the firearm to see if it is loaded. *Gillan v.*
3  *City of San Marino*, 147 Cal. App. 4th 1033, 1044 (2007). By Nichols's own
4  account (SAC, ¶ 45), at the May 21, 2012 incident, Nichols's firearm was searched
5  and he was detained, as opposed to arrested. *See People v. Celis*, 33 Cal. App. 4th
6  667, 674 (2004) (defining "detention" and "arrest"); *People v. Jones*, 228 Cal. App.
7  3d 519, 523 (1991) (same). There is no basis to question the Redondo Beach
8  police officer's actions here.

9  Relatedly, although "[u]nder the Fourth Amendment, a warrantless *arrest*
10  requires probable cause," *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.
11  2007) (emphasis added), there will always be probable cause for a warrantless
12  arrest of a person who openly carries a firearm in a public place in California, in a
13  county, such as Los Angeles County, of more than 200,000 people, and the
14  person's refusal to consent to the peace officer's chamber check of the firearm will
15  always further justify that person's arrest. *Gillan*, 147 Cal. App. 4th at 1044-45.
16  Accordingly, even if the Redondo Beach police officer had arrested Nichols on
17  May 21, 2012, the arrest would be justified and not a constitutional violation.

18  Furthermore, regarding Nichols's facial challenge to Section 25850,
19  subdivision (b), under the Fourth Amendment, the Court's July 3, 2013, ruling is
20  instructive:

> Plaintiff has not demonstrated that Section 25850(b) violates the
> Fourth Amendment in all possible circumstances. To the contrary, the
> Court can envision any number of scenarios in which a police officer
> would have probable cause to arrest someone after they have refused
> to allow the officer to determine if their firearm was loaded.

25  *Nichols*, 2013 WL 3368922 at *7. Nichols's Fourth Amendment argument fails as
26  a facial challenge to the public-safety law, as well.

In sum, Nichols has no viable facial or as-applied theory (the second theory) of a Fourth Amendment violation in this case.

## V. NICHOLS'S VOID-FOR-VAGUENESS THEORY FAILS AS A MATTER OF LAW

The Court's July 3, 2013, order discusses and disposes of Nichols's void-for-vagueness theory, as follows:

> [F]acial challenges on the ground of unconstitutional vagueness that do not involve the First Amendment are not cognizable pursuant to Ninth Circuit precedent. *See United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001).

*Nichols*, 2013 WL 3368922 at *7.

Even if the Court were inclined to go further, the Court should not find Section 25850 unconstitutionally vague. A law is unconstitutionally vague if it does not provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), or if it is "'so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2718 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder*, 130 S. Ct. at 2719 (citations and quotations omitted). Statutes are presumptively valid and not invalidated just because it may be difficult to determine whether they cover marginal offenses. *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963).

Nichols makes contrived pleas of confusion over the meaning of "loaded" and "unloaded" for a firearm, and "public places," in certain contexts. But a person of ordinary intelligence should generally understand those terms; confusion could possibly arise in only marginal instances.

**CONCLUSION**

Nichols is asking this Court to change radically everyday life in California, yet in this lawsuit Nichols has not stated a viable cause of action against the Attorney General, the lone remaining defendant. The Court should grant the Attorney General's motion for judgment on the pleadings, in her favor and adverse to Nichols.

Dated: November 12, 2013

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General


_/ / Jonathan M. Eisenberg_ _____
JONATHAN M. EISENBERG
Deputy Attorney General
*Attorneys for Defendant California Attorney General Kamala D. Harris*