1  Charles Nichols
2  PO Box 1302
   Redondo Beach, CA  90278
3  Voice: (424) 634-7381
   E-Mail: CharlesNichols@Pykrete.info
4  In Pro Per
5
6
7
8              United States District Court
9              Central District of California
10
11  Charles Nichols,                    )  Case No.: CV-11-9916 SJO (SS)
12          PLAINTIFF,                   )  **MEMORANDUM OF POINTS AND**
                                         )  **AUTHORITIES IN SUPPORT OF**
13      vs.                              )  **PLAINTIFF'S MOTION FOR**
                                         )  **PARTIAL SUMMARY JUDGMENT**
14  KAMALA D. HARRIS, Attorney           )
15  General, in her official capacity as )
16  Attorney General of California       )
                                         )  Date:      December 17, 2013
17                                       )  Time:      10:00 am
                                         )  Crtrm:     23 – 3rd Floor
18      Defendant.                       )  Magistrate Judge:  Suzanne H. Segal
                                         )  District Judge: S. James Otero
19                                       )  Trial Date: None
20                                       )  Action Filed: November 30, 2011
21
22
23
24
25
26
27
28

_Partial Summary Judgment Brief_        _Charles Nichols v. Edmund G Brown Jr et al_

# TABLE OF CONTENTS

Table of Authorities...............................................................................ii

Preliminary Statement.........................................................................1

Statement of Facts..............................................................................1

Summary of Argument........................................................................8

Argument........................................................................................10

I.  The Second Amendment Right is Fully Applicable to the States................10

II. The Second Amendment Protects the Right to Keep and Bear Arms for the
Purpose of Self-Defense......................................................................11

III. The Fourteenth Amendment does not Allow for Nondiscriminatory
Abridgments of Rights........................................................................11

IV. The Scope of the Second Amendment Right Cannot be Determined by Judicial
Interest Balancing.............................................................................13

V. The Second Amendment Right Recognized in Heller.............................13

VI. California Law Does Not Impose a Duty to Retreat in Public...................16

VII. Open Carry is the Right Guaranteed by the Constitution........................16

Conclusion......................................................................................20

---

*__Partial Summary Judgment Brief__*          i          *__Charles Nichols v. Edmund G Brown Jr et al__*

# TABLE OF AUTHORITIES

Cases

*Beard v. United States,*

158 U.S. 550 (1895)..............................................................16

*Brown v. United States,*

256 U.S. 335 (1921)..............................................................16

*District of Columbia v. Heller,*

128 S. Ct. 2783 - Supreme Court (2008).............................................passim

*Gourko v. United States,*

153 U.S. 183 (1894)..............................................................16

*Hightower v. City of Boston,*

693 F. 3d 61 - Court of Appeals, 1st Circuit (2012)...................................19

*Hunter v. Underwood,*

471 U.S. 222 (1985).............................................................12

*In re Golinski,*

587 F. 3d 901 - Court of Appeals, 9th Circuit (2009)................................13

*Kachalsky v. County of Westchester,*

701 F. 3d 81 - Court of Appeals, 2nd Circuit (2012)................................20

*McDonald v. City of Chicago, Ill.,*

130 S. Ct. 3020 - Supreme Court (2010) ...........................................passim

*Moore v. Madigan,*

702 F. 3d 933 - Court of Appeals, 7th Circuit (2012)....................................20

*Nunn v. State,*

1 Ga. (1 Kel.) 243 (1846)..................................................................18

*PACIFIC SHORES PROPERTIES, LLC v. City of Newport Beach,*

Court of Appeals, 9th Circuit No. 11-55460 (2013)...................................12

*People v. Delacy,*

192 Cal. App. 4th 1481 (2011).........................................................19

*People v. Dykes,*

46 Cal. 4th 731 - Cal: Supreme Court (2009)........................................19

*People v. Ellison,*

196 Cal. App. 4th 1342 (2011)........................................................18

*People v. Flores,*

169 Cal. App. 4th 568 (2008)........................................................19

*People v. Jones,*

278 P. 3d 821 - Cal: Supreme Court (2012)..........................................16

*People v. Mitchell,*

209 Cal. App. 4th 1364 (2012).......................................................18

*People v. Newcomer,*

118 Cal. 263 (1897)..................................................................16

*Peterson v. Martinez*,

707 F. 3d 1197 - Court of Appeals, 10th Circuit (2013)..............................20

*Thompson v. United States*,

155 U.S. 271 (1894)..................................................................16

*US v. Fuentes*,

105 F. 3d 487 - Court of Appeals, 9th Circuit (1997)...............................10

Constitutional Provisions

U.S. CONST. amend. II.............................................................passim

U.S. CONST. amend. IV............................................................passim

U.S. CONST. amend. XIV...........................................................passim

Other Authorities

Judicial Council of California Criminal Jury Instructions (CALCRIM)............16

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### PRELIMINARY STATEMENT

In "The Long Hot Summer of 1967," a period of race riots and social unrest, the California legislature arbitrarily and irrationally passed a series of laws including one which banned loaded firearms from being openly carried in public.

The law was intended to disarm minorities, particularly the Black Panther Party whose members had openly carried firearms in the State Capitol building to protest that very same Act which was introduced explicitly to disarm them.

California had already passed a law back in 1923 banning the carrying of concealed weapons without a permit. That law was also explicitly targeted towards the two largest minority groups in the state at that time; Latinos and Chinese. The California courts invalidated the ban on the possession of handguns contained in the 1923 Act on equal protection grounds back in 1972 but the permit requirement to carry a concealed weapon remains. On January 1st of last year, a ban on openly carrying unloaded handguns went into effect. On January 1st of this year, a ban on openly carrying unloaded firearms which are not handguns went into effect.

As-applied to Plaintiff Nichols, the moment he steps outside of his home carrying a loaded or unloaded firearm, openly or concealed, he is in violation of the law. Plaintiff Nichols does not seek to carry a concealed firearm or a concealed weapon of any kind in public. He does seek to carry a firearm in the Constitutionally protected manner of carry, which is openly carried, in non-sensitive public places, in his motor vehicle and in the curtilage of his own home without fear of arrest, prosecution, fine and imprisonment.

