Charles Nichols
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
E-Mail: CharlesNichols@Pykrete.info
In Pro Per

FILED
CLERK, U.S. DISTRICT COURT

NOV - 8 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# United States District Court

## Central District of California

Charles Nichols,

        PLAINTIFF,

    vs.

KAMALA D. HARRIS, Attorney

General, in her official capacity as

Attorney General of California


        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV-11-9916 SJO (SS)

**PLAINTIFF NICHOLS' NOTICE OF LODGING OF PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; EVIDENCE IN SUPPORT**

[L.R. 56-1]

Date:    December 17, 2013
Time:    10:00 am
Crtrm:   23 – 3rd Floor
Magistrate Judge: Suzanne H. Segal
District Judge: S. James Otero
Trial Date: None
Action Filed: November 30, 2011

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

    PLEASE TAKE NOTICE that pursuant to Local Rule 56-1 Plaintiff Nichols, In Pro Per, hereby lodges his separate statement of uncontroverted facts and conclusions of law.

| | |
|---|---|
| 1 | Dated: November 8, 2013 |
| 2 | |

Respectfully submitted,

By: Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
EMail:CharlesNichols@Pykrete.info

7 ///

8 ///

9 ///

10 ///

11 ///

12 ///

13 ///

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

CERTIFICATE OF SERVICE

On this, the 8th day of November, 2013, I caused to be served a copy of the foregoing **PLAINTIFF NICHOLS' NOTICE OF LODGING OF PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; EVIDENCE IN SUPPORT** by US Mail on:

Jonathan Michael Eisenberg
Office of the California Attorney General
Government Law Section
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
213-897-6505
213-897-1071 (fax)
jonathan.eisenberg@doj.ca.gov
LEAD ATTORNEY / ATTORNEY TO BE NOTICED representing Kamala D Harris (Defendant).

Executed this the 8th day of November, 2013 by:

Charles Nichols

1    Charles Nichols
      PO Box 1302
2    Redondo Beach, CA  90278
      Voice: (424) 634-7381
3    E-Mail: CharlesNichols@Pykrete.info
      In Pro Per

4

5

6

7

8                 United States District Court

9                 Central District of California

10

11    Charles Nichols,                )   Case No.: CV-11-9916 SJO (SS)

12          PLAINTIFF,           )   **PLAINTIFF CHARLES NICHOLS'**

13        vs.                    )   **SEPARATE STATEMENT OF**
                                )   **UNCONTROVERTED FACTS AND**

14    KAMALA D. HARRIS, Attorney    )   **CONCLUSIONS OF LAW;**
                                )   **EVIDENCE IN SUPPORT**

15    General, in her official capacity as    )   **THEREOF**

16    Attorney General of California       )   **[L.R. 56-1]**
                                )

17                                 )   **[Filed concurrently with Notice of**
                                )   **Motion and Motion for Partial**

18       Defendant.            )   **Summary Judgment, Memorandum**
                                )   **of Points and Authorities, Proposed**

19                                 )   **Order and Declaration of Plaintiff**
                                )   **Charles Nichols]**

20                                 )

21

22        Plaintiff Charles Nichols, In Pro Per, respectfully submits the following

23    Statement of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule

24    56-1 in support of his Motion for Partial Summary Judgment.  Plaintiff contends

25    that there is no issue about the following material facts.

26

27

28

                                   1

       Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

# I.    STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact | Support for Undisputed Fact |
|---|---|
| 1.  California law bans the Open Carry of loaded firearms in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory. In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory.  Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section. There is no enumerated exemption within this statute. | 1.  Cal. Penal Code § 25850.      Exhibit A - Brief Of Respondent California Attorney General Kamala D. Harris – Nichols v. Brown 9th Circuit Court of Appeals No. 13-56203 – Appellate Dkt #13. pg 3.      Dkt., #96 pg 1, lines 22-23. |
| 2.  California law bans the Open Carry of unloaded handguns in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited | 2.  Cal. Penal Code § 26350.      Exhibit B - Brief Of Respondent California Attorney General Kamala D. Harris – Nichols v. Brown 9th Circuit Court of Appeals No. 13-56203 – |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| area of unincorporated territory. There is no enumerated exemption within this statute. A violation of subparagraph (A) of paragraph (1) of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if both of the following conditions exist:<br><br>(A) The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.<br><br>(B) The person is not in lawful possession of that handgun. Otherwise, a violation of this section is a misdemeanor. | Appellate Dkt #13. pg 5.<br><br>Dkt., #96 pg 1, lines 22-23. |
| 3. California law bans the Open Carry of unloaded firearms, other than handguns, in any public place or on any public street in an incorporated city outside a vehicle while in the incorporated city or city and county. A violation is punishable by imprisonment in a county jail not | 3. Cal. Penal Code § 26400.<br><br>Exhibit B - Brief Of Respondent California Attorney General Kamala D. Harris – Nichols v. Brown 9th Circuit Court of Appeals No. 13-56203 – Appellate Dkt #13. pg 5. |

3

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if the firearm and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not in lawful possession of that firearm.  Otherwise, a violation of this section is a misdemeanor. There is no enumerated exemption within this statute. | |
| 4.  California law bans the carrying of concealed firearms.  There is no enumerated exemption within this statute. | 4.  Cal. Penal Code § 25400. |
| 5.  California law theoretically provides for the entirely discretionary issuance of a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person where the population of the county is less than 200,000 persons according to the most recent federal decennial census. | 5.  Cal. Penal Code § 26150 through 26225, inclusive. |
| 6.  California law theoretically provides for the entirely discretionary | 6.  Cal. Penal Code § 26150 through 26225, inclusive. |

4

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| issuance of a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, loaded or unloaded.  A person must be a resident of the city, city and county, or county unless the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. | |
| 7.  Absent permission, California law generally prohibits the possession of firearms within 1,000 feet of a K-12 public or private school or on the grounds of a college or university. | 7.  Cal. Penal Code § 626.9 |
| 8.  Absent permission, California law generally prohibits the possession of firearms within the State Capitol or grounds of the Governor's mansion. | 8.  Cal. Penal Code § 171c, 171d. |
| 9. California law generally prohibits the possession of firearms within the sterile area of an airport or a passenger vessel terminal. | 9.  Cal. Penal Code § 171.5 |
| 10.  Absent permission, California law generally prohibits the possession of firearms within any state or local public building or at any meeting | 10.  Cal. Penal Code § 171b. |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| required to be open to the public pursuant to Chapter 9 (commencing with Section 54950) of Part 1 of Division 2 of Title 5 of, or Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of, the Government Code. This includes court houses and persons otherwise exempt if they are a party to an action pending before the court. | |
| 11. A firearm shall be deemed loaded for the purposes of Sections 171c and 171d whenever both the firearm and unexpended ammunition capable of being discharged from such firearm are in the immediate possession of the same person. | 11. Cal. Penal Code § 171e. |
| 12. California law generally prohibits the possession of firearms within the sterile area of a public transit facility. | 12. Cal. Penal Code § 171.7 |
| 13. An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal | 13. Cal. Penal Code § 654 |

6

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| or conviction and sentence under any one bars a prosecution for the same act or omission under any other. | |
| 14. California law generally prohibits the possession of firearms not immediately recognizable as a firearm. | 14. Cal. Penal Code § 24510 |
| 15. California law generally prohibits the possession of any undetectable firearm. | 15. Cal. Penal Code § 24610 |
| 16. A license to Carry A Pistol, Revolver, or Other Firearm Capable of Being Concealed Upon the Person shall not be issued if the Department of Justice determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. | 16. Cal. Penal Code § 26195 |
| 17. A license to carry loaded and exposed a pistol, revolver, or other firearm capable of being concealed upon the person is revoked immediately upon a change of the licensee's place of residence to another county. | 17. Cal. Penal Code § 26210 |
| 18. California Penal Code section 26400 does not apply to, or affect, the carrying of an unloaded firearm that is not a handgun when the firearm is | 18. Cal. Penal Code § 26405 |

7

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| either in a locked container or encased and it is being transported directly between places where a person is not prohibited from possessing that firearm and the course of travel shall include only those deviations between authorized locations as are reasonably necessary under the circumstances. | |
| 19.  A minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person. | 19.  Cal. Penal Code § 29610 |
| 20.  The Attorney General maintains an online database known as the Prohibited Armed Persons File. The purpose of the file is to cross-reference persons who have ownership or possession of a firearm on or after January 1, 1991, as indicated by a record in the Consolidated Firearms Information System, and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from owning or possessing a firearm. | 20.  Cal. Penal Code § 30000 |
| 21.  California law generally prohibits the possession of "assault weapons" and .50 BMG rifles. | 21.  Cal. Penal Code § 30605 |

8

<u>Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law</u>

| 22. California law generally prohibits the possession of machineguns. | 22. Cal. Penal Code § 32625 |
|---|---|
| 23. California prohibits prisoners from possessing firearms. | 23. Cal. Penal Code § 4502 |
| 24. The California Attorney General's Department of Justice publication titled "FIREARMS PROHIBITING CATEGORIES" lists many categories of persons prohibited from possessing a firearm under state and Federal law including convicted felons and many categories of misdemeanor convictions. | 24. Exhibit C. |
| 25. California law generally prohibits possession of a firearm when the person carries a firearm in a public place or on any public street while masked so as to hide the person's identity. | 25. Cal. Penal Code § 25300 |
| 26. California Penal Code section 25400 does not apply to, or affect, licensed hunters or fishermen carrying pistols, revolvers, or other firearms capable of being concealed upon the person while engaged in hunting or fishing, or transporting those firearms unloaded when going to or returning from the hunting or fishing expedition. However, the firearm must be within a | 26. Cal. Penal Code § 25640 & 25610 |

9

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| motor vehicle and locked in the vehicle's trunk or in a locked container in the vehicle or the firearm is carried by the person directly to or from any motor vehicle for any lawful purpose and, while carrying the firearm, the firearm is contained within a locked container. | |
| 27. California Penal Code section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while engaged in hunting or while transporting that handgun when going to or returning from that hunting expedition. | 27. Cal. Penal Code § 26366 |
| 28. According to California Penal Code section 26040, nothing in California Penal Code section 25850 shall prevent any person from carrying a loaded firearm in an area within an incorporated city while engaged in hunting, provided that the hunting at that place and time is not prohibited by the city council. PC 26040 does not require that one be a licensed hunter. | 28. Cal. Penal Code § 26040 |
| 29. Nothing in California Penal Code section 25850 shall prevent any person from storing aboard any vessel or | 29. Cal. Penal Code § 26060 |

10

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| aircraft any loaded or unloaded rocket, rocket propelled projectile launcher, or similar device designed primarily for emergency or distress signaling purposes, or from possessing that type of a device while in a permitted hunting area or traveling to or from a permitted hunting area and carrying a valid California permit or license to hunt. | |
| 30.  The text of California Penal Code sections 25850, 26350, 26400, 26150, 26165, 26155, 26160, 26175, 26180, 26185, 26190, 26200, 26202, 26205, 26210, 26215, 26220, 17030, were filed in this case. | 30.  Dkt #88, Exhibits 1-18. |
| 31.  The first page of California Senate Bill 1080 "Deadly Weapons Recodification Act of 2010" states "SB 1080, Committee on Public Safety. Deadly weapons.  Existing law generally regulates deadly weapons. This bill would reorganize without substantive change the provisions of the Penal Code relating to deadly weapons, to be operative January 1, 2012. | 31.  Dkt #88, Exhibit 19-1 |
| 32.  A judicial decision determining the | 32.  Cal. Penal Code § 16025(a) |

11

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| constitutionality of a previously existing provision is relevant in determining the constitutionality of any provision of this part, of Title 2 (commencing with Section 12001) of Part 4, or any other provision of the Deadly Weapons Recodification Act of 2010, which restates and continues that previously existing provision. | |
| 33.  In enacting the Deadly Weapons Recodification Act of 2010, the Legislature has not evaluated the constitutionality of any provision affected by the act, or the correctness of any judicial decision determining the constitutionality of any provision affected by the act. | 33.  Cal. Penal Code § 16025(b) |
| 34.  The Deadly Weapons Recodification Act of 2010 is not intended to, and does not, reflect any determination of the constitutionality of any provision affected by the act. | 34.  Cal. Penal Code § 16025(c) |
| 35.  Every person who carries a loaded or unloaded firearm on his or her person, or in a vehicle, during the commission or attempted commission of any street gang crimes described in subdivision (a) or (b) of Section 86.22, | 35.  Cal. Penal Code § 12021.5(a) |

