FILED

2013 NOV 26  PM 1: 37

~~CLERK U.S. DISTRICT COURT~~
~~CENTRAL DIST. CALIF.~~
~~LOS ANGELES~~
BY: _____

1    Charles Nichols
     PO Box 1302
2    Redondo Beach, CA  90278
     Voice: (424) 634-7381
3    E-Mail: CharlesNichols@Pykrete.info
     In Pro Per
4

5

6

7

8                  United States District Court

9                Central District of California

10

11    Charles Nichols,                Case No.: CV-11-9916 SJO (SS)

12          PLAINTIFF,       **PLAINTIFF'S OPPOSITION TO**
                                **DEFENDANT'S MOTION FOR**
13          vs.                  **JUDGMENT ON THE PLEADINGS**

14    KAMALA D. HARRIS, Attorney

15    General, in her official capacity as    Date:    Vacated
                                     Time:    Vacated
16    Attorney General of California       Crtrm:   23 – 3rd Floor
                                     Magistrate Judge:  Suzanne H. Segal
17                                District Judge: S. James Otero
                                     Trial Date: None
18          Defendant.           Action Filed: November 30, 2011

19

20

21

22

23

24

25

26

27

28

_Opposition to MSJ Brief_            _Charles Nichols v. Edmund G Brown Jr et al_

# TABLE OF CONTENTS

Table of Authorities…………………………………………………...………iii

INTRODUCTION…………………………………………...…………………1

ISSUES TO BE DECIDED……………………………………..………………2

POINTS AND AUTHORITIES ……………………………………….……...…3

I. LEGAL STANDARD(S) AND BURDEN OF PROOF…………………………3

     A.  Standards Governing Rule 12(c)…………………………………..…3

     B.  Plaintiff Nichols is Not a Prohibited Person under California or Federal
Law…………………………………………………………………...…………4

     C.  Rational Basis Does not Apply……………………………..…………5

     D.  The Laws at Issue are Bans, not Regulations……………………….…5

     E.  The Bans at Issue cannot survive Intermediate Scrutiny………....……5

     F.  The Bans at Issue cannot survive Strict Scrutiny…………………..…8

2. PLAINTIFF NICHOLS OPPOSITION TO DEFENDANT HARRIS' MOTION
FOR JUDGMENT ON THE PLEADINGS…………………………………...……9

     A.  Harris's Introduction……………………………………………..……9

     B.  Harris' Summary Of The Operative Complaint…………………………10

     C.  Harris' Summary of Plaintiff's Motion For Preliminary Injunction…...10

     D.  Defendant Harris does not argue that the Bans are Constitutional As-
Applied to Plaintiff Nichols………………………………………………………11

     E.  Harris' Standard For Motions For Judgment On The Pleadings………11

     F.  Harris' Argument…………………………………………………………12

     G.  Harris' Argument I…………………………………………………………12

     H.  Harris' Argument II………………………………………………………13

     I.  Harris' Argument III………………………………………………………14

     J.  Harris' Argument IV………………………………………………………14

     K.  Harris' Argument V………………………………………………………14

3. STANDARD OF REVIEW FOR FACIAL CHALLENGES…………………16

A. Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc. (1982) 455 U.S. 489...................................................................16
B. Kolender v. Lawson (1983) 461 U.S. 352.....................................17
C. United States v. Salerno (1987) 481 U.S. 739.............................18
D. City of Chicago v. Morales (1999) 527 U.S. 41...........................20
E. Current State of the Law.................................................22
4. CALIFORNIA'S OPEN CARRY BANS ARE NOT LONGSTANDING.........22
5. OPEN CARRY IS THE LONGSTANDING RIGHT GUARANTEED BY THE CONSTITUTION.......................................................23
CONCLUSION..............................................................25

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)...........................3

*Berger v. City of Seattle,*
569 F.3d 1029 (9th Cir. 2009) (en banc).......................................…........8

*Bliss v. Commonwealth,*
12 Ky. (2 Litt.) 90, 13 Am. Dec. 251 (1822)...........................…........25

*California ex rel. RoNo, LLC v. Altus Finance S.A.,*
344 F.3d 920 - Court of Appeals, 9th Circuit (2003)...................…........11

*Cavitt v. Cullen, Court of Appeals,*
9th Circuit No. 10-16988 (filed August 29, 2013)...................…........15

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.,*
109 F.Supp.2d 1236(S.D.Cal.2000)...............................................12

*City of Chicago v. Morales,*
527 U.S. 41 (1999).............................................…....15, 20-22

*City of Cleburne v. Cleburne Living Ctr., Inc.,*
473 U.S. 432 (1985)...............................................................…...8

*Coates v. Cincinnati,*
402 US 611 - Supreme Court (1971)...............................…........16

## TABLE OF AUTHORITIES (Contd.)

*Del Puerto Water Dist. v. U.S. Bureau of Reclamation,*
271 F.Supp.2d 1224 (E.D.Cal.2003)...............................................11

*Dex Media West, Inc. v. City of Seattle,*
696 F. 3d 952 - Court of Appeals, 9th Circuit (2012)......................8

*District of Columbia v. Heller,*
128 S. Ct. 2783 - Supreme Court (2008).................................passim

*Drake v. FILKO, Court of Appeals,*
3rd Circuit No. 12-1150 (filed July 31, 2013)...............................24

*Ezell v. City of Chicago,*
651 F. 3d 684 - Court of Appeals, 7th Circuit (2011)..................8, 13

*Fisher v. University of Texas at Austin,*
133 S. Ct. 2411 - Supreme Court (2013)....................................8

*Fleming v. Pickard,*
581 F. 3d 922 - Court of Appeals, 9th Circuit (2009)......................4

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,*
896 F.2d 1542 (9th Cir.1990).............................................4

*Happy Inv. Group v. Lakeworld Properties, Inc.,*
396 F.Supp. 175 (N.D.Cal.1975)..........................................12

