1  KAMALA D. HARRIS
   Attorney General of California
2  MARK R. BECKINGTON
   Supervising Deputy Attorney General
3  JONATHAN M. EISENBERG
   Deputy Attorney General
4  State Bar No. 184162
     300 South Spring St., Ste. 1702
5    Los Angeles, CA  90013
     Telephone:  (213) 897-6505
6    Fax:  (213) 897-1071
     E-mail:  jonathan.eisenberg@doj.ca.gov
7  *Attorneys for Defendant California Attorney*
   *General Kamala D. Harris*

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                       WESTERN DIVISION

12

| | |
|---|---|
| 13 **CHARLES NICHOLS,** | 2:11-cv-09916-SJO-(SS) |
| 14                                Plaintiff, | **MEMORANDUM OF POINTS AND** |
| 15 **v.** | **AUTHORITIES IN OPPOSITION TO PLAINTIFF CHARLES NICHOLS'S MOTION FOR PARTIAL SUMMARY** |
| 16 **EDMUND G. BROWN JR., in his** | **JUDGMENT** |
| 17 **official capacity as Governor of California, KAMALA D. HARRIS, in** | Date:            N/A |
| 18 **her official capacity as Attorney General of California, CITY OF** | Time:            N/A |
| 19 **REDONDO BEACH, CITY OF REDONDO BEACH POLICE** | Crtrm.:          23—3rd Flr. |
| 20 **DEPARTMENT, CITY OF REDONDO BEACH POLICE** | Judge:           Hon. Suzanne H. Segal |
| 21 **CHIEF JOSEPH LEONARDI and DOES 1 to 10,** | Trial Date:      Not Yet Set |
| 22                              Defendants. | Action Filed:    Nov. 30, 2011 |

23

24

25

26

27

28



1

# TABLE OF CONTENTS

2

**Page**

3  Introduction ...............................................................................................1

4  Summary of Motion for Partial Summary Judgment .............................1

5  Texts of Statutes Being Challenged .......................................................2

   Legal Standards for Summary-Judgment Motions .................................3

6  Argument .................................................................................................4

7       I.    Nichols Has Not Established That, As A Matter Of Law,
             California Penal Code Section 25850 Is Invalid Under The
8            Fourteenth Amendment On Grounds Of Alleged Racism .................4

9       II.   Nichols Has Not Established That The Second Amendment
             Enshrines Open Carry As A Core Right, Thereby Imperiling
             California's Open-Carry Laws ...........................................................8

10           A.    The U.S. Supreme Court Has Not Adopted Nichols's
                  Interpretation Of The Second Amendment................................8

11           B.    The U.S. Courts Of Appeals Have Not Adopted Nichols's
12                Interpretation Of The Second Amendment.............................11

13           C.    This Court In This Case Already Has Rejected Nichols's
                  Second-Amendment Theory ...................................................13

14      III.  There Is No Significance To Nichols's False Assertion That The
             Challenged Laws Lack Self-Defense Exceptions ............................16

15      IV.   Nichols Has Not Established That Section 25850, Subdivision
16           (B), Violates The Fourth Amendment...............................................17

17      V.    There Is No Discernible Point In Nichols's Voluminous
             Quotations From Judicial Opinions And Other Sources ...................19

18  Conclusion.............................................................................................19

19

20

21

22

23

24

25

26

27

28



1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ......................................3

*C.A.R. Transp. Brokerage Co. v. Darden Rests, Inc.*
213 F.3d 474 (9th Cir. 2000).............................................................................3

*Celotex Corp. v. Catrett*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ......................................3

*Dist. of Columbia v. Heller*
554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) ........................passim

*Drake v. Filko*
724 F.3d 426 (3d Cir. 2013)....................................................................12, 13

*English v. State*
35 Tex. 473 (1871).........................................................................................10

*Coleman v. Quaker Oats Co.*
232 F.3d 1271 (9th Cir. 2000)..........................................................................5

*GeorgiaCarry.Org, Inc. v. Georgia*
687 F.3d 1244 (11th Cir. 2012)......................................................................12

*Gillan v. City of San Marino*
147 Cal. App. 4th 1033 (2007)...............................................................17, 18

*Heck v. Humphreys*
512 U.S. 477 (1994).......................................................................................17

*Hightower v. City of Boston*
693 F.3d 61 (1st Cir. 2012) ............................................................................12

*Hunter v. Underwood*
471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985)..............................5, 6, 8

*Kachalsky v. Cacace*
133 S.Ct. 1806 (2013)....................................................................................10



1

2

### TABLE OF AUTHORITIES
### (continued)

**Page**

3

4

*Kachalsky v. County of Westchester*
    701 F.3d 81 (2d Cir. 2012)..........................................................................9, 11

5

6

*Matsushita Elec. Indus. v. Zenith Radio Corp.*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) .......................................3

7

8

*McDonald v. City of Chicago*
    ___ U.S. ___, 130 S. Ct. 3020, 177 L.Ed.2d 894 (2010) ............... 10, 11, 12, 13

9

10

*Moore v. Madigan*
    702 F.3d 933 (7th Cir. 2012).......................................................................13

11

12

*Nichols v. Brown*
    CV 11-09916 SJO (SS), 2013 WL 3368922
    (C.D. Cal. Jul. 3, 2013) ................................................ 14, 15, 16, 18

