KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
 300 South Spring St., Ste. 1702
 Los Angeles, CA  90013
 Telephone:  (213) 897-6505
 Fax:  (213) 897-1071
 E-mail:  jonathan.eisenberg@doj.ca.gov
*Attorneys for Defendant California Attorney*
*General Kamala D. Harris*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **CHARLES NICHOLS,**<br><br>Plaintiff,<br><br>**v.**<br><br>**EDMUND G. BROWN JR., in his official capacity as Governor of California, KAMALA D. HARRIS, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,**<br><br>Defendants. | 2:11-cv-09916-SJO-(SS)<br><br>**[CORRECTED] MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF CHARLES NICHOLS'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:           N/A<br>Time:          N/A<br>Crtrm.:        23—3rd Flr.<br>Judge:        Hon. Suzanne H. Segal<br>Trial Date:   Not Yet Set<br>Action Filed:  Nov. 30, 2011 |

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................... 1

Summary Of Motion For Partial Summary Judgment .................................. 1

Texts Of Statutes Being Challenged ............................................................ 2

Legal Standards For Summary-Judgment Motions ...................................... 3

Argument ...................................................................................................... 4

I.    Nichols Has Not Established That, As A Matter Of Law, California Penal Code Section 25850 Is Invalid Under The Fourteenth Amendment On Grounds Of Alleged Racism .................. 4

II.   Nichols Has Not Established That The Second Amendment Enshrines Open Carry As A Core Right, Thereby Imperiling California's Open-Carry Laws ............................................................ 8

    A.    The U.S. Supreme Court Has Not Adopted Nichols's Interpretation Of The Second Amendment ................................ 8

    B.    The U.S. Courts Of Appeals Have Not Adopted Nichols's Interpretation Of The Second Amendment ............................. 11

    C.    This Court In This Case Already Has Rejected Nichols's Second-Amendment Theory .................................................... 13

III.  There Is No Significance To Nichols's False Assertion That The Challenged Laws Lack Self-Defense Exceptions ............................. 16

IV.   Nichols Has Not Established That Section 25850, Subdivision (B), Violates The Fourth Amendment .................................................. 17

V.    There Is No Discernible Point In Nichols's Voluminous Quotations From Judicial Opinions And Other Sources .................. 19

Conclusion .................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........................................3

*C.A.R. Transp. Brokerage Co. v. Darden Rests, Inc.*
213 F.3d 474 (9th Cir. 2000) ...................................................................3

*Celotex Corp. v. Catrett*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........................................3

*Dist. of Columbia v. Heller*
554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) .........................passim

*Drake v. Filko*
724 F.3d 426 (3d Cir. 2013) ..........................................................12, 13

*English v. State*
35 Tex. 473 (1871) ......................................................................10

*Coleman v. Quaker Oats Co.*
232 F.3d 1271 (9th Cir. 2000) .............................................................5

*GeorgiaCarry.Org, Inc. v. Georgia*
687 F.3d 1244 (11th Cir. 2012) ..........................................................12

*Gillan v. City of San Marino*
147 Cal. App. 4th 1033 (2007) .......................................................17, 18

*Heck v. Humphreys*
512 U.S. 477 (1994) .....................................................................17

*Hightower v. City of Boston*
693 F.3d 61 (1st Cir. 2012) ..............................................................12

*Hunter v. Underwood*
471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985)................................5, 6, 8

*Kachalsky v. Cacace*
133 S.Ct. 1806 (2013) ...................................................................10

# TABLE OF AUTHORITIES
## (continued)

Page

*Kachalsky v. County of Westchester*
  701 F.3d 81 (2d Cir. 2012) ........................................................ 9, 11

*Matsushita Elec. Indus. v. Zenith Radio Corp.*
  475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ........................................ 3

*McDonald v. City of Chicago*
  ___ U.S. ___, 130 S. Ct. 3020, 177 L.Ed.2d 894 (2010) ................ 10, 11, 12, 13

*Moore v. Madigan*
  702 F.3d 933 (7th Cir. 2012) ........................................................ 13

*Nichols v. Brown*
  CV 11-09916 SJO (SS), 2013 WL 3368922
  (C.D. Cal. Jul. 3, 2013) ........................................................ 14, 15, 16, 18

*Nunn v. State*
  1 Ga. 243 (1846) ........................................................ 9

*People v. Celis*
  33 Cal. App. 4th 667 (2004) ........................................................ 17

*People v. Jones*
  228 Cal. App. 3d 519 (1991) ........................................................ 18

*People v. Newcomer*
  118 Cal. 263 (1897) ........................................................ 19

*State v. Chandler*
  5 La. Ann. 489 (1850) ........................................................ 9

*United States v. Black*
  707 F.3d 531 (4th Cir. 2013) ........................................................ 12

*United States v. Booker*
  644 F.3d 12 (1st Cir. 2011) ........................................................ 12

*United States v. Chovan*
  ___ F.3d ___, 2013 WL 6050914 (9th Cir. 2013) ........................................ 16

# TABLE OF AUTHORITIES
## (continued)

Page

*United States v. Lopez*
  482 F.3d 1067 (9th Cir. 2007) ................................................................. 18

*United States v. Mahin*
  668 F.3d 119 (4th Cir. 2012) ................................................................. 12

*United States v. Masciandaro*
  638 F.3d 458 (4th Cir. 2011) ................................................................. 12

*United States v. Schrag*
  ___ Fed. Appx. ___, 2013 WL 5614911 (9th Cir. 2013) ................................... 11

