KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
  300 South Spring St., Ste. 1702
  Los Angeles, CA  90013
  Telephone:  (213) 897-6505
  Fax:  (213) 897-1071
  E-mail:  jonathan.eisenberg@doj.ca.gov
*Attorneys for Defendant California Attorney
General Kamala D. Harris*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **CHARLES NICHOLS,**<br><br>Plaintiff,<br><br>v.<br><br>**EDMUND G. BROWN JR., in his official capacity as Governor of California, KAMALA D. HARRIS, in her official capacity as Attorney General of California, CITY OF REDONDO BEACH, CITY OF REDONDO BEACH POLICE DEPARTMENT, CITY OF REDONDO BEACH POLICE CHIEF JOSEPH LEONARDI and DOES 1 to 10,**<br><br>Defendants. | 2:11-cv-09916-SJO-(SS)<br><br>**REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C)**<br><br>Date:           N/A<br>Time:          N/A<br>Crtrm.:        23 – 3rd Flr.<br>Judge:         Hon. Suzanne H. Segal<br>Trial Date:   Not Yet Set<br>Action Filed: Nov. 30, 2011 |

Defendant Kamala D. Harris, Attorney General of California (the "Attorney General"), submits the following reply in support of her motion for judgment on the pleadings in her favor and against Plaintiff Charles Nichols ("Nichols").  Fed. R. Civ. P. 12(c).

1   Nichols makes approximately six arguments in opposition to the Attorney

2   General's present motion.  All six arguments are fatally deficient.  In the following

3   reply, the Attorney General rebuts each of Nichols's arguments in the order that he

4   made them.

5   **REPLY ARGUMENT**

6   **I.     NICHOL *IS* MOUNTING A FACIAL CHALLENGE TO CALIFORNIA'S OPEN-**
    **CARRY LAWS**
7

8   Nichols's first, and apparently main, argument against the present motion is

9   that the Attorney General has misstated the law of facial constitutional challenges

10  and thus misapplied the law for Nichols's attack on California' s three open-carry

11  laws;[1] relatedly, Nichols contends, the Attorney General has ignored and therefore

12  not defeated Nichols's supposed as-applied challenge to the laws.  (See Pl.'s Opp'n

13  to Def.'s Mtn. for J. on the Pleadings ("Nichols's Brief") at 1:9-1:11, 10:14-11:16.

14  12:18-13:10, 16:8-16:22.)

15  The Attorney General has not misstated or misapplied the law of facial

16  challenges.  Nichols is wrong in pleading that the "no set of circumstances" test for

17  facial challenges articulated in *United States v. Salerno*, 481 U.S. 739, 745 (1987)

18  is bad law.  In the opening brief for the present motion, the Attorney General

19  provided the citation to *Alphonsus v. Holder*, 705 F.3d 1031, 1042 & n. 10 (9th Cir.

20  2013), which restates and readopts the *Salerno* test for the U.S. Court of Appeals,

21  Ninth Circuit.

22  Moreover, because the present case does not involve Nichols being prosecuted

23  for violating any of the state laws in question, or engaging in any self-defense

24  actions, etc., and even as pleaded is more in the nature of an abstract political

25  protest against open-carry regulations, there is no fact pattern against which the

26

27      [1] California Penal Code sections 25850, 26350, and 26400.  Hereinafter,
    "Section" means California Penal Code section.
28

2

1    Court could evaluate the laws as applied.  *See Nichols v. Brown*, CV 11-09916 SJO

2    (SS), 2013 WL 3368922 at *3 (C.D. Cal. Jul. 3, 2013).

3        Nichols's case amounts to a facial challenge to the laws in question.  The

4    challenge is disfavored, and Nichols has not overcome this disfavor.

5    **II.    THE RECENT DECISION IN *UNITED STATES V. CHOVAN* DOES NOT
6          PREVENT NICHOLS'S CASE FROM BEING DISMISSED**

7        Second, Nichols contends that the recent Ninth Circuit opinion in *United*

8    *States v. Chovan*, ___ F.3d ___, 2013 WL 6050914 (Nov. 18, 2013), compels the

9    Court to disavow its ruling on Nichols's earlier motion for a preliminary injunction,

10   which ruling points the way toward dismissing Nichols's case on the pleadings.

11   (Nichols Brief at 1:14-2:26, 5:20-8:5.)[2]

12       *Chovan* holds that:  "[t]he two-step Second Amendment inquiry we adopt (1)

13   asks whether the challenged law burdens conduct protected by the Second

14   Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny."

15   2013 WL 6050914 at *8.  The appropriate "level of scrutiny in the Second

16   Amendment context should depend on the nature of the conduct being regulated

17   and the degree to which the challenged law burdens the right. . . .  More

18   specifically, the level of scrutiny should depend on (1) how close the law comes to

19   the core of the Second Amendment right, and (2) the severity of the law's burden

20   on the right."  *Id.* at *9.

