

1  Charles Nichols
   PO Box 1302
2  Redondo Beach, CA 90278
   Voice: (424) 634-7381
3  E-Mail: CharlesNichols@Pykrete.info
   In Pro Per
4

5

6

7

8                    United States District Court

9                    Central District of California

10

11  Charles Nichols,                  )   Case No.: CV-11-9916 SJO (SS)
                                       )
12             PLAINTIFF,              )   **NOTICE OF SUPPLEMENTAL**
                                       )   **AUTHORITY**
13     vs.                             )
                                       )   [Silvester v. Harris]
14  KAMALA D. HARRIS, Attorney         )
                                       )
15  General, in her official capacity as )
                                       )
16  Attorney General of California     )
                                       )
17                                     )   Date:    N/A
                                       )   Time:    N/A
18          Defendant.                 )   Crtrm:   23 – 3rd Floor
                                       )   Magistrate Judge:  Suzanne H. Segal
19                                     )   District Judge: S. James Otero
                                       )   Trial Date: None
20                                     )   Action Filed: November 30, 2011

21

22

23        Pro Se Plaintiff Charles Nichols, In Pro Per, respectfully submits this Notice

24  of Supplemental Authority in support of Plaintiff's Motion for Partial Summary

25  Judgment and in Opposition to Defendant Harris' Motion for Judgment on the

26  Pleadings.

27

28

## NOTICE OF SUPPLEMENTAL AUTHORITY

On December 9, 2013 Senior United States District Judge Anthony W. Ishii in The United States District Court For The Eastern District Of California Fresno Division issued an Order denying Defendant Harris' Motion For Summary Judgment (Case No. 1:11-cv-02137-AWI-SKO – "Doc. No. 31 is the MSJ" and Dkt #44 is the Order) – A copy of the order is attached as "Exhibit A") in the case of *Sylvester, et al. v. Harris, et al* hereinafter referred to as *Silvester* (Dkt is stylized as Sylvester, Order says "Silvester"). In doing so, the Court rejected the same legal arguments that Defendant Harris has made up to, and including, her Motion for Judgment on the Pleadings filed against Plaintiff Nichols on November 12, 2013. The Order was also published after Plaintiff Nichols filed his Motion for Partial Summary Judgment on November 8, 2013.

The Court relied in part on the recent 9th Circuit Court of Appeals decision *US v. Chovan* No. 11-50107 Filed November 18, 2013 hereinafter referred to as *Chovan*.

Plaintiff submits that *Chovan* is dispositive in favor of Plaintiff Nichols' Motion for Partial Summary Judgment and dispositive against Defendant Harris' Motion for Judgment on the Pleadings as well as any future motion for summary judgment this court might permit Defendant Harris to file.

*Chovan* adopted the "historical inquiry" test advocated by Plaintiff Nichols and *Silvester* applied that historical inquiry test to California Penal Code sections requiring a ten day waiting period for the purchase of a firearm (WPL) which apply even to the Plaintiffs who already possess at least one firearm.

### Ratification of the Second Amendment is the Relevant Date

"The first step is a historical inquiry that seeks to determine whether the conduct at issue was understood to be within the scope of the right to keep and bear arms at the time of ratification. *Chester*, 628 F.3d at 680; see *Chovan*, 2013 U.S. App. LEXIS at *23-*25; *N.R.A.*, 700 F.3d at 194; *Ezell*

1    *v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011)." *Silvester* at pg 6,
2    lines 22-25.

3        The Second Amendment was ratified in 1791. Defendant Harris will never
4    be able to prove that the right to bear arms openly was not "understood to be
5    within the scope of the right to keep and bear arms at the time of ratification." For
6    that matter, even if Plaintiff Nichols had brought a concealed carry case, which he
7    certainly did not, Defendant Harris will never be able to prove that the right to bear
8    arms openly or concealed was not "understood to be within the scope of the right
9    to keep and bear arms at the time of ratification." The prohibitions on the carrying
10   of weapons concealed (with few exceptions such as travelers on a journey) were a
11   product of the 19th Century as were the few State Court decisions which incorrectly
12   held that the Second Amendment was not an individual right but applied only to
13   the militia and was only a restriction on the Federal government. In the case of
14   California, that erroneous conclusion was not made until 1924 (*In Re Rameriz*
15   previously briefed). When former California Penal Code section 12031 (the Black
16   Panther Loaded Open Carry Ban) was enacted in July of 1967, the California
17   legislature, as proven by the exhibits filed in this case, believed that there was an
18   individual right to keep and bear arms (in public) when it arbitrarily and
19   irrationally enacted its Open Carry ban, the sole motivation of which was to disarm
20   minorities.

