1  Charles Nichols
   PO Box 1302
2  Redondo Beach, CA 90278
   Voice: (424) 634-7381
3  E-Mail: CharlesNichols@Pykrete.info
   In Pro Per
4

FILED
CLERK, U.S. DISTRICT COURT

JAN – 6 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY.

5

6

7

8              United States District Court

9              Central District of California

10

11  Charles Nichols,                    )  Case No.: CV-11-9916 SJO (SS)
                                         )
12            PLAINTIFF,                 )  **NOTICE OF SUPPLEMENTAL**
                                         )  **AUTHORITY**
13       vs.                             )
                                         )  [Patel v. City of Los Angeles]
14  KAMALA D. HARRIS, Attorney           )
                                         )
15  General, in her official capacity as )
                                         )
16  Attorney General of California       )
                                         )
17                                       )  Date:    N/A
                                         )  Time:    N/A
18       Defendant.                      )  Crtrm:   23 – 3rd Floor
                                         )  Magistrate Judge:  Suzanne H. Segal
19                                       )  District Judge: S. James Otero
                                         )  Trial Date: None
20                                       )  Action Filed: November 30, 2011

21

22

23       Pro Se Plaintiff Charles Nichols, In Pro Per, respectfully submits this Notice

24  of Supplemental Authority in support of Plaintiff's Motion for Partial Summary

25  Judgment and in Opposition to Defendant Harris' Motion for Judgment on the

26  Pleadings.

27

28

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

On December 24, 2013 the 9th Circuit Court of Appeals published an en banc opinion in the case of *Patel v. City of Los Angeles*, Court of Appeals, 9th Circuit No. 08-56567 (filed December 24, 2013) (*Patel*). A true and complete copy of *Patel* is attached as "Exhibit A."

*Patel* involved a purely facial challenge to "Los Angeles Municipal Code § 41.49 [which] requires hotel and motel operators to keep records with specified information about their guests. Plaintiffs, motel owners in Los Angeles, challenge a provision of § 41.49 authorizing warrantless, onsite inspections of those records upon the demand of any police officer." *Patel* at 3-4.

"Plaintiffs…challenge § 41.49's warrantless inspection requirement, which states that hotel guest records "shall be made available to any officer of the Los Angeles Police Department for inspection," provided that, "[w]henever possible, the inspection shall be conducted at a time and in a manner that minimizes any interference with the operation of the business." Id.1 The city stipulated that this provision authorizes police officers to inspect hotel guest records at any time without consent or a search warrant. Failure to comply with an officer's inspection demand is a misdemeanor, punishable by up to six months in jail and a $1000 fine. L.A. Mun. Code § 11.00(m). Plaintiffs have been and will continue to be subjected to warrantless record inspections under § 41.49. They filed this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief barring continued enforcement of § 41.49's warrantless inspection provision, on the ground that it is facially invalid under the Fourth Amendment. Following a bench trial, the district court rejected plaintiffs' facial challenge and entered judgment for the City of Los Angeles." *Patel* at 4-5.

### A Search is a Search

"A police officer's non-consensual inspection of hotel guest records plainly constitutes a "search" under either the property-based approach of *Jones* or the privacy-based approach of *Katz*. Such inspections involve both a physical intrusion upon the hotel's private papers and an invasion of the hotel's protected privacy interest in those papers for the purpose of obtaining information. See *Jones*, 132 S. Ct. at 951 n.5. Whether the officers rifle through the records in paper form, or view the records on a computer screen, they are doing so to obtain the information contained in the records. That the inspection may disclose "nothing of any great personal value" to the hotel—on the theory, for example, that the records contain "just" the hotel's customer list—is of no consequence. *Arizona v. Hicks*, 480 U.S. 321, 325 (1987). "A search is a search, even if it happens to disclose nothing but the bottom of a turntable." Id." *Patel* at 9.

A search of Plaintiff's private property, his firearms, be it in the curtilage of his home or in a public place, is a search.  It is a search even if the firearm is of a type that California has not (yet) banned from being openly carried (antiques), albeit unloaded or under the narrow exceptions this Court believes to be exemptions to the Open Carry bans (e.g., hunters).

### The Law is Facially Invalid Even Under the Lenient More Fourth Amendment Principles Governing Administrative Record Inspections

"With these assumptions in mind, which give the city the benefit of the doubt at each turn, we will apply the Fourth Amendment principles governing administrative record inspections, rather than those that apply when the government searches for evidence of a crime or conducts administrative searches of non-public areas of a business…Even under the more lenient Fourth

1  Amendment principles governing administrative record inspections, § 41.49 is
2  facially invalid." *Patel* at 10 (internal citations omitted).

3

4       California Penal Code section 25850(b) provides for a warrantless search to
5  search for evidence of a "crime" in non-sensitive public places and, as applied to
6  Plaintiff Nichols, in the curtilage of his own home.  Mere refusal alone to
7  "voluntarily" consent to the search, according to the statute, constitutes "probable
8  cause" for an arrest.  No other circumstances are required under the statute.

9

10          **The Law is Facially Invalid Under *Salerno***

11

12       The en banc majority in *Patel* rejected the dissent's reliance on *United States*
13  *v. Salerno*, 481 U.S. 739, 745 (1987), *Wash. State Grange v. Wash. State*
14  *Republican Party*, 552 U.S. 442, 449 (2008) and *United States v. Mendoza*, 438
15  F.3d 792, 795 (7th Cir. 2006).

16

17       "We hold that § 41.49's requirement that hotel guest records "shall be made
18  available to any officer of the Los Angeles Police Department for inspection" is
19  facially invalid under the Fourth Amendment insofar as it authorizes inspections of
20  those records without affording an opportunity to "obtain judicial review of the
21  reasonableness of the demand prior to suffering penalties for refusing to comply."
22  See, 387 U.S. at 545. Because this procedural deficiency affects the validity of all
23  searches authorized by § 41.49(3)(a), there are no circumstances in which the
24  record inspection provision may be constitutionally applied. See *United States v.*
25  *Salerno*, 481 U.S. 739, 745 (1987). Facial invalidation of the provision, as
26  plaintiffs have requested, is therefore appropriate." *Patel* at 12-13.

27

28

1    Allowing for an arrest for merely refusing to consent to a search facially

2  invalidated the City of Los Angeles ordinance under Salerno.  It should likewise do

3  so in this case.

4

5  ## **"Exigent Circumstances" and "Other Authorities" are Not Applicable**

6  ## **"Circumstances" Under Salerno**

7

8    "That conclusion is not undermined by the dissent's observation, see

9  Tallman Dissent at 17, that officers may seek to inspect hotel guest records based

10  on a source of authority other than § 41.49. If "exigent circumstances" exist to

11  justify a non-consensual inspection of hotel guest records, for example, officers

12  may conduct such a search in compliance with the Fourth Amendment whether §

13  41.49 is on the books or not." *Patel* at 13.

