FILED

2014 FEB -5 PM 1:30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

1 | Charles Nichols
2 | PO Box 1302
   | Redondo Beach, CA 90278
   | Voice: (424) 634-7381
3 | E-Mail: CharlesNichols@Pykrete.info
4 | In Pro Per

5

6

7

8 | United States District Court

9 | Central District of California

10

11 | Charles Nichols,                              ) Case No.: CV-11-9916 SJO (SS)
12 |              PLAINTIFF,                        ) **NOTICE OF SUPPLEMENTAL
                                                   ) AUTHORITY**
13 |         vs.                                    )
                                                   ) [US v. Cureton]
14 | KAMALA D. HARRIS, Attorney                    )
15 | General, in her official capacity as          )
16 | Attorney General of California                )
                                                   ) Date:    N/A
17 |                                                ) Time:    N/A
                                                   ) Crtrm:  23 – 3rd Floor
18 |              Defendant.                        ) Magistrate Judge:  Suzanne H. Segal
                                                   ) District Judge: S. James Otero
19 |                                                ) Trial Date: None
20 |                                                ) Action Filed: November 30, 2011

21

22

23 |     Pro Se Plaintiff Charles Nichols, In Pro Per, respectfully submits this Notice

24 | of Supplemental Authority in support of Plaintiff's Motion for Partial Summary

25 | Judgment and in Opposition to Defendant Harris' Motion for Judgment on the

26 | Pleadings.

27

28

## NOTICE OF SUPPLEMENTAL AUTHORITY

On January 13, 2014 a decision was published in *US v. Cureton*, Court of Appeals, 7th Circuit Nos. 12-1250 & 12-1251 (January 13, 2014). A true and complete copy of the decision in *Cureton* is attached as "Exhibit A."

"The statute [18 U.S.C. § 924(c)(1)] makes one a criminal if he "uses," "carries," or "possesses" a firearm "during and in relation to any crime of violence or drug trafficking crime." ***The statute does not punish the mere use, carriage, or possession of a firearm; to do so would run afoul of the Second Amendment***. See *District of Columbia v. Heller*, 554 U.S. 570 (2008)." *Cureton*, slip op at page 19. (emphasis and [18 U.S.C. § 924(c)(1)] added).

The three criminal statutes at issue in Plaintiff Nichols' motion for partial summary judgment punish the mere use, carriage or possession of a firearm and therefore "run afoul of the Second Amendment." They should be permanently enjoined. Plaintiff Nichols' motion for partial summary judgment should be granted and Defendant Harris' motion for judgment on the pleadings should be denied.

Dated: February 4, 2014                    Respectfully submitted,

By: Charles Nichols
PLAINTIFF in Pro Per
PO Box 1302
Redondo Beach, CA 90278
Voice: (424) 634-7381
EMail:CharlesNichols@Pykrete.info

///

# EXHIBIT "A"

In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 12-1250 & 12-1251

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS CURETON,

*Defendant-Appellant.*

Appeals from the United States District Court for the
Southern District of Illinois.
Nos. 10 CR 30106 & 10 CR 30200 — **G. Patrick Murphy**, *Judge.*

ARGUED NOVEMBER 26, 2012 — DECIDED JANUARY 13, 2014

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* After Thomas Cureton's room-
mate failed to bring him $9,000 in cash that he had hidden in
their freezer, he kidnapped her, assaulted her, held a gun to
her to her head, and demanded that she call relatives to ob-
tain cash. A jury convicted Cureton of attempted extortion
and interstate communication of a ransom request, as well as
three counts of drug distribution for events from different
days that were tried at the same time. In light of the over-

whelming evidence against him, we find that any error in admitting evidence that Cureton had obtained the cash by robbing drug customers at gunpoint was harmless. However, we agree with him that one of his two 18 U.S.C. § 924(c)(1) convictions for using a firearm in connection with a violent felony must be vacated. While the government maintains two convictions are proper because he used the gun in connection with two different predicate offenses, both convictions are based on the exact same conduct—Cureton pointing a gun at his roommate and demanding she make calls to obtain money. Because there is only a single use of a single gun, and the predicate offenses were committed simultaneously without any differentiation in conduct, only one § 924(c)(1) conviction can stand. As a result, we vacate Cureton's sentence and remand for resentencing.

