1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  CHARLES NICHOLS,                    Case No. CV 11-9916 SJO (SS)

12            Plaintiff,
                                        **REPORT AND RECOMMENDATION OF**
13        v.
                                        **UNITED STATES MAGISTRATE JUDGE**
14  KAMALA D. HARRIS, in her
    official capacity as Attorney
15  General of California,

16            Defendant.

17

18        This Report and Recommendation is submitted to the Honorable

19  S. James Otero, United States District Judge, pursuant to 28

20  U.S.C. § 636 and General Order 05-07 of the United States

21  District Court for the Central District of California.

22

23                                **I.**

24                           **INTRODUCTION**

25

26        This civil rights action purports to challenge the

27  constitutionality of seventeen California statutes that regulate

28  the open carry of firearms and the issuance of firearm licenses

solely as they relate to open carry. Plaintiff, a California resident proceeding pro se, filed the operative Second Amended Complaint pursuant to 42 U.S.C. § 1983 on March 29, 2013. ("SAC," Dkt. No. 83). The Court denied Plaintiff's Motion for a Preliminary Injunction on July 3, 2013. ("PI Order," Dkt. No. 108). On July 18, 2013, the Court denied Plaintiff's ex parte application for a stay pending appeal of the denial of his preliminary injunction motion. (Dkt. No. 121). Plaintiff voluntarily dismissed Defendants City of Redondo Beach ("CRB") and Does 1-10 on August 5, 2013, leaving only his claims against Defendant Kamala D. Harris in her official capacity as the Attorney General of the State of California. (Dkt. No. 125).

On November 8, 2013, Plaintiff filed a Motion for Partial Summary Judgment, (Dkt. No. 131), including a Memorandum in support of the Motion, ("MSJ," Dkt. No. 132), and the Declaration of Plaintiff Charles Nichols. ("Nichols MSJ Decl.," Dkt. Nos. 133-34). Plaintiff also lodged a Statement of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule 56-1. ("SUF," Dkt. No. 136). On December 2, 2013, Defendant filed a Memorandum in Opposition to the MSJ, (Dkt. No. 140), including a Statement of Genuine Disputes, ("SGD," Dkt. No. 140.1), and the Declaration of Jonathan M. Eisenberg. ("Eisenberg MSJ Decl.," Dkt. No. 140.2). The following day, December 3, 2013, Defendant filed a Notice of Errata and a corrected Memorandum in Opposition to the MSJ. ("MSJ Opp.," Dkt. No. 141). On December 9, 2013, Plaintiff filed a Reply in support of the MSJ, ("MSJ Reply," Dkt. No. 143), and a "reply" to Defendant's Statement of Genuine

2

Disputes.   ("Reply SGD," Dkt. No. 144).   On the same day,
Plaintiff also filed Objections to Defendant's Notice of Errata,
(Dkt. No. 145), and Objections to the Declaration of Jonathan M.
Eisenberg.[1]  (Dkt. No. 146).

On November 12, 2013, Defendant filed a Motion for Judgment
on the Pleadings, (Dkt. No. 129), including a Memorandum in
support of the Motion, ("MJP," Dkt. No. 129.1), and a Request for
Judicial Notice.   ("MJP RJN," Dkt. No. 129.2).   On November 26,
2013, Plaintiff filed an Opposition to the MJP, ("MJP Opp.," Dkt.
No. 139), and Objections to Evidence.[2]  ("P MJP Evid. Obj.," Dkt.

---

[1]  Plaintiff objected to the Notice of Errata on the ground that
Defendant's corrected Memorandum in Opposition to the MSJ was
untimely, as it was filed the day after the Court's deadline for
opposing the MSJ. (Dkt. No. 145 at 2-3). However, the corrected
Opposition is substantively similar to the inadvertently-filed
earlier version, which Plaintiff concedes was timely. (Id.).
Accordingly, Plaintiff's Objections to the Notice of Errata are
overruled.

Plaintiff's Objections to the Eisenberg Declaration are
directed to the exhibits attached to the declaration, which
consist of: (1) the Los Angeles County Sheriff's Department's
Concealed Weapons Licensing Policy, (2) a brief biography of
former Assistant Sheriff Paul Tanaka, available at
www.paultanaka.com, and (3) a web article describing the instant
litigation, including comments, available at http://lagunaniguel-
danapoint.patch.com. (See Dkt. No. 146 at 1-2) (citing Eisenberg
Decl., Exhs. A-C). However, the exhibits did not affect the
outcome of the Court's recommendation. Accordingly, Plaintiff's
Objections to the Eisenberg Declaration and its exhibits are
overruled. See PacifiCorp v. Northwest Pipeline GP, 879 F. Supp.
2d 1171, 1194 n.7 & 1214 (D. Or. 2012) (declining to address
evidentiary objections where the court would reach the same
conclusions whether or not it considered the challenged
materials).

[2] Plaintiff objects to Exhibit A of Defendant's RJN, which is a
copy of CRB's Opposition to Plaintiff's Ex Parte Application for
Stay Pending Appeal, on the ground that "[t]he facts [asserted in
CRB's Opposition brief] and exhibits attached to [the Opposition]

No. 138).  Defendant filed a Reply in support of the MJP on December 3, 2013.  ("MJP Reply," Dkt. No. 142).  Plaintiff subsequently filed five separate Notices of Supplemental Authority, each of which included a supplemental brief and a separately-filed declaration in addition to a copy of a recent court decision.[3]  (Dkt. No. 157 at 2).

_____

. . . were and are very much in dispute . . . ."  (P MJP Evid. Obj. at 1).  The exhibits attached to CRB's Opposition are copies of the criminal complaint in CRB's misdemeanor action against Plaintiff and the court minutes in that matter.  (See MJP RJN, Exh. A).  While contested facts are not properly subject to judicial notice, the Court may take judicial notice of the criminal complaint and court minutes as they are public records "whose accuracy cannot reasonably be questioned."  See Louis v. McCormick & Schmick Restaurant Corp., 460 F. Supp. 2d 1153, 1155, fn.4 (C.D. Cal. 2006)  ("Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of the records of state courts, the legislative history of state statutes, and the records of state administrative agencies.").  Furthermore, Plaintiff does not deny that he was charged with carrying a weapon into a City of Redondo Beach park and that he pled nolo contendere to the misdemeanor violation.  To that extent, Plaintiff's Objections are overruled and Defendant's Request for Judicial Notice is GRANTED.

[3] Defendant's Objections to the supplemental briefs accompanying Plaintiff's Notices of Supplemental Authority are well taken.  "Filing a notice of supplemental authority to inform the Court of a new judicial opinion that has been issued is appropriate, but it is an improper occasion to argue outside the pleadings."  Rosenstein v. Edge Investors, L.P., 2009 WL 903806 at *1 n.1 (S.D. Fla. Mar. 30, 2009); see also C.D. Cal. L.R. 7-10 (prohibiting further briefing after a reply is filed absent written authorization from the Court); Hagens Berman Sobol Shapiro LLP v. Rubinstein, 2009 WL 3459741 at *1 (W.D. Wash. Oct. 22, 2009) (notice of supplemental authority improper "because it contained argument regarding the case" submitted for the court's review).  In sum, filing a Notice of Supplemental Authority with a copy of or a citation to a recently published case is proper; including a memorandum with the Notice explaining why the case is relevant is not.  However, the largely repetitive arguments presented in the briefs accompanying Plaintiff's Notices of Supplemental Authority did not affect the outcome of the Court's

