1   Charles Nichols
    PO Box 1302
2   Redondo Beach, CA 90278
    Telephone: (424) 262-7137
3   E-mail: CharlesNichols@Pykrete.info
    *In pro per*

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9             FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11

12
    **CHARLES NICHOLS,**                    Case No.: 11-cv-09916-SSS(SS)
13
                            Plaintiff,      **PLAINTIFF'S OBJECTION TO**
14                                          **THE ORDER BY THE**
              **v.**                        **MAGISTRATE JUDGE [ECF NO**
15                                          **227]**

16  **Gavin Newsom, in his official capacity**
    **as Governor of California, Rob**
17  **Bonta, in his official Capacity as**      Judge:      The Honorable Sunshine
    **Attorney General of California,**                     Suzanne Sykes
18                                          Trial Date:
                            Defendants.     Action Filed: 11/30/2011
19

20

21

22

23

24

25

26

27

28

                                    1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Charles Nichols, In Pro Per, hereby objects to the sua sponte Order of the Magistrate Judge staying this case [ECF 227]. The objection is to the Order in full. The Order was issued without jurisdiction. None of the parties filed a motion to stay, and the reasons given for issuing the stay are without merit.

The Court conceded in its Order that "that this case has been pending for many years, and that ***the parties seek an expeditious resolution***. The Court recently issued an Order under Local Rule 83-9.2 stating that its intended decision date was May 30, 2025. (Dkt. 225.)"

This case was remanded on September 12, 2022. The remand Order was concise:

> "The district court's judgment is VACATED, and this case is REMANDED
> to the district court for further proceedings consistent with the United States
> Supreme Court's decision in *New York State Rifle & Pistol Association, Inc.*
> *v. Bruen*, 597 U.S. ____ (2022).
> The parties shall bear their own attorney's fees, costs, and expenses. This
> order constitutes the mandate of this court."

Under the mandate rule, "a lower court [is required] to act on the mandate of an appellate court, without variance or examination, only execution." *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006).

Instead of complying with the mandate rule, this Court, sua sponte, issued multiple orders staying this case, reopening discovery, setting new schedules, etc.

This Court, sua sponte, dismissed Governor Newsom as a defendant, again in violation of the mandate rule and the law of the case doctrine.

The Order dismissing Governor Brown was explicitly challenged on appeal. It was distinctly raised and extensively argued in Plaintiff's opening brief on appeal. The Court of Appeals did not affirm the dismissal of the Governor. The rule is that

2

the mandate of an appeals court precludes the district court on remand from reconsidering matters that were either expressly or implicitly disposed of upon appeal. *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir.1986).

The dismissal of Governor Brown was by a judge who did not even conduct a sua sponte examination of the Governor's claim of 11th Amendment immunity, which was his duty as required by law,

On remand, Governor Newsom *did not* file a motion to be dismissed.  In violation of the mandate rule and the law of the case doctrine, this Court sua sponte dismissed Governor Newsom as a Defendant.

This Court stated in its stay Order, "If this Court issues a decision… that could result in another reversal and remand to this Court, ultimately causing further delays."

Although there is precedent dealing with scofflaws, like the Governor, by Courts of Appeal, and given that the Court of Appeals has all of the power of a district court to enjoin the Governor from enforcing the laws at issue here, this Court's sua sponte dismissal of Governor Newsom has already invited another reversal and remand.

Although this Court long ago adopted the Woke position of the Defendants that this Court is *not* bound by The Mandate Rule, The Law of the Case Doctrine, and is not bound by any binding precedent of this Circuit or the United States Supreme Court, Plaintiff will nevertheless further address the "three factors" from the Order.

In its Order, the Court states, "First, a stay is unlikely to "dramatically postpone the timeline of this case"…"

This Court has already dramatically postponed the timeline of this case by repeatedly refusing to comply with the mandate rule and the rules of this district.

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

In its Order, the Court states, "[T]he appellate briefing in <u>Baird</u> is complete and the case is ripe for review." "The case has been ripe for decision since July 23, 2024, when appellants submitted a reply brief."

This Court says Mr. Baird's appeal is ripe for review, but here we are ten months later without a decision, without the panel even notifying the parties that it is considering oral argument, a notice that occurs months before the oral argument is scheduled, followed by a decision a year or more after oral argument takes place.

Mr. Baird's is an appeal that raised a sole facial challenge to PC25850 prohibiting the Open Carry of loaded handguns, PC26350 prohibiting the Open Carry of unloaded handguns, and nothing else.