### STATEMENT OF FACTS

California law bans the carrying of loaded firearms in incorporated cities and unincorporated county territory where the discharge of firearms is prohibited. SUF 1 & 4. Similarly, the carrying of unloaded firearms is banned. SUF 2, 3 & 4.

California law theoretically provides for the entirely discretionary issuance of a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person where the population of the county is less than 200,000 persons according to the most recent federal decennial census. SUF 5. And for the carrying of concealed weapons in all counties. SUF 6. Absent permission, California law generally prohibits the possession of firearms within 1,000 feet of a K-12 public or private school or on the grounds of a college or university SUF 7, within the State Capitol or grounds of the Governor's mansion SUF 8, within the sterile area of an airport or a passenger vessel terminal SUF 9, within any state or local public building SUF 10, within the sterile area of a public transit facility SUF 12. California law generally prohibits the possession of firearms not immediately recognizable as a firearm. SUF 14. California law generally prohibits the possession of any undetectable firearm. SUF 15. A license to Carry A Pistol, Revolver, or Other Firearm Capable of Being Concealed Upon the Person shall not be issued if the Department of Justice determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. SUF 16. A license to carry loaded and exposed a pistol, revolver, or other firearm capable of being concealed upon the person is revoked immediately upon a change of the licensee's place of residence to another county. SUF 17. A minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person. SUF 19. The Attorney General maintains an online database known as the Prohibited Armed Persons File who fall within a class of persons who are prohibited from owning or possessing a firearm. SUF 20. California law generally prohibits the possession of "assault weapons" and .50 BMG rifles. SUF 21. California law generally prohibits the possession of machineguns. SUF 22. California prohibits prisoners from possessing firearms. SUF 23. California law generally prohibits possession of a firearm when the person carries a firearm in a public place or on any public street while masked so as to

hide the person's identity. SUF 25. Persons who carry a loaded or unloaded firearm on his or her person, or in a vehicle, during the commission or attempted commission of certain street gang crimes is subject to additional terms of imprisonment. SUF 35 & 36. Unless it is with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority, no person shall carry ammunition or reloaded ammunition onto school grounds, except sworn law enforcement officers acting within the scope of their duties or persons exempted under Section 25450. SUF 37. California Penal Code section 25850(a) was formerly codified as PC 12031(a)(1). SUF 42. California Penal Code section 25850(b) was formerly codified as PC 12031(e). SUF 43. California Penal Code section 25850(c)(6) was formerly codified as PC 12031 (a)(2)(F). SUF 44. In 2011, 80.8 percent of homicide victims in California were male, 19.2 percent were female, SUF 45, over half (54.5 percent) of white victims were aged "40 and over," SUF 46, of the homicides where location was reported, 35.3 percent occurred on the street or sidewalk; 24.1 percent in the victim's residence, and 13.5 percent in a residence other than the victim's, SUF 47, the largest proportion of male victims (40.4 percent) were killed on the street or sidewalk SUF 48. From 2002 to 2011, the overwhelming majority of homicide arrestees and victims were male. SUF 49. When charged with PC section 12031, blacks were proportionately most likely to be filed on at the felony level, followed by Hispanics, other race/ethnic groups, and whites. This pattern exists throughout the period shown (2000-2003) SUF 57. In 2003: Whites accounted for 488 of the 1,973 arrests for violation of PC 12031, 190 of the 1,213 felony arrests for violation of PC 12031 and 288 of the 760 misdemeanor arrests for violation of PC 12031. SUF 58. In 2012, there were 20,521 felony weapons arrests in California. 19,049 were male (92.8%), 1,472 were female (7.2%). 5,160 were White (25.1%). 10,182 were Hispanic (49.6%). 4,143 were Black (20.2%). 1,036 were "Other" (5.0%). SUF 60. In 2012, there were 5,676 misdemeanor weapons

arrests in California. 5,136 were male (90.5%), 540 were female (9.5%). 1,933
were White (34.1%). 2,489 were Hispanic (43.9%). 885 were Black (15.6%). 369
were "Other" (6.5%). SUF 61. When charged with either PC section 12025 or PC
section 12031, blacks were proportionately the most likely race/ethnic group to be
filed on at the felony level; whites were proportionately the least likely race/ethnic
group to be filed on at the felony level. SUF 67. In 2012, 39.4% of the estimated
population of California is White (not Hispanic or Latino), 13.9% is Asian and
6.6% is Black or African-American and 3.6% is two or more races. SUF 69.
California counties with a population of fewer than 200,000 people are
predominantly White in race. SUF 70, 71 & 72. The Attorney General admits to
instructing all issuing authorities in California not to issue a license to openly carry
a handgun to PLAINTIFF and similarly situated individuals on page 1 of her
"STANDARD APPLICATION FOR LICENSE TO CARRY A CONCEALED
WEAPON (CCW)" prepared by the Attorney General pursuant to California Penal
Code section 26175 which also provides for her to revise the application form.
DEFENDANT HARRIS has refused to either create or revise the application form
to accommodate PLAINTIFF'S and similarly situated individuals Second
Amendment right to openly carry a loaded firearm in public for the purpose of self-
defense and other lawful purposes. SUF 78. The Attorney General has admitted to
enforcement of the laws enumerated in Plaintiff's operative complaint, Second
Amended Complaint (SAC), as well as to laws unspecified by code section in the
SAC. SUF 83. The Attorney General admits that Plaintiff Nichols obtained a Law
Enforcement Gun Release letter from the Attorney General's California
Department of Justice as required by California law. SUF 84 & 85 which requires
her to conduct an eligibility check to determine if Plaintiff Nichols is authorized to
possess a firearm SUF 86 and to issue the letter SUF 87 which stated that Plaintiff
Nichols is eligible to possess a firearm. SUF 88. The "good cause" requirement of
the Los Angeles Sheriff's Department is intended to dramatically restrict the