12

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| shall, upon conviction of the felony or attempted felony, be punished by an additional term of imprisonment in the state prison for one, two, or three years in the court's discretion. The court shall impose the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of sentence. | |
| 36. Every person who carries a loaded or unloaded firearm together with a detachable shotgun magazine, a detachable pistol magazine, a detachable magazine, or a belt-feeding device on his or her person, or in a vehicle, during the commission or attempted commission of any street gang crimes described in subdivision (a) or (b) of Section 186.22, shall, upon conviction of the felony or attempted felony, be punished by an additional term of imprisonment in the state prison for two, three, or four years in the court's discretion. The court shall impose the middle term unless there are circumstances in aggravation or mitigation. The court shall state the | 36. Cal. Penal Code § 12021.5(b) |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| reasons for its enhancement choice on the record at the time of sentence. | |
| 37.  Unless it is with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority, no person shall carry ammunition or reloaded ammunition onto school grounds, except sworn law enforcement officers acting within the scope of their duties or persons exempted under Section 25450. | 37.  Cal. Penal Code § 30310(a). |
| 38.  California Assembly Bill 144 (Effective date 1/1/2012) is filed in this case. | 38.  Dkt #88 – Exhibit 20 |
| 39.  California Assembly Bill 1527 (Effective date 1/1/2013) is filed in this case. | 39.  Dkt #88 – Exhibit 21 |
| 40.  California Attorney General's Opinions Volume 51 – 1968 pgs 197-201 is filed in this case. | 40.  Dkt #88 – Exhibit 25 |
| 41.  Excerpts from the California State Archives legislative file of Assembly Bill 1591 ("The Mulford Act of 1967") are filed in this case. | 41.  Dkt #88 – Exhibits 26-1 through 26-76. |
| 42.  California Penal Code section 25850(a) was formerly codified as PC 12031(a)(1). | 42.  Cal. Penal Code § 25850(a) Former Cal. Penal Code § 12031(a)(1) |

14

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| 43.  California Penal Code section 25850(b) was formerly codified as PC 12031(e). | 43.  Cal. Penal Code § 25850(b) Former Cal. Penal Code § 12031(e) |
| 44.  California Penal Code section 25850(c)(6) was formerly codified as PC 12031 (a)(2)(F). | 44.  Cal. Penal Code § 25850(c)(6) Former Cal. Penal Code § (a)(2)(F) |
| 45.  In 2011, 80.8 percent of homicide victims were male, 19.2 percent were female. | 45.  Exhibit D – Homicide in California 2011 - Attorney General – Department of Justice Publication – pg 1 and Table 5 on pg 10. |
| 46.  In 2011, over half (54.5 percent) of white victims were aged "40 and over." | 46.  Exhibit D – Homicide in California 2011 - Attorney General – Department of Justice Publication – pg 1 and Table 9 on pg 12. |
| 47.  In 2011, of the homicides where location was reported, 35.3 percent occurred on the street or sidewalk; 24.1 percent in the victim's residence, and 13.5 percent in a residence other than the victim's. | 47.  Exhibit D – Homicide in California 2011 - Attorney General – Department of Justice Publication – pg 1 and Table 19 on pg 25. |
| 48.  In 2011, the largest proportion of male victims (40.4 percent) were killed on the street or sidewalk. | 48.  Exhibit D – Homicide in California 2011 - Attorney General – Department of Justice Publication – pg 1 and Table 19 on pg 25. |
| 49.  From 2002 to 2011, the overwhelming majority of homicide arrestees and victims were male. | 49.  Exhibit D – Homicide in California 2011 - Attorney General – Department of Justice Publication – pg 2. |

15

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| 50.  In 2011, there were 136 justifiable homicides reported. Of these, 101 were committed by a peace officer and 35 were committed by a private citizen. | 50.  Exhibit D – Homicide in California 2011 - Attorney General – Department of Justice Publication – pg 2 and Table 39 on pg 43. |
| 51.  Prior to January 1, 2000, existing law generally provided that carrying a concealed or loaded firearm was punishable as a misdemeanor and, under certain circumstances, a felony. However, the Legislature determined that carrying a concealed or loaded firearm without being listed with the Department of Justice (DOJ) as the registered owner of the firearm is a serious crime and should be treated as such. Assembly Bill (AB) 491 (Scott, 1999) amended both Penal Code (PC) sections 12025 (carrying a concealed firearm) and 12031 (carrying a loaded firearm) to increase the number of circumstances when an offense could be charged. The following additional circumstances may be charged as either felonies or misdemeanors:<br><br>■ When a person has both a firearm and unexpended ammunition in their immediate possession and that person is not listed with the DOJ as the | 51.  Exhibit E – Concealable Firearms Charges in California 2000-2003 - Attorney General – Department of Justice Publication – Introduction - pg 1. |

16

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| registered owner of the firearm (former Penal Code section 12025).<br>■ When a person carries a loaded firearm on his/her person or in a vehicle on any public street and that person is not listed with the DOJ as the registered owner of the firearm (former Penal Code section 12031). | |
| 52. AB 491 also amended PC sections 12025 and 12031 to require district attorneys to report specified information to the Attorney General about individuals charged with carrying a concealed or loaded firearm. This information includes the gender, race/ethnic group, and age of any person charged with a felony or misdemeanor under either PC sections 12025 or 12031 and any other offense charged in the same complaint or indictment. In addition, the Attorney General is required to compile these data and submit an annual report to the Legislature. In response to AB 491, the DOJ developed the Concealable Weapons Statistical System to meet the new data collection and reporting requirements. | 52. Exhibit E – Concealable Firearms Charges in California 2000-2003 - Attorney General – Department of Justice Publication – Introduction - pg 1. |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| Data collection and reporting began in 2000 after all district attorneys were notified by the DOJ of the reporting requirement.1 District attorneys submit data in either electronic format, via the Legal Net, or in manual format. | |
| 53.  Prior to January 1, 2000, existing law generally provided that carrying a loaded firearm was punishable as a misdemeanor and, under certain circumstances, a felony. In 1999, PC section 12031 was amended to increase the number of circumstances when an offense could be charged. The following additional circumstance may be charged as either a felony or a misdemeanor: ■ When a person carries a loaded firearm on his/her person or in a vehicle on any public street and that person is not listed with the DOJ as the registered owner of the firearm. Comparing 2000 to 2003: ■ The proportion of total charges for PC section 12031 resulting in felony-level filings increased 6.4 percentage points (from 55.1 percent to 61.5 percent); misdemeanor-level filings | 53.  Exhibit E – Concealable Firearms Charges in California 2003 - Attorney General – Department of Justice Publication – pg 14. |

18

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| decreased identically. | |
| 54.  The proportion of total charges for PC section 12031 resulting in felony-level filings increased each year since 2000. | 54.  Exhibit E – Concealable Firearms Charges in California 2003 - Attorney General – Department of Justice Publication – pg 14. |
| 55.  Comparing 2000 to 2003:<br>■ The proportion of males charged with PC section 12031 resulting in felony-level filings increased 6.7 percentage points (from 55.6 percent to 62.3 percent); misdemeanor-level filings for males decreased identically.<br>■ The proportion of females charged with PC section 12031 resulting in felony-level filings decreased 2.5 percentage points (from 45.7 percent to 43.2 percent); misdemeanor-level filings for females increased identically. | 55.  Exhibit E – Concealable Firearms Charges in California 2003 - Attorney General – Department of Justice Publication – pg 15. |
| 56.  From 2000 through 2003, the vast majority of persons charged with PC section 12031 were male, and males were proportionately more likely to be filed on at the felony level than females. | 56.  Exhibit E – Concealable Firearms Charges in California 2003 - Attorney General – Department of Justice Publication – pg 15. |
| 57.  When charged with PC section 12031, blacks were proportionately most likely to be filed on at the felony | 57.  Exhibit E – Concealable Firearms Charges in California 2003 - Attorney General – Department of Justice |

19

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| level, followed by Hispanics, other race/ethnic groups, and whites. This pattern exists throughout the period shown. | Publication – pg 16. |
| 58.  In 2003: Whites accounted for 488 of the 1,973 arrests for violation of PC 12031, 190 of the 1,213 felony arrests for violation of PC 12031 and 288 of the 760 misdemeanor arrests for violation of PC 12031. | 58.  Exhibit E – Concealable Firearms Charges in California 2003 - Attorney General – Department of Justice Publication – pg 16, Table N-9. |
| 59.  From 2011 to 2012, assaults against law enforcement officers decreased 4.0 percent, and the number of assaults in 2012 was the lowest in 5 years. | 59.  Exhibit F – Crime In California 2012 - Attorney General – Department of Justice Publication – pg 1. |
| 60.  In 2012, there were 20,521 felony weapons arrests in California.  19,049 were male (92.8%), 1,472 were female (7.2%).  5,160 were White (25.1%). 10,182 were Hispanic (49.6%).  4,143 were Black (20.2%).  1,036 were "Other" (5.0%). | 60.  Exhibit F – Crime In California 2012 - Attorney General – Department of Justice Publication – Table 31. |
| 61.  In 2012, there were 5,676 misdemeanor weapons arrests in California.  5,136 were male (90.5%), 540 were female (9.5%).  1,933 were White (34.1%).  2,489 were Hispanic (43.9%).  885 were Black (15.6%). | 61.  Exhibit F – Crime In California 2012 - Attorney General – Department of Justice Publication – Table 35. |

20

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| 369 were "Other" (6.5%). | |
| 62.  In 2012, there were 157,634 Domestic Violence Related Calls for Assistance.  804 involved firearms. | 62.  Exhibit F – Crime In California 2012 - Attorney General – Department of Justice Publication – Table 47. |
| 63.  In April 2002, law enforcement agencies were instructed to report personal weapons (hands, fists, or feet) only if the assault resulted in an injury (aggravated assault). This instruction resulted in a notable decrease in the number of personal weapons reported. | 63.  Exhibit F – Crime In California 2012 - Attorney General – Department of Justice Publication – pg 65. |
| 64.  Felony level arrest offences in Exhibit F are: 171b(a)(1), 171b(a)(2), 171b(a)(3), 171b(a)(4), 171b(a)(5), 171b(a)(6)*, 171c, 171d(a)*, 171d(b)*, 186.28(a), 626.9(b)*, 626.9(d), 26.9(h), 626.9(i), 626.95(a)*, 626.10(a)(1)*, 626.10(b)*, 4502(a), 4502(b), 8101(a) WI, 8101(b) WI, 8103(a)(1) WI, 8103(f)(1) WI, 12761 HS*, 18710(a)*, 18720, 19200(a)*, 20310*, 20410*, 20510*, 20610*, 20710*, 20910*, 21110*, 21310*, 21810*, 22010*, 22210*, 22410*, 23900, 24310*, 24410*, 24510*, 24610*, 24710*, 25100(a), 25300(a), 25400(a)(1)*, 25400(a)(2)*, 25400(a)(3)*, 25400(c)(1), 25400(c)(2), 25400(c)(3), | 64.  Exhibit F – Crime In California 2012 - Attorney General – Department of Justice Publication – pg 69, 71. |

21

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| 25400(c)(4), 25400(c)(5)*, 25400(c)(6)*, 25800(a)*, 25850(c)(1), 25850(c)(2), 25850(c)(3), 25850(c)(4), 25850(c)(5)*, 25850(c)(6)*, 26100(b)*, 26100(c), 26100(d)*, 27500(a), 27500(b)*, 27505(a)*, 27515*, 27520*, 27545*, 28210(a)(1)*, 29650*, 29800(a)(1), 29800(b), 29805*, 29815(a)*, 29820(b)*, 29825(a)*, 29900(a)(1), 29900(b)(1), 30210(a)*, 30210(b)*, 30305(a)(1)*, 30600(a), 30605(a)*, 31500*, 32310*, 32900*, 33210, 33215*, 33410, 33600* | |
| Notes: These codes are valid for 2012 data and may not be applicable for prior years. "All Other Felony Offenses" also includes sections in the Election Code and Water Code. "All Other Misdemeanor Offenses" also includes sections in the California Code of Regulations, City or County Ordinances, Civil Procedure Code, Election Code, Public Utilities Code, Uniform Fire Code, and Water Code. *These code sections can be either a felony or a misdemeanor. | |
| 65.  Misdemeanor level arrest offences | 65.  Exhibit F – Crime In California |