## TABLE OF AUTHORITIES (Contd.)

*Harris v. County of Orange,*

682 F. 3d 1126 - Court of Appeals, 9th Circuit (2012)...................................3


*Heck v. Humphreys,*

512 U.S. 477 (1994)..............................................................................14


*Heller v. District of Columbia,*

670 F.3d 1244 (D.C. Cir. 2011) ("Heller II")...........................................13


*Hightower v. City of Boston,*

693 F. 3d 61 - Court of Appeals, 1st Circuit 2012)..................................24


*Janklow v. Planned Parenthood, Sioux Falls Clinic,*

517 U.S. 1174 (1996)......................................................................10, 20


*John Doe No. 1 v. Reed,*

130 S. Ct. 2811 (2010)....................................................................10, 13


*Kachalsky v. County of Westchester,*

701 F. 3d 81 - Court of Appeals, 2nd Circuit (2012)................................24


*Kent v. Daimlerchrysler Corp.,*

200 F.Supp.2d 1208 (N.D.Cal.2002)....................................................11


*Kolender v. Lawson,*

461 U.S. 352 (1983)...................................................................passim

## <u>TABLE OF AUTHORITIES (Contd.)</u>

*McDonald v. City of Chicago, Ill.,*

130 S. Ct. 3020 - Supreme Court (2010)……………………………..………passim

*Moore v. Madigan,*

702 F. 3d 933 - Court of Appeals, 7th Circuit (2012)…………………..………2, 9, 24

*Nunez v. City of San Diego,*

114 F. 3d 935 - Court of Appeals, 9th Circuit (1997)…………………....………8

*Nunn v. State,*

1 Ga. 243 (1846)…………………………………………………..……23-25

*People v. Jones,*

278 P. 3d 821 - Cal: Supreme Court (2012)……………….…………………7, 12

*People v. Mitchell,*

209 Cal. App. 4th 1364 (2012)……………………………………………9, 12

*People v. Strider,*

177 Cal. App. 4th 1393 (2009)……………………………………………15

*Peterson v. Martinez,*

707 F. 3d 1197 - Court of Appeals, 10th Circuit (2013)…………………..………24

*Plyler v. Doe,*

457 U.S. 202 (1982)…………………………………………………..……8

1

## TABLE OF AUTHORITIES (Contd.)

2 *Robertson v. Baldwin,*

3 165 U.S. 275, 17 S.Ct. 326, 41 L.Ed. 715 (1897)……………………………………24

4

5 *Rupf v. Yan,*

6 102 Cal. Rptr. 2d 157 (2000)………………………………………………....……15

7

8 *State v. Chandler,*

9 5 La. Ann. 489 (1850)……………………………………………………….………23

10

11 *Thompson v. Torrance,*

12 (NO. CV 11-06154 SJO (JCx)) Federal (C.D. Cal.2012)……………………..………9

13

14 *Turner v. Cook,*

15 362 F.3d 1219, 1225 (9th Cir.2004)…………………………………………..……4

16

17 *US v. Chovan,*

18 Court of Appeals, 9th Circuit No. 11-50107 (filed November 18, 2013)……passim

19

20 *US v. Fuentes,*

21 105 F. 3d 487 - Court of Appeals, 9th Circuit (1997)……………………….………14

22

23 *US v. Stevens,*

24 130 S. Ct. 1577 - Supreme Court (2010)……………………………………....…13, 22

25

26 *United States v. Purdy,*

27 264 F.3d 809 - Court of Appeals, 9th Circuit (2001)……………………..………15

28

## TABLE OF AUTHORITIES (Contd.)

*United States v. Reese,*
627 F.3d 792 (10th Cir. 2010)..................................................................13

*United States v. Rodriguez,*
360 F.3d 949 - Court of Appeals, 9th Circuit (2004)..................................15

*United States v. Salerno,*
481 U.S. 739 (1987)...................................................................passim

*United States v. Shetler,*
665 F.3d 1150 - Court of Appeals, 9th Circuit (2011)................................15

*United States v. Stevens,*
559 U.S. 460 (2010)..............................................................13, 22

*Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,*
455 U.S. 489 (1982)..............................................................16-18

*Weizmann Institute of Science v. Neschis,*
229 F.Supp.2d 234 (S.D.N.Y.2002)............................................11

*Woollard v. Gallagher,*
712 F. 3d 865 - Court of Appeals, 4th Circuit (2013)..................................24

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

## INTRODUCTION

Defendant Harris hinges her motion for judgment on the pleadings on this court's denial of Plaintiff Nichols' motion for a preliminary injunction. See her memorandum of points and authorities in support of her motion for judgment on the pleadings Dkt# 129-1, pg., 6 lines 3-7.

The denial of Plaintiff's motion for a preliminary injunction by this court was based on its interpretation of the motion to be solely facial and that the bans must be facially invalid in all circumstances. Crucially, this court also said that "The Ninth Circuit has not yet established what standard of review should be applied to Second Amendment challenges." Dkt #108, pg., 7, lines 1 & 2.

After the denial of Plaintiff's motion for a preliminary injunction and after Defendant Harris filed her present motion for judgment on the pleadings the Ninth Circuit Court of Appeals published its decision in *US v. Chovan* No. 11-50107 (filed November 18, 2013). The decision adopted a "Two Step Inquiry" matching that advocated by Plaintiff Nichols: "The two-step Second Amendment inquiry we adopt (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Chovan*, Slip Op., pg., 18.

The first step of the inquiry is an historical inquiry. "Because of "the lack of historical evidence in the record before us, we are certainly not able to say that the Second Amendment, *as historically understood*, did not apply to persons convicted of domestic violence misdemeanors."" *Chovan*, Slip Op., pg., 20. (emphasis added). As to "Step 2," the *Chovan* court applied intermediate scrutiny to the law because it provided two significant exceptions "Section 922(g)(9) establishes two exceptions under which the statute will no longer apply: (1) "if the conviction has

been expunged or set aside"; or (2) if the offender "has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)."" *Chovan* Slip Op., pg., 4. Mr. Chovan, as a matter of right under California law, could have had his conviction expunged but chose not to do so. *Chovan* Slip Op., pgs., 49-50.

Plaintiff again reminds the court that the three bans challenged in his operative complaint (SAC), motion for a preliminary injunction and motion for partial summary judgment: California Penal Code section 25850 (PC 25850), California Penal Code section 26350 (PC 26350), and California Penal Code section 26400 (PC 26400), do not contain any exceptions, not even for police officers and certainly not for the central component of the Second Amendment right which is the private right of self-defense for individuals.

Regardless of there being exceptions elsewhere in the code or averring that the court should read a self-defense exception into the challenged laws, the US Supreme Court struck down laws in *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008), *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020 - Supreme Court (2010), and the Seventh Circuit struck down Illinois state laws virtually identical to the California bans currently at issue in *Moore v. Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit (2012).

And make no mistake, these are bans. Even Defendant Harris admits that they are bans. Dkt #134, exhibits A-1, A-2, B-1, B-2.

This court should be "disinclined to engage in another round of historical analysis to determine whether eighteenth-century America understood the Second Amendment to include a right to bear guns outside the home. The Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside." Id., *Moore* at 942.

## ISSUES TO BE DECIDED

1. Does the Second Amendment historically guarantee the private right of the individual to keep and bear arms openly for the purpose of self-defense in the curtilage of one's home and in non-sensitive public places and while traveling? ("Step 1")

2. Do these three bans on openly carrying loaded and unloaded firearms in non-sensitive public places, and in the curtilage of one's home and while traveling, survive any level of judicial scrutiny? ("Step 2")

3. If the three bans are not facially invalid, is it possible for this court to "liberally construe" Plaintiff Nichols operative Second Amended Complaint (SAC) to grant him as-applied relief given that he is pro se and is an unrepresented litigant in a civil rights case challenging criminal laws?

## POINTS AND AUTHORITIES

## I. LEGAL STANDARD(S) AND BURDEN OF PROOF

### A. Standards Governing Rule 12(c)

"The Court inquires whether the complaint at issue contains "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face."" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks and citation omitted); *Cafasso*, 637 F.3d at 1054 n. 4 (finding *Iqbal* applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent). The Court may find a claim plausible when a plaintiff pleads sufficient facts to allow the Court to draw a reasonable inference of misconduct, but the Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks and citation omitted)." *Harris v. County of Orange*, 682 F. 3d 1126 - Court of Appeals, 9th Circuit (2012) at 1131.

"Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency. See *Eminence Capital*, 316 F.3d at 1052." See id., at 1135.