13

14

*Nunn v. State*
    1 Ga. 243 (1846) ...............................................................................9

15

16

*People v. Celis*
    33 Cal. App. 4th 667 (2004)............................................................................17

17

18

*People v. Jones*
    228 Cal. App. 3d 519 (1991)...........................................................................18

19

20

*People v. Newcomer*
    118 Cal. 263 (1897) ...............................................................................19

21

*State v. Chandler*
    5 La. Ann. 489 (1850)...............................................................................9

22

23

*United States v. Black*
    707 F.3d 531 (4th Cir. 2013)..........................................................................12

24

25

*United States v. Booker*
    644 F.3d 12 (1st Cir. 2011) ...........................................................................12

26

27

*United States v. Chovan*
    ___ F.3d ___, 2013 WL 6050914 (9th Cir. 2013) ..........................................16

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Lopez*
  482 F.3d 1067 (9th Cir. 2007)..................................................................18

*United States v. Mahin*
  668 F.3d 119 (4th Cir. 2012)....................................................................12

*United States v. Masciandaro*
  638 F.3d 458 (4th Cir. 2011)....................................................................12

*United States v. Schrag*
  ___ Fed. Appx. ___, 2013 WL 5614911 (9th Cir. 2013)..................................11

*United States v. Vongxay*
  594 F.3d 1111 (9th Cir. 2010)..................................................................11

*Williams v. State*
  10 A.3d 1167, 1177 (Md. 2011)................................................................12

*Woollard v. Gallagher*
  2013 WL 3479421 (U.S. 2013)..................................................................11

*Woollard v. Gallagher*
  712 F.3d 865 (4th Cir. 2013)..............................................................11, 12

**S**TATUTES

Cal. Pen. Code
  § 25850...................................................................................passim
  § 25900.........................................................................................16
  § 26045(a)......................................................................................15
  § 26150 *et seq.*................................................................................2
  § 26060.........................................................................................16
  § 26350....................................................................................1, 2, 4, 15
  § 26361.....................................................................................15, 17
  § 26362.........................................................................................15
.  § 26391......................................................................................16, 17
  § 26400..................................................................................1, 2, 4, 15, 17
  § 26405.........................................................................................15
  § 26450.........................................................................................17

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. II ................................................................................passim

U.S. Const. Amend. IV ........................................................................ 17, 18, 19

U.S. Const. Amend. XIV ........................................................................4, 5, 19

**COURT RULES**

Fed. R. Civ. P 56(c)(1) ..............................................................................3

Defendant Kamala D. Harris, Attorney General of California (the "Attorney General"), submits the following memorandum of points and authorities in opposition to the motion of Plaintiff Charles Nichols ("Nichols") for partial summary judgment.

## INTRODUCTION

As the Attorney General has written before, Nichols is a self-styled "open-carry" gun-rights activist who is trying to make a radical change to everyday life throughout California.  Nichols advocates that almost everyone should be allowed to carry loaded or unloaded firearms openly in public places—including heavily populated urban areas.  Nichols has pursued the present litigation to overturn California's multiple public-safety laws that restrict open carrying of firearms. Nichols promotes an extreme interpretation of the Second Amendment to the U.S. Constitution that enshrines open carry as a core right and practice, and, quoting state case law from the antebellum South, denounces anything less, even licensed concealed carry.

Presently, Nichols seeks offensive summary judgment to end all enforcement of California's open-carry laws, California Penal Code sections 25850, 26350, and 26400.[1]  Because Nichols's lawsuit depends on a broad reading of the Second Amendment that does not comport with how courts interpret that amendment, as well as equally flawed arguments about other relevant laws, the Court should deny Nichols's motion for partial summary judgment.

## SUMMARY OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Nichols's motion for partial summary judgment mostly rehashes his radical interpretation of the scope of the U.S. Constitution's Second Amendment, which interpretation this Court already rejected in denying Nichols's motion for a preliminary injunction against enforcement of California's open-carry firearms laws.

---

[1] Hereinafter, "Section" means California Penal Code section.

1

(See Docket Doc. 108.)  Nichols also advances a convoluted argument about alleged racism at the California Legislature and in law enforcement that was only hinted at in the operative complaint.

The motion reveals at least one notable omission, as well.  Although Nichols's complaint prays for an injunction against California's firearm-licensing statutes, California Penal Code section 26150 *et seq.*, Nichols is conspicuously silent on the topic in the motion for partial summary judgment.

## TEXTS OF STATUTES BEING CHALLENGED

As just indicated, with the present motion, Nichols seeks to abolish California's open-carry laws.

Section 25850 provides, in pertinent part, as follows:

(a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory.  Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

Sections 26350 provides, in pertinent part, as follows:

A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on [any public place].

Finally, Sections 26400 provides, in pertinent part, as follows:

A person is guilty of carrying an unloaded firearm that is not a handgun

in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county.

## LEGAL STANDARDS FOR SUMMARY-JUDGMENT MOTIONS

Federal Rule of Civil Procedure ("FRCP") 56(a) mandates that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).