*United States v. Vongxay*
  594 F.3d 1111 (9th Cir. 2010) ................................................................. 11

*Williams v. State*
  10 A.3d 1167, 1177 (Md. 2011) ................................................................. 12

*Woollard v. Gallagher*
  2013 WL 3479421 (U.S. 2013) ................................................................. 11

*Woollard v. Gallagher*
  712 F.3d 865 (4th Cir. 2013) ................................................................. 11, 12

STATUTES

Cal. Pen. Code
  § 25850 ................................................................................. passim
  § 25900 ................................................................................. 16
  § 26045(a) ............................................................................. 15
  § 26150 *et seq.* ....................................................................... 2
  § 26060 ................................................................................. 16
  § 26350. ............................................................................. 1, 2, 4, 15
  § 26361. ............................................................................. 15, 17
  § 26362 ................................................................................. 15
  § 26391 ............................................................................... 16, 17
  § 26400 ........................................................................... 1, 2, 4, 15, 17
  § 26405 ................................................................................. 15
  § 26450 ................................................................................. 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. II ......................................................................... passim

U.S. Const. Amend. IV ....................................................................... 17, 18, 19

U.S. Const. Amend. XIV .................................................................... 4, 5, 19

**COURT RULES**

Fed. R. Civ. P 56(c)(1) ....................................................................... 3

Defendant Kamala D. Harris, Attorney General of California (the "Attorney General"), submits the following memorandum of points and authorities in opposition to the motion of Plaintiff Charles Nichols ("Nichols") for partial summary judgment.

## INTRODUCTION

As the Attorney General has written before, Nichols is a self-styled "open-carry" gun-rights activist who is trying to make a radical change to everyday life throughout California. Nichols advocates that almost everyone should be allowed to carry loaded or unloaded firearms openly in public places—including heavily populated urban areas. He has pursued the present litigation with the goal of overturning California's multiple public-safety laws that restrict open carrying of firearms. In doing so, Nichols promotes an extreme interpretation of the Second Amendment to the United States Constitution, one that enshrines open carry as a core right and practice. Quoting state case law from the antebellum South, Nichols denounces anything less, even licensed concealed carry.

Presently, Nichols seeks offensive summary judgment to end all enforcement of California's open-carry laws, California Penal Code sections 25850, 26350, and 26400.[1] Because Nichols's lawsuit depends on a broad reading of the Second Amendment that does not comport with how courts have interpreted that amendment, as well as equally flawed arguments about other relevant laws, the Court should deny Nichols's motion for partial summary judgment.

## SUMMARY OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Nichols's motion for partial summary judgment mostly rehashes his radical interpretation of the scope of the Second Amendment, which interpretation this Court rejected in denying his motion for a preliminary injunction against enforcement of California's open-carry firearms laws. (See Docket Doc. 108.)

---

[1] Hereinafter, "Section" means California Penal Code section.

1

1    Nichols also advances a convoluted and unsubstantiated argument about alleged

2    racism at the California Legislature and in law enforcement that was only hinted at

3    in the operative complaint.

4        The motion reveals at least one notable omission, as well.  Although Nichols's

5    complaint prays for an injunction against California's firearm-licensing statutes,

6    California Penal Code section 26150 *et seq.*, he is conspicuously silent on the topic

7    in the motion for partial summary judgment.

8                    **TEXTS OF STATUTES BEING CHALLENGED**

9        As just indicated, with the present motion, Nichols seeks to abolish

10    California's open-carry laws.

11        Section 25850 provides, in pertinent part, as follows:

12        (a) A person is guilty of carrying a loaded firearm when the person

13        carries a loaded firearm on the person or in a vehicle while in any public

14        place or on any public street in an incorporated city or in any public place

15        or on any public street in a prohibited area of unincorporated territory.

16        (b) In order to determine whether or not a firearm is loaded for the

17        purpose of enforcing this section, peace officers are authorized to

18        examine any firearm carried by anyone on the person or in a vehicle

19        while in any public place or on any public street in an incorporated city

20        or prohibited area of an unincorporated territory.  Refusal to allow a

21        peace officer to inspect a firearm pursuant to this section constitutes

22        probable cause for arrest for violation of this section.

23        Sections 26350 provides, in pertinent part, as follows:

24        A person is guilty of openly carrying an unloaded handgun when that

25        person carries upon his or her person an exposed and unloaded handgun

26        outside a vehicle while in or on [any public place].

27        Finally, Sections 26400 provides, in pertinent part, as follows:

28        A person is guilty of carrying an unloaded firearm that is not a handgun

1    in an incorporated city or city and county when that person carries upon

2    his or her person an unloaded firearm that is not a handgun outside a

3    vehicle while in the incorporated city or city and county.

4    **LEGAL STANDARDS FOR SUMMARY-JUDGMENT MOTIONS**

5    Federal Rule of Civil Procedure ("FRCP") 56(a) mandates that "the court shall

6    grant summary judgment if the movant shows that there is no genuine dispute as to

7    any material fact and the movant is entitled to judgment as a matter of law."  The

8    moving party bears the initial burden of establishing the absence of a genuine issue

9    of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548,

10   91 L.Ed.2d 265 (1986).  "When the party moving for summary judgment would

11   bear the burden of proof at trial, it must come forward with evidence [that] would

12   entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a

13   case, the moving party has the initial burden of establishing the absence of a

14   genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage*

15   *Co. v. Darden Rests, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal

16   quotation marks omitted).