21       Under *Chovan*, this Court should find that California's open-carry laws do not

22   come close to the Second Amendment's core right, which, as this Court already has

23   held, courts have *not* construed to include open carry.  This Court so held  in its

24   _____

25       [2] As part of this argument, Nichols makes the false assertion that California's
     open-carry laws do not contain exceptions for police officers or for self-defense.
26   (Nichols Brief at 2:6-2:12.)  For Section 25850, Section 25900 is the peace-officer
     exemption; Section 26045 is the self-defense exception.  For Section 26345,
27   Section 26361 is the peace-officer exemption; Section 26362 is the self-defense
     exception.  For Section 26400, its subsection (e) is the peace-officer exemption and
28   its subsection (d) is the self-defense exemption.

1    July 3, 2013, ruling on the preliminary-injunction motion.  *Nichols*, 2013 WL

2    3368922 at *3-*6.  And the Attorney General has extensively argued the point in

3    her opening brief herein and in other filings in this case.

4        To the extent that *Chovan* now calls for a historical-inquiry approach to this

5    question, and the Court undertakes such an analysis, the Court should find that U.S.

6    history only affirms that open carry is not a core Second Amendment right.  See,

7    e.g., Saul Cornell, *The Right to Carry Firearms Outside of the Home:  Separating*

8    *Historical Myths from Historical Realities*, 39 Fordham Urb. L.J. 1695, 1696, 1707,

9    1714-15, 1726 (Oct. 2012) ("Apart from service in the militia, there is little

10   evidence of a broad constitutional consensus on the right to carry arms in public";

11   "[T]he Founding generation had little trouble accepting that one might have

12   different legal standards for the use of arms within the home and in public"; "In

13   reality, Antebellum case law on the right to bear arms was deeply divided on the

14   scope of the right"; "The claim that there was a broad consensus in Antebellum law

15   on a right to carry openly mistakenly equates a distinctive Southern tradition of

16   permissive carry with the existence of a larger constitutional consensus on this

17   question.  *The dominant legal tradition in America was not open carry, but quite*

18   *the opposite.  A broad range of restrictions on the use of arms in public, including*

19   *bans on the right to carry in public, emerged in the decades after the adoption of*

20   *the Second Amendment*" (emphasis added)); Joseph Blocher, *Firearm Localism*,

21   123 Yale L.J. 82, 84, 103 (Oct. 2013) ("Nineteenth-century visitors to supposed

22   gun havens like Dodge City, Kansas, and Tombstone, Arizona, could not lawfully

23   bring their firearms past the city limits"; quoting other scholars, who reported that

24   "during the colonial period, the urban areas were relatively free of the consistent

25   use of firearms")); Patrick J. Charles, *The Faces of the Second Amendment Outside*

26   *the Home:  History Versus Ahistorical Standards of Review*, 60 Clev. St. L. Rev. 1,

27   8, 31-41 (2012) ("*[I]n terms of our Anglo-American legal tradition, it may be*

28   *asserted that the Second Amendment was not viewed as extending outside the*

*home…*";  also documenting numerous laws in 17th-, 18th-, and 19th-century America prohibiting people from carrying arms in public (emphasis added)).  In 1871, in *English v. State*, 35 Tex. 473, the Supreme Court of Texas upheld under the U.S. and Texas constitutions a law prohibiting the open carrying of deadly weapons, including pistols.

It follows from the California open-carry laws' lack of a substantial burden on the Second Amendment right, logically and historically, that the Court should apply a relatively lenient standard of constitutional scrutiny to the laws in question. Nonetheless, because the Court already has found that California's open-carry laws survive intermediate scrutiny (*Nichols*, 2013 WL 3368922 at *3-*6), even if the Court decides that *Chovan* mandates intermediate scrutiny here, the California open-carry laws survive the challenge, and the Court should grant the present motion for judgment on the pleadings.

## III.  STRICT SCRUTINY DOES NOT APPLY TO THE LAWS IN QUESTION

Third, citing *People v. Mitchell*, 209 Cal. App. 4th 1364, 1374 (2012), Nichols argues that this Court should apply strict scrutiny to the California open-carry laws because they effectuate a complete ban on open carrying of firearms.  (Nichols Brief at 9:12-9:21.)

*Mitchell* does not support Nichols's position on the appropriate standard of analysis.  *Mitchell* rejected the application of strict scrutiny to California's law regulating the carrying of dirks and daggers.  209 Cal. App. 4th at 1374.  Instead, *Mitchell* applied intermediate scrutiny, in part because the law did not completely ban the carrying of dirks and daggers.  *Ibid.*  As the Attorney General already has explained, California's open-carry laws likewise have numerous exceptions and are linked to a licensing scheme, Section 26150 et seq., by which people may apply for and obtain concealed-carry or (in some counties) open-carry permits.  Therefore, the laws are not complete bans and are not subject to strict scrutiny on the guidance of *Mitchell*.