21       Indeed, the first law prohibiting the carrying of concealed weapons in
22   Massachusetts was struck down in *Bliss v. Commonwealth*, 12 Ky. (2 Litt.) 90, 13
23   Am. Dec. 251 (1822). The first decision to uphold a statute prohibiting all persons
24   (except travelers) from wearing or carrying concealed weapons was *State v.*
25   *Mitchell*, 3 Blackf. 229 (Ind. 1833). This Indiana statute was enacted in 1831, long
26   after the time of ratification of the Second Amendment.

27

28

## The Burden on the Second Amendment Right does not have to be "Substantial"

Plaintiff Nichols submits that California's Open Carry bans present far more than a "substantial burden" but, in any event, the *Nordyke* substantial burden test was vacated and the framework articulated in *Chovan* is now binding in the 9th Circuit and on this Court.

> "Harris argues that Plaintiffs' Second Amendment challenge should be analyzed under the "substantial burden test" adopted by the Second Circuit. Under the "substantial burden test," heightened scrutiny is applied only to those laws that substantially burden the Second Amendment. See *United States v. DeCastro*, 682 F.3d 160, 164 (2d Cir. 2012). If a law does not substantially burden the Second Amendment, then the law need only pass "rational basis" scrutiny." *Silvester* at pg 3 lines 23-28.

> "As an initial matter, the Court must reject Harris's request that it adopt the Second Circuit framework for analyzing Second Amendment challenges. *Chovan*, which was filed after Harris filed her motion, adopted the majority approach, as reflected in cases such as *Chester* and *Ezell*. Accordingly, *DeCastro* has no application to this case. Under the *Chovan* framework, the first step is to determine whether the challenged law burdens a right protected under the Second Amendment." *Silvester* at pg 7, lines 18-23.

## The Open Carry Bans Burden a Right Protected Under the Second Amendment

"Under the *Chovan* framework, the first step is to determine whether the challenged law burdens a right protected under the Second Amendment." *Silvester* at pg 7, lines 22-23.

The three bans presently at issue in Plaintiff Nichols' Motion for Partial Summary Judgment burden (ban) the carrying of loaded firearms and the Open Carry of unloaded firearms for the purpose of self-defense and for other lawful purposes in the curtilage of Plaintiff Nichols' home which Plaintiff Nichols' submits is as much his home as is the interior of his home.  The three bans burden

1    "There can be no question that actual possession of a firearm is a necessary
2    prerequisite to exercising the right keep and bear arms." *Silvester* at pg 7, lines 26-
3    27.
4         The California Supreme Court has held "The act of firearm possession, by
5    itself, is innocent." *People v. Jones*, 278 P. 3d 821 - Cal: Supreme Court (2012) at
6    356. *Jones* at 360 also overruled *In re Hayes*, 70 Cal. 2d 604 - Cal: Supreme Court
7    (1969) and disapproved of *People v. Harrison*, 1 Cal. App. 3d 115 - Cal: Court of
8    Appeal, 2nd Appellate Dist., 4th Div. (1969) which allowed the 1967 Loaded Open
9    Carry ban (former California Penal Code section 12031) to be applied to the
10   carrying of loaded, *concealed* handguns. The California Supreme Court held that
11   California Penal Code section 654 prohibits "multiple punishment." Id., *Jones* at
12   360. It is irrelevant, according to *Jones*, whether the firearm is possessed in public
13   or in private. The three bans at issue in Plaintiff Nichols Motion for Partial
14   Summary Judgment apply to the curtilage of his private residence, the inside of his
15   motor vehicle and in or on any attached camper or trailer, places Plaintiff Nichols
16   submits are not "public places." The bans also apply to non-sensitive public places
17   and Defendant Harris makes no serious argument that the public places where the
18   bans apply are "sensitive places." How can she? She argues that the laws are
19   constitutional because hunters are exempt from the bans (albeit, not within the
20   plain text of the bans but elsewhere in the California Penal Code).

21                    **Rational Basis Does Not Apply to**

22          **Fourteenth Amendment Equal Protection Challenges**
23     ""When a statute burdens a fundamental right or targets a suspect class, that
       statute receives heightened scrutiny under the Fourteenth Amendment's
24     Equal Protection Clause." *Silveira v. Lockyer*, 312 F.3d 1052, 1087 (9th Cir.
25     2002). Statutes that infringe on fundamental rights are subject to strict
       scrutiny review, which means that a regulation will be upheld only if it is
26     suitably tailored to serve a compelling state interest." *Silvester* at pg 10, lines
27     23-27 (fn 6 ommitted).
28

---

Notice of Supplemental Authority    6    **Charles Nichols v. Edmund G Brown Jr et al**

"Harris's arguments are based on the proposition that the 18 classifications pass rational basis scrutiny. When a fundamental right is burdened, rational basis scrutiny does not apply. See *Nordlinger*, 505 U.S. at 10; *Silveira*, 312 F.3d at 1087." *Silvester* at pg 11, lines 2-4.