14

15  ## **Not Having Suffered a Penalty for Refusing to Comply is Irrelevant**

16

17    "Nor is it relevant that plaintiffs have not yet "suffered a penalty for refusing

18  to comply.  Tallman Dissent at 22. "The forbearance of a field officer in graciously

19  declining to propose a penalty"—thus far—does not cure the constitutional

20  defect…" *Patel* at 13.

21                                 **CONCLUSION**

22    "If the hotel operator refuses the officer's demand, she may be found guilty

      without more of a misdemeanor, punishable by up to six months in jail and a

23    $1000 fine. Hotel operators are thus subject to the "unbridled discretion" of

24    officers in the field, who are free to choose whom to inspect, when to

      inspect, and the frequency with which those inspections occur.  Only by

25    refusing the officer's inspection demand and risking a criminal conviction

26    may a hotel operator challenge the reasonableness of the officer's decision to

      inspect. To comply with the Fourth Amendment, the city must afford hotel

27    operators an opportunity to challenge the reasonableness of the inspection

28

demand in court before penalties for non-compliance are imposed." *Patel* at
11-12 (internal citations omitted).

Plaintiff Nichols has been, is, and will continue to be subject to the
"unbridled discretion" of officers in the field who are free to choose whom to
inspect, when to inspect, and the frequency with which those inspections occur
even under those few, limited circumstances Plaintiff Nichols may theoretically
still "legally" openly carry a firearm (but again, only theoretically as a defense in
his criminal prosecution). Only by refusing the officer's inspection demand and
risking a criminal conviction may Plaintiff challenge the reasonableness of the
officer's decision to inspect according to both the statute and Defendant Harris.

The defects in the City of Los Angeles ordinance are also defects in the
Open Carry bans at issue even absent the 1967 legislative intent of giving police
officers "unbridled discretion" to target minorities who were not breaking any laws
and despite Defendant Harris' outrageous claim that the Framers of the Second
Amendment intended the Second Amendment to validate racist laws, such as PC
25850.

Plaintiff submits that *Patel* is dispositive in favor of Plaintiff Nichols'
Motion for Partial Summary Judgment and dispositive against Defendant Harris'
Motion for Judgment on the Pleadings as well as any future motion for summary
judgment this court might permit Defendant Harris to file.

Dated: January 6, 2014            Respectfully submitted,

By: Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA  90278
Voice: (424) 634-7381
EMail:CharlesNichols@Pykrete.info

///

CERTIFICATE OF SERVICE

On this, the 6th day of January, 2014, I caused to be served a copy of the foregoing **NOTICE OF SUPPLEMENTAL AUTHORITY [Patel v. City of Los Angeles]** by US Mail on:

Jonathan Michael Eisenberg
Office of the California Attorney General
Government Law Section
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
213-897-6505
213-897-1071 (fax)
jonathan.eisenberg@doj.ca.gov
LEAD ATTORNEY / ATTORNEY TO BE NOTICED representing Kamala D Harris (Defendant).

Executed this the 6th day of January, 2014 by:

Charles Nichols

# EXHIBIT "A"

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NARANJIBHAI PATEL; RAMILABEN PATEL,<br><br>*Plaintiffs-Appellants*,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal corporation,<br>*Defendant-Appellee.* | No. 08-56567<br><br>D.C. No.<br>2:05-cv-01571-<br>DSF-AJW<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted En Banc
June 24, 2013—Seattle, Washington

Filed December 24, 2013

Before: Alex Kozinski, Chief Judge, and Diarmuid F.
O'Scannlain, Raymond C. Fisher, Marsha S. Berzon,
Richard C. Tallman, Richard R. Clifton, Consuelo M.
Callahan, Milan D. Smith, Jr., Mary H. Murguia, Morgan
Christen and Paul J. Watford, Circuit Judges.

Opinion by Judge Watford;
Dissent by Judge Tallman;
Dissent by Judge Clifton

1

2          PATEL V. CITY OF LOS ANGELES

## SUMMARY[*]

### Civil Rights

The en banc court reversed the district court's judgment in favor of the City of Los Angeles, and held that Los Angeles Municipal Code § 41.49's requirement that hotel guest records "shall be made available to any officer of the Los Angeles Police Department for inspection" was facially invalid under the Fourth Amendment insofar as it authorized inspections of the records without affording an opportunity to obtain prior judicial review.

Plaintiffs, who are motel owners in Los Angeles, challenged the provision of § 41.49 authorizing warrantless, on-site inspections of hotel guest records by any police officer. The en banc court held that a police officer's non-consensual inspection of hotel guest records under § 41.49 constituted a Fourth Amendment "search." The en banc court also held that even under the more lenient Fourth Amendment principles governing administrative record inspections, § 41.49 was facially invalid. The en banc court concluded that in order for the city to comply with the Fourth Amendment, it must afford hotel operators an opportunity to challenge the reasonableness of the police officer's inspection demand in court before penalties for non-compliance were imposed.

Judge Tallman, joined by Judges O'Scannlain, Clifton, and Callahan, dissented. Judge Tallman dissented from the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

majority's decision to declare invalid *all* potential searches under the city's ordinance, and he would limit the court's review to searches and seizures that actually took place. Because plaintiffs did not raise an as-applied challenge to the ordinance, Judge Tallman would vacate the district court's judgment and remand for dismissal of the facial challenge.

Judge Clifton, joined by Judges O'Scannlain, Tallman, and Callahan, dissented. Judge Clifton wrote that the majority opinion was wrong because it ignored the facial nature of plaintiffs' challenge to the ordinance and the high bar that must be overcome for a facial challenge to succeed, and failed to establish that a search of records under the ordinance would be unreasonable.

---

## COUNSEL

Frank A. Weiser (argued), Law Offices of Frank A. Weiser, Los Angeles, California, for Plaintiffs-Appellants.

Todd T. Leung (argued), Deputy City Attorney; Rockard J. Delgadillo, City Attorney; Laurie Rittenberg, Assistant City Attorney, Office of the City Attorney, Los Angeles, California, for Defendant-Appellee.

---

## OPINION

WATFORD, Circuit Judge:

Los Angeles Municipal Code § 41.49 requires hotel and motel operators to keep records with specified information about their guests. Plaintiffs, motel owners in Los Angeles,

challenge a provision of § 41.49 authorizing warrantless, on-site inspections of those records upon the demand of any police officer. We are asked to decide whether this provision is facially invalid under the Fourth Amendment.