## I. BACKGROUND

Two criminal cases against Thomas Cureton were tried together. In the first case, the government charged Cureton with four counts of distributing crack cocaine and one count of being a felon in possession of a firearm. At trial, the government presented evidence that on December 31, 2009, January 4, 2010, and January 7, 2010, Cureton sold crack cocaine to a confidential informant in Belleville, Illinois. On December 31, 2009, a police inspector watched as a confidential informant called Cureton to set up a drug buy. The inspector searched the informant, gave him $60 in recorded bills, watched as the informant and Cureton entered the same building, and then received crack cocaine from the informant that the informant said Cureton sold him. Another officer maintained surveillance on Cureton as he left his home and drove to the building to meet the informant.

Nos. 12-1250 & 12-1251                                    3

The informant made two more crack cocaine buys from Cureton on January 4, 2010. In similar fashion to the December 31 purchase, an officer watched Cureton leave his apartment and proceed to the agreed upon location. In the first buy that day, Cureton and the informant both entered the building upon their arrival. Soon after Cureton arrived, the informant left the building and returned to the inspector with crack cocaine that he said he purchased from Cureton while in the building. This sale took place at the apartment of William Bosley, who testified that he watched the drug transaction between Cureton and the informant. In the second January 4 buy, the inspector stated that he watched the informant get into Cureton's car, that no one else was in the car, and that the informant came to the inspector a few minutes later with crack cocaine he said he bought from Cureton. The government contended that the informant also bought crack cocaine from Cureton on January 7, but the jury acquitted Cureton of this charge.

During a warrant search of Cureton's home later in the day on January 7, law enforcement agents found inside Cureton's wallet one of the marked bills that agents had given to the confidential informant on December 31, 2009 to buy crack cocaine from Cureton. The second controlled buy had taken place in Bosley's apartment, and officers recovered from Bosley's ceiling tiles two pistols in a plastic bag, ammunition, and an electronic scale that Bosley said Cureton had hidden there. Cureton's fingerprints were found on the bag containing the pistols and also on the scale.

In the second case, Cureton faced charges of interstate communication of a ransom request, attempted extortion, and two counts of possession of a firearm in furtherance of a

4                                  Nos. 12-1250 & 12-1251

crime of violence for events on June 14, 2010. Two days earlier, on June 12, a man named Eddie Sakosko had approximately $9,800 in cash on him from the recent sale of his home. Sakosko, Jeffrey Day, and a few other friends decided to use some of the money to buy crack cocaine. Day called Cureton, and Cureton delivered drugs to the group. The friends smoked all the crack cocaine and wanted more, so they called Cureton again, and Cureton returned. This time, after Cureton, Day, and Sakosko went into a garage, Cureton pulled out a gun and demanded money from Sakosko. At one point, Sakosko tried to get the gun away from Cureton, and the gun discharged. (No one was injured.) Cureton left with $9,500 of Sakosko's cash, and Day and his associates called the police and reported the robbery.

Two days later, Cureton and his wife LaQuita Cureton (we will refer to her by her first name for convenience) left the apartment they shared with eighteen-year-old Ashley Lawrence and her boyfriend, Demetrius Anderson, who was also LaQuita's brother. A short time later, the police arrived looking for Cureton. Anderson talked to LaQuita on the phone after the police left, and she relayed that she and Cureton wanted cash and LaQuita's puppy brought to them. It was decided on the phone that having Lawrence bring the money to them would be less suspicious because the police had seen Anderson. Anderson then directed Lawrence to bring $9,000 in cash that was hidden in the freezer to Cureton and LaQuita in a nearby park. He also told Lawrence to bring the puppy.

Lawrence testified at trial that she put the money in a newspaper, which she put inside a plastic bag, and that she then carried both the package and LaQuita's puppy toward

the park. Lawrence said she dropped the newspaper several times as she attempted to also hold the dog and at some point realized the money was missing. When she noticed that the money was gone, she said she called LaQuita right away and told her what had happened. As Lawrence was retracing her steps looking for the cash, Cureton arrived in a friend's car and demanded to know where the money was, saying to her that he "shot a motherf'er in the head for the money." He ordered Lawrence to get in the car, and they went to a friend's house. Inside, in the basement, Cureton screamed at Lawrence, punched her, threatened her, and questioned her about where the money was. Cureton eventually acquiesced to her request for a chance to find the money. Anderson and LaQuita picked up Lawrence and drove her to retrace her steps, but the search was unsuccessful.

When Lawrence returned to the house, Cureton took her behind a garage and punched her repeatedly, broke her nose, kicked her, choked her, and tied her up. He also made a phone call and instructed the person on the receiving end of the line to bring him "that thing." Cureton's brother arrived about ten minutes later and handed Cureton a gun. Cureton put the gun to Lawrence's head and told her it was her last chance.