1    For the reasons discussed below, it is recommended that

2   Plaintiff's Motion for Partial Summary Judgment be DENIED.  It is

3   further recommended that Defendant's Motion for Judgment on the

4   Pleadings be GRANTED and that this action be DISMISSED WITH

5   PREJUDICE.

6

7                               **II.**

8        **FACTUAL ALLEGATIONS OF THE SECOND AMENDED COMPLAINT**

9

10    As amended by Plaintiff's voluntary dismissal of City of

11  Redondo Beach and the Doe Defendants, the SAC sues only Defendant

12  Kamala D. Harris in her official capacity as the Attorney General

13  of the State of California.  (SAC at 1-2).  The SAC raises a

14  facial challenge to the constitutionality of seventeen California

15  statutes that Plaintiff contends violate the fundamental right to

16  openly carry loaded and unloaded firearms.[4]  (Id. at 25-30; see

17

18  recommendation.  Accordingly, while it would be proper to strike
    Plaintiff's supplemental briefs, the Court exercises its
19  discretion instead to overrule Defendant's Objections as moot.
    PacifiCorp, 879 F. Supp. 2d at 1194 n.7 & 1214.
20

21  [4] Plaintiff purports to assert both facial and "as applied"
    challenges to the California statutes at issue in the SAC.  (See
22  SAC at 26-30).  A "claim is 'facial' [if] . . . it is not limited
    to plaintiffs' particular case, but challenges the application of
23  the law more broadly . . . ."  John Doe No. 1 v. Reed, __ U.S.
    __, 130 S. Ct. 2811, 2817 (2010).  The SAC does not allege that
24  the challenged statutes are unconstitutional due to the
    particular manner in which they were applied to Plaintiff.
25  Indeed, Plaintiff does not allege facts showing that the majority
    of the statutes were enforced against him at all and thus
26  provides no facts for an "as applied" challenge.  Rather, the
    gravamen of Plaintiff's action is that the laws are
27  unconstitutional because they generally inhibit the purported
    right to open carry.  Accordingly, as the Court has already
28

                                 5

1    also PI Order at 4 ("The Court notes at the outset that Plaintiff

2    is mounting a facial challenge.")).

3

4        According to the SAC, on May 21, 2012, Plaintiff openly

5    carried an unloaded firearm in a beach zone within City of

6    Redondo Beach as part of a peaceful protest in support of the

7    open carry movement. (SAC at 19-20). CRB Police Officer Heywood

8    took the firearm from Plaintiff without Plaintiff's permission

9    and conducted a chamber check to determine if it was loaded.

10   (Id. at 19). Officer Heywood and an unidentified officer

11   informed Plaintiff that he was in violation of city ordinances

12   prohibiting the carrying of firearms in public areas and seized

13   his firearm and carrying case. (Id. at 20). The CRB City

14   Prosecutor later filed a misdemeanor charge against Plaintiff for

15   carrying a firearm in a city park in violation of a city

16   ordinance.[5] (Id.).

17

18       Also on May 21, 2012, CRB Police Chief Leonardi informed

19   Plaintiff that his request for an application and license to

20   openly carry a loaded handgun could not be approved. (Id. at

21   21). Leonardi's email explained that state law (1) prohibits

22   municipalities in counties with populations exceeding 200,000

23   persons from issuing open carry licenses and (2) limits a

24   ─────────────────────────────────────────

25   found, Plaintiff's claims are facial, not "as applied,"
     challenges to the relevant state statutes. (PI Order at 4).

26   [5] On May 13, 2013, Plaintiff entered a plea of nolo contendere to
     violating the CRB anti-carrying ordinance and was found guilty.

27   (See RJN, Exh. A at 16). The Court will cite to the exhibits in
     Defendant's RJN as though each separate exhibit were

28   consecutively paginated.

municipality's authority to issue any state handgun license to that city's residents only. (Id.). Because CRB is located in Los Angeles County, which has a population exceeding 200,000, and Plaintiff is not a resident of CRB, Plaintiff was unable to secure an open carry license from CRB. (Id.).

Plaintiff generally alleges that in addition to the incident on May 21, 2012, he "has frequently and countless times violated California Penal Code Section 25850, the Redondo Beach City Ordinances and other California statutes prohibiting firearms from being carried in non-sensitive public places." (Id. at 22). Plaintiff states that he will continue to "openly carry a loaded holstered handgun, loaded rifle and loaded shotgun," as well as unloaded firearms, in public places in CRB and around the state of California. (Id. at 23). Plaintiff specifically alleges that he will openly carry a firearm on August 7, 2013 in CRB and Torrance and on the seventh day of every month thereafter. (Id. at 22).

**III.**

**PLAINTIFF'S CLAIMS**

The SAC raises a single, multi-faceted claim under the Second, Fourth and Fourteenth Amendments against the California Attorney General. (SAC at 25-30). At issue are three California statutes that collectively prohibit, subject to numerous exceptions, the open carry of loaded and unloaded firearms and handguns in public, and fourteen statutes that govern the

issuance of licenses to carry concealable firearms to the extent that they infringe on the alleged "fundamental right" to open carry. (Id.). Plaintiff emphasizes that "[n]one of his challenges should be construed as challenging any California statute as it pertains to the carrying of a weapon concealed on one's person in a public place." (Id. at 29). Instead, Plaintiff appears to claim that the Second Amendment not only extends beyond the home, but also affirmatively requires states to authorize the open carry of firearms. (See id. at 27).

Specifically, the SAC challenges California Penal Code section 25850, which prohibits carrying a loaded firearm on the person or in a vehicle while in any public place or on any public street and authorizes peace officers to conduct warrantless chamber checks of any firearm carried by a person in a public place. (Id. at 26-28) (citing Cal. Penal Code § 25850).[6]

---

[6] California Penal Code section 25850 provides, in relevant part:

(a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

Similarly, Plaintiff also challenges California's prohibitions on openly carrying unloaded handguns and firearms in public places.[7] (Id. at 28) (citing Cal. Penal Code §§ 26350 & 26400).  Finally, Plaintiff challenges California's firearm licensing regime to the extent that it infringes on the right to open carry.  (SAC at 29) (citing Cal. Penal Code §§ 26150, 26155, 26160, 26165, 26175, 26180, 26185, 26190, 26200, 26202, 26205, 26210, 26215 & 26220). However, although Plaintiff summarily lists nearly every statute in the chapter of California's Penal Code governing the issuance of licenses to carry concealable firearms, the only provisions

---

Cal. Penal Code § 25850.

[7] California Penal Code section 26350 provides in relevant part:

> A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following:
>
> > (A) A public place or public street in an incorporated city or city and county.
> >
> > (B) A public street in a prohibited area of an unincorporated area of a county or city and county.
> >
> > (C) A public place in a prohibited area of a county or city and county.

Cal. Penal Code § 26350(a)(1) (emphasis added).  Subsection 26350(a)(2) prohibits carrying an "exposed or unloaded handgun inside or on a vehicle, whether or not on his or her person" in any of the same areas.  Id. § 26350(a)(2) (emphasis added).

California Penal Code section 26400 provides in relevant part that "[a] person is guilty of carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county."  Cal. Penal Code § 26400(a) (emphasis added).

specifically relating to open carry that the SAC squarely addresses concern the population cap on counties that may issue open carry licenses.[8]  (See SAC at 29).  Sections 26150 and 26155 respectively provide that where the population of the county is less than 200,000 persons, a county sheriff or head of a municipal police department may issue "a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person."  Cal. Penal Code §§ 26150(b)(2) & 26155(b)(2); (see also SAC at 29).

Plaintiff asserts four primary arguments to support his claims.  First, Plaintiff alleges that the "Second Amendment invalidates [all of the challenged] California Statutes to the extent they prevent private citizens who are not otherwise barred from exercising their Second Amendment Right (examples of prohibited persons include convicted felons, mentally ill, etc.) from openly carrying firearms in non-sensitive public places, loaded and unloaded, for the purpose of self-defense and for other lawful purposes."  (SAC at 27).  Second, Plaintiff alleges that Section 25850(b) violates the Fourth Amendment by authorizing peace officers to inspect openly carried firearms to determine if they are loaded, and to arrest any person who does not consent to a chamber check, without a warrant.  (Id. at 26).