Peruta v. San Diego No. 10-56971 was "ripe for review" on September 6, 2011. A case that challenged the "good cause" requirement for obtaining a license to carry a loaded handgun concealed, and nothing else. The three-judge panel did not issue its decision until February 13, 2014. ***Two years, five months, and seven days after the appeal was "ripe for review."***

In it's Order, this Court states, "In the interests of efficiency and judicial economy, this case is stayed until the Ninth Circuit issues a decision in Baird v. Bonta, No. 24-565."

Given the composition of the three-judge panel assigned to the appeal (Lee, VanDyke, and N.R. Smith) it is perhaps likely that in a year or two or three, Mr. Baird will eventually prevail in his facial challenge before the three-judge panel.

But perhaps not. Two of the judges assigned to Mr. Baird's appeal (Lee and VanDyke) are prime candidates for elevation to the United States Supreme Court should a vacancy occur.

Four of the justices are between 70 and 76 years of age. The opposition by the National Rifle Association to Open Carry is no secret. Being faithful to their oath of office to protect and defend the Constitution by following binding Supreme Court precedent to enjoin enforcement of the two laws Mr. Baird seeks to enjoin

4

1  will not make them any friends with the leadership of the NRA.  An organization

2  whose leadership can easily place a thumb on the scale of who will be nominated.

3       In any event, given the composition of the 9th Circuit Court of Appeals, a

4  favorable decision will be vacated, and reheard en banc.  Mr. Baird will lose before

5  the en banc panel, and he will have to file a petition for a writ of certiorari.  That

6  will take additional years.  And that assumes that Mr. Baird will still be alive (he is

7  an old man, even older than Plaintiff Nichols), and still have the money to continue

8  his appeal.  Mr. Baird does not have the legal knowledge to proceed pro se.  His

9  attorney has cost a fortune in his over six years of litigation, and will cost another

10  fortune in the years to follow before all is said and done in his case.

11       Plaintiff has been through this before.  Plaintiff filed his notice of appeal on

12  May 27, 2014.  Because of two concealed carry lawsuits that preceded his appeal,

13  Plaintiff was prevented from arguing his appeal before a three-judge panel until

14  February 15, 2018.  The two concealed carry appeals lost before an en banc panel.

15       Because a handgun Open Carry appeal out of Hawaii was argued and

16  submitted for a decision three days before Plaintiff's appeal was argued and

17  submitted for a decision.  Submission of his appeal for a decision was vacated

18  pending the final resolution of that appeal out of Hawaii.

19       That appeal eventually won before a three-judge panel, the decision was

20  vacated, reheard before an en banc panel where it lost.  The plaintiff-appellant filed

21  a petition for a writ of certiorari, which was granted, the decision of the en banc

22  panel vacated, and the case remanded back to the en banc panel for proceedings

23  consistent with *Bruen*.

24       Instead of issuing a decision consistent with *Bruen*, the en banc panel threw

25  the case back to the district court where the plaintiff accepted a monetary offer from

26  the County of Hawaii and dismissed his case with prejudice.  One year, three

27  months, and twelve days later, the lone plaintiff, George Young Jr., age 74, was

28  dead.  His case would have been dismissed as moot had he continued.

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

1  Plaintiff Nichols' appeal was likewise remanded to the district court for
2  proceedings consistent with *Bruen*, eight years, three months and sixteen days after
3  he filed his notice of appeal.

4  If this Court is truly concerned with the "fairest course," and "economy of
5  time and effort," it will comply with the mandate rule, the law of the case, binding
6  Supreme Court and Circuit precedent, and the rules of this district by promptly
7  issuing a final judgment in favor of Plaintiff Nichols.

8  The parties in this case can then proceed along with <u>Baird</u> to a final judgment
9  by the Court of Appeals, and final disposition by the United States Supreme Court.
10  That is the fairest, most economical, and most efficient course.

11  A final judgment by this Court, right or wrong, ends the time and effort of this
12  Court.  A final judgment by this Court ends this Court's jurisdiction.  It will not
13  require the Court of Appeals to expend any additional time and effort deciding the
14  inevitable appeal than it would have had to otherwise expend.

15  Contrary to what was stated in the Order, Plaintiff's is *not* "raising essentially
16  the same arguments as the plaintiffs in <u>Baird</u>."  Notwithstanding that Mr. Baird is
17  now the sole plaintiff in his lawsuit, Mr. Baird's sole legal argument on appeal is a
18  facial overbreadth one.  Mr. Baird did not raise any as applied challenge in either
19  his operative complaint or his opening brief on appeal.