number of persons who are secretly armed within the county.  In 2011, there was an average of approximately 400 existing concealed weapons permits that were issued by the LASD in a county of some 10 million people. SUF 89. Plaintiff Nichols is a resident of Los Angeles County SUF 91, who resides in an incorporated city within Los Angeles County which does not have a chief of police. SUF. 92. The front yard fence to Plaintiff Nichols' single-family residence facing the street is less than 3.5 feet in height. SUF 93. Plaintiff Nichols is a male. SUF 94. Plaintiff Nichols is 53 years of age. SUF 95. Since this action was first filed on November 30, 2011, Defendant Harris has issued to Plaintiff Nichols two Law Enforcement Gun Release letters authorizing the release of his single-shot shotgun then held by the City of Redondo Beach. SUF 96. Such letters authorizing the release of a firearm can only be issued to persons who are not prohibited from possessing a firearm. SUF 97. Plaintiff Nichols is not prohibited under either California State or Federal law from purchasing or possessing a firearm. SUF 98. Plaintiff Nichols seeks to exercise his Second Amendment right to openly carry handguns for the purpose of self-defense and for other lawful purposes, such handguns to be openly carried, not encased, both loaded and unloaded, in non-sensitive public places within incorporated cities and in non-sensitive places of unincorporated county territory where the Open Carry of handguns, both loaded and unloaded, is prohibited. SUF 99. Plaintiff Nichols seeks to exercise his Second Amendment right to openly carry long guns for the purpose of self-defense and for other lawful purposes, such long guns to be openly carried, not encased, both loaded and unloaded, in non-sensitive public places within incorporated cities and in non-sensitive places of unincorporated county territory where the Open Carry of handguns, both loaded and unloaded, is prohibited. SUF 100. Plaintiff Nichols seeks to exercise his Second Amendment right to openly carry firearms for the purpose of self-defense and for other lawful purposes, such firearms to be openly carried, not encased, both loaded and unloaded, in, within and on his motor vehicles,

attached camper or trailer in non-sensitive public places within incorporated cities and in non-sensitive places of unincorporated county territory where the Open Carry of firearms, both loaded and unloaded, is prohibited in, within and on his motor vehicles, in non-sensitive public places within incorporated cities and in non-sensitive places of unincorporated counties. SUF 101. Plaintiff Nichols seeks to be free from warrantless searches and seizures of his person and property and to be free to refuse to voluntarily consent to unlawful searches and seizures of his person and property pursuant to the Fourth Amendment of the United States Constitution when in non-sensitive public places. SUF 102. Plaintiff Nichols seek to exercise his Second Amendment right to openly carry firearms for the purpose of self-defense and for other lawful purposes, such firearms to be openly carried, not encased, both loaded and unloaded, within the curtilage of his home. SUF 103. Plaintiff Nichols seeks to be free from warrantless searches and seizures of his person and property and to be free to refuse to voluntarily consent to unlawful searches and seizures of his person and property pursuant to the Fourth Amendment of the United States Constitution within the curtilage of his home. SUF 104. Prior to the enactment of the Mulford Act of 1967 which enacted, in part, former California Penal Code section 12031 which is now codified, in part, as California Penal Code section 25850 a firearm was considered to be loaded only if it had a live round in the firing chamber, or in the case of muzzle-loading firearms, if the firing chamber was uncapped or unprimed. SUF 114. Plaintiff Nichols received a death threat via email which was reported to both the Attorney General and the Los Angeles Sheriff's department. SUF 118. Plaintiff Nichols attempted to file the police report (Dkt. # 10) which was rejected by this court (Dkt. # 11). SUF 119. Plaintiff Nichols requested both an application and license from the Redondo Beach Chief of Police through his then attorney, the Redondo Beach City Attorney, to openly carry a loaded handgun. SUF 120. The license was refused in an email from the City Attorney citing California law which precludes the issuance

1   of a license to counties with a population of more than 200,000 people. SUF 121.
2   Los Angeles County has a population of more than 200,000 people. SUF 122. The
3   conclusion of the Los Angeles Sheriff's Department Sergeant Inge was that
4   someone who threatened to shoot Plaintiff Nichols and called upon others to track
5   him down and do the same was not committing a criminal offense because the
6   email did not use the word "kill." SUF 123. The Attorney General refused to
7   prosecute. SUF 124. . Plaintiff Nichols fears arrest, prosecution, fine and
8   imprisonment were Plaintiff Nichols to openly carry a firearm outside of his home.
9   Plaintiff Nichols refrains from doing so but has not completely abstained from
10  doing so. SUF 125. Beginning in January of 2015, Plaintiff Nichols plans on
11  traveling through the state and to visit every incorporated city and every County
12  within the State of California and to openly carry firearms, loaded and unloaded, in
13  non-sensitive public places in those incorporated cities (including the city and
14  county of San Francisco) and unincorporated county territory and to carry them in
15  and on his motor vehicle and in and on an attached camper or trailer. SUF 126.
16  Beginning in January of 2015, Plaintiff Nichols plans on openly carrying firearms,
17  loaded and unloaded, in non-sensitive public places in non-sensitive
18  unincorporated county territory (including the city and county of San Francisco)
19  and to carry them in and on his motor vehicle and in and on an attached camper or
20  trailer. SUF 127. Plaintiff Nichols plans on carrying loaded and unloaded firearms
21  within the curtilage of his home for the purpose of self-defense and for other
22  lawful purposes.  It is impossible to predict when such a need will arise and
23  therefore impossible to articulate a concrete plan. SUF 128. To Plaintiff Nichols'
24  knowledge, there are no permits or licenses available to him to carry a loaded or
25  unloaded firearm for the purpose of self-defense and police chiefs and county
26  sheriffs are prevented by state law from issuing licenses to private citizens to
27  openly carry a loaded or unloaded firearm in counties with a population of 200,000
28  or more persons and such licenses are only theoretically available for handguns