22

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| in Exhibit F are: 136.2(a)(7)(b)2, 171b(a)(6)*, 171d(a)*, 171d(b)*, 171.5(c)(1), 171.5(c)(2), 171.5(c)(3), 171.5(c)(4), 171.5(c)(5), 171.5(c)(6), 171.5(c)(7), 171.5(c)(8), 171.5(c)(9), 171.5(c)(10), 171.5(c)(11), 171.5(c)(12), 468, 626.10(a)(1)*, 626.10(a)(2), 626.10(b)*, 626.10(i), 626.9(b)*, 626.95(a)*, 653k, 12761 HS*, 17500, 17510(a)(1), 17510(a)(2), 17510(a)(3), 17512, 18710(a)*, 19200(a)*, 19910, 19915, 20010, 20150(a), 20155, 20310*, 20410*, 20510*, 20610*, 20710*, 20810(a), 20910*, 21110*, 21310*, 21510(a), 21510(b), 21510(c), 21710, 21810*, 22010*, 22210*, 22410*, 22610(a), 22610(b), 22610(c)(1), 22610(d), 22615(a), 22615(b), 22900, 23920, 24310*, 24410*, 24510*, 24610*, 24710*, 25100(b), 25200(a), 25200(b)(3), 25400(a)(1)*, 25400(a)(2)*, 25400(a)(3)*, 25400(c)(5)*, 25400(c)(6)*, 25800(a)*, 25850(a), 25850(c)(5)*, 25850(c)(6)*, 26100(a), 26100(b)*, 26100(d)*, 26180(a), 26350(a)(2), 26500(a), 27500(b)*, 27505(a)*, | 2012 - Attorney General – Department of Justice Publication – pg 70, 71. |

23

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| 27515*, 27520*, 27545*, 28050, 28210(a)(1)*, 29650*, 29805*, 29815(a)*, 29820(b)*, 29825(a)*, 29825(b), 30210(a)*, 30210(b)*, 30305(a)(1)*, 30605(a)*, 30610(a), 31500*, 32310*, 32900*, 33215*, 33600* | |
| 66. The vast majority of persons charged with either former PC section 12025 or former PC section 12031 were male. | 66. Exhibit E – Concealable Firearms Charges in California 2003 - Attorney General – Department of Justice Publication – pg 2. |
| 67. When charged with either PC section 12025 or PC section 12031, blacks were proportionately the most likely race/ethnic group to be filed on at the felony level; whites were proportionately the least likely race/ethnic group to be filed on at the felony level. | 67. Exhibit E – Concealable Firearms Charges in California 2003 - Attorney General – Department of Justice Publication – pg 2. |
| 68. When charged with PC section 12025, blacks were proportionately most likely to be filed on at the felony level, followed by Hispanics, other race/ethnic groups, and whites. This pattern exists throughout the period shown. | 68. . Exhibit E – Concealable Firearms Charges in California 2003 - Attorney General – Department of Justice Publication – pg 6. |
| 69. In 2012, 39.4% of the estimated population of California is White (not | 69. United States Census Bureau -> http://quickfacts.census.gov/qfd/states/ |

24

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| Hispanic or Latino), 13.9% is Asian and 6.6% is Black or African-American and 3.6% is two or more races. | 06000.html |
| 70. As of the 2010 US Census, the following counties in California had a population of fewer than 200,000 people with a combined population of 2,040,530: Alpine, Sierra, Modoc, Trinity, Mono, Mariposa, Inyo, Plumas, Colusa, Glenn, Del Norte, Lassen, Amador, Siskiyou, Calaveras, San Benito, Tuolumne, Tehama, Lake, Yuba, Mendocino, Sutter, Nevada, Humboldt, Napa, Madera, Kings, Imperial, Shasta, El Dorado | 70. Exhibit G. US Census Bureau - Annual Estimates of the Resident Population: April 1, 2010 to July 1, 2012 |
| 71. As of the 2010 US Census, the following counties in California had a population of 200,000 or more people with a combined population of 35,213,426: Yolo, Butte, Marin, Merced, Santa Cruz, San Luis Obispo, Placer, Solano, Monterey, Santa Barbara, Tulare, Sonoma, Stanislaus, San Joaquin, San Mateo, San Francisco, Ventura, Kern, Fresno, Contra Costa, Sacramento, Alameda, | 71. Exhibit G. US Census Bureau - Annual Estimates of the Resident Population: April 1, 2010 to July 1, 2012 |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| Santa Clara, San Bernardino, Riverside, Orange, San Diego Los Angeles. | |
| 72.  California counties with a population of fewer than 200,000 people are predominantly White in race:<br><br>White Population/Total Population:<br>Alpine County  881 / 1,175<br>Amador County 33,149 / 38,091<br>Calaveras County 40,522 / 45,578<br>Colusa County 13,854 / 21,419<br>Del Norte County 21,098 / 28,610<br>Glenn County 19,990 / 28,122<br>Humboldt County 109,920 / 134,623<br>Imperial County 102,553 / 174,528<br>Inyo County 13,741 / 18,546<br>Kings County 83,027  / 152,982<br>Lake County 52,033 / 64,665<br>Lassen County 25,532 / 34,895<br>Madera County 94,456 / 150,865<br>Mariposa County 16,103 / 18,251<br>Mendocino County 67,218 / 87,841<br>Modoc County 8,084 / 9,686<br>Mono County 9,686 / 14,202<br>Napa County 97,525 / 136,484<br>Nevada County 90,233 / 98,764<br>Plumas County 17,797 / 20,007 | 72.  California Department of Finance – 2010 Census Detailed Age by Race/Hispanic Origin by Gender - http://www.dof.ca.gov/research/demog raphic/state_census_data_center/census _2010/documents/2010SF1_STCO_Ag eRaceSex-Web.zip |

26

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| San Benito County 35,181 / 55,269 | |
| Shasta County 153,726 / 177,223 | |
| Sierra County 3,022 / 3,240 | |
| Siskiyou County 38,030 / 44,900 | |
| Sutter County 57,749 / 94,737 | |
| Tehama County 51,721 / 63,463 | |
| Trinity County 12,033 / 13,786 | |
| Tuolumne County 48,274 / 55,365 | |
| Yuba County 49,332 / 72,155 | |
| 73.  Population of Counties by Decennial Census: 1900 to 1990 | 73.  US Bureau of the Census - http://www.census.gov/population/cencounts/ca190090.txt |
| 74.  The Attorney General admits that Nichols is a natural person, i.e., a human being. | 74.  Answer to Scnd. Am. Complaint ¶ 3. |
| 75.  The Attorney General admits that, since January 3, 2011, she has been (and presently is) the Attorney General of the State of California, and further that she must comply with her legal obligations as the Attorney General of the State of California, which legal obligations are found in various sources, including the U.S. Constitution, the California Constitution, statutes, and case law, which sources speak for themselves. | 75.  Answer to Scnd. Am. Complaint ¶ 4. |
| 76.  The Attorney General admits that | 76.  Answer to Scnd. Am. Complaint ¶ |

27

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| the U.S. Supreme Court issued the decision known as *District of Columbia v. Heller*, 554 U.S. 470 (2008), which decision speaks for itself. | 7. |
| 77.  The Attorney General admits that Nichols is not challenging the constitutionality of, or the constitutionality of enforcement of, certain state or federal laws | 77.  Answer to Scnd. Am. Complaint ¶ 8. |
| 78.  The Attorney General admits to instructing all issuing authorities in California not to issue a license to openly carry a handgun to PLAINTIFF and similarly situated individuals on page 1 of her "STANDARD APPLICATION FOR LICENSE TO CARRY A CONCEALED WEAPON (CCW)" prepared by the Attorney General pursuant to California Penal Code section 26175 which also provides for her to revise the application form.  DEFENDANT HARRIS has refused to either create or revise the application form to accommodate PLAINTIFF'S and similarly situated individuals Second Amendment right to openly carry a | 78.  Answer to Scnd. Am. Complaint ¶ 12. |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| loaded firearm in public for the purpose of self-defense and other lawful purposes. | |
| 79.  The Attorney General admits that California Penal Code sections: 25850, 26350, 26400, 26150, 26155, 26160, 26165, 26175, 26180, 26185, 26190, 26200, 26202, 26205, 26210, 26215, 26220, 17030 speak for themselves. | 79.  Answer to Scnd. Am. Complaint ¶¶ 15-32. |
| 80.  The Attorney General admits that the City of Redondo Beach local ordinances 4-35.01, 4-35.06, 4-35.20, 5-8.01(a)(1) speak for themselves. | 80.  Answer to Scnd. Am. Complaint ¶¶ 33-34. |
| 81.  The Attorney General admits that the Office of the Attorney General publishes California crime statistics information, including a publication by the State of California's Office of Attorney General titled "CONCEALABLE FIREARMS CHARGES IN CALIFORNIA 2000-2003" and "Crime In California 2010" which publications she says speak for themselves. | 81.  Answer to Scnd. Am. Complaint ¶ 39. |
| 82.  The Attorney General admits that the California Department of Justice has one database or more containing information about arrests made for | 82.  Answer to Scnd. Am. Complaint ¶ 40. |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| weapons offenses. | |
| 83.  The Attorney General has admitted to enforcement of the laws enumerated in Plaintiff's operative complaint, Second Amended Complaint (SAC), as well as to laws unspecified by code section in the SAC. | 83.  Answer to Scnd. Am. Complaint ¶¶ 41-42, 47. |
| 84.  The Attorney General admits that Nichols obtained a Law Enforcement Gun Release letter from the Attorney General's California Department of Justice as required by California law. | 84.  Answer to Scnd. Am. Complaint ¶ 48. |
| 85.  Any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned shall make application for a determination by the Department of Justice as to whether the applicant is eligible to possess a firearm. | 85.  Cal. Penal Code § 33850. |
| 86.  When the Department of Justice receives a completed application for a Law Enforcement Gun Release Letter pursuant to Section 33850 accompanied by the fee required pursuant to Section 33860, it shall conduct an eligibility check of the applicant to determine whether the | 86.  Cal. Penal Code § 33865. |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| applicant is eligible to possess a firearm. | |
| 87.  If the Department of Justice determines that the applicant is eligible to possess the firearm, the department shall provide the applicant with written notification that includes the following:<br>  (1) The identity of the applicant.<br>  (2) A statement that the applicant is eligible to possess a firearm. | 87.  Cal. Penal Code § 33865. |
| 88.  The Attorney General has issued a letter stating that Plaintiff Nichols is eligible to possess a firearm. | 88.  Answer to Scnd. Am. Complaint ¶ 48. |
| 89.  The "good cause" requirement of the Los Angeles Sheriff's Department is intended to dramatically restrict the number of persons who are secretly armed within the county.  In 2011, there was an average of approximately 400 existing concealed weapons permits that were issued by the LASD in a county of some 10 million people. | 89.  Exhibit H.  Decl., of Los Angeles County UnderSheriff Paul Tanaka – Thomson v. Torrance Police Department and the Los Angeles County Sheriff's Department – Dkt #37-1, Case # CV 11-06154 (SJO) (JCx), Judge Otero Presiding - ¶¶10-11 |
| 90.  The Los Angeles County Sheriff's Department Concealed Weapon's Licensing Policy, and Standard Application to Carry a Concealed | 90. http://file.lacounty.gov/lasd/cms1_181452.pdf |

31

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| Weapon is online at the LASD website. | |
| 91.  Plaintiff Nichols is a resident of Los Angeles County. | 91.  Nichols Decl., ¶ 1 |
| 92.  Plaintiff Nichols resides in an incorporated city within Los Angeles County which does not have a chief of police. | 92.  Nichols Decl., ¶ 2 |
| 93.  The front yard fence to Plaintiff Nichols' single-family residence facing the street is less than 3.5 feet in height. | 93.  Nichols Decl., ¶ 3 |
| 94.  Plaintiff Nichols is a male. | 94.  Nichols Decl., ¶ 4 |
| 95.  Plaintiff Nichols is 53 years of age. | 95.  Nichols Decl., ¶ 5 |
| 96.  Since this action was first filed on November 30, 2011, Defendant Harris has issued to Plaintiff Nichols two Law Enforcement Gun Release letters authorizing the release of his single-shot shotgun then held by the City of Redondo Beach. | 96.  Nichols Decl., ¶ 6 |
| 97.  Such letters authorizing the release of a firearm can only be issued to persons who are not prohibited from possessing a firearm. | 97.  Nichols Decl., ¶ 7 |
| 98.  Plaintiff Nichols is not prohibited under either California State or Federal law from purchasing or possessing a firearm. | 98.  Nichols Decl., ¶ 8 |
| 99.  Plaintiff Nichols seeks to exercise | 99.  Nichols Decl., ¶ 9 |