1   "We must accept all factual allegations in the complaint as true and construe
2   them in the light most favorable to the non-moving party. *Turner v. Cook*, 362 F.3d
3   1219, 1225 (9th Cir.2004)." *Fleming v. Pickard*, 581 F. 3d 922 - Court of Appeals,
4   9th Circuit (2009) at 925.

5       ""For purposes of the motion, the allegations of the non-moving party must
6   be accepted as true, while the allegations of the moving party which have been
7   denied are assumed to be false. Judgment on the pleadings is proper when the
8   moving party clearly establishes on the face of the pleadings that no material issue
9   of fact remains to be resolved and that it is entitled to judgment as a matter of law."
10  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th
11  Cir.1990). Additionally, "[t]his standard is applied with particular strictness when
12  the claim is for an alleged civil rights violation." *Foster v. Edmonds*, No. C 07-
13  05445, 2008 WL 4415316, at *1 (N.D.Cal. Sept. 26, 2008) (Judge Alsup) (quoting
14  *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir.1996)).
15  *Keum v. Virgin America Inc.*, 781 F. Supp. 2d 944 - Dist. Court, ND California
16  (2011) at 948.

17  **B.  Plaintiff Nichols is Not a Prohibited Person under California or Federal**
18  **Law**

19      Defendant Harris has not produced any evidence that Plaintiff Nichols has
20  ever been convicted of a crime which prohibits him from possessing a firearm
21  under California or Federal law.  Indeed, Defendant Harris has twice issued to
22  Plaintiff Law Enforcement Gun Release Letters pursuant to California Penal Code
23  section 33855 and Los Angles Superior Court Judge Chet L. Taylor issued a court
24  order directing City of Redondo Beach Police Chief Joseph Leonardi to return
25  Plaintiff Nichols' firearm and other valuable property on May 13, 2013 (Dkt # 103,
26  Exhibit 1).  Plaintiff Nichols subsequently filed a Notice of Potential Partial
27  Mootness regarding City of Redondo Beach requesting this court to take notice
28  that his firearm and other valuable property had been returned (Dkt #115).  As

1    such, Plaintiff Nichols is a person who falls within the scope of the Second
2    Amendment.

3    **C. Rational Basis Does not Apply**

4    The US Supreme Court in *District of Columbia v. Heller*, 128 S. Ct. 2783 -
5    Supreme Court (2008) took rational basis off the table. "If all that was required to
6    overcome the right to keep and bear arms was a rational basis, the Second
7    Amendment would be redundant with the separate constitutional prohibitions on
8    irrational laws, and would have no effect." *Heller* at fn 27. See also *Chovan* Slip
9    Op., pgs., 20-21.

10    **D. The Laws at Issue are Bans, not Regulations.**

11    In that they are bans and not regulations, both Defendant Harris and Plaintiff
12    Nichols are in agreement. (Dkt #134, Exhibits A-1, A-2, B-1, B-2. What is at issue
13    is the constitutionality of the bans. Bans on a fundamental right fail any level of
14    judicial scrutiny and California bans not just handguns but all firearms. "As the
15    quotations earlier in this opinion demonstrate, the inherent right of self-defense has
16    been central to the Second Amendment right. The handgun ban amounts to a
17    prohibition of an entire class of "arms" that is overwhelmingly chosen by
18    American society for that lawful purpose." *Heller* at 2817.

19    **E. The Bans at Issue cannot survive Intermediate Scrutiny**

20    *US v. Chovan* No. 11-50107 (filed November 18, 2013) applied Intermediate
21    Scrutiny to 18 U.S.C. § 922(g)(9), which prohibits persons convicted of domestic
22    violence misdemeanors from possessing firearms for life in part because "Section
23    922(g)(9) establishes two exceptions under which the statute will no longer apply:
24    (1) "if the conviction has been expunged or set aside"; or (2) if the offender "has
25    been pardoned or has had civil rights restored (if the law of the applicable
26    jurisdiction provides for the loss of civil rights under such an offense)." 18 U.S.C.
27    § 921(a)(33)(B)(ii)." *Chovan*, Slip Op., at pg 4 and "California, where Chovan was
28    convicted, makes expungement of misdemeanor convictions a right." *Chovan*, Slip

1   Op., at pg 49.  Nothing prevented Mr. Chovan from having his prohibiting

2   misdemeanor conviction expunged.  Had he done so, the law would not have

3   applied to him.  However, Plaintiff Nichols cannot even carry a firearm, loaded or

4   unloaded, openly or concealed, in the curtilage of his own home let alone bear

5   arms in non-sensitive public places and not because he is a convicted felon or has

6   been convicted of a disqualifying misdemeanor or because of any other thing

7   which would remove him from the scope of the Second Amendment.  Unlike Mr.

8   Chovan, Plaintiff Nichols has no recourse other than an injunction against the bans

9   at issue in his Motion for Partial Summary Judgment.

10      "Although courts have used various terminology to describe the intermediate

11  scrutiny standard, all forms of the standard require (1) the government's stated

12  objective to be significant, substantial, or important; and (2) a reasonable fit

13  between the challenged regulation and the asserted objective." *Chovan* Slip Op., at

14  23.  There is no mistaking the government's objective in enacting California Penal

15  Code section 25850(a)&(b).  It was too disarm racial minorities as the record

16  clearly shows.  The government's objective in enacting the bans on openly

17  carrying unloaded handguns (PC 26350) and unloaded firearms other than

18  handguns (PC 26400) was to close what the government referred to as a "loophole"

19  in its ban on carrying loaded firearms in public that was enacted in July of 1967.

20  The result is a complete ban on the right to bear arms in non-sensitive public places

21  as applied to Plaintiff Nichols and to similarly situated individuals.

22      If one were to incorrectly assume that the objective in 1967 was to prohibit

23  groups or individuals from seeking out confrontations with police, the legislature

24  could have instead enacted a law prohibiting the brandishing of firearms in the

25  presence of police officers, which it did and for which a conviction results in a

26  lifetime prohibition (Dkt #134, Exhibit C).

27      There is no "important government interest" in depriving Plaintiff Nichols or

28  similarly situated persons who fall within the scope of the Second Amendment

from openly carrying loaded or unloaded firearms for the purpose of self-defense in non-sensitive public places or even in the curtilage of their homes which Plaintiff Nichols has long asserted is not a "public place" contrary to the findings of the California courts.

"The question requires us to interpret Penal Code section 654…which prohibits multiple punishment for "[a]n act ... that is punishable in different ways by different provisions of law." Because different provisions of law punish in different ways defendant's single act, we conclude that section 654's plain language prohibits punishment for more than one of those crimes." *People v. Jones*, 278 P. 3d 821 - Cal: Supreme Court (2012) at 352.  In light of *Jones*, Plaintiff and other similarly situated individuals who fall within the scope of the Second Amendment who openly carrying loaded or unloaded firearms which are not "dangerous and unusual weapons" in non-sensitive public places are punished under the bans at issue whereas convicted felons and other prohibited persons who carry concealed weapons and even "dangerous and unusual weapons" in sensitive public places or the curtilage of their home or in or on a motor vehicle or attached camper or trailer cannot be punished for both those crimes and the bans at issue.