Once the moving party meets his/her/its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." FRCP 56(c)(1); accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); accord *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Only disputes over facts that might affect the outcome of the suit...will properly preclude the entry of summary judgment [and] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See id.* at 249. A court deciding a summary judgment motion must view the facts, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.



# ARGUMENT

## I.    NICHOLS HAS NOT ESTABLISHED THAT, AS A MATTER OF LAW, CALIFORNIA PENAL CODE SECTION 25850 IS INVALID UNDER THE FOURTEENTH AMENDMENT ON GROUNDS OF ALLEGED RACISM

Nichols's motion for partial summary judgment—notably *un*like his complaint—elevates to the forefront the strange theory that the Court must invalidate Section 25850, which generally bans the open carrying of loaded firearms in public places, because of the alleged racist origins of the law, and/or alleged racially disproportionate enforcement of the law.[2]  Thus, in the very first two paragraphs of the memorandum of points and authorities in support of the motion, Nichols paints a picture of a racist California Legislature enacting the predecessor statute to Section 25850, called Section 12031, in 1967 specifically to disarm African-American people.  Nichols spends the next paragraph discussing the alleged racist origins of a 1923 California firearms law that is not even at issue in the case.  On page 3, Nichols asserts that "[w]hen charged with PC section 12031 [now 25850], blacks were proportionally most likely to be filed on at the felony level, followed by Hispanics, other race/ethnic groups, and whites.  This pattern exists throughout the period shown (2000-2003)."  On page 12, Nichols tries to bind these questionable items together and argues in a single sentence that, as a matter of law, Section 25850's allegedly racist origins and enforcement compel the invalidation of the law.  Further below on page 12, Nichols drives the point home by purportedly equating Section 25850 with a notorious early-20th-century Alabama law disenfranchising African-American voters and an indefensible 1964 California initiative widely understood as an attempt to overturn recently enacted federal civil-rights laws.

---

[2] Nichols does *not* seek to use allegations of racism to invalidate Section 26350 or Section 26400.  Nichols presents no evidence of alleged racism affecting the passage or the enforcement of these laws.

For at least three reasons, Nichols's new argument for applying the Fourteenth Amendment's Equal Protection Clause to invalidate Section 25850, as a rebuke of racism, cannot withstand any scrutiny.

*First*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291-93 (9th Cir. 2000), teaches that Nichols may not, in effect, have a new cause of action, not pleaded in the complaint or expressly identified during discovery as an anticipated cause of action, adjudicated on a motion for summary judgment. Although Nichols's complaint contains a Fourteenth Amendment argument, that argument is directed not at Section 25850 but rather at Section 26150, the firearms-licensing regime (*see* ¶65 of Second Am. Compl. ("2AC"), Docket Doc. 136), which Nichols entirely ignores in the present motion. Similarly, while the complaint's Fourteenth Amendment argument concerns whether it is an equal-protection violation to treat prospective firearms licensees differently based on the *populations of the counties* in which they reside, there is no theory of *race-based* differential treatment of people who openly carry firearms. (*See id.*) Because the deadline to amend the pleadings in this case passed months ago (as indicated in the Court's June 12, 2013, scheduling order, Docket Doc. 107), the Court should not permit Nichols, at this late stage in the case, to revise the complaint—a fourth time—to attack Section 25850 under the Fourteenth Amendment.

*Second*, Nichols relies mistakenly on *Hunter v. Underwood*, 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985), to bring down Section 25850. In *Hunter*, the U.S. Supreme Court considered whether a 1901 provision in the Alabama Constitution that disenfranchised people convicted of committing certain crimes violated the Equal Protection Clause of the Fourteenth Amendment. *Hunter*, 471 U.S. at 223-24. The Court invalidated the constitutional provision because of two factors: (a) the legislative history exposed that racism against African-Americans was a substantial and motivating factor in the enactment of the provision, *and* (b) it was uncontested that the provision had a racially discriminatory impact,

5

1  disenfranchising African Americans disproportionately. *Hunter*, 471 U.S. at 227-
2  28.

3      The flaw in Nichols's position, and why *Hunter* cannot legitimately be
4  construed to condemn Section 25850, is the lack of evidence of racially
5  discriminatory impact of Section 25850.  In the present motion, Nichols cites to
6  (but does not actually discuss) parts of the 1967 legislative history of Section 12031
7  (Pl. Charles Nichols's  Separate Statement of Uncontroverted Facts [Etc.]
8  ("Nichols's Sep. Statement"), Item 41) and quotes a 2003 California Department of
9  Justice publication, *Concealable Firearms Charges in California* (the "Cal. DOJ
10  Report"), which states that "[w]hen charged with PC section 12031 [now Section
11  25850], blacks were proportionately most likely to be filed on at the felony level,
12  followed by Hispanics, other race/ethnic groups, and whites.  This pattern exists
13  throughout the period shown [2000-03]."  (Nichols's Sep. Statement, Item 56.)
14  Nichols implies that he has thereby shown both a racist motivation for and racially
15  discriminatory impact of Section 25850, imperiling the law's continued existence.