17   Once the moving party meets its initial burden of proof, the "party asserting

18   that a fact cannot be or is genuinely disputed must support the assertion."  FRCP

19   56(c)(1); accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct.

20   2505, 91 L.Ed.2d 202 (1986); accord *Matsushita Elec. Indus. v. Zenith Radio*

21   *Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "Only disputes

22   over facts that might affect the outcome of the suit...will properly preclude the entry

23   of summary judgment [and] [f]actual disputes that are irrelevant or unnecessary will

24   not be counted." *Anderson*, 477 U.S. at 248.   At the summary judgment stage, a

25   court does not make credibility determinations or weigh conflicting evidence. *See*

26   *id.* at 249.  A court deciding a summary judgment motion must view the facts, and

27   draw all reasonable inferences therefrom, in the light most favorable to the

28   nonmoving party. *Matsushita*, 475 U.S. at 587.

# ARGUMENT

**I.   NICHOLS HAS NOT ESTABLISHED THAT, AS A MATTER OF LAW, CALIFORNIA PENAL CODE SECTION 25850 IS INVALID UNDER THE FOURTEENTH AMENDMENT ON GROUNDS OF ALLEGED RACISM**

Nichols's motion for partial summary judgment—notably *un*like his complaint—elevates to the forefront the strange theory that the Court must invalidate Section 25850, which generally bans the open carrying of loaded firearms in public places, because of the alleged racist origins of the law, and/or alleged racially disproportionate enforcement of the law.[2]  Thus, in the very first two paragraphs of the memorandum of points and authorities in support of the motion, Nichols paints a picture of a racist California Legislature enacting the predecessor statute to Section 25850, called Section 12031, in 1967 specifically to disarm African-American people.  Nichols spends the next paragraph discussing the alleged racist origins of a 1923 California firearms law that is not even at issue in the present case.  On page 3, Nichols asserts that "[w]hen charged with PC section 12031 [now 25850], blacks were proportionally most likely to be filed on at the felony level, followed by Hispanics, other race/ethnic groups, and whites.  This pattern exists throughout the period shown (2000-2003)."  On page 12, Nichols tries to bind these questionable items together and argues in a single sentence that, as a matter of law, Section 25850's allegedly racist origins and enforcement compel the invalidation of the law.  Further below on page 12, Nichols drives the point home by purportedly equating Section 25850 with a notorious early-20th-century Alabama law disenfranchising African-American voters and a 1964 California housing initiative that the United States Supreme Court overturned as racially discriminatory.

---

[2] Nichols does *not* seek to use allegations of racism to invalidate Section 26350 or Section 26400.  Nichols presents no evidence of alleged racism affecting the passage or the enforcement of these laws.

1    For at least two reasons, Nichols's new argument for applying the Fourteenth

2   Amendment's Equal Protection Clause to invalidate Section 25850, as a rebuke of

3   racism, cannot withstand any scrutiny.

4    *First*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291-93 (9th Cir. 2000),

5   teaches that Nichols may not, in effect, have a new cause of action, not pleaded in

6   the complaint or expressly identified during discovery as an anticipated cause of

7   action, adjudicated on a motion for summary judgment.  Although Nichols's

8   complaint contains a Fourteenth Amendment argument, that argument is directed

9   not at Section 25850 but rather at Section 26150, the firearms-licensing regime (*see*

10   ¶65 of Second Am. Compl. ("2AC"), Docket Doc. 136), which Nichols entirely

11   ignores in the present motion.  Similarly, while the complaint's Fourteenth

12   Amendment argument concerns whether it is an equal-protection violation to treat

13   prospective firearms licensees differently based on the *populations of the counties*

14   in which they reside, there is no theory of *race-based* differential treatment of

15   people who openly carry firearms.  (*See ibid.*)  Because the deadline to amend the

16   pleadings in this case passed months ago (as indicated in the Court's June 12, 2013,

17   scheduling order, Docket Doc. 107), the Court should not permit Nichols, at this

18   late stage in the case, to revise the complaint—a fourth time—to attack Section

19   25850 under the Fourteenth Amendment.

20    *Second*, Nichols relies mistakenly on *Hunter v. Underwood*, 471 U.S. 222, 105

21   S.Ct. 1916, 85 L.Ed.2d 222 (1985), in attacking the constitutionality of Section

22   25850.  In *Hunter*, the United States Supreme Court considered whether a 1901

23   provision in the Alabama Constitution that disenfranchised people convicted of

24   committing certain crimes violated the Equal Protection Clause of the Fourteenth

25   Amendment.  *Hunter*, 471 U.S. at 223-24.  The Court invalidated the constitutional

26   provision because of two factors:  (a) the legislative history exposed that racism

27   against African-Americans was a substantial and motivating factor in the enactment

28   of the provision, *and* (b) it was uncontested that the provision had a racially

1   discriminatory impact, disenfranchising African Americans disproportionately.

2   *Hunter*, 471 U.S. at 227-28.

3      Setting aside the historical question of the legislative motivation in 1967 for

4   enacting what become Section 25850, the flaw in Nichols's position, and why

5   *Hunter* cannot legitimately be construed to condemn Section 25850, is the lack of

6   evidence of racially discriminatory impact of Section 25850 or racist motivations

7   behind amendments of that law in 2000, when treatment of a violation as a felony

8   became possible.  In the present motion, Nichols cites to (but does not actually

9   discuss) parts of the 1967 legislative history of Section 12031 (Pl. Charles

10  Nichols's  Separate Statement of Uncontroverted Facts [Etc.] ("Nichols's Sep.

11  Statement"), Item 41) and quotes a 2003 California Department of Justice

12  publication, *Concealable Firearms Charges in California* (the "Cal. DOJ Report"),

13  which states that "[w]hen charged with PC section 12031 [now Section 25850],

14  blacks were proportionately most likely to be filed on at the felony level, followed

15  by Hispanics, other race/ethnic groups, and whites.  This pattern exists throughout

16  the period shown [2000-03]."  (Nichols's Sep. Statement, Item 56.)  Nichols

17  implies that he has thereby shown both a racist motivation for and racially

18  discriminatory impact of Section 25850, imperiling the law's continued existence.