## IV. THE FOURTH AMENDMENT IS NOT IMPLICATED HERE

Fourth, citing *United States v. Fuentes*, 105 F.3d 487 (9th Cir. 1997), Nichols repeats his contention that any application of Section 25850, subdivision (b)—which, in effect, authorizes a peace officer to inspect an openly carried firearm to see if it is loaded, regardless of the consent of the possessor of the firearm—violates the Fourth Amendment to the United States Constitution. (Nichols Brief at 14:14-14:23.)

In the opening brief for the present motion, the Attorney General explained at length why there is no Fourth Amendment problem with the statute's authorization of "chamber checks" and arrests of people who refuse to submit to chamber checks. *People v. DeLong*, 11 Cal. App. 3d 786 (1970), gives an additional defense of the law:

> In the first place, the examination of the weapon may hardly be deemed to be a search at all. The chamber of a gun is not the proper or usual receptacle for anything but a bullet or a shell. The loading of a gun simply affects the condition of the weapon by making it immediately useful for firing. The ammunition becomes, as it were, part of the gun. There is nothing private or special or secret about a bullet. The use of the word "examine" in the statutes instead of the word "search" is not at all a devious one. In examining the weapon, the officers are not attempting to find some kind of contraband which is unrelated to the gun itself.
>
> But if the examination may be called a search, it is not an unreasonable one; and only unreasonable searches are forbidden by the Fourth Amendment. (*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.) It is, as we have said, limited to a single purpose. It does not have about it any except the slightest element of embarrassment or annoyance, elements overbalanced by far by the purpose of preventing violence or

threats of violence.  The minimal instrusion does not begin to approach

the indignity of the frisk, as graphically described in *Terry v. Ohio*,

*supra*, at p. 17, fn. 13, 88 S.Ct. 1868.

*Id.* at 791-92.

In sum, a "chamber check" is not a search that implicates the Fourth Amendment.

Meanwhile, *Fuentes*, the case that Nichols cites, is off-point.  That case

involved a peace officer's search of the inside of a person's pants pocket, which

inside was not in plain sight.  105 F.3d at 489.  Moreover, *Fuentes* upheld the

constitutionality of the search.  *Id.* at 490.  An openly carried firearm is by

definition in plain sight.  So *Fuentes* has no bearing on Section 25850's chamber-

check rule.

## V.    NICHOLS DOES NOT MAKE AN ARGUMENT REGARDING VOID-FOR-VAGUENESS

Fifth, although Nichols quotes from judicial opinions about the

comprehensibility, overbreadth, and/or vagueness of statutes (Nichols Brief at

14:25-16:4), he does not make any argument about any of these topics.  The

Attorney General cannot respond substantively to citations to case law without any

context or related arguments.

## VI.    NICHOLS JUST REPEATS PAST, UNPERSUASIVE ARGUMENTS THAT THE STATUTES INFRINGE THE SECOND AMENDMENT

Sixth, Nichols repeats his prior arguments that the core Second Amendment

right is open carry and so California's open-carry laws necessarily infringe the

Second Amendment.  (Nichols Brief at 23:16-25:16)  The Attorney General already

has briefed this issue multiple times in this case and for the sake of brevity will not

repeat those arguments at length here.  In brief, neither the United States Supreme

Court nor the overwhelming majority of lower courts has construed the Second

Amendment as an open-carry right, as Nichols advocates.  *District of Columbia v.*

*Heller* 554 U.S. 570, 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) recognizes an

1    individual personal right "for law-abiding responsible citizens to use arms in

2    defense of hearth and home." *Accord United States v. Vongxay*, 594 F.3d 1111,

3    1115 (9th Cir. 2010) (citing *Heller*, 554 U.S. at 635); and *see, e.g., Woollard v.*

4    *Gallagher*, 712 F.3d 865, 868, 872, 874, 875 n.5 (4th Cir. 2013).   Clear precedents

5    compel the Court to reject Nichols's interpretation of the Second Amendment.

6    **CONCLUSION**

7        Nichols does not have legal support for his allegations of  the

8    unconstitutionality to California's open-carry laws, which are important for public

9    safety.  Accordingly, the Court should enter judgment on the pleadings in favor of

10    the Attorney General and against Nichols, preserving the laws from Nichols's

11    constitutional challenges.

12    Dated:  December 3, 2013            Respectfully submitted,

13                                     KAMALA D. HARRIS
                                   Attorney General of California

14                                     MARK R. BECKINGTON

15                                     Supervising Deputy Attorney General

16

17                                     /s/_____
                                    JONATHAN M. EISENBERG

18                                     Deputy Attorney General
                                    *Attorneys for Defendant California*

19                                     *Attorney General Kamala D. Harris*

20

21

22

23

24

25

26

27

28

8