Legally, the burden has always been on the Defendants, including Defendant Harris. The Second, Fourth and Fourteenth Amendment rights of Plaintiff are fundamental and rational basis scrutiny does not apply. The Second, Fourth and Fourteenth Amendment rights of Plaintiff similarly situated to other individuals are fundamental and rational basis scrutiny does not apply. That said, Plaintiff Nichols has always argued that the three Open Carry bans presently at issue fail even rational basis scrutiny.

## There is No Compelling State Interest in Banning the Open Carry of Firearms for the Purpose of Self-Defense and for other Lawful Purposes in Non-Sensitive Public Places, In the Curtilage of One's Home or in or on a Motor Vehicle or Attached Camper or Trailer

"We are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many amici who believe that prohibition of handgun ownership is a solution. The Constitution leaves the District of Columbia a variety of tools for combating that problem, including some measures regulating handguns, see supra, at 2816-2817, and n. 26. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2822.

It has been well briefed that those "presumptively lawful regulatory measures" (*Heller*, fn 26) did not include "ban[s] on carrying pistols openly" *Heller* at 2809 and "Likewise…that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary,

and of their country, without any tendency to secret advantages and unmanly assassinations."" *Heller* at 2809.

> "The prefatory clause does not suggest that preserving the militia was the only reason Americans valued the ancient right; most undoubtedly thought it even more important for self-defense and hunting. But the threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that right—unlike some other English rights—was codified in a written Constitution. Justice BREYER's assertion that individual self-defense is merely a "subsidiary interest" of the right to keep and bear arms, see post, at 2841, is profoundly mistaken. He bases that assertion solely upon the prologue—but that can only show that self-defense had little to do with the right's codification; it was the central component of the right itself." *Heller* at 2801.

Self-defense is the central component of the Second Amendment Right. Although the right to hunt is a fundamental right under the Second Amendment it is not the central component of the right itself. Neither the state nor this Court can substitute the right to hunt for the right to bear arms for the purpose of self-defense in non-sensitive public places or in private places previously briefed.

In addition to the private places previously briefed, "Plaintiff need only walk outside his home carrying a loaded firearm to effectuate his plan." *Order Accepting Findings, Conclusions and Recommendations of United States Magistrate Judge* (Dkt # 82, denying Harris' Motion to Dismiss) Pg 5, lines 15-16. In the context of the three Open Carry bans presently at issue, Plaintiff's "home" is the door to his home, and California considers the curtilage of his home to be a "public place." The moment Plaintiff Nichols steps outside the interior of his home into the curtilage of his home carrying a loaded firearm or unloaded firearm he is in violation of the law. Even if *Heller* and *McDonald* had limited the Second Amendment Right to one's home, which Defendant Harris has not proven and which Plaintiff Nichols adamantly disputes, Plaintiff Nichols again submits that the curtilage of his home is his home in the context of the Second, Fourth and Fourteenth Amendments.

## CONCLUSION

"Finally, Justice BREYER points to a Massachusetts law similar to the
Pennsylvania law, prohibiting "discharg[ing] any Gun or Pistol charged with
Shot or Ball in the Town of Boston." Act of May 28, 1746, ch. X, Acts and
Laws of Mass. Bay 208. It is again implausible that this would have been
enforced against a citizen acting in self-defense, particularly given its
preambulatory reference to "the indiscreet firing of Guns." Ibid. (preamble)
(emphasis added)." *Heller* at 2820.

The three bans currently at issue do not prohibit the discharge of firearms,
indiscreetly or otherwise if one considers the exemptions found elsewhere in the
Penal Code which Defendant Harris urges this court to disregard. These three bans
prohibit merely the Open Carry of firearms loaded and unloaded. Indeed, the mere
possession of matching ammunition with an unloaded firearm carried openly or
concealed constitutes a "loaded" firearm under California law. The exemptions to
the bans are not found within the bans themselves but are found in other sections of
the penal code. The hunting exemption implicitly allows for the discharge of a
firearm for the purpose of hunting except in incorporated cites where the city has
prohibited hunting and unincorporated county territory where the discharge of a
firearm is prohibited.

Assuming, en arguendo, that Plaintiff Nichols is permitted to possess an
unloaded firearm in the trunk of his motor vehicle (Plaintiff's motor vehicle does
not have a trunk) as well as an unloaded firearm in the cab of his vehicle even
though the penal code says that Plaintiff's firearms must be transported directly to
or from a place where it is legal for him to possess a firearm; a non-functional
firearm in a motor vehicle does not enable Plaintiff Nichols to defend himself
outside of his vehicle at all (or has previously been briefed, inside of his motor
vehicle and other places he submits are private places). Plaintiff Nichols is
prohibited from possessing a loaded or unloaded firearm outside of his motor
vehicle in a public place (and in the private places previously briefed) until he

finds himself in "grave, immediate danger" and only for the brief interval of time between his notifying the police and the arrival of the police.