I

Section 41.49 requires hotel and motel operators to collect and record detailed information about their guests in either paper or electronic form. The records must contain: the guest's name and address; the number of people in the guest's party; the make, model, and license plate number of the guest's vehicle if the vehicle will be parked on hotel property; the guest's date and time of arrival and scheduled date of departure; the room number assigned to the guest; the rate charged and the amount collected for the room; and the method of payment. L.A. Mun. Code § 41.49(2)(a). For cash-paying and walk-in guests, as well as any guest who rents a room for less than twelve hours, the records must also contain the number and expiration date of the identification document the guest presented when checking in. § 41.49(4). For guests who check in using an electronic kiosk, hotel operators must record the guest's name, reservation and credit card information, and the room number assigned to the guest. § 41.49(2)(b). These records must be "kept on the hotel premises in the guest reception or guest check-in area or in an office adjacent to that area" for a period of 90 days. § 41.49(3)(a).

Plaintiffs do not challenge these requirements. But they do challenge § 41.49's warrantless inspection requirement, which states that hotel guest records "shall be made available to any officer of the Los Angeles Police Department for inspection," provided that, "[w]henever possible, the

inspection shall be conducted at a time and in a manner that minimizes any interference with the operation of the business." *Id.*[1] The city stipulated that this provision authorizes police officers to inspect hotel guest records at any time without consent or a search warrant. Failure to comply with an officer's inspection demand is a misdemeanor, punishable by up to six months in jail and a $1000 fine. L.A. Mun. Code § 11.00(m).

Plaintiffs have been and will continue to be subjected to warrantless record inspections under § 41.49. They filed this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief barring continued enforcement of § 41.49's warrantless inspection provision, on the ground that it is facially invalid under the Fourth Amendment. Following a bench trial, the district court rejected plaintiffs' facial challenge and entered judgment for the City of Los Angeles.

II

The first question raised by plaintiffs' facial challenge is whether a police officer's non-consensual inspection of hotel

---

[1] Section 41.49(3)(a) provides in full:

> The record shall be kept on the hotel premises in the guest reception or guest check-in area or in an office adjacent to that area. The record shall be maintained at that location on the hotel premises for a period of 90 days from and after the date of the last entry in the record and shall be made available to any officer of the Los Angeles Police Department for inspection. Whenever possible, the inspection shall be conducted at a time and in a manner that minimizes any interference with the operation of the business.

guest records under § 41.49 constitutes a Fourth Amendment
"search." We have little difficulty concluding that it does.

The Fourth Amendment protects the right of the people to
be secure in their "persons, houses, papers, and effects"
against unreasonable searches and seizures. U.S. Const.
amend. IV. A search occurs for Fourth Amendment purposes
when the government physically intrudes upon one of these
enumerated areas, or invades a protected privacy interest, for
the purpose of obtaining information. *United States v. Jones*,
132 S. Ct. 945, 949–51 (2012); *Katz v. United States*, 389
U.S. 347, 360–61 (1967) (Harlan, J., concurring). The
"papers" protected by the Fourth Amendment include
business records like those at issue here. *See Hale v. Henkel*,
201 U.S. 43, 76–77 (1906).

Record inspections under § 41.49 involve both a physical
intrusion upon a hotel's papers and an invasion of the hotel's
protected privacy interest in those papers, for essentially the
same reasons. "One of the main rights attaching to property
is the right to exclude others, and one who owns or lawfully
possesses or controls property will in all likelihood have a
legitimate expectation of privacy by virtue of this right to
exclude." *Rakas v. Illinois*, 439 U.S. 128, 144 n.12 (1978)
(citation omitted). The business records covered by § 41.49
are the hotel's private property, and the hotel therefore has
both a possessory and an ownership interest in the records.
By virtue of those property-based interests, the hotel has the
right to exclude others from prying into the contents of its
records, which is also the source of its expectation of privacy
in the records. *Cf. Florida v. Jardines*, 133 S. Ct. 1409,
1418–19 (2013) (Kagan, J., concurring). That expectation of
privacy is one society deems reasonable because businesses
do not ordinarily disclose, and are not expected to disclose,

the kind of commercially sensitive information contained in the records—e.g., customer lists, pricing practices, and occupancy rates. The hotel retains that expectation of privacy notwithstanding the fact that the records are required to be kept by law. *See McLaughlin v. Kings Island, Div. of Taft Broad. Co.*, 849 F.2d 990, 995–96 (6th Cir. 1988); *Brock v. Emerson Elec. Co.*, 834 F.2d 994, 996 (11th Cir. 1987).

The hotel's property and privacy interests are more than sufficient to trigger Fourth Amendment protection. As to the property-based rationale for our holding, which is grounded in a century-old line of Supreme Court precedent beginning with *Hale*, 201 U.S. at 76–77, the dissent is in complete agreement. *See* Clifton Dissent at 25. As to the privacy-based rationale, the dissent asserts that plaintiffs were required to prove, as a factual matter, that their business records are subject to a reasonable expectation of privacy. Clifton Dissent at 29, 30–31. We do not believe business owners are required to prove that proposition, any more than homeowners are required to prove that papers stored in a desk drawer are subject to a reasonable expectation of privacy. So long as a business's records are "private," as the Court held in *Hale*, 201 U.S. at 76, they fall within the scope of the "papers" protected by the Fourth Amendment.

No one contests here that plaintiffs' hotel records are in fact private. If the records were "publicly accessible," as the dissent posits, Clifton Dissent at 31, it is true they would not be protected by the Fourth Amendment, since "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351. But, by the same measure, if the records were publicly accessible, the police of

course would not need to rely on § 41.49 to gain access to them.

That the hotel records at issue contain information mainly about the hotel's guests does not strip them of constitutional protection. To be sure, the *guests* lack any privacy interest of their own in the hotel's records. *United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000); *see United States v. Miller*, 425 U.S. 435, 440 (1976). But that is because the records belong to the hotel, not the guest, and the records contain information that the guests have voluntarily disclosed to the hotel. *Cormier*, 220 F.3d at 1108. It may be the case, as the dissent speculates, that the hotel in *Cormier* voluntarily consented to an inspection of its guest records. *See* Clifton Dissent at 29. But that does not support the dissent's contention that hotels generally lack an expectation of privacy in such records. Otherwise, the fact that a defendant in one of our published decisions voluntarily consented to the search of his home would establish that the rest of us lack an expectation of privacy in our own homes.