Cureton, Lawrence, and LaQuita then got into the Curetons' parked car, and, under pressure from Cureton, she began making calls to family members. Lawrence first called her mother, saying she needed money to get out of a problem, but her mother was hesitant in light of Lawrence's past history of lying. She called her stepfather and told him that she needed money and was in trouble, but he did not offer

to provide money either. Finally, she reached her grandfather, who also had doubts about Lawrence's request. Cureton took the phone and spoke to Lawrence's grandfather, who then agreed to make a wire transfer of about $4,500. Cureton, Lawrence, and LaQuita then headed back to their apartment. Police officers contacted by Lawrence's family were present there, and Cureton was ultimately arrested and charged with interstate communication of a ransom request, attempted extortion, and two counts of possession of a firearm in furtherance of a crime of violence.

Before trial, Cureton's attorney moved in limine to bar any evidence that Cureton had stolen $9,500 at gunpoint from prospective drug buyers on June 12, 2010. The district court ruled that the evidence was relevant to Cureton's motive and allowed it.

A jury convicted Cureton on eight of the charged counts and found him not guilty on one count of drug distribution. The judge sentenced Cureton to concurrent 360-month terms for the three drug distribution convictions. Concurrent to that, the judge imposed a 120-month sentence on the felon in possession of a firearm count, a concurrent 240-month sentence for the interstate communication of a ransom request conviction, and another concurrent 240-month sentence for the attempted extortion count. Consecutive to these sentences, the judge imposed a sentence of 84 months for using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1) for the crime of violence of an interstate communication of a ransom request. The judge imposed another consecutive sentence of 300 months' imprisonment for using a firearm during a second or successive crime of violence in violation of 18 U.S.C. § 924(c)(1), this time for the crime of

Nos. 12-1250 & 12-1251                                    7

violence of using a firearm in connection with the attempted extortion. The result was a total sentence of 744 (360 + 84 + 300) months' imprisonment. Cureton appeals.

## II. ANALYSIS

### A. Evidence of Uncharged Robbery

Cureton first argues that the jury should not have been allowed to hear evidence that he took $9,500 at gunpoint from his drug customers on June 12, 2010. Cureton was not charged in this case with any crime for any of the events that took place on June 12, and he maintains that the evidence of the June 12 robbery of drug customers improperly suggested to the jury that he had a propensity for violence and for selling drugs. Therefore, he argues, Federal Rule of Evidence 404(b) precludes its admission. Where, as here, the defendant timely objected to the admission of the evidence before the district court, we review the decision to allow the evidence for an abuse of discretion. *United States v. Richards*, 719 F.3d 746, 758 (7th Cir. 2013).

The district court admitted the testimony of the June 12 incident in part on the basis that the story of attempted extortion and ransom could not be told otherwise. The court stated that Lawrence's story of losing $9,000 raised the question of why she was carrying that much cash, and also said that the story would not make any sense unless the jury was given background on how Cureton acquired the money. This explanation sounds like an "inextricably intertwined" rationale, a rationale which we now disfavor because it had become "overused, vague, and quite unhelpful." *See United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010). Instead, "[i]f evidence is not direct evidence of the crime itself,

8                                              Nos. 12-1250 & 12-1251

it is usually propensity evidence simply disguised as inextricable intertwinement evidence, and is therefore improper, at least if not admitted under the constraints of Rule 404(b)." *Id.* at 718.

Federal Rule of Evidence 404(b) provides that evidence of a prior bad act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence may be admissible for other purposes, however, including the purpose the government asserts here: motive. *See* Fed. R. Evid. 404(b)(2); *United States v. Spiller*, 261 F.3d 683, 689 (7th Cir. 2001).

The district court also ruled that the way Cureton acquired the $9,000 went to the issue of motive, a permissible reason under Rule 404(b). The district court recognized that the June 12 evidence was "prejudicial as it could be," but concluded it was not unlawfully prejudicial and was relevant. The evidence was admitted at trial, and the district court instructed the jury at the close of the evidence: "You have heard evidence that the defendant committed acts other than the ones charged in the indictment—specifically, that the defendant robbed Everett—that is Eddie—Sakosko at gunpoint ... . If you decide that he [robbed Sakosko] then you may consider this evidence to help you decide the defendant's motive for committing the acts charged in the indictment. You may not consider it for any other purpose. Keep in mind that the defendant, Thomas Cureton, is on trial here for the offenses charged in the indictment, not for the other acts."