---

[8] As noted above, Plaintiff has limited his suit solely to laws infringing on the "right" to open carry and is not challenging California's firearms scheme in its entirely.  (SAC at 29).  Accordingly, statutory provisions requiring applicants for firearms licenses to meet certain conditions, which Plaintiff does not specifically identify, are relevant only to the extent that they "pertain to licenses to carry firearms openly."  (Id. at 29-30).

Third, Plaintiff raises a Fourteenth Amendment equal protection challenge to Sections 26150 and 26155 because they "restrict licenses to openly carry a loaded handgun only to persons [who reside] within counties of a population of fewer than 200,000 persons which is [sic] valid only in those counties . . . ." (Id. at 29).   Fourth, Plaintiff alleges that Section 25850's prohibition on loaded open carry of weapons is unconstitutionally vague.[9]  (Id. at 28).

Plaintiff seeks declaratory and injunctive relief prohibiting the enforcement of the challenged California statutes "to the extent that [they are] applied to prohibit private citizens who are otherwise qualified to possess firearms" from openly carrying loaded and unloaded firearms "on their own property, in their vehicles and in non-sensitive public places," or "prohibit or infringe private citizens" from obtaining licenses to engage in these activities. (Id. at 36-38).

\\

\\

---

[9]  Plaintiff alleges that Section 25850 is unconstitutionally vague for three reasons.  First, Plaintiff claims that it is vague because a "reasonable person would not conclude that either his private residential property or the inside of his motor vehicle is a public place." (SAC at 27).  Second, it is vague because exceptions to the prohibition on open carry are "scattered throughout the California Penal Code to such an extent that . . . a reasonable person would have to spend days searching through the California statutes and case law and still be uncertain as to whether or not a particular act . . . is in violation of Section 25850." (Id. at 28).  Third, Plaintiff claims the statute is vague because "[m]ere possession of matching ammunition cannot make an unloaded handgun [or firearm] 'loaded.'"  (Id.).

## IV.

## THE PARTIES' MOTIONS

**A.   Plaintiff's Motion For Partial Summary Judgment**

Plaintiff's MSJ challenges the constitutionality only of Sections 25850, 26350 and 26400, which collectively prohibit the open carry of loaded and unloaded firearms and handguns. (See MSJ at 2). Plaintiff does not seek summary judgment on his claims in the SAC relating to California's firearm licensing scheme or on his Section 25850 void-for-vagueness claim.[10]

Plaintiff raises three general arguments that he believes show his entitlement to summary judgment. First, Plaintiff argues that summary judgment is warranted because the Second Amendment protects the "basic right" of law-abiding gun owners to openly carry loaded and unloaded firearms for the purpose of self-defense in all non-sensitive public places. (MSJ at 10-11). According to Plaintiff, "[t]o carry arms openly (Open Carry) is the right guaranteed by the Constitution according to Heller." (See MSJ at 8; MSJ Reply at 12-13). Furthermore, to the extent that exceptions to the general prohibitions on open carry exist,

---

[10] In addition, the MSJ raises a new Fourteenth Amendment challenge based on the allegedly racist origins and application of Section 25850 that is not squarely put at issue in the SAC. (MSJ at 11-13). Accordingly, while the arguments raised by the parties in connection with the MSJ and the MJP largely overlap, they are not fully co-extensive and will be addressed separately in this Report and Recommendation where necessary.

Plaintiff contends that they are too narrow.[11]   (MSJ at 9). Second, Plaintiff argues that section 25850's prohibition on carrying loaded firearms in public violates the Fourteenth Amendment's equal protection clause due to the statute's allegedly racist origins and disproportionate impact on minorities.   (Id. at 11-12).   Third, Plaintiff argues that Section 25850(b) violates the Fourth Amendment because the "mere refusal" to consent to a chamber check by an officer to verify whether an openly carried firearm is loaded cannot constitute probable cause for an arrest.   (Id. at 10).

**B.   Defendant's Motion For Judgment On The Pleadings**

Defendant argues in her Motion for Judgment on the Pleadings that all four of Plaintiff's claims in the SAC -- (1) the Second Amendment challenge to all statutes at issue, (2) the Fourth Amendment challenge to Section 25850's warrantless chamber check authorization, (3) the Fourteenth Amendment equal protection challenge to the restriction on open carry licenses to residents of counties with fewer than 200,000 persons, and (4) the claim

---

[11] Plaintiff's arguments concerning the existence or non-existence of exceptions to California's general open carry prohibitions are confusing and contradictory.   He appears to find it significant that sections 25850 (loaded firearms), 26350 (unloaded handguns) and 26400 (unloaded firearms) do not contain any exceptions within the "plain text" of those specific sections.   (MSJ Reply at 12).   At the same time, he appears to acknowledge that those statutes are subject to exceptions found elsewhere in the Penal Code that allow for open carry in certain circumstances or by certain classes of people.   (Id. at 13).   It is unclear to the Court why or if Plaintiff believes that these statutory exceptions are somehow ineffective if not included in the specific section setting forth the general prohibition.

13

that Section 25850 is unconstitutionally vague -- fail as a matter of law. First, Defendant argues that open carry is not a core right protected by the Second Amendment, and even if the Second Amendment reaches outside the home, California's numerous exceptions to the general prohibition on open carry satisfy the requisite level of scrutiny. (MJP at 7-10; MJP Reply at 4-5). Second, Defendant argues that pursuant to Heck v. Humphries, 512 U.S. 477, 486-87 (1994), Plaintiff's misdemeanor conviction for violation of a CRB city ordinance bars his Fourth Amendment challenge to the warrantless chamber check authorized by section 25850(b). (MJP at 11). Furthermore, Defendant contends that because none of the open carry laws challenged by Plaintiff violates the constitution, an "officer seeing [a] person openly carry [a] firearm in a public place necessarily has probable cause to search the firearm to see if it is loaded." (Id. at 12; see also MJP Reply at 6-7) (emphasis omitted). Third, Defendant argues that California's restriction on open carry licenses to residents of counties with fewer than 200,000 person rationally furthers a legitimate state purpose and is therefore constitutional. (Id. at 11). Fourth, Defendant argues that Plaintiff's vagueness arguments are not cognizable, and even if they were, the challenged statutes are not vague. (MJP at 13).

\\

\\

\\

\\

\\

1

**V.**

2

**STANDARDS**

3

4  **A.    Summary Judgment**

5

6      Pursuant to Federal Rule of Civil Procedure 56, a moving
7  party's entitlement to summary judgment depends on whether or not
8  the evidence, viewed in the light most favorable to the nonmoving
9  party, contains genuine issues of material fact.  See Adams v.
10 Synthes Spine Co., LP, 298 F.3d 1114, 1116-17 (9th Cir. 2002).
11 The moving party bears the initial burden of production and the
12 ultimate burden of persuasion to establish the absence of a
13 genuine issue of material fact.  See Celotex Corp. v. Catrett,
14 477 U.S. 317, 323 (1986).

15

16     If the moving party carries its burden of production, the
17 nonmoving party must go beyond the pleadings and produce evidence
18 that shows a genuine issue for trial.  Id. at 324; see also
19 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The
20 moving party is entitled to summary judgment if the nonmoving
21 party "fails to produce enough evidence to create a genuine issue
22 of material fact . . . ."  Nissan Fire & Marine Ins. Co. v. Fritz
23 Companies, 210 F.3d 1099, 1103 (9th Cir. 2000).