20  Unlike Mr. Baird, Plaintiff has never raised a purely facial challenge.  Not in
21  his operative complaint, not on appeal, and not in any of his filings before or after
22  remand.  In each of the paragraphs of Plaintiff's operative complaint where the
23  word facial/facially appears, Plaintiff makes an as applied challenge, including an
24  as applied challenge to him.

25  Plaintiff's operative complaint has paragraphs challenging California's Open
26  Carry bans as applied solely to him and no one else.

27  The Defendants have waived any defense that the laws at issue her are
28  constitutional as applied to plaintiff.  The Defendants have waived any defense that

6

the laws at issue here are constitutional as applied to plaintiff, who is a private person, and to similarly situated private persons.  The only defense of the laws at issue here, to the extent it can even be called a defense, is a defense to a purely facial challenge which cannot be found in Plaintiff's operative complaint or in any of his filings.

As argued in his brief in opposition to the State's motion for summary judgment and long known to the Defendants, Plaintiff lives within 1,000 feet of a K-12 public school (approximately 800 feet away from the grounds of the school).

Absent a license issued pursuant to California Penal Code section ("PC") 26150 et seq (or a Declaration that Plaintiff is licensed to openly carry firearms or a declaration that he does not require a license, or prospective injunctive relief, etc), Plaintiff is prohibited from even carrying a loaded handgun in the curtilage of his home (See his Second Amendment Complaint "SAC" ¶¶ 67, 69) let alone on the public sidewalk and streets adjacent to his home or in any and all nonsensitive public places.

There is no material dispute that PC 626.9 prohibits Plaintiff from transporting his unloaded handguns, antique or modern, in a fully enclosed locked container from his home to his vehicle parked on the street without committing a crime.

There is no material dispute that there is no parking on Plaintiff's residential property.  There is no material dispute that if Plaintiff were to transport even one of his handguns, unloaded and in a fully locked container from his home to his motor vehicle parked on a public street (the only place where Plaintiff can park his motor vehicle) he is in violation of the law.  A conviction would result in Plaintiff's loss of his Second Amendment right to possess firearms for ten years.

Given Plaintiff's age and overall health, that would be, in effect, a lifetime loss of his Second Amendment rights to keep and bear firearms for the purpose of self-defense.

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

1    Absent a license, or a declaration, Plaintiff is prohibited from carrying a

2  loaded or unloaded handgun in the curtilage of his home, on his private residential

3  property, in and on his motor vehicle, within 1,000 feet of every K-12 public or

4  private school, and everywhere on Earth because he cannot take his handguns

5  outside the doors to his home without violating the law.

6    Similarly, Plaintiff is prohibited by the laws at issue here from openly carrying

7  loaded and unloaded long guns in the curtilage of his home as well as within 1,000

8  feet of every K-12 public and private school, and in public places that are

9  nonsensitive.

10    There is no material dispute that if Plaintiff were to openly carry loaded and

11  unloaded rifles, shotguns, and handguns in a place where there is a separate law

12  prohibiting the carrying or possession of firearms, California law would prohibit his

13  being punished by the laws at issue here.

14    There is no material dispute that if Plaintiff were to openly carry a loaded or

15  unloaded firearm to commit a crime, even multiple crimes in a continuous act,

16  California law would prohibit his being punished by the laws at issue here.

17    There is no material dispute that if Plaintiff were prohibited from possessing

18  firearms under state law, California law would prohibit his being punished by the

19  laws at issue here.

20    There is no material dispute that Plaintiff is not prohibited under state or

21  Federal law from possessing firearms.  Given that the Defendants have taken the

22  position that the burden is on Plaintiff, including a burden to prove that he is not a

23  prohibited person, Plaintiff availed himself of his right to obtain a copy of his

24  criminal history record from Defendant Bonta's DOJ.

25  https://oag.ca.gov/fingerprints/record-review

26    The letter states that as of the date of the letter, May 1, 2025, the department

27  did not identify any criminal history record maintained by the bureau as provided

28  by California Penal Code sections 11120-11127.

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO
227]

1    Plaintiff was preparing to file that letter with this court, along with notices of

2    supplemental authority, when the magistrate judge sua sponte imposed her stay. A

3    stay no party asked for. A stay that The Mandate Rule prohibits this Court from

4    issuing.