*Partial Summary Judgment Brief*          7                    *Nichols v. Brown*

1   and only in those counties with a population of fewer than 200,000 people and are
2   only available in those counties to residents of those counties and are invalid
3   outside of the county of issuance. SUF 129. To Plaintiff Nichols' knowledge, cities
4   and counties are free to enact local regulations restricting where and when persons
5   with a CCW license may carry a weapon pursuant to the license even if there is no
6   restriction placed on the license by the county sheriff or police chief that issued the
7   license. SUF 130. It is Plaintiff Nichols' understanding that except for certain
8   exceptions, such as travelers while on a journey, carrying a concealed weapon falls
9   outside the scope of the Second Amendment. SUF 131. It is Plaintiff Nichols'
10  understanding that Plaintiff Nichols does not satisfy the Los Angeles Sheriff's
11  Department "good cause" requirement for being issued a license to carry a loaded,
12  concealable firearm. SUF 132.  Defendant Harris has never promised to not
13  enforce the laws at issue. SUF 133.  The reason for the enactment of California's
14  ban on carrying loaded firearms in public is well documented in the filings. SUF
15  40 & 41. Under California law, there is no "duty to retreat" in public or in private.
16  SUF 134 & 135.  74% of homicides of White males occur outside of the victim's
17  residence. SUF 136.

### SUMMARY OF ARGUMENT

19      To carry arms openly (Open Carry) is the right guaranteed by the
20  Constitution according to *Heller*.  To carry arms secretly (concealed carry), with
21  limited exceptions such as for travelers on a journey, falls outside of the scope of
22  the Second Amendment right according to *Heller*.  California has banned the Open
23  Carry of firearms, both loaded and unloaded, in non-sensitive public places of all
24  incorporated cities as well as in unincorporated county territory where the
25  discharge of a firearm is prohibited.

26      Nowhere in *Heller* did the US Supreme Court hold that the Second
27  Amendment Right evaporates the moment one steps outside of his home.  The
28  *Heller* court held that the Second Amendment Right to keep and bear arms exists

1  except in certain public places the Court called "sensitive" and gave as examples

2  schools and government buildings.

3      California has many laws regulating, restricting and prohibiting the

4  possession and carrying of firearms in sensitive public places, in non-sensitive

5  public places as well as the types of firearms that may be possessed and who may

6  possess them.  Those laws are not at issue in this case.

7      The statutes themselves at issue in this case contain no exceptions.  To the

8  extent that there are exceptions elsewhere in the penal code, they prohibit the

9  carrying of a firearm for the purpose of self-defense except when a person is in

10  "grave, immediate" danger.  Unless that person falls outside of the scope of the

11  Second Amendment, such as convicted felons.  To arm themselves with a firearm,

12  convicted felons need only reasonably believe that he (or someone else) is in

13  imminent danger of suffering significant or substantial physical injury.

14      Both a person who falls within the scope of the Second Amendment

15  (Plaintiff Nichols) and a person who doesn't (e.g. a felon) must wait for a loaded

16  firearm to be made available to him in those non-sensitive public places where the

17  laws at issue in this case prohibit the carrying of weapons for the purpose of self-

18  defense. And even then his temporary possession of that weapon is limited to a

19  period no longer than the brief interval between having notified the police and their

20  arrival.

21      Given that it is illegal to carry a loaded firearm in public (openly or

22  concealed) until the point one finds himself in grave, immediate danger and it is

23  illegal to carry an unloaded firearm (openly or concealed) in public, what

24  divination, invocation or incantation is supposed to make the firearm miraculously

25  appear when Plaintiff Nichols finds himself in grave, immediate danger?

26      The ban on openly carrying loaded firearms was enacted in July of 1967

27  with the unmistakable purpose of disarming minorities and that ban is

28  disproportionately enforced against minorities to this day.

*Partial Summary Judgment Brief*          9          *Nichols v. Brown*

1   The law contains a provision where the mere refusal to consent to a search
2   constitutes "probable cause" for an arrest. That provision is clearly a violation of
3   the Fourth Amendment not only as-applied to Plaintiff, say in the curtilage of his
4   home, but facially as well. See US v. Fuentes, 105 F. 3d 487 - Court of Appeals,
5   9th Circuit (1997) at 490.

6   The unloaded open carry bans were enacted not because persons who openly
7   carry unloaded firearms present a danger to others but because, the legislature
8   claims, there is a *potential* danger that police might overreact and shoot people. It
9   would be unprecedented to uphold a law banning anything, let alone banning a
10  fundamental, enumerated right because it is the police who are the danger to public
11  safety.

## ARGUMENT

### I.    The Second Amendment Right is Fully Applicable to the States.

14  "[T]he Second Amendment right is fully applicable to the States."
15  *McDonald v. City of Chicago*, Ill., 130 S. Ct. 3020 - Supreme Court (2010) at
16  3026. "[T]he [Supreme] Court abandoned "the notion that the Fourteenth
17  Amendment applies to the States only a watered-down, subjective version of the
18  individual guarantees of the Bill of Rights," stating that it would be "incongruous"
19  to apply different standards "depending on whether the claim was asserted in a
20  state or federal court." *Malloy*, 378 U.S., at 10-11, 84 S.Ct. 1489 (internal
21  quotation marks omitted). Instead, the Court decisively held that incorporated Bill
22  of Rights protections "are all to be enforced against the States under the Fourteenth
23  Amendment according to the same standards that protect those personal rights
24  against federal encroachment."" *McDonald* at 3035. "*Heller* makes it clear that
25  this right is "deeply rooted in this Nation's history and tradition."" *McDonald* at
26  3036. "In sum, it is clear that the Framers and ratifiers of the Fourteenth
27  Amendment counted the right to keep and bear arms among those fundamental
28  rights necessary to our system of ordered liberty." *McDonald* at 3042. "The

1  relationship between the Bill of Rights' guarantees and the States must be governed
2  by a single, neutral principle. It is far too late to exhume what Justice Brennan,
3  writing for the Court 46 years ago, derided as "the notion that the Fourteenth
4  Amendment applies to the States only a watered-down, subjective version of the
5  individual guarantees of the Bill of Rights." *Malloy*, supra, at 10-11, 84 S.Ct. 1489
6  (internal quotation marks omitted)." *McDonald* at 3048.