32

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| his Second Amendment right to openly carry handguns for the purpose of self-defense and for other lawful purposes, such handguns to be openly carried, not encased, both loaded and unloaded, in non-sensitive public places within incorporated cities and in non-sensitive places of unincorporated county territory where the Open Carry of handguns, both loaded and unloaded, is prohibited. | |
| 100.  Plaintiff Nichols seeks to exercise his Second Amendment right to openly carry long guns for the purpose of self-defense and for other lawful purposes, such long guns to be openly carried, not encased, both loaded and unloaded, in non-sensitive public places within incorporated cities and in non-sensitive places of unincorporated county territory where the Open Carry of handguns, both loaded and unloaded, is prohibited. | 100.  Nichols Decl., ¶ 10 |
| 101.  Plaintiff Nichols seek to exercise his Second Amendment right to openly carry firearms for the purpose of self-defense and for other lawful purposes, such firearms to be openly carried, not | 101.  Nichols Decl., ¶ 11 |

33

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| encased, both loaded and unloaded, in, within and on his motor vehicles, attached camper or trailer in non-sensitive public places within incorporated cities and in non-sensitive places of unincorporated county territory where the Open Carry of firearms, both loaded and unloaded, is prohibited in, within and on his motor vehicles, in non-sensitive public places within incorporated cities and in non-sensitive places of unincorporated counties. | |
| 102. Plaintiff Nichols seeks to be free from warrantless searches and seizures of his person and property and to be free to refuse to voluntarily consent to unlawful searches and seizures of his person and property pursuant to the Fourth Amendment of the United States Constitution when in non-sensitive public places. | 102. Nichols Decl., ¶ 12 |
| 103. Plaintiff Nichols seek to exercise his Second Amendment right to openly carry firearms for the purpose of self-defense and for other lawful purposes, such firearms to be openly carried, not encased, both loaded and unloaded, | 103. Nichols Decl., ¶ 13 |

34

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| within the curtilage of his home. | |
| 104. Plaintiff Nichols seeks to be free from warrantless searches and seizures of his person and property and to be free to refuse to voluntarily consent to unlawful searches and seizures of his person and property pursuant to the Fourth Amendment of the United States Constitution within the curtilage of his home. | 104. Nichols Decl., ¶ 14 |
| 105. It takes several minutes to load a muzzle-loading revolver: to measure the charge, pour it into the chamber of the cylinder, properly seat the ball, ram the ball into the chamber, rotate the cylinder, repeat the process for each cylinder, seal each chamber with grease and cap each chamber. | 105. Nichols Decl., ¶ 15 |
| 106. It takes many seconds to load a muzzle-loading long gun. | 106. Nichols Decl., ¶ 16 |
| 107. It takes several seconds to load a modern semi-automatic firearm that uses metallic cartridges contained in a magazine. | 107. Nichols Decl., ¶ 17 |
| 108. It takes many seconds to load a modern single action revolver that uses metallic cartridges. | 108. Nichols Decl., ¶ 18 |
| 109. It takes many seconds to retrieve | 109. Nichols Decl., ¶ 19 |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| and load an unloaded modern firearm from a fully enclosed container.  It takes many more seconds to unlock the container. | |
| 110.  Depending upon the distance one has ventured from his motor vehicle, retrieving a firearm from the motor vehicle trunk, assuming the motor vehicle has a trunk, can take a substantial amount of time. | 110.  Nichols Decl., ¶ 20 |
| 111.  An unloaded long gun, inside of a motor vehicle, substantially burdens Plaintiff Nichols' right to self-defense. | 111.  Nichols Decl., ¶ 21 |
| 112.  Plaintiff Nichols' motor vehicle does not have a trunk. | 112.  Nichols Decl., ¶ 22 |
| 113.  An unloaded firearm, fully encased, in a locked or unlocked container, substantially burdens Plaintiff Nichols' right to self-defense. | 113.  Nichols Decl., ¶ 23 |
| 114.  Prior to the enactment of the Mulford Act of 1967 which enacted, in part, former California Penal Code section 12031 which is now codified, in part, as California Penal Code section 25850 a firearm was considered to be loaded only if it had a live round in the firing chamber, or in the case of muzzle-loading firearms, if the firing | 114.  Nichols Decl., ¶ 24 |

36

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| chamber was uncapped or unprimed. | |
| 115. Firearms, which do not have mechanical safeties preventing the accidental discharge of a firearm, are best carried with the firing chamber empty and with live rounds in the cylinder or magazine. | 115. Nichols Decl., ¶ 25 |
| 116. Plaintiff Nichols owns firearms which do not have firing pin safeties and seek to carry them with an unloaded firing chamber. | 116. Nichols Decl., ¶ 26 |
| 117. Plaintiff Nichols seeks to openly carry modern firing reproductions of muzzle loading firearms, both loaded and unloaded, in the curtilage of his home, in non-sensitive public places of incorporated cities and in non-sensitive unincorporated county territory where it is prohibited, in and on his motor vehicles and in and on attached campers and trailers for the purpose of self-defense and for other lawful purposes. | 117. Nichols Decl., ¶ 27 |
| 118. Plaintiff Nichols received a death threat via email which was reported to both the Attorney General and the Los Angeles Sheriff's department. | 118. Nichols Decl., ¶ 28 |
| 119. Plaintiff Nichols attempted to file | 119. Nichols Decl., ¶ 29 |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| the police report (Dkt. # 10) which was rejected by this court (Dkt. # 11). | |
| 120.  Plaintiff Nichols requested both an application and license from the Redondo Beach Chief of Police through his then attorney, the Redondo Beach City Attorney, to openly carry a loaded handgun. | 120.  Nichols Decl., ¶ 30, FAC |
| 121.  The license was refused in an email from the City Attorney citing California law which precludes the issuance of a license to persons in counties with a population of 200,000 or more people. | 121.  Nichols Decl., ¶ 31, FAC |
| 122.  Los Angeles County has a population of more than 200,000 people. | 122.  Nichols Decl., ¶ 32 |
| 123.  The conclusion of the Los Angeles Sheriff's Department Sergeant Inge was that someone who threatened to shoot Plaintiff Nichols and called upon others to track him down and do the same was not committing a criminal offense because the email did not use the word "kill." | 123.  Nichols Decl., ¶ 33 |
| 124.  The Attorney General refused to prosecute. | 124.  Nichols Decl., ¶ 34 |
| 125.  Plaintiff Nichols fears arrest, | 125.  Nichols Decl., ¶ 35 |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| prosecution, fine and imprisonment were Plaintiff Nichols to openly carry a firearm outside of his home.  Plaintiff Nichols refrains from doing so but has not completely abstained from doing so. | |
| 126.  Beginning in January of 2015, Plaintiff Nichols plans on traveling through the state and to visit every incorporated city and every County within the State of California and to openly carry firearms, loaded and unloaded, in non-sensitive public places in those incorporated cities (including the city and county of San Francisco) and unincorporated county territory and to carry them in and on his motor vehicle and in and on an attached camper or trailer. | 126.  Nichols Decl., ¶ 36 |
| 127.  Beginning in January of 2015, Plaintiff Nichols plans on openly carrying firearms, loaded and unloaded, in non-sensitive public places in non-sensitive unincorporated county territory (including the city and county of San Francisco) and to carry them in and on his motor vehicle and in and on an attached camper or trailer. | 127.  Nichols Decl., ¶ 37 |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| 128.  Plaintiff Nichols plans on carrying loaded and unloaded firearms within the curtilage of his home for the purpose of self-defense and for other lawful purposes.  It is impossible to predict when such a need will arise and therefore impossible to articulate a concrete plan. | 128.  Nichols Decl., ¶ 38 |
| 129.  To Plaintiff Nichols' knowledge, there are no permits or licenses available to him to carry a loaded or unloaded firearm for the purpose of self-defense and police chiefs and county sheriffs are prevented by state law from issuing licenses to private citizens to openly carry a loaded or unloaded firearm in counties with a population of 200,000 or more persons and such licenses are only theoretically available for handguns and only in those counties with a population of fewer than 200,000 people and are only available in those counties to residents of those counties and are invalid outside of the county of issuance. | 129.  Nichols Decl., ¶ 39 |
| 130.  To Plaintiff Nichols' knowledge, cities and counties are free to enact local regulations restricting where and | 130.  Nichols Decl., ¶ 40 |

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

| | |
|---|---|
| when persons with a CCW license may carry a weapon pursuant to the license even if there is no restriction placed on the license by the county sheriff or police chief that issued the license. | |
| 131.  It is Plaintiff Nichols' understanding that except for certain exceptions, such as travelers while on a journey, carrying a concealed weapon falls outside the scope of the Second Amendment. | 131.  Nichols Decl., ¶ 41 |
| 132.  It is Plaintiff Nichols' understanding that Plaintiff Nichols does not satisfy the Los Angeles Sheriff's Department "good cause" requirement for being issued a license to carry a loaded, concealable firearm and concealed carry substantially burdens Plaintiff Nichols' ability to defend himself even if he had a concealed carry license. | 132.  Nichols Decl., ¶ 42 |
| 133.  Defendant Harris has never promised to not enforce the laws at issue. | 133.  Nichols Decl., ¶ 43<br>        Dkt. #82, pg 6, lines 2-5. |
| 134.  Justifiable Homicide: Self-Defense or Defense of Another. ("[A defendant is not required to retreat. He or she is entitled to stand his or her | 134.  CALCRIM 505 |

| | |
|---|---|
| ground and defend himself or herself and, if reasonably necessary, to pursue an assailant until the danger of (death/great bodily injury/ {insert forcible and atrocious crime}) has passed. This is so even if safety could have been achieved by retreating.]") | |
| 135.  Right to Self-Defense or Defense of Another (Non-Homicide). ("[A defendant is not required to retreat. He or she is entitled to stand his or her ground and defend himself or herself and, if reasonably necessary, to pursue an assailant until the danger of (death/bodily injury/ {insert crime}) has passed. This is so even if safety could have been achieved by retreating.]") | 135.  CALCRIM 3470 |
| 136.  74% of homicides of White males occur outside of the victim's residence. | 136.  Exhibit D – Homicide in California 2011 - Attorney General – Department of Justice Publication – pg Table 19 on pg 25. |

42

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

## II. CONCLUSIONS OF LAW

1. A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

2. The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. "A mere scintilla of evidence supporting the nonmoving party's position is insufficient:" the moving party will win summary judgment unless there is "evidence on which a jury could reasonably find for the non-moving party." Rivera v. Philip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir. 2005).

3. ""Right of the People." The first salient feature of the operative clause is that it codifies a "right of the people." The unamended Constitution and the Bill of Rights use the phrase "right of the people" two other times... All three of these instances unambiguously refer to individual rights, not "collective" rights, or rights that may be exercised only through participation in some corporate body."" *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2790.

4. ""Keep and bear Arms." We move now from the holder of the right—"the people"—to the substance of the right: "to keep and bear Arms."... Some have made the argument, bordering on the frivolous, that only those arms in existence in the 18th century are protected by the Second Amendment. We do not interpret constitutional rights that way. Just as the First Amendment protects modern forms of communications... the Second Amendment extends, prima facie, to all

43

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  instruments that constitute bearable arms, even those that were not in existence at

2  the time of the founding." *District of Columbia v. Heller*, 128 S. Ct. 2783 -

3  Supreme Court (2008) at 2791-2792.

4      5.  "Meaning of the Operative Clause. Putting all of these textual elements

5  together, we find that they guarantee the individual right to possess and carry

6  weapons in case of confrontation. This meaning is strongly confirmed by the

7  historical background of the Second Amendment. We look to this because it has

8  always been widely understood that the Second Amendment, like the First and

9  Fourth Amendments, codified a pre-existing right. The very text of the Second

10  Amendment implicitly recognizes the pre-existence of the right and declares only

11  that it "shall not be infringed." As we said in *United States v. Cruikshank*, 92 U.S.

12  542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution.

13  Neither is it in any manner dependent upon that instrument for its existence. The

14  Second amendment declares that it shall not be infringed . . . ."" *District of*

15  *Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2797-2798.

16      6.  "Thus, the right secured in 1689 as a result of the Stuarts' abuses was by

17  the time of the founding understood to be an individual right protecting against

18  **both public and private violence**." *District of Columbia v. Heller*, 128 S. Ct.

19  2783 - Supreme Court (2008) at 2798-2799.  (emphasis added).