Plaintiff Nichols does not want to openly carry a firearm in order to seek out confrontations.  Indeed, he has averred that "He finds no shame in crossing the street to avoid confrontation. Unfortunately, criminals are not so inclined…" Dkt #18, pg 20, lines 7-8.  Plaintiff Nichols has never been convicted of any crime of violence.

There is no "reasonable fit" between banning the right to bear arms in non-sensitive public places or to prohibiting Plaintiff and similarly situated persons from keeping and carrying arms in the curtilage of their homes and the government's undeniable objective in disarming racial minorities which was the sole motivating factor in the enactment of former Penal Code section 12031 (PC 12031) (now PC 25850 in part).

1   Although Defendant Harris and this Court have made light of the
2   documented death threat against Plaintiff Nichols (Dkt # 10), Plaintiff submits that
3   had the same threats been made against Defendant Harris or this Court the
4   perpetrator would have been quickly arrested, prosecuted and in all likelihood
5   convicted of a felony and sent to prison.

6   **F. The Bans at Issue cannot survive Strict Scrutiny**

7   "Generally, legislation is presumed to pass constitutional muster and will be
8   sustained if the classification drawn by the statute or ordinance is rationally related
9   to a legitimate state interest. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473
10  U.S. 432, 439-40, 105 S.Ct. 3249, 3253-55, 87 L.Ed.2d 313 (1985). If the
11  classification disadvantages a "suspect class" or impinges a "fundamental right,"
12  the ordinance is subject to strict scrutiny. *Plyler v. Doe*, 457 U.S. 202, 216-17, 102
13  S.Ct. 2382, 2394-95, 72 L.Ed.2d 786 (1982)." *Nunez v. City of San Diego*, 114 F.
14  3d 935 - Court of Appeals, 9th Circuit (1997) at 944.

15  "Strict scrutiny is a searching examination, and it is the government that
16  bears the burden to prove…" *Fisher v. University of Texas at Austin*, 133 S. Ct.
17  2411 - Supreme Court (2013) at 2419. "[A] regulation "is valid only if it is the
18  least restrictive means available to further a compelling government interest."
19  *Berger v. City of Seattle*, 569 F.3d 1029, 1050 (9th Cir. 2009) (en banc)." *Dex*
20  *Media West, Inc. v. City of Seattle*, 696 F. 3d 952 - Court of Appeals, 9th Circuit
21  (2012) at 965. "[S]trict scrutiny…means that the law must be narrowly tailored to
22  serve a compelling governmental interest…" *Ezell v. City of Chicago*, 651 F. 3d
23  684 - Court of Appeals, 7th Circuit (2011) at 707.

24  As applied to Plaintiff Nichols, California has subjected him to a complete
25  ban on his carrying loaded and unloaded firearms in non-sensitive public places for
26  the purpose of self-defense. And not just in public places but also in the curtilage
27  of his home, in and on his motor vehicle and any attached camper or trailer.
28  California bans not just handguns, but long guns as well. Significantly, California

*Opposition to MSJ Brief*                    8                    *Nichols v. Brown*

1  has banned the manner of carry guaranteed by the Constitution (Open Carry) and

2  even concealed carry, which generally falls outside the scope of the Second

3  Amendment, is also banned without a permit, a permit which is not available to

4  Plaintiff because it is against the policy of the Los Angeles Sheriff's department to

5  issue concealed carry permits to persons such as Plaintiff which this court is well

6  aware having upheld the Sheriff's policy in *Thompson v. Torrance PD and LASD*

7  (NO. CV 11-06154 SJO (JCx)).  It has already been briefed that Defendant Harris

8  has instructed all County Sheriffs and Chiefs of Police not to issue licenses to

9  openly carry handguns to Plaintiff and California does not provide for the issuance

10  of permits to private persons to openly carry long guns for the purpose of self-

11  defense.

12      "Because the statute regulates but does not completely ban the carrying of a

13  sharp instrument, we subject it to intermediate scrutiny." *People v. Mitchell*, 209

14  Cal. App. 4th 1364 (2012) at 1374.  Since California completely bans the carrying

15  of loaded and unloaded firearms openly and, as-applied to Plaintiff Nichols,

16  concealed as well, the bans are subject to a "minimum" of strict scrutiny even

17  under California judicial constructions.  "Minimum" because as in *District of*

18  *Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008), *McDonald v. City of*

19  *Chicago*, Ill., 130 S. Ct. 3020 - Supreme Court (2010), *Moore v. Madigan*, 702 F.

20  3d 933 - Court of Appeals, 7th Circuit (2012) bans, and near total bans, fail any

21  level of judicial review.

22  **2. PLAINTIFF NICHOLS OPPOSITION TO DEFENDANT HARRIS'**

23  **MOTION FOR JUDGMENT ON THE PLEADINGS**

24  **A. Harris's Introduction**

25      Memorandum of Points and Authorities in Support of [her] Motion for

26  Judgment on the Pleadings (MJP) Dkt #129-1, pg., 1, lines 6-17: (MJP 1:6-17)

27  Plaintiff argues to vindicate his Second Amendment right to Openly Carry a

28  firearm for the purpose of self-defense and other lawful purposes in non-sensitive

public places.  It is *Heller* that states that Open Carry is the right guaranteed by the Constitution and California common-law has always recognized the right to Open Carry and has never recognized a right to concealed carry except in certain limited situations such as for travelers while on a journey.  It is Defendant Harris who has taken the extreme position that somehow the Heller Court eliminated the Second Amendment Right to openly carry firearms in public.

**B. Harris' Summary Of The Operative Complaint**

MJP 1:18-5:1-21.  Plaintiff objects to the out-of-context, partial, fragmentary and misleading summary put forth by Defendant Harris.  Plaintiff Nichols operative Second Amendment Complaint (SAC) is on file with this court (Dkt #83) as is Defendant Harris' Answer to Plaintiff's SAC (Dkt #91).  It is these documents which are relevant to her MJP.

**C. Harris' Summary of Plaintiff's Motion For Preliminary Injunction**

MJP 5:1-22-6:1-7.  Defendant Harris hinges her case on this Court's denial of Plaintiff Nichols as-applied Motion for a Preliminary Injunction which this Court "liberally construed" as a facial challenge citing *John Doe No. 1 v. Reed*, 130 S. Ct. 2811, 2817 (2010) but instead of limiting the "facial challenge to the extent of that reach." Id., at 2817 this Court relied on *United States v. Salerno*, 481 U.S. 739, 745 (1987) "no set of circumstances" standard.

In 1996, the United States Supreme Court denied a petition for certiorari in a case entitled *Janklow v. Planned Parenthood, Sioux Falls Clinic* (1996) 517 U.S. 1174, [116 S.Ct. 1582]. Justice John Paul Stevens issued a concurring memorandum in conjunction with the denial of certiorari for the sole purpose of criticizing the language used in *Salerno*. He wrote that the "no set of circumstances" statement "was unsupported by citation or precedent. . .[,] does not accurately characterize the standard for deciding facial challenges, and neither accurately reflects the Court's practice with respect to facial challenges, nor is it consistent with a wide array of legal principles." (*Janklow*, supra, 116 S.Ct. at p.

1   1583, citations and quotations omitted.) Justice Stevens further noted this "rigid

2   and unwise dictum has been properly ignored in subsequent cases. . . ." (Ibid.).

3   *Heller* at 2861-2852, 2854 and 2861 rejected *Salerno* as did *McDonald* at 3126.