16      It is important to keep in mind that the quoted passage in the Cal. DOJ Report
17  relates not to the enactment of Section 12031 (now called Section 25850) in 1967,
18  but rather to amendments made 33 years later.  There is a critical separation of time
19  and circumstances between the alleged racist motive for the enactment of Section
20  12031 in 1967 and the alleged racially discriminatory impact of Section 12031 in
21  2000-2003.  Page one of the Cal. DOJ Report—quoted by Nichols as undisputed
22  factual items 51 and 52—sets out the relevant information:

23      Prior to January 1, 2000, existing law generally provided that carrying a
24      concealed or loaded firearm was punishable as a misdemeanor and, under
25      certain circumstances, a felony.  However, the Legislature determined
26      that carrying a concealed or loaded firearm without being listed with the
27      Department of Justice (DOJ) as the registered owner of the firearm is a
28      serious crime and should be treated as such.  Assembly Bill (AB) 491

(Scott, 1999) amended both Penal Code (PC) sections 12025 (carrying a concealed firearm) and 12031 (carrying a loaded firearm) to increase the number of circumstances when an offense could be charged. The following additional circumstances may be charged as either felonies or misdemeanors:

- When a person has both a firearm and unexpended ammunition in their immediate possession and that person is not listed with the DOJ as the registered owner of the firearm (PC 12025).

- When a person carries a loaded firearm on his/her person or in a vehicle on any public street and that person is not listed with the DOJ as the registered owner of the firearm (PC 12031).

AB 491 also amended PC sections 12025 and 12031 to require district attorneys to report specified information to the Attorney General about individuals charged with carrying a concealed or loaded firearm. This information includes the gender, race/ethnic group, and age of any person charged with a felony or misdemeanor under either PC sections 12025 or 12031 and any other offense charged in the same complaint or indictment. In addition, the Attorney General is required to compile these data and submit an annual report to the Legislature.

(Also available online at http://oag.ca.gov/cjsc/pubs; last visited November 27, 2013.) As just shown, in 1967, open carrying of a loaded firearm in California was (in almost all cases) a misdemeanor. There literally could not have been a racial disparity in felony charges versus misdemeanor charges under Section 12031 (again, now called Section 25850) anytime near 1967. That disparity could not have existed until after 2000, when the Legislature, in AB 491, made some Section 12031 violations felonies. Nichols has not alleged, and could not truthfully allege, that there was a racist motivation for passage of AB 491 in 2000. The Legislature

in 2000 seemed cognizant of the possibility of racial disparities in law enforcement and apparently wanted to identify any such disparities, because the Legislature—for the first time—tasked local law-enforcement authorities with compiling data about the race breakdown of charges under Section 12031.  Because Nichols has not presented evidence that the Legislature in 2000 had a racial motivation for amending Section 12031, or that the 1967 version of Section 12031 was enforced in a racially discriminatory way, Nichols has not shown that the two *Hunter* elements coexist in any version of Section 25850 and could form a possible basis for invalidating the law.

*Third*, because of the prevalence of racism in U.S. history, it is, unfortunately, relatively easy to castigate many U.S. laws as racist in at least some respect, meaning that Nichols's charges are generic and thus impotent.  Some scholars even posit that the Founding Fathers championed the Second Amendment, which Nichols invokes as a weapon against allegedly racist laws, to try to legitimize Southern citizen "slave patrols" that terrorized enslaved African-Americans, and thereby to entice Southern states to support the U.S. Constitution.  See Carl T. Bogus, *The Hidden History of the Second Amendment*, 31 U.C. Davis L. Rev. 309, 344-54, 371-75, 407-08 (Winter 1998).  Because racism is, sadly, so easy to find in U.S. history, it would be judicial activism and political correctness run amok to invalidate laws based on generalized charges of racism.  This Court should not overturn either the Second Amendment or what Nichols sees as its antagonist, Section 25850, because of the prevalence of racism in U.S. history.

## II.    NICHOLS HAS NOT ESTABLISHED THAT THE SECOND AMENDMENT ENSHRINES OPEN CARRY AS A CORE RIGHT, THEREBY IMPERILING CALIFORNIA'S OPEN-CARRY LAWS

In what logically should be but is not Nichols's lead argument on the motion for partial summary judgment (appearing at pages 13-20 of the opening brief), Nichols repeats his prior arguments, from the preliminary-injunction motion, that the U.S. Supreme Court decision in *Dist. of Columbia v. Heller* 554 U.S. 570, 128

S. Ct. 2783, 171 L. Ed. 2d 637 (2008), held that the Second Amendment right is to carry arms openly.  Under Nichols's interpretation of the Second Amendment, it follows that California's open-carry regulations implicate and may not pass muster under the Second Amendment.

### A.    The U.S. Supreme Court Has Not Adopted Nichols's Interpretation Of The Second Amendment

However, as the Attorney General already has argued before, contrary to Nichols's arguments, the U.S. Supreme Court has never held that the Second Amendment protects an individual right to carry firearms openly in public places. Rather, *Heller*, 554 U.S. 570, 635, expressly conferred a limited right "for law-abiding responsible citizens to use arms in defense of *hearth and home*" (emphasis added).  As if to highlight the finiteness of the holding, *Heller* provided an expressly non-exhaustive list of firearms regulations that are presumptively lawful, and included on the list "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."  *Id.* at 625-27.  Furthermore, *Heller* expressly stated that the Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.* at 628.