19     It is important to keep in mind that the quoted passage in the Cal. DOJ Report

20  relates not to the enactment of Section 12031 (now called Section 25850) in 1967,

21  but rather to amendments made 33 years later.  There is a critical separation of time

22  and circumstances between the alleged racist motive for the enactment of Section

23  12031 in 1967 and the alleged racially discriminatory impact of Section 12031 in

24  2000-2003.  Page one of the Cal. DOJ Report—quoted by Nichols as undisputed

25  factual items 51 and 52—sets out the relevant information:

26      Prior to January 1, 2000, existing law generally provided that carrying a

27      concealed or loaded firearm was punishable as a misdemeanor and, under

28      certain circumstances, a felony.  However, the Legislature determined

that carrying a concealed or loaded firearm without being listed with the Department of Justice (DOJ) as the registered owner of the firearm is a serious crime and should be treated as such.  Assembly Bill (AB) 491 (Scott, 1999) amended both Penal Code (PC) sections 12025 (carrying a concealed firearm) and 12031 (carrying a loaded firearm) to increase the number of circumstances when an offense could be charged.  The following additional circumstances may be charged as either felonies or misdemeanors:

- When a person has both a firearm and unexpended ammunition in their immediate possession and that person is not listed with the DOJ as the registered owner of the firearm (PC 12025).

- When a person carries a loaded firearm on his/her person or in a vehicle on any public street and that person is not listed with the DOJ as the registered owner of the firearm (PC 12031).

AB 491 also amended PC sections 12025 and 12031 to require district attorneys to report specified information to the Attorney General about individuals charged with carrying a concealed or loaded firearm. This information includes the gender, race/ethnic group, and age of any person charged with a felony or misdemeanor under either PC sections 12025 or 12031 and any other offense charged in the same complaint or indictment. In addition, the Attorney General is required to compile these data and submit an annual report to the Legislature.

(Also available online at http://oag.ca.gov/cjsc/pubs; last visited November 27, 2013.)  As just shown, in 1967, open carrying of a loaded firearm in California was (in almost all cases) a misdemeanor.  There literally could not have been a racial disparity in felony charges versus misdemeanor charges under Section 12031 (again, now called Section 25850) anytime near 1967.  That disparity could not

1  have existed until after 2000, when the Legislature, in AB 491, made some Section

2  12031 violations felonies.  Nichols has not alleged, and could not truthfully allege,

3  that there was a racist motivation for passage of AB 491 in 2000.  The Legislature

4  in 2000 seemed cognizant of the possibility of racial disparities in law enforcement

5  and apparently wanted to identify any such disparities, because the Legislature—for

6  the first time—tasked local law-enforcement authorities with compiling data about

7  the race breakdown of charges under Section 12031.  Because Nichols has not

8  presented evidence that the Legislature in 2000 had a racial motivation for

9  amending Section 12031, or that the 1967 version of Section 12031 was enforced in

10  a racially discriminatory way, Nichols has not shown that the two *Hunter* elements

11  coexist in any version of Section 25850 and could form a possible basis for

12  invalidating the law.

13  **II.  NICHOLS HAS NOT ESTABLISHED THAT THE SECOND AMENDMENT
    ENSHRINES OPEN CARRY AS A CORE RIGHT, THEREBY IMPERILING
14  CALIFORNIA'S OPEN-CARRY LAWS**

15  In what logically should be but is not Nichols's lead argument on the motion

16  for partial summary judgment (appearing at pages 13-20 of the opening brief),

17  Nichols repeats his prior arguments, from the preliminary-injunction motion, that

18  the United States Supreme Court decision in *District of Columbia v. Heller* 554

19  U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), held that the Second

20  Amendment right is to carry firearms openly.  Under Nichols's interpretation of the

21  Second Amendment, it follows that California's open-carry regulations implicate

22  and may not pass muster under the Second Amendment.

23  **A.    The United States Supreme Court Has Not Adopted Nichols's
    Interpretation Of The Second Amendment**
24

25  However, as the Attorney General already has argued before, contrary to

26  Nichols's arguments, the United States Supreme Court has never held that the

27  Second Amendment protects an individual right to carry firearms openly in public

28  places.  Rather, *Heller* expressly conferred a limited right "for law-abiding

1    responsible citizens to use arms in defense of *hearth and home*." 554 U.S. at 635

2    (emphasis added). As if to highlight the finiteness of the holding, *Heller* provided

3    an expressly non-exhaustive list of firearms regulations that are presumptively

4    lawful, and included on the list "laws forbidding the carrying of firearms in

5    sensitive places such as schools and government buildings." *Id*. at 625-27.

6    Furthermore, *Heller* expressly stated that the Second Amendment right is "not a

7    right to keep and carry any weapon whatsoever in any manner whatsoever and for

8    whatever purpose." *Id*. at 628.

9        Nichols's pro-open-carry interpretation of *Heller* depends on a misreading of

10   that case's discussion of two 19th-century state-court opinions, *Nunn v. State*, 1 Ga.