Where can Plaintiff Nichols buy this miraculous firearm which suddenly appears in his possession when he finds himself in grave, immediate danger and winks out of existence when the police arrive? Under California law that magic firearm is the only type of firearm Plaintiff Nichols is allowed to possess for the purpose of self-defense once he steps outside the interior of his home. Plaintiff Nichols submits that not only does this burden his fundamental rights, it is an insurmountable burden to his rights.

The legal arguments made in *Silvester* by Defendant Harris should be familiar to this Court. They were made by the same State's Attorney representing Defendant Harris in this case – Michael Eisenberg.

Heretofore, this Court has been dismissive of Plaintiff Nichols' arguments. Plaintiff hopes that this Court will be persuaded by the same arguments made by Senior United States District Judge Anthony W. Ishii in The United States District Court For The Eastern District Of California Fresno Division attached to this notice as "Exhibit A" and deny Defendant Harris' motion for judgment on the pleadings and grant Plaintiff Nichols motion for partial summary judgment.

Dated: December 12, 2013                    Respectfully submitted,

By: Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
EMail:CharlesNichols@Pykrete.info

///

# EXHIBIT "A"

1

2

3

4

5

6

7

8             **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10

11   **JEFF SILVESTER, et al.,**            **CASE NO. 1:11-CV-2137 AWI SAB**

12             **Plaintiffs**
                                            **ORDER ON DEFENDANT'S MOTION**
13        **v.**                            **FOR SUMMARY JUDGMENT**

14   **KAMALA HARRIS, Attorney General of**
     **California, and DOES 1 to 20,**       (Doc. No. 31)
15
             **Defendants**
16

17

18        This case challenges the constitutionality of several state firearms laws.  Plaintiffs allege

19   that California Penal Code §§ 26815 and 27540, which impose a 10-day waiting period between

20   the purchase and delivery of a firearm, violates the Second Amendment facially and as applied to

21   individuals who:  (1) are not prohibited from acquiring or possessing firearms, and (2) who

22   currently possess registered firearms and/or who hold certain valid state licenses that require the

23   successful passage of background checks.  Plaintiffs also contend that eighteen exceptions to the

24   10-day waiting period violate the Fourteenth Amendment's Equal Protection Clause.  Defendant

25   Attorney General of California Kamala Harris ("Harris") has moved for summary judgment on all

26   claims.  For the reasons that follow, the motion will be denied.

27

28

1

## FACTUAL BACKGROUND[1]

2          At all relevant times, the Plaintiffs have each owned at least one firearm. See DUMF's 2,

3    3. At all relevant times, one effect of Penal Code §§ 26815 and 27540 ("the WPL")[2] has been that

4    all California residents lawfully purchasing firearms must wait a minimum of 10 days between

5    applying to purchase the firearms and receiving delivery of them, unless the purchasers are

6    statutorily exempt from the waiting period. See DUMF 1.

7

8

## SUMMARY JUDGMENT FRAMEWORK

9          Summary judgment is appropriate when it is demonstrated that there exists no genuine

10   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

11   Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d

12   142 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The

13   party seeking summary judgment bears the initial burden of informing the court of the basis for its

14   motion and of identifying the portions of the declarations (if any), pleadings, and discovery that

15   demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

16   317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d

17   978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the

18   governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States

19   v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there

20   is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson,

21   477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

22          Where the moving party will have the burden of proof on an issue at trial, the movant

23   must affirmatively demonstrate that no reasonable trier of fact could find other than for the

24   _____

25   [1] "DUMF" refers to "Defendant's Undisputed Material Facts." Plaintiffs have submitted additional facts, and Harris
     has raised various objections to those facts. Because the motion can be resolved based on the three facts submitted by
     Harris, it is unnecessary for the Court to address Harris's objections or Plaintiffs' proposed facts.

26

27   [2] Penal Code §§ 26815(a) and 27540(a) prohibit the delivery of a firearm: "Within 10 days of the application to
     purchase, or after notice by the department pursuant to § 28220, within 10 days of the submission to the department of
     any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to

28   § 28225, whichever is later."

1    movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof

2    on an issue at trial, the movant may prevail by presenting evidence that negates an essential

3    element of the non-moving party's claim or by merely pointing out that there is an absence of

4    evidence to support an essential element of the non-moving party's claim. See James River Ins.

5    Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a

6    moving party fails to carry its burden of production, then "the non-moving party has no obligation

7    to produce anything, even if the non-moving party would have the ultimate burden of persuasion."

8    Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the

9    moving party meets its initial burden, the burden then shifts to the opposing party to establish that

10   a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith

11   Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103.

12        The opposing party's evidence is to be believed, and all justifiable inferences that may be

13   drawn from the facts placed before the court must be drawn in favor of the opposing party. See

14   Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899

15   (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive

16   inference, a "justifiable inference" must be rational or reasonable. See Narayan, 616 F.3d at 899.

17   If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material

18   fact, the moving party is entitled to summary judgment. Nissan Fire, 210 F.3d at 1103.