A police officer's non-consensual inspection of hotel guest records plainly constitutes a "search" under either the property-based approach of *Jones* or the privacy-based approach of *Katz*. Such inspections involve both a physical intrusion upon the hotel's private papers and an invasion of the hotel's protected privacy interest in those papers for the purpose of obtaining information. *See Jones*, 132 S. Ct. at 951 n.5. Whether the officers rifle through the records in paper form, or view the records on a computer screen, they are doing so to obtain the information contained in the records. That the inspection may disclose "nothing of any great personal value" to the hotel—on the theory, for example, that the records contain "just" the hotel's customer

list—is of no consequence. *Arizona v. Hicks*, 480 U.S. 321, 325 (1987). "A search is a search, even if it happens to disclose nothing but the bottom of a turntable." *Id.*

III

The question we must next decide is whether the searches authorized by § 41.49 are reasonable. Ordinarily, to answer that question, we would balance "the need to search against the invasion which the search entails." *Camara v. Mun. Court*, 387 U.S. 523, 537 (1967); *see Maryland v. King*, 133 S. Ct. 1958, 1970 (2013). Here, however, that balance has already been struck. The Supreme Court has made clear that, to be reasonable, an administrative record-inspection scheme need not require issuance of a search warrant, but it must at a minimum afford an opportunity for pre-compliance judicial review, an element that § 41.49 lacks.

We will assume, without deciding, that § 41.49 is in fact intended to authorize administrative record inspections, rather than "searches for evidence of crime," which would ordinarily require a warrant. *Michigan v. Tyler*, 436 U.S. 499, 511–12 (1978). The city defends § 41.49 as a nuisance abatement measure designed to deter drug dealing and prostitution, on the theory that those who would be inclined to use hotels to facilitate their illicit activities will be less inclined to do so if they know that hotel operators must collect—and make available to the police—information identifying each of their guests. Plaintiffs do not contest this characterization of § 41.49, and we need not question it to resolve this case.

We will also assume that § 41.49 is intended to authorize access only to the hotel guest records, rather than to non-

public areas of the hotel's premises. When the government seeks access to non-public areas of a business to enforce health and safety regulations, an administrative search warrant is generally required before that greater level of intrusion is permitted. *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 414 (1984); *See v. City of Seattle*, 387 U.S. 541, 545 (1967). Section 41.49 could be read as authorizing inspections of hotel guest records, at least in some circumstances, in "an office adjacent to" the guest check-in area. L.A. Mun. Code § 41.49(3)(a). If that office were not open to the public, officers could not insist on conducting the inspection there without an administrative search warrant. *See Lone Steer*, 464 U.S. at 414; *See*, 387 U.S. at 545. As a general rule, however, § 41.49 appears to contemplate record inspections occurring in the "guest reception or guest check-in area" of the hotel, areas which presumably are open to the public. L.A. Mun. Code § 41.49(3)(a). Given our disposition, we need not decide whether record inspections in an area of a business open to the public, such as a hotel lobby, would require an administrative search warrant.

With these assumptions in mind, which give the city the benefit of the doubt at each turn, we will apply the Fourth Amendment principles governing administrative record inspections, rather than those that apply when the government searches for evidence of a crime or conducts administrative searches of non-public areas of a business. *See Tyler*, 436 U.S. at 511–12; *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320–21 (1978). Even under the more lenient Fourth Amendment principles governing administrative record inspections, § 41.49 is facially invalid.

The government may require businesses to maintain records and make them available for routine inspection when

necessary to further a legitimate regulatory interest. *See
California Bankers Ass'n v. Shultz*, 416 U.S. 21, 45–46
(1974); *Kings Island*, 849 F.2d at 992–93. But the Fourth
Amendment places limits on the government's authority in
this regard. *See Oklahoma Press Pub. Co. v. Walling*,
327 U.S. 186, 208–09 (1945). The government may
ordinarily compel the inspection of business records only
through an inspection demand "sufficiently limited in scope,
relevant in purpose, and specific in directive so that
compliance will not be unreasonably burdensome." *See*,
387 U.S. at 544. Section 41.49 appears to satisfy this Fourth
Amendment prerequisite by adequately specifying (and
limiting the scope of) the records subject to inspection. In
addition, however, the demand to inspect "may not be made
and enforced by the inspector in the field." *Id.* at 544–45.
The party subject to the demand must be afforded an
opportunity to "obtain judicial review of the reasonableness
of the demand prior to suffering penalties for refusing to
comply." *Id.* at 545; *see also Lone Steer*, 464 U.S. at 415.

Section 41.49 lacks this essential procedural safeguard
against arbitrary or abusive inspection demands. As presently
drafted, § 41.49 provides no opportunity for pre-compliance
judicial review of an officer's demand to inspect a hotel's
guest records. If the hotel operator refuses the officer's
demand, she may be found guilty without more of a
misdemeanor, punishable by up to six months in jail and a
$1000 fine. *See* L.A. Mun. Code § 11.00(m). Hotel operators
are thus subject to the "unbridled discretion" of officers in the
field, who are free to choose whom to inspect, when to
inspect, and the frequency with which those inspections
occur. *See Barlow's*, 436 U.S. at 323. Only by refusing the
officer's inspection demand and risking a criminal conviction
may a hotel operator challenge the reasonableness of the

12          PATEL V. CITY OF LOS ANGELES

officer's decision to inspect. *See Camara*, 387 U.S. at 532.
To comply with the Fourth Amendment, the city must afford
hotel operators an opportunity to challenge the
reasonableness of the inspection demand in court before
penalties for non-compliance are imposed. *See Lone Steer*,
464 U.S. at 415; *See*, 387 U.S. at 545; *Kings Island*, 849 F.2d
at 996; *Emerson Elec.*, 834 F.2d at 997.[2]

The dissent is certainly correct that "[t]he lack of pre-
compliance judicial review does not necessarily make a
search unreasonable under the Fourth Amendment." Clifton
Dissent at 27. But it *does* render unreasonable the particular
searches at issue here—administrative inspections of business
records in industries that are not closely regulated. The
dissent never refutes that point. It merely notes that pre-
compliance judicial review is not required for other types of
searches that § 41.49 does not purport to authorize, such as
automobile searches or "stop and frisks." *Id.* That
observation has no relevance to the Fourth Amendment issue
raised by this case.

                              IV

We hold that § 41.49's requirement that hotel guest
records "shall be made available to any officer of the Los
Angeles Police Department for inspection" is facially invalid
under the Fourth Amendment insofar as it authorizes

---

[2] Unannounced inspections without an opportunity for pre-compliance
judicial review may be reasonable in certain closely regulated industries,
such as mining and firearms. *See, e.g.*, *New York v. Burger*, 482 U.S. 691,
702 (1987). As the district court correctly concluded, however, no serious
argument can be made that the hotel industry has been subjected to the
kind of pervasive regulation that would qualify it for treatment under the
*Burger* line of cases. *See Barlow's*, 436 U.S. at 313–14.

inspections of those records without affording an opportunity
to "obtain judicial review of the reasonableness of the
demand prior to suffering penalties for refusing to comply."
*See*, 387 U.S. at 545.  Because this procedural deficiency
affects the validity of all searches authorized by
§ 41.49(3)(a), there are no circumstances in which the record-
inspection provision may be constitutionally applied.  *See
United States v. Salerno*, 481 U.S. 739, 745 (1987).  Facial
invalidation of the provision, as plaintiffs have requested, is
therefore appropriate.  *See Barlow's*, 436 U.S. at 325; *Kings
Island*, 849 F.2d at 997.