Cureton maintains that the testimony regarding the June 12 events should not have been allowed to show his motive

Nos. 12-1250 & 12-1251                                             9

for the ransom and attempted extortion. First, he argues
there is no evidence that the money Lawrence took from the
freezer and was on her way to bring him in the park was the
same money Cureton obtained in the robbery. But it was cer-
tainly a permissible inference, and a strong one, that the
$9,000 Cureton stored in his freezer—not a place one nor-
mally keeps thousands of dollars in cash—came from the
robbery two days earlier.

Cureton also argues that the way he acquired the money
did not give him a greater motive to recover the $9,000 than
had he acquired the money in some other fashion. Instead,
he contends that the evidence of robbing his drug clients at
gunpoint suggested he was a person likely to use violence in
pursuit of money, and he argues that the testimony that per-
sons purchased crack cocaine from Cureton twice on June 12
served only to paint Cureton as someone with a propensity
to sell drugs. The government, on the other hand, argued at
trial that the robbery showed why Cureton needed to get
away from the police and showed his motive for extortion,
in that Cureton and LaQuita could not get away without the
$9,000 and desperately needed the money.

We have cautioned about the danger of applying Rule
404(b) too loosely to admit prior bad acts "without paying
close attention to both the legitimacy of the purpose for
which the evidence is to be used and the need for it." *United
States v. Miller*, 673 F.3d 688, 692 (7th Cir. 2012). In *Miller*, for
example, we ruled that evidence of a prior felony conviction
for possession of cocaine with the intent to distribute should
not have been admitted in a case where a defendant was
charged with the same crime eight years later, along with
other charges. While the earlier felony conviction was rele-

10                                    Nos. 12-1250 & 12-1251

vant to establish the defendant's status as a felon in light of a
felon in possession charge in the case, we ruled that the
"admission of the details" of the prior conviction violated
Rule 404(b). *Id.* at 700; *cf. United States v. Cunningham*, 103
F.3d 553, 556-57 (7th Cir. 1996) ("The greater the overlap be-
tween propensity and motive, the more careful the district
judge must be about admitting under the rubric of motive
evidence that the jury is likely to use instead as a basis for
inferring the defendant's propensity, his habitual criminali-
ty, even if instructed not to. But the tool for preventing this
abuse is Rule 403, not Rule 404(b)."). Here too, it is not clear
that the details of how Cureton obtained the $9,000 were rel-
evant. Defense counsel argued before trial that all that mat-
tered was that Cureton had $9,000, and that the circumstanc-
es of how he obtained the money were not relevant to the
matters at trial and would only inflame the jury. In addition,
the government put on three witnesses at trial to testify that
Cureton had taken the money after a drug deal; why three
witnesses were necessary is also not clear.

Ultimately we need not decide if the evidence was
properly admitted because even if it was not, we would next
look to see whether its admission was nonetheless harmless.
*United States v. Stevenson*, 656 F.3d 747, 751 (7th Cir. 2011). In
assessing whether an error is harmless, we ask whether an
average juror would find the prosecution's case significantly
less persuasive without the improper evidence. *Miller*, 673
F.3d at 700. The burden of demonstrating harmlessness rests
with the government. *O'Neal v. McAninch*, 513 U.S. 432, 438-
39 (1995); *United States v. Robinson*, 724 F.3d 878, 888 (7th Cir.
2013).

Nos. 12-1250 & 12-1251    11

In this case, the evidence that Cureton kidnapped and ransomed Lawrence was overwhelming and essentially unchallenged. Lawrence testified in detail about how Cureton treated her, his plan to extort money from her family members, and the calls she made to her family. Cureton's counsel did not cross examine Lawrence at trial. The admission of the challenged evidence did not prejudice Cureton on the counts of attempted extortion or communication of a ransom request.

We also find the admission of the challenged evidence harmless on the drug distribution counts. The three controlled buys that led to convictions were all supported by the testimony of a confidential informant who testified at trial. In addition, the jury heard that law enforcement officials were present while the informant and Cureton made phone calls to set up the deals and that they watched as Cureton left his home and went to the agreed upon meeting place during each of the deals. Another witness, William Bosley, testified that he watched the second deal between Cureton and the confidential informant in Bosley's apartment, and Cureton's fingerprints were found on an electronic scale and a bag containing pistols that Bosley said Cureton had hidden in Bosley's ceiling tiles. Notably too, some of the "buy money" provided to the informant for the sole purpose of buying drugs during the first sale was found in Cureton's wallet seven days later. That the jury acquitted Cureton on one of the drug distribution counts also suggests it was not swayed by the June 12 evidence. Under the circumstances of this case, we conclude that the admission of the challenged evidence was harmless.