24

25 **B.    Judgment On The Pleadings**

26

27     After the pleadings are closed, Federal Rule of Civil
28 Procedure 12(c) permits a party to seek judgment on the

15

1   pleadings.   Fed.  R.  Civ.  P.  12(c).   "A  Rule  12(c)  motion

2   challenges  the  legal  sufficiency  of  the  opposing  party's

3   pleadings  and  operates  in  much  the  same  manner  as  a  motion  to

4   dismiss  under  Rule  12(b)(6)."  Morgan v. County of Yolo, 436 F.

5   Supp. 2d 1152, 1154-1155 (E.D. Cal. 2006).   Under  that  standard,

6   a  complaint  must  contain  "more  than  labels  and  conclusions"  or  "a

7   formulaic  recitation  of  the  elements  of  a  cause  of  action."  Bell

8   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).   The  plaintiff

9   must  articulate  "enough  facts  to  state  a  claim  to  relief  that  is

10  plausible  on  its  face."  Id. at 570.   "A  claim  has  facial

11  plausibility  when  the  plaintiff  pleads  factual  content  that

12  allows  the  court  to  draw  the  reasonable  inference  that  the

13  defendant  is  liable  for  the  misconduct  alleged."  Ashcroft v.

14  Iqbal, 556 U.S. 662, 678 (2009).   The  court  must  "accept  all

15  factual  allegations  in  the  complaint  as  true  and  construe  them  in

16  the  light  most  favorable  to  the  non-moving  party."  Fleming v.

17  Pickard, 581 F.3d 922, 925 (9th Cir. 2009).   However,  the  court

18  may  properly  "discount[]  conclusory  statements,  which  are  not

19  entitled  to  the  presumption  of  truth . . . ."  Chavez v. United

20  States, 683 F.3d 1102, 1108 (9th Cir. 2012).

21

22       "When  considering  a  motion  for  judgment  on  the  pleadings,

23  this  court  may  consider  facts  that  are  contained  in  materials  of

24  which  the  court  may  take  judicial  notice."  Heliotrope General,

25  Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999)

26  (internal  quotation  marks  omitted).   Judicial  notice  may  be  taken

27  "where  the  fact  is  'not  subject  to  reasonable  dispute,'  either

28  because  it  is  'generally  known  within  the  territorial

16

jurisdiction,' or is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Castillo-Villagra v. I.N.S., 972 F.2d 1017, 1026 (9th Cir. 1992) (quoting Fed. R. Evid. 201(b)).  Courts may take judicial notice of matters of public record without converting a motion for judgment on the pleadings into a motion for summary judgment. Xcentric Ventures, L.L.C. v. Borodkin, 934 F. Supp. 2d 1125, 1134 (D. Ariz. 2013).

## C.   Facial Challenges

As previously noted, a "claim is 'facial' [if] . . . it is not limited to plaintiffs' particular case, but challenges the application of the law more broadly . . . ." John Doe No. 1, 130 S. Ct. at 2817.  Facial challenges are disfavored. Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008). A facial challenge to a legislative Act is "'the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute] would be valid.'" Alphonsus v. Holder, 705 F.3d 1031, 1042 (9th Cir. 2013) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987) (brackets in original)); see also Issacson v. Horne, 716 F.3d 1213, 1230-31 (9th Cir. 2013) (Salerno's "no set of circumstances" standard applies to all facial challenges except in First Amendment and abortion cases); Alphonsus, 705 F.3d at 1042 n.10 (same).  "[A] generally applicable statute is not facially invalid unless the statute 'can never be applied in a constitutional manner,'" United States v. Kaczynski, 551 F.3d

17

1120, 1125 (9th Cir. 2009) (quoting Lanier v. City of Woodburn,

518 F.3d 1147, 1150 (9th Cir. 2008) (emphasis in original)), or

"lacks any 'plainly legitimate sweep.'"   United States v.

Stevens, 559 U.S. 460, 472 (2010) (quoting Washington v.

Glucksberg, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring

in judgments) (internal quotation marks omitted)).


**VI.**

**DISCUSSION**


**A.   Plaintiff's Motion For Partial Summary Judgment**


  **1.   Second Amendment**


     Plaintiff contends that the Supreme Court's decision in

District of Columbia v. Heller, 554 U.S. 570 (2008), which was

applied to the states in McDonald v. City of Chicago, Ill., __

U.S. __, 130 S. Ct. 3020 (2010), should be interpreted to support

a blanket right for qualified persons to openly carry arms

outside the home "except in certain public places the Court

called 'sensitive,'" such as schools and government buildings.

(MSJ at 8-9).   According to Plaintiff, the Supreme Court's

finding that individual self-defense is a "basic right" and the

"core component" of the Second Amendment means that the right to

carry arms openly for the purpose of self-defense is fundamental

and does not "evaporate[] the moment one steps outside of his

home." (Id. at 8 & 11; see also MSJ Reply at 15).

1    Following this Court's decision denying Plaintiff's
2    preliminary injunction motion, the Ninth Circuit formally adopted
3    a two-step inquiry to be applied in Second Amendment challenges.
4    See United States v. Chovan, 735 F.3d 1127, 1136 (9th Cir. 2013)
5    (citing with approval and explicitly adopting two-step inquiry
6    taken by United States v. Chester, 628 F.3d 673, 680 (4th Cir.
7    2010), and United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir.
8    2010), cert. denied, 131 S. Ct. 958 (2011)).  First, the court
9    "asks whether the challenged law burdens conduct protected by the
10   Second Amendment" as historically understood.  Chovan, 735 F.3d
11   at 1136.  Second, if the challenged law does burden protected
12   conduct, or if the lack of historical evidence in the record
13   renders the court unable to say that the Second Amendment's
14   protections did not apply to the conduct at issue, the court
15   "'must assume'" that the plaintiff's Second Amendment rights
16   "'are intact'" and "apply an appropriate level of scrutiny."
17   Chovan, 735 F.3d at 1136-37 (quoting Chester, 628 F.3d at 681).
18   The level of scrutiny depends on (1) "'how close the law comes to
19   the core of the Second Amendment right,'" and (2) "'the severity
20   of the law's burden on the right.'"  Chovan, 735 F.3d at 1138
21   (quoting Ezell v. City of Chicago, 651 F.3d 684, 703 (7th Cir.
22   2011)).  According to the Chovan Court, "the core of the Second
23   Amendment is 'the right of law-abiding, responsible citizens to
24   use arms in defense of hearth and home.'"  Chovan, 735 F.3d at
25   1138 (quoting Heller, 554 U.S. at 635)).[12]

26

27   [12] The Chovan court concluded that where the core Second Amendment
28   right of self-defense of hearth and home is not at issue but the
     burden on the right to bear arms is substantial, "intermediate

On February 13, 2014, the Ninth Circuit issued a decision in _Peruta v. County of San Diego_, __ F.3d __, 2014 WL 555862 (9th Cir. Feb. 13, 2014) in which it held that "the right to bear arms includes the right to carry an operable firearm outside the home for the lawful purpose of self-defense . . . ." _Id._ at *18. _Peruta_ involved a challenge to San Diego County's policy concerning the procedures for obtaining a concealed carry license.[13]  _Id._ at *1.  As a preliminary matter, the _Peruta_ Court noted that "California law has no permitting provision for open carry" in San Diego County.  _Id._ at *20.  Accordingly, under California's licensing scheme, only concealed carry permits are available to San Diego County residents.  _Id._ (citing Cal. Penal Code §§ 26150, 26155).  The _Peruta_ Court found that in light of California's choice to prohibit open carry "in virtually all circumstances," San Diego County's policy limiting the issuance of concealed carry licenses only to applicants who can show "good cause" amounted to the "destruction" of the Second Amendment rights of "the typical, responsible, law-abiding citizen" who desired to carry a loaded weapon outside the home for self-protection, even in the absence of a showing of immediate, articulable danger. (_Id._ at *20).