5    As there is no word or sentence or subsection of California's bans on openly

6    carrying loaded and unloaded rifles, shotguns, and handguns in the curtilage of

7    Plaintiff's home that can be severed to allow Plaintiff to carry loaded and unloaded

8    rifles, shotguns, and handguns in the curtilage of his home, Plaintiff is entitled to

9    purely prospective injunctive and declaratory relief against Defendants'

10   enforcement of  PC25850 (loaded firearms), PC26350 (unloaded handguns), and

11   PC26400 (unloaded long guns) in full.  Simply striking the term, "at all times" from

12   PC626.9(c)(2)(A) or severing the subsection would still make it a crime for

13   Plaintiff to transport any and all of his handguns, unloaded, in a fully enclosed

14   locked container.  As PC626.9 likewise prohibits Plaintiff Nichols from possessing

15   handguns outside of his home, he is entitled to prospective injunctive and

16   declaratory relief against the Defendants from enforcing that law against Plaintiff as

17   well as all other laws infringing on Plaintiff's right to keep and bear arms.

18   Instead of enjoining the enforcement of PC626.9 by the Defendants, the

19   remedy Plaintiff sought in his operative complaint was an unrestricted license to

20   openly carry a handgun coupled with a declaration that no license is required to

21   openly carry arms in nonsensitive places.

22   As ¶85 of Plaintiff's operative complaint clearly states, *"The issuance of a*

23   *license is **PLAINTIFF'S alternate position**.  PLAINTIFF submits that no license is*

24   *required for a private citizen to exercise his Second Amendment right to self-*

25   *defense."*

26   The Defendants cannot now claim that the curtilage of Plaintiff's home, his

27   private residential property, in and on his motor vehicle, the "gun-free" school

28

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO
227]

1  zones that extend 1,000 feet from every public and private school, and all of the

2  other places explicitly stated in the operative complaint are "sensitive places."

3      The Defendants, both the Governor and Attorney General, conceded in their

4  answering brief on appeal that they are not sensitive places.  Their explicit

5  concession is even more binding on them than had they simply not responded in

6  their answering brief, which would have been a waiver by them.

7      It is undisputed that because most of Plaintiff's handguns are recorded in

8  Defendant Bonta's Dealer Record of Sales Database, the State continuously checks

9  its database against its prohibited persons database (which includes the Federal

10  databases) to see if Plaintiff Nichols is a prohibited person.

11      The Defendants know that Plaintiff Nichols is not prohibited from possessing

12  firearms under state or Federal law. The Defendants know that the State of

13  California continually runs a records check on Plaintiff.

14      This Court can issue a Declaration stating, "The law enforcement authorities

15  of the State of the State of California have verified that Plaintiff Nichols is qualified

16  under law to receive a license to carry firearms and he is licensed by the State to

17  openly carry loaded and unloaded rifles, shotguns, and handguns within 1,000 feet

18  of every K-12 public and private school, but not in government buildings or in

19  schools or on the grounds of schools, except where otherwise allowed by law."

20      There will be some additional wording required and additional injunctive and

21  declaratory relief, including but not limited to the injunctive and declaratory relief

22  sought in Plaintiff's operative complaint, but the point is this Court and the

23  Defendants can avoid enjoining the unconstitutional statutes PC626.9, PC26150 et

24  seq, and all of the ancillary licensing statutes.  Injunctions Plaintiff never sought

25  against concealed carry licenses (see SAC ¶67).

26      When Plaintiff first filed this lawsuit, he was aware that California State

27  judges routinely rewrite state laws, but did not appreciate that Federal judges are

28  expressly and strictly prohibited from rewriting laws.

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

PC26150(a) states in relevant part, "(a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person…"

The default license is a license to carry a concealable firearm.  Like the New York State license in *Bruen*, it is not a license to carry a firearm *only* concealed.

The Open Carry and concealed carry restrictions appear as subsections. Enjoin the enforcement of the subsections and licensees will be able to carry handguns both openly and concealed, statewide.  Neither PC26150 nor PC26155 (the otherwise identical statute that applies to police chiefs) has a severability clause.  Enjoining enforcement of the licensing statutes in full is Plaintiff's preferred remedy, along with enjoining the enforcement of the other Open Carry bans.  Doing so would leave intact the statewide prohibition on concealed carry, making California a Constitutional Carry state (Open Carry without a license).

Plaintiff mentions this while knowing full well that this Court is never going to grant judgment in favor of him, not in full or in part.  He mentions it to include it in his next briefs on appeal and excerpts of record.