7  **II.    The Second Amendment Protects the Right to Keep and Bear Arms for**
8  **the Purpose of Self-Defense.**

9      "The Second Amendment protects the right to keep and bear arms for the
10 purpose of self-defense..." *McDonald* at 3026. "Self-defense is a basic right,
11 recognized by many legal systems from ancient times to the present day, and in
12 *Heller*, we held that individual self-defense is "the central component" of the
13 Second Amendment right." *McDonald* at 3036. "[W]e stressed that the right was
14 also valued because the possession of firearms was thought to be essential for self-
15 defense. As we put it, self-defense was "the central component of the right itself.""
16 *McDonald* at 3048.

17 **III.   The Fourteenth Amendment does not Allow for Nondiscriminatory**
18 **Abridgments of Rights.**

19     "[W]hile § 1 of the Fourteenth Amendment contains "an antidiscrimination
20 rule," namely, the Equal Protection Clause, municipal respondents can hardly mean
21 that § 1 does no more than prohibit discrimination. If that were so, then the First
22 Amendment, as applied to the States, would not prohibit nondiscriminatory
23 abridgments of the rights to freedom of speech or freedom of religion; the Fourth
24 Amendment, as applied to the States, would not prohibit all unreasonable searches
25 and seizures but only discriminatory searches and seizures—and so on. We assume
26 that this is not municipal respondents' view, so what they must mean is that the
27 Second Amendment should be singled out for special—and specially
28 unfavorable—treatment. We reject that suggestion." *McDonald* at 3043. "It cannot

1  be doubted that the right to bear arms was regarded as a substantive guarantee, not

2  a prohibition that could be ignored so long as the States legislated in an

3  evenhanded manner." *McDonald* at 3043-3044.

4      The "race neutral" language of the statutes at issue, even absent the racially

5  discriminatory motivation and enforcement of PC 25850, does not make them

6  Constitutional.

7      "Similarly, in *Hunter v. Underwood*, 471 U.S. 222 (1985), the Supreme

8  Court unanimously struck down a provision of the Alabama constitution that

9  disenfranchised individuals convicted of crimes involving moral turpitude. The

10  provision was facially neutral because it applied to persons of all races. Id. at 227.

11  However, there was compelling evidence that the provision was adopted at the turn

12  of the 20th century for the purpose of disenfranchising black voters who were

13  convicted of such crimes at a far higher rate than white voters. Assuming,

14  arguendo, that the disenfranchisement provision would be constitutional if it were

15  passed in modern times without the intent to discriminate against racial minorities,

16  the Court nonetheless held that because it had been enacted for a discriminatory

17  purpose it "violates equal protection under *Arlington Heights*." Id. at 233. The

18  1903 Alabama legislature's willingness (or intent) to also disenfranchise white

19  individuals convicted of crimes of moral turpitude was irrelevant; all that mattered

20  was that the act "would not have been adopted . . . in the absence of the racially

21  discriminatory motivation."[24] Id. at 231." *PACIFIC SHORES PROPERTIES,*

22  *LLC v. City of Newport Beach*, Court of Appeals, 9th Circuit No. 11-55460 (2013)

23  Slip Op., pg., 34.

24      "Moreover, in *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d

25  830 (1967), the Supreme Court struck down a California housing law. The law was

26  facially neutral with respect to race: By its own terms, it simply protected certain

27  ownership and sale rights of property owners. But the Court concluded that, on the

28  basis of the context and circumstances of the law's passage, it had the "design and

1  intent" of weakening the state's anti-discrimination laws. Id. at 374, 87 S.Ct. 1627."

2  *In re Golinski*, 587 F. 3d 901 - Court of Appeals, 9th Circuit (2009) at 903.

3  **IV.  The Scope of the Second Amendment Right Cannot be Determined by**

4  **Judicial Interest Balancing.**

5  "[R]espondents assert that, although most state constitutions protect firearms

6  rights, state courts have held that these rights are subject to "interest-balancing"

7  and have sustained a variety of restrictions. Brief for Municipal Respondents 23-

8  31. In *Heller*, however, we expressly rejected the argument that the scope of the

9  Second Amendment right should be determined by judicial interest balancing, 554

10  U.S., at ___ - ___, 128 S.Ct., at 2820-2821, and this Court decades ago abandoned

11  "the notion that the Fourteenth Amendment applies to the States only a watered-

12  down, subjective version of the individual guarantees of the Bill of Rights,"

13  *Malloy*, supra, at 10-11, 84 S.Ct. 1489 (internal quotation marks omitted).

14  *McDonald* at 3047. "...Justice BREYER is incorrect that incorporation will require

15  judges to assess the costs and benefits of firearms restrictions and thus to make

16  difficult empirical judgments in an area in which they lack expertise. As we have

17  noted, while his opinion in Heller recommended an interest-balancing test, the

18  Court specifically rejected that suggestion. See supra, at 3046-3047. "The very

19  enumeration of the right takes out of the hands of government—even the Third

20  Branch of Government—the power to decide on a case-by-case basis whether the

21  right is really worth insisting upon." *Heller*, supra, at ___, 128 S.Ct., at 2821."

22  *McDonald* at 3050.

23  **V.  The Second Amendment Right Recognized in *Heller*.**

24  "We therefore hold that the Due Process Clause of the Fourteenth

25  Amendment incorporates the Second Amendment right recognized in *Heller*."

26  *McDonald* at 3050.

27  *Held* in *Heller*:

28

1. The Second Amendment protects an individual right to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within the home. Slip Op., Pp. 2–53.