20      7.  "In *Nunn v. State*, 1 Ga. 243, 251 (1846), the Georgia Supreme Court

21  construed the Second Amendment as protecting the "natural right of self-defence"

22  and therefore struck down a ban on carrying pistols openly. **Its opinion perfectly**

23  **captured the way in which the operative clause of the Second Amendment**

24  **furthers the purpose announced in the prefatory clause**, in continuity with the

25  English right:

26  **"The right of the whole people, old and young, men, women and boys, and not**

27  **militia only, to keep and bear arms of every description, and not such merely**

28  **as are used by the militia, shall not be infringed, curtailed, or broken in upon,**

44

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  **in the smallest degree**; and all this for the important end to be attained: the rearing

2  up and qualifying a well-regulated militia, so vitally necessary to the security of a

3  free State. Our opinion is, that any law, State or Federal, is repugnant to the

4  Constitution, and void, which contravenes this right, originally belonging to our

5  forefathers, trampled under foot by Charles I. and his two wicked sons and

6  successors, re-established by the revolution of 1688, conveyed to this land of

7  liberty by the colonists, and finally incorporated conspicuously in our own Magna

8  Charta!'" *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008)

9  at 2809.  (emphasis added).

10      8. "We are of the opinion, then, that so far as the act of 1837 seeks to

11  suppress the practice of carrying certain weapons *secretly*, that it is valid, inasmuch

12  as it does not deprive the citizen of his *natural* right of self-defence, or of his

13  constitutional right to keep and bear arms. But that so much of it, as contains a

14  prohibition against bearing arms *openly*, is in conflict with the Constitution, and

15  *void*; and that, as the defendant has been indicted and convicted for carrying a

16  pistol, without charging that it was done in a concealed manner, under that portion

17  of the statute which entirely forbids its use, the judgment of the court below must

18  be reversed, and the proceeding quashed." *Nunn v. State*, 1 Ga. (1 Kel.) 243

19  (1846) at 251.

20      9. "Likewise, in *State v. Chandler*, 5 La. Ann. 489, 490 (1850), the

21  Louisiana Supreme Court held that citizens had a right to carry arms openly: "This

22  is the right guaranteed by the Constitution of the United States, and which is

23  calculated to incite men to a manly and noble defence of themselves, if necessary,

24  and of their country, without any tendency to secret advantages and unmanly

25  assassinations."" *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court

26  (2008) at 2809.

27      10. "The act of the 25th of March, 1813, makes it a misdemeanor to be

28  "found with a concealed weapon, such as a dirk, dagger, knife, pistol, or any other

1  deadly weapon concealed in his bosom, coat, or any other place about him, that
2  does not appear in full view." This law became absolutely necessary to counteract
3  a vicious state of society, growing out of the habit of carrying concealed weapons,
4  and to prevent bloodshed and assassinations committed upon unsuspecting
5  persons. It interfered with no man's right to carry arms (to use its words) "in full
6  open view," which places men upon an equality. This is the right guaranteed by the
7  Constitution of the United States, and which is calculated to incite men to a manly
8  and noble defence of themselves, if neccessary, and of their country, without any
9  tendency to secret advantages and unmanly assassinations." *State v. Chandler*, 5
10  La. Ann. 489, 52 Am. Dec. 599 (1850) at 489-490.

11      11. "Like most rights, the right secured by the Second Amendment is not
12  unlimited. From Blackstone through the 19th-century cases, commentators and
13  courts routinely explained that the right was not a right to keep and carry any
14  weapon whatsoever in any manner whatsoever and for whatever purpose. See, e.g.,
15  Sheldon, in 5 Blume 346; Rawle 123; Pomeroy 152-153; Abbott 333. **For
16  example, the majority of the 19th-century courts to consider the question held
17  that prohibitions on carrying concealed weapons were lawful under the
18  Second Amendment or state analogues.** See, e.g., *State v. Chandler*, 5 La. Ann.,
19  at 489-490; *Nunn v. State*, 1 Ga., at 251; see generally 2 Kent *340, n. 2; The
20  American Students' Blackstone 84, n. 11 (G. Chase ed. 1884). Although we do not
21  undertake an exhaustive historical analysis today of the full scope of the Second
22  Amendment, nothing in our opinion should be taken to cast doubt on longstanding
23  prohibitions on the possession of firearms by felons and the mentally ill, or laws
24  forbidding the carrying of firearms in sensitive places such as schools and
25  government buildings, or laws imposing conditions and qualifications on the
26  commercial sale of arms." *District of Columbia v. Heller*, 128 S. Ct. 2783 -
27  Supreme Court (2008) at 2816-2817.  (emphasis added).
28

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

12. "Two years ago, in *District of Columbia v. Heller*, 554 U.S. ___, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, **and** we struck down a District of Columbia law that banned the possession of handguns in the home." *McDonald v. City of Chicago*, Ill., 130 S. Ct. 3020 - Supreme Court (2010) at 3026.  (emphasis added).

13. "Both *Heller* and *McDonald* do say that "the need for defense of self, family, and property is most acute" in the home, id. at 3036 (emphasis added); 554 U.S. at 628, 128 S.Ct. 2783, but that doesn't mean it is not acute outside the home. *Heller repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home*, as when it says that the amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 554 U.S. at 592, 128 S.Ct. 2783. *Confrontations are not limited to the home.*" *Moore v. Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit (2012) at 935-936.  (italics added).

14. "After reviewing these two lines of authority—the Illinois cases holding that section 24-1.6(a)(1), (a)(3)(A) is constitutional, and the Seventh Circuit's decision holding that it is not—we are convinced that the Seventh Circuit's analysis is the correct one. As the Seventh Circuit correctly noted, neither *Heller* nor *McDonald* expressly limits the second amendment's protections to the home. On the contrary, both decisions contain language strongly suggesting if not outright confirming that the second amendment right to keep and bear arms extends beyond the home. Moreover, if *Heller* means what it says, and "individual self-defense" is indeed "the central component" of the second amendment right to keep and bear arms (*Heller*, 554 U.S. at 599), then it would make little sense to restrict that right to the home, as "[c]onfrontations are not limited to the home." *Moore*, 702 F.3d at 935-36. Indeed, *Heller* itself recognizes as much when it states that "the right to have arms *** was by the time of the founding understood to be

47

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

an individual right protecting against both public and private violence." (Emphasis added.) *Heller*, 554 U.S. at 593-94." *People v. Aguilar* (2013) at ¶ 20 IL 112116, ___ N.E.2d ___, 2013 Ill. LEXIS 853, 2013 WL 5080118 (Ill. 2013) (unanimous decision).

15. "In *Heller*, the Supreme Court concluded, by parsing the language in the operative clause of the Second Amendment, that *the Amendment does "guarantee the individual right to possess and carry weapons in case of confrontation*," a codification, the Court said, of a "pre-existing" right. *Heller*, 554 U.S. at 592, 128 S.Ct. 2783; see id. at 595, 128 S.Ct. 2783 ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."). The Court explained that "the inherent right of self-defense has been central to the Second Amendment"... *The "core lawful purpose" of the right to bear arms, therefore, is for "self-defense.*" Id. at 630, 128 S.Ct. 2783." *US v. Bryant*, 711 F. 3d 364 - Court of Appeals, 2nd Circuit (2013) at 368. (italics added).

16. "After conducting an analysis "of both text and history," id. at 595, 128 S.Ct. 2783, the Court recognized that *the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation*," id. at 592, 128 S.Ct. 2783. The "central component of [this] right" is self-defense. Id. at 599, 128 S.Ct. 2783." *NATIONAL RIFLE ASS'N OF AMERICA, INC. v. McCraw*, 719 F. 3d 338 - Court of Appeals, 5th Circuit (2013) at 346. (italics added).

17. "In *Heller*, the Supreme Court held that *the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation...*" *Schrader v. Holder*, 704 F. 3d 980 - Court of Appeals, Dist. of Columbia Circuit (2013) at 988. (italics added).

18. "In *Heller*, the Supreme Court concluded that the Second Amendment codifies a pre-existing "individual right to possess and carry weapons in case of

48

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  confrontation." 554 U.S. at 592, 128 S.Ct. 2783." *Kachalsky v. County of*
2  *Westchester*, 701 F. 3d 81 - Court of Appeals, 2nd Circuit (2012) at 88.
3  "In *Heller*, the Supreme Court struck down the District of Columbia's ban on
4  handgun possession, concluding that *the Second Amendment "guarantee[s] the*
5  *individual right to possess and carry weapons in case of confrontation."* 554 U.S.
6  at 592, 635, 128 S.Ct. 2783." *US v. Henry*, 688 F. 3d 637 - Court of Appeals, 9th
7  Circuit (2012) at 639-640.  (italics added).

8      19.  "In *District of Columbia v. Heller*, the Supreme Court held that the
9  Second Amendment codified a pre-existing "*individual right to possess and carry*
10  *weapons in case of confrontation.*" 554 U.S. at 592, 128 S.Ct. 2783." *US v.*
11  *Decastro*, 682 F. 3d 160 - Court of Appeals, 2nd Circuit (2012) at 165.  (italics
12  added).

13      20.  "[A]lthough the Court "d[id] not undertake an exhaustive historical
14  analysis . . . of the full scope of the Second Amendment," id. at 626, 128 S.Ct.
15  2783, it did examine the Amendment's history extensively, concluding that "all of
16  [the Second Amendment's] elements together" coalesce to "*guarantee the*
17  *individual right to possess and carry weapons in case of confrontation,*" id. at 592,
18  128 S.Ct. 2783. In *McDonald*, the Court made this Second Amendment guarantee
19  applicable to the states via the Fourteenth Amendment and reiterated *Heller*'s
20  reasoning that "*individual self-defense is `the central component' of the Second*
21  *Amendment right.*" 130 S.Ct. at 3036 (quoting *Heller*, 554 U.S. at 599, 128 S.Ct.
22  2783)." *Walters v. Wolf*, 660 F. 3d 307 - Court of Appeals, 8th Circuit (2011) at
23  316.  (italics added).

24      21.  "Resolving the longstanding issue whether the Second Amendment
25  guarantees an individual right to keep and bear arms or a collective right to do so
26  in connection with militia service, the Supreme Court in *Heller* held, based on "the
27  historical background of the Second Amendment," that *the Amendment guarantees*
28  *the "pre-existing" "individual right to possess and carry weapons in case of*

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  *confrontation." Heller*, 128 S.Ct. at 2797 (emphasis omitted). Because the right

2  predated the Constitution, the Court looked to the historical record when

3  articulating its nature, noting that the right was secured to individuals according to

4  "'libertarian political principles,' not as members of a fighting force," to "protect[]

5  against both public and private violence." Id. at 2798-99. It also observed that

6  throughout the country's history, Americans have valued the right not only to be

7  able to prevent the elimination of militia, but "even more important[ly], for self-

8  defense and hunting." Id. at 2801." *US v. Masciandaro*, 638 F. 3d 458 - Court of

9  Appeals, 4th Circuit (2011) at 465-466.  (italics added).

10      22.  "The Court began its textual analysis by explaining that the function of

11  the Second Amendment's prefatory clause ("A well regulated Militia, being

12  necessary to the security of a free State") is merely to announce a purpose for the

13  command given by the operative clause ("the right of the people to keep and bear

14  Arms, shall not be infringed")—"apart from that clarifying function, [the] prefatory

15  clause does not limit or expand the scope of the operative clause." Id. at 2789.[2]

16  *The operative clause, Heller concluded, "guarantee[s] the individual right to*

17  *possess and carry weapons in case of confrontation," a meaning that "is strongly*

18  *confirmed by the historical background of the Second Amendment."* Id. at 2797.

19  Consideration of the historical sources was important because, as *Heller* explained,

20  "the Second Amendment, like the First and Fourth Amendments, codified a pre-

21  existing right." Id." *US v. Chester*, 628 F. 3d 673 - Court of Appeals, 4th Circuit

22  (2010) at 675.  (italics added).

23      23.  "The Second Amendment provides: "A well regulated Militia, being

24  necessary to the security of a free State, the right of the people to keep and bear

25  Arms, shall not be infringed." U.S. Const. amend. II. Approximately two years

26  ago, in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d

27  637 (2008), the Supreme Court held that several "District of Columbia [statutes]

28  prohibit[ing] ... the possession of usable handguns in the home violate[d] the

50

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

Second Amendment...." 128 S.Ct. at 2787-88. In doing so, the Court concluded

that the Second Amendment "confer[s] an individual right to keep and bear arms."