4        In short, this Court incorrectly applied the *Salerno* facial standard which has

5   never been applied to a Second Amendment case in this circuit and simply did not

6   evaluate the constitutionality of the bans as-applied to Plaintiff Nichols.

7   **D. Defendant Harris does not argue that the Bans are Constitutional As-**

8   **Applied to Plaintiff Nichols**

9        Even if *Salerno* were the correct facial standard to apply, and Plaintiff

10  submits that it is not, Defendant Harris has never proven the case that the bans are

11  constitutional as-applied to Plaintiff Nichols or even to similarly situated

12  individuals.  Instead, in her MJP, Defendant Harris makes the bald, unsupported

13  claim that "In sum, Nichols has no viable facial or as-applied theory (the second

14  theory) of a Fourth Amendment violation in this case" in her Memorandum of

15  Points and Authorities in Support of [her] Motion for Judgment on the Pleadings

16  (MJP) Dkt #129-1 on pg., 13, lines 1-2.

17  **E. Harris' Standard For Motions For Judgment On The Pleadings**

18       MJP 6:8-24 Harris' "standard" is incomplete (see Plaintiff's standard

19  above).  Also, "Judicial notice is taken of the existence and authenticity of the

20  public and quasi public documents listed. To the extent their contents are in

21  dispute, such matters of controversy are not appropriate subjects for judicial

22  notice." *Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F.Supp.2d

23  1224, 1234 (E.D.Cal.2003). See also, *California ex rel. RoNo, LLC v. Altus*

24  *Finance S.A.*, 344 F.3d 920, 931 (9th Cir.2003) ("requests for judicial notice are

25  GRANTED to the extent that they are compatible with Fed. Rule Evid. 201 and do

26  not require the acceptance of facts `subject to reasonable dispute.'" quoting Lee,

27  250 F.3d at 690); *Kent v. Daimlerchrysler Corp.*, 200 F.Supp.2d 1208, 1219

28  (N.D.Cal.2002); *Weizmann Institute of Science v. Neschis*, 229 F.Supp.2d 234,

1   246-47 (S.D.N.Y.2002); *Happy Inv. Group v. Lakeworld Properties, Inc.*, 396

2   F.Supp. 175, 183 (N.D.Cal.1975); and *Chloe Z Fishing Co. v. Odyssey Re*

3   *(London) Ltd.*, 109 F.Supp.2d 1236, 1242-43 (S.D.Cal.2000)."

4       The facts of "Exhibit A" and exhibits attached to "Exhibit A" of Defendant

5   Harris' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR

6   JUDGMENT ON THE PLEADINGS Dkt # 129-2 were and are very much in

7   dispute and the Redondo Beach and Doe Defendants were voluntarily dismissed,

8   without prejudice, by Plaintiff Nichols.

9   **F. Harris' Argument**

10      MJP 7:1-4.  Plaintiff's sole count against Defendant Harris in his SAC raises

11  claims under the Second, Fourth and Fourteenth Amendments.  The ramifications

12  of those claims far exceeds the "seven" Defendant Harris purports Plaintiff to have

13  raised.  More to the point, Defendant Harris did not file a Motion for Summary

14  Judgment, she filed a Motion for Judgment on the Pleadings.  Her argument for

15  each of her points could be correct (they aren't) but she would have still failed to

16  meet her burden.

17  **G. Harris' Argument I**

18      MJP 7:5-23.  Defendant Harris has hinged her MJP on the theory that

19  because Plaintiff Nichols sole count challenges the bans both facially and as-

20  applied he has forfeited his as-applied challenge.  If this were true, Plaintiff could

21  easily amend his complaint to separate his as-applied and facial challenges into

22  separate counts.  "Dismissal without leave to amend is appropriate only when the

23  Court is satisfied that an amendment could not cure the deficiency. See *Eminence*

24  *Capital*, 316 F.3d at 1052." See *Harris* id., at 1135.

25      Defendant Harris overlooks the extent of the reach of Plaintiff's facial

26  challenge.  Although in light of *Jones* limiting the scope of the applicability of the

27  bans at issue and *Mitchell's* requirement for strict scrutiny of bans, the bans would

28  still fall under *Salerno's* "no set of circumstances" test.

However, even *John Doe No. 1 v. Reed* did not apply *Salerno's* "unconstitutional in all of its applications" test. See Justice THOMAS, dissenting at 2838 and 2843. *John Doe No. 1* also limited the scope of the facial invalidity test. "They must therefore satisfy our standards for a facial challenge to the extent of that reach. See *United States v. Stevens*, 559 U.S. ___, ___, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010). Id., at 2817. *Stevens*, of course, said "Which standard applies in a typical case is a matter of dispute that we need not and do not address..." *Stevens* id., at 1587.

Plaintiff will however address the standard of review for facial challenges in part 3 below.

## H.  Harris' Argument II

MJP 7:24-10:17. Plaintiff Nichols SAC does not seek an "unfettered right to carry firearms in public. There has been a change in the law since this Court denied Plaintiff's Motion for a Preliminary Injunction - *US v. Chovan* No. 11-50107 (filed November 18, 2013).

"The two-step Second Amendment inquiry we adopt (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny. Chester, 628 F.3d at 680; see also *Marzzarella*, 614 F.3d at 89. We believe this two-step inquiry reflects the Supreme Court's holding in Heller that, while the Second Amendment protects an individual right to keep and bear arms, the scope of that right is not unlimited. 554 U.S. at 626–27. The two step inquiry is also consistent with the approach taken by other circuits considering various firearms restrictions post-Heller. See, e.g., *Heller v. District of Columbia*, 670 F.3d 1244, 1251–58 (D.C. Cir. 2011) ("*Heller II*"); *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011); *United States v. Reese*, 627 F.3d 792, 800–05 (10th Cir. 2010). We join the Third, Fourth, Seventh, Tenth, and D.C. Circuits in holding that the two-step framework outlined above applies to Second Amendment challenges." *Chovan* at Slip Op., pgs., 18-19.

Do the challenged bans burden Plaintiff's right to bear arms for the purpose of self-defense and other lawful purposes? Yes! They are bans. At a "minimum" the appropriate level of scrutiny is strict scrutiny.

## I. Harris' Argument III

MJP 10:17-11:14. California's licensing scheme is not at issue in Plaintiff's Motion for Partial Summary Judgment and in any event, the licensing scheme is only in the alternative as Plaintiff submits that no license is required for a private person to exercise his Second Amendment right to self-defense. See SAC ¶ 85.

## J. Harris' Argument IV

MJP 11:15-13:2. *Heck v. Humphreys*, 512 U.S. 477 (1994) is irrelevant to Plaintiff's challenges to the state statutes. Whether or not *Heck* is relevant to the Redondo Beach and Doe Defendants who were voluntarily dismissed without prejudice by Plaintiff is up to a future court to decide.

PC 25850(b) does not state that openly carrying a firearm constitutes probable cause for an arrest nor does it state that an officer with probable cause can arrest a person openly carrying a firearm. PC 25850(b) states that mere "Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section." "Mere refusal to consent to a stop or search does not give rise to reasonable suspicion or probable cause. People do not have to voluntarily give up their privacy or freedom of movement, on pain of justifying forcible deprivation of those same liberties if they refuse." *US v. Fuentes*, 105 F. 3d 487 - Court of Appeals, 9th Circuit (1997) at 490. Even under *Salerno* PC 25850(b) is facially unconstitutional.