Nichols's pro-open-carry interpretation of *Heller* depends on a misreading of that case's discussion of two 19th-century state-court opinions, *Nunn v. State*, 1 Ga. 243 (1846), and *State v. Chandler*, 5 La. Ann. 489 (1850), which struck down open-carry bans (in part because it was considered "manly" for people to carry firearms openly as opposed to concealed (*Chandler*, 5 La. Ann. at 490)).  *Heller* did *not* adopt the holdings of those two long-ago cases.  *Heller* merely cited the cases in demonstrating that "[m]any early-19th century state cases indicated that the Second Amendment right to bear arms was an individual right unconnected to militia service, though subject to certain restrictions."  *Heller*, 554 U.S. at 611; cf. *Kachalsky v. County of Westchester*, 701 F.3d 81, 90 n.12 (2d Cir. 2012) ("*Nunn* is

1    cited in Justice Scalia's majority opinion in *Heller* as an example of state court

2    responses to handgun regulatory efforts within the states")[3].

3        In *McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020, 3044, 177

4    L.Ed.2d 894 (2010), the Supreme Court reiterated that "our central holding in

5    *Heller* [is] that the Second Amendment protects the personal right to keep and bear

6    arms for lawful purposes, *most notably for self-defense within the home*" (emphasis

7    added).  "State and local experimentation with reasonable firearms regulations will

8    continue under the Second Amendment."  *Id.*, 130 S. Ct. at 3046 (quotation marks

9    omitted).

10        There is nothing in *Heller* or *McDonald* (or any other Supreme Court case) to

11    indicate that the Supreme Court will expand those cases' holdings and recognize an

12    open-carry right, as Nichols advocates.  The Supreme Court has denied two

13    petitions for writs of certiorari in cases that could have afforded the high court an

14    opportunity to decide the open-carry question.  *Kachalsky v. Cacace*, 133 S.Ct.

15

16        [3] Nichols also seems to promote a false narrative that in 19th century
America it was lawful for most people to carry firearms openly.  A cornucopia of
17    scholarship shows that the narrative is, indeed, false.  See, e.g., Saul Cornell, *The
Right to Carry Firearms Outside of the Home:  Separating Historical Myths from
18    Historical Realities*, 39 Fordham Urb. L.J. 1695, 1696, 1707, 1714-15, 1726 (Oct.
2012) ("Apart from service in the militia, there is little evidence of a broad
19    constitutional consensus on the right to carry arms in public"; "[T]he Founding
generation had little trouble accepting that one might have different legal standards
20    for the use of arms within the home and in public"; "In reality, Antebellum case law
on the right to bear arms was deeply divided on the scope of the right"; "The claim
21    that there was a broad consensus in Antebellum law on a right to carry openly
mistakenly equates a distinctive Southern tradition of permissive carry with the
22    existence of a larger constitutional consensus on this question.  *The dominant legal
tradition in America was not open carry, but quite the opposite.  A broad range of
23    restrictions on the use of arms in public, including bans on the right to carry in
public, emerged in the decades after the adoption of the Second Amendment*"
24    (emphasis added)); Joseph Blocher, *Firearm Localism*, 123 Yale L.J. 82, 84, 103
(Oct. 2013) ("Nineteenth-century visitors to supposed gun havens like Dodge City,
25    Kansas, and Tombstone, Arizona, could not lawfully bring their firearms past the
city limits"; quoting other scholars, who reported that "during the colonial period,
26    the urban areas were relatively free of the consistent use of firearms")).  In 1871, in
*English v. State*, 35 Tex. 473, the Supreme Court of Texas upheld under the U.S.
27    and Texas constitutions a law prohibiting the open carrying of deadly weapons,
including pistols.

28

10

1806 (2013) (denying petition for writ of certiorari); *Woollard v. Gallagher*, 2013 WL 3479421 (U.S. 2013).

### B. The U.S. Courts Of Appeals Have Not Adopted Nichols's Interpretation Of The Second Amendment

Like the Supreme Court, the U.S. Court of Appeals, Ninth Circuit, has never held that the Second Amendment confers an individual right to carry firearms openly in public places. On the contrary, the Ninth Circuit has interpreted Supreme Court jurisprudence as conferring "the right to register and keep a loaded firearm in [the] home for self-defense, provided [the person] was 'not disqualified from the exercise of Second Amendment rights.'" *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (citing *Heller*, 554 U.S. at 635); *accord United States v. Schrag*, ___ Fed. Appx. ___, 2013 WL 5614911 (9th Cir. 2013) ("In *Heller*, the Court held that a citizen has an individual right to possess firearms in his or her home…")

Furthermore, the overwhelming majority of the other federal appellate courts that have considered the open-carry question (or a related question) have interpreted *Heller* and *McDonald* as recognizing only a narrow right to keep an operable handgun in the home for self-defense. For example, in *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013), the Fourth Circuit criticized the Maryland district court for making a "trailblazing pronouncement that the Second Amendment right to keep and bear arms for the purpose of self-defense extends outside the home. . ." (712 F.3d at 868) and for "br[eaking] ground that our superiors have not tread, proclaiming that the Second Amendment right. . .of individuals to possess and carry firearms in case of confrontation [] is a right that extends beyond the home." (*Id.* at 872.) "*Heller*. . .was principally concerned with the 'core protection' of the Second Amendment: 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" (*Id.* at 874.) *Woollard* also clarifies that another case,