11   243 (1846), and *State v. Chandler*, 5 La. Ann. 489 (1850), which struck down open-

12   carry bans (in part because it was considered "manly" for people to carry firearms

13   openly as opposed to concealed (*Chandler*, 5 La. Ann. at 490)). *Heller* did *not*

14   adopt the holdings of those two long-ago cases. *Heller* merely cited the cases in

15   demonstrating that "[m]any early-19th century state cases indicated that the Second

16   Amendment right to bear arms was an individual right unconnected to militia

17   service, though subject to certain restrictions." *Heller*, 554 U.S. at 611; cf.

18   *Kachalsky v. County of Westchester*, 701 F.3d 81, 90 n.12 (2d Cir. 2012) ("*Nunn* is

19   cited in Justice Scalia's majority opinion in *Heller* as an example of state court

20   responses to handgun regulatory efforts within the states").

21       Nichols also seems to promote a false narrative that in 19th century America it

22   was lawful for most people to carry firearms openly. A cornucopia of scholarship

23   shows that the narrative is, indeed, most likely false. See, e.g., Saul Cornell, *The*

24   *Right to Carry Firearms Outside of the Home: Separating Historical Myths from*

25   *Historical Realities*, 39 Fordham Urb. L.J. 1695, 1696, 1707, 1714-15, 1726 (Oct.

26   2012) ("[T]he Founding generation had little trouble accepting that one might have

27   different legal standards for the use of arms within the home and in public"; "In

28   reality, Antebellum case law on the right to bear arms was deeply divided on the

9

scope of the right"; "The claim that there was a broad consensus in Antebellum law on a right to carry openly mistakenly equates a distinctive Southern tradition of permissive carry with the existence of a larger constitutional consensus on this question. *The dominant legal tradition in America was not open carry, but quite the opposite. A broad range of restrictions on the use of arms in public, including bans on the right to carry in public, emerged in the decades after the adoption of the Second Amendment*" (emphasis added)); Joseph Blocher, *Firearm Localism*, 123 Yale L.J. 82, 84, 103 (Oct. 2013) ("Nineteenth-century visitors to supposed gun havens like Dodge City, Kansas, and Tombstone, Arizona, could not lawfully bring their firearms past the city limits"; quoting other scholars, who reported that "during the colonial period, the urban areas were relatively free of the consistent use of firearms")). In 1871, in *English v. State*, 35 Tex. 473, the Supreme Court of Texas upheld under the U.S. and Texas constitutions a law prohibiting the open carrying of deadly weapons, including pistols.

In *McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020, 3044, 177 L.Ed.2d 894 (2010), the Supreme Court reiterated that "our central holding in *Heller* [is] that the Second Amendment protects the personal right to keep and bear arms for lawful purposes, *most notably for self-defense within the home*" (emphasis added). "State and local experimentation with reasonable firearms regulations will continue under the Second Amendment." *Id.*, 130 S. Ct. at 3046 (quotation marks omitted).

There is nothing in *Heller* or *McDonald* (or any other Supreme Court case) to indicate that the Supreme Court will expand those cases' holdings and recognize an open-carry right, as Nichols advocates. The Supreme Court has denied two petitions for writs of certiorari in cases that could have afforded the high court an opportunity to decide the open-carry question. *Kachalsky v. Cacace*, 133 S.Ct. 1806 (2013) (denying petition for writ of certiorari); *Woollard v. Gallagher*, 2013 WL 3479421 (U.S. 2013).

10

## B. The U.S. Courts Of Appeals Have Not Adopted Nichols's Interpretation Of The Second Amendment

Like the Supreme Court, the Ninth Circuit Court of Appeals has never held that the Second Amendment confers an individual right to carry firearms openly in public places.  On the contrary, the Ninth Circuit has interpreted Supreme Court jurisprudence as conferring "the right to register and keep a loaded firearm in [the] home for self-defense, provided [the person] was 'not disqualified from the exercise of Second Amendment rights.'"  *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (citing *Heller*, 554 U.S. at 635); *accord United States v. Schrag*, ___ Fed. Appx. ___, 2013 WL 5614911 (9th Cir. 2013) ("In *Heller*, the Court held that a citizen has an individual right to possess firearms in his or her home…")

Furthermore, the overwhelming majority of the other federal appellate courts that have considered the open-carry question (or a related question) have interpreted *Heller* and *McDonald* as recognizing only a narrow right to keep an operable handgun in the home for self-defense.  For example, in *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013), the Fourth Circuit criticized the Maryland district court for making a "trailblazing pronouncement that the Second Amendment right to keep and bear arms for the purpose of self-defense extends outside the home. . ." (712 F.3d at 868) and for "br[eaking] ground that our superiors have not tread, proclaiming that the Second Amendment right. . .of individuals to possess and carry firearms in case of confrontation [] is a right that extends beyond the home." (*Id.* at 872.)  "*Heller*. . .was principally concerned with the 'core protection' of the Second Amendment: 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'"  (*Id.* at 874.)  *Woollard* also clarifies that another case, *United States v. Black*, 707 F.3d 531 (4th Cir. 2013), does *not* hold that the Second Amendment has force outside the home.  *Woollard*, 712 F.3d at 875 n.5.