19

20                        **DEFENDANT'S MOTION**

21   **1.    Second Amendment Challenge**

22        *Defendant's Argument*

23        Harris argues that Plaintiffs' Second Amendment challenge should be analyzed under the

24   "substantial burden test" adopted by the Second Circuit. Under the "substantial burden test,"

25   heightened scrutiny is applied only to those laws that substantially burden the Second

26   Amendment. See United States v. DeCastro, 682 F.3d 160, 164 (2d Cir. 2012). If a law does not

27   substantially burden the Second Amendment, then the law need only pass "rational basis"

28   scrutiny. See id. at 166-67. A law imposes a substantial burden if the law bans law-abiding

3

1    people from owning firearms or leaves them without adequate alternatives for acquiring firearms

2    for self-defense. See id. at 168.

3         As applied to the WPL, that law does not substantially burden the Second Amendment.

4    The WPL is a regulation on the commercial sale of firearms and is one of the "tools" available to

5    California to address the problem of firearm violence. The law does not leave Plaintiffs in a

6    position to be unable to acquire legal firearms. Plaintiffs have had many chances to obtain

7    firearms, and could even borrow firearms if they wish. Further, the inconveniences cited by

8    Plaintiffs are minimal and do not amount to a constitutional violation. Because the 10-day waiting

9    period does not substantially burden the Second Amendment, rational basis review is appropriate.

10        Under rational basis review, the WPL easily passes muster. The WPL is rationally related

11   to safety and reducing firearm violence. The WPL serves that objective in two ways. First,

12   limiting a person's ability to acquire another firearm can only decrease the likelihood that the

13   person will use a firearm in an act of violence. That is, the WPL creates a "cooling off" period to

14   deal with those people who have an impulse to use a firearm to commit an act of violence.

15   Second, the WPL allows law enforcement officials sufficient time to conduct background checks

16   on prospective firearms purchasers, so that those who are prohibited by law from having firearms

17   will not be able to acquire them. For those who have already purchased a firearm, it is possible

18   that the individual may have become ineligible following the purchase of the first firearm.

19        Alternatively, even if rational basis review is not utilized, the WPL passes intermediate

20   scrutiny. The Legislature reasonably could have supposed that mandating a 10-day cooling off

21   period would dissuade at least some people experiencing violent impulses from acting out those

22   impulses with firearms. If a person is dissuaded, then firearm violence would be reduced. Even if

23   a person already has a firearm, limiting that person's ability to acquire another firearm can only

24   decrease the likelihood that the person will use a firearm in an impulsive act of violence. Also, the

25   Legislature reasonably could have supposed that giving law-enforcement 10 days to conduct a

26   thorough background check on prospective purchasers would hamper some people who are not

27   legally permitted to possess firearms. While background checks may not stop all persons from

28   obtaining them, a "perfect fit" between the law and the objective to be served is not required. The

4

1   WPL is reasonably adapted to serve the important government interest in public safety.

2       *Plaintiffs' Opposition*

3       Plaintiffs argue that the two part inquiry adopted by the Seventh Circuit in *Ezell v. City of*

4   *Chicago*, 651 F.3d 684 (7th Cir. 2011) should be utilized. Under this framework, the WPL

5   violates the Second Amendment both facially and as applied to Plaintiffs. In 1791 and 1868,

6   waiting period laws were not common. Harris argues that the WPL imposes a minor burden,

7   which at a minimum concedes that it is a burden and/or infringement on the right to keep and bear

8   arms. Every gun purchaser in California is deprived of the right to bear arms for at least 10 days,

9   and is required to make additional trips to obtain the firearm. There are no alternative means of

10  legally exercising this fundamental right without going through these burdens. No matter how

11  great the need may be for a firearm for self-defense, there is no alternative but to wait at least 10

12  days. Because the WPL burdens the Second Amendment, heightened scrutiny must be applied.

13      The WPL as applied against those who have previously purchased firearms or who possess

14  certain state licenses is the equivalent of a prior restraint, and thus should be analyzed under strict

15  scrutiny. However, under either strict scrutiny or intermediate scrutiny, the WPL fails. In terms

16  of strict scrutiny, Harris has not shown that the law is effective either in reducing gun violence or

17  in keeping firearms out of the hands of unqualified purchasers where the government has already

18  issued that purchaser a License To Carry or a Certificate Of Eligibility.

19      In terms of intermediate scrutiny, neither of the bases argued by Harris is sufficient. There

20  is no indication that the WPL is necessary to weed out unqualified purchasers. While it is

21  appropriate to have a background check, the current systems and data available do not make the

22  10-day waiting period reasonable. In terms of cooling-off, there is no evidence to support the

23  efficacy of the law in preventing impulsive firearm violence. Moreover, for those who already

24  legally possess firearms, the WPL would have no effect in terms of creating a "cooling off"

25  period. Any spontaneous desire to perform a violent act can be manifested through the weapon

26  that is already in the individual's possession. Because the WPL fails intermediate and strict

27  scrutiny, Harris's motion must be denied.