That conclusion is not undermined by the dissent's
observation, *see* Tallman Dissent at 17, that officers may seek
to inspect hotel guest records based on a source of authority
other than § 41.49.  If "exigent circumstances" exist to justify
a non-consensual inspection of hotel guest records, for
example, officers may conduct such a search in compliance
with the Fourth Amendment whether § 41.49 is on the books
or not.  Nor is it relevant that plaintiffs have not yet "suffered
a penalty for refusing to comply."  Tallman Dissent at 22.
"The forbearance of a field officer in graciously declining to
propose a penalty"—thus far—does not cure the
constitutional defect in § 41.49's administrative record-
inspection scheme.  *Emerson Elec.*, 834 F.2d at 997.

**REVERSED and REMANDED.**

TALLMAN, Circuit Judge, with whom Circuit Judges
O'SCANNLAIN, CLIFTON, and CALLAHAN join,
dissenting:

The Fourth Amendment to our Constitution provides that
"[t]he right of the people to be secure in their persons, houses,
papers, and effects, against unreasonable searches and
seizures, shall not be violated. . . ." U.S. Const., amend. IV.
The Amendment has always prohibited specific government
conduct—"unreasonable searches and seizures"—not
legislation that could potentially permit such conduct. It is
for this reason that the Supreme Court has held that "[t]he
constitutional validity of a warrantless search is pre-
eminently the sort of question which can only be decided in
the concrete factual context of the individual case." *Sibron
v. New York*, 392 U.S. 40, 59 (1968).

The Patels nonetheless ask us to declare facially invalid
under the Fourth Amendment a city ordinance that does not
address the procedures the police must follow before entering
a hotel to request the guest registers that hotels must keep.
The ordinance says nothing of warrants, much less consent,
exigencies, or any other recognized exception to the warrant
requirement. We only know from the face of the statute that
when the police do request the register, however they make
that request, the hotel owner must provide it.

The Patels may be right in asserting that as a practical
matter the Los Angeles Police Department has *applied* the
ordinance to undertake searches that violate the Fourth
Amendment. In that case, the Patels should have little
problem challenging such a search on the facts of a particular
search itself. They made such a claim when they filed their
lawsuit but dropped it before trial. The district court looked

at the city ordinance and saw nothing on its face suggesting it was unconstitutional in all of its applications. Now on appeal, the Patels ask us to assume the exercise of analyzing *all* potential searches that *might be* conducted pursuant to the ordinance in order to declare it deficient. We should decline the Patels' invitation because the Supreme Court has told us to avoid the exercise altogether. My colleagues, though, have taken the bait and issued what amounts to no more than an advisory opinion. I respectfully dissent.

I

In *Sibron v. New York*, the New York state legislature had enacted a statute allowing a police officer, with "reasonable suspicion," to "stop any person," "demand" explanations, and "search such person for a dangerous weapon." 392 U.S. at 43–44. Two defendants sought suppression of evidence discovered pursuant to such searches, and they asked the Supreme Court to strike down the state statute as facially unconstitutional under the Fourth Amendment. *Id.* at 44. On the same day the Supreme Court established the constitutional standard for "stop-and-frisks" in *Terry v. Ohio*, 392 U.S. 1 (1968), the Court declined to address the facial challenge to the statute in *Sibron*.

The Court explained that federal courts should refuse "to be drawn into what we view as the abstract and unproductive exercise of laying the extraordinarily elastic categories of [a statute] next to the categories of the Fourth Amendment in an effort to determine whether the two are in some sense compatible." *Sibron*, 392 U.S. at 59. Rather, we should "confine our review instead to the reasonableness of the searches and seizures" that have actually taken place. *Id.* at 62.

The *Sibron* Court reasoned that when a statute's terms "are susceptible of a wide variety of interpretations," *id.* at 60, we can only determine if the government has violated Fourth Amendment rights by analyzing the concrete facts in which the statute was applied. "The constitutional point with respect to a statute of this peculiar sort . . . is not so much . . . the language employed as . . . the conduct it authorizes." *Id.* at 61–62 (citation and internal quotation marks omitted). Here, although counsel represented at argument that unconstitutional searches have occurred at the Patels' motel, the record is bereft of any details to tell us what happened when the ordinance was invoked.

I am at a loss to understand the Patels' decision to drop the as-applied challenge they raised in their original complaint.    But their facial challenge leaves us with insufficient facts regarding the unconstitutional conduct they allege has occurred.  It instead asks us to partake in the gymnastics of the hypothetical, focusing on the "language employed" instead of the "conduct [the ordinance] authorizes." *Id.*

The difficulty with this case arises from the disconnect between the language employed in the statute and the conduct the majority concludes the ordinance authorizes.    The majority opinion is rife with assumptions about the police conduct that must occur for the ordinance to be applied.  To begin, the majority's analysis starts with the assumption that "§ 41.49 authoriz[es] warrantless . . . inspections." Maj. Op. at 4.  But it seems plain from the face of the statute that the ordinance would apply to hoteliers with equal force if Los Angeles police officers arrived at a hotel with a legitimate search warrant and the hotelier refused to produce the register. I have always understood the rule to be that a statute

survives a facial challenge if a court can find any circumstance in which it could constitutionally be applied. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (holding that a facial challenge "can only succeed" if "no set of circumstances exists under which the [law] would be valid"). The majority does not even acknowledge this rule of constitutional adjudication.

The plaintiffs went to trial solely on a facial challenge to the statute, which by its nature requires us to consider only the statute's language. But even if, as the majority suggests, *all* searches authorized by the ordinance were without warrant and consent—which the statute clearly does not dictate—the majority has still not accounted for "exigent circumstances" that would allow the police to request the guest register without a warrant *or* consent. *See Kentucky v. King*, 131 S. Ct. 1849, 1858 (2011) ("[W]arrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement."). Additionally, the police could request the register under their community care-taking exception; perhaps police might be on the premises to locate a suicidal person whose worried family has asked police to check on his welfare. These would appear to be at least two "set[s] of circumstances . . . under which the [law] would be valid." *Wash. State Grange*, 552 U.S. at 449.