12                                    Nos. 12-1250 & 12-1251

### B. Multiple 18 U.S.C. § 924(c)(1) Convictions

Cureton pointed a single gun at Lawrence a single time. For that single use of a firearm, he was convicted twice of violating 18 U.S.C. § 924(c)(1). Cureton, however, maintains that his conduct in this case can support only one conviction for violating § 924(c)(1).

Section 924(c)(1) provides that:

> any person who, during and in relation to any crime of violence or drug trafficking crime … uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime

receive a term of imprisonment of not less than 5 years. 18 U.S.C. § 924(c)(1)(A)(i). That minimum term of imprisonment is mandatory. *See id.*; *United States v. States*, 652 F.3d 734, 744 (7th Cir. 2011). The statute further provides that "[i]n the case of a second or subsequent conviction under this subsection," the defendant shall be sentenced to a term of imprisonment of at least 25 years, another sentence for which judges have no discretion. 18 U.S.C. § 924(c)(1)(C)(i). Each term imposed for a conviction for violating § 924(c)(1)(C) must run consecutive to the term for any other conviction. *See id.*; *States*, 652 F.3d at 744.

Here, the government requested, and the district court imposed, two separate § 924(c) convictions on the basis that Cureton used the gun during the commission of two predicate "crimes of violence": one, the interstate communication of a ransom request, and the other, attempted extortion. (Cureton does not contest that both crimes are "crimes of vio-

Nos. 12-1250 & 12-1251                                    13

lence" under the statute. Nor does he contest that he used the gun "during and in relation to" or "in furtherance of" the predicate crimes.) The offenses of communication of an interstate ransom request and attempted extortion were premised on the exact same conduct—the telephone calls to Lawrence's relatives demanding money for her release. The government agrees that Cureton committed the two predicate offenses simultaneously and that there is no distinction in the conduct that gave rise to the two predicate offenses. Nor is there any distinction in the use of the firearm, as Cureton pointed the gun at Lawrence a single time.

But because the predicate offenses of interstate communication of a ransom request and attempted extortion have different elements and are distinct offenses, the government maintains that two § 924(c) convictions are proper here. It is true that each predicate offense contains an element that the other does not, and neither is a lesser included offense of the other; Cureton does not maintain that his convictions for both interstate communication of a ransom request and attempted extortion violate the Double Jeopardy Clause of the United States Constitution. *Cf. Blockburger v. United States*, 284 U.S. 299, 304 (1932); *United States v. Loniello*, 610 F.3d 488, 491 (7th Cir. 2010). With no Double Jeopardy violation, the government maintains the two § 924(c) convictions should stand.

The absence of a Double Jeopardy problem does not end the inquiry, however. The issue here is one of statutory interpretation, not of constitutional reach, so the question we focus on is whether a defendant may receive multiple 18 U.S.C. § 924(c) convictions for a single firearm use when the predicate offenses are also committed simultaneously and

14                                  Nos. 12-1250 & 12-1251

without any distinction in conduct. We review this question of statutory interpretation de novo. *See United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002).

Although the government contends otherwise, our circuit has not yet resolved this question. So-called "unit of prosecution" questions have long arisen before the courts. Does a baker who sells four loaves of bread on a single Sunday violate a prohibition on working on Sundays once, or four times? Lord Mansfield wrote for a unanimous court in *Crepps v. Durden,* 98 Eng. Rep. 1283 (K.B. 1777), that doing so constitutes only one offense because "[h]ere, repeated offenses are not the object which the Legislature had in view in making the statute: but singly, to punish a man for exercising his ordinary trade and calling on a Sunday." *Id.* at 1287. In a similar vein our Supreme Court ruled that transporting two women in the same car on the same trip constituted only one violation of the Mann Act's prohibition on transporting in interstate commerce "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose." *Bell v. United States,* 349 U.S. 81, 82 (1955). The Court stated that the statute did not contain a clear expression of the desired unit of prosecution, and it reasoned that when "Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Id.* at 84.

Indeed, it is Congress who establishes and defines offenses, and whether a particular course of conduct involves one or more distinct offenses under a statute depends on Congress's choice. *Sanabria v. United States,* 437 U.S. 54, 69-70 (1978). That is, the legislature defines the unit of prosecution.

*Nat'l Ass'n of Home Builders v. Occupational Safety & Health Admin.*, 602 F.3d 464, 467 (D.C. 2010). Our task here, determining the "unit of prosecution" in a § 924(c) case, i.e., "the minimum amount of activity for which criminal liability attaches," is not a straightforward one. *See United States v. Moses*, 513 F.3d 727, 731 (7th Cir. 2008) (citation omitted); *see also Callanan v. United States*, 364 U.S. 587, 597 (1961) (describing unit of prosecution as "whether conduct constitutes one or several violations of a single statutory provision"). A conviction under the statute depends upon an underlying crime of violence or drug trafficking crime, but "§ 924(c) creates an offense distinct from the underlying federal felony." *Simpson v. United States*, 435 U.S. 6, 10 (1978).