---

rather than strict scrutiny is the proper standard to apply." _Chovan_, 735 F.3d at 1138.

[13] "California law delegates to each city and county the power to issue a written policy setting forth the procedures for obtaining a concealed-carry license." _Peruta_, 2014 WL 555862 at *1 (citing Cal. Penal Code § 26160).

Importantly, and fatal to Plaintiff's open carry claims in this case, in reaching this conclusion the Peruta Court also found that:

[T]he state has a right to prescribe a particular manner of carry, provided that it does not "cut[] off the exercise of the right of the citizen altogether to bear arms, or, under the color of prescribing the mode, render[] the right itself useless." [Nunn v. State, 1 Ga. 243, 243 (1846)). California's favoring concealed carry over open carry does not offend the Constitution, so long as it allows one of the two.

To put it simply, concealed carry per se does not fall outside the scope of the right to bear arms; but insistence upon a particular mode of carry does. As we have explained previously, this is not the latter type of case. Peruta seeks a concealed carry permit because that is the only type of permit available in the state. As the California legislature has limited its permitting scheme to concealed carry -- and has expressed a preference for that manner of arms-bearing -- a narrow challenge to the San Diego County regulations on concealed carry, rather than a broad challenge to the state-wide ban on open carry, is permissible.

1   *Peruta*, 2014 WL 555862 at *24 (footnotes omitted; emphasis
2   added).

3

4       Plaintiff's claim is exactly the type of "broad challenge"
5   insisting on a purported right to a <u>particular</u> mode of carry that
6   the <u>Peruta</u> Court found does not implicate the Second Amendment.
7   Unlike the plaintiffs in <u>Peruta</u>, who claimed that the Second
8   Amendment required the state to "permit <u>some form</u> of carry for
9   self-defense outside the home," Plaintiff claims that the Second
10  Amendment affirmatively <u>requires</u> California to permit a <u>specific</u>
11  mode of carry, <u>i.e.</u>, open carry.[14]  <u>Id.</u>  However, the Ninth
12  Circuit has found that the Second Amendment does not protect a
13  purported "right" to one mode of carry over another and a state
14  "has a right to prescribe a particular manner of carry . . . ."
15  <u>Id.</u>  Therefore, Plaintiff's Second Amendment challenge fails at
16  the first step of the two-step analysis adopted by the <u>Chovan</u>
17  Court.  <u>Chovan</u>, 735 F.3d at 1136.  Because the Ninth Circuit
18  instructs that the Second Amendment as it is historically
19  understood is not implicated by a state's decision to favor (or
20  disfavor) one mode of carry, there is no "burden" on any
21  constitutional right to analyze at the second step of the <u>Chovan</u>
22

23  [14] Accordingly, Plaintiff's case is not simply the mirror image of
24  the challenge at issue in <u>Peruta</u>.  According to the Ninth
    Circuit, the plaintiffs in <u>Peruta</u> accepted that the Second
25  Amendment does not require a state to authorize a particular mode
    of public carry, but argued that once a state has made a choice
26  to favor one form of public carry, it cannot foreclose the other
    form of public carry without offending the Second Amendment.
27  <u>Peruta</u>, 2014 WL 555862 at *24.  In the current action, Plaintiff
    claims that the Second Amendment requires a state to authorize
28  open carry.  (<u>See</u> SAC at 3).

analysis.   Accordingly, rational basis review applies.[15]   See Peruta, 2014 WL 555862 at *24; Nordyke v. King, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012) (en banc) ("[B]ecause we hold that the ordinance does not violate either the First or Second Amendments, rational basis scrutiny applies.").

     Under rational basis review, a court will uphold a statute if "the ordinance is rationally-related to a legitimate government interest." Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037, 1047 (9th Cir. 2002); see also  Wright v. Incline Village General Improvement Dist., 665 F.3d 1128, 1140 (9th Cir. 2011). As this Court has previously found, the governmental objective at issue here is more than just "legitimate" because "California has a substantial interest in increasing public safety by restricting the open carry of firearms, both loaded and unloaded." (PI Order at 7).   California courts have explained that the statutory regime regulating the carrying of loaded firearms in public was designed "to reduce the incidence of unlawful public shootings, while at the same time respecting the need for persons to have access to firearms for lawful purposes, including self-defense." People v. Flores, 169 Cal. App. 4th 568, 576 (2008) (emphasis in original).   Likewise, the Legislative Histories discussing Sections 26350 (unloaded handguns) and 26400 (unloaded firearms) explain in identical language that these statutes were enacted because:

---

[15] Furthermore, because the Second Amendment does not protect the right that Plaintiff seeks to assert, the cases submitted as Supplemental Authority in support of Plaintiff's Second Amendment challenge are irrelevant.

The absence of a prohibition on "open carry" has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals causing issues for law enforcement.

Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation, the practice of "open carry" creates an unsafe environment for all parties involved: the officer, the gun-carrying individual, and for any other individuals nearby as well.

Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways.

1   (Dkt. No. 104, Eisenberg Decl., Ex. A at AG0021 (legislative

2   history of A.B. No. 144 re unloaded handguns) & Ex. B at AG0092

3   (legislative history of A.B. No. 1527 re unloaded firearms)).[16]

4

5       The Court also finds that the challenged prohibitions are

6   more than merely rationally related to the objective of

7   increasing public safety.  California has determined that

8   regulating the carrying of loaded firearms in public reduces

9   public shootings.  Allowing the open carry of unloaded handguns

10  and firearms would create an unsafe environment for law

11  enforcement, the person carrying the firearm, and bystanders.  At

12  the same time, California has created numerous exceptions that

13  allow for the open carry of loaded and unloaded handguns and

14  firearms.[17]   See Cal. Penal Code §§ 25900-26060, 26361-26391,

15  26405.  However, even assuming, as the Peruta court found, that

16  despite these exceptions, open carry is illegal in California "in

17  ─────────────────

18  [16] The Court takes judicial notice of the legislative histories of
    A.B. Nos. 144 and 1527.  See Anderson, 673 F.3d at 1094 fn.1.

19  [17] For example, each of the challenged statutes is subject to an
20  exception for self-defense.  Cal. Penal Code §§ 26045(a) (self-
    defense exception to Section 25850's prohibition on carrying
21  loaded firearms in public), 26362 (incorporating certain Section
    25850 exceptions, including the self-defense exception, and
22  applying them to Section 26350's prohibition on the open carry of
    unloaded handguns), 26405(f) (incorporating certain Section 25850
23  exceptions, including the self-defense exception, and applying
    them to Section 26400's prohibition on the open carry of unloaded
24  firearms).  In addition, Sections 25850, 26350 and 26400 are each
    subject to numerous other exceptions, including, for example,
25  exceptions for defense of property, hunters, target shooters,
    police officers, members of the military, security guards,
26  persons who possess firearms on their own property, and persons
    who possess a firearm at their lawful residence, "including any
27  temporary residence or campsite."  Id. §§ 25900-26060, 26361-62,
28  26405(e-f).

virtually all circumstances," California's choice to prohibit a particular form of carry does not implicate the Second Amendment and the challenged prohibitions on open carry are rationally related to the legitimate state goal of public safety. Accordingly, Plaintiff's Motion for Partial Summary Judgment on his Second Amendment claim as applied to Sections 25850, 26350 and 26400 should therefore be DENIED.

### 2.   Fourteenth Amendment

A central argument in the MSJ and its accompanying exhibits appears to be that Section 25850 violates the 14th Amendment's equal protection clause due to the statute's allegedly racist origins and application.[18] (MSJ 11-13). Plaintiff asserts that "[t]he ban on openly carrying loaded firearms was enacted in July of 1967 with the unmistakable purpose of disarming minorities and that ban is disproportionately enforced against minorities today." (MSJ at 9). Accordingly, Plaintiff contends that Section 25850 is unconstitutional and that summary judgment is proper. (See MSJ Reply at 5).