In Plaintiff's supplemental brief on appeal, Plaintiff warned the Defendants that the bill they had sponsored and helped write was an invitation to Plaintiff to challenge (by way of an injunction and other relief) PC626.9 and every other law that infringes on Plaintiff's Second Amendment right.

The Defendants tried to pass it off as a scrivener's error in their supplemental brief on appeal, and yet here we are.

More than two years and eight months ago, the Defendants invited Plaintiff Nichols to challenge their new laws that overlap in all the same places where Plaintiff sought (and seeks) to openly carry loaded and unloaded rifles, shotguns, and handguns, in case of confrontation, for the purpose of self-defense and for other lawful purposes.

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

1     Plaintiff Nichols accepted their invitation, and now the Defendants whine.

2

3     Plaintiff is entitled to prospective injunctive and declaratory relief even if the

4     United States Supreme Court had limited the Second Amendment right to keep and

5     bear arms to the home, which it clearly did not, because the Supreme Court has

6     always held that the curtilage of one's home is as protected as the inside of one's

7     home, and it is undisputed that Plaintiff Nichols is prohibited from carrying loaded

8     (and unloaded) rifles, shotguns, and handguns in the curtilage of his home by the

9     laws at issue here.

10    The Defendants have not in thirteen and a half years of litigation argued, let

11    alone proved, that the laws at issue here are constitutional as applied to Plaintiff

12    Nichols.  Not in the curtilage of his home, or on his private residential property, in

13    or on his motor vehicle, or in any nonsensitive public place.  For that matter, the

14    State has not contrived a single application of the laws at issue here where a person

15    who does not have the right to keep and bear arms that is protected by the Second

16    Amendment can be punished for violating the laws at issue here anywhere in the

17    State.

18    Laws that punish only persons who have Second Amendment protected rights

19    for conduct protected by the Second Amendment are facially invalid.

20    *Mr. Baird does not make any as applied challenge and he is not similarly*

21    *situated to Plaintiff.*

22    Had Mr. Baird sought a statewide, unrestricted license to openly carry a

23    handgun, then in that respect he would have been similarly situated to Plaintiff.

24    Had he sought to openly carry a loaded and unloaded long gun, then in that respect

25    he would have been similarly situated to Plaintiff.  Had Mr. Baird sought to openly

26    carry loaded and unloaded firearms within 1,000 feet of all K-12 public or private

27    schools, then in that respect he would have been similarly situated to Plaintiff.  Had

28    Mr. Baird sought to transport his handguns, unloaded, in a fully enclosed locked

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

container then in that respect, he would have been similarly situated to Plaintiff. Had Mr. Baird challenged any of the laws as applied to him as they are applied to Plaintiff, then in that respect he would have been similarly situated to Plaintiff.

But Mr. Baird did not.

Mr. Baird abandoned his pursuit of a license to openly carry a handgun when he filed his operative complaint.

Mr. Baird did not seek a license to openly carry a handgun in his opening brief in the appeal of his final judgment.  His not seeking a license to openly carry a loaded handgun, which exempts him from the prohibition on openly carrying an unloaded handgun, in his opening brief means he has waived any and all challenges to California's licensing statutes.

Mr. Baird has limited his purely facial challenge to openly carry a loaded and unloaded handgun.  He does not seek to openly carry a loaded or unloaded long gun for any purpose.

Mr. Baird alleged that he lives in Siskiyou County, a county with a population of fewer than 200,000 people.  A county where, as of January 2024, the Sheriff and police chiefs *shall-issue* a license to openly carry a loaded handgun, according to Defendant Bonta's revised application for a license to carry a concealable weapon pursuant to PC26150 et seq.  No such license is available to Plaintiff.  Plaintiff is statutorily prohibited from obtaining a license to carry a handgun, anywhere in the State of California.  Similarly, there is no license by which Plaintiff can openly carry a loaded or unloaded long gun outside of his home, in case of confrontation, for the purpose of self-defense.  And as already stated, Mr. Baird does not seek to carry long guns.

Unlike Plaintiff, Mr. Baird does not allege or argue that he resides in any of his counties nine, small cities, the largest of which reportedly had a population of 7,696 when Plaintiff's action was filed.