(a) The Amendment's prefatory clause announces a purpose, but does not limit or expand the scope of the second part, the operative clause. The operative clause's text and history demonstrate that it connotes an individual right to keep and bear arms. Slip Op., Pp. 2–22.

(b) The prefatory clause comports with the Court's interpretation of the operative clause. The "militia" comprised all males physically capable of acting in concert for the common defense. The Antifederalists feared that the Federal Government would disarm the people in order to disable this citizens' militia, enabling a politicized standing army or a select militia to rule. The response was to deny Congress power to abridge the ancient right of individuals to keep and bear arms, so that the ideal of a citizens' militia would be preserved. Slip Op., Pp. 22–28.

(c) The Court's interpretation is confirmed by analogous arms bearing rights in state constitutions that preceded and immediately followed the Second Amendment. Slip Op., Pp. 28–30.

(d) The Second Amendment's drafting history, while of dubious interpretive worth, reveals three state Second Amendment proposals that unequivocally referred to an individual right to bear arms. Slip Op., Pp. 30–32.

(e) Interpretation of the Second Amendment by scholars, courts and legislators, from immediately after its ratification through the late 19th century also supports the Court's conclusion. Slip Op., Pp. 32–47.

(f) None of the Court's precedents forecloses the Court's interpretation. Neither *United States v. Cruikshank*, 92 U. S. 542, 553, nor *Presser v. Illinois*, 116 U. S. 252, 264–265, refutes the individual rights interpretation. *United States v. Miller*, 307 U. S. 174, does not limit the right to keep and bear arms to militia purposes,

but rather limits the type of weapon to which the right applies to those used by the militia, i.e., those in common use for lawful purposes. Slip Op., Pp. 47–54.

2. Like most rights, the Second Amendment right is not unlimited. It is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose: For example, concealed weapons prohibitions have been upheld under the Amendment or state analogues. The Court's opinion should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. Miller's holding that the sorts of weapons protected are those "in common use at the time" finds support in the historical tradition of prohibiting the carrying of dangerous and unusual weapons. Slip Op., Pp. 54–56.

3. The handgun ban and the trigger-lock requirement (as applied to self-defense) violate the Second Amendment. The District's total ban on handgun possession in the home amounts to a prohibition on an entire class of "arms" that Americans overwhelmingly choose for the lawful purpose of self-defense. Under any of the standards of scrutiny the Court has applied to enumerated constitutional rights, this prohibition—in the place where the importance of the lawful defense of self, family, and property is most acute—would fail constitutional muster. Similarly, the requirement that any lawful firearm in the home be disassembled or bound by a trigger lock makes it impossible for citizens to use arms for the core lawful purpose of self-defense and is hence unconstitutional. Because Heller conceded at oral argument that the D. C. licensing law is permissible if it is not enforced arbitrarily and capriciously, the Court assumes that a license will satisfy his prayer for relief and does not address the licensing requirement. Assuming he is not disqualified from exercising Second Amendment rights, the District must

1  permit Heller to register his handgun and must issue him a license to carry it in the

2  home. Slip Op., Pp. 56–64.

3  **VI.    California Law Does Not Impose a Duty to Retreat in Public.**

4      Under California law there is no "duty to retreat" either in public or in one's

5  home.  There is no lesser right to self-defense in public.

6      "[W]hen a man without fault himself is suddenly attacked in a way that puts

7  his life or bodily safety at imminent hazard, he is not compelled to fly or to

8  consider the proposition of flying, but may stand his ground and defend himself to

9  the extent of taking the life of the assailant, if that be reasonably necessary."

10  *People v. Newcomer*, (1897) 118 Cal. 263, 273.  See also CALCRIM 505 (SUF

11  134) and CALCRIM 3470 (SUF 135).

12      Federal common law similarly recognizes that there is no duty to retreat.

13  See *Gourko v. United States*, 153 U.S. 183 (1894), *Thompson v. United States*, 155

14  U.S. 271 (1894), *Brown v. United States*, 256 U.S. 335 (1921) (Holmes, J.)

15  ("Detached reflection cannot be demanded in the presence of an uplifted knife.")

16  and *Beard v. United States*, 158 U.S. 550 (1895).

17  **VII.    Open Carry is the Right Guaranteed by the Constitution.**

18      "The act of firearm possession, by itself, is innocent."  *People v. Jones*, 278

19  P. 3d 821 - Cal: Supreme Court (2012) at 356.  A firearm can only be carried

20  openly or concealed.  Concealed carry falls outside of the scope of the Second

21  Amendment, which leaves Open Carry as the only Constitutionally protected

22  manner of carrying a firearm in public.

23      "Like most rights, the right secured by the Second Amendment is not

24  unlimited. From Blackstone through the 19th-century cases, commentators and

25  courts routinely explained that the right was not a right to keep and carry any

26  weapon whatsoever in any manner whatsoever and for whatever purpose. See, e.g.,

27  Sheldon, in 5 Blume 346; Rawle 123; Pomeroy 152-153; Abbott 333. **For**

28  **example, the majority of the 19th-century courts to consider the question held**

that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, e.g., *State v. Chandler*, 5 La. Ann., at 489-490; *Nunn v. State*, 1 Ga., at 251…" *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2816-2817. (emphasis added).

"In *Nunn v. State*, 1 Ga. 243, 251 (1846), the Georgia Supreme Court construed the Second Amendment as protecting the "natural right of self-defence" and therefore struck down a ban on carrying pistols openly. **Its opinion perfectly captured the way in which the operative clause of the Second Amendment furthers the purpose announced in the prefatory clause**, in continuity with the English right:

**"The right of the whole people, old and young, men, women and boys, and not militia only, to keep and bear arms of every description, and not such merely as are used by the militia, shall not be infringed, curtailed, or broken in upon, in the smallest degree**; and all this for the important end to be attained: the rearing up and qualifying a well-regulated militia, so vitally necessary to the security of a free State. Our opinion is, that any law, State or Federal, is repugnant to the Constitution, and void, which contravenes this right, originally belonging to our forefathers, trampled under foot by Charles I. and his two wicked sons and successors, re-established by the revolution of 1688, conveyed to this land of liberty by the colonists, and finally incorporated conspicuously in our own Magna Charta!"" *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2809. (emphasis added).