Id. at 2799; see id. at 2797 (concluding that the operative clause *of the Second*

*Amendment "guarantee[s] the individual right to possess and carry weapons in*

*case of confrontation*")." *US v. Reese*, 627 F. 3d 792 - Court of Appeals, 10th

Circuit (2010) at 800. (italics added).

24. "Because "[c]onstitutional rights are enshrined with the scope they were

understood to have when the people adopted them," id. at 2821, the Court

interpreted the text in light of its meaning at the time of ratification, id. at 2797-99.

It concluded that the Second Amendment codified a pre-existing "individual right

to possess and carry weapons in case of confrontation." Id. at 2797. The "prefatory

clause"—providing "[a] well regulated Militia being necessary to the security of a

Free State"—explains only the purpose for codification, viz., preventing the

disbandment of the militia by the federal government. Id. at 2801. It says nothing

about the content of the right to bear arms and does not mean the right was

protected solely to preserve the militia. Id. "[M]ost [Americans] undoubtedly

thought it even more important for self-defense and hunting," and the interest in

self-defense "was the central component of the right itself." Id." *US v.*

*Marzzarella*, 614 F. 3d 85 - Court of Appeals, 3rd Circuit (2010) at 89-90.

25. "In *Heller*, the Court based its holding on a reading of the Second

Amendment's main clause, the "operative clause." Id. at 2789 ("The Second

Amendment is naturally divided into two parts: its prefatory clause and its

operative clause. The former does not limit the latter grammatically but rather

announces a purpose."). The Court read the operative clause to "guarantee the

individual right to possess and carry weapons in case of confrontation." Id. at 2797.

Although not codified in the amendment, the Court found that this right included a

right to "self-defense," which it described as "the central component of the right

itself." Id. at 2801. It held that the District of Columbia statutes were

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

unconstitutional because they prohibited a class of arms that Americans utilize for the lawful purpose of self-defense, thus prohibiting citizens from using firearms for "the core lawful purpose of self-defense." Id. at 2818." *US v. Chester*, 628 F. 3d 673 - Court of Appeals, 4th Circuit (2010) at 675.

26. "The Court based its holding on a reading of the amendment's main clause, the "operative clause." Id. at 2789. The Court read the operative clause to "guarantee the individual right to possess and carry weapons in case of confrontation." Id. at 2797. Although not "codifi[ed]" in the amendment, this right included a right to "self-defense," which the Court described as "the central component of the right itself." Id. at 2801; see also id. at 2817 ("[T]he inherent right of self-defense has been central to the Second Amendment right."). Thus, the statutes in question were unconstitutional because they "prohibit[] . . . an entire class of `arms' that is overwhelmingly chosen by American society for th[e] lawful purpose [of self-defense]," and "make[] it impossible for citizens to use [firearms] for the core lawful purpose of self-defense."" *US v. RENE E.*, 583 F. 3d 8 - Court of Appeals, 1st Circuit (2009) at 11.

27. "In striking down the District of Columbia's ban on the possession of usable handguns, the Supreme Court in *Heller* concluded, for the first time, that the Second Amendment guarantees an individual right to possess weapons unconnected with militia service. See 128 S.Ct. at 2787-812; see also id. at 2797 (stating that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation"). The Court explained that this individual right comported with the purpose of the Amendment—to prevent the elimination of the militia—because "the way tyrants had eliminated a militia consisting of all the able-bodied men was not by banning the militia but simply by taking away the people's arms...." Id. at 2801." *US v. Tagg*, 572 F. 3d 1320 - Court of Appeals, 11th Circuit (2009) at 1326.

52

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

28. "In *Heller*, the Court held for the first time that the Second Amendment "codified a pre-existing" individual right to keep and bear arms. 554 U.S. at 592, 128 S.Ct. at 2797. In so holding, the Court struck down a prohibition of the possession of operable handguns in one's home.[31] The Court reached its holding after an extensive discussion of the background of the Second Amendment at the time of drafting, reasoning that, while "self-defense had little to do with codification; it was the central component of the right itself." Id. at 599, 128 S.Ct. at 2801 (emphasis in original). The Court concluded that the District of Columbia's ban made it impossible to use a handgun for the "core lawful purpose of self-defense." Id. at 630, 128 S.Ct. at 2818." *GeorgiaCarry. Org, Inc. v. Georgia*, 687 F. 3d 1244 - Court of Appeals, 11th Circuit (2012) at 1259.

29. "Any Second Amendment analysis must now begin with the Supreme Court's recent seminal decision in *Heller*, which held that the Second Amendment codified a "pre-existing" right that allows individuals to keep and bear arms. *Heller*, 554 U.S. at 592, 595, 128 S.Ct. 2783. The Court noted that the right to keep and bear arms was understood by the founding generation to encompass not only militia service, but also "self-defense and hunting," id. at 599, 128 S.Ct. 2783, and that, indeed, self-defense constituted "the central component of the right," id." *US v. Carter*, 669 F. 3d 411 - Court of Appeals, 4th Circuit (2012) at 414-415.

30. "The Second Amendment protects similarly intangible and unquantifiable interests. *Heller* held that the Amendment's central component is the right to possess firearms for protection. 554 U.S. at 592-95, 128 S.Ct. 2783. Infringements of this right cannot be compensated by damages." *Ezell v. City of Chicago*, 651 F. 3d 684 - Court of Appeals, 7th Circuit (2011) at 699.

31. "Two years after deciding *Heller*, the Supreme Court revisited the Second Amendment in *McDonald v. City of Chicago*, ___ U.S. ___, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), holding that the Second Amendment was applicable to the States by incorporation into the Fourteenth Amendment.

53

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  Explaining *Heller* further, the *McDonald* Court stated that "self-defense is the
2  central component" of the individual right to keep and bear arms and that this right
3  is "fundamental." Id. at 3036, 3038 n. 17 (plurality opinion) (emphasis omitted)."
4  *US v. Masciandaro*, 638 F. 3d 458 - Court of Appeals, 4th Circuit (2011) at 467.

5      32.  "As has been amply discussed, in *Heller*, the Supreme Court invalidated
6  a gun ban in the District of Columbia, holding that the Second Amendment
7  guarantees to law-abiding citizens the right to possess handguns for the purposes of
8  self-defense. The Court identified the right to self-defense as "the central
9  component of the right itself," *Heller*, 128 S.Ct. at 2802…" *US v. Chester*, 628 F.
10 3d 673 - Court of Appeals, 4th Circuit (2010) at 686.

11      33.  "In *Heller*, the United States Supreme Court held that the Second
12 Amendment to the federal Constitution codifies the long-existing right of an
13 individual to possess and carry weapons for self-defense in case of confrontation.
14 (*Heller*, supra, 554 U.S. at pp. 592-595; see *McDonald v. Chicago* (2010) 561 U.S.
15 ___ [177 L.Ed.2d 894, 130 S.Ct. 3020] [2d Amend. applies to the states].)" *People*
16 *v. Mitchell*, 209 Cal.App.4th 1364 (2012) at 1372-1373.

17      34.  "Amendment Two of the United States Constitution states, "A well
18 regulated Militia, being necessary to the security of a free State, the right of the
19 people to keep and bear Arms, shall not be infringed." (U.S. Const., 2d Amend.)
20 The Second Amendment protects an individual's right to possess and carry
21 weapons in case of confrontation. (*Heller*, supra, 554 U.S. at pp. 592, 595.) The
22 Second Amendment is fully applicable to the states by the due process clause of
23 the Fourteenth Amendment. (*McDonald v. City of Chicago* (2010) 561 U.S. ___
24 [177 L.Ed.2d 894, 130 S.Ct. 3020].)" *People v. Ellison*, 196 Cal.App.4th 1342
25 (2011) at 1347.

26      35.  "In *Heller*, the Supreme Court held the Second Amendment protects an
27 individual right "to possess and carry weapons in case of confrontation,"
28 unconnected with service in a militia. (*Heller*, supra, 554 U.S. at p. 592 [128 S.Ct.

54

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

at p. 2797]; see also id. at pp. 627-630, 634-636 [128 S.Ct. at pp. 2817-2818, 2821-2822].)" *People v. Delacy*, 192 Cal.App.4th 1481 (2011) at 1486-1487.

36. "In so holding, the court explained that the Second Amendment codified a pre-existing right of the individual "to possess and carry weapons in case of confrontation." (Id. at p. ___ [171 L.Ed. at p. 657] ["The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it `shall not be infringed.'"].)" *People v. James*, 174 Cal. App. 4th 662 (2009) at 674.

37. "For example, the Court said, "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues."" *NATIONAL RIFLE ASS'N OF AMERICA, INC. v. McCraw*, 719 F. 3d 338 - Court of Appeals, 5th Circuit (2013) at 346.

38. "More recently, in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the Court noted that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues," and explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions." Id. at 626, 128 S.Ct. 2783. In light of our nation's extensive practice of restricting citizens' freedom to carry firearms in a concealed manner, we hold that this activity does not fall within the scope of the Second Amendment's protections." *Peterson v. Martinez*, 707 F. 3d 1197 - Court of Appeals, 10th Circuit (2013) at 1201.

39. "In the nineteenth century, laws directly regulating concealable weapons for public safety became commonplace and far more expansive in scope than regulations during the Founding Era. Most states enacted laws banning the carrying of concealed weapons.[21] And as *Heller* noted, "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  weapons were lawful under the Second Amendment or state analogues." *Heller,*

2  554 U.S. at 626, 128 S.Ct. 2783. Indeed, the nineteenth century Supreme Court

3  agreed, noting that "the right of the people to keep and bear arms... is not infringed

4  by laws prohibiting the carrying of concealed weapons." *Robertson v. Baldwin,*

5  165 U.S. 275, 281-82, 17 S.Ct. 326, 41 L.Ed. 715 (1897)." *Kachalsky v. County of*

6  *Westchester,* 701 F. 3d 81 - Court of Appeals, 2nd Circuit (2012) at 95-96.

7       40. **"This appeal presents a single issue**: Does New York's handgun

8  licensing scheme violate the Second Amendment by requiring an applicant to

9  demonstrate "proper cause" to obtain a **license to carry a concealed handgun** in

10  public?" *Kachalsky v. County of Westchester,* 701 F. 3d 81 - Court of Appeals,

11  2nd Circuit (2012) at 83.  (emphasis added).

12       41. "In *Heller,* the Court explained that "the right secured by the Second

13  Amendment is not unlimited" and noted that "the majority of the 19th-century

14  courts to consider the question held that prohibitions on carrying concealed

15  weapons were lawful under Second Amendment or state analogues." 128 S.Ct. at

16  2816. We have interpreted this portion of *Heller* as stating that "laws prohibiting

17  the carrying of concealed weapons" are an "example[] of `longstanding' restrictions

18  that [are] `presumptively lawful' under the Second Amendment." *United States v.*

19  *Rene E.,* 583 F.3d 8, 12 (1st Cir.2009) (quoting *Heller,* 128 S.Ct. at 2816-17 & n.

20  26); see also *Robertson v. Baldwin,* 165 U.S. 275, 281-82, 17 S.Ct. 326, 41 L.Ed.

21  715 (1897) (observing that "the first 10 amendments to the [C]onstitution" protect

22  rights that are "subject to certain well-recognized exceptions" and stating, in dicta,

23  that the Second Amendment right "is not infringed by laws prohibiting the carrying

24  of concealed weapons").[9] Licensing of the carrying of concealed weapons is

25  presumptively lawful, and Hightower makes no serious argument to the contrary."

26  *Hightower v. City of Boston,* 693 F. 3d 61 - Court of Appeals, 1st Circuit (2012) at

27  73-74.

28

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

42. "Accordingly, as the *Heller* Court acknowledged, the Second Amendment right, like other constitutional rights, is "not unlimited" in that it is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626, 128 S.Ct. 2783. Indeed, *Heller* lists several examples of what the Court deemed to be "presumptively lawful regulatory measures," including prohibitions on carrying concealed weapons…" *US v. Carter*, 669 F. 3d 411 - Court of Appeals, 4th Circuit (2012) at 415.

43. "See *Heller*, 128 S.Ct. at 2816 (noting that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues"). Since historical meaning enjoys a privileged interpretative role in the Second Amendment context, see id. at 2816; *Skoien*, 587 F.3d at 809, this longstanding out-of-the-home/in-the-home distinction bears directly on the level of scrutiny applicable. Indeed, one of the principal cases relied upon in *Heller* upheld a state concealed carry ban after applying review of a decidedly less-than-strict nature. See *Nunn v. State*, 1 Ga. 243, 249 (1846) ("But a law which is merely intended to promote personal security, and to put down lawless aggression and violence, and to this end prohibits the wearing of certain weapons in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the Constitution")." *US v. Masciandaro*, 638 F. 3d 458 - Court of Appeals, 4th Circuit (2011) at 470-471.