## K. Harris' Argument V

MJP 13:3-26. To satisfy due process, "a penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

"Outside the First Amendment context, we do not consider "whether the statute is unconstitutional on its face," but rather "whether the statute is impermissibly vague in the circumstances of [the] case."" *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004) (quoting *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001)). The void-for vagueness doctrine can apply to statutory constructions as well as statutory language. Cf. United States v. *Shetler*, 665 F.3d 1150, 1164-65 (9th Cir. 2011) (holding that a statute was not unconstitutionally vague when viewed through the prism of this court's narrowing construction). *Cavitt v. Cullen*, Court of Appeals, 9th Circuit No. 10-16988 (filed August 29, 2013) Slip Op., at pg., 9.

*Rupf v. Yan*, 102 Cal. Rptr. 2d 157 and *People v. Strider*, 177 Cal. App. 4th 1393 have already been briefed. The fact is Plaintiff and every other similarly situated individual faces arrest, prosecution, fine and imprisonment by merely stepping outside the interior of their homes into the curtilage of their homes. Given that Defendant Harris said that the *Heller* decision was wrongly decided it should not come as a surprise to anyone that she is fighting to defend bans which denies Plaintiff his right to self-defense even in the curtilage of his home.

Vagueness can be both facial as well as as-applied and isn't limited to statutory constructions as well as statutory language. Even if an enactment does not reach a substantial amount of constitutionally protected conduct (which these three bans certainly do), it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests and as Plaintiff has pointed out ad infinitum, the three bans at issue in his motion for partial summary judgment (PC 25850, PC 26350 & PC 26400) do not themselves contain any exceptions, for anyone, not even for police officers. See *Kolender v. Lawson* (1983) 461 U.S. 352 and *City of Chicago v. Morales* (1999) 527 U.S. 41 below in Part 3(B) & 3(D).

Also, "In our opinion this ordinance is unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct." *Coates v. Cincinnati*, 402 US 611,614 - Supreme Court 1971

## 3. STANDARD OF REVIEW FOR FACIAL CHALLENGES

### A. Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc. (1982) 455 U.S. 489

The case of *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.* (1982) 455 U.S. 489 (*Hoffman Estates*) involved a local ordinance requiring businesses to obtain a license in order to sell items "`designed or marketed for use with illegal cannabis or drugs.'" (*Hoffman Estates*, at p. 491.) A shop owner challenged the facial validity of the statute on grounds of unconstitutional vagueness and overbreadth. (Ibid.) The Supreme Court rejected both arguments.

The opinion is noteworthy for its attempt to establish an analytical framework for certain types of facial challenges: "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications." (*Hoffman Estates*, supra, 455 U.S. at pp. 494-495, italics added & fns. omitted.) The Supreme Court also emphasized that "[i]n reviewing a business regulation for facial vagueness. . .the principal inquiry is whether the law affords fair warning of what is proscribed." (Id. at p. 503.)

Applying the test described above, the Court first determined the ordinance did not reach constitutionally protected conduct. (*Hoffman Estates*, supra, 455 U.S. at p. 497.) Consequently, a finding of unconstitutional vagueness required proof

that the law was "impermissibly vague in all of its applications." (Ibid.) Notwithstanding this pronouncement, the Court acknowledged that the standards for evaluating vagueness should not be "mechanically applied," and "[t]he degree of vagueness that the Constitution tolerates. . .depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow. . .". (Id. at p. 498.)

There is "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. . . [A] scienter requirement may [also] mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." (*Hoffman Estates*, supra, 455 U.S. at pp. 498-499, fns. omitted.) Although characterized as "quasi-criminal," the ordinance at issue in Hoffman *Estates* contained a scienter requirement and imposed only civil penalties. (Id. at p. 499.) The ordinance was also found to be sufficiently clear on its face. (Id. at p. 501.) Therefore, any "speculative danger of arbitrary enforcement" did not render the ordinance void for vagueness. (Id. at p. 503.)

Despite use of the language "impermissibly vague in all of its applications," *Hoffman Estates* recognizes the existence of a more lenient standard of review for criminal statutes, especially when those statutes implicate constitutionally protected conduct. This was confirmed in the subsequent opinion of *Kolender v. Lawson.*

## B. Kolender v. Lawson (1983) 461 U.S. 352

The defendant in *Kolender* was convicted under a section of the California Penal Code requiring persons who loiter or wander on streets to provide "credible and reliable" identification when requested by a police officer. (*Kolender*, supra, 461 U.S. at p. 353.) The Supreme Court found the statute unconstitutionally vague on its face within the meaning of the due process clause of the Fourteenth Amendment for failure to clarify what was contemplated by the term "credible and

1  reliable." (Id. at pp. 353-354.) The opinion discusses two aspects of the void-for-

2  vagueness doctrine — adequate notice to citizens and minimal guidelines to govern

3  law enforcement — and places greater emphasis on the latter. (Id. at p. 358.)

4      "Where the [L]egislature fails to provide such minimal guidelines, a criminal

5  statute may [improperly] permit a standardless sweep [that] allows policemen,

6  prosecutors, and juries to pursue their personal predilections." (*Kolender*, supra,

7  461 U.S. at p 358, citation & quotation marks omitted.) The language of the anti-

8  loitering statute created the potential for arbitrary suppression of First Amendment

9  liberties and also implicated the constitutional right to freedom of movement.

10  (Ibid.) As a result, "the full discretion accorded to the police to determine whether

11  the suspect ha[d] provided a `credible and reliable' identification necessarily

12  entrust[ed] lawmaking to the moment-to-moment judgment of the policeman on

13  his beat. . . and furnishe[d] a convenient tool for harsh and discriminatory

14  enforcement by local prosecuting officials, against particular groups deemed to

15  merit their displeasure." (Id. at p. 360, citations and quotation marks omitted.)

16      With regard to the standard of review, the majority opinion in *Kolender*

17  makes a point to clarify its use of the phase "impermissibly vague in all of its

18  possible applications" as stated in *Hoffman Estates*. "First. . .we permit a facial

19  challenge if a law reaches `a substantial amount of constitutionally protected

20  conduct.' Second, where a statute imposes criminal penalties, the standard of

21  certainty is higher. This concern has, at times, led us to invalidate a criminal statute

22  on its face even when it could conceivably have had some valid application."

23  (*Kolender*, supra, 461 U.S. at p. 358, fn. 8, citations omitted.) The anti-loitering

24  statute was held unconstitutional despite at least one set of circumstances in which

25  compliance with the requirement to provide "credible and reliable" identification

26  would not be vague, i.e., a citizen's absolute refusal to provide any identification at

27  all. (Id. at pp. 371-372 (dis. opn. of White J.)