1    *United States v. Black*, 707 F.3d 531 (4th Cir. 2013), does *not* hold that the Second

2    Amendment has force outside the home.  *Woollard*, 712 F.3d at 875 n.5.

3        The Second Circuit has also rejected the broad right claimed by Nichols.  See

4    *Kachalsky*, 701 F.3d at 89, 94 ("What we know from [*Heller* and *McDonald*] is that

5    Second Amendment guarantees are at their zenith within the home.  What we do

6    not know is the scope of that right beyond the home. . .  The state's ability to

7    regulate firearms and, for that matter, conduct, is qualitatively different in public

8    than in the home.  *Heller* reinforces this view").  Other circuit-court decisions

9    similarly cast doubt on viewing *Heller* and *McDonald* as creating an individual

10   right to carry weapons openly outside the home.  See *Drake v. Filko*, 724 F.3d 426,

11   430 (3d Cir. 2013) ("It remains unsettled whether the individual right to bear arms

12   for the purpose of self-defense extends beyond the home"; declining to define scope

13   of right); *Hightower v. City of Boston*, 693 F.3d 61, 73 (1st Cir. 2012) ("Under our

14   analysis of *Heller*…the government may regulate the carrying of concealed

15   weapons outside of the home"); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244,

16   1259, 1264 (11th Cir. 2012) (*Heller* "went to great lengths to emphasize the special

17   place that the home—an individual's private property—occupies in our society…

18   [T]he pre-existing right codified in the Second Amendment does not include

19   protection for a right to carry a firearm in a place of worship against the owner's

20   wishes"); *United States v. Mahin*, 668 F.3d 119, 123-24 (4th Cir. 2012) (declining

21   criminal defendant's invitation to "recognize that Second Amendment protections

22   apply outside the home. . ."); *United States v. Booker*, 644 F.3d 12, 25 n.17 (1st Cir.

23   2011) ("While we do not attempt to discern the 'core' Second Amendment right

24   vindicated in *Heller*, we note that *Heller* stated that the Second Amendment

25   'elevates above all other interests the right of law-abiding, responsible citizens to

26   use arms in defense of hearth and home'"); *United States v. Masciandaro*, 638 F.3d

27   458, 467 (4th Cir. 2011) ("[A] considerable degree of uncertainty remains as to the

28   scope of [the *Heller*] right beyond the home. . ."); *cf. Williams v. State*, 10 A.3d

                                    12

1167, 1177 (Md. 2011) ("If the Supreme Court, in this dicta, meant its holding to extend beyond home possession, it will need to say so more plainly").

As these decisions show, the clear weight of legal authority is to recognize that *Heller* and *McDonald* should not be extrapolated to confer a broad right openly to carry a weapon, loaded or unloaded, in public.

Nichols downplays all this legal authority in favor of emphasizing a split (2-1) Seventh Circuit opinion, *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), which dealt with a uniquely strict Illinois law that broadly forbade publicly carrying any loaded or unloaded firearms—"[a] blanket prohibition on carrying a gun in public." *Id.* at 934, 940. "Remarkably, Illinois is the *only* state that maintains a flat ban on carrying ready-to-use guns outside the home. . ." *Id.* (Emphasis in original.) There were no concealed-carry licenses available in Illinois. *Id.* The decision in *Moore* invalidated Illinois's law, stating somewhat ambiguously, "A right to bear arms thus implies a right to carry a loaded gun outside the home." *Id.* at 936.[4] Significantly, *Moore* invited the Illinois Legislature "to craft a new gun law that will impose reasonable limitations consistent with the public safety. . ." *Id.* at 942. And the Illinois Legislature has responded to *Moore* by enacting a *concealed*-carry scheme, Illinois Public Act 098-0063—not by enacting a pro-open-carry law. Because California has a concealed-carry law already, it seems quite likely that the *Moore* Court would uphold California's open-carry laws. Consequently, even *Moore*, the outlier decision, does not support Nichols's position that open carry is the lone, unassailable manifestation of Second Amendment rights outside the home.

/ / /

/ / /

/ / /

---

[4] *Drake,* 724 F.3d at 430, criticizes *Moore* on this point: "[T]he Seventh Circuit in *Moore* may have read *Heller* too broadly."

13

1

**C.    This Court In This Case Already Has Rejected Nichols's Second-Amendment Theory**

2

3        Finally, this Court's July 3, 2013, ruling also vanquishes Nichols's theory that

4    there is a broad open-carry right under the Second Amendment:

5        [I]n *Heller* the Supreme Court recognized the Second Amendment "right

6        of law-abiding, responsible citizens to use arms in defense of hearth and

7        home." *Heller*, 554 U.S. at 635… This right, however, is "not

8        unlimited," and it does not "protect the right of citizens to carry arms for

9        *any sort* of confrontation." *Heller*, 554 U.S. at 595. Nor is this

10        individual right "a right to keep and carry any weapon whatsoever in any

11        manner whatsoever and for whatever purpose." *Id.* at 626.