The Second Circuit has also rejected the broad right claimed by Nichols.  See *Kachalsky*, 701 F.3d at 89, 94 ("What we know from [*Heller* and *McDonald*] is that

1  Second Amendment guarantees are at their zenith within the home.  What we do

2  not know is the scope of that right beyond the home. . .  The state's ability to

3  regulate firearms and, for that matter, conduct, is qualitatively different in public

4  than in the home.  *Heller* reinforces this view").  Other circuit-court decisions

5  similarly cast doubt on viewing *Heller* and *McDonald* as creating an individual

6  right to carry weapons openly outside the home.  See *Drake v. Filko*, 724 F.3d 426,

7  430 (3d Cir. 2013) ("It remains unsettled whether the individual right to bear arms

8  for the purpose of self-defense extends beyond the home"; declining to define scope

9  of right); *Hightower v. City of Boston*, 693 F.3d 61, 73 (1st Cir. 2012) ("Under our

10  analysis of *Heller*…the government may regulate the carrying of concealed

11  weapons outside of the home"); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244,

12  1259, 1264 (11th Cir. 2012) (*Heller* "went to great lengths to emphasize the special

13  place that the home—an individual's private property—occupies in our society…

14  [T]he pre-existing right codified in the Second Amendment does not include

15  protection for a right to carry a firearm in a place of worship against the owner's

16  wishes"); *United States v. Mahin*, 668 F.3d 119, 123-24 (4th Cir. 2012) (declining

17  criminal defendant's invitation to "recognize that Second Amendment protections

18  apply outside the home. . ."); *United States v. Booker*, 644 F.3d 12, 25 n.17 (1st Cir.

19  2011) ("While we do not attempt to discern the 'core' Second Amendment right

20  vindicated in *Heller*, we note that *Heller* stated that the Second Amendment

21  'elevates above all other interests the right of law-abiding, responsible citizens to

22  use arms in defense of hearth and home'"); *United States v. Masciandaro*, 638 F.3d

23  458, 467 (4th Cir. 2011) ("[A] considerable degree of uncertainty remains as to the

24  scope of [the *Heller*] right beyond the home. . ."); *cf. Williams v. State*, 10 A.3d

25  1167, 1177 (Md. 2011) ("If the Supreme Court, in this dicta, meant its holding to

26  extend beyond home possession, it will need to say so more plainly").

27

28

1    As these decisions show, the clear weight of legal authority is to recognize that

2    *Heller* and *McDonald* should not be extrapolated to confer a broad right openly to

3    carry a weapon, loaded or unloaded, in public.

4    Nichols downplays all this legal authority in favor of emphasizing a split (2-1)

5    Seventh Circuit opinion, *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), which

6    dealt with a uniquely strict Illinois law that broadly forbade publicly carrying any

7    loaded or unloaded firearms—"[a] blanket prohibition on carrying a gun in public."

8    *Id.* at 934, 940. "Remarkably, Illinois is the *only* state that maintains a flat ban on

9    carrying ready-to-use guns outside the home. . ." *Id.* at 940. (Emphasis in original.)

10   There were no concealed-carry licenses available in Illinois. *Ibid.* The decision in

11   *Moore* invalidated Illinois's law, stating somewhat ambiguously, "A right to bear

12   arms thus implies a right to carry a loaded gun outside the home." *Id.* at 936.[3]

13   Significantly, *Moore* invited the Illinois Legislature "to craft a new gun law that

14   will impose reasonable limitations consistent with the public safety. . ." *Id.* at 942.

15   And the Illinois Legislature has responded to *Moore* by enacting a *concealed*-carry

16   scheme, Illinois Public Act 098-0063—not by enacting a pro-open-carry law.

17   Because California has a concealed-carry law already, it seems quite likely that the

18   *Moore* Court would uphold California's open-carry laws. Consequently, even

19   *Moore*, the outlier decision, does not support Nichols's position that open carry is

20   the lone, unassailable manifestation of Second Amendment rights outside the home.

21
22   ## C.    This Court In This Case Already Has Rejected Nichols's Second-Amendment Theory

23   Finally, this Court's July 3, 2013, ruling rejected Nichols's theory that there is

24   a broad open-carry right under the Second Amendment:

25   [I]n *Heller* the Supreme Court recognized the Second Amendment "right

26

---

27   [3] *Drake,* 724 F.3d at 430, criticizes *Moore* on this point: "[T]he Seventh

28   Circuit in *Moore* may have read *Heller* too broadly."

1  of law-abiding, responsible citizens to use arms in defense of hearth and
2  home." *Heller*, 554 U.S. at 635…  This right, however, is "not
3  unlimited," and it does not "protect the right of citizens to carry arms for
4  *any sort* of confrontation." *Heller*, 554 U.S. at 595.  Nor is this
5  individual right "a right to keep and carry any weapon whatsoever in any
6  manner whatsoever and for whatever purpose." *Id.* at 626.

7  Lower courts have been cautious, however, in expanding the scope of
8  this right beyond the contours delineated in *Heller*…Courts that have
9  considered the meaning of *Heller* and *McDonald* in the context of open
10 carry rights have found that these cases did not hold that the Second
11 Amendment gives rise to an unfettered right to carry firearms in public.

12 *Nichols v. Brown*, CV 11-09916 SJO (SS), 2013 WL 3368922 at *3-*4 (C.D. Cal.
13 Jul. 3, 2013) (footnotes omitted).  Still today, it remains "far from clear that
14 Plaintiff enjoys such a right." *Id.* at *4.