28
                                    5

1    *Legal Standard*

2         The Second Amendment reads: "A well regulated Militia, being necessary to the security

3    of a free state, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const.

4    amend. II. The Second Amendment right to keep and bear arms is an individual right and a

5    fundamental right that is incorporated against states and municipalities under the Fourteenth

6    Amendment. See McDonald v. City of Chicago, 130 S.Ct. 3020, 3042 (2010); District of

7    Columbia v. Heller, 554 U.S. 570, 595 (2008); Nordyke v. King, 681 F.3d 1041, 1043 (9th Cir.

8    2012) (en banc). The Second Amendment "protects a personal right to keep and bear arms for

9    lawful purposes, most notably for self-defense within the home." McDonald, 130 S.Ct. at 3044;

10   see also Heller, 554 U.S. at 630. However, the Second Amendment's protection is not unlimited,

11   and longstanding regulatory measures such as "prohibitions on the possession of firearms by

12   felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as

13   schools and government buildings, or laws imposing conditions and qualifications on the

14   commercial sale of arms," are presumptively lawful. McDonald, 130 S.Ct. at 3047; Heller, 554

15   U.S. at 626-27; Chovan, 2013 U.S. App. LEXIS 23199 at *13.

16        The Ninth Circuit has adopted a two-step Second Amendment framework: (1) the court

17   asks whether the challenged law burdens conduct protected by the Second Amendment, and (2) if

18   so, the court determines whether the law meet the appropriate level of scrutiny. See United States

19   v. Chovan, - - - F.3d - - -, 2013 U.S. App. LEXIS 23199, *22, *25-*26 (9th Cir. 2013); see also

20   National Rifle Ass'n of Am. v. Bureau of Alochol, Tobacco, Firearms and Explosives, 700 F.3d

21   185, 194-95 (5th Cir. 2012) ("N.R.A."); United States v. Chester, 628 F.3d 673, 680 (4th Cir.

22   2010). The first step is a historical inquiry that seeks to determine whether the conduct at issue

23   was understood to be within the scope of the right to keep and bear arms at the time of ratification.

24   Chester, 628 F.3d at 680; see Chovan, 2013 U.S. App. LEXIS at *23-*25; N.R.A., 700 F.3d at

25   194; Ezell v. City of Chicago, 651 F.3d 684, 702-03 (7th Cir. 2011). If a law burdens conduct that

26   falls outside of the Second Amendment's scope, then the analysis ends and there is no violation.

27   See N.R.A., 700 F.3d at 195; Ezell, 651 F.3d at 703. As to the second step, rational basis review

28   is not to be used. Heller, 554 U.S. at 628 n.27; Chovan, 2013 U.S. App. LEXIS 23199 at *25-*26.

6

1   Instead, if a law burdens a right within the scope of the Second Amendment, either intermediate or

2   strict scrutiny will be applied. See Chovan, 2013 U.S. App. LEXIS 23199 at *25-*29; N.R.A.,

3   700 F.3d at 195; Chester, 628 F.3d at 682. Whether intermediate or strict scrutiny applies depends

4   on: (1) how close the law comes to the core of the Second Amendment right, and (2) the severity

5   of the law's burden on the right. Chovan, 2013 U.S. App. LEXIS 23199 at *26; N.R.A., 700 F.3d

6   at 195; Ezell, 651 F.3d at 703. A regulation that threatens a core Second Amendment right is

7   subject to strict scrutiny, while a less severe regulation that does not encroach on a core Second

8   Amendment right is subject to intermediate scrutiny. See N.R.A., 700 F.3d at 195; Chester, 628

9   F.3d at 682. The "intermediate scrutiny" standard requires: (1) that the government's stated

10  objective must be significant, substantial, or important, and (2) that there is a reasonable fit

11  between the challenged regulation and the government's asserted objective. Chovan, 2013 U.S.

12  App. LEXIS 23199 at *29-*30; N.R.A., 700 F.3d at 195; Chester, 628 F.3d at 683. For there to be

13  a "reasonable fit," the regulation must not be substantially broader than necessary to achieve the

14  government's interest. See Reed v. Town of Gilbert, 707 F.3d 1057, 1074 n.16 (9th Cir. 2013);

15  Fantasyland Video, Inc. v. County of San Diego, 505 F.3d 996, 1004 (9th Cir. 2007); United

16  States v. Marzzarella, 614 F.3d 85, 98 (3d Cir. 2010).

17          *Discussion*

18          As an initial matter, the Court must reject Harris's request that it adopt the Second Circuit

19  framework for analyzing Second Amendment challenges. *Chovan*, which was filed after Harris

20  filed her motion, adopted the majority approach, as reflected in cases such as *Chester* and *Ezell*.