But such important constitutional questions should not rise and fall on the vagaries of judicial imaginations. As in *Sibron*, "[o]ur constitutional inquiry would not be furthered here by an attempt to pronounce judgment on the words of the statute." 392 U.S. at 62. Even after considering the stipulation that the Patels have been subject to warrantless searches under the ordinance, we have no concrete facts to

18        PATEL V. CITY OF LOS ANGELES

analyze the circumstances of each individual search. And
even if we did have those facts, the Patels have made the
tactical litigation decision to withdraw any challenge to those
searches. They leave us with no evidence to prove that *all*
requests made under the ordinance *must* violate the Fourth
Amendment. The majority's decision to nonetheless entertain
the facial challenge eschews Supreme Court guidance to the
contrary.

II

The majority ignores *Sibron* entirely and takes an
improperly narrow view of what the statutory text authorizes.
The ordinance, *on its face*, provides only that:

> [The register] shall be made available to any
> officer of the Los Angeles Police Department
> for inspection.    Whenever possible, the
> inspection shall be conducted at a time and in
> a manner that minimizes any interference with
> the operation of the business.

L.A. Mun. Code § 41.49(3)(a). According to the ordinance's
language, if the police request the guest register, the hotel
owner must provide it. The ordinance does not claim to alter
the LAPD's constitutional responsibility to adhere to Fourth
Amendment safeguards when making any demand for
information. We cannot presume that police have violated
the Fourth Amendment without any facts with which to make
that determination.

It is clear that when the majority reads the ordinance, it
engrafts into it language that is not there:

> [The register] shall be made available to any
> officer of the Los Angeles Police Department
> for inspection, ***and the police may conduct
> such an inspection without a warrant and
> without consent or any other delineated
> exception to the warrant requirement.***
> Whenever possible, the inspection shall be
> conducted at a time and in a manner that
> minimizes any interference with the operation
> of the business.

I stress again that the majority starts its analysis with the assumption that the ordinance "authoriz[es] warrantless . . . inspections." Maj. Op. at 4. This reading, enhanced by an imaginary judicial graft on the text, raises a critical difference from the ordinance's actual language as currently written. If the ordinance were phrased in a manner that would eliminate the warrant requirement entirely, it would implicate Supreme Court precedent suggesting that a statute may not alter the procedures for obtaining a warrant. Most notably, in *Berger v. New York*, 388 U.S. 41, 56–58 (1967), the Court struck down a New York statute allowing the state to obtain a surveillance warrant without probable cause or even particularity as to what the police expected to obtain with the warrant. The Court held that New York's attempt to alter the procedures for the issuance of a warrant was "offensive" to the Warrant Clause of the Fourth Amendment. *Id.* at 58–59.

The majority instead takes a course similar to the Supreme Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978), but it does not account for the critical difference between *Barlow's* and this case. In *Barlow's*, the Court analyzed—in the course of an as-applied challenge based on an actual attempted search—Section 8(a) of the Occupational

20          PATEL V. CITY OF LOS ANGELES

Safety and Health Act (OSHA), which permitted the Department of Labor:

> (1) *to enter without delay* and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and (2) *to inspect and investigate* during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent, or employee.

*Id.* at 309 n.1 (emphasis added).[1]

Unlike the Patels, the *Barlow's* plaintiff sought to enjoin the statute as it was applied to him—seeking declaratory relief that he did not have to comply with a court order requiring the plaintiff to allow an inspection by an Occupational Safety and Health officer. *Barlow's, Inc. v. Usery*, 424 F. Supp. 437, 438–39 (D. Idaho 1976). Through the factual development of his as-applied challenge, it became "undisputed that [the officer] did not have any cause, probable or otherwise, to believe a violation existed nor was he in possession of any complaints by any employee of

---

[1] The language of Section 8(a) actually authorizes specific government conduct, unlike the ordinance, which only imposes a responsibility on a hotelier. The majority ignores this critical difference.

Barlow's, Inc." *Id.* It was also undisputed that the officer did not seek or possess a warrant for the inspection. *Id.* at 438.

Before the Supreme Court, the government did not attempt to argue that it could justify the search of the plaintiff under any exception to the warrant requirement. Instead, it argued that all warrantless searches conducted pursuant to Section 8(a) of OSHA should be deemed reasonable—under a new exception the government asked the Supreme Court to announce in *Barlow's* itself. *Barlow's*, 436 U.S. at 315–16 ("[The Secretary] suggests that only a decision exempting OSHA inspections from the Warrant Clause would give 'full recognition to the competing public and private interests here at stake.'"). Not surprisingly, the Supreme Court declined the government's novel request.

Importantly, the Court did not strike down Section 8(a) of OSHA altogether. Rather, based on the concrete factual situation that arose from the as-applied challenge—specifically, because the government had conceded that no warrant exception existed for the search of the plaintiff's business—the Court held that the statute was unconstitutional "insofar as it purports to authorize inspections *without warrant or its equivalent. . . .*" *Id.* at 325 (emphasis added). As the Court noted, the injunction "should not be understood to forbid the Secretary from exercising the inspection authority conferred by § 8 pursuant to regulations and judicial process that satisfy the Fourth Amendment." *Id.* at 325 n.23. Therefore, a search under Section 8(a) would still survive if the government obtained a warrant or could meet an exception to the warrant requirement that would serve as a warrant's "equivalent."

The majority appears to believe it is following the lead of
*Barlow's* when it strikes down the ordinance "insofar as it
authorizes inspections of those records without affording an
opportunity to 'obtain judicial review of the reasonableness
of the demand prior to suffering penalties for refusing to
comply.'" Maj. Op. at 12–13. But the record, unlike in
*Barlow's*, is totally bereft of facts to support the majority's
assumption that the statute is actually being applied in that
manner. The Patels put forth no evidence at trial
demonstrating that they (or any other hotelier, for that matter)
have not had an opportunity to obtain judicial review of any
request for guest registers, nor have they shown that *any*
hotelier has suffered a penalty for refusing to comply. The
majority simply lacks the necessary factual predicate to
support its conclusion.

Instead we are left with an advisory opinion that engages
in the folly *Sibron* warned us to avoid.[2] The majority must
begin with an assumption—that the ordinance authorizes only
warrantless searches—unsupported by the face of the statute.
Then, by cabining its analysis to only whether a search meets
one exception for certain administrative inspections, the
majority refuses to acknowledge that the ordinance may be
"susceptible of a wide variety of interpretations." *Sibron*,

---

[2] "[A]s-applied challenges are the basic building blocks of constitutional
adjudication." *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007). It is no
surprise, then, that the majority's opinion relies entirely on Supreme Court
cases involving them. *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408,
412–14 (1984); *Barlow's*, 436 U.S. at 320–21; *See v. City of Seattle*,
387 U.S. 541, 545–46 (1967); *Camara v. Mun. Ct.*, 387 U.S. 523, 540
(1967). In each of those cases, the Court analyzed whether specific
government conduct was unconstitutional, not whether the mere language
employed in a statute or regulation was invalid. In this case, we do not
have any specific government conduct to adjudicate.