Following the Supreme Court's Mann Act decision in *Bell*, we have ruled that a defendant may not be separately charged with unlawful possession of multiple stolen firearms under 18 U.S.C. § 922(j)[1] when the firearms were acquired at the same time and stored at the same location. *McFarland v. Pickett*, 469 F.2d 1277, 1279 (7th Cir. 1972); *see also Moses*, 513 F.3d at 731; *United States v. Buchmeier*, 255 F.3d 415, 422 (7th Cir. 2001). That is, when a defendant's possession of multiple firearms is "simultaneous and undifferentiated," only one § 922(j) violation may be charged regardless of the quantity of firearms possessed. *Buchmeier*, 255 F.3d at 422. Likewise, a single act of gun possession can result in only one conviction under 18 U.S.C. § 922(g), even if

---

[1] That statute makes it unlawful to, among other things, "receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition" that has been in interstate or foreign commerce, "knowing or having reasonable cause to believe that the firearm or ammunition was stolen." 18 U.S.C. § 922(j).

the defendant violated § 922(g) in multiple ways or possessed multiple firearms at the same time. *United States v. Bloch*, 718 F.3d 638, 643 (7th Cir. 2013) (ruling that convictions for both possession of firearm by a felon in violation of § 922(g)(1) and by a person with a misdemeanor domestic violence conviction in violation of § 922(g)(9) were improper when there was only one gun possession, and holding that only a single conviction was appropriate); *see also United States v. Parker*, 508 F.3d 434, 440 (7th Cir. 2007) ("§ 922(g) cannot support multiple convictions based on a single firearm possession because the allowable unit of prosecution is the incident of possession, not the defendant's membership in a class (or classes) of persons disqualified from possession.").

We have also held that distinctly committed crimes, even those committed on the same day, can support multiple § 924(c) violations and the consecutive sentences that result. *United States v. Paladino*, 401 F.3d 471, 478-79 (7th Cir. 2005). So where an armed defendant sold crack to one person in the morning, and after arming himself again sold crack to another person in the afternoon, we said, "These were unquestionably separate drug offenses, and therefore his carrying of a gun during each of them constituted two violations of section 924(c)." *Id.* And we affirmed an enhancement for the use of a bomb to rob a bank even though the defendant had been convicted under § 924(c)(1)(A) for the use of a firearm during the same bank robbery, reasoning that the use of a bomb was substantively and substantially different than the use of a firearm. *United States v. White*, 222 F.3d 363, 375-76 (7th Cir. 2000). In reaching that decision, we looked in part to the fact that 18 U.S.C. § 924(c) provides for a separate offense when a defendant uses a destructive device such as a

bomb to commit a crime. *See id.* at 375 (discussing 18 U.S.C. § 924(c)(1)(B)(ii)). Since the defendant was convicted under § 924(c)(1)(A) for using a firearm, that statute's five-year sentence for using a firearm did not account for the use of the bomb and the enhancement was proper. *Id.*

Unlike *Paladino* or *White*, Cureton's case involves two predicate crimes that occurred simultaneously and without any distinction in conduct along with a single use of a firearm. The government maintains that we determined in *United States v. Cappas*, 29 F.3d 1187 (7th Cir. 1994), that multiple convictions are permissible in such a situation. But we disagree that *Cappas* resolved the question we have before us now. The defendant in *Cappas* was charged with multiple counts, including multiple § 924(c) counts. One of those § 924(c) counts, count 12, charged that he used a gun in relation to two predicate offenses: a drug conspiracy and an extortion.

Consistent with our reasoning in cases like *McFarland*, we stated in *Cappas* that the mere use of multiple guns in a single drug conspiracy could not support multiple convictions under § 924(c). *Id.* at 1189. Because another count alleged that Cappas violated § 924(c) by using a gun in connection with the conspiracy, the government argued that the jury based its § 924(c) conviction in count 12 on the use of a gun in connection with extortion, not in connection with the conspiracy. It was in this context that we made the statements the government seizes upon now: "While a defendant cannot be convicted twice under § 924(c) for using two guns in connection with the *same* drug trafficking or violent offense, separate convictions are permissible so long as the court's instructions require the jury to connect each gun to a *separate*

18                                      Nos. 12-1250 & 12-1251

predicate offense. And by 'separate offense,' we mean no more than that the two cannot be the same offense for double jeopardy purposes." *Id.* at 1190 (citations omitted). But we followed that statement with, "Therefore, if the jury finds that a defendant used *one gun* in connection with a narcotics distribution count, and *another gun* in connection with a general conspiracy (of which that distribution was a part), he may be convicted on two § 924(c) charges." *Id.* (emphases added).