There are two procedural infirmities with Plaintiff's race-based equal protection claim as alleged in the MSJ, each of which is independently dispositive. First, the SAC does not assert an equal protection claim against the Attorney General based on

---

[18] The Court notes that Section 25850, like all of the statutes at issue in this litigation, is facially race-neutral. Cal. Penal Code § 25850.

26

Section 25850's allegedly racist origins and application.  (See generally SAC at 25-30).  Therefore, the claim cannot be asserted on summary judgment as it has not been properly placed at issue and litigated.  See, e.g., Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000) (where plaintiff neither asserted claim in the complaint nor made known his intention to pursue recovery on the claim during discovery, assertion of that ground for relief on summary judgment was improper).  While the SAC briefly alleges in its fact section that Section 25850's origins and application reflect racial animus, (see SAC at 17-19), the SAC cannot be fairly read, even when liberally construed, to elevate this background assertion into a race-based equal protection claim against the Attorney General.  (See SAC at 25-30).

However, even if, as Plaintiff argues, he has always included a race-based "suspect classification" [sic] claim in this action, the claim is not cognizable because Plaintiff does not have standing to assert it.  (MSJ Reply at 4); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (federal courts "are required sua sponte to examine jurisdictional issues such as standing," which is not waivable and must be demonstrated "at the successive stages of the litigation") (internal quotation marks omitted).  To have Article III standing to pursue a claim, the plaintiff must show that he has suffered an "injury in fact."  Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011).  "The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly

illegal government conduct as sufficient to confer standing." Carroll v. Nakatani, 342 F.3d 934, 940 (9th Cir. 2003) (citing United States v. Hays, 515 U.S. 737, 743 (1995)). "[T]he rule against generalized grievances applies in equal protection challenges." Carroll, 342 F.3d at 940-41. To state an equal protection claim under section 1983, a plaintiff typically must allege that "'defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (emphasis added)).

According to the criminal complaint filed in CRB's misdemeanor action against Plaintiff, Plaintiff is white. (RJN, Exh. A at 8). In addition, nowhere in the record does Plaintiff contend that he is a member of a racial minority or that he has suffered discrimination because of his race. Therefore, even if Section 25850 was motivated by a racist design and has had a disproportionate impact on racial minorities, facts which Plaintiff has not proved, the statute and its predecessor were not enacted with the intent or purpose to discriminate against Plaintiff and do not threaten to have a disproportionate impact against Plaintiff because of his race. "[E]ven if a government actor discriminates on the basis of race, the resulting injury 'accords a basis for standing only to those persons who are personally denied equal treatment.'" Carroll, 342 F.3d at 940 (quoting Allen v. Wright, 468 U.S. 737, 755 (1984)); see also Doe ex rel. Doe v. Lower Merion School Dist., 665 F.3d 524, 542 n.28

(3d Cir. 2011) ("In the equal protection context, an injury resulting from governmental racial discrimination 'accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.'") (quoting Hays, 515 U.S. at 744-45); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1055 (9th Cir. 2002) ("' [A] white plaintiff generally does not have standing under Section 1983 solely for the purpose of vindicating the rights of minorities who have suffered from racial discrimination.'") (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1402 (9th Cir. 1994)); Halet v. Wend Inv. Co., 672 F.2d 1305, 1307 n.1 (9th Cir. 1982) (white plaintiff denied an apartment due to the complex's adults-only rental policy lacked standing to challenge that policy on the ground that it had a greater adverse effect on minorities).[19]

Because the SAC failed to allege a race-based equal protection claim against the Attorney General and, alternatively, because Plaintiff does not have standing to raise such a claim even if he had attempted to do so, Plaintiff's race-based equal protection challenge to Section 25850 is not cognizable in this action. Accordingly, Plaintiff is not entitled to summary judgment on the ground that Section 25850 violates the Fourteenth

---

[19] Even if Plaintiff had standing to assert a race-based equal protection claim and had properly put the claim at issue here, Plaintiff would still not be entitled to summary judgment on this claim. The record is simply not sufficiently developed for Plaintiff to establish the absence of a genuine issue of material fact as to the origins and application of Section 25850 and its predecessor. (See MSJ at 3 & 8); see also Celotex Corp., 477 U.S. at 323.

Amendment due to its allegedly racist origin and application. See Coleman, 232 F.3d at 1292.

### 3.   Fourth Amendment

Pursuant to Section 25850(b), peace officers are authorized to examine "any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street." Cal. Penal Code 25850(b).   The statute further provides that "[r]efusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section." Id.  Plaintiff briefly argues in his MSJ that Section 25850(b) violates the Fourth Amendment because "the mere refusal to consent to a search" cannot constitute probable cause for an arrest.[20]  (MSJ at 10) (citing United States v. Fuentes, 105 F.3d 487, 490 (9th Cir. 1997)).

---

[20] The Court disagrees with Defendant that Plaintiff's misdemeanor conviction for violation of Redondo Beach Municipal Section 4-35.20(a), which prohibits carrying a weapon "across, in, or into a park," necessarily bars Plaintiff's challenge to California Penal Code Section 25850(b).  (See MJP RJN, Exh. A (CRB criminal complaint); see also MSJ Opp. at 17).  Pursuant to the Heck doctrine, a Section 1983 complaint must be dismissed if judgment in favor of the plaintiff would undermine the validity of his conviction or sentence, unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  Heck, 512 U.S. at 486-87.  Even if Plaintiff's constitutional challenge to Section 25850(b) were successful, a favorable finding on that claim would not undermine the validity of Plaintiff's misdemeanor conviction.  While the record is not entirely clear, it appears that Plaintiff was arrested (and convicted) for carrying a firearm in a city park, not for refusing to consent to a search of his weapon.  (See MJP RJN, Exh. A (CRB criminal complaint)).

30

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" absent a warrant supported by probable cause. U.S. Const. amend. IV. Warrantless arrests must be supported by probable cause. United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable cause" is "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Id. Accordingly, a determination of probable cause generally requires a factual analysis of "the totality of the circumstances known to the officers at the time of the search." Lacey v. Maricopa Cnty., 693 F.3d 896, 918 (9th Cir. 2012) (en banc).

Plaintiff's argument is predicated on the dual propositions that (1) the inspection of a firearm by a peace officer to see if it is loaded constitutes a "search" under the Fourth Amendment, and (2) the exercise of a constitutional right, i.e., Plaintiff's refusal to consent to a warrantless search, can never provide probable cause for an arrest. As a preliminary matter, it is questionable whether a chamber check constitutes a "search" under the Fourth Amendment. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jefferson, 566 F.3d 928, 933 (9th Cir. 2009) (internal quotation marks omitted); see also Illinois v. Andreas, 463 U.S. 765, 771 (1983) ("The Fourth Amendment protects legitimate expectations of privacy . . . . If the inspection by police does not intrude upon a legitimate

1   expectation of privacy, there is no 'search' subject to the

2   Warrant Clause."). As the California Court of Appeal observed in

3   upholding the constitutionality of the substantively identical

4   predecessor to Section 25850(b):

6       In the first place, the examination of the weapon may

7       hardly be deemed to be a search at all. The chamber

8       of a gun is not the proper or usual receptacle for

9       anything but a bullet or a shell. The loading of a

10      gun simply affects the condition of the weapon by

11      making it immediately useful for firing. The

12      ammunition becomes, as it were, part of the gun.

13      There is nothing private or special or secret about a

14      bullet. The use of the word 'examine' in the statutes

15      instead of the word 'search' is not at all a devious

16      one. In examining the weapon, the officers are not

17      attempting to find some kind of contraband which is

18      unrelated to the gun itself.