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

1    Mr. Baird is not prohibited from openly carrying a loaded handgun, or openly

2    carrying a loaded handgun anywhere in his county of residence, except for

3    incorporated cities, and within one mile of the city of Yreka (County Code Sec. 4-

4    4.201). The only other County ordinance that applies to unincorporated county

5    territory is County Code Sec. 4-4.202 that makes it "unlawful for any person to

6    discharge a firearm within 200 yards of camps, residence sites, recreation grounds

7    and areas, and lakes and other bodies of water adjacent to or within such areas in

8    such a reckless manner as to expose any person to injury as a result of such

9    discharge." Does discharge in a reckless manner prohibit Mr. Baird from openly

10   carrying a loaded and unloaded handgun within 200 yards of the designated places?

11   That would be a Second Amendment vagueness claim, which Plaintiff Nichols

12   makes but Mr. Baird does not.

13   Unlike Plaintiff (SAC ¶¶46-47), Mr. Baird has never applied for a license to

14   openly carry a handgun, let alone asked for an application. Plaintiff was denied

15   both. Not because he is prohibited under Federal or State law from possessing

16   firearms, but because California law prohibits him from being issued a license to

17   openly carry a handgun because he does not reside in a county with fewer than

18   200,000 people.

19   It is undisputed that Plaintiff is a private person. It is undisputed that he does

20   not fall into any of the exceptions afforded to persons acting in a public capacity,

21   such as police officers, the military, attorneys acting in their official capacity,

22   judges, etc. It is undisputed that Plaintiff does not fall into any exception.

23   In short, the Court of Appeals in the Baird v. Bonta appeal of final judgment

24   does not have jurisdiction to decide the constitutionality of California's licensing

25   laws, or decide anything other than Mr. Baird's facial overbreadth challenge to

26   PC25850 and PC26350. Even then, the panel's jurisdiction is limited to handguns.

27   The Court of Appeals in the Baird v. Bonta appeal does not have jurisdiction

28   to decide the constitutionality of any aspect of The California Gun-Free School

14

1  Zone Act of 1995, including the constitutionality of PC 626.9, which prohibits

2  Plaintiff Nichols from carrying and transporting his handguns, loaded and

3  unloaded, antique and modern, outside of his home.

4       There is more than a decade of filings in this case where Plaintiff has alleged

5  and argued why California's Open Carry bans are unconstitutional as applied to

6  him.  Indeed, on appeal of the final judgment in this case, Plaintiff distinctly raised

7  and argued that the district court erred when it held that Plaintiff could not

8  challenge the law as it applied to him because Plaintiff also stated a (narrow) facial

9  challenge.

10      The Court of Appeals vacated the final judgment of the district court in full.  It

11  is the Defendants who ask this Court to repeat the mistake made by the District

12  Court in 2014, namely that Plaintiff can only bring a purely facial challenge,

13  contrary to binding circuit precedent now and when final judgment was entered in

14  favor of the State on May 1, 2014.

15      Everything in the Order of the magistrate judge indicates that is exactly what

16  this Court is going to do.  If Mr. Baird should ultimately lose his purely facial

17  challenge, this Court will hold that Plaintiff Nichols loses despite the State's failure

18  to prove that the laws at issue are constitutional as applied to Plaintiff Nichols.

19      Moreover, the distinction between facial and as applied challenges is not so

20  well defined that it has some automatic effect or that it must always control the

21  pleadings and disposition in every case involving a constitutional challenge. The

22  distinction is both instructive and necessary, for it goes to the breadth of the remedy

23  employed by the Court, not what must be pleaded in a complaint.  *Citizens United*

24  *v. Federal Election Com'n*, 558 US 310, 331 (2010).  Indeed, had Plaintiff never

25  used the word "facial" in his operative complaint, that would not prohibit this Court

26  from facially invalidating the laws at issue.  *Id*.

27      That is because, unlike *United States v. Rahimi*, 602 U. S. ____ (2024), there

28  are no constitutional applications of the California laws based on just reading the

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

plain text of the laws at issue here, and not considering the laws as they apply to Plaintiff (i.e., a purely facial challenge).

In *Rahimi*, there were constitutional applications of the *temporary* prohibition on one's Second Amendment right.  Specifically, those subjected to a domestic violence restraining order, and only if the person restrained met all three criteria under the law, and was afforded due process to challenge the restraining order.  No such language exists in the plain text of the laws at issue here.  There is not even a mens rea requirement in the laws at issue in this case, which was previously argued.

In thirteen and a half years of litigation the State has never identified a single application of the laws at issue here that are constitutionally valid based on a the plain text reading of the laws as they apply to anyone, and certainly has not done so as applied to Plaintiff Nichols.