"**We are of the opinion, then, that so far as the act of 1837 seeks to suppress the practice of carrying certain weapons *secretly*, that it is valid,** inasmuch as it does not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms. **But that so much of it, as contains a prohibition against bearing arms *openly*, is in conflict with the Constitution**, and *void*; and that, as the defendant has been indicted and convicted

for carrying a pistol, without charging that it was done in a concealed manner, under that portion of the statute which entirely forbids its use, the judgment of the court below must be reversed, and the proceeding quashed." *Nunn v. State*, 1 Ga. (1 Kel.) 243 (1846) at 251. (emphasis added).

"Likewise, in *State v. Chandler*, 5 La. Ann. 489, 490 (1850), the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2809.

"The policy underlying the prohibition against concealed weapons is based on the protection of those persons who may come into contact with a weapon bearer. If a weapon is not concealed, one may take notice of the weapon and its owner and govern oneself accordingly, but no such opportunity for cautious behavior or self-preservation exists for one encountering the bearer of a concealed weapon. In light of this policy, the question whether a particular weapon was concealed should be considered from the point of view of one approaching the location of the weapon, and the intent of the defendant as to concealment should not be considered, since a defendant's innocent intent does not make a concealed weapon any more visible." *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012) (01/23/2013 - Petition for review denied in Supreme Court.)

"However, the Supreme Court observed that the right is not unlimited. (*Heller*, supra, 554 U.S. at pp. 595, 626.) The "right [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (Ibid.) The court acknowledged that the majority of 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment. (554 U.S. at pp. 595, 626.)" *People v. Ellison*, 196 Cal. App. 4th 1342 (2011) at 1348."

1   "In addition to the list of "presumptively lawful regulatory measures" noted
2   in our earlier discussion, the *Heller* opinion emphasizes, with apparent approval,
3   that "the majority of the 19th-century courts to consider the question held that
4   prohibitions on carrying concealed weapons were lawful under the Second
5   Amendment or state analogues."" *People v. Flores*, 169 Cal. App. 4th 568 (2008)
6   at 575.

7   "In *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 312-314 [86
8   Cal.Rptr.3d 674] (Yarbrough), this court rejected a Second Amendment challenge
9   to the prohibition on carrying concealed firearms…" *People v. Delacy*, 192 Cal.
10  App. 4th 1481 (2011) at 1489.

11  "The high court's decision in *Heller* does not require us to conclude that
12  possession in a public place of a loaded, cocked, semiautomatic weapon with a
13  chambered round, concealed in a large glove and ready to fire, cannot be defined
14  as a crime under state law." *People v. Dykes*, 46 Cal. 4th 731 - Cal: Supreme Court
15  (2009) at 778.

16  "In *Heller*, the Court explained that "the right secured by the Second
17  Amendment is not unlimited" and noted that "the majority of the 19th-century
18  courts to consider the question held that prohibitions on carrying concealed
19  weapons were lawful under Second Amendment or state analogues." 128 S.Ct. at
20  2816. We have interpreted this portion of *Heller* as stating that "laws prohibiting
21  the carrying of concealed weapons" are an "example[] of `longstanding' restrictions
22  that [are] `presumptively lawful' under the Second Amendment." *Hightower v. City
23  of Boston*, 693 F. 3d 61 - Court of Appeals, 1st Circuit (2012) at 73-74.

24  "In the nineteenth century, laws directly regulating concealable weapons for
25  public safety became commonplace and far more expansive in scope than
26  regulations during the Founding Era. Most states enacted laws banning the
27  carrying of concealed weapons.[21] And as *Heller* noted, "the majority of the 19th-
28  century courts to consider the question held that prohibitions on carrying concealed

1  weapons were lawful under the Second Amendment or state analogues." *Heller*,

2  554 U.S. at 626, 128 S.Ct. 2783. Indeed, the nineteenth century Supreme Court

3  agreed, noting that "the right of the people to keep and bear arms... is not infringed

4  by laws prohibiting the carrying of concealed weapons." *Robertson v. Baldwin*,

5  165 U.S. 275, 281-82, 17 S.Ct. 326, 41 L.Ed. 715 (1897)." *Kachalsky v. County of*

6  *Westchester*, 701 F. 3d 81 - Court of Appeals, 2nd Circuit (2012) at 95-96.

7       "[A] state may be able to require "open carry" — that is, require persons

8  who carry a gun in public to carry it in plain view rather than concealed. See

9  *District of Columbia v. Heller*, supra, 554 U.S. at 626, 128 S.Ct. 2783..." *Moore v.*

10  *Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit (2012)

11      "In light of our nation's extensive practice of restricting citizens' freedom to

12  carry firearms in a concealed manner, we hold that this activity does not fall within

13  the scope of the Second Amendment's protections." *Peterson v. Martinez*, 707 F.

14  3d 1197 - Court of Appeals, 10th Circuit (2013) at 1201.

## CONCLUSION

16      California's bans on openly carrying firearms, loaded and unloaded are

17  unconstitutional both facially and as-applied to Plaintiff Nichols. The 7th Circuit

18  struck down virtually identically worded bans in Illinois. Unlike in *Moore*, this

19  court has the opportunity to preserve California's presumptively lawful concealed

20  carry regulations. Plaintiff's motion for summary judgment should be granted.