44. "Nor does *Heller* purport to invalidate any and every regulation on gun use; to the contrary, the Court in *Heller* disclaims any such intent:
Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.... For example,

57

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues...." *Justice v. Town of Cicero*, 577 F. 3d 768 - Court of Appeals, 7th Circuit (2009) at 774.

45. "The Court also articulated a nonexclusive list of what it viewed to be acceptable government regulation of firearms: [T]he majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *US v. Fincher*, 538 F. 3d 868 - Court of Appeals, 8th Circuit (2008) at 873.

46. "As noted in *Heller*, generally, prohibitions on carrying concealed weapons have historically been upheld in the United States:

"Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. See, e.g., Sheldon, in 5 Blume, 346; Rawle 123; Pomeroy 152-153; Abbott 333. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, e.g., *State v. Chandler*, 5 La Ann at 489-490; *Nunn v. State*, 1 Ga at 251; see generally 2 Kent *340, n 2; The American Students' Blackstone 84, n 11 (G. Chase ed 1884)."

554 US at 626." *State v. Christian*, Oregon Supreme Court No. S060407 (2013) fn. 8.

47. "[T]he United States Supreme Court stated that "the right secured by the Second Amendment is not unlimited." The Court observed that "[f]rom Blackstone through the 19th Century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626, 128 S.Ct. 2783.

58

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

Illustrating this point, the Court related that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were unlawful under the Second Amendment or state analogues." *State v. RPH*, 265 P. 3d 890 - Wash: Supreme Court 2011 at 900.

48. "*Heller* noted, as mentioned above, that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." 554 U.S. at 626, 128 S.Ct. 2783,[7] citing *Nunn v. State*, 1 Ga. 243 (Ga.1846) ("so far as the act . . . seeks to suppress the practice of carrying certain weapons secretly, . . . it is valid, inasmuch as it does not deprive the citizen of his natural right of self-defence, or of his constitutional right to keep and bear arms") (emphasis in original); and *State v. Chandler*, 5 La.Ann. 489, 489-90 (1850) (statute prohibiting the carrying of concealed weapons did not violate the Constitution of the United States). Indeed, more than a century ago, the Supreme Court commented that "the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons[.]" *Robertson v. Baldwin*, 165 U.S. 275, 281-82, 17 S.Ct. 326, 41 L.Ed. 715 (1897) (dictum).

49. Such laws recognize the particular danger posed by the carrying of concealed weapons. See, e.g., *(Pomeroy) Brown v. United States*, 58 App.D.C. 311, 312, 30 F.2d 474, 475 (1929) ("What was the purpose of Congress in the enactment of this law? Obviously, the protection of the public from the menace of concealed `deadly or dangerous' weapons. No one familiar with present conditions will doubt the necessity for such a statute."); *People v. Yarbrough*, 169 Cal.App.4th 303, 86 Cal.Rptr.3d 674, 682 (2008) ("Unlike possession of a gun for protection within a residence, carrying a concealed firearm presents a recognized threat to public order, and is prohibited as a means of preventing physical harm to persons other than the offender") (internal quotation marks and citation omitted); *State v. Chandler*, 5 La.Ann. at 489-90 ("This law became absolutely necessary to

59

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  counteract a vicious state of society, growing out of the habit of carrying concealed

2  weapons, and to prevent bloodshed and assassinations committed upon

3  unsuspecting persons.")…" *Gamble v. US*, 30 A. 3d 161 - DC: Court of Appeals

4  (2011) at 165.

5      50. "This right "to keep and bear Arms," however, has limitations:

6  Like most rights, the right secured by the Second Amendment is not unlimited.

7  From Blackstone through 19th century cases, commentators and courts routinely

8  explained that the right was not a right to keep and carry any weapon whatsoever

9  in any manner whatsoever and for whatever purpose. For example, the majority of

10  the 19th-century courts to consider the question held that prohibitions on carrying

11  concealed weapons were lawful under the Second Amendment or state analogues."

12  *Williams v. State*, 10 A. 3d 1167 - Md: Court of Appeals (2011) at 1175.

13      51. "Another equally damaging defect in Mr. Mack's argument is that

14  *Heller* did not recognize a right to carry concealed weapons. By Mr. Mack's own

15  admission, he left the house and encountered Mr. Price while carrying the ice pick

16  in his pocket. In *Heller* the Supreme Court made clear that "the right secured by

17  the Second Amendment is not unlimited," and it specifically acknowledged that

18  laws prohibiting the carrying of concealed weapons have long been upheld as

19  appropriate limits on that right. 128 S.Ct. at 2816 ("[T]he majority of 19th century

20  courts to consider the question held that prohibitions on carrying concealed

21  weapons were lawful."). See *Robertson v. Baldwin*, 165 U.S. 275, 281-82, 17 S.Ct.

22  326, 41 L.Ed. 715 (1897) ("[T]he right of the people to keep and bear arms ... is not

23  infringed by laws prohibiting the carrying of concealed weapons...."" *Mack v. US*,

24  6 A. 3d 1224 - DC: Court of Appeals (2010) at 1236.

25      52. "Like most rights, the right secured by the Second Amendment is not

26  unlimited. From Blackstone through the 19th-century cases, commentators and

27  courts routinely explained that the right was not a right to keep and carry any

28  weapon whatsoever in any manner whatsoever and for whatever purpose.

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1    [Citations omitted.] For example, the majority of the 19th-century courts to

2    consider the question held that prohibitions on carrying concealed weapons were

3    lawful under the Second Amendment or state analogues." *Wooden v. US*, 6 A. 3d

4    833 - DC: Court of Appeals (2010) at 836.

5        53. "However, the Court also declared that the Second Amendment right is

6    not absolute, that it "is not unlimited," id. at 2816; it does not "protect the right of

7    citizens to carry arms for any sort of confrontation...", id. at 2799; nor is it "a right

8    to keep and carry any weapon whatsoever in any manner whatsoever and for

9    whatever purpose," id. at 2816 (citation omitted). Moreover, historically,

10   "prohibitions on carrying concealed weapons were lawful under the Second

11   Amendment or state analogues." Id. (citations omitted)." *Plummer v. US*, 983 A.

12   2d 323 - DC: Court of Appeals (2009) at 336.

13       54. "The court did not recognize a "right to keep and carry any weapon

14   whatsoever in any manner whatsoever and for whatever purpose," observing that

15   historically, most courts have "held that prohibitions on carrying concealed

16   weapons were lawful under the Second Amendment or state analogues." (Id. at p.

17   ___ [171 L.Ed.2d at p. 678].) The high court's decision in *Heller* does not require

18   us to conclude that possession in a public place of a loaded, cocked, semiautomatic

19   weapon with a chambered round, **concealed** in a large glove and ready to fire,

20   cannot be defined as a crime under state law." *People v. Dykes*, 46 Cal. 4th 731 -

21   Cal: Supreme Court (2009) at 778. (emphasis added).

22       55. "However, the *Heller* court recognized that the right to bear arms in

23   self-defense, like most constitutional rights, is not unlimited. (*Heller*, supra, 554

24   U.S. at pp. 595, 626.) "[T]he right [is] not a right to keep and carry any weapon

25   whatsoever in any manner whatsoever and for whatever purpose." (Id. at p. 626,

26   italics added.) Of particular relevance here, the *Heller* court commented that the

27   majority of 19th-century courts held that "prohibitions on carrying concealed

28

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  weapons were lawful under the Second Amendment...." (Ibid., italics added.)"
2  *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012) at 1373.

3  56. "However, the Supreme Court observed that the right is not unlimited.
4  (*Heller*, supra, 554 U.S. at pp. 595, 626.) The "right [is] not a right to keep and
5  carry any weapon whatsoever in any manner whatsoever and for whatever
6  purpose." (Ibid.) The court acknowledged that the majority of 19th-century courts
7  to consider the question held that prohibitions on carrying concealed weapons were
8  lawful under the Second Amendment. (554 U.S. at pp. 595, 626.)" *People v.*
9  *Ellison*, 196 Cal. App. 4th 1342 (2011) at 1348.

10  57. "In addition to the list of "presumptively lawful regulatory measures"
11  noted in our earlier discussion, the *Heller* opinion emphasizes, with apparent
12  approval, that "the majority of the 19th-century courts to consider the question held
13  that prohibitions on carrying concealed weapons were lawful under the Second
14  Amendment or state analogues." (*Heller*, supra, 554 U.S. at pp. ___ - ___ & fn. 26
15  [128 S.Ct. at pp. 2816-2817 & fn. 26]; see also id. at p. ___ [128 S.Ct. at p. 2851]
16  (dis. opn. of Breyer, J.) [noting that "the majority implicitly, and appropriately, ...
17  broadly approv[es] a set of laws" restricting firearm use, including "prohibitions on
18  concealed weapons [and] forfeiture by criminals of the Second Amendment
19  right"].) Given this implicit approval of concealed firearm prohibitions, we cannot
20  read *Heller* to have altered the courts' longstanding understanding that such
21  prohibitions are constitutional. (See also *Robertson v. Baldwin* (1897) 165 U.S.
22  275, 281-282 [41 L.Ed. 715, 17 S.Ct. 326] [stating in dicta, "the right of the people
23  to keep and bear arms (art. 2) is not infringed by laws prohibiting the carrying of
24  concealed weapons ..."].)" *People v. Flores*, 169 Cal. App. 4th 568 (2008) at 575.

25  58. "The court declared: "[T]he majority of the 19th-century courts to
26  consider the question held that prohibitions on carrying concealed weapons were
27  lawful under the Second Amendment or state analogues. [Citations.]" *People v.*
28  *Yarbrough*, 169 Cal. App. 4th 303 (2008) at 313.

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

59. "Significantly, two of the examples the *Heller* majority cites as permissible examples are general prohibitions on concealed carry comparable to § 941.23. See id. at 2816 (citing *State v. Chandler*, 5 La. Ann. 489, 489-90 (La. 1850), and *Nunn v. State*, 1 Ga. 243, 251 (Ga. 1846)).

¶ 11 Little might argue that I have read too much into the majority's comment. But a further exchange between the *Heller* majority and dissenting Justice Breyer demonstrates that this was a carefully considered comment. In dissent, Justice Breyer wrote: [T]he majority's list, in Part III of its opinion, of provisions that in its view would survive Second Amendment scrutiny [consists of] (1) "prohibitions on carrying concealed weapons"; (2) "prohibitions on the possession of firearms by felons"; (3) "prohibitions on the possession of firearms by ... the mentally ill"; (4) "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings"; and (5) government "conditions and qualifications" attached "to the commercial sale of arms." *Heller*, 128 S. Ct. at 2869-70 (Breyer, J., dissenting) (emphasis added). What is particularly telling is the majority's response to Justice Breyer. The majority did not take issue with Justice Breyer's characterization, but instead embraced it: Justice BREYER chides us ... for not providing extensive historical justification *for those regulations of the right that we describe as permissible*.... [But] there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us. *Heller*, 128 S. Ct. at 2821 (emphasis added). Accordingly, I conclude there is little doubt that the *Heller* majority, and dissenters for that matter, consider general prohibitions on the carrying of concealed weapons permissible. If our supreme court looked to *Heller* for guidance, it would reach the same conclusion." *State v. Little*, Wis: Court of Appeals, 4th Dist. (2012) at ¶¶10-11.

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

60. "IT was held in this case, that the statute of 1831, prohibiting all persons, except travellers, from wearing or carrying concealed weapons, is not unconstitutional." *State v. Mitchell*, 3 Blackf. 229 (Ind. 1833) (full citation). "See also *State v. Reid*, 1 Ala. 612, 616-617 (1840) ("A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional")." *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008) at 2818.

61. "The question recurs, does the act, "To suppress the evil practice of carrying weapons secretly," trench upon the constitutional rights of the citizen? We think not." *State v. Reid*, 1 Ala. 612, 35 Am. Dec. 44 (1840) at 616.