28      **C. United States v. Salerno (1987) 481 U.S. 739**

*Opposition to MSJ Brief*                18                *Nichols v. Brown*

1    The *Salerno* case involved a facial challenge to the Bail Reform Act (18

2    U.S.C. §§ 3141-3150, 3156 (1982 & Supp. III 1993)). (*Salerno*, supra, 481 U.S. at

3    p. 746.) The relevant provisions of the Act authorized pretrial detention of

4    arrestees upon a judicial officer's determination that alternative procedures would

5    not "reasonably assure the appearance of the person as required and the safety of

6    any other person and the community." (Id. at p. 742.) The criminal defendants who

7    challenged the Act argued these provisions allowed pretrial punishment in

8    violation of their due process rights under the Fifth Amendment and violated the

9    excessive bail clause of the Eighth Amendment. (Id. at p. 746.)

10    The *Salerno* opinion is best known not for its evaluation of the Bail Reform

11    Act, but for a statement made prior to its analysis of the merits. The majority

12    stated: "A facial challenge to a legislative Act is, of course, the most difficult

13    challenge to mount successfully, since the challenger must establish that no set of

14    circumstances exists under which the Act would be valid." (*Salerno*, supra, 481

15    U.S. at p. 745.) The provisions at issue were ultimately found to be constitutional.

16    The Salerno opinion has received "severe and pervasive criticism" for its

17    description of an unqualified "no set of circumstances" standard for facial

18    constitutional challenges. (Isserles, Overcoming Overbreadth: Facial Challenges

19    and the Valid Rule Requirement (1998) 48 Am.U. L.Rev. 359, 372.) Many courts

20    and legal scholars agree that in practical application, the standard will almost

21    always be impossible to satisfy. (See, e.g., *Greenville Women's Clinic v. Comm'r,*

22    *S.C. Dep't of Health* (4th Cir. 2002) 317 F.3d 357, 372, fn. 4 (dis. opn. of King, J.)

23    ["In *United States v. Salerno*…the Supreme Court articulated a `no set of

24    circumstances' test that would, if applicable, make a facial challenge virtually

25    impossible to win. However, the Salerno doctrine is an embattled one at best, and

26    its continuing viability is the subject of intense debate"]; see also, Dorf, Facial

27    Challenges to State and Federal Statutes (1994) 46 Stan. L.Rev. 235, 236-240.)

28

1    In 1996, the United States Supreme Court denied a petition for certiorari in a

2  case entitled *Janklow v. Planned Parenthood, Sioux Falls Clinic* (1996) 517 U.S.

3  1174, [116 S.Ct. 1582]. Justice John Paul Stevens issued a concurring

4  memorandum in conjunction with the denial of certiorari for the sole purpose of

5  criticizing the language used in *Salerno*. He wrote that the "no set of

6  circumstances" statement "was unsupported by citation or precedent. . .[,] does not

7  accurately characterize the standard for deciding facial challenges, and neither

8  accurately reflects the Court's practice with respect to facial challenges, nor is it

9  consistent with a wide array of legal principles." (*Janklow*, supra, 116 S.Ct. at p.

10  1583, citations and quotations omitted.) Justice Stevens further noted this "rigid

11  and unwise dictum has been properly ignored in subsequent cases. . . ." (Ibid.)

12    **D. City of Chicago v. Morales (1999) 527 U.S. 41**

13    In *Morales*, a plurality of the United States Supreme Court struck down an

14  anti-loitering statute as facially unconstitutional without considering whether any

15  set of circumstances existed under which the statute would be valid. The plurality

16  opinion also addressed the question of whether, and to what extent, a facial

17  challenge could be considered outside the context of the First Amendment.

18  (*Morales*, supra, 527 U.S. at pp. 52-53.)

19    Citing *Kolender*, the plurality's analysis begins by noting that "even if an

20  enactment does not reach a substantial amount of constitutionally protected

21  conduct, it may be impermissibly vague because it fails to establish standards for

22  the police and public that are sufficient to guard against the arbitrary deprivation of

23  liberty interests." (*Morales*, supra, 527 U.S. at p. 52.) The City of Chicago's anti-

24  loitering ordinance implicated the right to freedom of movement, which is a liberty

25  interest protected by the due process clause of the Fourteenth Amendment. (Id. at

26  p. 53.) After describing this liberty interest in greater detail, the opinion states: "it

27  is clear that the vagueness of this enactment makes a facial challenge appropriate.

28  This is not an ordinance that simply regulates business behavior and contains a

1  scienter requirement. It is a criminal law that contains no mens rea requirement and

2  infringes on constitutionally protected rights. When vagueness permeates the text

3  of such a law, it is subject to facial attack." (Id. at p. 55, citations, quotation marks

4  & fn. omitted.).  Both aspects of the void-for-vagueness doctrine justified a facial

5  challenge to the ordinance. With respect to the fair notice requirement, the Court

6  reiterated that "[n]o one may be required at peril of life, liberty or property to

7  speculate as to the meaning of penal statutes." (*Morales*, supra, 527 U.S. at p. 58,

8  quoting *Lanzetta*, supra, 306 U.S. at p. 453.) "The Constitution does not permit a

9  legislature to `set a net large enough to catch all possible offenders, and leave it to

10  the courts to step inside and say who could be rightfully detained, and who should

11  be set at large.'" (*Morales*, 527 U.S. at p. 60.) The broad sweep of the ordinance

12  also violated the rule that legislatures must establish minimal guidelines to govern

13  law enforcement. (Id. at pp. 60-62.)

14      The *Morales* plurality rejected the *Salerno* standard. "To the extent we have

15  consistently articulated a clear standard for facial challenges, it is not the *Salerno*

16  formulation, which has never been the decisive factor in any decision of this Court,

17  including *Salerno* itself. . . Since we, like the Illinois Supreme Court, conclude that

18  vagueness permeates the ordinance, a facial challenge is appropriate." (*Morales*,

19  supra, 527 U.S. at p. 54, fn. 22.) However, three Justices endorsed the *Salerno*

20  standard in dissenting opinions. (Id. at pp. 78-83 (Scalia, J., dissenting) and at p.

21  111 (Thomas, J., joined by Rehnquist, C.J. and Scalia, J., dissenting).)

22      Justice Stephen Breyer did not join in the plurality's rejection of the Salerno

23  rule, but presented the following analysis in a concurring opinion: "I believe the

24  ordinance violates the Constitution because it delegates too much discretion to a

25  police officer to decide whom to order to move on, and in what circumstances.

26  And I see no way to distinguish in the ordinance's terms between one application

27  of that discretion and another. The ordinance is unconstitutional, not because a

28  policeman applied this discretion wisely or poorly in a particular case, but rather

because the policeman enjoys too much discretion in every case. And if every application of the ordinance represents an exercise of unlimited discretion, then the ordinance is invalid in all its applications." (*Morales*, supra, 527 U.S. at p. 71 (conc. opn. of Breyer, J.).)

The plurality concluded it did not need to resolve the viability of the Salerno rule, which it characterized as a species of third-party standing, because *Morales* arose from a state court decision rather than a federal court decision. Under the plurality's analysis, state courts are not obligated to follow the *Salerno* standard. (*Morales*, supra, 527 U.S. at p. 55, fn. 22 ["Whether or not it would be appropriate for federal courts to apply the *Salerno* standard in some cases — a proposition which is doubtful — state courts need not apply prudential notions of standing created by this Court. Justice Scalia's assumption that state courts must apply the restrictive *Salerno* test is incorrect as a matter of law; moreover it contradicts `essential principles of federalism.'"], citation omitted.)