12        Lower courts have been cautious, however, in expanding the scope of

13        this right beyond the contours delineated in *Heller*…Courts that have

14        considered the meaning of *Heller* and *McDonald* in the context of open

15        carry rights have found that these cases did not hold that the Second

16        Amendment gives rise to an unfettered right to carry firearms in public.

17    *Nichols v. Brown*, CV 11-09916 SJO (SS), 2013 WL 3368922 at *3-*4 (C.D. Cal.

18    Jul. 3, 2013) (footnotes omitted). Still today, it remains "far from clear that

19    Plaintiff enjoys such a right." *Id.* at *4.

20        Furthermore, as the Court held, "[e]ven if [Nichols] does [have such a right],

21    though, the Court finds that Plaintiff is unlikely to demonstrate that the Challenged

22    Statutes fail to satisfy the applicable standard of review and are thus

23    unconstitutional." *Nichols*, 2013 WL 3368922 at *4. The Court assumed without

24    deciding that intermediate scrutiny applied, and found that:

25        Harris has persuasively argued that California has a substantial interest in

26        increasing public safety by restricting the open carry of firearms, both

27        loaded and unloaded. As found by California courts, Section 25850 is

28        designed "to reduce the incidence of unlawful *public* shootings." *People*

*v. Flores*, 169 Cal. App. 4th 568, 576 (2008); *see also People v. Foley*, 149 Cal. App. 3d Supp. 33, 39 (1983) ("The primary purpose of [Section 25850] is to control the threat to public safety in the indiscriminate possession and carrying of concealed and loaded weapons.")  Likewise, Section 26350 and Section 26400 were enacted because:

> The absence of a prohibition on "open carry" has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals and causing issues for law enforcement.  Open carry creates a potentially dangerous situation.  In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.  In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal.  In this situation, the practice of "open carry" creates an unsafe environment for all parties involved:  the officer, the gun-carrying individual, and for any other individuals nearby as well.  Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways.  [Citation.]

*Nichols*, 2013 WL 3368922 at *5-*6.  Accordingly, the Court found the first part of the intermediate scrutiny test to be satisfied.  *Id.* at *6.

The Court also finds that the Challenged Statutes are designed such that there is a reasonable fit between their provisions and the objective of increasing public safety.  Notably…the Challenged Statutes all contain an



exception for self-defense.  *See* Cal. Penal Code §§ 26045(a), 26362, 26405.  The Challenged Statutes also provide for exceptions for, *inter alia*, defense of property, security guards, police officers, members of the military, hunters, target shooters, persons who possess a firearm on their own property, and persons who possess a firearm at their lawful residence, "including any temporary residence or campsite."  Cal. Penal Code §§ 25900-26060, 26361-26391, 26405.  In light of this thoughtful and comprehensive statutory regime, the Court concludes that the Challenged Statutes likely satisfy intermediate scrutiny . . .

*Nichols*, 2013 WL 3368922 at *6.  Accordingly, the Court found the second and final part of the intermediate scrutiny test to be satisfied.  *Id.*[5]

For the very same reasons, the lack of an open-carry right, and the challenged statutes' satisfaction of even heightened Second Amendment scrutiny, the Court should deny Nichols's motion for partial summary judgment.

/ / /

/ / /

---

[5] The Ninth Circuit has recently adopted a two-part test akin to the "substantial burden" test for adjudicating Second Amendment claims.  *United States v. Chovan*, ___ F.3d ___, 2013 WL 6050914 (9th Cir. 2013), holds as follows:  "The two-step Second Amendment inquiry we adopt (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny."  *Id.* at *8.  The appropriate "level of scrutiny in the Second Amendment context should depend on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.  …More specifically, the level of scrutiny should depend on (1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right."  *Id.* at *9.  Under *Chovan*, this Court should find that California's open-carry laws do not come close to the Second Amendment's core right, which, as shown above, courts have *not* construed to include open carry.  It follows from the California open-carry laws' lack of a substantial burden on the Second Amendment right that the Court should apply a relatively lenient standard of constitutional scrutiny to the laws in question.  Nonetheless, because the Court already has found that California's open-carry laws survive intermediate scrutiny, even if the Court decides (incorrectly, in the Attorney General's opinion) that *Chovan* mandates intermediate scrutiny here, the California open-carry laws survive the challenge, and the Court should deny Nichols's motion for partial summary judgment.

## III. THERE IS NO SIGNIFICANCE TO NICHOLS'S FALSE ASSERTION THAT THE CHALLENGED LAWS LACK SELF-DEFENSE EXCEPTIONS

For a third argument, articulated or implied at pages 8 and 11 of the opening brief in support of the motion for partial summary judgment, Nichols makes the knowingly false assertion that California's open-carry laws do not contain exceptions for self-defense. It is unclear why Nichols even makes this assertion. He has never been arrested for, charged with, or convicted of violating any California open-carry law for an incident involving alleged self-defense. There is thus no basis for this Court in this case to make a ruling about the constitutional sufficiency of the self-defense exceptions to California's open-carry laws.

Moreover, Nichols's assertions are plainly false. Sections 25900 to 26060 contain the exemptions, including the self-defense exemption, to Section 25850. Sections 26361 to 26391 contain the exemptions, including the self-defense exemption, to Section 26350. Section 26450 contains the exemptions, including the self-defense exemption, to Section 26400.