15     Furthermore, as the Court held, "[e]ven if [Nichols] does [have such a right],
16 though, the Court finds that Plaintiff is unlikely to demonstrate that the Challenged
17 Statutes fail to satisfy the applicable standard of review and are thus
18 unconstitutional." *Nichols*, 2013 WL 3368922 at *4.  The Court assumed without
19 deciding that intermediate scrutiny applied, and found that:

20     Harris has persuasively argued that California has a substantial interest in
21     increasing public safety by restricting the open carry of firearms, both
22     loaded and unloaded.  As found by California courts, Section 25850 is
23     designed "to reduce the incidence of unlawful *public* shootings." *People*
24     *v. Flores*, 169 Cal. App. 4th 568, 576 (2008); *see also People v. Foley*,
25     149 Cal. App. 3d Supp. 33, 39 (1983) ("The primary purpose of [Section
26     25850] is to control the threat to public safety in the indiscriminate
27     possession and carrying of concealed and loaded weapons.")  Likewise,
28     Section 26350 and Section 26400 were enacted because:

14

1       The absence of a prohibition on "open carry" has created an

2       increase in problematic instances of guns carried in public,

3       alarming unsuspecting individuals and causing issues for law

4       enforcement.  Open carry creates a potentially dangerous

5       situation.  In most cases when a person is openly carrying a

6       firearm, law enforcement is called to the scene with few details

7       other than one or more people are present at a location and are

8       armed.  In these tense situations, the slightest wrong move by

9       the gun carrier could be construed as threatening by the

10      responding officer, who may feel compelled to respond in a

11      manner that could be lethal.  In this situation, the practice of

12      "open carry" creates an unsafe environment for all parties

13      involved:  the officer, the gun-carrying individual, and for any

14      other individuals nearby as well.  Additionally, the increase in

15      "open carry" calls placed to law enforcement has taxed

16      departments dealing with under-staffing and cutbacks due to

17      the current fiscal climate in California, preventing them from

18      protecting the public in other ways.  [Citation.]

19  *Nichols*, 2013 WL 3368922 at *5-*6.  Accordingly, the Court found the first part of

20  the intermediate scrutiny test to be satisfied.  *Id.* at *6.

21      The Court also finds that the Challenged Statutes are designed such that

22  there is a reasonable fit between their provisions and the objective of

23  increasing public safety.  Notably…the Challenged Statutes all contain an

24  exception for self-defense.  *See* Cal. Penal Code §§ 26045(a), 26362,

25  26405.  The Challenged Statutes also provide for exceptions for, *inter*

26  *alia*, defense of property, security guards, police officers, members of the

27  military, hunters, target shooters, persons who possess a firearm on their

28  own property, and persons who possess a firearm at their lawful

15

residence, "including any temporary residence or campsite." Cal. Penal Code §§ 25900-26060, 26361-26391, 26405.  In light of this thoughtful and comprehensive statutory regime, the Court concludes that the Challenged Statutes likely satisfy intermediate scrutiny . . .

*Nichols*, 2013 WL 3368922 at *6.  Accordingly, the Court found the second and final part of the intermediate scrutiny test to be satisfied.  *Id.*[4]

For the very same reasons, i.e., the lack of an open-carry right, and the challenged statutes' satisfaction of even heightened Second Amendment scrutiny, the Court should deny Nichols's motion for partial summary judgment.

## III. THERE IS NO SIGNIFICANCE TO NICHOLS'S FALSE ASSERTION THAT THE CHALLENGED LAWS LACK SELF-DEFENSE EXCEPTIONS

For a third argument, articulated or implied at pages 8 and 11 of the opening brief in support of the motion for partial summary judgment, Nichols falsely asserts that California's open-carry laws do not contain exceptions for self-defense.[5]   Nichols's assertions are, indeed, plainly false.  Sections 25900 to 26060

---

[4] Within the last two weeks, the Ninth Circuit has adopted a two-part test akin to the "substantial burden" test for adjudicating Second Amendment claims. *United States v. Chovan*,____ F.3d ___, 2013 WL 6050914 (9th Cir. 2013), holds as follows:  "The two-step Second Amendment inquiry we adopt (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Id.* at *8.  The appropriate "level of scrutiny in the Second Amendment context should depend on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.  …More specifically, the level of scrutiny should depend on (1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right." *Id.* at *9.  Under *Chovan*, this Court should find that California's open-carry laws do not come close to the Second Amendment's core right, which, as shown above, courts have *not* construed to include open carry.  It follows from the California open-carry laws' lack of a substantial burden on the Second Amendment right that the Court should apply a relatively lenient standard of constitutional scrutiny to the laws in question, and uphold them.  Because the Court already has found that California's open-carry laws survive intermediate scrutiny, even if the Court decides that *Chovan* mandates intermediate scrutiny here, the California open-carry laws survive the challenge, and the Court should deny Nichols's motion for partial summary judgment.

[5] It is unclear why Nichols even makes this assertion.  He has never been arrested for, charged with, or convicted of violating any California open-carry law for an incident involving alleged self-defense.

1  contain the exemptions, including the self-defense exemption at Section 26045, to

2  Section 25850.  Sections 26361 to 26391 contain the exemptions, including the

3  self-defense exemption at Section 26350, to Section 26350.  Section 26450 contains

4  the exemptions, including the self-defense exemption, to Section 26400.