21  Accordingly, *DeCastro* has no application to this case.

22          Under the *Chovan* framework, the first step is to determine whether the challenged law

23  burdens a right protected under the Second Amendment. The WPL prohibits every person who

24  purchases a firearm from taking possession of that firearm for a minimum of 10 days. That is,

25  there is a period of at least 10 days in which California prohibits every person from exercising the

26  right to keep and bear a firearm. There can be no question that actual possession of a firearm is a

27  necessary prerequisite to exercising the right keep and bear arms. Further, there has been no

28  showing that the Second Amendment, as historically understood, did not apply for a period of time

1  between the purchase/attempted purchase of a firearm and possession of the firearm.[3]  Cf. Chovan,

2  2013 U.S. App. LEXIS 23199 at *25 (". . . we are certainly not able to say that the Second

3  Amendment, as historically understood, did not apply to persons convicted of domestic violence

4  misdemeanors.").  Although Harris argues that the WPL is a minor burden on the Second

5  Amendment, Plaintiffs are correct that this is a tacit acknowledgment that a protected Second

6  Amendment right is burdened.  Therefore, the Court concludes that the WPL burdens the Second

7  Amendment right to keep and bear arms.

8        The next step is to analyze the WPL under either strict or intermediate scrutiny.  As

9  indicated above, Harris advances two rationales in defense of the WPL – it provides a "cooling off

10  period" for those who may have an impulse to commit violence and it provides time for California

11  to conduct a background check.  It is unnecessary for the Court to determine at this time which

12  scrutiny to apply because, even under the lesser "intermediate scrutiny," summary judgment is not

13  appropriate.

14        With respect to the rationale of providing time to perform a background check, *Heller*

15  indicated that some laws or regulations presumptively do not offend the Second Amendment,

16  including laws that prevent felons and mentally ill persons from possessing firearms.  See Heller,

17  554 U.S. at 626-27.  If a state presumptively can constitutionally prohibit certain categories of

18  persons from possessing firearms, then it would seem to follow that a state can also perform some

19  type of "background check" in order to ensure that a disqualified person is not attempting to obtain

20  a firearm.  Indeed, Plaintiffs do not argue that background checks are constitutionally improper,

21  nor do they argue that California should not perform background checks.  What Plaintiffs

22  essentially argue is that the 10-day period is arbitrary and/or substantially overbroad, and that an

23  adequate background check can be performed in a significantly shorter period of time.  Although

24  Harris has made arguments that support a waiting period in general, Harris has presented

25  insufficient evidence to justify the actual 10-day period.  For example, there is no evidence

26  regarding the nature of the background checks performed, how much time is necessary to perform

27  ───────────────

28  [3] The Court notes that Harris has not refuted Plaintiffs' assertion that waiting periods of any duration before taking possession of a firearm were uncommon in both 1791 and 1868.  Cf. Ezell, 651 F.3d at 702-03; Chester, 628 F.3d at 680.

                                               8

1    a background check, or why 10-days are necessary in order to perform a background check.[4]

2    Harris admits that in the past California has had waiting periods that have ranged from 1 to 15

3    days. However, there is nothing before the Court to suggest that the 10-day period is a

4    "reasonable fit" that is not substantially broader than necessary to determine if an individual is

5    disqualified from owning a firearm. More information is needed. The Court will not grant

6    summary judgment on this issue based on the bare arguments presented. Chester, 628 F.3d at 883.

7         As for the "cooling down" rationale, Harris has not presented sufficient evidence that the

8    10-day waiting period is a "reasonable fit." For example, there is no evidence concerning how the

9    10-day period was determined for purposes of "cooling off," any evidence concerning "cooling

10    off" and gun violence in general for those wishing to purchase a firearm, or that the 10-days is not

11    substantially broader than necessary.[5] Additionally, as applied to individuals who already own a

12    gun, the Court has great difficulty envisioning how the "cooling off" rationale could pass the

13    appropriate level of scrutiny. If an individual already possess a firearm, then nothing about this

14    rationale would prevent that individual from acting on a sudden impulse to commit gun violence

15    with the gun already in his or her possession. The Court will not grant summary judgment on this

16    issue based on the bare arguments presented. Chester, 628 F.3d at 883.

17

18    **2.**    **Fourteenth Amendment Equal Protection Challenge**

19         *Defendant's Argument*

20         Harris argues that each of the exceptions to the WPL that Plaintiffs challenge survive equal

21    protection analysis. The WPL passes both rational basis and intermediate scrutiny, thus the WPL

22    does not burden a fundamental right. Because the WPL does not burden a fundamental right, the

23    18 exceptions challenged by Plaintiffs need only pass rational basis review. Those 18 exceptions

24    cover transactions involving police officers, firearms dealers delivering non-handguns to auctions

25    and similar events, dealer to dealer transactions (including dealer to himself), importer and

26    ───────────

[4] This list is by way of example only and is not meant to be conclusive as to the types of arguments or evidence that

27    can be presented.