392 U.S. at 60. The majority's ultimate conclusion—that the ordinance is unconstitutional only insofar as it authorizes conduct that the plaintiffs have never proven actually occurred—reveals why "[o]ur constitutional inquiry would not be furthered here by an attempt to pronounce judgment on the words of the statute. We must confine our review instead to the reasonableness of the searches and seizures" that actually took place. *Id.* at 62.

Because the Patels intentionally declined to challenge such actual searches, we should vacate the judgment and remand so the district court may dismiss the facial challenge under *Sibron*. If the Patels are truly subject to searches without a warrant, and the police have no valid reason to circumvent the warrant requirement—which may very well be the case—then the Patels can raise an as-applied challenge to any City attempt to punish them. *See Camara*, 387 U.S. at 540. Because the majority has improperly engaged in this "abstract and unproductive exercise," *Sibron*, 392 U.S. at 59, I respectfully dissent.

---

CLIFTON, Circuit Judge, with whom Circuit Judges O'SCANNLAIN, TALLMAN, and CALLAHAN join, dissenting:

The majority opinion is wrong in two different ways. First, it ignores the facial nature of Plaintiffs' challenge to the ordinance and the very high bar that must be overcome for a facial challenge to succeed. Second, it fails to establish that a search of records under the ordinance would be unreasonable, the ultimate standard imposed under the Fourth Amendment. Instead, to the extent that it deals with the issue

24          PATEL V. CITY OF LOS ANGELES

at all, it simply accepts Plaintiffs' assertion to that effect, supported by no evidence whatsoever.

## I.  The Nature of a Facial Challenge

Judge Tallman is correct that the validity of a warrantless search should generally be decided in the concrete factual context of an as-applied challenge. *See Sibron v. New York*, 392 U.S. 40, 59 (1968). I join his opinion.

Plaintiffs' facial challenge also fails on the merits. A facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (explaining that a facial challenge fails unless "the law is unconstitutional in all of its applications"). That the ordinance might operate unconstitutionally under some circumstances is not enough to render it invalid against a facial challenge.

## II.  The Reasonableness of the Search

The majority opinion starts by concluding that a police officer's inspection of hotel guest records under the ordinance is a "search" for purposes of the Fourth Amendment. I agree.

Prior to the Supreme Court's decision in *Jones v. United States*, __ U.S. ___, 132 S. Ct. 945 (2012), the issues of whether a given intrusion constituted a "search" and whether that intrusion was "unreasonable" were often merged into a single discussion, considering whether there was a reasonable expectation of privacy that deserved protection. *Jones* made

clear that the application of the Fourth Amendment was not limited to circumstances involving a reasonable expectation of privacy. *Id.* at 949–51. The Fourth Amendment applies to the intrusion here, based on what the majority opinion has termed the property-based rationale. That is true whether or not hotels have a reasonable expectation of privacy in guest registers.

The conclusion that the Fourth Amendment applies "is the beginning point, not the end of the analysis," however, as the Supreme Court recently reiterated in *Maryland v. King*, ___ U.S. ___, 133 S. Ct. 1958, 1969 (2013), a decision handed down after its decision in *Jones*. "[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *King*, 133 S. Ct. at 1969 (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995)); *see also Soldal v. Cook Cnty.*, 506 U.S. 56, 71 (1992) (stating that "reasonableness is still the ultimate standard under the Fourth Amendment") (internal quotation marks omitted). Thus in *King* the Court concluded that the practice of gathering DNA samples from arrestees by buccal swabs was not unreasonable. It noted that although the Fourth Amendment may often demand that the government have individualized suspicion, a warrant, or both before an intrusion, the Court has imposed "no irreducible requirement[s]" for a reasonable search or seizure. *See King*, 133 S. Ct. at 1969.

The majority opinion appears to agree that it must decide whether the search authorized by the ordinance is reasonable. It even acknowledges, at 9, that "[o]rdinarily" a decision would require a balancing of factors to support the conclusion that the inspection here is unreasonable. But it does not undertake such a balancing in its section III.

Instead, the majority opinion contends, at 9, that the "balance has already been struck." It identifies the absence of pre-compliance judicial review as a fatal flaw in the ordinance because, it asserts, at 9, that pre-compliance judicial review is an absolute requirement for any and all business record inspection systems. Because this ordinance does not provide for pre-compliance judicial review before a hotel will be called upon to make the guest information available, the majority opinion concludes that it must violate the Fourth Amendment.

The majority opinion's reasoning misses an important step. The absence of judicial review establishes only that the ordinance might not qualify for the recognized exception for administrative subpoenas or inspections. *See Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 208–09 (1946) (discussing administrative subpoenas); *See v. City of Seattle*, 387 U.S. 541, 544–45 (1967) (discussing administrative inspections); *see also United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113, 1115–16 (9th Cir. 2012). That is not the only exception to the warrant requirement recognized under the Fourth Amendment, let alone the only basis for upholding a warrantless search on the ground that it was not unreasonable.

There is, for instance, no provision for a pre-compliance judicial review before a "Terry stop" or a "stop and frisk" under *Terry v. Ohio*, 392 U.S. 1, 22–24 (1968). When a police officer proposes to stop and frisk a suspect, the suspect is not allowed to defer the frisk until after it can be challenged in court. Nor is there such a provision for a warrantless search of an automobile, *United States v. Brooks*, 610 F.3d 1186, 1193–94 (9th Cir. 2010), or any other search under the exigent circumstances exception to the Fourth Amendment's

warrant requirement, *Sims v. Stanton*, 706 F.3d 954, 960–61 (9th Cir. 2013).

The lack of pre-compliance judicial review does not necessarily make a search unreasonable under the Fourth Amendment. The majority concedes that fact, at 12, but the lack of pre-compliance judicial review is all the majority opinion discusses to conclude that the a search under the ordinance is always unreasonable.

The majority opinion's reasoning is similar to the following logic: (1) some cars are white, (2) what Mary is driving is not white, (3) therefore, Mary is not driving a car. Put that way, the logical fallacy is obvious – Mary might be driving a red car. And the inspection provided under this ordinance might be reasonable under the Fourth Amendment for reasons other than the recognized exception for administrative inspections.