*Cappas* did not, however, present us with the issue we have now, that of simultaneous predicate offenses and a single use of a single gun. Read out of context, some of our language in *Cappas* might suggest that so long as there are different predicate offenses, like here, multiple § 924(c) convictions can result. But we clearly did not hold that multiple § 924(c) convictions may result from predicate offenses committed simultaneously and without any differentiation in conduct, and a single use of a firearm, as that was not an issue before us there. And our statement that using "one gun" in connection with a distribution count and "another gun" in connection with a general conspiracy makes clear that we were not discussing a single use of a firearm as we have here. *See id.* at 1190.

Nor did we resolve the issue before us today in *United States v. Curtis*, 324 F.3d 501 (7th Cir. 2003), another case to which the government points. *Curtis* involved a challenge to convictions under 18 U.S.C. § 924(j), which makes it an offense to "cause[ ] the death of a person through the use of a firearm" while "in the course of a violation of" § 924(c). The question in *Curtis* was whether the defendants could be convicted of two violations of 18 U.S.C. § 924(j) for two separate

killings where both § 924(j) counts had the same predicate § 924(c) violation (the same drug conspiracy). We ruled that the two § 924(j) convictions were proper, one for each murder. *Id.* at 508-09. That interpretation of § 924(j) makes sense and is not at all inconsistent with Cureton's position, as the defendants in *Curtis* caused the death of two different persons on two different days.

So we have not yet confronted whether a defendant like Cureton may be convicted multiple times of violating § 924(c) for the single use of a single gun where the underlying predicate offenses involve the exact same conduct. The statute makes one a criminal if he "uses," "carries," or "possesses" a firearm "during and in relation to any crime of violence or drug trafficking crime." The statute does not punish the mere use, carriage, or possession of a firearm; to do so would run afoul of the Second Amendment. *See District of Columbia v. Heller*, 554 U.S. 570 (2008). Nor is it enough to look simply at the predicate offense, as the government argues we should do. Section 924(c)(1) imposes its punishment based on the use of a firearm (and provides for increased punishment based on how the firearm is used)—not on the nature of the predicate offense. So the unit of prosecution is the use, carriage, or possession of a firearm during and in relation to a predicate offense. *See United States v. Phipps*, 319 F.3d 177, 184 (5th Cir. 2003); *see also United States v. Anderson*, 59 F.3d 1323, 1328 (D.C. Cir. 1995) (en banc) (reasoning that Congress intended to "penalize the choice of using or carrying a gun *in committing a crime*" and citing statement of amendment sponsor Senator Mansfield saying, "[T]his bill provides for the first time a separate and additional penalty for the mere act of choosing to use or carry a gun in committing a crime under Federal law," 115 Cong. Rec. at 34,838

20                          Nos. 12-1250 & 12-1251

(Nov. 19, 1969)); *United States v. Camps*, 32 F.3d 102, 108 (4th Cir. 1994) (stating that § 924(c) does not criminalize the underlying predicate offense but rather "proscribes, as a separate and distinct offense, the use or carry of a firearm during the commission of or in relation to these predicate offenses").

Because Cureton only used a firearm once, in the simultaneous commission of two predicate offenses, we agree with him that he may only stand convicted of one violation of § 924(c). In doing so, we agree with reasoning like that in the District of Columbia Circuit's decision in *United States v. Wilson*, 160 F.3d 732 (D.C. Cir. 1998). There, a defendant killed a witness scheduled to testify at a trial. For that single act, the defendant was convicted of two violations of § 924(c) predicated on the crimes of first-degree murder and killing a witness with the intent to prevent him from testifying. But the circuit court vacated one of the § 924(c) convictions, reasoning that however many crimes may have been committed by shooting the potential witness, there was only one use of a firearm. *Id.* at 749-50. The court reiterated its conclusion in an earlier decision that the statute's purpose was to penalize the choice of using or carrying a gun in committing a crime. *See id.* (citing *Anderson*, 59 F.3d at 1333).