20  People v. Delong, 11 Cal. App. 3d 786, 791-92 (1970).

21  Accordingly, a person who displays a weapon in public does not

22  have a privacy interest that "society is prepared to consider

23  reasonable" in the condition of the gun, i.e., whether it is

24  loaded and presents an immediate potential threat to public

25  safety. Jefferson, 566 F.3d at 933.

27      However, even if an examination of a firearm to see if it is

28  loaded is properly considered a "search," it still would not

appear to implicate the Fourth Amendment.  As the Delong court explained:

> But if the examination may be called a search, it is not an unreasonable one; and only unreasonable searches are forbidden by the Fourth Amendment. (Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968].)  It is, as we have said, limited to a single purpose.  It does not have about it any except the slightest element of embarrassment or annoyance, elements overbalanced by far by the purpose of preventing violence or threats of violence.  The minimal intrusion does not begin to approach the indignity of the frisk, as graphically described in Terry v. Ohio, Supra, at p. 17, fn.13, 88 S. Ct. 1868 [1968]. . . . [¶] [W]e hold that the mere examination of a weapon which is brought into a place where it is forbidden to have a loaded weapon, is not unreasonable and that the statutes authorizing such examination are constitutional.

Delong, 11 Cal. App. 3d at 792-93; see also United States v. Brady, 819 F.2d 884, 889 (9th Cir. 1987) (citing Delong with approval for the proposition that under the predecessor to current section 25850(b), "police may inspect a firearm which they know is in a vehicle, regardless of whether they have probable cause to believe that it is loaded").

Accordingly, Plaintiff's reliance on <u>United States v.</u> <u>Fuentes</u> for the proposition that "[m]ere refusal to consent to a . . . search does not give rise to reasonable suspicion or probable cause" is inapposite. (MSJ at 10); <u>see also</u> <u>Fuentes</u>, 105 F.3d at 490. A chamber check is arguably not a "search" because it does not infringe on a reasonable expectation of privacy and even if it is, the Fourth Amendment is not implicated because such a search is reasonable. Plaintiff's reliance on <u>Patel v. City of Los Angeles</u> also appears misplaced. (<u>See</u> Dkt. No. 150, Notice of Supplemental Authority). The <u>Patel</u> Court found that a Los Angeles city ordinance that authorized police officers to inspect private hotel guest records at any time without consent and without a warrant was facially invalid under the Fourth Amendment. <u>Patel</u>, 738 F.3d at 1061. Critical to the court's decision was the recognition that hotels retain a "reasonable expectation of privacy" in the content of their private guest records. <u>Id.</u> at 1061-62. The court noted, however, that if the records were available for public view, they would not be protected by the Fourth Amendment because "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." <u>Id.</u> at 1062 (internal quotation marks omitted). Because the ordinance at issue in <u>Patel</u> systematically authorized warrantless inspections without providing an opportunity for judicial review of the reasonableness of the inspection demand, the ordinance failed a facial challenge. <u>Id.</u> at 1065. <u>Patel</u> is easily distinguishable from the facts alleged here. A person who openly carries a firearm in public does not have the same reasonable

1  expectation of privacy regarding the condition of that weapon,

2  whether it is loaded or unloaded, that a hotel owner has in the

3  contents of privately maintained guest records unavailable for

4  public view.   Accordingly, Plaintiff has failed to show the

5  existence of a federal constitutional right by his refusal to

6  allow an officer to inspect a weapon carried in public.

7

8      However, Plaintiff's Fourth Amendment claim still fails even

9  if, as a hypothetical matter, there may be some circumstances in

10 which a person openly carrying a firearm in public has a

11 cognizable privacy interest in preventing law enforcement from

12 determining whether the firearm is loaded, which Plaintiff has

13 not shown.   Plaintiff is mounting a facial challenge and must

14 therefore establish that "no set of circumstances exists under

15 which the Act would be valid."   (PI Order at 10) (quoting

16 Salerno, 481 U.S. at 745).   It is readily apparent to the Court

17 that the refusal to permit a peace officer to inspect an openly-

18 carried firearm may provide probable cause in any number of

19 circumstances.   Plaintiff has not shown that there are no

20 circumstances under which section 25850(b) may be applied

21 constitutionally.   Accordingly, Plaintiff is not entitled to

22 summary judgment on his claim that Section 25850(b) violates the

23 Fourth Amendment.

24

25     Plaintiff has failed to show the absence of triable issues

26 of material fact with respect to the constitutionality of

27 Sections 25850, 26350 and 26400.   Indeed, the Court has found

28 that all of these Sections easily survive a facial constitutional

1   challenge.    Accordingly,   it   is   recommended   that   Plaintiff's

2   Motion for Partial Summary Judgment be DENIED.

3

4   **B.    <u>Defendant's Motion For Judgment On The Pleadings</u>**

5

6        **1.    Second Amendment**

7

8        The   Court   has   addressed   Plaintiff's   Second   Amendment

9   arguments as applied to the prohibitions on loaded and unloaded

10  open carry in Sections 25850, 26350 and 26400 in Part VI.A.1

11  above.   Because the Court considered only facts included in the

12  pleadings or properly subject to judicial notice in its analysis

13  of Plaintiff's MSJ claims, and because the issues presented in

14  this facial challenge involve solely issues of law, the Court's

15  analysis applies to both Plaintiff's MSJ and Defendant's MJP.

16  <u>Fleming</u>, 581 F.3d at 925 (court must accept facts alleged as

17  true); <u>Xcentric Ventures</u>, 934 F. Supp. 2d at 1134 (judicial

18  notice of matters of public record does not convert motion for

19  judgment on the pleadings into motion for summary judgment).

20  After the SAC was filed, the Ninth Circuit has clarified that the

21

22

23

24

25

26

27

28

1    Second Amendment does not protect any particular mode of carry in

2    public for self-defense.   Peruta, 2014 WL 555862 at *24.   The

3    Court therefore concludes that Defendant is entitled to judgment

4    on the pleadings to the extent that the SAC alleges that Sections

5    25850, 26350 and 26400 violate the Second Amendment.

6

7        However, Plaintiff did not move for summary judgment on his

8    claims involving California's firearm licensing regime codified

9    at California Penal Code Sections 26150-26220.   The SAC summarily

10   argues that these statutes are "invalid" to the extent that they

11   "prohibit, or infringe, PLAINTIFF and private citizens who are

12   otherwise eligible to possess a firearm from openly carrying a

13   loaded and operable handgun for the purpose of self-defense in

14   non-sensitive places."   (SAC at 29).   Other than this broad

15   allegation, with the exception of Plaintiff's challenge to the

16   restriction on open carry licenses to residents of counties of

17   fewer than 200,000 people, Plaintiff fails to explain why the

18   specific licensing provisions listed in the SAC inhibit the

19   alleged right to openly carry a firearm or violate the Second

20   Amendment.[21]   Accordingly, these claims fail and Defendant is

21   ──────────────────────────

[21] Plaintiff merely asserts that "no license is required for a
22   private citizen to exercise his Second Amendment right to self-
     defense," or, in the alternative, that the only requirements for
23   the issuance of an open carry license should be the provision of
     information "required to undergo a background check through the
24   FBI National Instant Criminal Background Check System (NICS)."
     (SAC at 36, ¶ 85).   Plaintiff does not identify the information
25   an applicant is required to provide for a NICS background check.
     (Id.).
26

27       In addition, even Plaintiff's argument regarding the county
     population cap where open carry licenses may be issued does not
28   appear to be based on the Second Amendment.   The gravamen of that

entitled to judgment on the pleadings on Plaintiff's Second Amendment licensing claims. See Twombly, 550 U.S. at 555 (complaint must contain more than conclusory allegations and formulaic recitations); BankAmerica Pension Plan v. McMath, 206 F.3d 821, 826 (9th Cir. 2000) (a party "abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case," such as by failing to raise the issue in a complaint or develop it during discovery).