Even if this Court were to rewrite the laws to include applications to the law that do not exist in the plain text of the laws, California law prohibits persons prohibited from possessing firearms from being punished by the laws at issue here. California law prohibits persons from being punished by the laws at issue here who possess firearms in a place where the possession of firearms is prohibited. California law prohibits persons from being punished by the laws at issue here who use firearms to commit crimes.

Regardless, any such contrived application would plainly fall outside the scope of the relief plaintiff sought in his operative complaint.  The State does not dispute that Plaintiff is the master of his complaint, despite Defendants' multiple attempts to rewrite Plaintiff's operative complaint and despite the State's repeated invitations for this Court to liberally construe Plaintiff's pleadings in favor of the State.

### *US v. Rahimi is not a magic talisman the State can simply wave around.*

First of all, the plaintiffs-petitioners in *New York State Rifle & Pistol Assn, Inc. v. Bruen*, 597 US 1 (2022) prevailed in a purely facial challenge much to the

16

1  chagrin of the three dissenting justices who, by the way, said they accepted *District*

2  *of Columbia v. Heller,* 554 U.S. 570 (2008) as stare decisis.  *Heller* facially

3  invalidated D.C. laws that prohibited Mr. Heller from carrying loaded rifles,

4  shotguns, and handguns in his home, in the curtilage of his home, and on his private

5  property in addition to facially invalidating the D.C. prohibition on his possession

6  of functional (i.e., loaded) modern handguns.  The only handguns Mr. Heller was

7  allowed to possess in his home and on his private residential property, which

8  included the curtilage of his home, were nonfunctional antique handguns.

9      On March 14, 2025, this Circuit *facially* invalidated two Hawaii laws that

10  violated the Second Amendment in the case of YUKUTAKE v. Lopez, Court of

11  Appeals, No. 21-16756.  The panel also held that footnote 9 of  *New York State*

12  *Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38 (2022) is opaque/murky dicta.

13      Indeed, it is so murky, the panel could not agree on what to do with the

14  footnote beyond holding it is dicta.  And yet, the State here treats footnote 9 as

15  some sort of magic talisman because the footnote seemingly condoned licenses for

16  *concealed* carry, which is not at issue in this case, and never has been.

17      On page 15 of Plaintiff's brief in opposition [ECF 212] to the State's motion

18  for summary judgment, Plaintiff cited two sister circuit appellate decisions from the

19  3rd and 8th Circuit Court of Appeals, *Lara* and *Worth*.

20      Both are published decisions, both facially invalidated laws under the Second

21  Amendment that prohibited persons who are 18-20 years old from openly carrying

22  loaded rifles, shotguns, and handguns in public, in case of confrontation, for the

23  purpose of self-defense.  The United States Supreme Court granted, vacated, and

24  remanded the petitions for a writ of certiorari in both cases for proceedings

25  consistent with its then recently decided opinion in *Rahimi*.

26      Both Circuits reaffirmed their prior holding that the laws prohibiting the Open

27  Carry of rifles, shotguns, and handguns are *facially* invalid under *Rahimi*.   On

28  April 21, 2025, the Worth cert petition was denied sub nom Bob Jacobson,

1  Individually and in His Official Capacity as Commissioner of the Minnesota

2  Department of Public Safety, Petitioner v. Kristin Worth, et al.  No. 24-782.

3      On April 17 2025, the petitioners in Christopher Paris, Commissioner,

4  Pennsylvania State Police, Applicant v. Madison M. Lara, et al  No. 24A1003 filed

5  an application for an extension of time to file their petition with the United States

6  Supreme Court.  The application was granted on April 21, 2025.  The petition for a

7  writ of certiorari is due on June 26, 2025.  Given the denial of the Worth petition, it

8  remains to be seen whether or not a petition is filed in Lara.  The two published

9  decisions are reported as *Lara v. COM'R PENNSYLVANIA STATE POLICE*, 125 F.

10  4th 428 (3rd Cir. 2025) and *Worth v. Jacobson*, 108 F. 4th 677 (8th Cir. 2024).

11      In this Court's Order, it states, "Applying the test established by the Supreme

12  Court in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022) is a

13  complex and novel area of the law that has been rapidly developing and changing

14  over the last few years."

15      The California Court of Appeals in a published opinion, *People v. Miller*, 94

16  Cal. App. 5th 935 (2023), did not see it as "complex and novel."  The Court said at

17  945, within a few months of the appeal being fully briefed, "We agree with the

18  Attorney General that the post-*Heller* opinions upholding the constitutionality of

19  section 25400 [concealed carry] were not abrogated by *Bruen*. This is because they

20  were already based on the understanding that prohibitions on concealed firearms

21  have historically been permitted by the Second Amendment."