22  Dated: November 8, 2013              Respectfully submitted,

By: Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA  90278
Voice: (424) 634-7381
EMail:CharlesNichols@Pykrete.info

28  ///

1
2
3
4
5
6
7
8                          United States District Court
9                          Central District of California
10
11   Charles Nichols,                    )   Case No.: CV-11-9916 SJO (SS)
12              PLAINTIFF,                )   **[PROPOSED] ORDER**
                                          )
13         vs.                            )
14   KAMALA D. HARRIS, Attorney           )
15   General, in her official capacity as )
16   Attorney General of California       )
                                          )
17                                        )
18         Defendant.                     )
19                                        )
20                                        )

21
22                          [PROPOSED] ORDER
23         This matter came before the Court on Plaintiff's motion for partial summary
24   judgment.  There being no dispute of material fact, and Plaintiff being entitled to
25   summary judgment as a matter of law, the motion is granted.
26
27         Judgment shall be entered in favor of Plaintiff and against Defendant.
28

[PROPOSED] ORDER                    1              CV-11-9916 SJO (SS)

The Court hereby declares that California Penal Code sections 25850, 26350 and 26400 are unconstitutional on their face and as applied to Plaintiff and to persons who are otherwise legally qualified to possess firearms for the purpose of self-defense and for other lawful purposes.

IT IS ORDERED that California Penal Code sections 25850, 26350 and 26400 are declared unconstitutional on their face and as applied to Plaintiff and to persons who are otherwise legally qualified to possess firearms for the purpose of self-defense and for other lawful purposes.

IT IS FURTHER ORDERED that California Penal Code sections 25850, 26350 and 26400 are declared to infringe on the fundamental rights of Plaintiff and to persons who are otherwise legally qualified to possess firearms for the purpose of self-defense and for other lawful purposes and violate (a) The Second Amendment right to openly carry a firearm for the purpose of self-defense and for other lawful purposes; (b) The Fourth Amendment Right to be free from unlawful detention, arrest, prosecution, imprisonment or search of a person and seizure of a firearm when openly carried in non-sensitive public places; (c) The Substantive Due Process and Fourteenth Amendment rights to life, liberty and property and to equal protection.

IT IS FURTHER ORDERED that the court declares that Penal Code section 25850: produces disproportionate effects along racial lines; has a racially disproportionate impact and racially discriminatory intent or purpose; and that racial discrimination has been shown to have been a substantial or motivating factor behind enactment of the law and that Defendant has not met its burden to demonstrate that the law would have been enacted without this factor.

1    IT IS FURTHER ORDERED that the court declares that: Penal Code section
2    25850 is invalid in that and to the extent that it is applied to prohibit private
3    citizens who are otherwise qualified to possess firearms from openly carrying
4    loaded firearms for the purpose of self-defense on their own property, in their
5    vehicles and in non-sensitive public places.

6

7    IT IS FURTHER ORDERED that the court declares that Penal Code section
8    26350 is invalid in that and to the extent that it is applied to prohibit private
9    citizens who are otherwise qualified to possess firearms from openly carrying
10   unloaded handguns for the purpose of self-defense on their own property, in their
11   vehicles and in non-sensitive public places.

12

13   IT IS FURTHER ORDERED that the court declares that Penal Code section
14   26400 is invalid in that and to the extent that it is applied to prohibit private
15   citizens who are otherwise qualified to possess firearms from openly carrying
16   unloaded firearms that are not handguns for the purpose of self-defense on their
17   own property, in their vehicles and in non-sensitive public places.

18

19   IT IS FURTHER ORDERED that the court declares that: unlicensed Open
20   Carry for the purpose of self-defense in non-sensitive public places is the right
21   guaranteed by the Constitution; that firearms openly carried which do not have live
22   ammunition in the firing chamber are unloaded and that possession of matching
23   ammunition with an openly carried unloaded firearm does not make the firearm
24   "loaded" regardless of whether or not the ammunition is attached in any way to the
25   firearm; that no license is required to openly carry a firearm for the purpose of self-
26   defense in non-sensitive public places; that private residential property is not a
27   public place and is not a sensitive public place regardless of whether or not the
28   property is fully or partially enclosed by a fence or barrier, or completely

[PROPOSED] ORDER                    3                    CV-11-9916 SJO (SS)

1   unenclosed; that a private motor vehicle and any attached campers or trailers are

2   not public places and that fully functional loaded firearms may be carried therein

3   and that they do not have to be encased or otherwise enclosed in a container,

4   locked or otherwise, nor must they be carried unloaded.

5

6        IT IS FURTHER ORDERED that Defendant, their agents, servants, officers,

7   employees, and attorneys, and all persons acting in participation or concert with

8   them or under their direction or command, who receive actual notice of the

9   injunction, are permanently enjoined from enforcing or applying California Penal

10  Code sections 25850, 26350 and 26400 including any implementing regulations

11  and/or statutes, against Plaintiff and against any person under their jurisdiction or

12  command, and from taking any actions whatsoever, or permitting any person or

13  entity to take any action whatsoever that in any way affects, impedes, interferes

14  with Plaintiff and any person who is legally able to posses a firearm and they are

15  further ORDERED to immediately suspend and discontinue any investigation, or

16  other proceeding, that may have been commenced under California Penal Code

17  sections 25850, 26350 and 26400 and/or their implementation on or prior to the

18  date of this order.

19       IT IS FURTHER ORDERED that Plaintiff shall recover his cost of suit

20  herein, including but not limited to attorney fees pursuant to 42 U.S.C. § 1988, to

21  the extent allowed by law.

22

23       **IT IS SO ORDERED.**

24

25  _____

26  Dated:_____        HONORABLE JUDGE SAMUEL JAMES OTERO

27                           UNITED STATES DISTRICT JUDGE

28

[PROPOSED] ORDER              4              CV-11-9916 SJO (SS)

CERTIFICATE OF SERVICE

On this, the 8th day of November, 2013, I caused to be served a copy of the foregoing **Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment** by US Mail on:


Jonathan Michael Eisenberg
Office of the California Attorney General
Government Law Section
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
213-897-6505
213-897-1071 (fax)
jonathan.eisenberg@doj.ca.gov
LEAD ATTORNEY / ATTORNEY TO BE NOTICED representing Kamala D Harris (Defendant).


Executed this the 8th day of November, 2013 by:

Charles Nichols