62. "The Court first articulated the strict-scrutiny standard in *Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). There, we held that "[p]ressing public necessity may sometimes justify the existence of [racial discrimination]; racial antagonism never can." Id., at 216, 65 S.Ct. 193.[1] Aside from *Grutter*, the Court has recognized only two instances in which a "[p]ressing public necessity" may justify racial discrimination by the government. First, in *Korematsu*, the Court recognized that protecting national security may satisfy this exacting standard. In that case, the Court upheld an evacuation order directed at "all persons of Japanese ancestry" on the grounds that the Nation was at war with Japan and that the order had "a definite and close relationship to the prevention of espionage and sabotage." 323 U.S., at 217-218, 65 S.Ct. 193. Second, the Court has recognized that the government has a compelling interest in remedying past discrimination for which it is responsible, but we have stressed that a government wishing to use race must provide "a `strong basis in evidence for its conclusion that remedial action [is] necessary.'" *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500, 504, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (quoting *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 277, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986) (plurality

64

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1   opinion))." *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411 - Supreme
2   Court (2013) at 2422-2423.

3       63. "Once racial discrimination is shown to have been a "substantial" or
4   "motivating" factor behind enactment of the law, the burden shifts to the law's
5   defenders to demonstrate that the law would have been enacted without this
6   factor." *Hunter v. Underwood*, 471 US 222 - Supreme Court (1985) at 228.

7       64. "Similarly, in *Hunter v. Underwood*, 471 U.S. 222 (1985), the Supreme
8   Court unanimously struck down a provision of the Alabama constitution that
9   disenfranchised individuals convicted of crimes involving moral turpitude. The
10  provision was facially neutral because it applied to persons of all races. Id. at 227.
11  However, there was compelling evidence that the provision was adopted at the turn
12  of the 20th century for the purpose of disenfranchising black voters who were
13  convicted of such crimes at a far higher rate than white voters. Assuming,
14  arguendo, that the disenfranchisement provision would be constitutional if it were
15  passed in modern times without the intent to discriminate against racial minorities,
16  the Court nonetheless held that because it had been enacted for a discriminatory
17  purpose it "violates equal protection under *Arlington Heights*." Id. at 233. The
18  1903 Alabama legislature's willingness (or intent) to also disenfranchise white
19  individuals convicted of crimes of moral turpitude was irrelevant; all that mattered
20  was that the act "would not have been adopted . . . in the absence of the racially
21  discriminatory motivation."[24] Id. at 231." *PACIFIC SHORES PROPERTIES,*
22  *LLC v. City of Newport Beach*, Court of Appeals, 9th Circuit No. 11-55460 (2013)
23  Slip Op., pg., 34.

24      65. "Moreover, in *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627, 18
25  L.Ed.2d 830 (1967), the Supreme Court struck down a California housing law. The
26  law was facially neutral with respect to race: By its own terms, it simply protected
27  certain ownership and sale rights of property owners. But the Court concluded that,
28  on the basis of the context and circumstances of the law's passage, it had the

1  "design and intent" of weakening the state's anti-discrimination laws. Id. at 374, 87

2  S.Ct. 1627." *In re Golinski*, 587 F. 3d 901 - Court of Appeals, 9th Circuit (2009) at

3  903.

4      66. "The question presented is whether knowledge that the firearm is loaded

5  is an element of the offense of carrying a loaded firearm in a public place.[1] (Pen.

6  Code, § 12031, subd. (a).) We hold that such knowledge is not an element of the

7  offense and affirm the judgment." *People v. Dillard*, 154 Cal. App. 3d 261 (1984)

8  at 263.

9      67. "Penal Code section 12031, subdivision (a), does not require knowledge

10  that the gun was loaded, as the statute prohibits the carrying of a loaded firearm

11  and does not specify knowledge it is loaded as an element of the crime. Appellant

12  does not contend the contrary." *People v. Harrison*, 1 Cal. App. 3d 115 (1969) at

13  120.

14      68. "Last, Taylor alleges the gun was inoperable and operability is an

15  element of Penal Code section 12031, subdivision (a). Although we find the

16  evidence demonstrates the gun was operable, we hold operability is not an element

17  of possession of a loaded firearm in a public place." *People v. Taylor*, 151 Cal.

18  App. 3d 432 (1984) at 437.

19      69. "To summarize, we conclude that a Taser is a firearm and can be a

20  loaded firearm within section 12031. In other words, the question presented for

21  determination, whether section 12031, subdivision (a) applies to the weapon

22  known as a "Taser" is answered in the affirmative." *People v. Heffner*, 70 Cal.

23  App. 3d 643 (1977) at 652.

24      70. "In *Heller*, the court determined the treatment of the Second

25  Amendment in *Lewis v. United States* (1980) 445 U.S. 55, 65-66 [Second

26  Amendment guarantees no right to keep and bear a firearm that does not have

27  some reasonable relationship to the preservation or efficiency of a well regulated

28  militia]) to be "footnoted dictum . . . ." (*Heller*, supra, 554 U.S. at p. 625, fn. 25.)

66

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1   *Rupf* relied on *Lewis v. United States* for the proposition that "'[l]egislative

2   restrictions on the use of firearms are neither based upon constitutionally suspect

3   criteria, nor do they trench upon any constitutionally protected liberties.'" (*Rupf*,

4   supra, 85 Cal.App.4th at p. 421.) It also relied on Ninth Circuit and other federal

5   authorities—now abrogated—holding that the Second Amendment is a right held

6   by the states, and does not protect the possession of a weapon by a private citizen.

7   (Ibid., quoting *Hickman v. Block* (9th Cir. 1996) 81 F.3d 98, 101.)" *City of San*

8   *Diego v. Boggess*, Cal: Court of Appeal, 4th Appellate Dist., 1st Div. No. D061715

9   (2013) at fn. 7.

10      71. "For example, the majority of the 19th-century courts to consider the

11  question held that prohibitions on carrying concealed weapons were lawful under

12  the Second Amendment or state analogues. . . ." *NATIONAL RIFLE*

13  *ASSOCIATION OF AMERICA INCORPORATED v. BUREAU OF ALCOHOL*

14  *TOBACCO FIREARMS AND EXPLOSIVES* (2012) at 193.

15      72. "We know of no other enumerated constitutional right whose core

16  protection has been subjected to a freestanding "interest-balancing" approach. The

17  very enumeration of the right takes out of the hands of government—even the

18  Third Branch of Government—the power to decide on a case-by-case basis

19  whether the right is really worth insisting upon. A constitutional guarantee subject

20  to future judges' assessments of its usefulness is no constitutional guarantee at all.

21  Constitutional rights are enshrined with the scope they were understood to have

22  when the people adopted them, whether or not future legislatures or (yes) even

23  future judges think that scope too broad." *Heller* at 2821.

24      73. "Those who believe in the primacy of collective security read *Heller*

25  narrowly within the factual context in which the case arose. See discussion as to

26  Part III.B in *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011);

27  *Piszczatoski v. Filko*, 840 F. Supp. 2d 813 (D. N.J. 2012). Judge Posner

28  persuasively discredited that reading by his textual analysis in the opinion deciding

67

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). Aside from the textual meaning
2  of "bear arms," he recognized the common-sense view that armed self-defense is
3  important outside the home and that hunting takes place outside the home.
4  Accordingly, the Court concludes that the Second Amendment protects the right to
5  openly carry firearms outside the home for a lawful purpose, subject to such
6  restrictions as may be reasonably related to public safety." *BONIDY v. United*
7  *States Postal Service*, Dist. Court, D. Colorado - Civil Action No. 10-cv-02408-
8  RPM - (July 9, 2013).

9       74. Cities and counties are free to enact local laws restricting when and
10  where a CCW license is valid even if the issuing authority has not placed any
11  restrictions on the license. *CALGUNS FOUNDATION, INC. v. County of San*
12  *Mateo*, Cal: Court of Appeal, 1st Appellate Dist., 2nd Div. No. A136092 (August
13  2, 2013).

14       75. *McDonald v. City of Chicago*, Ill., 130 S. Ct. 3020 - Supreme Court
15  (2010) fully incorporated the private right to keep and bear arms to all states and
16  local governments. *McDonald* did not incorporate some shadow version of the
17  Federal guarantee or some watered-down version of the Federal guarantee. The
18  private right to keep and bear arms for the purpose of self-defense and for other
19  lawful purposes exists within the home, within the curtilage of one's home and in
20  non-sensitive public places.

21       76. "Mere refusal to consent to a stop or search does not give rise to
22  reasonable suspicion or probable cause. People do not have to voluntarily give up
23  their privacy or freedom of movement, on pain of justifying forcible deprivation of
24  those same liberties if they refuse." *US v. Fuentes*, 105 F. 3d 487 - Court of
25  Appeals, 9th Circuit 1997 at 490.

26       77. "Weapons traditionally found to be outside the scope of the protection
27  of the Second Amendment have been: pipe bombs, *United States v. Tagg* (11th Cir.
28  2009) 572 F. 2d 1320, 1326; concealed weapons *State v. Chandler* (1850); and,

68

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1  unmarked firearms, *United States v. Carter* (9th Cir. 2005)." *People v. LISCOTTI*,
2  Cal: Court of Appeal No. 2010043342 (August 30, 2013) Slip Op. pg., 3.
3      78.  "The policy underlying the prohibition against concealed weapons is
4  based on the protection of those persons who may come into contact with a
5  weapon bearer. If a weapon is not concealed, one may take notice of the weapon
6  and its owner and govern oneself accordingly, but no such opportunity for cautious
7  behavior or self-preservation exists for one encountering the bearer of a concealed
8  weapon. In light of this policy, the question whether a particular weapon was
9  concealed should be considered from the point of view of one approaching the
10 location of the weapon, and the intent of the defendant as to concealment should
11 not be considered, since a defendant's innocent intent does not make a concealed
12 weapon any more visible." *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012)
13 (01/23/2013 - Petition for review denied in Supreme Court.)
14     79.  "[A] state may be able to require "open carry" — that is, require persons
15 who carry a gun in public to carry it in plain view rather than concealed. See
16 *District of Columbia v. Heller*, supra, 554 U.S. at 626, 128 S.Ct. 2783..." *Moore v.*
17 *Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit (2012).
18     80.  "The act of firearm possession, by itself, is innocent." *People v. Jones*,
19 278 P. 3d 821 - Cal: Supreme Court (2012) at 356.
20     81.  The right to bear arms, in public, has always been recognized as a right
21 and race has always been a factor in the United States in denying the right to keep
22 and bear arms.  In the notorious "Dred Scott decision" the US Supreme Court
23 recognized that if Blacks were recognized as citizens then they would be free "to
24 keep and carry arms wherever they went." One hundred and ten years later, Blacks
25 and other minorities began to carry arms in California.  The California legislature
26 made that a crime.
27     "More especially, it cannot be believed that the large slaveholding States
28 regarded them as included in the word citizens, or would have consented to a

69

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

1   Constitution which might compel them to receive them in that character from
2   another State. For if they were so received, and entitled to the privileges and
3   immunities of citizens, it would exempt them from the operation of the special
4   laws and from the police regulations which they considered to be necessary for
5   their own safety. It would give to persons of the negro race, who were recognised
6   as citizens in any one State of the Union, the right to enter every other State
7   whenever they pleased, singly or in companies, without pass or passport, and
8   without obstruction, to sojourn there as long as they pleased, to go where they
9   pleased at every hour of the day or night without molestation, unless they
10  committed some violation of law for which a white man would be punished; and it
11  would give them the full liberty of speech in public and in private upon all subjects
12  upon which its own citizens might speak; to hold public meetings upon political
13  affairs, and *to keep and carry arms wherever they went.* And all of this would be
14  done in the face of the subject race of the same color, both free and slaves, and
15  inevitably producing discontent and insubordination among them, and endangering
16  the peace and safety of the State." *Dred Scott v. Sandford*, 60 US 393 - Supreme
17  Court (1857) at 416-417. (Emphasis added).

18

19

20

21

22  Dated: November 8, 2013                 Respectfully submitted,

23

24                                          By: Charles Nichols
25                                          PLAINTIFF in Pro Per
                                            PO Box 1302
26                                          Redondo Beach, CA  90278
                                            Voice: (424) 634-7381
27                                          EMail:CharlesNichols@Pykrete.info

28  ///

70

Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law

CERTIFICATE OF SERVICE

On this, the 8th day of November, 2013, I caused to be served a copy of the foregoing **PLAINTIFF CHARLES NICHOLS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; EVIDENCE IN SUPPORT THEREOF** by US Mail on:

Jonathan Michael Eisenberg
Office of the California Attorney General
Government Law Section
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
213-897-6505
213-897-1071 (fax)
jonathan.eisenberg@doj.ca.gov
LEAD ATTORNEY / ATTORNEY TO BE NOTICED representing Kamala D Harris (Defendant).

Executed this the 8th day of November, 2013 by:

Charles Nichols