### E. Current State of the Law

The United States Supreme Court has yet to resolve the question of whether a definitive standard of review exists for all facial challenges outside of the First Amendment context. (*United States v. Stevens* (2010) 559 U.S. 460, 472 ["Which standard applies in a typical case is a matter of dispute. . ."].)

Plaintiff submits that *Heller* and *McDonald* provide the context in this case to facially invalidate PC 25850, PC 26350 and PC 26400.

### 4. CALIFORNIA'S OPEN CARRY BANS ARE NOT LONGSTANDING

Defendant Harris' assertion that California's bans on openly carrying firearms, both loaded and unloaded, are "longstanding" is farcical and in light of *Chovan* precluded. "According to the government, § 922(g)(9) is part of a "long line of prohibitions and restrictions on the right to possess firearms by people perceived as dangerous or violent. "We do not agree. First, it is not clear that such

prohibitions are so *longstanding*. The first federal firearm restrictions regarding
violent offenders were not passed until 1938, as part of the Federal Firearms Act."
*Chovan*, Slip Op., pg., 19. PC 26400 did not go into effect until January 1st of this
year. PC 26350 did not go into effect until January 1st of last year. PC 25850 did
not go into effect until January 1st of last year and the portions of PC 25850
(subsections (a) & (b)) from former California Penal Code section 12031 (PC
12031) originally went into effect in July of 1967. The subsection penalizing the
carrying of unregistered loaded handguns dates to the year 2000. PC 12031 was
repealed effective January 1, 2012.

"Because of "the lack of historical evidence in the record before us, we are
certainly not able to say that the Second Amendment, as historically understood,
did not apply to persons convicted of domestic violence misdemeanors." *Chovan*,
Slip Op., pg., 20.

## 5. OPEN CARRY IS THE LONGSTANDING RIGHT GUARANTEED BY THE CONSTITUTION

It bears repeating that when the *Heller* Court defined the meaning of the
right to keep and bear arms it said that *Nunn v. State*, 1 Ga. 243, 251 (1846) and
likewise *State v. Chandler*, 5 La. Ann. 489, 490 (1850) "perfectly captured the way
in which the operative clause [the right of the people to keep and bear Arms, shall
not be infringed] of the Second Amendment furthers the purpose announced in the
prefatory clause [A well regulated Militia, being necessary to the security of a free
State]." *Heller* at 2809.

"In *Nunn v. State*, 1 Ga. 243, 251 (1846), the Georgia Supreme Court
construed the Second Amendment as protecting the "natural right of self-defence"
and therefore struck down a ban on carrying pistols openly." *Heller* at 2809.

"Likewise, in *State v. Chandler*, 5 La. Ann. 489, 490 (1850), the Louisiana
Supreme Court held that citizens had a right to carry arms openly: "This is the right
guaranteed by the Constitution of the United States, and which is calculated to

1    incite men to a manly and noble defence of themselves, if necessary, and of their

2    country, without any tendency to secret advantages and unmanly assassinations.""

3    *Heller* at 2809.

4        "We are of the opinion, then, ***that so far as the act of 1837 seeks to suppress***

5    ***the practice of carrying certain weapons secretly, that it is valid***, inasmuch as it

6    does not deprive the citizen of his natural right of self-defence, or of his

7    constitutional right to keep and bear arms. ***But that so much of it, as contains a***

8    ***prohibition against bearing arms openly, is in conflict with the Constitution, and***

9    ***void...***" *Nunn v. State*, 1 Ga. 243, 251 (1846). (emphasis added).

10       There are only two ways to carry a firearm: openly or concealed. Every

11   post-*Heller* Federal Court of Appeals which has reviewed a concealed carry law

12   has concluded that the US Supreme Court in *Heller* held that concealed carry

13   generally falls outside the scope of the Second Amendment. See *Hightower v. City*

14   *of Boston*, 693 F. 3d 61 - Court of Appeals, 1st Circuit 2012 at 73-74; *Kachalsky v.*

15   *County of Westchester*, 701 F. 3d 81 - Court of Appeals, 2nd Circuit (2012) at 83,

16   fn 13. *Drake v. FILKO*, Court of Appeals, 3rd Circuit No. 12-1150 (filed July 31,

17   2013);*Woollard v. Gallagher*, 712 F. 3d 865 - Court of Appeals, 4th Circuit (2013)

18   at 880-881; *Moore v. Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit

19   (2012) at 938; *Peterson v. Martinez*, 707 F. 3d 1197 - Court of Appeals, 10th

20   Circuit (2013) at 1201. Even the 19th Century case of *Robertson v. Baldwin*, 165

21   U.S. 275, 17 S.Ct. 326, 41 L.Ed. 715 (1897) came to the same conclusion.

22       Prohibitions and restrictions on the general carrying of concealed weapons

23   were commonplace during the 19th Century. Relevant are those which existed

24   when the 14th Amendment was adopted, the most relevant being those cited in

25   *Heller* and *McDonald*. Notably absent from this 19th Century case law are

26   decisions which upheld prohibitions on the private right to bear arms openly. Even

27   Nunn did not ban all handguns from being carried. The law exempted large

28   handguns which were not easily concealed referred to as "horseman's" pistols.

1  "[T]he defendant, Hawkins H. Nunn, was indicted and convicted of a high

2  misdemeanor, "for having and keeping about his person, and elsewhere, a pistol,

3  the same not being such a pistol as is known and used as a horseman's pistol."

4  *Nunn* at 247.

5      The one notable exception to the bearing of arms concealed was *Bliss v.*

6  *Commonwealth*, 12 Ky. (2 Litt.) 90, 13 Am. Dec. 251 (1822) which struck down

7  an act prohibiting the carrying of weapons concealed.  The court in Bliss held that

8  the right to bear arms included both the right to bear arms openly and concealed

9  which was consistent with the understanding of the right as it existed in 1791 when

10  the Second Amendment was adopted.

11      However, the Second Amendment was applied to the states through the 14th

12  Amendment by which time, as *Heller* extensively pointed out, many states had

13  generally prohibited the carrying of weapons concealed, excepting travelers while

14  on a journey.  The Constitutionality of those prohibitions on concealed carry

15  attached to the Heller decision came part and parcel with the application of *Heller*

16  to all state and local governments by the *McDonald* court.

17                              **CONCLUSION**

18      Two years ago this month, Plaintiff filed his initial Complaint seeking to

19  vindicate his right to keep and bear arms.  For the foregoing reasons, Defendant

20  Harris' motion for judgment on the pleadings should be denied.

21

22  Dated: November 26, 2013              Respectfully submitted,

23

24                                       By: Charles Nichols

25                                       PLAINTIFF in Pro Per
                                         PO Box 1302

26                                       Redondo Beach, CA  90278
                                         Voice: (424) 634-7381

27                                       EMail:CharlesNichols@Pykrete.info

28

## CERTIFICATE OF SERVICE

On this, the 26th day of November, 2013, I caused to be served a copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** by US Mail on:


Jonathan Michael Eisenberg
Office of the California Attorney General
Government Law Section
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
213-897-6505
213-897-1071 (fax)
jonathan.eisenberg@doj.ca.gov
LEAD ATTORNEY / ATTORNEY TO BE NOTICED representing Kamala D Harris (Defendant).


Executed this the 26th day of November, 2013 by:

Charles Nichols