## IV. NICHOLS HAS NOT ESTABLISHED THAT SECTION 25850, SUBDIVISION (B), VIOLATES THE FOURTH AMENDMENT

For a fourth argument, at page 10 of the opening brief in support of the motion for partial summary judgment, Nichols repeats his prior, meritless Fourth Amendment attack against Section 25850's subdivision (b) that authorizes peace officers to inspect openly carried firearms to see if they are loaded, and to arrest any person openly carrying a firearm who resists a "chamber check." Nichols's no-contest plea to violating City of Redondo Beach municipals laws banning open carry (pp. 17-18 of Docket Doc. 119), stemming from the only open-carry incident involving Nichols ever detailed in this lawsuit (2AC, ¶ 45), and the dismissal of all Redondo Beach defendants in the present case (Docket Doc. 125), forecloses Nichols's Fourth Amendment complaints about the Redondo Beach police officer

who, on May 21, 2012, examined Nichols's openly exposed long gun to see if it was loaded. *Heck v. Humphreys*, 512 U.S. 477, 486-87 (1994).

Additionally, because Nichols has not successfully challenged the constitutionality of any of the laws in question here, it remains the case that a person who openly carries a firearm in a public place in California, in a county, such as Los Angeles County, of more than 200,000 people, and not in the category of people exempt from the open-carry laws, is committing a crime. Hence a peace officer seeing a person openly carry the firearm in a public place necessarily has probable cause to *search* the firearm to see if it is loaded. *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1044 (2007). By Nichols's own account (given at 2AC, ¶45), at the May 21, 2012 incident, Nichols's firearm was searched and he was detained, as opposed to arrested. *See People v. Celis*, 33 Cal. App. 4th 667, 674 (2004) (defining "detention" and "arrest"); *People v. Jones*, 228 Cal. App. 3d 519, 523 (1991) (same). There is no basis to question the Redondo Beach police officer's actions here.

Relatedly, although "[u]nder the Fourth Amendment, a warrantless *arrest* requires probable cause," *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (emphasis added), there will always be probable cause for a warrantless arrest of a person who openly carries a firearm in a public place in California, in a county, such as Los Angeles County, of more than 200,000 people, and the person's refusal to consent to the peace officer's chamber check of the firearm will always further justify that person's arrest. *Gillan*, 147 Cal. App. 4th at 1044-45. Accordingly, even if the Redondo Beach police officer had arrested Nichols on May 21, 2012, the arrest would be justified and not a constitutional violation.

Furthermore, regarding Nichols's facial challenge to Section 25850, subdivision (b), under the Fourth Amendment, the Court's July 3, 2013, ruling is instructive:

> Plaintiff has not demonstrated that Section 25850(b) violates the
> Fourth Amendment in all possible circumstances.  To the contrary, the
> Court can envision any number of scenarios in which a police officer
> would have probable cause to arrest someone after they have refused
> to allow the officer to determine if their firearm was loaded.

*Nichols*, 2013 WL 3368922 at *7.  Nichols's Fourth Amendment argument fails as a facial challenge to the public-safety law, as well.

In sum, Nichols has no viable facial or as-applied theory of a Fourth Amendment violation in this case.

## V.    THERE IS NO DISCERNIBLE POINT IN NICHOLS'S VOLUMINOUS QUOTATIONS FROM JUDICIAL OPINIONS AND OTHER SOURCES

For no apparent reason, Nichols spends a large chunk of his brief quoting passages from judicial opinions or other sources, without analyzing or otherwise discussing of providing a context for the quotation.  For example, at pages 10-11, Nichols quotes case law about whether the Second Amendment is applicable to the U.S. states through the Fourteenth Amendment.  This practice reaches its nadir at pages 13-16, which Nichols consumes with a quotation of the entirety of *Heller*'s *syllabus*, which "contains no part of the opinion of the Court."  554 U.S. at 570. Because Nichols does not explain why he has typed up those quotations, the Attorney General does not discern any legal arguments to oppose.

At the memorandum of points and authorities in support of the motion for partial summary judgment's page 16, where Nichols lists cites regarding whether California criminal law imposes a "duty to retreat" on a person being aggressively physically attacked by another, Nichols adds some of his own words.  But it remains unclear what Nichols's point is.  Although Nichols tries to argue that California has an across-the-board "stand your ground" rule, the situation remains murky because the supposedly supporting, late-19th-century case, *People  v. Newcomer*, 118 Cal. 263 (1897), concerned an in-home incident:

19

[T]he appellant in the case at bar was in his own house at the time of the homicide… [A] person attacked in his own house need not flee… When a man "without fault" himself is suddenly attacked in his own house in a murderous or dangerous manner, he is not called upon to flee from his home, or to consider the proposition of so fleeing.

*Id.* at 273-74. *Newcomer* is fundamentally off-point for Nichols's open-carry lawsuit, making Nichols's citation to the case all the more confusing.

## CONCLUSION

Nichols is asking this Court to change radically everyday life in California, especially in urban and suburban areas, yet in this lawsuit Nichols has not stated a viable cause of action against the Attorney General, the lone remaining defendant. The Court should deny Nichols's offensive motion for partial summary judgment.

Dated: November 27, 2013                    Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General


_/s/_____
JONATHAN M. EISENBERG
Deputy Attorney General
*Attorneys for Defendant California
Attorney General Kamala D. Harris*