**IV.  NICHOLS HAS NOT ESTABLISHED THAT SECTION 25850, SUBDIVISION (B), VIOLATES THE FOURTH AMENDMENT**

7  For a fourth argument, at page 10 of the opening brief in support of the

8  motion for partial summary judgment, Nichols repeats his prior, meritless Fourth

9  Amendment attack against Section 25850's subdivision (b), which authorizes peace

10  officers to inspect openly carried firearms to see if they are loaded, and to arrest any

11  person openly carrying a firearm who resists a "chamber check."  Nichols's no-

12  contest plea to violating City of Redondo Beach municipals laws banning open

13  carry (pp. 17-18 of Docket Doc. 119), stemming from the only open-carry incident

14  involving Nichols ever detailed in this lawsuit (2AC, ¶ 45), and the dismissal of all

15  Redondo Beach defendants in the present case (Docket Doc. 125), forecloses

16  Nichols's Fourth Amendment complaints about the Redondo Beach police officer

17  who, on May 21, 2012, examined Nichols's openly exposed long gun to see if it

18  was loaded.  *Heck v. Humphreys*, 512 U.S. 477, 486-87 (1994).

19  Additionally, because Nichols has not successfully challenged the

20  constitutionality of any of the laws in question here, it remains the case that a

21  person who openly carries a firearm in a public place in California, in a county,

22  such as Los Angeles County, of more than 200,000 people, and not in the category

23  of people exempt from the open-carry laws, is committing a crime.  Hence a peace

24  officer seeing a person openly carry the firearm in a public place necessarily has

25  probable cause to *search* the firearm to see if it is loaded.  *Gillan v. City of San*

26  *Marino*, 147 Cal. App. 4th 1033, 1044 (2007).  By Nichols's own account (given at

27  2AC, ¶45), at the May 21, 2012 incident, Nichols's firearm was searched and he

28  was detained, as opposed to arrested.  *See People v. Celis*, 33 Cal. App. 4th 667,

674 (2004) (defining "detention" and "arrest"); *People v. Jones*, 228 Cal. App. 3d 519, 523 (1991) (same).   There is no basis to question the Redondo Beach police officer's actions here.

Relatedly, although "[u]nder the Fourth Amendment, a warrantless *arrest* requires probable cause," *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (emphasis added), there will always be probable cause for a warrantless arrest of a person who openly carries a firearm in a public place in California, in a county, such as Los Angeles County, of more than 200,000 people, and the person's refusal to consent to the peace officer's chamber check of the firearm will always further justify that person's arrest. *Gillan*, 147 Cal. App. 4th at 1044-45. Accordingly, even if the Redondo Beach police officer had arrested Nichols on May 21, 2012, the arrest would be justified and not a constitutional violation.

Furthermore, regarding Nichols's facial challenge to Section 25850, subdivision (b), under the Fourth Amendment, the Court's July 3, 2013, ruling is instructive:

> Plaintiff has not demonstrated that Section 25850(b) violates the Fourth Amendment in all possible circumstances.  To the contrary, the Court can envision any number of scenarios in which a police officer would have probable cause to arrest someone after they have refused to allow the officer to determine if their firearm was loaded.

*Nichols*, 2013 WL 3368922 at *7.  Nichols's Fourth Amendment argument fails as a facial challenge to the public-safety law, as well.

In sum, Nichols has no viable facial or as-applied theory of a Fourth Amendment violation in this case.

## V.   THERE IS NO DISCERNIBLE POINT IN NICHOLS'S VOLUMINOUS QUOTATIONS FROM JUDICIAL OPINIONS AND OTHER SOURCES

For no apparent reason, Nichols spends a large chunk of his brief quoting passages from judicial opinions or other sources, without analyzing or otherwise

1    discussing of providing a context for the quotation.  For example, at pages 10-11,

2    Nichols quotes case law about whether the Second Amendment is applicable to the

3    states of the United States through the Fourteenth Amendment.  This practice

4    reaches its nadir at pages 13-16, which Nichols consumes with a quotation of the

5    entirety of *Heller*'s *syllabus*, which "contains no part of the opinion of the Court."

6    554 U.S. at 570.  Because Nichols does not explain why he has typed up those

7    quotations, the Attorney General does not discern any legal arguments to oppose.

8         At the brief's page 16, where Nichols lists cites regarding whether California

9    criminal law imposes a "duty to retreat" on a person being aggressively physically

10   attacked by another, Nichols provides a discussion of the law.  But it remains

11   unclear what Nichols's point is.  Although Nichols tries to argue that California has

12   an across-the-board "stand your ground" rule, the cited authority *People  v.*

13   *Newcomer*, 118 Cal. 263 (1897), is inapposite, because that case concerned an *in-*

14   *home* incident:

15        [T]he appellant in the case at bar was in his own house at the time of the

16        homicide…  [A] person attacked in his own house need not flee…  When

17        a man "without fault" himself is suddenly attacked in his own house in a

18        murderous or dangerous manner, he is not called upon to flee from his

19        home, or to consider the proposition of so fleeing.

20   *Id.* at 273-74.  Nichols's citation to the case is confusing.

21                              **CONCLUSION**

22        Nichols is asking this Court to change radically everyday life in California,

23   especially in urban and suburban areas, yet in this lawsuit Nichols has not stated a

24   //

25   //

26   //

27   //

28

1  viable cause of action against the Attorney General, the lone remaining defendant.

2  The Court should deny Nichols's offensive motion for partial summary judgment.

3  Dated:  December 3, 2013                          Respectfully submitted,

4                                                    KAMALA D. HARRIS
                                                     Attorney General of California
5                                                    MARK R. BECKINGTON
                                                     Supervising Deputy Attorney General
6

7

8                                                    /s/
                                                     _____
                                                     JONATHAN M. EISENBERG
9                                                    Deputy Attorney General
                                                     *Attorneys for Defendant California*
10                                                   *Attorney General Kamala D. Harris*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28