28    [5]This list is by way of example only and is not meant to be conclusive as to the types of arguments or evidence that
     can be presented.                                                  9

1  manufacturer transactions, individuals with permits for unusual weapons, repairs by gunsmiths,

2  dealer sales to out of state residents, firearm deliveries to wholesalers, and loans of firearms for

3  certain activities/facilities. For each of these groups, the Legislature could have rationally

4  concluded that the nature of the transaction, or the licenses already possessed or the nature of the

5  activities involved, sufficiently guarded against the threat that the firearm would be used for illegal

6  violence. Accordingly, none of the challenged laws violate the Equal Protection Clause.

7      *Plaintiffs' Opposition*

8      Plaintiffs argue that there are 18 groups excepted from the WPL, including peace officers,

9  firearms dealers delivering non-handguns to auctions, certain dealer-to-dealer transfers, transfers

10  to people with permits for "exotic" firearms/weapons, transfers to repair or service firearms, dealer

11  sales out of state, firearm deliveries to wholesalers, and regulated lending of firearms at certain

12  facilities (e.g. firing ranges). Although Harris tries to explain a rational basis for these exceptions,

13  she assumes that the laws do not infringe on a fundamental right. However, the WPL does

14  infringe on a fundamental Second Amendment right, so heightened scrutiny applies. Since Harris

15  does not defend these laws under the proper level of scrutiny, summary judgment is inappropriate.

16      *Legal Standard*

17      "The Equal Protection Clause commands that no state shall deny any person the equal

18  protection of the laws." Stop H-3 Ass'n v. Dole, 870 F.2d 1419, 1429 n.18 (9th Cir. 1989). The

19  Equal Protection Clause "keeps governmental decisionmakers from treating differently persons

20  who are in all relevant aspects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). "[I]n order for

21  a state action to trigger equal protection review at all, that action must treat similarly situated

22  persons disparately." Barnes-Wallace v. City of San Diego, 704 F.3d 1067, 1084 (9th Cir. 2013).

23  "When a statute burdens a fundamental right or targets a suspect class, that statute receives

24  heightened scrutiny under the Fourteenth Amendment's Equal Protection Clause." Silveira v.

25  Lockyer, 312 F.3d 1052, 1087 (9th Cir. 2002).[6] Statutes that infringe on fundamental rights are

26  subject to strict scrutiny review, which means that a regulation will be upheld only if it is suitably

27  tailored to serve a compelling state interest. Id. at 1087.

28

---

[6] Abrogated on other grounds as recognized by Barnes-Wallace, 704 F.3d at 1084-85.

1    *Discussion*

2         Harris's arguments are based on the proposition that the 18 classifications pass rational

3    basis scrutiny.  When a fundamental right is burdened, rational basis scrutiny does not apply.  See

4    Nordlinger, 505 U.S. at 10; Silveira, 312 F.3d at 1087.  Contrary to Harris's argument, Harris has

5    not established that the WPL does not burden the Second Amendment right to keep and bear arms.

6    As explained above, Harris did not show that the WPL passes either intermediate or strict scrutiny.

7    Because Harris's arguments do not show that rational basis review is appropriate, Harris has not

8    adequately met her initial burden.  Summary judgment on the Equal Protection claims is

9    inappropriate.  See Nissan Fire, 210 F.3d at 1105-06.

10

11                                          **CONCLUSION**

12         Harris moves for summary judgment on each of the claims alleged by Plaintiffs.  With

13    respect to the Second Amendment claims, Harris has not sufficiently met her burden.  Harris has

14    not presented sufficient evidence to show that the WPL passes either intermediate or strict scrutiny

15    for either the "background check" rationale or the "cooling off period" rationale.  With respect to

16    the Equal Protection claims, Harris has focused exclusively on rational basis scrutiny.  However,

17    Harris has not adequately demonstrated that rational basis scrutiny is appropriate.  Therefore,

18    Harris's motion for summary judgment will be denied in its entirety.

19

20                                            **ORDER**

21         Accordingly, IT IS HEREBY ORDERED that Defendant's motion for summary judgment

22    is DENIED.

23

24    IT IS SO ORDERED.

25    Dated:  December 6, 2013                 _____
                                              SENIOR DISTRICT JUDGE

26

27

28                                              11

## CERTIFICATE OF SERVICE

On this, the 12th day of December, 2013, I caused to be served a copy of the foregoing **NOTICE OF SUPPLEMENTAL AUTHORITY [Silvester v. Harris]** by US Mail on:

Jonathan Michael Eisenberg
Office of the California Attorney General
Government Law Section
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
213-897-6505
213-897-1071 (fax)
jonathan.eisenberg@doj.ca.gov
LEAD ATTORNEY / ATTORNEY TO BE NOTICED representing Kamala D Harris (Defendant).

Executed this the 12th day of December, 2013 by:

Charles Nichols