The most that the majority opinion has established is that an inspection of guest registry information under the ordinance might not qualify under the established administrative subpoena exception. But that is not the ground upon which the district court concluded that Plaintiffs' facial challenge failed. Instead, it took on the harder question and concluded that the Plaintiffs failed to demonstrate that they and hotel owners in general had a legitimate privacy interest in guest registry information such that the ordinance was facially unreasonable. By concluding that a search under the ordinance is necessarily unreasonable because it does not fit the administrative subpoena exception, the majority opinion has knocked over a straw man.

The harder question of whether a search under the ordinance would be unreasonable in all circumstances requires consideration of the nature of the intrusion, among other things. The majority opinion does not entirely ignore that question, but it discusses it only in answering the easy question – whether an inspection of a guest registry under the ordinance constitutes a search – and not the hard one – whether that search is unreasonable in all circumstances.

The majority opinion asserts, at 7, that Plaintiffs are not required to prove that their business records are necessarily subject to an expectation of privacy, because they are papers protected by the Fourth Amendment. But that, too, answers only the easy question, not the hard one. It does not establish that a search of those papers under the ordinance would be unreasonable in all circumstances.

Plaintiffs may have a subjective expectation of privacy in their guest registry and may keep that information confidential, as the majority opinion asserts, though there is no proof of that in the record. Plaintiffs have brought a facial challenge, however, so the relevant question is not simply how these individual Plaintiffs treat their guest registry but how that information is treated by hotels generally. The majority opinion cites nothing to support the factual proposition that hotels generally treat such information as private. There is none in the record.

Moreover, even if the Plaintiffs had presented evidence that hotels generally treated their guest registers as confidential, that does not mean that the expectation of privacy is constitutionally protected. Establishing a subjective expectation of privacy does not end the question under the Fourth Amendment. *United States v. Sandoval*, 200 F.3d 659,

660 (9th Cir. 2000). Society must also recognize the expectation of privacy as reasonable. *Id.*; *United States v. Gonzalez*, 328 F.3d 543, 546–47 (9th Cir. 2003). The majority opinion does not discuss that question at all.

We have already held, as the majority opinion acknowledges, at 8, that hotel guests do not have a reasonable expectation of privacy in guest registry information once they have provided it to a hotel operator. *United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000). In *Cormier*, we noted that the information at issue there, the guest's name and room number, was not "highly personal information." *Id.* A guest's information is even less personal to the hotel than it is to the guest.

Nonetheless, the majority opinion asserts, at 7, that guest registry information is "commercially sensitive." Nothing is cited to support that assertion. The majority opinion expects us to accept it because it says so.

But that is obviously not always true. There are hotels that voluntarily share information about guests with law enforcement without being served with a warrant and without the duress of this ordinance. Unlike the majority opinion, I do not require you to take my word for it. Take a look at our description of what happened in the *Cormier* case. A police detective went to a motel "located in a traditionally high-crime area" to "obtain the motel's guest registration records," and he got them. 220 F.3d at 1106. There is no mention of a warrant, and if there had been one, Cormier could not have objected to the seizure of the registration records in the first place, so it is safe to infer that there was none. The motel simply gave the registration records to the police detective.

That does not seem surprising to me, and I suspect that it is not such a rare occurrence. More to the point, though, it contradicts the majority opinion's premise that hotels closely guard their registries to protect "commercially sensitive" information and that an inspection under the ordinance would always be unreasonably intrusive. The record contains no evidence to support either proposition.

The majority opinion answers, at 8, by noting that the hotel in the *Cormier* case is just one hotel, and that its willingness to turn records over to the police does not establish that hotels generally lack an expectation of privacy. But that answer misses the mark in two different ways. One is that Plaintiffs and the majority opinion cite nothing to support their view – my one beats their none. More importantly, the majority opinion forgets that Plaintiffs have presented a facial challenge. Plaintiffs cannot prevail based on their own personal expectations of privacy. They have to demonstrate that there are no circumstances in which the ordinance would be valid, and if there are hotels that do not view guest registry information as private to themselves, the inspection permitted by the ordinance may not be unreasonable.

There can, in fact, be no support in the record for the majority opinion's assertion because Plaintiffs presented no evidence about the treatment of guest registry information. We cannot simply assume that hotels in general expect information contained in their guest registers to be private. *See Salerno*, 481 U.S. at 745 (explaining that a facial challenge fails unless "no set of circumstances exist under which the Act would be valid"); *see also United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) (explaining that "without an affidavit or testimony from the defendant, it is

almost impossible to find a privacy interest" to support standing) (internal quotation marks omitted). The majority opinion's construction is missing a foundation.

Under the ordinance, a guest registry may be a publicly accessible book in a publicly accessible hotel lobby. Society likely does not recognize a legitimate expectation of privacy in information kept in a manner so easily accessible to anyone entering a hotel. *See Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995) (explaining that "[l]egitimate privacy expectations" are diminished in "[p]ublic school locker rooms" because they "are not notable for the privacy they afford"). In some circumstances, a search under the ordinance – which could entail nothing more than a brief look at a publicly accessible record in a publicly accessible lobby for information in which hotel guests have no privacy interest – may be a minimal intrusion. *See King*, 133 S. Ct. at 1969 (explaining that "[t]he fact that an intrusion is negligible is of central relevance to determining reasonableness, although it is still a search as the law defines that term"). The ordinance narrowly cabins officer discretion by permitting only inspections of the specified guest registry information. *Compare Al Haramain Islamic Found., Inc. v. U.S. Dept. of Treasury*, 686 F.3d 965, 992 (9th Cir. 2012) (discussing authority that a warrant may not be required when "intrusions 'are defined narrowly and specifically in the regulations that authorize them'"), *with See v. City of Seattle*, 387 U.S. 541, 543–44 (1967) (discussing the Fourth Amendment's application to administrative investigations, including "perusal of financial books and records").

Without an evidentiary showing, we cannot conclude that any search pursuant to the ordinance would unreasonably intrude on privacy interests that society recognizes as

legitimate. *See King*, 133 S. Ct. at 1978 (explaining that "[t]he reasonableness of any search must be considered in the context of the person's legitimate expectations of privacy"). On review of a proper evidentiary foundation, perhaps we would conclude that the balance weighs in favor of the conclusion that hotels have an expectation of privacy in guest registry information that society recognizes as reasonable. The majority opinion does not do that review, though, and the existing record does not permit it to do so. It is not nearly enough to assert, as the majority opinion does, at 9, that a "search is a search." That is, as the Court noted in *Maryland v. King*, just "the beginning point, not the end of the analysis." 133 S. Ct. at 1969. Unfortunately, the majority opinion fails to travel the rest of the road.

For Plaintiffs to prevail, they must demonstrate that the search provided under the ordinance is unreasonable in all circumstances. They have not, and the majority opinion has not, either.

I respectfully dissent.