Here too, there was only one use of a firearm along with simultaneously committed predicate offenses. That is, there was only one choice to use a gun in committing a crime. With no clear indication that Congress intended more than one § 924(c)(1) punishment to result, we conclude that the best interpretation of the statute is one that authorizes only one § 924(c)(1) conviction in such circumstances. *See, e.g., United States v. Johnson*, 25 F.3d 1335, 1338 (6th Cir. 1994)

Nos. 12-1250 & 12-1251                                                      21

("[A] sensible construction dictates that possession of one or
more firearms in conjunction with predicate offenses involv-
ing simultaneous possession of different controlled sub-
stances should constitute only one offense under § 924(c)(1),
and the sentences under § 924(c)(1) should be for one offense
only."). We join our sister circuits who have reached the
same conclusion. *See id.*; *Phipps*, 319 F.3d at 186-88 (conclud-
ing § 924(c)(1) only authorized one conviction for a single
use of a single firearm during the commission of multiple
predicate offenses, turning in part to the rule of lenity); *Unit-
ed States v. Finley*, 245 F.3d 199, 207 (2d Cir. 2001)[2]; *Wilson*,
160 F.3d at 749-50.[3]

---

[2]  The Second Circuit's approach suggests that it would find only one §
924(c)(1) conviction appropriate for a single possession of a firearm pred-
icate offenses where predicate offenses may not be simultaneous, but
were "nearly so." *See Finley*, 245 F.3d at 207; *see also United States v. Wal-
lace*, 447 F3d 184, 189 n.2 (2d Cir. 2006). We need not decide today the
situation of predicate offenses that were not simultaneously committed.
We note that the Third Circuit's decision in *United States v. Casiano*, 113
F.3d 420 (3d Cir. 1997), a case to which the government points, seems to
involve that situation. In *Casiano*, the court affirmed the imposition of
two § 924(c)(1) convictions for the use of a firearm during predicate of-
fenses of kidnapping and carjacking. The court spoke of a "criminal
course of conduct from the carjacking (the first predicate offense) to the
kidnapping (the second predicate offense)," *id.* at 424, suggesting that
while the predicate offenses were committed during the same course of
conduct, they were not committed simultaneously like in our case.

[3]  Section 924(c)(1) imposes a mandatory sentence for a "second or sub-
sequent conviction," and one might also be inclined to argue that the fact
that Cureton's predicate offenses were committed simultaneously means
he did not have a second or subsequent conviction. The Supreme Court
in *Deal v. United States*, 508 U.S. 129 (1993), considered the meaning of
"conviction" in § 924(c) and ruled the term means a finding of guilt that

ond conviction and its mandatory twenty-five year sentence, and then subtract twenty-five years from his 744-month sentence. The government's position is that we should remand Cureton's case for resentencing.

"A district judge's sentencing decision ordinarily concerns the entire 'sentencing package.'" *United States v. Pennington*, 667 F.3d 953, 958 n.3 (7th Cir. 2012) (citing *United States v. Smith*, 103 F.3d 531, 533 (7th Cir. 1996)); *see also Smith*, 103 F.3d at 533 ("[W]hen part of a sentence is vacated the entire sentencing package becomes 'unbundled' and the judge is entitled to resentence a defendant on all counts."). The district court's comments at sentencing reflect its intent that Cureton receive a significant sentence:

> [T]o tie up a young woman and kick, beat her, and threaten to cut her, and to bring other people in to frighten her, and then to call her family, just a horrible, horrible, horrible experience for everyone involved is—is cold and vicious almost beyond description. I would have given you a life sentence if the statute authorized it irrespective of what the guidelines provided for in this case.

We cannot be assured that had the district court known Cureton could be convicted of only one § 924(c)(1) count, its consideration of the sentence it thought appropriate and that met the requirements of 18 U.S.C. § 3553(a) would have meant a sentence of 744 months minus twenty-five years. As a result, we vacate Cureton's sentence and remand for resentencing, and we decline to restrict the court's consideration on resentencing to simply excising the twenty-five year sentence as Cureton seeks. *Cf. Bloch*, 718 F.3d at 643-44 (remanding for defendant to be resentenced on single count of con-

## CERTIFICATE OF SERVICE

On this, the 5th day of February, 2014, I caused to be served a copy of the foregoing **NOTICE OF SUPPLEMENTAL AUTHORITY [US v. Cureton]** by US Mail on:

Jonathan Michael Eisenberg
Office of the California Attorney General
Government Law Section
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
213-897-6505
213-897-1071 (fax)
jonathan.eisenberg@doj.ca.gov
LEAD ATTORNEY / ATTORNEY TO BE NOTICED representing Kamala D Harris (Defendant).

Executed this the 5th day of February, 2014 in Los Angeles County by:

Charles Nichols