Furthermore, because Plaintiff's licensing challenge is predicated on the erroneous contention that the Second Amendment requires a state to authorize open carry, it fails for the same reasons that his Second Amendment challenge to Sections 25850, 26350 and 26400 fails. Because the Second Amendment does not guarantee a specific mode of carry, California's firearm licensing scheme as it applies solely to a purported "right" to open carry does not raise constitutional concerns and need only be rationally related to a legitimate government interest. Peruta, 2014 WL 555862 at *24; Nordyke, 681 F.3d at 1043 n.2. The state plainly has an interest in public safety that is furthered by setting conditions on firearm licenses. Although Plaintiff has not identified which licensing conditions he believes infringe on open carry, it is self-evident that California may place some conditions on the issuance of a firearms license, as even Plaintiff admits that felons and the

---

argument appears to be grounded in the Fourteenth Amendment's equal protection clause. (SAC at 5 & 29).

mentally ill may be screened. (SAC at 27). In this facial challenge, Plaintiff must show that no circumstances exist in which California's licensing regime as it affects open carry is constitutional. <u>Alphonsus</u>, 705 F.3d at 1042. Bare assertions of a right to open carry fail to meet that burden. After the SAC was filed, the Ninth Circuit has clarified that the Second Amendment does not protect any particular mode of public carry. <u>Peruta</u>, 2014 WL 555862 at *24. Accordingly, Defendant is entitled to judgment on the pleadings on Plaintiff's claim that California's licensing regime violates the Second Amendment as it pertains to an alleged "right" to open carry.

### 2. Fourth Amendment

The Court addressed Plaintiff's Fourth Amendment challenge to Section 25850(b) in Part VI.A.3 above. Because the Court considered only facts included in the pleadings or properly subject to judicial notice in its discussion of Section 25850(b), and because the issues presented in this facial challenge involve solely issues of law, the Court's analysis applies to both Plaintiff's MSJ and Defendant's MJP. <u>Fleming</u>, 581 F.3d at 925; <u>Xcentric Ventures</u>, 934 F. Supp. 2d at 1134. The Court therefore concludes that Defendant is entitled to judgment on the pleadings to the extent that the SAC alleges that Section 25850(b) violates the Fourth Amendment.

### 3.   Fourteenth Amendment

Plaintiff alleges that California's firearms licensing scheme is unconstitutional to the extent that it restricts "licenses to openly carry a loaded handgun only to persons within counties of a population of fewer than 200,000 persons which is valid only in those counties, to only those residents who reside within those counties and leaves the issuance of such licenses solely to the discretion of the issuing authority . . . ." (SAC at 29); see also Cal. Penal Code §§ 26150(b)(2) & 26155(b)(2). Construed liberally, Plaintiff alleges an equal protection claim under the Fourteenth Amendment based on the allegedly improper classification of open carry license applicants according to the population size of the county in which they reside.

The Equal Protection Clause directs that "all persons similarly circumstanced shall be treated alike." Plyler v. Doe, 457 U.S. 202, 216 (1982). The Constitution does not "forbid classifications[,]" but "simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). In determining whether a classification violates the Equal Protection Clause, the first step is to identify "the proper level of scrutiny to apply for review." Honolulu Weekly, 298 F.3d at 1047.

1        A Court will apply strict scrutiny if the statute "targets a
2   suspect class or burdens the exercise of a fundamental right."
3   Wright v. Incline Village Gen. Improvement Dist., 665 F.3d 1128,
4   1141 (9th Cir. 2011) (internal quotation marks omitted); see also
5   Kahawaiolaa v. Norton, 386 F.3d 1271, 1277 (9th Cir. 2004)
6   (identifying race, ancestry, and alienage as "suspect
7   classifications" and rights such as privacy, marriage, voting,
8   travel and freedom of association as "fundamental").   Under
9   strict scrutiny, a law will survive an equal protection challenge
10  only if "the state can show that the statute is narrowly drawn to
11  serve a compelling state interest." Green v. City of Tuscon, 340
12  F.3d 891, 896 (9th Cir. 2003).   "Laws are subject to intermediate
13  scrutiny when they discriminate based on certain other suspect
14  classifications, such as gender." Kahawaiolaa, 386 F.3d at 1277.
15  Under intermediate scrutiny, "the statute will be upheld if the
16  government can demonstrate that the classification 'substantially
17  furthers an important government interest.'" Green, 340 F.3d at
18  896 (quoting Kirchberg v. Feenstra, 450 U.S. 455, 460, 101 S. Ct.
19  1195, 67 L. Ed. 2d 428 (1981)).   However, if a classification
20  "does not concern a suspect or semi-suspect class or a
21  fundamental right, [the courts] apply rational basis review and
22  simply ask whether the ordinance is rationally-related to a
23  legitimate government interest." Honolulu Weekly, 298 F.3d at
24  1047 (internal quotation marks omitted).

25

26       Here, the Court has already concluded that California's
27  licensing regime, including the classification of applicants by
28  county size, as it pertains solely to a purported right to open

41

1   carry does not implicate the Second Amendment. Accordingly,

2   rational basis review applies.   See Nordyke, 681 F.3d at 1043

3   n.2.  It is readily apparent that restricting open carry licenses

4   to residents of sparsely-populated counties "rationally

5   further[s] a legitimate state purpose."   Perry Educ. Ass'n v.

6   Perry Local Educators' Ass'n, 460 U.S. 37, 54 (1983).   The

7   Legislature could rationally determine that openly carrying

8   firearms poses a greater threat to public safety in densely-

9   populated urban areas than in sparsely-populated rural areas.

10  Accordingly, Plaintiff's facial challenge to the restrictions on

11  the issuance of open carry licenses to applicants living in

12  counties of fewer than 200,000 residents fails.   Defendant is

13  entitled to judgment on the pleadings on Plaintiff's equal

14  protection claim.

15

16      **4.   Vagueness**

17

18      Plaintiff alleges that Section 25850, as part of a statutory

19  regime regulating the carriage of loaded firearms in public, is

20  unconstitutionally vague.  (SAC at 28).   However, as the Court

21  observed in denying Plaintiff's Motion for Preliminary

22  Injunction, "facial challenges on the ground of unconstitutional

23  vagueness that do not involve the First Amendment are not

24  cognizable pursuant to Ninth Circuit precedent."  (PI Order at

25  10) (citing United States v. Purdy, 264 F.3d 809, 811 (9th Cir.

26  2001)).  Plaintiff is mounting a facial challenge, and his claims

27  concerning Section 25850 do not implicate the First Amendment.

28  Accordingly, Defendant is entitled to judgment on the pleadings

to the extent that the SAC can be construed as raising a void-for-vagueness claim as to Section 25850.

As described more fully above, all of Plaintiff's challenges to California's laws regulating open carry and the issuance of firearms licenses related to the purported right to open carry are without merit. In analyzing Plaintiff's claims, the Court relied solely on facts alleged in the SAC or facts that are properly subject to judicial notice. After the SAC was filed, the Ninth Circuit has clarified that the Second Amendment does not guarantee any particular mode of public carry. <u>Peruta</u>, 2014 WL 555862 at *24. Accordingly, it is recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED.

## VII.

### CONCLUSION

For the reasons stated above, it is recommended that the Court (1) DENY Plaintiff's Motion for Partial Summary Judgment; (2) GRANT Defendant's Motion for Judgment on the Pleadings; and (3) DISMISS this action WITH PREJUDICE.

DATED:  March 18, 2014

_____
                                /S/
                     SUZANNE H. SEGAL
                     UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.