22      At 946, the Court said, "*Bruen* quoted a Georgia case explaining that to the

23  extent a statute that prohibited concealed carry also prohibited open carry, it was

24  the open carry provision that conflicted with the Constitution and was void. (Id. at

25  p. [142 S.Ct. at p. 2147], quoting *Nunn v. State* (1846) 1 Ga. 243, 251.)"

26

27      The Court held "This conclusion controls the outcome of this case." *Id.*

28

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

1    Additionally, the Court cited the en banc holding in *Peruta v. County of San*
2    *Diego*, 824 F.3d 919, 942 ["If there is a Second Amendment right of a member of
3    the general public to carry a firearm openly in public, and if that right is violated,
4    the cure is to apply the Second Amendment to protect that right. The cure is not to
5    apply the Second Amendment to protect a right that does not exist under the
6    Amendment."].)

7    The en banc holding regarding *concealed carry* in *Peruta* is still binding on
8    this Court. This Court does not have the authority to overrule *Peruta*, and no party
9    has asked this Court to overrule *Peruta*. The only thing abrogated in *Peruta* by
10   *Bruen* was the word "If" in the citation above.

11   There is a Second Amendment right of a member of the general public to carry
12   a firearm openly in public, and Plaintiff Nichols is not only "a member of the
13   general public" he is a member of "The People" the Second Amendment protects.

14   The en banc panel in *Peruta* held that if the right to Open Carry is violated,
15   "the cure is to apply the Second Amendment to protect that right."

16   Plaintiff Nichols is halfway through his fourteenth year of litigation seeking to
17   vindicate his right to keep and bear arms. For nearly three years, this Court has
18   refused to apply the cure. This Court now seeks, sua sponte, to delay that cure for
19   an untold number of years in violation of the mandate rule, the law of the case, and
20   binding Supreme Court and 9th Circuit Court of Appeals binding precedents, and
21   not forgetting all of the orders this Court has issued without having jurisdiction
22   since this case was remanded.

23   Plaintiff knows of only two ways to extricate himself from this Court and
24   transfer jurisdiction to the Court of Appeals. He can adopt the strategy the
25   Plaintiffs in *Bruen* used in the district court, or he can file a writ of mandamus with
26   the Court of Appeals.

27   *In re Creech*, 119 F. 4th 1114, 1120 (9th Cir. 2024) reiterated the five factors
28   for a writ of mandamus in this Circuit. The third, and procedurally most important

19

factor, is easily met here.  The other four factors are not required to grant or deny the writ but they too are easily met in this case.  But most importantly, the Court stressed at 1121 that "[W]hat matters is not the reality of bias or prejudice but its appearance."

On remand, Plaintiff's case was transferred to a Court over 70 miles from where he resides.  No party in his case asked for the transfer.  There was no shortage of judges in the Los Angeles Courthouse, and certainly not a shortage of judges who were eager to promptly grant final judgment in favor of the Defendants.

If this Court is unwilling to issue its decision by May 30th, Judge Sykes should recuse herself, and this case be reassigned to the Los Angeles Courthouse to a judge for a prompt decision.  The magistrate judge should be removed from this case.  No party has consented to proceed before a magistrate judge.


Dated:  May 18, 2025                                    Respectfully submitted,

                                                        Charles Nichols

                                                        */s/   Charles Nichols*
                                                        *In Pro Per*

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]

1

2

**CERTIFICATE OF SERVICE**

3

4

Case Name: Charles Nichols v. Gavin Newsom et al No. 2:11-cv-09916-SSS-KES

5

6

7

      I hereby certify that on May 18, 2025, I electronically filed the following

8

documents with the Clerk of the Court by using the CM/ECF system:

9

**PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE**

10

**JUDGE [ECF NO 227]**

11

      I certify that all participants in the case are registered CM/ECF users and that

12

service will be accomplished by the CM/ECF system.

13

      I declare under penalty of perjury under the laws of the State of California

14

and the United States of America the foregoing is true and correct and that this

15

declaration was executed on May 18, 2025, at Los Angeles County, California.

16

17

Charles Nichols                       /s/Charles Nichols

18

Declarant                            Signature

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OBJECTION TO THE ORDER BY THE MAGISTRATE JUDGE [ECF NO 227]